UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F.
CHEN, MEI F. CHEN, HUI HE, HUI LI,
ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO,
MEI Z. XIAO, MU Z. ZHANG,
BI Y. ZHENG, and XIU X. ZHU,

        Plaintiffs,

 -v-                                                  No. 24-CV-07401-LTS-KHP

GREAT CARE, INC., CENTERLIGHT
HEALTHCARE, INC., and DOE MANAGED
LONG-TERM CARE PLANS 1-14,

        Defendants.

-----------------------------------------------------------x

## M<small>EMORANDUM</small> O<small>RDER</small>

        Plaintiffs, Hei Li, Zhu H.L. Lin, Li Chen, Xiu F. Chen, Mei F. Chen, Hui He, Hui Li, Zhan J. Li, Hui X. Ruan, Jian R. Xiao, Mei Z. Xiao, Mu Z. Zhang, Bi Y. Zheng, and Xiu X. Zhu (collectively, the "Plaintiffs") bring this action against GreatCare, Inc. ("GreatCare"), CenterLight Healthcare, Inc. ("CenterLight"), and unnamed Doe Managed Long-Term Care Plans 1-14 (collectively, the "Defendants"), asserting claims under the Fair Labor Standards Act (29 U.S.C. section 201 et seq. ("FLSA")) and the New York Labor Law ("NYLL"). Plaintiff Hei Li ("Ms. Li") is the only Plaintiff who claims to have been in an employment relationship with CenterLight, and she asserts only state law claims against it. This Court has subject matter jurisdiction under 29 U.S.C. section 216, 28 U.S.C. section 1331, and 28 U.S.C. section 1367.

        CenterLight moves to dismiss Ms. Li's claims against it (docket entry no. 1 (the "Complaint" or "Compl.")) under Federal Rule of Civil Procedure 12(b)(1), arguing that the

Court lacks subject matter jurisdiction of Ms. Li's claims, and Rule 12(b)(6), arguing that any FLSA claim asserted against it by Ms. Li is untimely. (Docket entry no. 21.) In the alternative, CenterLight moves under Federal Rule of Civil Procedure 21 to sever Ms. Li's claims against it from the other claims asserted in this action; this would effectively sever CenterLight from this action entirely as only Ms. Li asserts any claims against CenterLight. (Id.) The Court has carefully considered the parties' submissions, (docket entry no. 22 ("Def. Mem."); docket entry no. 38 ("Pls. Opp."); docket entry no. 41 ("Def. Reply")[1]), and, for the following reasons, CenterLight's motion is denied in its entirety.

## BACKGROUND

The following summary is drawn from the Complaint, all well-pleaded factual allegations of which are presumed to be true for the purposes of this motion to dismiss.

<u>Live-In Care Services</u>

Plaintiffs are all home care aides who allege that they worked multiple, consecutive 24-hour shifts per week providing "live-in" services to qualifying Medicaid recipients. (Compl. ¶¶ 1, 87, 100, 119, 120, 121, 141, 160, 187, 213, 229, 253, 254, 255.) Plaintiffs assert that each of them was jointly employed[2] by a managed long-term care plan ("MLTC") and Defendant GreatCare, Inc. ("GreatCare"), which is a licensed home care services agency. (Id. ¶¶ 3, 19-35, 61, 86, 118, 159, 187, 210, 252.) Defendant CenterLight and the Defendant Doe Managed Long-Term Care Plans 1-14 are MLTCs. (Id. ¶ 34-35.) According to Plaintiffs, the MLTCs contracted with the New York State Department of Health ("NYSDOH")

---

[1]   Pin cites to materials filed on ECF refer to ECF-designated pages.

[2]   The nature of the employment relationships is disputed. See infra note 5.

to provide long-term care services to disabled and elderly Medicaid recipients; Plaintiffs also allege that the MLTCs contracted through GreatCare for Plaintiffs to render their home care services to the individual Medicaid recipients. (Id. ¶¶ 3-4.)

