UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F.
CHEN, MEI F. CHEN, HUI HE, HUI LI,
ZHAN J. LI, HUI X. RUAN, JIAN R.
XIAO, MEI Z. XIAO, MU Z. ZHANG, BI
Y. ZHENG, XIU X. ZHU,

Plaintiffs,

-against-

Case No. 1:24-cv-07401 (LTS) (KHP)

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., SENIOR WHOLE
HEALTH OF NEW YORK, INC.,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION
TO SENIOR WHOLE HEALTH OF NEW YORK, INC.'S MOTION TO DISMISS**

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

ARGUMENT.......................................................................................................................... 7

    I.      The Amended Complaint Meets the Pleading Requirements of Fed. R. Civ. P. 8...... 8

    II.     Plaintiffs Have Plausibly Alleged That SWHNY Is a Joint Employer ...................... 11

       A.  The Court Should Not Consider the Contract Appended to SWHNY's Motion to
           Dismiss. ....................................................................................................... 11

       B.  Plaintiffs Have Alleged Sufficient Facts to Show the Existence of a Vertical Joint
           Employment Relationship .............................................................................. 15

    III.    Plaintiffs' Claims Against SWHNY Are Timely........................................................ 20

CONCLUSION...................................................................................................................... 22

**TABLE OF AUTHORITIES**

**Cases**

*Barfield v. NYC Health & Hosp. Corp.*, 537 F.3d 132 (2d Cir. 2008) ....................................16, 18

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014) ............................................... 18

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) ................................................ 16

*Castillo v. Albert Einstein College of Med. Inc.*, 2025 WL 692124 (S.D.N.Y. Mar. 4, 2025) ....... 18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). ...................................... 12

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ............................................................ 12

*Fonville v. Legends Hosp., LLC*, 67 Misc.3d 1233(A), 128 N.Y.S.3d 432 (N.Y. Sup. Ct. 2020) .. 17

*Garcia v. ROC Nation LLC*, 2025 WL 1865965 (S.D.N.Y. July 2, 2025).................................... 11

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006).................... 12

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) ....................................................12, 14

*Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28 (1961)........................................ 15

*Gonzalez v. Tremson Recycling LLC*, 2025 WL 964552 (S.D.N.Y. Mar. 14, 2025)...................... 15

*Herman v. RSR Sec. Serv.*, 172 F.3d 132 (2d Cir. 1999)................................................ 16

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ........................................... 17

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).................................................... 16

*Jackson v. Bloomberg, L.P.* 298 F.R.D. 152 (S.D.N.Y. 2014)........................................... 20

*Lambert v. New Start Cap., LLC*, 2025 WL 2295254 (S.D.N.Y. Aug. 7, 2025) .......................... 18

*Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695 (S.D.N.Y. 2025) ........................................ 9

*Martin v. Sprint United Management Co.*, 273 F. Supp. 3d 404 (S.D.N.Y. 2017) ..................... 15

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012)................................. 20

*Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019) .................................................... 15

*Meyer v. Seidel*, 89 F.4th 117 (2d Cir. 2023) ................................................................. 12

*Milky Whey, Inc. v. HSBC Bank USA, N.A.*, 728 F. Supp. 3d 308 (S.D.N.Y. 2024) ..................... 11

*Mitchell v. Ceros, Inc.*, 2022 WL 748247 (S.D.N.Y. Mar. 10, 2022) .............................................. 18

*New York v. Scalia*, 490 F. Supp. 3d 748 (S.D.N.Y. 2020) .............................................................. 15

*Nicosia v. Amazon.com*, 834 F.3d 220 (2d Cir. 2016) ................................................................. 12

*Ortiz v. Consol. Edison Co. of New York, Inc.*, No. 1:22-CV-08957 (JLR) (GS), 2025 WL
    2717309 (S.D.N.Y. Sept. 24, 2025) ................................................................................. 8

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ......................................................... 15-16

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ......................................................................... 9

*Sanchez v. E.I.G. Auto Salvage, Inc.*, 2023 WL 5827669 (S.D.N.Y. Sept. 8, 2023) ..................... 17

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021); ...................................... 12

*Van Duser v. Tozzer Ltd.*, 2024 WL 4635495 (S.D.N.Y. Oct. 31, 2024) ...................................... 18

*Vantone Group Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd.*, 2015 WL 4040882, (S.D.N.Y.
    July 2, 2015) ................................................................................................................. 8, 11

*Vicente v. Ljubica Contractors LLC*, 2025 WL 100897 (S.D.N.Y. Jan. 14, 2025) ........................ 17

*Weng v. HungryPanda US, Inc.*, 2022 WL 292799 (S.D.N.Y. Jan. 31, 2022) .............................. 18

*Wydner v. McMahon*, 360 F.3d 73 (2d Cir. 2004) .......................................................................... 8

*Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61 (2d Cir. 2003) ................................................... 15

**Statutes**

29 U.S.C. § 203 .............................................................................................................................. 15

N.Y. Lab. Law § 198(3) .................................................................................................................. 21

N.Y. Lab. Law §§ 190(2)................................................................................................. 15

**Rules**

Fed. R. Civ. P. 8..........................................................................................1, 8, 11

Fed. R. Civ. P. 12(b)(6)..............................................................................11-12

Fed. R. Civ. P. 15(c)..................................................................................21

**Other Authorities**

USDOL Administrator's Interpretation No. 2016-1, 2016 WL 284582 (Jan. 20, 2016).. .... 16-17

**PRELIMINARY STATEMENT**

On October 28, 2025, Senior Whole Health of New York, Inc. ("SWHNY") moved to dismiss Plaintiffs' Amended Complaint. ECF No. 102. In its motion, SWHNY argues that (1) Plaintiffs violate the pleading standards of Rule 8 of the Federal Rules of Civil Procedure by impermissibly grouping the allegations against the three Defendants in this action together; (2) Plaintiffs failed to plausibly allege that SWHNY is a joint employer under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"); and (3) Plaintiffs' claims are barred by the statute of limitations.

