# LICENSED HOME CARE SERVICES AGENCY SERVICES AGREEMENT
## BETWEEN
## CL HEALTHCARE, INC.
## AND

Greatcare, Inc
_____
(Legal Name of LHCSA)

This Agreement (the "Agreement") is dated as of the 1st day of January, 2018, by and between **CL Healthcare, Inc.** ("CL") and ___Greatcare, Inc_____.
(enter the legal name and DBA of LHCSA)
("LHCSA"), both home care services agencies licensed under Article 36 of the Public Health Law of New York. CL and LHCSA are hereinafter each referred to individually as a "Party" and collectively as the "Parties."

## WITNESSETH:

**WHEREAS,** CL has entered into an agreement with CenterLight Healthcare, Inc. ("PLAN" or "CLHC"), a managed care organization organized and operated in accordance with New York Law, under which CL has agreed to furnish, among other things, LHCSA Services (as defined herein) to certain patients who are Members (as defined herein) in a CLHC Benefit Plan (as defined herein) (the "PLAN Contract");

**WHEREAS,** LHCSA is a licensed provider of home care services licensed as a licensed home care services agency pursuant to Article 36 of the NY Public Health Law;

**WHEREAS,** CL seeks to contract with LHCSA to provide certain LHCSA Services to Members in accordance with the terms and conditions of this Agreement and in accordance with CL's agreement with PLAN; and

**WHEREAS,** LHCSA wishes to contract with CL to arrange for the provision of LHCSA Services to Members;

**NOW, THEREFORE,** in consideration of mutual agreements, undertakings, representations and warranties hereinafter set forth, the Parties hereby agree as follows:

## 1.    DEFINITIONS

1.1.    "CLHC Benefit Plan" shall mean each benefit plan listed in Exhibit A hereto, attached and expressly incorporated into this Agreement, which may be revised from time to time by CL upon thirty (30) days written notice to LHCSA

1.2.    "CLHC Participating Provider" shall mean any provider, including a physician or other health professional, hospital, skilled nursing facility, certified home care agency, licensed home care services agency or ancillary provider who has contracted with and, where applicable, been credentialed by PLAN to provide Covered Services to Members.

1.3.    "Clean Claim" shall mean a claim that has no defect, impropriety or lack of substantiating documentation, including the information necessary to meet the requirements for encounter data, submitted using a completed CMS-1500 form or successor form, or alternative electronic equivalent (which must comport with all HIPAA Electronic Transaction Standards (45 CFR Parts 160 and 162)), for Covered Services

LHCSA/FI 2017-2018 revised contract

CenterLight 000041

received timely by CL, which complies with standard CMS coding guidelines, and/or other government program requirements where applicable, and requires no further documentation, information or alteration in order to be processed and paid timely by CL.

1.4.    "Covered Services" shall mean all services to which a Member is entitled under his or her Plan of Care, established under his or her respective CLHC Benefit Plan.

1.5.    "Effective Date" shall mean the date first set forth in this Agreement.

1.6.    "Emergency" shall mean a medical or behavioral condition, the onset of which is sudden, that manifests itself by symptoms of sufficient severity, including severe pain, that a prudent layperson, possessing an average knowledge of medicine and health, could reasonably expect the absence of immediate medical attention to result in (a) placing the health of the person afflicted with such condition in serious jeopardy, or in the case of a behavioral condition placing the health of such person or others in serious jeopardy; (b) serious impairment to such person's bodily functions; (c) serious dysfunction of any bodily organ or part of such person; or (d) serious disfigurement of such person.

1.7.    "Emergency Services" shall mean the services required to be provided to a Member as a result of an Emergency.

1.8.    "HIPAA" shall mean the Health Insurance Portability and Accountability Act of 1996, the Health Information Technology for Economic and Clinical Health Act enacted as part of the American Recovery and Reinvestment Act of 2009 and the requirements of any regulations promulgated thereunder, including the Federal privacy regulations as contained in 45 CFR Parts 160 and 164, the Electronic Transaction Standards (45 CFR Parts 160 and 162), the Security Standards (45 CFR Parts 160, 162 and 164), and applicable data breach notification requirements, and the regulations promulgated pursuant to any such statutes.

1.9.    "LHCSA Provider" shall mean a duly licensed or certified physician or other health care professional who is an employee or contractor of LHCSA and who provides Covered Services to Members, and, where required, has been credentialed by LHCSA or its designee, to provide Covered Services.

1.10.    "LHCSA Services" shall mean, as appropriate and applicable, private duty nursing, personal care services, housekeeper services, homemaker services, nutritional services, medical social services and medical supplies, equipment and appliances to the extent such services are provided by LHCSA.

1.11.    "Member" shall mean an individual enrolled in a CLHC Benefit Plan.

1.12.    "Member Expenses" shall mean funds owing by Members as copayments, coinsurance or deductibles.

1.13.    "Plan of Care" shall mean the set of LHCSA Services designed for each Member based on a professional assessment of the Member's needs, and includes pertinent diagnosis, prognosis, mental status, frequency of each LHCSA Service to be provided, medications, treatments, diet regimens, functional limitations and rehabilitation potential.

1.14.    "Protocols" shall mean any and all standards, policies and procedures set forth in this Agreement or otherwise set forth in writing by PLAN, furnished to CL under the PLAN Contract and transmitted by CL to LHCSA during the term of this Agreement, including without limitation PLAN's provider manual.

1.15.    "SDOH" shall mean the New York State Department of Health.

CenterLight 000042

## 2. RESPONSIBILITIES OF CL

2.1. <u>Designation and Status.</u> CL shall maintain its designated status as a licensed home care services agency and shall undertake all steps necessary to maintain its licensure in accordance with the provisions of Article 36 of the Public Health Law, the Insurance Law and other applicable Federal and State statutes and regulations promulgated thereunder.

2.2. <u>Changes to PLAN Contract.</u> CL shall notify LHCSA within thirty (30) days of any changes to the PLAN Contract, to the extent that such changes impact the substance of, or any duties or responsibilities of the Parties under, this Agreement.

