Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____

HEI LI; ZHU H.L. LIN; LI CHEN;

XIU F. CHEN; MEI F. CHEN; HUI

HE; HUI LI; ZHAN J. LI; HUI X.

RUAN; JIAN R. XIAO; MEI Z. XIAO;

MU Z. ZHANG; BI Y. ZHENG; and

XIU X. ZHU,

      Plaintiffs,

   v.                  Case No.

GREAT CARE, INC.; CENTERLIGHT     1:24-cv-07401

HEALTHCARE, INC.; and DOE MANAGED

LONG-TERM CARE PLANS 1-14,

      Defendants.

_____

DEPOSITION OF HEI LI

DATE:         Thursday, October 9, 2025

TIME:         10:15 a.m.

LOCATION:     National Center of Law and Economic

               Justice

               50 Broadway, Suite 1500

               New York, NY 10004

REPORTED BY:  Oweinama Biu

JOB NO.:      7649195

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, AND XIU X. ZHU:

KAREN KITHAN YAU, ESQUIRE

CAROLINE FRIEDMAN, ESQUIRE

Getman Sweeney & Dunn, PLLC

260 Fair Street

Kingston, NY 12401

kyau@getmansweeney.com

cfriedman@getmansweeney.com

(845) 255-9370

(845) 255-9370

CARMELA HUANG, ESQUIRE

National Center for Law and Economic Justice

50 Broadway, Suite 1500

New York, NY 10004

huang@nclej.org

(646) 393-3048

Page 3

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT CENTERLIGHT HEALTHCARE, INC.:

    GEORGE F. BRENLLA, ESQUIRE

    Brenlla, LLC

    250 Park Avenue, 7th Floor

    New York, NY 10177

    gfbrenlla@brenllalaw.com

    (212) 364-5173

ALSO PRESENT:

    Arthur Kwok, Mandarin Translator, Elite

    Language Services. Ltd.

    Barbara Wang, Corporate Representative,

    GreatCare Inc.

Page 51

H. LI

In any event, the contents are similar.

Q    Okay.  Was what was written in the refrigerator in English or Chinese or in any other language?

A    English -- English.

Q    Did you understand it?

A    No, cannot understand.

Q    So there was a piece of paper written on a refrigerator in PC's house that you didn't understand?

A    No, cannot understand it.  But there's a -- but there's a nurse from the insurance company Nurse Ding [ph] and she however did explain that to me or to us.

Q    Okay.  We'll get into that in a minute.  You also indicated, so you couldn't read what was on the refrigerator, but you also indicated that GreatCare also gave you instructions?

A    Instruction as to what kind of job was supposed to be done at her home.

Q    Okay.  And what did GreatCare instruct you to do?

A    So GreatCare provided us with a

Page 52

H. LI

work schedule form.  End of the week, on a weekly basis back to GreatCare and they would pay us based on that.

Q    Okay.  So is it fair to say that you would fill out a form every week as to what you did and then you would return it to GreatCare?

A    Yes.

Q    And then as a result you get paid based on what you gave them?

A    And it also contained the patient's signature as well.

Q    Okay.  So the patient and you would sign to say what you did, the patient would agree, and then you'd give it to GreatCare?

A    Yes.

Q    Okay.  And that would be every week or every time you went to PC's house?

A    Once a week.

Q    Okay.  How often did you go to PC's house per week?

A    For GreatCare, the company, just one day of work, but PC has other

Page 87

H. LI

Q    No, I see that.  Now, the nurses that you dealt with while you were employed at GreatCare, were those nurses Chinese or Mandarin speaking?

A    If they are the one that visits the home, almost all of them are Chinese speaking.

Q    Okay.  And you understood them when they visited or when you interacted with them?

A    Yes -- so yes, we would inform the nurse about PC's -- or PC's condition. However, what I was trying to say is I have no idea about what's written down here, how they write it down, that part what I'm saying is I have no idea.

Q    Okay.  Right before lunch, you talked about you'd bring a piece of paper every week and PC would sign a piece of paper back to GreatCare.  Now my question was, was that only if you missed a call in or call out on the telephone?

A    No.  What happened was sometimes the phones are broken, so I can't even

Page 88

H. LI

make the phone call and -- and if the phones are not working, then we would be requested to write down our work schedule.

Q    Got you.  And if the phones did work, no need for the piece of paper?

A    Right.

Q    Okay.  So I just wanted to make sure you and I were -- okay.  So you would phone it in, phone didn't work or something, piece of paper?

A    Work schedule, yes.

MR. BRENLLA:  Okay.  All right.  I think I'm out in 9.

(Defendant Exhibit 9 was marked for identification.)

THE REPORTER:  Yes.

BY MR. BRENLLA:

Q    Ms. Li, have you ever seen this document before?

A    I don't know.

Q    Okay.  On the second page of what's been listed in Defendant Exhibit 9 appears to be your signature.  Is that in fact your signature?