UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F.
CHEN, MEI F. CHEN, HUI HE, HUI LI,
ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO,
MEI Z. XIAO, MU Z. ZHANG, BI Y.
ZHENG, XIU X. ZHU,

                          Plaintiffs,

        -against-

                       Case No. 1:24-cv-07401 (LTS) (KHP)

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., SENIOR WHOLE
HEALTH OF NEW YORK, INC.,

                          Defendants.

---

## DECLARATION OF SCOTT WORKMAN IN SUPPORT OF

## PLAINTIFFS' MOTION FOR SANCTIONS

Pursuant to 28 U.S.C. § 1746, I, SCOTT WORKMAN, declare under penalty of perjury that the following is true:

1.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2.  I am a Data Scientist working for Getman, Sweeney & Dunn, PLLC in Kingston, New York, Plaintiffs' counsel herein. In this role, I provide wage and hour data analysis, damage calculations, and e-discovery and technology support.

3.  I have worked in the computer technology field since 1998. Prior to my current role, I was a Data Analyst and Chief Information Officer for a non-profit health services organization specific to the needs of the developmentally disabled. Before that, I was the head of the server services group at Colby College.

4. I hold a Master's Degree in Community Planning and Development from the University of Southern Maine, and I am trained in Data Analysis, Networking, SQL Database Administration, and Windows Enterprise operating systems and Services.

5. I have reviewed the affidavit of Qingmin Liu regarding his e-mail collection, and I have reviewed the e-mails produced by GreatCare, Inc ("GreatCare").

6. It does not appear that Mr. Liu used best practices for conducting this search.

7. Mr. Liu used methods for e-mail collection that were insufficient, and structurally incapable of capturing all responsive ESI. His methods offer no logging, no chain of custody documentation, and ignores the "Outlook Instant Search" issue of index completeness, which I will explain in greater depth below. There is no way to know if the search was conducted on the complete email record.

## A. Qualifications

8. Mr. Liu is an experienced computer/software engineer at Yinker, Inc. with a background in hardware, memory, and data recovery. I do not see that Mr. Liu has experience with e-discovery or forensic collection, nor does he appear to have any e-discovery certifications or familiarity with best practices.

## B. Scope of the Search

9. There are several issues with the scope of Mr. Liu's search that would potentially exclude relevant internal communications.

10. First, Plaintiffs requested all e-mails including the provided search terms. However, Mr. Liu limited the scope of the search to only those e-mails between GreatCare and "insurance companies" rather than all of GreatCare's e-mails. This is a significant limitation. Mr. Liu also did not specify whether he limited "insurance companies" to

Defendants CenterLight Healthcare, Inc. and Senior Whole Health of New York, Inc. or whether he included other insurance companies that GreatCare had a contractual relationship with. These are material limitations that could significantly narrow the size of the pool of e-mails Mr. Liu was searching from.

11. Second, Mr. Liu stated that he only searched e-mails from January 2018 through January 2026, when the applicable time-period for all of Plaintiffs' discovery requests is from January 1, 2015 through present. GreatCare did not produce any e-mails from before And Plaintiffs cannot identify any emails produced by GreatCare from before December 23, 2019.

12. Third, Mr. Liu says he searched through the e-mail accounts of nine current employees of GreatCare. However, GreatCare has had numerous other employees since January 1, 2015 who may also have responsive e-mails in their accounts.

## C. Collection Method

13. Based on Mr. Liu's affidavit, where he says he "ran each single search term above on the Microsoft Outlook...," ECF No. 190 at 9, it appears that he collected e-mails by typing keywords into the search bar of Outlook, or what is often referred to as an "Outlook Instant Search," a built-in functionality of the Outlook e-mail application. This type of search would be inadequate for performing ESI collection because it only captures locally-indexed emails.

14. This method excludes potentially responsive materials, as it only captures what is *currently* synchronized with the server. It will miss deleted e-mails, e-mails that were read on a phone and never synced with the desktop, unindexed items like certain attachments, and archived emails and files. The results will vary depending on the version of Outlook and Windows operating systems (or MacOS).

15. This method is limited in that it does not consistently search across the different versions of the Outlook Desktop Client. The Outlook Desktop Client is the email client software that connects to an Email Server, allowing a computer user to read email, calendar items, and contacts. Microsoft offers two versions of Outlook bundled with Office 365 (Classic and New), as well as Outlook versions bundled with the Windows Operating System. Each of these software versions behaves differently. One way that they behave differently from each other is how they cache and store emails, which has an impact on how successful a search may be. The new version of Outlook stores emails on Microsoft's cloud-based servers, rather than on a local device, such as a laptop, which changes how data is accessed and managed. It stores a representation of the emails locally but does not store the emails completely. Classic Outlook versions cache email locally in an e-mail database called a PST file. Current versions of Outlook act and operate more like the web-based version of Outlook. The different versions offer advantages and disadvantages for searching email, but none of these offer the benefits of searching using a server-side application designed for e-Discovery, which is necessary for what we can be more confident of as a complete search.

16. As opposed to "instant search" methods, "server-side collection" refers to collecting ESI directly from the mail server or cloud platform, like Office 365 or Google Workspace, the central system that is storing and managing e-mails. It has become the dominant best practice in ESI collection because it captures e-mails from a complete, authoritative source. This method provides robust logging of the search terms used, how the terms were combined, a detailed review of items deemed responsive and not responsive, and a chain of custody report. A competent and thorough e-discovery practitioner, unlike Mr. Liu, would have used a program, such as Microsoft's "Purview", which can perform a server-side

search across all Microsoft products and accounts, which could have served as Microsoft's e-Discovery platform. Such program is now commonly used by e-discovery practitioners to search for responsive data because provides robust logging, a chain of custody records for the discovery process, and other benefits as discussed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _____May 8_____, 2026.

SCOTT WORKMAN