UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F.
CHEN, MEI F. CHEN, HUI HE, HUI LI,
ZHAN J. LI, HUI X. RUAN, JIAN R.
XIAO, MEI Z. XIAO, MU Z. ZHANG, BI
Y. ZHENG, XIU X. ZHU,

                             Plaintiffs,

                -against-                                    Case No. 1:24-cv-07401 (LTS) (KHP)

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., SENIOR WHOLE
HEALTH OF NEW YORK, INC.,
                             Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SANCTIONS AGAINST DEFENDANT GREATCARE, INC.**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**RELEVANT FACTUAL BACKGROUND** .............................................................................. 1

I. GREATCARE HAS FAILED TO OBEY MULTIPLE DISCOVERY ORDERS............ 2

 A. GreatCare Fails to Follow Its First Court Order. .............................................. 2

 B. Plaintiffs File Their First Motion to Compel and/or for Sanctions Against
   GreatCare. ......................................................................................................... 3

 C. GreatCare Fails to Obey a Third Discovery Order. .......................................... 5

 D. GreatCare Fails to Comply with a Fourth Discovery Order. ........................... 5

II. GREATCARE HAS SPOLIATED EVIDENCE ................................................................ 8

 A. GreatCare Admits to Knowingly and Deliberately Destroying Relevant Evidence. ....... 8

 B. GreatCare Produced Documents That Have Been Clearly Altered. ..............................11

III. GREATCARE HAS ATTEMPTED TO PERPETRATE FRAUD ON THE COURT ... 12

 A. GreatCare Has Produced Falsified Documents................................................ 12

 B. GreatCare Has Falsely Characterized Its Search for Responsive Documents to the
   Court. ................................................................................................................. 17

 C. GreatCare Submitted False Statements Regarding the Health Status of Barbara
   Wang. ................................................................................................................. 18

**ARGUMENT**..................................................................................................................... **19**

    A.   GreatCare's Repeated Failure to Obey Discovery Orders Alone Merits Severe

          Sanctions. ............................................................................................................ 23

    B.   GreatCare's Spoliation of Evidence Also Merits Default Judgment. .......................... 24

    C.   GreatCare Should Be Sanctioned for Attempting to Perpetrate Fraud on the Court. ... 25

    D.   GreatCare Has Unreasonably Drawn Out This Litigation Causing Prejudice to

          Plaintiffs. ............................................................................................................. 26

    E.   Plaintiffs Request the Court Impose Harshest Sanctions to Ensure that GreatCare Does

          Not Benefit and the Other Defendants Are Deterred. ..................................................... 27

**CONCLUSION** ................................................................................................................. **28**

## TABLE OF AUTHORITIES

**Cases**

*Barbera v. Grailed, LLC*, 2025 WL 2098635 (S.D.N.Y. July 25, 2025) ................................ 20, 27

*ComLab, Corp. v. Kal Tire,* 2018 WL 4333987 (S.D.N.Y. Sep. 11, 2018) ..............................21-22

*Daval Steel Prods. V. M/V Fakredine,* 951 F.2d 1357 (2d Cir. 1991) ........................................... 22

*ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360 (2d Cir. 2025) ............ 21

*Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2022 WL 3646205

    (S.D.N.Y. Aug. 24, 2022) .................................................................................................... 22

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444 (2d Cir. 2013) ......................................... 22

*John B. Hull, Inc. v. Waterbury Petrol. Prods., Inc.,* 845 F.2d 1172 (2d Cir. 1988) ..................... 23

*Laba v. JBO Worldwide Supply Pty Ltd.*, 2023 WL 4985290 (S.D.N.Y. Jul. 19, 2023) ............... 21

*Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021).................................................. 20

*Manta Indus. Ltd. v. Anand,* 2024 WL 4872260 (S.D.N.Y. Nov. 22, 2024) ................................. 20

*Orbit One Communications, Inc. v. Numerex Corp.*, 271 F.R.D. 429 (S.D.N.Y. 2010) ............... 21

*Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................... 22

*PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 203036

    (S.D.N.Y. Jan. 27, 2026) ...................................................................................................... 21

*Quhshi v. Hartford Underwriters Ins. Co.*, 2025 WL 27773987
    (S.D.N.Y. Sept. 25, 2025) .................................................................................... 19-20, 23

*Rossbach v. Montefiore Med. Ctr., 81 F.4th 124 (2d Cir. 2023)* ............................................... 21-22

*Shi Min Chen v. Hunan Manor Enter.,* 2020 WL 4932777 (S.D.N.Y. Aug. 24, 2020) ................. 23

*Southern New England Tel. Co. v. Global NAPS Inc.,* 624 F.3d 123
    (2d Cir. 2010) ...................................................................................................... 20, 22-23

*Torres v. Universal Music Group N.V.*, 2026 WL 24823 (S.D.N.Y. Jan. 5, 2026) ........................ 23

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776 (2d Cir. 1999) ......................................... 20-21

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ....................................................... 20

*Urbont v. Sony Music Ent.*, 2014 WL 6433347 (S.D.N.Y. Nov. 6, 2014) ...................................... 20

*Vadnais v. United States*, 2023 WL 6504861 (S.D.N.Y. Oct. 5, 2023) ......................................... 20

*Vanceah v. Nat'l R.R. Passenger Corp.*, 2022 WL 3030740 (S.D.N.Y. Aug. 1, 2022) ................. 22

*Viruet v. City of New York*, 2020 WL 4458789 (S.D.N.Y. May 1, 2020). ............................... 19, 22

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................................ 2

Fed. R. Civ. P. 10 ...................................................................................................................... 2

Fed. R. Civ. P. 34 .................................................................................................................... 26

Fed. R. Civ. P. 37 ............................................................................................................ *passim*

**PRELIMINARY STATEMENT**

Plaintiffs submit this memorandum of law in support of their motion for sanctions against Defendant GreatCare, Inc. ("GreatCare"). Throughout the course of this litigation, GreatCare has failed to obey several of the Court's discovery orders, has spoliated key evidence, and has attempted to perpetrate fraud on the Court. Therefore, Plaintiffs request that the Court enter default judgment and other appropriate sanctions against GreatCare pursuant to both Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent powers.

**RELEVANT FACTUAL BACKGROUND**

On October 4, 2024, Plaintiffs filed their complaint against GreatCare, Defendant CenterLight Healthcare Inc. ("CenterLight"), and several unnamed managed long-term care companies ("MLTCs") alleging that Defendants, together as joint employers, deprived Plaintiffs of their lawful wages, overtime, benefits, and spread of hours pay in violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York Home Care Worker Wage Parity Act ("Wage Parity Act"). ECF 1 (Complaint). The summons and complaint were served on GreatCare on October 18, 2024. ECF 14 (Affidavit of Service). Prior to initiating this action, though, Plaintiffs had all filed claims with the New York State Department of Labor ("NYSDOL") regarding GreatCare's failure to pay wages and overtime. *See* Declaration of Carmela Huang ("Huang Decl."), Exhibit ("Ex.") A (Plaintiffs' NYSDOL Claim Forms). These claims not only tolled Plaintiffs' statute of limitations for their New York Labor Law claims, they also put GreatCare on notice that an investigation was imminent and future litigation was possible.