The MLTCs are allegedly responsible for determining the appropriate level of personal care services for a patient. "Live-in" 24-hour personal care services are "the provision of care by one personal care aide for a patient" under circumstances where the patient's "need for assistance is sufficiently infrequent that a live-in 24-hour personal care aide would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during the aide's eight hour period of sleep." (Id. ¶ 45 (quoting 18 N.Y.C.R.R. § 505.14).) When authorizing this type of service, the MLTCs are required to evaluate whether the home care aide is likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during an eight-hour period of sleep. (Id. ¶ 42.) This assessment is based on the care needs of the service recipient, as well as whether the recipient's home has appropriate sleeping accommodations for the home care aide. (Id. ¶¶ 43-47.) If the MLTC determines that the care aide is unlikely to receive five hours daily of uninterrupted sleep during an eight-hour period of sleep or that the recipient's home sleeping accommodations are inappropriate, the MLTC must authorize "split-shift" care instead of "live-in" care. (Id. ¶¶ 46-47.) Unlike live-in services, split-shift services are provided by more than one aide. (Id. ¶ 44.) Although the needs of Plaintiffs' patients were such that Plaintiffs did not receive five hours of continuous sleep and Plaintiffs were not provided with adequate sleeping accommodations, the MLTCs authorized live-in, rather than split-shift, services. (Id. ¶¶ 2, 48.)

Plaintiff Hei Li's State Claims

Plaintiff Hei Li is currently the only party asserting claims against CenterLight, and she only asserts state law claims against it. Ms. Li is a 63-year-old woman residing in Brooklyn, New York. (Id. ¶ 19.) Ms. Li was jointly employed[3] by Defendants GreatCare and CenterLight from approximately June 2017 to December 2021. (Id. ¶ 19.) CenterLight is an MLTC that provided in-home personal care services to Mr. C, an elderly man residing in Queens, NY, pursuant to a contract with the NYSDOH; CenterLight, in turn, contracted for Ms. Li's services through GreatCare, which is a home care agency. (Id. ¶¶ 4, 35.) Contracted by CenterLight through GreatCare, Ms. Li worked one weekly 24-hour shift providing "live-in" personal care services to Mr. C. (Id. ¶ 62.) Ms. Li was also allegedly employed by Defendant CenterLight and another, non-defendant, home care agency to provide 24-hour "live-in" services to Mr. C for an additional two to three days a week. (Id. ¶ 63.)

During the day, Ms. Li assisted Mr. C with toileting every 3 hours, cooking, taking medications, and outdoor exercise. (Id. ¶¶ 64, 66.) On most evenings, Mr. C did not sleep for many hours and stayed active throughout the night. (Id. ¶ 65.) Ms. Li slept no more than 2 to 3 hours a night, and she slept on a couch in the living room because there were no other sleeping accommodations. (Id. ¶¶ 68, 69.) Ms. Li did not receive eight hours of sleep per 24-hour shift or five continuous, uninterrupted hours of sleep per 24-hour shift. (Id. ¶ 72.) At least once a month, a CenterLight nurse, Ms. Ding, would visit Mr. C's home, and Ms. Li would report Mr. C's inconsistent sleeping and his food and toileting needs through the night. (Id. ¶¶ 70-71.)

---

3    See infra note 5.

GreatCare and CenterLight paid Ms. Li for no more than 13 hours of each 24-hour shift. (Id. ¶ 75.) Nor did Defendants pay Ms. Li any overtime, even though her services to Mr. C exceeded forty hours per week. (Id. ¶ 75, 80.) Defendants also failed to pay Ms. Li "spread of hours" pay when she worked a spread in excess of ten hours per shift (id. ¶¶ 81, 308-309), and they failed to provide Ms. Li with wage notices and complete and accurate pay statements (id. ¶¶ 78-79, 312, 316-317). Often, GreatCare supervisors required Ms. Li to sign or check documents in English that she did not understand. (Id. ¶¶ 77, 313.) Ms. Li claims that these actions violated the NYLL. Finally, Ms. Li was allegedly paid less than the statutory minimum wage and less than the total hourly compensation required by the New York Home Care Worker Wage Parity Act ("Wage Parity Act"), N.Y. Pub. Health Law § 3614-c, which establishes a minimum wage rate, additional wages, and benefits for certain home care aides. (Id. ¶¶ 82, 83.)