SWHNY's motion should be denied in its entirety. Plaintiffs have more than adequately met Fed. R. Civ. P. 8's lenient pleading standard in their Amended Complaint ("AC"). ECF No. 77. Plaintiffs have made individualized allegations regarding SWHNY that are sufficient to give SWHNY fair notice of the claims against it and the grounds upon which those claims rest. To the extent that Plaintiffs have grouped SWHNY with the other MLTC Defendant, it is because Defendant SWHNY and Defendant CenterLight Healthcare, Inc. ("CenterLight") are alleged to have adopted the same policies and practices with respect to Plaintiffs and are jointly and severally liable for the same FLSA and NYLL violations. Plaintiffs have also pleaded sufficient, particularized facts to show the existence of a vertical joint employment relationship between SWHNY and the Plaintiffs who were employed to provide care services to SWHNY's members. Finally, as already addressed by the Court in its Memorandum Order issued on August 21, 2025 denying Defendant CenterLight's motion to dismiss, Plaintiffs' claims were tolled by the complaints they filed at the New York State Department of Labor ("NYSDOL") and are therefore timely. ECF No. 82.

1

**FACTUAL BACKGROUND**

Plaintiffs are home care aides who seek compensation for years of wage theft. Though they worked 24-hour shifts without sleep and meal breaks, Plaintiffs were paid for only 13-hours for each 24-hour shift, in violation of both federal and state labor laws.

Plaintiffs were all hired directly by Defendant GreatCare, Inc. ("GreatCare"), a licensed home care services agency, to provide care services to elderly or disabled Medicaid recipients. GreatCare handled the day-to-day aspects of Plaintiffs' employment, taking primary responsibility for assigning Plaintiffs to specific care recipients, setting Plaintiffs' weekly work schedules, determining the personnel policies applicable to Plaintiffs, and handling Plaintiffs' paperwork, payroll and taxes. AC ¶ 74. However, Plaintiffs allege that it was Defendant SWHNY, Defendant CenterLight, and the other non-party managed long-term care companies ("MLTCs") who controlled the terms and conditions of Plaintiffs' employment that resulted in Plaintiffs working 24-hour shifts for which they received less than the minimum wage per hour and no overtime pay. AC ¶¶ 58-73. As such, SWHNY, CenterLight, and the other MLTCs were Plaintiffs' joint employers.

Plaintiffs do not allege or claim that SWHNY jointly employed all fourteen Plaintiffs. Instead, Plaintiffs allege that SWHNY jointly employed nine of the fourteen Plaintiffs: Zhu H.L. Lin, Li Chen, Mei F. Chen, Xiu F. Chen, Hui He, Hui Li, Zhan J. Li, Hui X. Ruan, Mu Z. Zhang, and Xiu X. Zhu, for some or all of the time that they were employed by GreatCare. AC ¶ 52.

Plaintiffs allege that SWHNY jointly employed Ms. Zhu H.L. Lin, Ms. Xiu X. Zhu, and Ms. Zhan J. Li as a care team to provide care services to Ms. C., an elderly woman who lived in Manhattan, New York. AC ¶ 103. Ms. Zhu H.L. Lin alleges she was part of Ms. C.'s care team from approximately June 2, 2016 to approximately May 29, 2018 and from

approximately June 3, 2018 until approximately March 8, 2021 during which time she worked between one and three 24-hour shifts per week. AC ¶¶ 23, 104. Ms. Xiu X. Zhu alleges she was part of Ms. C.'s care team from approximately September 9, 2017 until approximately February 11, 2021 during which time she worked three consecutive 24-hour shifts per week. AC ¶¶ 49, 105. And Ms. Zhan J. Li alleges that she was part of Ms. C.'s care team from approximately December 20, 2020 until approximately March 7, 2021 during which time she worked one 24-hour shift per week. AC ¶¶ 39, 106.

Ms. Lin, Ms. Zhu, and Ms. Li had many care responsibilities that required the Plaintiffs to attend to Ms. C. at all times throughout their 24-hour shifts and precluded them from obtaining eight hours of sleep and five continuous, uninterrupted hours of sleep per shift. AC ¶¶ 107-112. While providing care services to Ms. C., Ms. Lin, Ms. Zhu, and Ms. Li also did not have adequate sleeping accommodations; instead, Plaintiffs were provided with only a sofa that was just a few steps away from Ms. C.'s bed on which to rest. AC ¶ 111. Plaintiffs were also unable to receive three full hours of completely duty-free meal breaks per 24-hour shift. AC ¶ 113.

Each of these working conditions was known to SWHNY, who was responsible for completing a social assessment for Ms. C. that included an evaluation of whether her aides would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during an eight-hour period of sleep and whether her home had adequate sleeping accommodations for her aides, and was responsible for developing Ms. C.'s plan of care, which specified the type, scope, amount, and frequency of assistance that would be delivered to Ms. C., and formed the basis of Ms. Lin, Ms. Zhu, and Ms. Li's work duties. AC ¶¶ 58-59, 65-67. Nevertheless, SWHNY authorized Ms. C. for "live-in" services, which required Plaintiffs to work continuously during each 24-hour shift, providing uninterrupted

3

care for 24-hour periods in accordance with the care plan developed by SWHNY. AC ¶ 70.