2.3. <u>Changes to Plan of Care.</u> CL shall promptly notify LHCSA of any significant changes in a Member's Plan of Care, or in the Member's condition that indicate a need to alter the Plan of Care.

2.4. <u>Standard of Care.</u> Notwithstanding any other provisions of this Agreement, CL shall ensure that Covered Services provided by CL pursuant to the PLAN Contract or to this Agreement are of a quality that conforms to generally accepted licensed home care services agency practices.

2.5. <u>Employed Providers and Other Personnel.</u>

    2.5.1. As required to provide Covered Services to Members according to the Plan of Care established for each Member, CL shall employ providers, or otherwise engage the services of agents, contractors or other personnel. CL is solely responsible for supervising and compensating such personnel.

    2.5.2. Notwithstanding any other provision of this Agreement, CL shall be responsible for all medical advice and treatment rendered to Members by its employed providers.

    2.5.3. CL shall maintain liaison with nurses, therapists and other clinicians providing Covered Services under individual contract with CL or as personnel of another contracted agency, including LHCSA Providers, in order to assure that care planning and service delivery provided by such individuals are coordinated, supervised and integrated effectively into Covered Services provided by CL's employed providers.

2.6 <u>Adherence to Plan of Care.</u> Determinations by PLAN under the PLAN Contract respecting CL's provision of Covered Services according to a Member's Plan of Care shall in no way affect CL's responsibilities to provide care in a manner consistent with sound medical judgment and practice, and in conformity with the Plan of Care. Nothing herein shall be construed to require CL to take any action inconsistent with professional judgment regarding a Member's care.

## 3. DUTIES OF LHCSA

3.1. <u>LHCSA Services.</u> LHCSA shall make LHCSA Services available to Members on the terms and conditions set forth herein, or otherwise in accordance with Protocols, or as required by law. Except for Emergency Services, LHCSA shall render LHCSA Services to a Member only according to an established Plan of Care.

3.2. <u>Eligibility Verification.</u> Except for the provision of Emergency Services, LHCSA shall use a mechanism established by PLAN and communicated to LHCSA by CL, including identification card, online service, or

CenterLight 000043

telephone, to verify a Member's eligibility and benefits prior to furnishing any LHCSA Services. In the event of Emergency Services, LHCSA shall verify eligibility at the first practicable opportunity.

3.3.    Standard of Care. Notwithstanding any other provisions of this Agreement, LHCSA shall ensure that LHCSA Services provided by LHCSA pursuant to this Agreement are of a quality that conforms to generally accepted licensed home care services agency practices. LHCSA shall render LHCSA Services in accordance with all applicable Protocols, laws and regulations. LHCSA shall render LHCSA Services in a manner that assures continuity of care, including, but not limited to, forwarding all pertinent information relating to the health care of a Member to the CL designated point of contact for transmittal to the referring CLHC Participating Provider for inclusion in the Member's medical record, and for CL to notify such CLHC Participating Provider of any significant change in the Member's medical condition.

3.4.    LHCSA Providers and Other Personnel.

    3.4.1.  Notwithstanding any other provision of this Agreement, LHCSA shall be responsible for all services rendered to Members by LHCSA Providers, and by other LHCSA personnel including LHCSA's agents and contractors, and for ensuring adherence by such individuals to this Agreement and to the Plan of Care established for each Member.

    3.4.2.  LHCSA shall maintain liaison with nurses, therapists and other clinicians providing LHCSA Services under individual contract with LHCSA or as personnel of another contracted agency, in order to assure that care planning and service delivery provided by such individuals are coordinated, supervised and integrated effectively into LHCSA Services provided by LHCSA Providers.

3.5.    Cooperation with CL and PLAN. LHCSA agrees to cooperate with CL and PLAN in providing LHCSA Services to Members in a cost effective manner consistent with the terms of this Agreement. LHCSA further agrees to take all acts or actions necessary to permit compliance by CL and PLAN with applicable laws and the standards of regulatory and other external review agencies, such as the National Committee for Quality Assurance.

3.6.    Compliance with CL and PLAN Rules. LHCSA agrees to cooperate with, be bound by and abide by CL's policies and procedures and PLAN's Protocols, rules and regulations including, without limitation, PLAN's quality improvement program, credentialing process, peer review systems, Member grievance and appeal requirements, and utilization management program to the extent that such has been transmitted to LHCSA.

3.7    Compliance with PLAN Contract. LHCSA agrees to abide by, and to require LHCSA Providers to abide by, all applicable provisions of the PLAN Contract that have been transmitted to LHCSA, to fulfill LHCSA's obligations hereunder in a manner consistent with CL's obligations under the PLAN Contract, and to cause its related entities, contractors and subcontractors likewise to perform their obligations in a manner consistent with CL's obligations under the PLAN Contract.

CenterLight 000044

3.8. <u>Adherence to Plan of Care.</u>

    3.8.1. LHCSA shall provide LHCSA Services to Members only in accordance with each Member's Plan of Care. LHCSA is responsible for obtaining signed orders for LHCSA Services furnished to Members from the Member's authorized practitioner and for ensuring that such order is established and documented for the services LHCSA provides. LHCSA shall ensure that such orders contain all pertinent Member information relevant to the LHCSA Plan of Care. Documentation of the physician order must be included in LHCSA's Member record. On receipt of a notification from PLAN or CL of, or a medical order from an authorized practitioner indicating, a change in a Member's Plan of Care, LHCSA shall implement this change insofar as it applies to LHCSA Services. LHCSA shall further ensure that Member's authorized practitioner authenticates changes in medical orders for LHCSA services prior to such period of time as required by 10 N.Y.C.R.R § 766.4(d), which as of the Effective Date of this Agreement is within twelve (12) months of the change order.