1

## I.  GREATCARE HAS FAILED TO OBEY MULTIPLE DISCOVERY ORDERS

On November 19, 2024, Plaintiffs were contacted by Mr. Jose Muniz, who introduced himself as GreatCare's new counsel.[1] On January 7, 2025, the Clerk of the Court entered a certificate of default against GreatCare for its failure to file an answer or otherwise move with respect to the complaint. ECF 23 (Clerk's Certificate of Default). Plaintiffs had initiated the process of seeking default judgment after Mr. Muniz repeatedly sought extensions of time to file an answer and repeatedly failed to file an answer by the agreed upon date. *See* ECF 33 (Plaintiffs' Letter) (outlining Mr. Muniz' dilatory conduct between November 19, 2024 and January 13, 2025). On January 14, 2025 (and again on January 20, 2025), GreatCare filed a three-page answer to Plaintiffs' sixty-page complaint. ECF 29-31 (GreatCare Answer). Because the answer failed to fairly respond to the substance of Plaintiffs' allegations and to separately state and number defenses as required by Rules 8 and 10 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiffs' requested that the certificate of default not be put aside until GreatCare had re-filed its answer. ECF 33 (Plaintiffs' Letter). A case management conference was scheduled for February 19, 2025 to address GreatCare's default and other issues. ECF 35 (Order).

### A.    GreatCare Fails to Follow Its First Court Order.

Following the February 19, 2025 case management conference, the Court ordered GreatCare to provide Plaintiffs by April 21, 2025 the information needed to identify the unnamed MLTCs implicated by Plaintiffs' allegations to allow Plaintiffs to amend their complaint by the Court-ordered deadline of May 19, 2025. ECF 40 (Post-Conference Order).

---

[1] Plaintiffs had already been engaged in discussions with GreatCare's original counsel from Poricanin Law for an out-of-court resolution of Plaintiffs' claims when they were contacted by Mr. Muniz. Counsel from Poricanin Law informed Plaintiffs on November 21, 2024 that they had been substituted by Mr. Muniz.

Plaintiffs, GreatCare, and Defendant CenterLight were also ordered to serve initial disclosures, document requests, and interrogatories by March 12, 2025 and to submit a joint letter updating the Court on the status of discovery and any settlement negotiations by May 19, 2025. *Id.*

GreatCare completely failed to comply with the Court's order: GreatCare served no initial disclosures, document requests, or interrogatories, and acknowledged in a meet and confer with Plaintiffs' counsel on March 17, 2025 that the deadline for GreatCare to serve discovery requests had passed; GreatCare failed to join in the submission of a status letter; and, most importantly, GreatCare failed to produce the names of the relevant MLTCs. *See* ECF 42 (Status Letter) (outlining GreatCare's failures). As a result, Plaintiffs were forced to serve a third-party subpoena on Homecare Software Solutions, LLC d/b/a HHAeXchange ("HHAX") to obtain records sufficient to identify Plaintiffs' putative MLTC joint employers and to determine whether additional Plaintiffs had been jointly employed by Defendant CenterLight. ECF 49 (Plaintiffs' Extension Request). Plaintiffs were also required to request an extension of their deadline to file an amended complaint. *Id.*

**B.     Plaintiffs File Their First Motion to Compel and/or for Sanctions Against GreatCare.**

In response to Plaintiffs' and CenterLight's status report, the Court ordered the Parties to appear at a case management conference on April 30, 2025 to discuss updates to the discovery issues outlined in the Parties' letter. ECF 44 (Memo Endorsement). However, Mr. Muniz inexplicably failed to appear at the April 30 conference. *See* ECF 54 (Joint Status Letter). Plaintiffs were therefore ordered to meet and confer with GreatCare in an attempt to reach a resolution regarding Plaintiffs' discovery requests. ECF 48 (Post-Conference Order). Plaintiffs were further directed to file a motion for sanctions by May 30, 2025 if no resolution with GreatCare could be met. *Id.*

Immediately following the case management conference, Plaintiffs' counsel reached out to Mr. Muniz to arrange for a meet and confer to discuss GreatCare's outstanding deficiencies, including its continued failure to identify the MLTCs associated with Plaintiffs' claims. ECF 54 (Joint Status Letter) at 1. Despite multiple telephone calls, messages, voicemails, and emails, Mr. Muniz did not respond to Plaintiffs' counsel's meeting request until May 13. *Id.* at 2. A meet and confer was held on May 16, 2025, during which Mr. Muniz admitted that he had not even reviewed Plaintiffs' document requests with his client. *Id.* at 2.

On May 22 and May 23, 2025, GreatCare produced additional documents. *Id.* at 2. A review of the documents plainly revealed that GreatCare had selectively provided documents for only some Plaintiffs. *Id.* at 2-3. GreatCare justified its non-production by claiming that it had no obligation to produce documents prior to October 2018 because it had independently decided that any claims prior to that date were outside of the statute of limitations even though the relevant period for the complaint stretches back to January 2015 and GreatCare has raised no statute of limitations defenses. *Id.* at 3*;* ECF 57 (Status Letter); ECF 29-31 (GreatCare Answer); ECF 187 (GreatCare Amended Answer)*.* Nevertheless, on the basis of continuing discussions with GreatCare, Plaintiffs requested an extension of its deadline to file its motion to compel and/or for sanctions against GreatCare. ECF 54 (Joint Status Letter); ECF 58 (Plaintiffs' Extension Request).

On July 11, 2025, Plaintiffs filed its first motion to compel discovery and/or for contempt sanctions against GreatCare. ECF 65, 67-68 (Plaintiffs' Motion to Compel). On July 17, 2025, GreatCare filed a two-page reply that failed to substantively respond to Plaintiffs' motion. ECF 71 (GreatCare Letter). Instead, GreatCare recycled a letter that it had previously submitted to the Court *before* Plaintiffs filed their motion. ECF 63 (GreatCare Letter).

On July 23, 2025, Plaintiffs' motion was denied as premature, and Plaintiffs were ordered to again meet and confer with GreatCare in an attempt to resolve GreatCare's continued and outstanding discovery deficiencies. ECF 73 (Post-Conference Order). In the same order, GreatCare was ordered to produce payroll records for the relevant period from 2015 to the present for each Plaintiff. *Id.* at 1. GreatCare never produced additional payroll records as ordered.

**C.      GreatCare Fails to Obey a Third Discovery Order.**

On August 14, 2025, the Court ordered GreatCare to respond to Plaintiffs' August 13, 2025 letter describing GreatCare's outstanding discovery deficiencies, failure to conduct a thorough search, and spoliation of evidence. ECF 76 (Order). The Court warned that GreatCare could be sanctioned under Fed. R. Civ. P. 37 if it failed to comply. GreatCare filed no response.