The Federal Plaintiffs

Three of Ms. Li's co-plaintiffs—Hui X. Ruan, Jian R. Xiao, and Mei Z. Xiao (the "Federal Plaintiffs")—were allegedly jointly employed by GreatCare and one of the Doe Managed Long-Term Care Plans 1-14. (Id. ¶¶ 27-31.) Their employment periods spanned from 2016 to 2023. (Id.) Like Ms. Li, the Federal Plaintiffs were allegedly compensated for no more than 13 hours of each 24-hour shift, and they did not receive overtime pay. (Id. ¶¶ 75, 80, 241, 247, 270, 276.) The Federal Plaintiffs assert claims against GreatCare and the Doe Managed Long-Term Care Plans 1-14 for failure to pay minimum and overtime wages under both the FLSA and the NYLL. (Id. ¶¶ 284-289, 295-300.) Like Ms. Li, the Federal Plaintiffs claim that they were required to sign documents in English (which they did not understand) and that they did not receive wage notices and complete and accurate pay statements, in alleged violation of

the NYLL. (Id. ¶¶ 244-246, 272-275.) Also, like Ms. Li, the Federal Plaintiffs claim that they received less than the total hourly compensation required by the Wage Parity Act (id. ¶¶ 250, 278), and that they did not receive "spread of hours" pay when they worked more than ten hours per shift, in alleged violation of the NYLL (id. ¶¶ 248, 277).

## DISCUSSION

Defendant CenterLight moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint as against it, arguing that the Court lacks subject matter jurisdiction of the NYLL claims against it and that any FLSA claims Ms. Li asserts against it are untimely.

<u>Subject Matter Jurisdiction</u>

Because subject matter jurisdiction is a threshold matter, it must be addressed first. Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). When deciding a motion to dismiss under Rule 12(b)(1), "the Court must accept all factual allegations pled in the complaint as true." Harker v. Meta Platforms, Inc., No. 23-CV-7865-LTS, 2024 WL 3990261, at *2 (S.D.N.Y. Aug. 29, 2024) (citing Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)).

<u>Whether the Court Has Supplemental Jurisdiction of Ms. Li's Claims Against CenterLight</u>

Defendant CenterLight argues that the Court lacks subject matter jurisdiction of Ms. Li's NYLL claims against it. (Def. Reply at 4-6.) Because Ms. Li asserts only state law claims against CenterLight[4] and does not invoke diversity of citizenship as a ground for jurisdiction, the only potentially viable avenue for the Court's exercise of subject matter

---

[4]   Ms. Li concedes that she does not raise any FLSA claims against CenterLight and only brings NYLL claims. See infra pp. 11-12.

jurisdiction of Ms. Li's claims is supplemental jurisdiction under section 1367, based on the relationship of her claims to the FLSA claims asserted by the Federal Plaintiffs.

In a civil action of which the court has original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C § 1367(a).  Here, there is no dispute that the Court has original federal question jurisdiction of the Federal Plaintiffs' FLSA claims against Defendants GreatCare and the Doe Managed Long-Term Care Plans 1-14 under section 1331, because those claims arise under a federal statute.

Thus, the Court turns to whether Ms. Li's NYLL claims against CenterLight "form part of the same case or controversy" as the Federal Plaintiffs' FLSA claims against GreatCare and the Doe Managed Long-Term Care Plans 1-14.  For purposes of section 1367(a), two claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"  City of Chi. v. Int'l College of Surgeons, 522 U.S. 156, 164-65 (1997) (citation omitted).  "In determining whether two disputes arise from a 'common nucleus of operative fact,' [courts] have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or whether] the federal claim necessarily brought the facts underlying the state claim before the court.'"  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d. Cir. 2006) (citation omitted).

It is well established that NYLL and FLSA claims arise out of a common nucleus of operative fact when "they arise out of the same compensation policies and practices." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011); see also Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 551 (S.D.N.Y. 2017). The Court "plainly has jurisdiction over plaintiffs' NYLL claims" when "the FLSA and NYLL claims 'involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the same work, for the same employers.'" Van Duser v. Tozzer Ltd., No. 23-CV-9329-AS, 2024 WL 4635495, at *4 (S.D.N.Y. Oct. 31, 2024) (quoting Huer Huang v. Shanghai City Corp., 459 F. Supp. 3d 580, 594 (S.D.N.Y. 2020)).