Moreover, SHWNY reimbursed GreatCare for "live-in" services at a rate that covered

Plaintiffs' wages for only 13 out of every 24 hours worked and did not cover any overtime

wages. AC ¶¶ 71-72. GreatCare was required to seek SWHNY's permission whenever it

sought to pay Plaintiffs for more than 13 hours per each 24-hour shift or if GreatCare sought

to pay overtime wages. AC ¶73. As a result of SWHNY's decisions, Ms. Lin, Ms. Zhu, and

Ms. Li were paid for no more than 13 hours whenever they worked a 24-hour "live-in" shift

providing care services to Ms. C., were paid less than the statutory minimum wage per hour,

were paid less than the total hourly compensation required by the New Yok Home Care

Workers Wage Parity Act ("Wage Parity Act"), and received no "spread of hours" pay when

they worked more than 10 hours per day and no overtime pay when they worked more than

forty hours per week. AC ¶¶ 114, 131-133.

Additionally, Ms. Zhan J. Li alleges that she was jointly employed by SWHNY from

approximately October 31, 2016 until approximately September 17, 2020 to provide 24-hour,

"live-in" care services three, consecutive days per week to a couple, Mr. and Ms. P., who

lived in Manhattan. AC ¶¶ 39, 116-117. Plaintiff Hui Li alleges that she also provided care

services to Mr. and Ms. P. during the time that she was jointly employed by GreatCare and

SWHNY from approximately September 2, 2015 through approximately October 26, 2018

and on February 3, 2023. AC ¶¶ 36, 205-206. Both Plaintiffs had many care responsibilities

that required them to attend to Mr. and Ms. P. at all times throughout their 24-hour shifts

and precluded them from obtaining eight hours of sleep and five continuous, uninterrupted

hours of sleep per shift. AC ¶¶ 118-119, 207-210, 212. Moreover, Plaintiffs were not provided

with adequate sleeping accommodations while providing care services to Mr. and Ms. P.

AC ¶¶ 119, 213. Each of these working conditions was known to SWHNY. AC ¶¶ 58-59, 65-

4

67. Nevertheless, SWHNY authorized Mr. and Ms. P. for "live-in" services and made decisions that resulted in Plaintiffs being paid less than the statutory minimum wage and the total hourly compensation required by the Wage Parity Act whenever they worked a 24-hour shift providing care services to Mr. and Ms. P, receiving no "spread of hours" pay whenever they worked more than 10 hours per day, and receiving no overtime pay when they worked more than forty hours per week. AC ¶¶ 70-72, 131-133, 216, 223-225.

Plaintiffs further allege that Ms. Li Chen, Ms. Xiu F. Chen, and Ms. Mu Z. Zhang were also jointly employed by SWHNY as a care team to provide services to Ms. W., an elderly woman who lived in Queens, New York. AC ¶¶ 135-146. Ms. Li Chen alleges she was part of Ms. W.'s care team from January 2015 through February 2016 during which time she worked three consecutive 24-hour shifts per week. AC ¶ 136. Ms. Xiu F. Chen alleges she was part of Ms. W.'s care team from approximately February 19, 2016 until approximately March 30, 2021 during which time she worked three consecutive 24-hour shifts per week. AC ¶¶ 31, 137. And Ms. Mu Z. Zhang alleges she was part of Ms. W.'s care team from approximately January 1, 2015 until March 2021. AC ¶¶ 47, 138. Ms. Li Chen and Ms. Zhang also allege that they had been employed by SWHNY to provide care services to Ms. W. prior to January 2015 when Ms. W. was connected to a different service provider named Amazing Home Care (not GreatCare). AC ¶ 139.

Ms. Li Chen, Ms. Xiu F. Chen, and Ms. Zhang had many care responsibilities that required the Plaintiffs to attend to Ms. W. at all times throughout their 24-hour shifts and precluded them from obtaining eight hours of sleep and five continuous, uninterrupted hours of sleep per shift. AC ¶¶ 140, 142-144. Plaintiffs were also unable to receive three full hours of completely duty-free meal breaks per 24-hour shift. AC ¶ 145.

Plaintiffs allege that SWHNY was aware of Ms. Li Chen, Ms. Xiu F. Chen, and Ms.

5

Zhang's working conditions. Not only was SWHNY responsible for completing a social assessment for Ms. W. that included an evaluation of whether her aides would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during an eight-hour period of sleep, it was also responsible for developing Ms. W.'s plan of care, which specified the type, scope, amount, and frequency of assistance that would be delivered to Ms. W., and formed the basis of the Plaintiffs' work duties. AC ¶¶ 58-59, 65-67. Plaintiffs also allege that Ms. Li Chen, Ms. Xiu F. Chen, and Ms. Zhang occasionally met with nurses employed by SWHNY and told the nurses about Ms. W.'s consistent and frequent needs throughout the night. AC ¶ 141. Nevertheless, SWHNY authorized Ms. W. for "live-in" services, which required Plaintiffs to work continuously during each 24-hour shift, providing uninterrupted care for 24-hour periods in accordance with the care plan developed by SWHNY. AC ¶ 70. Moreover, SWHNY reimbursed GreatCare for "live-in" services at a rate that covered Plaintiffs' wages for only 13 out of every 24 hours worked and did not cover any overtime wages. AC ¶¶ 71-72. GreatCare was required to seek SWHNY's permission whenever it sought to pay Plaintiffs for more than 13 hours per each 24-hour shift or if GreatCare sought to pay overtime wages. As a result of SWHNY's decisions, Ms. Li Chen, Ms. Xiu F. Chen, and Ms. Zhang were paid for no more than 13 hours whenever they worked a 24-hour "live-in" shift providing care services to Ms. W., were paid less than the statutory minimum wage per hour, were paid less than the total hourly compensation required by the Wage Parity Act, and received no "spread of hours" pay whenever they worked more than 10 hours per day and no overtime pay whenever they worked more than forty hours per week. AC ¶¶ 146, 153-155.