    3.8.2. LHCSA shall permit PLAN and CL to engage in reasonable supervision and/or audit activities, both prospectively and retrospectively, and both remotely and on-site, to verify that LHCSA, LHCSA Providers and LHCSA's agents, contractors and/or other personnel have provided, are providing and/or will provide LHCSA Services only in accordance with each Member's Plan of Care. LHCSA shall further permit PLAN and CL to access documentation of physician orders for all services furnished by LHCSA. LHCSA shall comply with all determinations rendered in connection with the above activities and shall further take all acts or actions as may be necessary and appropriate to correct any deficiencies in its provision of LHCSA Services identified by CL.

    3.8.3 Determinations by PLAN or CL respecting the provision of LHCSA Services according to a Member's Plan of Care shall in no way affect LHCSA's responsibilities to provide care in a manner consistent with sound medical judgment and practice. Nothing herein shall be construed to require LHCSA to take any action inconsistent with professional judgment regarding a Member's care.

3.9. <u>Licensure and Certification.</u>

    3.9.1. LHCSA hereby warrants that LHCSA has all licenses and/or certifications required by local, State and Federal authorities to provide LHCSA Services as specified herein. LHCSA shall maintain such licensure and certification throughout the term of this Agreement. LHCSA shall furnish to PLAN or CL such evidence of licensure or certification as PLAN or CL may reasonably request.

    3.9.2. LHCSA shall provide those LHCSA Services that LHCSA is licensed or certified to provide only through personnel qualified pursuant to all applicable regulations and guidelines, including, but not limited to, 10 N.Y.C.R.R. § 766.11. LHCSA shall assume responsibility for supervising, training and compensating such personnel, and for requiring that such personnel adhere to the terms and conditions of this Agreement. LHCSA shall make available to PLAN and CL such information or evidence necessary to verify the qualifications, training and supervision of LHCSA personnel.

    3.9.3. LHCSA represents and warrants that all LHCSA Providers are properly licensed or certified to provide Covered Services and that such persons shall comply with the terms of this Agreement. It is expressly understood that LHCSA is obligated to ensure such licensure, certification and compliance.

LHCSA/ FI 2017-2018 revised contract

CenterLight 000045

3.9.4.  LHCSA acknowledges that PLAN or CL, in their reasonable discretion, and upon prior written notice, may request that a health care provider employed by or otherwise associated with LHCSA no longer render LHCSA Services to Members and LHCSA agrees to honor such a request subject to applicable law.  Neither LHCSA nor the health care provider at issue shall have the right to appeal PLAN's or CL's request.

3.9.5.  LHCSA shall notify CL and PLAN within three (3) business days should LHCSA become aware that any disciplinary action or material action or suit of any kind has been formally initiated against LHCSA or any LHCSA Provider providing Covered Services.

3.9.6.  LHCSA further shall notify CL and PLAN in writing as soon as practicable, but in no case more than 1 calendar day, after LHCSA becomes aware of (i) any suspension or loss of any accreditation, licensing and/or certification of LHCSA; (ii) any imposition of sanctions affecting LHCSA under a Federal or State health care program; and/or (iii) exclusion of LHCSA from Medicare, Medicaid or any other government health care program.  LHCSA further shall notify CL and PLAN in writing as soon as practicable, but in no case more than 1 business day, after LHCSA becomes aware of (i) any suspension or loss of any accreditation, licensing and/or certification of any LHCSA Provider providing Covered Services; (ii) any imposition of sanctions affecting a LHCSA Provider providing Covered Services under a Federal or State health care program; and/or (iii) exclusion of any LHCSA Provider providing Covered Services from Medicare, Medicaid or any other government health care program.

3.10.  Compliance with Law.  Notwithstanding any other provisions of this Agreement, LHCSA shall remain responsible for ensuring that all LHCSA Services are provided, and all of LHCSA's activities are conducted, in compliance with pertinent Federal, State and municipal laws, statutes, ordinances, orders and regulations.

3.11.  Participation in Plans.  LHCSA agrees that LHCSA will participate in all of the CLHC Benefit Plans to which CLHC has admitted LHCSA as a provider as set forth in Exhibit A.  Decisions regarding participation in CLHC Benefit Plans are within the sole discretion of PLAN.  LHCSA agrees to comply with applicable rules and procedures, including compensation arrangements, for each CLHC Benefit Plan in which LHCSA participates.  In no event shall a decision by PLAN not to permit LHCSA to participate in a CLHC Benefit Plan be deemed a termination of this Agreement, unless LHCSA is deemed ineligible for all CLHC Benefit Plans.

3.12.  PLAN Directory and Marketing Materials.  LHCSA hereby authorizes PLAN to list LHCSA's name, address, telephone number, and other professional demographics, in PLAN's list of CLHC Participating Providers and such other listings, directories and publications as PLAN may produce from time to time, and in any marketing or advertising materials, including PLAN's Internet sites, to help promote PLAN to potential Members.  LHCSA agrees that such listings are considered accurate if based upon the most recent information submitted to PLAN by or on behalf of LHCSA.

3.13.  Notification of Termination from New York State Medicaid Program.  LHCSA must remain licensed under Article 36 of the New York Public Health Law.  In the event the LHCSA receives a notice of revocation of its licensed home care services agency license from the New York State  Department of Health, LHCSA must notify CL of same within ten (10) calendar days.  In the event that LHCSA fails to notify CL of such notice of revocation, CL may terminate LHCSA immediately and will not pay LHCSA for any services rendered after the ten (10) calendar days following the revocation of LHCSA's licensed home care services agency license if LHCSA has failed to provide the required notification.

CenterLight 000046

## 4.    COMPENSATION AND BILLING

4.1.    Compensation and Additional Terms.  CL shall compensate LHCSA for LHCSA Services provided under this Agreement hereto, each of which is expressly incorporated into this Agreement and is binding upon the Parties to this Agreement, as revised from time to time by the mutual written agreement of the Parties.  Where a change of law or regulation directly and materially affects the rates applicable to LHCSA Services, the Parties agree that they will negotiate in good faith to determine a mutually acceptable rate, as required by any such change in law or regulation, within ninety (90) days of the enactment or adoption of such new law or regulation.