**D.      GreatCare Fails to Comply with a Fourth Discovery Order.**

On February 2, 2026, the Parties appeared before the Court for a case management conference. ECF 162 (Post-Conference Order).[2] After learning that Barbara Wang, GreatCare's Vice-President and head of operations, had only searched her personal yahoo.com email using only two search terms for documents responsive to Plaintiffs' request, the Court ordered GreatCare to provide a letter to Plaintiffs' counsel, by no later than February 9, 2026, specifying: (i) each email account that was search for responsive documents as well as the search terms

---

[2] The conference was originally scheduled to be held on January 22, 2026 to deal with the multiple, serious discovery issues that had arisen in the case, including the failure of Defendants CenterLight and SWHNY to produce relevant documents. *See* ECF 147 (Order); ECF 140 (Plaintiffs' Letter in Opp. To CenterLight Request to Preclude); ECF 142 (Plaintiffs' Letter Opposing GreatCare Request for Sanctions); ECF 144 (Plaintiffs' Letter Motion to Compel Discovery from SWHNY). However, the January 22 conference had to be rescheduled because, on January 20, Mr. Muniz informed the court that he had begun trial in Kings County Supreme Court and would be unavailable through February. ECF 151. Mr. Muniz's trial schedule also made it impossible for Plaintiffs to take the deposition of GreatCare's witnesses, including Barbara Wang, as scheduled before the January 30 discovery deadline.

applied; (ii) the names of the GreatCare employees whose correspondence may be relevant to the claims and defenses in this action; (iii) the email addresses used by GreatCare employees for communications relating to GreatCare work; (iv) the location and nature of any repository used for fax communications and whether such repository was searched; and (v) the extent any email accounts or repositories were not search, an explanation of what was not searched and why. *Id.* at 1-2. The Court also noted that it was "plain that counsel for GreatCare has not supervised discovery, as he was unable to provide a description of documents produced, emails searched or the location of repositories of relevant information. Counsel's failure to comply with discovery has created delays and necessitated motion practice. This is unacceptable." *Id.* at 2. The Court warned GreatCare that sanctions may be imposed for violations of the discovery rules. *Id.* at 3.

Despite these warnings, on February 8, GreatCare provided Plaintiffs with a letter that failed to comply with the Court's order: the letter did not identify which email accounts were searched; it did not provide the location and nature of any repository used for fax communications and indicate whether such repository was searched; and it provided no explanation for why email accounts or repositories were not searched. *Id.* The letter, which had also been filed with the Court via ECF, additionally included several false or deliberately misleading statements. *See* ECF 165 (GreatCare Letter).

First, GreatCare represented that its record retention obligations only extend back three years from the date of service. *Id.* at 1. However, state regulations require GreatCare to retain patient records for a minimum of six years, *see* 18 N.Y.C.R.R. § 504.3, 10 N.Y.C.R.R. § 766.6, and GreatCare's contracts with SWHNY and CenterLight require GreatCare to retain records for a minimum of ten years. *See* ECF 104-2 (SWHNY-GreatCare contract) at ¶ 7.4; Huang Decl., Ex. D (CenterLight-GreatCare contract) at CenterLight 000082.

Second, GreatCare represented that "[f]ax cover sheets were not saved, but were destroyed upon receipt of authorization. All that was preserved were the authorizations, which were previously provided to Plaintiffs' counsel." ECF 165 (GreatCare Letter) at 2. However, at her May 1, 2026 deposition, Ms. Wang testified that all fax communications between GreatCare and the MLTCs, including Defendants SWHNY and GreatCare, were saved in a single, physical binder at GreatCare's office. *See* Huang Decl., Ex. E (Transcript of Barbara Wang Deposition, May 1, 2026) ("Wang Dep.") at 34:21-36:10, 205:21-25.

Third, the letter named five employees of GreatCare, including Barbara Wang, whose correspondence could be relevant to Plaintiffs' claims. ECF 165 (GreatCare Letter) at 2. The letter then stated that "[a]ll email repositories were searched; and the results were, there were no communications with insurance companies."[3] *Id.* However, the existence of communications to and from SWHNY and CenterLight with Barbara Wang and other employees is clearly indicated by both GreatCare's own submission to the Court on April 6, 2026 that included emails from GreatCare employees, including employees who had not previously been identified, *see* ECF 190 (GreatCare Memorandum of Law) at 23-26, as well as emails produced by SWHNY showing communications between SWHNY and employees of GreatCare other than Barbara Wang. *See* Huang Decl., Ex. C (SWHNY Email).

In short, the letter was a clear expression of GreatCare's continued disregard for the Court's orders and its discovery obligations.

---

[3] Plaintiffs assume that GreatCare intended to state that no communications from the insurance companies to employees other than Barbara Wang were found because GreatCare included with its letter sixty emails sent to Ms. Wang at her yahoo.com and greatcareny.com email addresses. *See* ECF 165 at 10-166. But, GreatCare included no emails from Barbara Wang to either SWHNY or CenterLight and included no emails either to or from other GreatCare employees.

## II.    GREATCARE HAS SPOLIATED EVIDENCE

On multiple occasions, GreatCare has admitted to the destruction of relevant evidence. Additionally, there is strong evidence to conclude that GreatCare also altered key documents.

**A.    GreatCare Admits to Knowingly and Deliberately Destroying Relevant Evidence.**

In their document requests, Plaintiffs requested that GreatCare produce:

> [a]ny and all documents concerning the rights, responsibilities, duties, and/or work activities of Plaintiffs, including, without limitation, a. any and all service authorizations; b. assessment reports; c. comment guides; d. summaries; e. care plans for all members or patients and all episodes of care to which Plaintiffs were assigned to work.

ECF 68-1 (Plaintiffs' Document Requests) at 14.

This request generally aligns with the records that GreatCare was required to maintain pursuant to New York state's Medicaid regulations as well as GreatCare's contracts with SWHNY and CenterLight. *See* 10 N.Y.C.R.R. § 766.6(a) (requiring licensed home-care services agencies to maintain "patient care records," defined to include identifying patient data, medical orders, nursing assessments, individualized plans of care, signed and dated progress notes, aide supervision notes, aide observation notes and reports, aide activity sheets, and documentation of accidents and incidents); 18 N.Y.C.R.R. 505.14(g)(4) (requiring "case management agencies" to maintain "case records", which include at a minimum, practitioner orders, assessments, plans of care, authorizations, consent forms, orientation visit and nursing supervisory reports, case narrative notes, and any criminal investigation or incident reports involving the patient or any person providing personal care services to the patient). GreatCare was required to maintain these records for at least six to ten years. *See* 10 N.Y.C.R.R. § 766.6(b) (requiring that patient care

8

records be maintained for six years); ECF 104-2 (SWHNY-GreatCare contract) at ¶ 7.4 (requiring that records relating to SWHNY members be maintained for at least 10 years); Huang Decl., Ex. D (CenterLight-GreatCare contract) at CenterLight 000082 (requiring that records related to CenterLight members be maintained for at least 10 years).