Under these standards, the Court finds that Ms. Li's NYLL claims derive from the same nucleus of operative fact as the Federal Plaintiffs' FLSA claims.[5] Ms. Li asserts parallel NYLL claims to the Federal Plaintiffs FLSA claims for the same minimum and overtime wage violations. For each of the Plaintiffs, Defendant GreatCare was allegedly a joint employer—along with the Doe Managed Long-Term Care Plans 1-14 in the case of the Federal Plaintiffs, and along with CenterLight in the case of Ms. Li. (Compl. ¶¶ 3, 19-35, 61, 86, 118, 159, 187, 210, 252.) Both the Federal Plaintiffs and Ms. Li allege that, while so employed, they worked multiple 24-hour shifts as "live-in" home care aides, taking care of elderly Medicaid recipients who required around-the clock care with toileting, cooking, feeding, and taking medications, and

---

[5] CenterLight asserts that it "is [a] liaison between the state and home health care agencies, managing the funds to home health care agencies based on the care the [sic] required of its participants/patients"; that it "does not employ the aides, does not hire the aides, and does not govern their terms and conditions of employment"; and that it "simply provides the funds to the home care agency (in this case GreatCare) to render care to participants based on the criteria set forth by the New York State Department of Health." (Def. Mem. at 3.) The determination of the existence and nature of relevant employment relationships will turn on factual issues that cannot be resolved at this stage.

that they were denied compensation required by federal and state law for such work. (Id. ¶¶ 62, 64, 67, 211, 213, 214, 216, 224, 228, 229, 232, 236, 252-256.)

Ms. Li and the Federal Plaintiffs were all allegedly hired by GreatCare, each through a NYSDOH contract administered by an MLTC Defendant, to provide "live-in" 24-hour services to Medicaid recipients. (Id. ¶¶ 3-4.) Plaintiffs allege that, under New York state law, the MLTCs were only permitted to authorize "live-in" 24-hour services if the recipient's home had adequate sleeping accommodations for the home care aide and the recipient's care needs would allow the home care aide to likely obtain, on a regular basis, five hours daily of uninterrupted sleep. (Id. ¶¶ 42-47.) Each MLTC allegedly mis-authorized recipients for 24-hour live-in services, because the recipients did not in fact have adequate sleeping accommodations in their homes, the home care aides could not get more than five hours daily of uninterrupted sleep, and the recipients needed uninterrupted care. (Id. ¶¶ 48, 65, 68-69, 72, 220, 223, 224, 232-33, 238, 257-58, 260-61).

Under its contracts with the MLTCs, GreatCare was, according to Plaintiffs, required to assign the Plaintiffs in strict accordance with the live-in services authorization issued by the MLTCs. (Id. ¶ 52.) Consequently, GreatCare scheduled only one aide to work an entire 24-hour shift on the jobs to which Plaintiffs were assigned. (Id.) The Federal Plaintiffs and Ms. Li were all thus required to work continuously during each 24-hour shift, providing uninterrupted care to the Medicaid recipient. (Id. ¶ 53.) Furthermore, all MLTCs allegedly operated under the same reimbursement policy, reimbursing GreatCare at a rate that covered Plaintiffs' wages for only 13 hours out of every 24-hour shift. (Id. ¶ 54.) Because all the MLTCs allegedly used the same compensation policies, and all Plaintiffs were employed and subjected to such policies through GreatCare, the facts underlying the federal and state claims overlap substantially.

Accordingly, Ms. Li's NYLL claims are so related to the Federal Plaintiffs' FLSA claims as to form part of the same case or controversy, and the Court can properly exercise supplemental jurisdiction of her claims against CenterLight even though she, herself, is not asserting federal claims.

<u>Whether the Court Should Decline to Exercise Supplemental Jurisdiction</u>

CenterLight asserts that, even if the Court could exercise supplemental jurisdiction, it should decline to do so, "based on the [sic] judicial economy, convenience and fairness." (Def. Reply at 6.) The Court has discretion to decide whether to exercise supplemental jurisdiction. See <u>City of Chi.</u>, 522 U.S. at 173-74. "The discretion to decline supplemental jurisdiction 'is available only if founded upon an enumerated category of subsection 1367(c).'" <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 448 (2d Cir. 1998). Under section 1367(c), a court may decline to exercise supplemental jurisdiction of a claim if: it raises a novel or complex issue of state law; it substantially predominates over claims over which the court has original jurisdiction; the court has dismissed all claims over which it has original jurisdiction; or, in exceptional circumstances, there are other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367(c).