Plaintiffs also allege that Ms. Hui X. Ruan was jointly employed by SWHNY from approximately March 5, 2016 until approximately May 4, 2019, from approximately July 14,

2019 until approximately August 4, 2019, and from approximately February 26, 2022 until approximately September 2, 2023. AC ¶ 42. Plaintiffs further allege that whenever Ms. Ruan worked a 24-hour "live-in" shift providing care services to one of SWHNY's members, Ms. Ruan had many care responsibilities that required Ms. Ruan to attend to SWHNY's member at all times throughout her 24-hour shift and precluded her from obtaining eight hours of sleep and five continuous, uninterrupted hours of sleep per shift. AC ¶¶ 239-243, 255. Ms. Ruan was also unable to receive three full hours of completely duty-free meal breaks per 24-hour shift. AC ¶ 256.

Plaintiffs allege that these working conditions were known to SWHNY, particularly as Ms. Ruan occasionally met with nurses and told the nurses about the consistent and frequent needs that SWHNY's member, Ms. C, had throughout the night. AC ¶¶ 58-59, 65-67, 242-243. Nevertheless, SWHNY authorized its member for "live-in" services and made decisions that resulted in Ms. Ruan being paid less than the statutory minimum wage and the total hourly compensation required by the Wage Parity Act whenever she worked a 24-hour shift, receiving no "spread of hours" pay whenever she worked more than 10 hours per day, and receiving no overtime pay when she worked more than forty hours per week. AC ¶¶ 70-72, 258, 264-267.[1]

### ARGUMENT

Defendant SWHNY argues that Plaintiffs' Amended Complaint should be dismissed

---

[1] Plaintiffs also allege the SWHNY jointly employed Plaintiff Mei F. Chen from approximately January 2, 2019 to January 4, 2019 and Plaintiff Hui He from approximately July 2, 2016 until approximately September 7, 2017 and on December 21, 2018. AC ¶¶ 28, 34. Since amending their complaint, Plaintiffs now have information to show that Ms. Chen worked two 9-hour shifts for SWHNY and Ms. He worked two 8-hour shifts and one 24-hour shift for SWHNY. The Amended Complaint alleges that SWHNY is jointly liable for all violations of the federal and state labor laws and Wage Parity Act during their period of joint employment by SWHNY. AC ¶¶ 300-338.

because: (1) it violates the pleading requirements of Fed. R. Civ. P. 8 by impermissibly grouping Defendants together, (2) fails to plausibly allege that SWHNY was a joint employer, and (3) Plaintiffs' claims do not fall within the applicable statute of limitations.

Because Plaintiffs adequately plead specific allegations against SWHNY and give it fair notice of the grounds upon which they are based, plausibly allege that SWHNY was a joint employer, and their claims fall within the applicable statute of limitations, SWHNY's motion should be denied in its entirety.

## I.  The Amended Complaint Meets the Pleading Requirements of Fed. R. Civ. P. 8

Fed. R. Civ. P. 8 provides that "a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…" Courts have found Rule 8 to be satisfied so long as a complaint provides "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Vantone Group Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (citing *Atuahene v. City of Hartford*, 10 F.App'x 33, 34 (2d Cir. 2001). A complaint "need not elaborate extensively on the details with regard to each defendant to comply with Rule 8. The test of Rule 8 pleading sufficiency is simply whether Defendants have received adequate notice of the claims." *Id.*, at *4 (citing *Wydner v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)). A complaint that names multiple defendants must provide "a plausible factual basis to distinguish the conduct of each of the defendants" in order to meet Rule 8's requirements. *See Ortiz v. Consol. Edison Co. of New York, Inc.*, No. 1:22-CV-08957 (JLR) (GS), 2025 WL 2717309, *20 (S.D.N.Y. Sept. 24, 2025). However, "Rule 8 does not necessarily require ... that the complaint separate out claims against individual defendants." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004).  Instead, "[d]ismissal pursuant to the rule 'is usually reserved for

8

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 737-38 (S.D.N.Y. 2025) (same).

Here, Plaintiffs' allegations in Amended Complaint are not at all "disguised." The gravamen of their claims against Defendant SWHNY and Defendant CenterLight is that they adopted the same policies and practices with respect to authorizing their members for 24-hour "live-in" services, developing their members' care plans, and establishing the compensation policies that applied to Plaintiffs when they provided care services to their members. Specifically, Plaintiffs allege that both SWHNY and CenterLight were responsible for assessing the needs of their members, AC ¶¶ 58-59; both SWHNY and CenterLight authorized their members for 24-hour "live-in" services instead of "split shift" services even though they were both aware that their members had care needs that precluded Plaintiffs from obtaining five continuous hours of sleep, AC ¶ 65; both SWHNY and CenterLight required GreatCare to schedule only one aide to work an entire 24-hour shift, alone, whenever they decided to authorize "live-in" services instead of split-shift services, AC ¶ 69; and both SWHNY and CenterLight were responsible for creating their members' care plans that formed the basis of Plaintiffs' work duties and required Plaintiffs to work continuously during each 24-hour shift, AC ¶¶ 66-67, 70. Plaintiffs further allege that both SWHNY and CenterLight reimbursed GreatCare for "live-in" services at a rate that covered Plaintiffs' wages for only 13 out of every 24 hours worked and both SWHNY and CenterLight required that GreatCare request permission from them whenever GreatCare sought to pay Plaintiffs for more than 13 hours per each 24-hour shift or overtime wages. AC ¶¶ 71-73. Plaintiffs also allege that SHWNY, like CenterLight, retained the power to remove those Plaintiffs

9

assigned by GreatCare to work with its members. AC ¶ 77. Therefore, for both clarity and succinctness, when allegations relate to both SWHNY and CenterLight, Plaintiffs refer to SWHNY and CenterLight together as the "MLTC Defendants." AC ¶ 5.

However, SWHNY did not jointly employ the same Plaintiffs as CenterLight during the same time periods. The Amended Complaint therefore carefully distinguishes the Plaintiffs and the periods of employment that relate to SWHNY alone. AC ¶¶ 23, 26, 28, 31, 34, 36, 39, 42, 47, 49, 52, 103-106, 116-17, 135-139, 205-206. Plaintiffs also allege that the role, actions, and responsibilities of Defendant GreatCare were different from those of the MLTC Defendants: GreatCare hired Plaintiffs, assigned them to specific care recipients, set Plaintiffs' weekly work schedules, handled their payroll and taxes, determined the personnel policies applicable to them, and paid Plaintiffs their wages, albeit within the parameters set by SWHNY and CenterLight. AC ¶¶ 7, 74-76, 91, 94, 115, 120-124, 126, 147-148, 157-175, 198-199, 221, 227 257, 260-261, 269-299. GreatCare also had the power to terminate Plaintiffs' employment with the agency. AC ¶ 76

Ultimately, the Amended Complaint alleges that all of the Plaintiffs were paid less than the statutory minimum wage and less than the total hourly compensation required by the Wage Parity Act whenever they worked a 24-hour "live-in" shift, never received "spread of hours" pay when they worked a spread of more than ten hours per shift, never received overtime pay when they worked more than forty hours per week, and never received the proper wage notices and paystubs required by the New York Labor Law. AC ¶¶ 131-133, 153-155, 222-225, 264-267. Liability for these violations of the law rests on Plaintiffs' employers, jointly and severally. Therefore, Plaintiffs do not single out the liability of SWHNY for these violations because its liability is identical to its co-employers and co-Defendants. AC ¶¶ 300-338. Instead, the Amended Complaint refers to the joint employers

together simply as "Defendants". *Id.* "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Group Ltd. Liability Co.*, 2015 WL 4040882, at *4; *see also Garcia v. ROC Nation LLC*, 1:24-cv-7587-GHW, 2025 WL 1865965, at *5 (S.D.N.Y. July 2, 2025) (same). Where there is a basis to distinguish the conduct of SWHNY from the conduct of the other Defendants, the Amended Complaint provides the necessary facts to give SWHNY "fair notice of what the [Plaintiffs'] claim is and the ground upon which it rests." *Vantone Group Ltd. Liability Co.*, 2015 WL 4040882, at *3. Therefore, the Amended Complaint meets the pleading requirements of Fed. R. Civ. P. 8.

## II. Plaintiffs Have Plausibly Alleged That SWHNY Is a Joint Employer

SWHNY also argues that Plaintiffs' Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). However, drawing all reasonable inferences in Plaintiffs' favor and assuming all well-pleaded factual allegations to be true, as is required when considering a Rule 12(b)(6) motion, the factual content of Plaintiffs' Amended Complaint more than allows the Court to draw the reasonable inference that SWHNY was the joint employer of the Plaintiffs who provided care services to its members and is therefore liable for violations of the federal and state labor law.

### A.    The Court Should Not Consider the Contract Appended to SWHNY's Motion to Dismiss.

Generally, when considering a motion to dismiss, a court only considers the information within the four corners of the operative complaint, unless there are written instruments attached to the complaint as an exhibit, incorporated by reference, or, even if not incorporated by reference, are "integral" to the complaint. *Milky Whey, Inc. v. HSBC*

11

*Bank USA, N.A.*, 728 F. Supp. 3d 308, 312 (S.D.N.Y. 2024). A document is considered "integral" to the complaint when the complaint relies heavily upon its terms and effects. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "This generally occurs when the material considered is 'a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason…was not attached to the complaint.'" *Nicosia v. Amazon.com*, 834 F.3d 220, 231 (2d Cir. 2016) (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Meyer v. Seidel*, 89 F.4th 117, 134 (2d Cir. 2023). Moreover, for a document to be "integral" to the complaint, there must be no dispute regarding the authenticity or accuracy of the document and no materially disputed issues of fact regarding the document's relevance. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor made to suit the needs of defendants." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016).

　　In this case, SWHNY seeks to incorporate into the Court's consideration two contracts between SWHNY and GreatCare that were neither attached to nor explicitly referenced in the Amended Complaint. *See* Declaration of Kaitlyn Grajek ("Grajek Decl."), Exhibit A ("Ex. A"), ECF No. 104-2; Grajek Decl., Exhibit B ("Ex. B"), ECF No. 104-3. The Court should decline to consider both contracts. First, as a factual matter, Plaintiffs did not have possession of the contracts or knowledge of the contract provisions until the two contracts were submitted to the Court. Therefore, Plaintiffs could not have relied on the

12

contracts in drafting their complaint. Second, the two contracts appear to have only limited relevance since the Plaintiffs were employed by SWHNY from a period spanning from 2015 until 2025, *see, e.g.*, AC ¶ 47, but the contracts are dated February 1, 2012 and March 1, 2016 respectively. Grajek Decl. Ex. A, Ex. B. Additionally, the March 1, 2016 contract is for fiscal intermediary services in relation to the consumer directed personal assistance program, but none of the Plaintiffs allege that they were employed as part of the consumer directed program. Grajek Decl. Ex. B.

The authenticity and accuracy of these documents are highly questionable, as both contracts refer to attachments that were omitted. *See* Grajek Decl., Ex. A, ¶¶ 4.1 ("Compensation. PLAN shall compensate Provider for Provider Services provided under this Agreement as set forth in Attachment 'C,' as revised from time-to-time by the Parties."), 23 ("MEDICARE ADVANTAGE PROVISIONS. Provider agrees to comply with the provisions of Attachment 'D', which is expressly incorporated into this Agreement and is binding upon the Parties to this Agreement."), 25 ("STANDARD CLAUSES. The 'New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts', attached this Agreement as Attachment E, are expressly incorporated into this Agreement and are binding upon the Parties to this Agreement."); Grajek Decl., Ex. B., ¶ 20 ("Model Contract. This Agreement incorporates the pertinent obligations under the Medicaid Contract, including but not limited to the Medicaid Managed Care and/or the Family Health Plus contract, and/or the Managed Long Term Care Plan contract, between the MCO and DOH as if set forth fully herein.")

Were these referenced attachments included, they likely would be the same or similar to those documents attached there to the Declaration of Carmela Huang ("Huang Decl.") as Exhibits 1-3, which are the Model Contracts and one of the compensation

13

agreements referred to in the contracts. They would clearly demonstrate that, contrary to SWHNY's claim that it did not have "anything having to do with the terms and conditions of any contracts under which Plaintiffs worked," ECF No. 103 at 2, it in fact exercised control over the Plaintiffs' work and could plausibly be deemed a joint employer: SWHNY paid GreatCare for Plaintiffs services at rates that covered only 13 hours of every 24-hour shift, *see* Huang Decl., Ex. 1, Amendment to the Provider Agreement Between SWHNY and GreatCare, ¶ 1;

- SWHNY was required to comply—and to ensure the compliance of GreatCare— with the Wage Parity Act, *see* Huang Decl., Exhibit 2, Medicaid Advantage Plus (MAP) Model Contract (January 1, 2017-December 31, 2021) ("Ex. 2"), ¶¶ 22.11 ("Home Care Services Worker Wage Parity Rules. The contractor is required to comply with the home care worker wage parity law..."); Huang Decl., Exhibit 3, Managed Long-Term Care Partial Capitation Contract (January 1, 2017- December 31, 2021) ("Ex. 3"), Article VII.K ("Home Care Worker Wage Parity. The Contractor is required to comply with the home care worker wage parity law..."); and

- SWHNY was required to comply with all applicable provisions of the FLSA and to establish protocols establishing a verification system to demonstrate compliance with requirements, including for tracking hours worked on live-in cases, *see* Huang Decl., Ex. 2, ¶ 22.13; Huang Decl., Ex. 3, Article VII.L.

SWHNY's omissions create precisely the improper "bespoke factual record, tailor made to suit the needs of defendants" cautioned against by the Second Circuit. *Goel,* 820 F.3d at 560. For these reasons, the contracts should not be considered as part of Defendant SWHNY's efforts to dismiss the Amended Complaint.

14

### B.    Plaintiffs Have Alleged Sufficient Facts to Show the Existence of a Vertical Joint Employment Relationship

Under the FLSA, "employee" is defined as "any individual employed by an employer," 29 U.S.C.§ 203(e)(1), and "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.§ 203(d). Consistent with "[t]he principal congressional purpose in enacting the FLSA…to protect all covered workers from substandard wages and oppressive working hours," *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019), these definitions are intentionally broad and comprehensive to "apply to many persons and working relationships that did not historically fall within an employer-employee category." *New York v. Scalia*, 490 F. Supp. 3d 748, 758 (S.D.N.Y. 2020) (internal quotation marks omitted). These terms are similarly defined by the NYLL, and cover "any person employed for hire by an employer in any employment" and "any person, corporation, limited liability company, or association employing an individual in any occupation, industry, trade, business or service." N.Y. Lab. Law §§ 190(2) (defining "employee"), (3) (defining "employer").

"An individual may simultaneously have multiple employers, such that all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]." *Gonzalez v. Tremson Recycling LLC*, 24-CV-1612 (JGK) (RWL), 2025 WL 964552, at *5 (S.D.N.Y. Mar. 14, 2025) (quoting *Martin v. Sprint United Management Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017)) (internal quotation marks omitted)). The determination of whether an entity is a joint employer "is to be based on 'the circumstances of the whole activity'… viewed in light of 'economic reality'." *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 71 (2d Cir. 2003) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)).

15

Courts look beyond factors of mere "formal control"—not limiting their inquiries to whether the alleged employer had the power to hire or fire the employees, supervised and controlled the work schedule or conditions of employment, determined the rate and method of payment, or maintained employment records, as these factors are merely sufficient and not necessary to establishing an employer relationship. *See, e.g., Zheng*, 355 F.3d at 72-77; *Barfield v. NYC Health & Hosp. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12-13 (2d Cir. 1984). Instead, courts also examine the degree of "functional control" exercised over a worker, *see Barfield*, 537 F.3d at 143, and whether the putative joint employer had "operational control" and/or "potential power" to control employees, even if not exercised. *Irizarry v. Catsimatidis*, 722 F.3d 99, 107-11 (2d Cir. 2013). "Joint employment may additionally exist when an employee of one employer...is also, with regard to the work performed for the intermediary employer, economically dependent on another employer..." USDOL Administrator's Interpretation No. 2016-1, "Joint employment under the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act," 2016 WL 284582 (Jan. 20, 2016) ("Administrator's Interpretation No. 2016-1"), at *4. "[A]ny relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Serv.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Rutherford*, 331 U.S. at 730). "[T]he economic reality rather than technical concepts is to be the test of employment." *Goldberg*, 366 U.S. at 33 (internal quotation marks omitted). Ultimately, whether a defendant qualifies as an employer under the FLSA is "determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry*, 722 F.3d at 104. And "[w]hen two or more employers jointly employ an employee, the employee's hours worked for all of the joint employers during the workweek are aggregated and considered as one employment, including for purposes of calculating whether overtime pay is due."

16

Administrator's Interpretation No. 2016-1, at *1.

Although "[n]either the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL...district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Sanchez v. E.I.G. Auto Salvage, Inc.*, 21 Civ. 8266 (PAE) (SN), 2023 WL 5827669, at *18 (S.D.N.Y. Sept. 8, 2023) (citing *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015)). And courts apply the same economic reality test under both federal and state labor laws. *See, e.g., Vicente v. Ljubica Contractors LLC*, 18-CV-419 (VSB), 2025 WL 100897, at *7 (S.D.N.Y. Jan. 14, 2025) ("When courts ask whether an individual or entity is liable as an 'employer' under the FLSA or the NYLL, they answer the question by using the 'economic realities' test..."); *Fonville v. Legends Hosp., LLC*, 67 Misc.3d 1233(A), 128 N.Y.S.3d 432 (N.Y. Sup. Ct. 2020), aff'd, 195 A.D.3d 485, 145 N.Y.S.3d 334 (2021) ("In determining whether an entity is an employer for purposes of the Labor Law, New York courts have adopted the economic reality test set forth by the federal courts.")

Joint employer relationships may be classified as either "horizontal," where an admitted employment relationship exists between one employee and several, potential joint employers that are themselves related (through, for example, shared management or facilities), or "vertical," where one employer plays an intermediary role *vis a vis* the other potential joint employer on which the intermediary employer is also economically dependent. Administrator's Interpretation, at *2. "[T]he vertical joint employment analysis must be an economic realities analysis and cannot focus only on control." *Id.* at *9. Factors that are probative to an economic realities analysis may include: (1) whether the potential joint employer directed, controlled, or supervised the work "beyond a reasonable degree of

17

contract performance oversight," (2) whether the potential joint employer controlled employment conditions, (3) whether the potential joint employer had a durable, long-term relationship with the employee, (4) whether the employee's work was repetitive and rote, and (5) whether the employee's work was integral to the potential joint employer's business. *Id.* at *9-10.

It is well-established by courts in the Second Circuit that mere "boilerplate allegations that simply recite the elements of the economic reality test are insufficient to state a claim." *Mitchell v. Ceros, Inc.*, 21 Civ. 1570 (KPF), 2022 WL 748247, at *4 (S.D.N.Y. Mar. 10, 2022) (citing *Weng v. HungryPanda US, Inc.*, 2022 WL 292799, at *6 (S.D.N.Y. Jan. 31, 2022)). However, "[a]s the Second Circuit has repeatedly stated, joint employment status is 'a question of fact not suitable to resolution on a motion to dismiss.'" *Castillo v. Albert Einstein College of Med. Inc.*, 24Civ. 984, 2025 WL 692124, at *4 (S.D.N.Y. Mar. 4, 2025) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)); *Barfield* 537 F.3d at 143-44; *Lambert v. New Start Cap., LLC*, 1:24-cv-8066-GHW, 2025 WL 2295254, at *20 (S.D.N.Y. Aug. 7, 2025). Therefore, even "some factual detail warranting discovery" is "enough for plaintiffs to satisfy their burden at this early stage." *Van Duser v. Tozzer Ltd.*, 23-CV-9329 (AS), 2024 WL 4635495, at *4 (S.D.N.Y. Oct. 31, 2024) (denying dismissal even though complaint contained mostly boilerplate language because complaint also described alleged employer going into the bars, yelling at plaintiffs about what to do and how to do it, attending staff meetings, and telling plaintiff to fix lights, fans, and change music); *see also Mitchell*, 2022 WL 748247, at *4 (finding that plaintiff plausibly alleged an employer relationship despite mainly boilerplate allegations because plaintiff also described alleged employer as interviewing Plaintiff and being a member of a Slack channel where management decisions were discussed, even though he was not being responsible for

18

Plaintiff's day-to-day supervision).

Here, Defendant SWHNY misperceives the legal theory supporting Plaintiffs' allegations with respect to its employer status. Plaintiffs allege the existence of a vertical joint employer relationship, where SWHNY's control over Plaintiffs' working conditions were mediated through GreatCare. Plaintiffs do not simply repeat boilerplate, formulaic recitations of the various formal and functional control factors articulated by the Second Circuit. Instead, Plaintiffs' Amended Complaint is replete with particularized facts illustrating that Plaintiffs were almost wholly economically dependent on SWHNY when it provided care services to SWHNY's members. *See* Administrator's Interpretation, at *9 ("To the extent that the potential joint employer has the power to hire or fire the employee, modify employment conditions, or determine the rate or method of pay, such control indicates that the employee is economically dependent on the potential joint employer.") As a direct result of SWHNY's policies and practices, the Plaintiffs it employed were forced to work 24-hour shifts for only 13 hours of pay at rates that fell below the lawful minimum wage providing care that was dictated by SWHNY. SWHNY, alone, decided whether an aide assigned to care for one of its members would work a 24-hour, "live-in" shift or a shift of shorter duration, AC ¶¶ 57-65, 68-70; SWHNY had exclusive control in setting the reimbursement rate paid to GreatCare for work performed by Plaintiffs and unilaterally decided that Plaintiffs' work on "live-in" cases would be reimbursed for 13 hours only, AC ¶ 71; SWHNY set its reimbursement rate at an amount that did not allow Plaintiffs' to be paid for every hour worked at the statutory minimum wage rate or to receive any overtime wages AC ¶ 72; SWHNY created the plan of care that formed the basis of Plaintiffs' work duties, AC ¶ 66-67; SWHNY required that GreatCare seek its permission whenever GreatCare wanted to pay Plaintiffs for more than 13 hours per shift, AC ¶ 73; and SWHNY had the

19

power to remove Plaintiffs from work assignments with their members, AC ¶ 77. Drawing all reasonable inferences from these allegations in Plaintiffs' favor, Plaintiffs have adequately alleged that SWHNY is a joint employer.

### III.  Plaintiffs' Claims Against SWHNY Are Timely

Plaintiffs' claims are timely within the relevant statutes of limitation provided by FLSA or NYLL or both. They allege that SWHNY jointly employed Plaintiffs Zhu H.L. Lin, Li Chen, Mei F. Chen, Xiu F. Chen, Hui He, Hui Li, Zhan J. Li, Hui X. Ruan, Mu Z. Zhang, and Xiu X. Zhu for some or all of the time that they were employed by GreatCare. AC ¶ 52.[2] Due to the deliberate failure of Defendant GreatCare to identify the MLTCs associated with each Plaintiff, Plaintiffs were only able to amend their complaint to add SWHNY on August 18, 2025 after subpoenaing information from HHAeXchange. ECF No. 77. GreatCare's failure was a flagrant violation of Magistrate Judge Parker's February 19, 2025 order. The Court extended Plaintiffs' deadline to file an amended complaint to August 25, 2025. *See* February 19, 2025 Post-Conference Order, ECF No. 40; Plaintiffs' Motion to Compel Discovery and Motion for Contempt Sanctions Against Defendant GreatCare, Inc., ECF No. 67; July 24, 2025 Post-Conference Order, No. 73.   And Plaintiffs filed their

---

[2] SWHNY argues that equitable tolling of Plaintiffs' claims is unwarranted. Plaintiffs have not requested equitable tolling because their claims fall squarely within the applicable statutes of limitations. However, if they were to request equitable tolling, the Court would be well within its discretion to grant it. Courts "may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiff [has] acted with reasonable diligence in pursuing [his] claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Jackson v. Bloomberg, L.P.* 298 F.R.D. 152, 170 (S.D.N.Y. 2014); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (similar). Although equitable tolling was granted in these cases in the context of moving for conditional certification, the principle remains the same. The Court has the discretion to avoid inequitable circumstances, as here, when Plaintiffs have pursued their claims diligently and in extraordinary circumstances where GreatCare flagrantly ignored the Court's order.

Amended Complaint well within the time allowed by Magistrate Judge Parker.

Ms. Hui X. Ruan and Ms. Mu Z. Zhang's FLSA claims also fall squarely within the two-year statute of limitations. Plaintiffs allege that Ms. Hui X. Ruan was employed by SWHNY until approximately September 2, 2023 and Ms. Mu Z. Zhang was employed by SWHNY until June 5, 2025. AC ¶¶ 42, 47. The FLSA provides a two-year statute of limitations, unless willfulness is alleged. 29 U.S.C. § 255(a).

Plaintiffs additionally allege that Ms. Xiu F. Chen was jointly employed by SWHNY until approximately February 16, 2023, and Ms. Hui Li was employed by SWHNY on February 3, 2023. AC ¶¶ 31, 36. Pursuant to Fed. R. Civ. P. 15(c), these Plaintiffs' FLSA claims relate back to the original complaint, which was filed on October 1, 2024, because the claims arise out of the same conduct, transaction, and occurrence as alleged in the original complaint.

The statute of limitations under the NYLL is six years. N.Y. Lab. Law § 198(3). A complaint filed at the NYSDOL tolls the statute of limitations. *Id.* All of the Plaintiffs who were jointly employed by SWHNY filed complaints with the NYSDOL: on or about May 25, 2022 by Zhu H.L. Lin;[3] on or about September 8, 2022 by Zhan J. Li, and on or about January 3, 2022 by Xiu X. Zhu, AC ¶ 134; on or about May 1, 2021 by Li Chen, on or about August 3, 2022 by Xiu F. Chen, and on or about September 12, 2023 by Mu Z. Zhang, AC ¶ 156; on or about May 1, 2022 by Mei F. Chen, AC ¶ 176; on or about September 1, 2022 by Hui He, AC ¶ 204; on or about October 30, 2022 by Hui Li, AC ¶ 226; and on or about May 12, 2022 by Hui X. Ruan, AC ¶ 268. The NYSDOL closed its investigation into the Plaintiffs' claims on October 22, 2024. Huang Decl., Ex. 5. Therefore, each of these Plaintiffs have

---

[3] Plaintiffs' Amended Complaint contains a scrivener's error and incorrectly lists the date that Ms. Lin filed her NYSDOL complaint as May 25, 2023. *See* Huang Decl., Ex. 4.

timely NYLL claims against SWHNY. *See* Memorandum Order, ECF No. 82 at 12.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny

SWHNY's motion to dismiss the Amended Complaint.

Dated:    December 5, 2025              NATIONAL CENTER FOR LAW AND
          New York, New York           ECONOMIC JUSTICE


                                       /s/ *Carmela Huang*
                                       Carmela Huang
                                       Claudia Wilner
                                       50 Broadway, 15th Floor
                                       New York, NY 10004-3821
                                       (646) 393-3048
                                       huang@nclej.org
                                       wilner@nclej.org


                                       GETMAN, SWEENEY & DUNN, PLLC
                                       Karen Kithan Yau
                                       Caroline Friedman
                                       260 Fair Street
                                       Kingston, NY 12401
                                       (845) 255-9370
                                       kyau@getmansweeney.com
                                       cfriedman@getmansweeney.com


                                       *Counsel for Plaintiffs*