4.2.    Billing Procedures.  LHCSA shall submit to CL Clean Claims for LHCSA Services provided in accordance with this Agreement and Protocols.  LHCSA shall abide by PLAN's Protocols as transmitted to LHCSA by CL, including submitting claims within ninety (90) days of the date of service, except, notwithstanding the foregoing, for any claims under a CLHC Benefit Plan constituting a Medicaid managed care plan under N.Y. Ins. Law § 364-J, within ninety (90) days of the date of service and appealing claims within ninety (90) days after the date of the payment check or remittance advice.  If claims are subject to recovery through coordination of benefits or subrogation activity, LHCSA shall submit claims within eighteen (18) months of the date of service, including a copy of the EOB from the primary carrier.  LHCSA shall use a CMS-1500 or successor form, or alternative electronic equivalent, for claims submission.  LHCSA shall use current CPT codes on all claims submitted to CL.  LHCSA shall comply with HIPAA's Electronic Transaction Standards (45 CFR Parts 160 and 162) within the timeframe required by HIPAA.  LHCSA agrees to be bound by the rules regarding coordination of benefits, workers compensation and subrogation rights to the extent set forth in this Agreement and in Protocols.

4.3.    Claims Payment.  In accordance with the New York State Prompt Pay Law (N.Y. Ins. Law § 3224-a), as applied to all non-Medicare claims corresponding to some or all of the fees owed by PLAN to LHCSA, and as amended and superseded from time to time, CL shall process all claims and either pay or deny such claims within forty-five (45) days of receipt of a Clean Claim transmitted via the internet or email and within forty-five (45) days of receipt of a Clean Claim transmitted via other means such as paper or facsimile.  Except for fraud or as provided in Section 4.7, all payments to LHCSA shall be considered final unless either Party furnishes notice within ninety (90) days after the date of receipt of the payment check or remittance advice.  LHCSA understands and agrees that CL shall have final authority to determine whether such services are reimbursable pursuant to this Agreement.  LHCSA shall provide CL with itemized records of services and charges to Members in such form as may be requested by CL.

4.4.    Member Non-liability.  LHCSA agrees that in no event, including but not limited to non-payment by CL, PLAN's or CL's insolvency, or breach of this Agreement, shall LHCSA bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a Member or person, other than CL, acting on the Member's behalf, for Covered Services provided pursuant to the CLHC Benefit Plan and this Agreement for the period covered by the paid Member premium.  This provision shall not prohibit the collection of Member Expenses as specifically provided in the Member's CLHC Benefit Plan, or fees for non-Covered Services delivered on a fee-for-service basis to a Member, provided that LHCSA shall have advised the Member and Member shall have agreed, in writing, that the service is not a Covered Service and of the Member's liability therefor prior to providing the service, nor shall it prohibit LHCSA from participating in or pursuing payment through coordination of benefits.  Where LHCSA has not been given a list of Covered Services by CL, and/or LHCSA is uncertain as to whether a service is covered, LHCSA shall make reasonable efforts to contact CL and obtain a coverage determination prior to advising a Member as to coverage and liability for payment and prior to providing the service.  This provision shall survive the termination of this

CenterLight 000047

Agreement regardless of the cause giving rise to termination, and shall supersede any oral or written agreement now existing or hereafter entered into between LHCSA and a Member or any person acting on such Member's behalf.

4.5.    Member Expenses.  PLAN or CL may require Members to remit Member Expenses, which may be amended by PLAN from time to time, for Covered Services.  It is the responsibility of the Member to remit Member Expenses, and neither CL nor LHCSA may waive such Member Expenses from Member.

4.6.    Retroactive Disenrollments.  CL shall notify LHCSA as soon as practicable but in any event within thirty (30) days of receiving notice of retroactive disenrollments of Members with paid claims for LHCSA Services provided on dates of service occurring after the effective date of retroactive disenrollment.  CL shall recoup monies paid to LHCSA for those dates of service.

4.7.    Recoupment of Overpayment.  Other than recovery for duplicate payments, CL shall provide thirty (30) days written notice to LHCSA before engaging in recovery of the overpayment of claims through offset of future payments.  Any recovery of overpayment shall be performed in accordance with applicable law, including N.Y. Ins. Law § 3224-b.

## 5.    INSURANCE AND INDEMNIFICATION

5.1.    CL Insurance.  CL, at CL's sole cost and expense, shall maintain at all times during the term of this Agreement policies of comprehensive general liability and other insurance of the types customarily carried by licensed home care services agencies with respect to their operations and in amounts as shall be necessary to insure it and its employees against any claim or claims for damages arising by reason of personal injuries or death occasioned directly or indirectly in connection with the performance or nonperformance of any services, the use of any property and facilities provided, and other activities performed by CL, or CL's agents, employees and representatives in connection with this Agreement, including but not limited to the performance of Covered Services for and on behalf of Members.  Such insurance shall be no less than $1,000,000 per occurrence and $3,000,000 in the aggregate.  Such policies shall be effective on or before the Effective Date and shall include coverage for claims which are incurred during the term of this Agreement but which arise after termination of this Agreement.

5.2.    LHCSA Insurance.  LHCSA, at LHCSA's sole cost and expense, shall maintain at all times during the term of this Agreement policies of comprehensive general liability and other insurance of the types customarily carried by licensed home care services agencies with respect to their operations and in amounts as shall be necessary to insure it and its employees against any claim or claims for damages arising by reason of personal injuries or death occasioned directly or indirectly in connection with the performance or nonperformance of any services, the use of any property and facilities provided, and other activities performed by LHCSA, or LHCSA's agents, employees and representatives in connection with this Agreement, including but not limited to the performance of LHCSA Services for and on behalf of Members.  Such insurance shall be no less than $1,000,000 per occurrence and $3,000,000 in the aggregate. Such policies shall be effective on or before the Effective Date and LHCSA shall provide thirty (30) day cancellation notification to CL.  Such policies shall include coverage for claims which are incurred during the term of this Agreement but which arise after termination of this Agreement.  On the written request of CL, LHCSA shall provide CL with certificates with respect to said policies and any renewals or replacements thereof and LHCSA shall  notify CL in the event of any change in the status of such coverage.

5.3.    LHCSA Provider Insurance.  LHCSA shall require that each LHCSA Provider who is a physician maintain policies of professional liability insurance in the amounts of $1,000,000 per occurrence and $3,000,000 in the aggregate.    Such policies shall include coverage for claims which are incurred during the term of this

LHCSA/ FI 2017-2018 revised contract

Agreement, but which arise after termination of this Agreement. LHCSA shall ensure that each such LHCSA Provider who is a physician shall, upon request of LHCSA, provide LHCSA with certificates with respect to said policies and any renewals or replacements thereof and shall notify LHCSA in the event of any change in the status of such coverage.

5.4.    Indemnification.

    (a)    Each Party shall be responsible for its own actions and omissions as they may relate to or arise from its duties and obligations under this Agreement.

    (b)    LHCSA agrees to indemnify and hold harmless CL and PLAN from any and all judgments, liabilities, claims, demands, lawsuits, losses, damages, costs, expenses and injuries or death to persons and damage to property (including costs, expenses, court costs, and reasonable attorneys' fees on account thereof) resulting from any act, omission, fault, negligence, or misconduct by LHCSA, its officers, directors, employees, agents, volunteers, or subcontractors in connection with this Agreement.

    (c)    CL agrees to indemnify and hold harmless LHCSA from any and all judgments, liabilities, claims, demands, lawsuits, losses, damages, costs, expenses, and injuries or death to persons or damage of property (including costs, expenses, court costs, and reasonable attorneys' fees on account thereof) resulting from any act, omission, fault, negligence, or misconduct by CL or PLAN, their officers, directors, employees, agents, volunteers, or subcontractors in connection with this Agreement.

    (d)    Each Party agrees to give the other Party prompt written notice of any claim made against the other Party as a result of this Section 5.4. The Party responsible for indemnification shall defend or settle a claim at its own expense and the other Party will cooperate in the defense or settlement.

    (e)    The provisions of this Section 5.4 shall survive termination of this Agreement regardless of the reason for termination.

## 6.    TERM AND TERMINATION

6.1.    Term. This Agreement shall commence on the Effective Date and shall continue in effect for an initial term until December 31, 2018, after which this Agreement shall be automatically renewed for successive one (1) year terms, unless either Party has given written notice to the contrary at least ninety (90) days prior to the end of such term or is otherwise terminated as provided herein.

6.2.    Termination of Agreement. This Agreement may be terminated as follows:

    (a)    by written notice thereof to the other if the other Party shall be in default hereunder or shall have breached its material obligations under this Agreement and shall have failed to cure same within a period of sixty (60) days following the giving of such written notice by the non-faulting Party of such default or breach. Such notice of termination shall take effect upon the date specified therein if such breach or default was not fully cured to the reasonable satisfaction of the Party giving such notice within the sixty-day cure period above referenced; or

    (b)    by CL immediately if LHCSA is terminated from the New York State Department of Health Medicaid program; or

LHCSA/ FI 2017-2018 revised contract

(c)     without cause upon ninety (90) days written notice to the other Party.

6.3.    Unless otherwise provided by statute or regulation, the effective date of termination shall not be less than forty-five (45) days after receipt of notice by either Party, provided, however, that termination by CL may be effected on less than forty-five (45) days notice provided that CL finds that circumstances exist which justify or require immediate termination.

6.4.    If this Agreement is terminated, CL shall pay for LHCSA Services owed to LHCSA up to the effective date of termination or the last date LHCSA provides LHCSA Services pursuant to Section 6.5 herein. Termination shall not affect any obligation of either Party which accrued before the effective date of termination.

6.5.    In the event either Party gives notice of termination of the Agreement, the Parties agree that LHCSA shall continue to provide LHCSA Services pursuant to the terms of this Agreement to Members receiving LHCSA Services as of the date of termination for such time frame as is required by applicable law, or until such time as CL makes other arrangements not to exceed ninety (90) days, whichever first occurs. This provision shall survive termination of this Agreement regardless of the reason for the termination.

6.6.    In the event of the termination of this Agreement, LHCSA agrees to assist in the orderly transfer of Members to another licensed home care services agency as directed in writing by CL.

## 7.     RECORDS

7.1.    PLAN and CL shall have the right, upon reasonable prior written request, and for purposes related to this Agreement, to inspect, at reasonable times, LHCSA's records regarding Members, and LHCSA's records regarding LHCSA Providers maintained by LHCSA and pertaining to this Agreement. LHCSA shall, upon PLAN's or CL's written request, produce copies of such records at no cost to PLAN or CL.

7.2.    All records, whether business, medical or otherwise, relating to the operation of LHCSA's programs or LHCSA Providers, including but not limited to all books of account, enrollment records, general administrative records and patient records, LHCSA Provider files and related materials shall be and remain the sole property of LHCSA, provided, however, that PLAN, CL and State and Federal regulatory entities shall have access to such information, upon their request, as may be required in accordance with applicable law and regulations.

7.3.    All information and data generated under and/or contained in management information services pertaining to the operation of LHCSA shall also be and remain the sole property of LHCSA. Except for information that may be otherwise required by law, contractual obligations or governmental regulation to be reported or disclosed, PLAN and CL shall not knowingly reveal confidential or proprietary information contained in said records or in said systems, without the prior written consent of LHCSA and shall take reasonable steps to ensure that such confidential and proprietary information is not disclosed.

7.4.    Except for information that may be otherwise required by law, contractual obligations or governmental regulations to be reported or disclosed, LHCSA further agrees that it shall not disclose, reveal or provide any information provided to it by PLAN or CL relating to PLAN's or CL's operations without the prior written consent of PLAN or CL, as applicable, and LHCSA shall take reasonable steps to ensure that such information is not disclosed.

7.5.    The provisions of this Article 7 shall survive termination of the Agreement between CL and LHCSA regardless of the reason for such termination.

LHCSA/ FI 2017-2018 revised contract

CenterLight 000050

## 8.    REPRESENTATIONS AND WARRANTIES

8.1.    CL hereby represents, warrants and covenants to LHCSA as follows:

(a)    CL is a duly organized, validly existing New York home care services agency in good standing, licensed pursuant to Article 36 of the New York Public Health Law. CL has full corporate power and authority, with PLAN's acknowledgement, to execute and deliver this Agreement and to perform the obligations undertaken herein. All corporate action required to be taken by CL or PLAN to authorize its execution, delivery and performance has been duly and properly taken.

(b)    CL is not currently excluded from participation in the Medicare or Medicaid program or any other Federal healthcare program, as defined in 42 U.S.C. § 1320a-7b(f), or any State healthcare program or private health care benefit program.

(c)    This Agreement is duly executed and delivered by CL and is the valid and legally binding obligation of CL, enforceable against it in accordance with its terms.

(d)    PLAN is acknowledged as a third-party beneficiary of this Agreement, and PLAN represents that it has authorized CL to enter this Agreement and has ultimate responsibility for payment obligations of CL hereunder.

(e)    Each of the representations, warranties and covenants set forth in this Section shall survive the execution, expiration and termination of this Agreement.

8.2.    LHCSA hereby represents, warrants and covenants to CL as follows:

(a)    LHCSA is a duly organized, validly existing New York home care services agency in good standing, licensed pursuant to Article 36 of the New York Public Health Law. LHCSA has full corporate power and authority to execute and deliver this Agreement and to perform the obligations undertaken herein. All corporate action required to be taken by LHCSA to authorize its execution, delivery and performance has been duly and properly taken.

(b)    Neither LHCSA nor any LHCSA Provider is currently excluded from participation in the Medicare or Medicaid program or any other Federal healthcare program, as defined in 42 U.S.C. § 1320a-7b(f), or any State healthcare program or private health care benefit program. LHCSA further represents that it conducts regular screening checks of all applicable exclusion databases to confirm the exclusion status of all LHCSA Providers.

(c)    This Agreement is duly executed and delivered by LHCSA and is the valid and legally binding obligation of LHCSA, enforceable against it in accordance with its terms.

(d)    Each of the representations, warranties and covenants set forth in this Section shall survive the execution, expiration and termination of this Agreement.

## 9.    CONFIDENTIALITY

9.1.    In order for the Parties to perform their obligations under this Agreement, it may be necessary or desirable for the Parties to disclose proprietary, trade secret, and/or other confidential information (hereinafter

LHCSA/ FI 2017-2018 revised contract

CenterLight 000051

"Confidential Information") to one another. Each Party agrees that any such Confidential Information disclosed to it, its affiliates, agents, officers, directors or employees shall be used only in connection within the purposes of this Agreement, shall be disclosed only to those who have a need to know it, and shall be safeguarded with the same care normally afforded such Confidential Information in the possession, custody, or control of the Party receiving Confidential Information. Such care shall be no less than reasonable care necessary to safeguard the Confidential Information.

9.2.    Authorized representatives of PLAN and CL shall have access to all materials included in LHCSA's Member records.

9.3.    LHCSA, its officers, directors, employees, agents, volunteers, and subcontractors, shall treat all information that is obtained by it through its performance under this Agreement as confidential information to the extent required by the laws of the State of New York and of the United States and any regulations promulgated thereunder. Any breach of confidentiality by LHCSA, its officers, directors, employees, agents, volunteers, or subcontractors pursuant to said statutes shall be cause for immediate termination of this Agreement.

9.4.    LHCSA and CL agree to keep the financial terms and conditions of this Agreement strictly confidential and not to reveal such terms and conditions to any third party.

9.5.    The provisions of this Article 9 shall survive the termination of this Agreement between CL and LHCSA regardless of the reason for termination.

## 10.    NOTICES

All notices required or given under this Agreement shall be in writing, addressed as set forth below (or to such other address as any Party may so designate by like notice from time to time) and shall be mailed by first-class, registered or certified mail, return receipt requested, postage pre-paid, or transmitted, against confirmed receipt, by overnight carrier or hand. Receipt of notice shall be presumed on the fifth (5th) day after mailing, if the notice is mailed as herein provided, or upon receipt if notice is sent via overnight carrier or hand-delivery.

If notice is to CL, it shall be sent to:

CL Healthcare, Inc.
1733 Eastchester Road, 2nd floor
Bronx, New York 10461
ATTN: CEO

If notice is sent to LHCSA, it shall be sent to:

GreatcareInc

110 West 34th Street 1200

New York, NY 10001

(Insert name and address of LHCSA in the above area)
ATTN: CEO

CenterLight 000052

## 11.    MODIFICATION

This Agreement cannot be changed, modified, amended or suspended except by written agreement executed by all Parties affected thereby. Notwithstanding the foregoing, CL may unilaterally amend this Agreement, upon written notice to LHCSA, as necessary to comply with changes in applicable laws and regulations, except that no changes to the reimbursement rates shall be made unilaterally by CL. Such amendments shall be made in accordance with the notice provisions in Section 10 of this Agreement.

## 12.    DISPUTE RESOLUTION

12.1.    Arbitration.  Either Party may submit any dispute arising out of this Agreement to final and binding arbitration; provided, however, that (a) the SDOH Commissioner shall be given prior notice of all issues to be arbitrated and a copy of all arbitration decisions, and (b) such decision is not binding on the Commissioner.  Any such arbitration shall be held in the State of New York, County of Bronx and shall be conducted pursuant to the rules of the American Arbitration Association.  Each Party shall be entitled to limited discovery for a period of sixty (60) days following the notice of arbitration.  Each Party shall be responsible for its own costs and expenses related to the arbitration, including attorneys' fees.  The arbitrator shall be selected upon the mutual agreement of both Parties and shall be an attorney and member of the American Health Lawyers Association or American Arbitration Association. Notwithstanding any rules of the American Arbitration Association to the contrary,  the arbitrator shall not be permitted to award punitive or exemplary damages.

12.2.    Jurisdiction; Venue.  All actions and proceedings arising out of or relating to this Agreement that are not otherwise subject to resolution pursuant to Section 12.1 shall be heard and determined in any New York State or Federal court sitting in New York County, New York, and each Party hereby irrevocably accepts and consents to the exclusive personal jurisdiction of those courts for such purpose.  In addition, each Party hereby irrevocably waives to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof brought in any State or Federal court sitting in New York County, and further irrevocably waives any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

## 13.    INDEPENDENT CONTRACTOR

In the performance of the duties and obligations of CL and LHCSA hereunder, it is mutually understood and agreed that both are acting and performing as independent contractors.  Nothing contained herein shall constitute or be construed to create an employment relationship, partnership or joint venture between CL and LHCSA.

## 14.    FORCE MAJEURE

Neither Party shall be liable for any failure, inability or delay to perform hereunder, if such failure, inability or delay is due to war, strike, fire, explosion, sabotage, accident, casualty or any other cause beyond the reasonable control of the Parties so failing, provided that due diligence is used by that Party in curing such cause and in resuming performance.

## 15.    GOVERNING LAW

LHCSA/ FI 2017-2018 revised contract

15.1. Governing Law. This Agreement shall be construed under and governed by the laws of the State of New York and where applicable, Federal law, without reference to choice of law or conflict of laws provisions.

15.2. Compliance with Law. During the term of this Agreement, the Parties will comply with all applicable laws, rules, regulations, codes, orders, ordinances, judgments, injunctions, or decrees of any governmental authority. The Parties further agree that they shall hold all necessary filings and permits, certificates, licenses, registrations, franchises, authorizations and other approvals from governmental authorities and regulatory bodies as are necessary to perform their respective obligations hereunder.

## 16.    ANTI-DISCRIMINATION

16.1. LHCSA agrees, and shall require its LHCSA Providers to agree, to not discriminate against a Member based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.

16.2. The Parties to this Agreement agree to comply with all applicable requirements of the Americans with Disability Act.

## 17.    SEVERABILITY

In the event that any portion of this Agreement is found to be void, illegal or unenforceable, the validity or enforceability of any other portion shall not be affected, and that portion which is void, illegal or unenforceable shall be modified to the least extent possible so that it is not void, illegal, or unenforceable.

## 18.    EXECUTION AND COUNTERPARTS

This Agreement may be executed simultaneously in two or more counterparts, each of which will be deemed the original Agreement, but all of which together will constitute one and the same instrument. Facsimile signatures shall be deemed to be original.

## 19.    ENTIRE AGREEMENT

This Agreement, including exhibits, if any, attached hereto, constitutes the entire agreement and understanding, written and oral, among the Parties with respect to the subject matter hereof and supersedes any and all prior negotiations, understandings and arrangements of any nature.

## 20.    WAIVER OF BREACH

The waiver by either Party of any breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision.

## 21.    HIPAA

The Parties agree to comply with applicable provisions of HIPAA. Furthermore, CL and PLAN reserve the right to audit, no less than once every three (3) years, LHCSA's written information security program to determine that such program meets the requirements of the security regulations issued under HIPAA's Security Standards (45 CFR Parts 160, 162 and 164).

LHCSA/ FI 2017-2018 revised contract

CenterLight 000054

22. **ASSIGNMENT; SUBCONTRACTING**

This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. CL may, in its sole discretion, delegate its duties or obligations to any entity with which CL has entered into an agreement. LHCSA shall not assign this Agreement, either in whole or in part, or otherwise delegate or subcontract any of his or her duties or obligations without the written consent of CL.

23. **NON-SOLICITATION**

LHCSA agrees and shall require its LHCSA Providers to agree that it will not solicit Members to dis-enroll from CL or to join other managed health care plans as long as CL can adequately meet Member's needs under Member's benefit plan.

24. **STANDARD CLAUSES**

The "New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts," attached to this Agreement as **Exhibit C** hereto, are expressly incorporated into this Agreement and are binding upon the Parties to this Agreement. In the event of any inconsistent or contrary language between the Standard Clauses and any other part of this Agreement, including but not limited to appendices, amendments and exhibits, the Parties agree that the provisions of the Standard Clauses shall prevail, except to the extent applicable law requires otherwise and/or to the extent a provision of this Agreement exceeds the minimum requirements of the Standard Clauses.

25. **CERTIFICATION REGARDING LOBBYING**

LHCSA agrees that no Federally appropriated funds have been paid or will be paid to any person by or on behalf of LHCSA for the purpose of influencing or attempting to influence an officer or employee of any agency, a member of Congress, or an employee of a member of Congress in connection with the award of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement. LHCSA agrees to complete and submit, if required, a "Certification Regarding Lobbying" if payments to LHCSA by CL under this Agreement exceed $100,000. If any funds other than Federally appropriated funds have been paid or will be paid to any person for the purpose of influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress, in connection with the award of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement, and payments to LHCSA by CL under this Agreement exceed $100,000, LHCSA shall complete and submit, if required, Standard Form-LLL "Disclosure Form to Report Lobbying," in accordance with its instructions.

LHCSA shall include in its subcontracts that exceed $100,000 a provision substantially similar to this Section, including the requirement that a subcontractor shall certify and disclose as required.

26. **FRAUD AND ABUSE PREVENTION; WHISTLEBLOWER PROTECTION**

In accordance with Section 6032 of the Deficit Reduction Act of 2005 ("DRA"), LHCSA shall comply and shall require LHCSA Providers to comply with PLAN's Fraud and Abuse Prevention Policy, as revised from time to time by PLAN and as transmitted by CL to LHCSA. LHCSA shall make available to all employees and agents, and, to the extent required by DRA, its contractors, including but not limited to LHCSA

LHCSA/ FI 2017-2018 revised contract

Providers, a copy of the PLAN Fraud and Abuse Prevention Policy, as transmitted by CL to LHCSA, including specific discussion of the provisions of the PLAN Fraud and Abuse Prevention Policy in an employee handbook, as transmitted by CL to LHCSA, if such agent, contractor or LHCSA has an employee handbook.

## 27.    PACE PROVISIONS

LHCSA agrees to comply with, and to require LHCSA Providers to comply with, the provisions of **Exhibit D** hereto, which is expressly incorporated into this Agreement and is binding upon the Parties to this Agreement.

## 28.    MEDICARE ADVANTAGE AND CMS PROVISIONS

LHCSA agrees to comply with, and to require LHCSA Providers to comply with, the provisions of **Exhibit E** hereto, which is expressly incorporated into this Agreement and is binding upon the Parties to this Agreement.

## 29.    MEDICAID ADVANTAGE PLUS PROVISIONS

LHCSA agrees to comply with, and to require LHCSA Providers to comply with, the provisions of **Exhibit F** hereto, which is expressly incorporated into this Agreement and is binding upon the Parties to this Agreement.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the day and year first written above.

CL HEALTHCARE, INC.

By: _____

Name:  Debra Tirado

Title:   Chief Financial Officer

Date:   December 14, 2017

LHCSA Name: __Greatcare, Inc__

By: _____

Name: __Barbara Wang__

Title: __Administrator__

Date: __12\18\2017__

Tax Identification Number: __30-2310333__

NPI #: __1134455942__

CenterLight 000056

**EXHIBIT D**

**PACE PROGRAM ADDENDUM**

In addition to LHCSA's obligations under the Agreement, LHCSA agrees to abide by, and to require LHCSA Providers to abide by, all applicable provisions of the contract between PLAN and SDOH, and the PACE Program Agreement between PLAN and the Secretary of the Department of Health and Human Services, who has delegated authority to the Administrator of the Centers for Medicare and Medicaid Services, regarding the Program for All Inclusive are of the Elderly (collectively, the "PACE Contracts"), to fulfill LHCSA's obligations hereunder in a manner consistent with PLAN's obligations under the PACE Contracts, and to cause its related entities, contractors and subcontractors likewise to perform their obligations in a manner consistent with PLAN's obligations under the Medicare Contract.

LHCSA's compliance specifically includes the following:

1.      No Inconsistency with Applicable Law.  No provision of this Agreement is to be construed as contrary to the provisions of Article 44 of the Public Health Law and implementing regulations to the extent that it does not conflict with 42 CFR 460.

2.      Satisfactory Remedies.  LHCSA agrees that PLAN and/or SDOH have the right to terminate this Agreement if PLAN and/or SDOH determines that the Parties to this Agreement have not performed adequately, which includes but is not limited to egregious patient harm, significant substantiated complaints, submitting claims to PLAN for services not delivered, and refusal to participate in PLAN's quality improvement program.

3.      Accountability.  LHCSA acknowledges that PLAN oversees and is accountable to SDOH and CMS for any functions and responsibilities set forth in the regulations governing the PACE program.  LHCSA further acknowledges and agrees that pursuant to the PACE regulations, PLAN or its designees will monitor LHCSA's performance hereunder and, if such performance is unsatisfactory, that PLAN and/or CMS shall have the right to specify requirements for LHCSA's corrective action, terminate this Agreement or impose sanctions upon LHCSA.

4.      Credentialing.  LHCSA acknowledges that each LHCSA Provider is not a CLHC Participating Provider until his or her credentials have been reviewed and accepted by PLAN.

5.      Dispute Resolution.  The resolution of any and all disputes under this Agreement, as pertaining to PLAN's PACE program, shall be resolved using the SDOH interpretation of the terms and provisions of the PACE Contracts, and portions of subcontracts executed in connection with the PACE Contracts that relate to PACE services.

6.      Compliance.  LHCSA shall participate in and comply with PLAN's quality assurance and utilization review programs, PLAN's Member grievance and appeals procedures, and the monitoring and evaluation of PLAN's PACE program.

7.      Audits/Access.  LHCSA shall permit audits and inspection by the United States Department of Health and Human Services, the Comptroller General of the United States, CMS and/or their designees regarding any pertinent contracts, books, documents, papers and records (including medical records) (collectively, "Books and Records") involving or relating to LHCSA's provision of services to Members.  All such Books and Records shall be made available by LHCSA for a period of ten (10) years from the termination of the applicable PACE

LHCSA/ FI 2017-2018 revised contract

Contracts or ten (10) years from the date of completion of any audit or in certain instances described in applicable PACE regulations (42 CFR Part 460), whichever is later.

8.    Services. LHCSA agrees to furnish only those services authorized by the PACE interdisciplinary team.

9.    Payment. LHCSA shall accept payment from PLAN a payment in full and shall not bill Members, CMS, SDOH, or private insurers.

10.    Hold Harmless. LHCSA shall hold harmless CMS, New York State, and PACE Members if PLAN does not pay for services performed by LHCSA in accordance with this Agreement.

11.    Assignment. LHCSA shall not assign this Agreement or delegate duties under this Agreement unless it obtains prior written approval from PLAN.

12.    Reports. LHCSA shall submit reports as required by PLAN.

13.    Performance of Duties. LHCSA shall agree to perform all the duties related to its home care services as specified in PACE regulations (42 CFR Part 460), including the following:

(a)    LHCSA shall participate in interdisciplinary team meetings as required.

(b)    LHCSA shall be accountable to PLAN.

(c)    LHCSA shall cooperate with PLAN's competency evaluation program and direct participant care requirements.

14.    In the event of any inconsistency between this **Exhibit D** and the Agreement, the Parties agree that the terms of this **Exhibit D** shall control with respect to PACE services.

LHCSA/ FI 2017-2018 revised contract

CenterLight 000083