GreatCare has stated on multiple occasions that it maintains records for care recipients as required for six years. *See* Huang Decl., Ex. E (Wang Dep.) at 186:6-187:2. Most of these records are stored in "patient files." GreatCare was required to report to MLTCs anytime there was a change in the care recipient's condition, if the care recipient was hospitalized, or if there was a change in the aide's schedule. *See* Huang Decl., Ex. F (Transcript of Mei Mei Zhao Deposition, Feb. 11, 2026) ("Zhao Dep.") at 39:21-25, 69:25-70:12, 77:23-78:15; Huang Decl, Ex. G (Sample Fax Communications). These fax communications are stored separately in a physical binder at GreatCare's office. *See* Huang Decl., Ex. E (Wang Dep.) at 34:21-36:10, 205:21-25; Huang Decl., Ex. F (Zhao Dep.) at 19:2-20. Aides have their own files, and authorizations are uploaded onto HHAX. Huang Decl., Ex. E (Wang Dep.) at 75:19-76:10, 40:2-7, 207:5-22. During the relevant period, GreatCare's patient and aide files were periodically audited by SWHNY and CenterLight and found to be in compliance. *See* Huang Decl., Ex. E (Wang Dep.) at 73:7-75:12.

On August 4, 2025, Plaintiffs' counsel met with Mr. Muniz and Barbara Wang to discuss GreatCare's deficient document production. ECF 75 (Plaintiffs' Letter) at 1. Ms. Wang admitted that GreatCare stores records at an off-site storage unit, but represented that she would not search the storage unit for responsive documents. *Id*. at 2. More critically, Ms. Wang also represented that she had already shred many responsive documents because of her "understanding" that records need only be maintained for six years. *Id*.

Due in part to Ms. Wang's "understanding" that records need only be maintained for six years, GreatCare has produced partial care records for only five of the 27 different individuals who received Plaintiffs' 24-hour, "live-in" services throughout the period covered by the amended complaint (i.e., January 1, 2015 through August 18, 2025). *See* Huang Decl. ¶ 12. However, fifteen of the 27 individuals received services from Plaintiffs after October 1, 2018 (six years prior to the filing of the complaint), and twelve of the 27 individuals received services after August 18, 2019 (six years prior to the filing of the amended complaint). *See* Huang Decl. ¶¶ 13-14. Yet GreatCare has produced no records for even these individuals because their records, too, have been destroyed. *See* Huang Decl., Ex. E (Wang Dep.) at 184:15-18, 186:16-187:7, 188:16-189:22, 215:5-218:10 (testifying that all records other than those that had been produced had been shred). Therefore, GreatCare has destroyed records even within six years of the initiation of this action.

Importantly, Ms. Wang testified at her May 1, 2026 deposition that she was aware from as early as November 2017 that GreatCare could be liable to Plaintiffs for violations of the federal and state labor laws and began creating records in preparation for litigation at that time. *See* Huang Decl., Ex. H (State Court Summons and Complaint); Huang Decl., Ex. E (Wang Dep.) at 123:21-124:15; 134:16-25; 162:13-16, 163:12-164:24; 167:18-168:4. Ms. Wang also testified that she was aware that Plaintiffs had filed complaints beginning in 2022 with the New York State Department of Labor regarding GreatCare's failure to pay Plaintiffs wages for all 24-hours of their shifts. *See* Huang Decl., Ex. E (Wang Dep.) at 125:21-126:3. Therefore, GreatCare destroyed evidence with the knowledge that the spoliated records would be relevant to reasonably foreseeable litigation.

10

**B.    GreatCare Produced Documents That Have Been Clearly Altered.**

GreatCare provided nursing visit records for five individuals: ███████ ████████

██████████████████████. *See* Huang Decl. ¶ 16. Some pages on each set of

records include notes purporting to show that the individuals' aides worked only 13 hours per

"live-in" shift and/or the aides received three hours of meal breaks and eight hours of sleep time

(five hours of which was uninterrupted). *See* Huang Decl., Ex. I (███████ Records) at 4, 7;

Huang Decl., Ex. J (██████ Records) at 3, 5; Huang Decl., Ex. K (██████ Records) at 2, 4;

Huang Decl., Ex. L (████████ Records) at 2, 4, 6, 9; Huang Decl., Ex. M (██████

Records) at 1-2, 4-5. However, the handwriting of the notes does not match the handwriting in

the remainder of the nursing visit records: the handwriting in the notes is far more legible and the

letter "y" is much more angular than throughout the remainder of the records. Moreover, many

of the visit records also have noted in the nurse's handwriting that the "p[atien]t sleeping and

appetite is not good," which conforms more closely to the assessment and other health records

obtained by Plaintiffs from SWHNY, CenterLight, other non-defendant MLTCs, and the New

York State Department of Health. *See* Huang Decl., Ex. I (███████ Records) at 11-12;

Huang Decl., Ex. J (██████ Records) at 7-9; Huang Decl., Ex. K (██████ Records) at 8-9;

Huang Decl., Ex. L (████████ Records) at 16; Huang Decl., Ex. M (██████ Records)

at 7-8.

Barbara Wang denies that the records have been altered. *See* Huang Decl., Ex. E (Wang

Dep.) at 84:20-87:20; 100:4-12. Instead, Ms. Wang testified that she saw no difference in

handwriting and that all of the notes in the visit records had been written by the same nurse. *Id.*

at 100:4-24, 103:13-24, 105:6-22. These statements are not credible. Even a cursory review of

these documents would lead to the conclusion that they have been altered.

11

### III.    GREATCARE HAS ATTEMPTED TO PERPETRATE FRAUD ON THE COURT

GreatCare has attempted to perpetrate fraud on the court in two significant manners. First GreatCare has produced falsified documents. Second, GreatCare has submitted statements to the Court that are knowingly false.

### A.    GreatCare Has Produced Falsified Documents.

GreatCare's falsified documents fall into two categories: (1) falsified "declaration letters" and (2) falsified time sheets.

####    1.    *Declaration Letters*

GreatCare produced letters purportedly signed by three care recipients and their family members stating that the Plaintiffs who provided 24-hour, "live-in" services to them received three one-hour meal times, five consecutive hours of uninterrupted sleep during an eight-hour scheduled sleep period, and adequate sleeping facilities for each service day. *See* Huang Decl., Ex. N (Declaration Letters). These letters were prepared by GreatCare to send to the NYSDOL after Plaintiffs filed claims with the agency. *See* Huang Decl., Ex. E (Wang Dep.) at 134:16-25.

At least one letter is verifiably falsified. Although Barbara Wang testified that falsification was "impossible," *see* Huang Decl., Ex. E (Wang Dep.) at 127:11-17, the name of ▮▮▮▮▮▮▮, ▮▮▮▮▮▮ wife, is misspelled in what is allegedly her signature. *See* Huang Decl., ¶¶ 38-39, Ex. DD (▮▮▮ Documents), Ex. EE (▮▮▮ Letter).

The letters produced by GreatCare regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮▮▮▮▮ ▮▮▮▮ are also suspect. Mr. ▮▮▮▮▮▮▮ was 92-years-old in March 2023; he had been assessed as being unable to remember three words three minutes after hearing them; and he passed away two months after he purportedly signed the letters with his signature attached. *See* Huang Decl., Ex. I (▮▮▮▮▮▮▮ Records) at 12, 14. It is therefore highly unlikely that Mr.

12

████ was able to remember Plaintiffs' care work for him and his wife, particularly as Plaintiffs' work had taken place years before and Plaintiff Hui X. Ruan had only worked two shifts in August 2019. *See* Huang Decl., Ex. N (Declaration Letters) at 2-4. Additionally, assessments and health records show that Mr. ████ wife, with whom he was receiving mutual services, required turning and repositioning every two hours in order to prevent the development of skin ulcers. *See* Huang Decl., Ex. O (████████ Records). Mrs. ████ was also on a toileting schedule that required her aides to assist her with toileting every two hours. *Id.* at 5. And Mr. and Mrs. ████ lived in a studio apartment, which could not have provided adequate sleeping facilities. *Id.* at 1.

████████████ was a long-term care recipient of Plaintiffs Mei Z. Xiao, Jian R. Xiao, and Bi Y. Zheng. *See* Huang Decl., Ex. N (Declaration Letters) at 5-7; ECF 77 (Amended Complaint) ¶¶ 269-299. Plaintiffs alleged in their amended complaint that Ms. ████ required toileting assistance approximately five to seven times per night and often asked for assistance with pains and cramps during the night. ECF 77 (Amended Complaint) at ¶ 273. Ms. ████ inability to sleep at night and nocturia are corroborated by documents produced by her former MLTC, Extended. *See* Huang Decl., Ex. P (████████ Records). Though Plaintiffs provided services to Ms. ████ until August 2023, Ms. ████ is one of the individuals for whom GreatCare provided no care management records. *See* Huang Decl. ¶ 25.

### 2. Falsified Time Sheets.

Barbara Wang testified that it has always been GreatCare's practice to require aides working "live-in" shifts to submit paper time sheets, even after aides began using a telephone-based timeclock system. *See* Huang Decl., Ex. E (Wang Dep.) at 138:9-140:24. According to Ms. Wang, the paper time sheets were needed so that GreatCare could verify the length of each "live-in" aide's sleep and meal breaks per shift. *Id.* at 79:24-80:11, 140:14-20, 226:4-8. Ms.

13

Wang also testified that the aides were in total control of the paper time sheets: they filled out the time sheets themselves (even time sheets that had typed time entries and signatures) with only limited instruction from GreatCare and submitted the time sheets to GreatCare on a weekly basis. *Id*. at 229:2-231:12, 235:2-15, 236:5-15, 237:14-23, 239:15-240:22, 241:12-20. When asked, Ms. Wang denied that GreatCare told Plaintiffs what times to fill out on the handwritten time sheets or that GreatCare had provided Plaintiffs the typed timesheets with the times already pre-filled. *Id*. at 242:15-243:4. Ms. Wang also denied that GreatCare made Plaintiffs sign several weeks, even months, of time sheets at once. *Id*. at 243:5-9.

On the other hand, several Plaintiffs provided testimony at their depositions that contradicted Ms. Wang's account:

- Zhan J. Li testified that GreatCare began to have her sign paper time sheets in 2019. *See* Huang Decl., Ex. Q (Deposition Transcript for Zhan J. Li) at 57:9-25. She signed the time sheets, but the information had already been pre-filled by someone else. *Id*. at 60:14-21. The meal and sleep times reflected in the time sheets were not accurate. And Ms. Li was told that if she did not sign the time sheets, she would not have a job at GreatCare. *Id*. at 61:16-19.

- Mu Z. Zhang testified that she signed all of the time sheets produced by GreatCare covering the 2021-2022 period in a single day after being called into GreatCare's office. *See* Huang Decl., Ex. R (Deposition Transcript for Mu Z. Zhang) at 107:10-21. The company had already filled in all of the written content; Ms. Zhang was only asked to sign each page. *Id*. at 111:20-23.

- Hui X. Ruan recognized the time sheets and admitted that she had filled them out herself. *See* Huang Decl., Ex. S (Deposition Transcript for Hui X. Ruan) at 78:22-

14

79:14. When asked how she knew how to fill them time sheets out, she explained that GreatCare had showed her a template. *Id.* However, Ms. Ruan cannot read and does not understand English. *Id.* at 8:12-24.

- Zhu H. L. Lin testified that GreatCare provided her with a filled-out form and instructed her to copy the times on the form onto blank time sheets. *See* Huang Decl., Ex. T (Deposition Transcript of Zhu H. L. Lin) at 33:20-25. After reviewing the time sheets produced by GreatCare, Ms. Lin identified several pages where her signature appeared to be copied and pasted onto the time sheet. *Id*. at 52:13. She also testified that the times listed on the time sheets were not accurate. *Id*. 130:11-18, 131:23-25, 132:9-15. Ms. Lin specifically remembered working until 9pm on March 8, 2021 because that was the date that her care recipient was hospitalized with COVID. *Id*; *also* Huang Decl., Ex. G (Sample Fax Communications) at 2.

- Jian R. Xiao did not recall signing so many time sheets, particularly because she was using the telephone system to clock-in and clock-out. *See* Huang Decl., Ex. U (Deposition Transcript of Jian R. Xiao) at 57:17-20, 58:25-59:5. She recognized her signature on some of the time sheets produced by GreatCare, but disputed that the signatures on time sheets from late November through December 2020 were hers. *Id.* at 52:31.

- Hei Li testified that after the telephone clock-in and clock-out system was instituted, she only completed paper time sheets when the phone systems were not working. GreatCare produced no paper time sheets for Ms. Li. *See* Huang Decl., Ex. V (Deposition Transcript of Hei Li) at 87:18-88:12.

- Mei Z. Xiao testified that her care recipient's daughter provided her with a template

15

time sheet with the times already pre-filled. *See* Huang Decl., Ex. W (Deposition Transcript of Mei Z. Xiao) at 68:19-69:21. The daughter had received the template from GreatCare. *Id.* Ms. Xiao then filled out blank time sheets following the template. *Id.* She disputes that all the time sheets produced by GreatCare were signed by her. *Id*. at 70:22-25. Ms. Xiao cannot read or write English. *Id.* at 69:10-12.

- Hui Li testified that before the telephone clock-in and clock-out system existed, aides were required to fill out paper timesheets. *See* Huang Decl., Ex. X (Deposition Transcript of Hui Li) at 74:12-15. However, once the phone system was instituted, paper time sheets were no longer required. GreatCare produced no paper time sheets for Ms. Li. *Id.*

- Xiu X. Zhu testified that the signatures on the time sheets produced by GreatCare are hers. *See* Huang Decl., Ex. Y (Deposition Transcript of Xiu X. Zhu) at 103:17-21. However, Ms. Zhu also testified that she was forced to sign the sheets otherwise she would not be assigned work. *Id.* at 104:2-5.

- Xiu F. Chen testified that she was never asked to complete paper time sheets. *See* Huang Decl., Ex. Z (Deposition Transcript for Xiu F. Chen) at 64:4-10. Her testimony is consistent with GreatCare's document production, which did not include any time sheets for Ms. Chen.

- Hui He also testified that she never filled out timesheets. GreatCare produced no time sheets for Ms. He. *See* Huang Decl., Ex. AA (Deposition Transcript for Hui He) at 57:15-17.

GreatCare's document production did not include paper time sheets for Plaintiffs Bi Y. Zheng, Li Chen, and Mei F. Chen. *See* Huang Decl., Ex. BB (Excerpted Time Sheets). These

16

Plaintiffs were either never required to submit falsified time sheets or their time sheets were destroyed by GreatCare.

**B.     GreatCare Has Falsely Characterized Its Search for Responsive Documents to the Court.**

On numerous occasions, GreatCare has represented to the Court that it has conducted a thorough search for responsive documents and has produced all documents obtained in its possession and control. For the reasons enumerated in Plaintiffs' various letters, requests, and motions, these representations are patently false.

More recently, on April 4, 2026, GreatCare filed a memorandum of law in opposition to a sanctions motion that had not yet been filed by Plaintiffs. ECF 190 (GreatCare Memorandum of Law). Included with its memorandum of law was an affidavit from Qingmin Liu regarding his "forensic email collection." *Id.* at 8-10. In his affidavit, Mr. Liu swore under penalty of perjury that on March 26, March 27, and March 30, 2026, he took possession of the devices of nine GreatCare employees, including Barbara Wang, to perform a search for relevant and responsive communications. *Id.* The results of Mr. Liu's "forensic email collection" were then provided to Mr. Muniz and attached to GreatCare's memorandum. *Id.* at 13-202. However, several key facts in Mr. Liu's affidavit are also false.

At her May 1 deposition, Barbara Wang testified that Mr. Liu had indeed been hired to conduct a search for emails using search terms that had been previously provided by Plaintiffs' counsel. *See* Huang Decl., Ex. E (Wang Dep.) at 196:14-197:1. Contrary to what was indicated in Mr. Liu's affidavit, though, Mr. Liu searched only one device – Barbara Wang's laptop. *Id.* at 200:24-201:10. At no point did he take possession of any devices used or controlled by any other employees of GreatCare. *Id.* at 201:17-25. Mr. Liu did not even search Ms. Wang's smartphone. *Id.* at 199:8-14. Instead, Mr. Liu used usernames and passwords provided by Ms. Wang to

17

conduct a remote search of GreatCare employees' Outlook email accounts. *Id.* at 200:4-6. There were numerous other issues with the scope of Mr. Liu's search that would potentially exclude relevant internal communications. *See* Declaration of Scott Workman at ¶¶ 9-16.

**C.    GreatCare Submitted False Statements Regarding the Health Status of Barbara Wang.**

On December 1, 2025, the Court ordered that fact discovery be completed by January 30, 2026. ECF 118 (Post-Conference Order).[4] Plaintiffs' deposition of Barbara Wang was scheduled to be conducted on January 7 and January 23. However, Plaintiffs were not able to complete Ms. Wang's deposition because on January 20, 2026, Mr. Muniz informed the Parties and the Court that he had begun a trial in Kings County Supreme Court. *See* ECF 151 (Muniz Letter); ECF 153 (Order).

On February 2, 2026, the Court extended the discovery schedule until March 2, 2026 for the limited purpose of completing depositions and other specified tasks. ECF 162 (Order). The Court additionally granted Plaintiffs permission to conduct a half-day deposition of Barbara Wang on the scope and adequacy of GreatCare's efforts to search for responsive documents, including emails and faxes. *Id.* Ms. Wang's depositions were subsequently scheduled for February 18, February 24, and February 26.

On February 13, 2026, Mr. Muniz informed Plaintiffs' counsel that Ms. Wang had suffered a rib fracture and would not be able to be deposed until the end of March or the beginning of April. *See* ECF 168 (Plaintiffs' Letter). Plaintiffs therefore requested an extension

---

[4] The December 1, 2025 conference was originally intended to be a settlement conference. *See* ECF 88 (Sept. 8, 2025 Memo Endorsement). However, Plaintiffs submitted a request to convert the settlement conference into a status conference after Mr. Muniz informed the Parties that his client would not be available at attend the settlement conference due to a personal matter. ECF 110 (Plaintiffs' Nov. 20, 2025 Letter). At her deposition, Barbara Wang testified that she could not attend the conference because "I ha[d] a cough and I couldn't recover; I just want to go to warm place to recover [from] my cough." *See* Huang Decl., Ex. E (Wang Dep.) at 191:13-15.

of the discovery deadline to complete Ms. Wang's depositions. *Id.* On April 2, 2026, Mr. Muniz further represented to the Court that Ms. Wang "recently suffered an injury that has required her to remain on bed rest, which has impacted her immediate availability." ECF 188 (GreatCare Letter) at 1. Along with his letter, Mr. Muniz attached health records indicating that Ms. Wang had indeed suffered a rib fracture. *Id.* at 10. On April 6, 2026, GreatCare submitted an additional filing, in which Mr. Muniz stated that, "Ms. Wang…is presently suffering from a serious back fracture, a medical condition that materially affects her ability to endure repetitive or cumulative discovery demands." ECF 190 (GreatCare Memorandum of Law) at 2.

At her May 1, 2026 deposition, Ms. Wang confirmed that she had indeed suffered a rib fracture. *See* Huang Decl., Ex. E (Wang Dep.) at 220:9-18. However, contrary to GreatCare's representations to the Court, Ms. Wang did not suffer a back fracture and was only bedridden for approximately two to three weeks. *Id.* at 222:16-20. On or about April 17, 2026, Ms. Wang went into GreatCare's office in midtown-Manhattan from her Long Island home for the first time since her injury, traveling approximately one hour in each direction. *Id.* at 223:6-224:5. However, prior to April 17, Ms. Wang was already sufficiently recovered to work from home for limited periods of time. *Id.* at 223:17-22.

## ARGUMENT

A party who fails to obey discovery orders or comply with its discovery obligations may be sanctioned pursuant to Rule 37 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 37(b)(2)(iv). Discovery sanctions serve three purposes: they ensure that a party will not benefit from its own failure to comply, they seek to obtain compliance, and they serve a general deterrent effect on the case at hand and on other litigation. *Quhshi v. Hartford Underwriters Ins. Co.*, 2025 WL 27773987, at *7 (S.D.N.Y. Sept. 25, 2025); *also Viruet v. City of New York*, 2020

19

WL 4458789, at *4 (S.D.N.Y. May 1, 2020). When determining what sanctions to impose, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Southern New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

"A party's conduct will be deemed willful where the contravened orders were clear, the party being sanctioned understood the orders, and the non-compliance was within the party's control." *Barbera v. Grailed, LLC*, 2025 WL 2098635, at *11 (S.D.N.Y. July 25, 2025) (citing *Urbont v. Sony Music Ent.*, 2014 WL 6433347, at *2 (S.D.N.Y. Nov. 6, 2014); *also Vadnais v. United States*, 2023 WL 6504861, at *5 (S.D.N.Y. Oct. 5, 2023) ("continued non-compliance in the face of warnings, indicates willful noncompliance with discovery rules"). A party's persistent refusal to comply with discovery orders is clear evidence of willfulness, but so is a party's half-hearted attempts at compliance. *Quhshi v. Hartford Underwriters Ins. Co.*, 2025 WL 2773987, at *5 (S.D.N.Y. Sept. 29, 2025) (citing *Manta Indus. Ltd. v. Anand*, 2024 WL 4872260, at *4 (S.D.N.Y. Nov. 22, 2024)) (internal quotation marks omitted).

Pursuant to its inherent power, a court may also sanction a party who engages in the spoliation of non-ESI evidence, attempts to perpetrate fraud on the court, or otherwise impedes the efficient administration of justice. *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021) ("District courts have inherent, statutory, and rule-based powers to sanction lawyers for conduct that impede the efficient administration of justice."); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) ("A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court."); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("Even without

20

a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation.")

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 374 (2d Cir. 2025) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779). A party spoliates evidence if the party had an obligation to preserve it at the time the evidence was destroyed, destroyed the evidence with a culpable state of mind, and the destroyed evidence was relevant to a claim or defense. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139 (2d Cir. 2023). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *ComLab, Corp. v. Kal Tire*, 2018 WL 4333987, at *6 (S.D.N.Y. Sep. 11, 2018). Relevance "is an extremely broad concept." *PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 203036, at *8 (S.D.N.Y. Jan. 27, 2026) (citing *Orbit One Communications, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436-37 (S.D.N.Y. 2010) (discussing Rule 37(e)). The spoliation need not be intentional or willful for there to be a finding that evidence was spoliated with a culpable state of mind; instead a culpable state of mind may be found where the spoliation occurred due to negligence only. *Rossbach*, 81 F.4th at 140.

"Fraud on the court occurs when a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Laba v. JBO Worldwide Supply Pty Ltd.*, 2023 WL 4985290, at *8 (S.D.N.Y. Jul. 19, 2023). A party commits fraud on the court by willfully and in bad faith fabricating evidence. *Rossbach*, 81 F.4th at 135; *also Torres v. Universal Music Group N.V.*,

2026 WL 24823, at *1 (S.D.N.Y. Jan. 5, 2026) ("Fabrication of evidence 'is a near-classic example' of fraud upon the court.") (collecting cases). The party seeking sanctions based on a claim of fabrication must provide clear and convincing evidence that fraud occurred. *See Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2022 WL 3646205, at *1–2 (S.D.N.Y. Aug. 24, 2022); *ComLab, Corp.*, at *7 (citing *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 406 (S.D.N.Y. 2010)).

Courts should always seek to impose the least harsh sanction that will remedy the party's misconduct. *Virtuet*, 2020 WL 4458789, at *4. But when a party disobeys discovery orders and prevents the disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate. *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). And when a Court determines that less drastic alternatives would be futile, a Court may impose terminating sanctions and enter default judgment against the offending party. *See, e.g., Rossbach,* 81 F.4th at 141 (affirming case-terminating sanction where plaintiff was found to have willfully and in bad faith fabricated evidence and attempted to mislead the district court); *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (affirming entry of default judgment where defendant had willfully disobeyed the Court's discovery orders and defendant's intransigence spanned months); *Southern New England Tel. Co.*, 624 F.3d at 147-148 (affirming sanctions where defendants acted willfully and in bad faith when they spoliated evidence, failed to provide a good-faith explanation for their neglect in producing relevant documents that were clearly the subject of the court's discovery orders, and engaged in a pattern of prolonged and vexatious obstruction of discovery); *Torres*, 2026 WL 24823, at *5 (dismissing complaint where Plaintiff fabricated key documents); *Vanceah v. Nat'l R.R. Passenger Corp.*, 2022 WL 3030740, at *8 (S.D.N.Y. Aug. 1, 2022) (dismissing Plaintiffs' claim for repeated discovery abuses).

22

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is not appropriate on the overall record." *Southern New England Tel. Co.*, 624 F.3d at 148 (citing *John B. Hull, Inc. v. Waterbury Petrol. Prods., Inc.*, 845 F.2d 1172, 1176-77 (2d Cir. 1988)). And "courts in the Second Circuit routinely refuse to issue sanctions below dismissal where parties have repeatedly failed to comply with the court's orders." *Shi Min Chen v. Hunan Manor Enter.*, 2020 WL 4932777, at *4 (S.D.N.Y. Aug. 24, 2020).

### A.     GreatCare's Repeated Failure to Obey Discovery Orders Alone Merits Severe Sanctions.

Even considered alone, GreatCare's repeated failure to obey the Court's discovery orders merits severe sanctions. In this case, GreatCare's period of noncompliance with the Court's discovery orders spans over one year: the first order that GreatCare failed to obey was issued by the Court on February 20, 2025; the second was issued by the Court on July 24, 2025; the third was issued on August 14, 2025, accompanied by a clear warning that sanctions could be imposed for non-compliance; and the fourth was issued on February 2, 2026, which was accompanied by long description of Mr. Muniz's failure to provide proper counsel. Moreover, GreatCare's noncompliance is clearly willful. Not only has GreatCare fully disobeyed some of the Court's orders (GreatCare never produced the names of MLTCs, never produced payroll records for the entire relevant period, and never responded to Plaintiffs' sanctions letter), the compliance GreatCare has demonstrated has been half-hearted at best. On February 2, 2026, the Court ordered GreatCare to provide Plaintiffs with a letter containing just five categories of information. *See* ECF 162 (Post-Conference Order). Nevertheless, GreatCare failed to comply with full and accurate information. *See* ECF 165 (GreatCare Letter).

Courts routinely impose case-terminating sanctions when a party willfully disobeys multiple discovery orders. *Quhshi*, 2025 WL 2773987, at *7 (collecting cases where terminating

23

sanctions were imposed where the party disregarded two or more warnings that noncompliance could result in sanctions). Here, given the magnitude and duration of GreatCare's willful noncompliance, it is clear that lesser sanctions short of default judgment would not be effective at obtaining future compliance from GreatCare or the other defendants in this case.[5]

**B.      GreatCare's Spoliation of Evidence Also Merits Default Judgment.**

Here, there is no doubt that GreatCare spoliated evidence: Barbara Wang has admitted that she shredded documents responsive to Plaintiffs' document requests, including the records that would not only document the work performed by Plaintiffs and their inability to obtain five continuous hours of sleep and three hours of meal breaks per 24-hour shift, but also those documents that would show the joint-employer relationship between GreatCare and the defendant MLTCs.

It is also clear that Ms. Wang caused the destruction of evidence after she was on notice the documents would be relevant to this litigation: Plaintiffs filed their complaint on October 1, 2024, yet Ms. Wang testified that she only made an effort to preserve documents from August 18, 2019 and later. GreatCare has even destroyed evidence created during the six-year period from the amended complaint.

It is even arguable that GreatCare's obligation to preserve evidence arose in November 2017, when it was sued in a class action complaint regarding its failure to pay its aides working 24-hour, "live-in" shifts for more than 13 hours per shift. Certainly, GreatCare knew that

---

[5] Plaintiffs note that GreatCare's repeated, willful noncompliance has already influenced the other defendants in this matter, who have also adopted GreatCare's attitude towards document production. Plaintiffs have filed multiple letters regarding SWHNY's and CenterLight's repeated refusal to produce highly relevant documents. *See* ECF 56 (Plaintiffs' Letter Motion to Compel CenterLight); ECF 70 (Plaintiffs' Jul. 17, 2025 Reply Letter); ECF 105 (Oct. 30, 2025 Joint Status Letter) at 5-6; ECF 114 (Plaintiffs' Nov. 26, 2025 Letter); ECF 130 (Plaintiffs' Jan 2, 2026 Letter) (regarding CenterLight); ECF 140 (Plaintiffs' Jan. 9, 2025 Letter) (regarding CenterLight); ECF 144 (Plaintiffs' Jan. 12, 2026 Letter) (regarding SWHNY).

litigation was reasonably foreseeable enough to begin altering and falsifying documents in preparation for its defense. For these reasons, the degree to which GreatCare spoliated relevant evidence merits sanctions of the harshest sort.

**C.      GreatCare Should Be Sanctioned for Attempting to Perpetrate Fraud on the Court.**

As has been stated by courts in this and other circuits, fabrication of evidence is a near-classic example of fraud upon the court. Here, GreatCare has not only fabricated evidence, it has also made multiple fraudulent statements to the court. The most egregious example of fraud that GreatCare has attempted to perpetrate is the falsification of "declaration letters" from Plaintiffs' care recipients. The evidence is clear and convincing that the letter allegedly signed by ███████ and his wife ██████████ was fabricated. There is no other reasonable explanation for why Ms. ██████ would misspell her own name.

Though Plaintiffs have less clear evidence regarding the other "declaration letters," there is no doubt that the content of the letters is also false. Assessments provided by other parties, including Defendant SWHNY, show without a doubt that these care recipients had nighttime needs that precluded their aides from sleeping five continuous hours per shift. *See* Huang Decl., Ex. I-M, O-P. Moreover, Mr. ███ and his wife lived in a studio apartment, which is per se inadequate sleeping accommodations. *See* Huang Decl, Ex. CC (OTDA Fair Hearing Decision). Barbara Wang's admission that the letters were prepared by GreatCare as evidence to rebut Plaintiffs' NYSDOL claims also lends further weight to a finding that the letters were fabricated.

In similar fashion, there is ample evidence that the paper time sheets produced by GreatCare were also prepared in anticipation of litigation. Barbara Wang's testimony that GreatCare always used paper time sheets is contradicted by testimony provided by the Plaintiffs that they were only asked to sign paper time sheets in or after 2019. And like the "declaration

letters," the contents of the time sheets are also false because Plaintiffs' care recipients all had needs throughout the night that precluded Plaintiffs from sleeping five continuous hours per shift. Plaintiffs were instructed or forced to sign time sheets that falsely showed Plaintiffs taking meal and sleep breaks that simply did not occur.

GreatCare has also, on multiple occasions, submitted false statements to the Court—regarding its efforts to search for and produce responsive documents, Barbara Wang's health status, and, most recently, Plaintiffs' consent to reopen discovery. *See* ECF 206 (GreatCare Letter); ECF 207 (Plaintiffs' Reply Letter).

These acts of fraud, even when considered alone, separate from GreatCare's other acts of disobedience and malfeasance, should merit default judgment.

**D.      GreatCare Has Unreasonably Drawn Out This Litigation Causing Prejudice to Plaintiffs.**

Through the course of this litigation, GreatCare has made twelve document productions spanning the period from March 1, 2025 to April 6, 2026. Until the last production that GreatCare made on April 6, none of GreatCare's document productions had conformed to Fed. R. Civ. P 34: the documents were not Bates stamped, they were not organized or labeled to correspond to Plaintiffs' document requests, and electronically stored information was not produced in the form requested by Plaintiffs (in either native format or searchable-PDF format). GreatCare has also served many of the same documents on at least four separate occasions (including again on April 6), which has required Plaintiffs to spend considerable time identifying and de-duplicating records. Moreover, the only written response that has ever accompanied any of the document productions was served on April 6, 2026 and is replete with falsehoods.[6] *See*

---

[6] Describing and disproving every false statement would require its own lengthy submission.

26

Huang Decl., Ex. DD (GreatCare Written Responses). And to date, GreatCare has still served no disclosures – initial or otherwise.

Additionally, at the end of February 2026, GreatCare began to engage in a game of musical chairs with counsel – hiring and firing three different attorneys and/or law groups (not including Mr. Muniz) within a span of less than 10 weeks. Each time GreatCare has brought on new counsel, Plaintiffs' counsel have been obligated to engage in meetings to rehash the same issues regarding discovery. These changes have caused significant delays, increased costs, and resulted in prejudice to Plaintiffs. GreatCare's constant barrage of duplication, delay, disobedience, disorganization, and change in counsel has drawn out this litigation unreasonably and, in total, "denied [Plaintiffs] the opportunity to plan its strategy in an organized fashion as the case proceeded." *Barbera v. Grailed*, 2025 WL 2098635, at \*14 (citing *535 Broadway Assocs. v. Com. Corp. of Am.*, 159 B.R. 403, 409–10 (S.D.N.Y. 1993) (Sotomayor, J.) ("Numerous calls, letters, conferences, court appearances and the filing of motions were necessary before [plaintiff's] counsel deemed it appropriate to offer last-minute, inadequate explanations for its failure to comply with discovery and this Court's orders. To state that the cost associated with the above is great is to have a penchant for the obvious which I will not indulge in."). Such misconduct merits sanctions pursuant to both Rule 37 and the Court's inherent power to protect the efficient administration of justice.[7]

**E.    Plaintiffs Request the Court Impose Harshest Sanctions to Ensure that GreatCare Does Not Benefit and the Other Defendants Are Deterred.**

Although GreatCare has been warned on multiple occasions that its continued failure to

---

[7] Plaintiffs also note the submission of a memorandum of law by GreatCare that appears to have been generated using AI and include hallucinated case citations, which as noted by the Court, is sanctionable. *See* ECF 190 (GreatCare Memorandum of Law), 192 (Order).

disregard its obligations to Plaintiffs and the Court could result in sanctions, GreatCare has indulged in multiple forms of bad faith behavior: it has willfully disobeyed discovery orders, it has spoliated documents, it has produced falsified records, it has submitted false statements, and it has, for various reasons, caused unreasonable delay. While each act of misconduct would, on its own, justify harsh sanctions, when taken together as a whole, GreatCare's pattern of behavior merits the entry of default judgment against it. No other measure would achieve the purpose of sanctions, which is to prevent a party from the benefit of its bad actions and deter noncompliance in both this specific case and litigation in general.

In addition to default judgment, Plaintiffs also request that the Court preclude SWHNY and CenterLight from relying on any documents produced by GreatCare, otherwise GreatCare's co-defendants and putative joint employers would unfairly benefit from GreatCare's sanctionable actions. SWHNY and CenterLight should not be able to rely on falsified and spoliated evidence.

Plaintiffs also request that the Court award Plaintiffs their attorneys' fees and costs in connection to this motion and, if granted, default judgment against GreatCare.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter default judgment against GreatCare, preclude SWHNY and CenterLight from relying on any documents produced by GreatCare, and order all other just and appropriate sanctions and remedies.

Dated:   May 8, 2026
         New York, New York

NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE

/s/ *Carmela Huang*
Carmela Huang
Claudia Wilner
50 Broadway, 15th Floor
New York, NY 10004-3821
(646) 393-3048

28

huang@nclej.org
wilner@nclej.org

GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
Caroline Friedman
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com
cfriedman@getmansweeney.com

*Counsel for Plaintiffs*

29