None of the section 1367(c) considerations weighs in favor of declining to exercise jurisdiction here. First, claims under NYLL and FLSA do not present issues of special state court expertise or raise unsettled questions of state law that would be better settled in state court. Rather, "wage-and-hour cases . . . are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices." <u>Catzin v. Thank You & Good Luck Corp.</u>, 899 F.3d 77, 86 (2d. Cir. 2018). Second, Ms. Li's claims do not meet the "substantially predominate" standard under section 1367(c)(2). "[C]ourts in this circuit 'have

found that state law claims predominate when the federal law claims are merely peripheral or cover a much narrower issue than the state law claims, or where the factual or legal analysis of the claims are unrelated.'" SCX Holdings, LLC v. Gjoka, No. 25-CV-00020-JAV, 2025 WL 1736518, at *4 (S.D.N.Y. June 20, 2025) (citation omitted).  Here, the federal claims overlap factually with the state law claims and do not present significantly narrower issues.  Third, the Court has not dismissed any of the federal claims over which the Court has original jurisdiction.  Finally, the Court finds no exceptional circumstances or compelling reasons to decline jurisdiction.

    Accordingly, the Court finds that the exercise of supplemental jurisdiction over Ms. Li's NYLL claims against CenterLight is proper.

Whether Ms. Li's Claims Are Timely

    As to its Rule 12(b)(6) motion, CenterLight asserts that Ms. Li's FLSA claims are time-barred by FLSA's two- to three-year statute of limitations[6] because Ms. Li worked for CenterLight up to December 2021 and filed her claims on October 1, 2024.  (Def. Mem. at 3); see 29 U.S.C. § 255(a).  Ms. Li concedes she is not making any FLSA claims against CenterLight and that she only makes New York Labor Law claims, which have a six-year statute of limitations.  (Pls. Mem. at 8-9); see N.Y. Lab. L. § 198(3).  For its part, CenterLight does not

---

[6]  Unpaid minimum wages or unpaid overtime compensation claims under the FLSA are subject to a three-year statute of limitations if they are committed "willfully" and a two-year statute of limitations otherwise.  29 U.S.C. § 255(a).

dispute that Ms. Li's NYLL claims are timely.[7]  Accordingly, CenterLight's motion to dismiss the claims as time-barred is denied.

Whether the Court Should Sever Ms. Li's Claim

In the alternative to its motion to dismiss, CenterLight argues that the Court should sever the claims Ms. Li has asserted against it into a separate action because her claims are the only claims against it.  Federal Rules of Civil Procedure 21 grants courts the authority to sever a claim against a party, "even without a finding of improper joinder [under Rule 20], where there are sufficient other reasons for ordering a severance."  Wyndham Assoc. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968).  In determining whether to sever a claim, courts in the Second Circuit consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."  Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd., No. 13-CV-9239-CS, 2017 WL 972117, at *9 (S.D.N.Y. Mar. 10, 2017) (quoting Oram v. SoulCycle LLC, 979 F. Supp. 2d 498, 502-03 (S.D.N.Y. 2013)), aff'd, 712 F. App'x 88 (2d Cir. 2018).  "The decision whether to grant a severance motion is committed to the sound

---

[7] Ms. Li filed her complaint on October 1, 2024, and worked for CenterLight from June 2017 to December 2021.  (Comp. ¶¶ 19, 84.)  While Ms. Li's earlier employment may be outside the NYLL's six-year statute of limitations, CenterLight proffers no argument on this point.  The Court also notes that Ms. Li's claims were tolled by her July 20, 2022 complaint with the New York State Department of Labor, but the precise amount of tolling is unclear because Ms. Li does not allege when her administrative complaint concluded.  (Id. ¶ 85); see N.Y. Lab. L. § 198(3) (providing that the statute of limitations is tolled from the filing to when the commissioner's order becomes final or when the commissioner notifies that the investigation has concluded).

discretion of the trial court." State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988).

None of the five factors favors severance in this case. For the reasons discussed above with respect to supplemental jurisdiction, Ms. Li's NYLL claims are related to, and present questions of law or fact in common with, the Federal Plaintiffs' FLSA claims, so much so that severance and separate determination of them would be inefficient. Therefore, the Court denies Defendant CenterLight's motion insofar as it seeks to sever Ms. Li's claims against it from the rest of this action.

## CONCLUSION

For the foregoing reasons, Defendant CenterLight's motion to dismiss and, in the alternative, to sever is denied in its entirety. This Memorandum Order resolves docket entry no. 21. This case remains referred to Magistrate Judge Katharine H. Parker for general pretrial management.

SO ORDERED.

Dated: New York, New York
August 21, 2025

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge