

**B**

## BRENLLA
### LAW FIRM

<u>**VIA ECF**</u>
May 11, 2026

Hon. Katharine Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*Li, et al v. Greatcare, Inc., CenterLight Health System., et al*
<u>Civil Action No: 24 Civ. 7401 (LTS)(KHP)</u>

Dear Judge Parker:

This law firm represents the Defendant, CenterLight Health System, Inc. ("CenterLight"), in the above-referenced matter. CenterLight respectfully requests a conference to address Plaintiffs repeated and willful failure to produce discovery and to require Plaintiffs to comply with CenterLight's requests.

On March 10, 2025, CenterLight e-mailed Plaintiffs' counsel with a Request for Document Production and First Set of Interrogatories. (See Exhibit A.). On <u>December 10, 2025,</u> Plaintiffs provided responses to Interrogatories for three of the Plaintiffs. On December 25, 2025, after (i) numerous depositions had occurred, and (ii) the parties were preparing for the close of discovery, Plaintiffs' counsel finally provided the formal responses to the document demands. CenterLight requested all prior complaint filed by the Plaintiffs. Plaintiffs only produced the complaints they filed against Greatcare. However, various Plaintiffs have filed identical lawsuits and complaints with the Department of Labor and the courts during the same time period they allegedly worked for Greatcare, while asserting that CenterLight was a joint employer. These have not been disclosed.

First, CenterLight discovered that another Plaintiff Hui He (who does not have a claim against CenterLight) had filed a previous lawsuit. CenterLight then expended time and resources searching the federal and state databases to find the lawsuit. I discovered that not only did Hui He file a lawsuit, but Plaintiff Hei Li was also a party in the pending lawsuit. The lawsuit, *Lin, et al v. Astra Home Care Inc., d/ba/ True Care Home Health Care, and any other related entities,* was filed in the Supreme Court for the State of New York, New York County on December 18, 2023 ("State Court Lawsuit"). (A true and accurate copy of the lawsuit is attached hereto as Exhibit D). Notably, the State Court Lawsuit was filed over ten (10) months prior this action being initiated. In the State Court Lawsuit, Hei Li alleges that the same exact allegations and same causes of action: "Plaintiff Hui He worked for Defendant as a home health attendant from approximately November 2017 to January 2022. Hei Li worked approximately two to three 24-hour shifts per week" (State Court Lawsuit, ¶21). Plaintiffs have not produced any documents regarding this lawsuit.

**B** BRENLLA, LLC
250 Park Avenue, 7th Floor
New York, New York 10177

Office: (212) 364-5173
Fax: (646) 219-0983
gfbrenlla@brenllalaw.com
www.brenllalaw.com

Hon. Katharine Parker                                                                                  2
May 11, 2026
p. 2


Second, CenterLight recently discovered that Plaintiff Hui X. Ruan filed a state court lawsuit alleging the same causes of action for the same time period. The case was filed in the New York State Supreme Court, Queens County, Index No: 709913/2026, *Ruan, et al v. Barbara Wang*. This lawsuit was filed by the Plaintiffs' counsel. (See Exhibit E). The lawsuit alleges near identical facts and causes of action (same time period and same alleged hours worked) as contained in the present case. Plaintiffs' counsel has not produced these documents.

Third, during Li Chen's deposition, which was taken on April 30, 2026, Ms. Chen testified that she filed a lawsuit and Department of Labor claims against other employers during the relevant time period. (See Exhibit F, pages 6-7, 14-15, 18-19, 21-22). Once again, Plaintiffs have failed to disclose any of this information.

On April 30, 2026, I wrote Plaintiffs' counsel a letter requesting that they comply with discovery and disclose these documents and reserving the right to recall Plaintiffs due to their failure to disclose the documents. I did not receive a response. (See Exhibit G). On Friday, May 8, 2026, having received no response, I requested to meet and confer prior to seeking the Court's intervention. Today, I received a response from Ms. Karen Yau that she can only meet on Thursday, the day before discovery closes and no other attorney will conduct the conference. On Friday, CenterLight and Senior Whole Health of New York ("Senior Whole Health") are scheduled to depose Barbara Wang, Greatcare's representative, thus leaving CenterLight no time to seek redress for Plaintiff's failure to produce discovery. I explained that it was unacceptable to wait to meet the day before discovery closes. Plaintiffs' counsel has made it clear that that they would not adjourn or join in any request regarding discovery or any extension for any purpose. For example, during Thanksgiving weekend, Plaintiffs' counsel e-mailed me a Requests for Admissions, that was due December 26, 2025. Plaintiffs' counsel refused my request for a brief extension to respond during the Holiday season. This Court held that it would not allow CenterLight to respond and deemed the facts in those requests admitted. Thus, CenterLight cannot wait until the day before discovery ends to speak to Plaintiffs' counsel about their failure to comply with discovery as it does not wish to waive its right. Last, it is my understanding that Senior Whole Health also requested these documents and Plaintiffs have not disclosed the documents to them.


I apologize for taking this Court's time with discovery matters. However, when a party does not attempt to work with the other party, constantly accuses everyone of discovery violations and then hampers CenterLight and its defense by willfully refusing to produce relevant documents, CenterLight has no other alternative than to seek the Court's intervention. In the alternative, CenterLight requests an extension of discovery to meet and confer, obtain the documents that should have been produced during discovery, issue additional discovery demands and potential follow up depositions on the documents that should have been produced.

Hon. Katharine Parker                                                                        3
May 11, 2026
p. 3

If you should have any questions, please do not hesitate to contact the parties.

Respectfully submitted,

BRENLLA, LLC

By: _____

Cc:  Counsel of Record via ECF

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI
F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X.
RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG,
BI Y. ZHENG, and XIU X ZHU

Civil Action No:
24 Civ. 07401 (JHR)

Plaintiffs,

-against-

GREAT CARE, INC., CENTERLIGHT HEALTHCARE,
INC., AND DOE MANAGED LONG-TERM CARE
PLANS 1-14,

Defendants.

------------------------------------------------------------------------x

## **<u>DEFENDANT'S FIRST REQUEST FOR THE PRODUCTIONOF DOCUMENTS</u>**

**PLEASE TAKE NOTICE** that Defendant, CenterLight HealthCare, Inc. ("CenterLight"),  pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure requests that PLAINTIFFS produce for inspection and copying all documents, as that term is defined in this request. Production is to be made at the offices of BRENLLA, LLC, located at 250 Park Avenue, 7th floor, New York, New York 10177 attorneys for the Defendants, within thirty (30) days.  The instructions and definitions to be used in complying with this request are as follows:

1. This request for documents is addressed to Plaintiffs and/or their attorneys. If the requested documents are known by any Plaintiffs to exist, but are not in their attorney's possession, custody or control, said Plaintiffs shall so indicate and/or produce documents which show the name of the person(s), or entity/entities having custody of such documents and the location of the documents.

2. The word "document" means, without limitation, any written, recorded, filmed or graphic matter, whether produced or reproduced on paper, cards, tapes, film, electronic facsimile, computer storage device or any other media, including, but not limited to, personnel files, memoranda, notes, minutes, records, photographs, correspondence, telegrams, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, notebooks, handwritten notes, applications, resumes, evaluations,

investigations, agreements, books, pamphlets, periodicals, appointment calendars, records or recordings of oral conversations, work papers, and also including, but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copies sent or received or otherwise, and drafts, which are in the possession, custody or control of any Plaintiff or his attorneys, or any and all persons acting on any of the Plaintiffs' behalf, including documents at any time in the possession, custody or control of such individuals or entities or known by any Plaintiffs to exist.

3.      As used herein, "relate to" or "evidence" shall mean refers or pertains to, reflects, is in any way logically or factually connected with, or may afford any information regarding the matter discussed.

4.      If any document responsive to any request has been lost, mutilated or destroyed, so state and identify each such document and state to which request the document would have been responsive.

5.      Each document shall be clearly labeled individually or by group to indicate to which specific request for production herein it is responsive and, if it is intended to be responsive to more than one request, it shall be clearly labeled individually or by group to indicate all requests for production to which it is responsive. If there are no documents in your possession, custody or control, which are responsive to a particular request, so state and identify each request.

6.      If you claim or believe that any requested document is covered by a privilege or falls within a privilege, provide the following information as to each such document:

(a)      its date;

(b)      the name(s) of the person(s) who or which drafted, authorized or prepared it;

(c)      the document's title;

(d)      the name(s) of the person(s) to whom it was addressed;

(e)      its subject matter;

(f)      the name of the person(s) to whom the item, or any copy or reproduction thereof was ever directed, addressed, sent, delivered, mailed or given, or any other matter disclosed; and

2

(g)     the ground(s) on which each such document is considered to be privileged from production.

7.      All document requests herein are continuing in nature, so as to require Plaintiffs to supplement or amend their responses in accordance with Federal Rule of Civil Procedure 26(e).

8.      By serving these interrogatories, Defendant does not waive any arguments contained in its motion to dismiss and/or sever the Complaint which is pending before the Court.

## DOCUMENTS REQUESTED

1.      All documents which relate to or evidence Plaintiffs' allegations that Defendants violated the FAIR LABOR STANDARDS ACT ("FLSA") and/or NEW YORK LABOR LAW ("NYLL").

2. All correspondence or any other form of written communication between the Defendants or their representatives and Plaintiff's relating to Plaintiffs allegations in the Complaint.

3. All correspondence or any other form of written communication created by Plaintiffs concerning the Defendants or their representatives relating to Plaintiff's allegations that the Defendants violated the FLSA or NYLL.

4. All documents concerning meetings between Plaintiff and the Defendants or their representatives relating to Plaintiff's allegations in the Complaint.

5. All written statements or other documents provided to Plaintiffs concerning this matter by any person whom Plaintiffs may call as a witness in the trial of this case.

6. All written statements or other documentation provided to Plaintiffs or their representatives by any person contracted or interviewed in connection with the subject matter of this action, but whom the Plaintiffs do not intend to call as a witness in the trial of this matter.

7. All audio, video and/or other recordings that Defendants or their representatives made or possess in connection with this action or during Plaintiff's employment with Defendant.

8. All documents in Plaintiffs' possession generated by the Defendants or their representatives relating to Plaintiffs' allegations in the Complaint.

9.   All documents Plaintiffs intend to introduce as exhibits at the trial in this matter.

10.   All written statements or other documentation that Plaintiffs have in their possession concerning any and all admissions or statements against interest made by Defendants or their representatives.

11.   All documents which support Plaintiff's claim for liquidated damages.

12.   All documents which reflect the amount of unpaid overtime compensation Plaintiffs claim is owed based on the allegations of the Complaint.

13.   All documents which reflect the amount of unpaid wage compensation of any kind Plaintiffs claim is owed based on the allegations of the Complaint.

14.   All documents which support Plaintiffs' claim for any other compensatory damages alleged in the Complaint.

15.   All documents that Plaintiffs or someone on their behalf submitted to the New York State Department of Labor or any other administrative agency regarding the claims in this lawsuit, claims for unpaid compensation and/or for Unemployment Benefits.

16.   All diaries, notes, correspondence and or other documents prepared by Plaintiffs in connection with any of the allegations in the Complaint.

17.   All wage statements, pay stubs, checks or any pay related documents regarding Plaintiffs' employment with GreatCare.

18.    All documents that reflect which specific days Plaintiffs worked for GreatCare.

19.    All documents which relate to or which support Plaintiff(s) assertions that CenterLight was a joint employer.

20.    All documents which relate or which support any Plaintiff(s)' allegations that CenterLight controlled their terms and conditions of employment.

21.    All documents Plaintiff possess regarding CenterLight.

Date:   March 10, 2025
        New York, New York

Respectfully submitted,
BRENLLA, LLC

*Attorneys for Defendant CenterLight*

By:             

George F. Brenlla, Esq. (GB-9612)
250 Park Avenue, 7th floor
New York, New York 10177
(212) 364-5173

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI
F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X.
RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG,
BI Y. ZHENG, and XIU X ZHU

Civil Action No:
24 Civ. 07401 (JHR)

Plaintiffs,

-against-

GREAT CARE, INC., CENTERLIGHT HEALTHCARE,
INC., AND DOE MANAGED LONG-TERM CARE
PLANS 1-14,

Defendants.

------------------------------------------------------------------------x

**DEFENDANT'S FIRST SET OF INTERROGATORIES**

**PLEASE TAKE NOTICE** that Defendant, CENTERLIGHT HEALTHCARE,

INC., (hereinafter "Defendant"), by its attorneys, BRENLLA, LLC, hereby requests pursuant to

Rule 33 of the Federal Rules of Civil Procedure, that Plaintiffs respond to the following

Interrogatories within 30 days of service.

**INSTRUCTIONS AND DEFINITIONS**

1.      "Person" includes natural persons, partnerships, and corporations unless the

context otherwise requires.

2.      "Identify" means, when referring to a person, to include, in addition to the

full name of each such person, the following, where applicable: his/her present residence and/or

business address and telephone number, and if that is not known, the answer shall so state; in lieu

of his/her present residence and/or business address, the answer shall so state his/her last known

residence and/or business address and the last known date when he/she resided there.

1

3.    "Identify" means, when referring to a document:

(a)    The title, heading or caption of such document, if any;

(b)    The identifying number(s), letter(s), or any combination thereof, if any, and the significance or meaning of such number(s), letter(s), or any combination thereof;

(c)    The inclusive dates of each such document; and

(d)    The general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages which it contains.

4.    "Document" means, without limitation, any written, recorded, filmed or graphic matter, whether produced or reproduced on paper, cards, tapes, film, electronic facsimile, computer storage device or any other media, including, but not limited to, personnel files, memoranda, notes, minutes, records, photographs, x-rays, medical reports, correspondence, telegrams, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, notebooks, handwritten notes, applications, resumes, evaluations, investigations, agreements, books, pamphlets, periodicals, appointment calendars, records or recordings of oral conversations, work papers, and also including, but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copies sent or received or otherwise, and drafts, which are in the possession, custody or control of Plaintiff or his attorneys, or any and all persons acting on Plaintiffs' behalf, including documents at any time in the possession, custody or control of such individuals or entities known by Plaintiff to exist.

5.    Should Plaintiffs claim privilege for any documents about which information or inspection is requested by any of the following interrogatories, such documents

2

shall be described in a manner sufficient for identification including the date, author, recipient and identity of each party receiving a copy of the document and the subject matter thereof, and, in addition to supplying the above-named information concerning such documents, shall indicate that Plaintiffs claim privilege therefore and Plaintiffs shall state the ground on which the claim of privilege rests.

6.    All interrogatories herein are continuing in nature, so as to require Plaintiffs to supplement or amend his responses in accordance with Federal Rule of Civil Procedure 26(e).

7.    By serving these interrogatories, Defendant does not waive any arguments contained in its motion to dismiss and/or sever the Complaint which is pending before the Court.

### INTERROGATORIES

(1)    Identify the names of witnesses with knowledge or information related to the subject matter of the action.

(2)    Identify which Plaintiff(s) claims to be jointly employed with Defendant CenterLight.  Please provide dates of employment at Defendant, job title and rates of pay for Plaintiff(s) that claims to be jointly employed by CenterLight.

(3)    Identify each and every specific date that Plaintiff(s) claims to be jointly employed by Defendant CenterLight, the number of hours worked each specific day and the specific job location for that particular day.

(4)    Identify each specific week Plaintiff(s) alleges that she was jointly employed by CenterLight and worked in excess of 40 hours, the number of excess hours worked and amount of overtime alleged to be due and owing for each said week.

3

(5)    Identify specific dates that Plaintiff(s) alleges she received inaccurate paystubs and/or other notice of her hours and the amount of her wages when she was allegedly jointly employed by CenterLight.

(6)    Provide an exact computation of each category of damages alleged for any Plaintiff that has alleged to be jointly employed by CenterLight.

Date:    March 10, 2025
         New York, New York

Respectfully submitted,
BRENLLA, LLC

*Attorneys for Defendant CenterLight*

By:

_____
George F. Brenlla, Esq.
250 Park Avenue, 7th floor
New York, New York 10177
(212) 364-5173

4

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, XIU X. ZHU,<br><br>                                    **Plaintiffs**<br><br>-against-<br><br>GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., and SENIOR WHOLE HEALTH OF NEW YORK, INC.,<br><br>                                    **Defendants.** | **Case No. 24-CV-7401 (LTS) (KHP)** |

**PLAINTIFF LI CHEN'S RESPONSES AND OBJECTIONS TO DEFENDANT CENTERLIGHT HEALTHCARE, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Li Chen responds to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as follows.

**INTRODUCTION**

1. The information contained in these answers is provided pursuant to the applicable rules regarding discovery. These answers are produced without waiving or intending to waive: (i) any objections as to competence, relevance, materiality, privilege, or admissibility as evidence, for any purposes, of the information provided in response to these interrogatories; (ii) the right to object on any ground to the use of the information provided in response to these interrogatories at any hearings or at trial; or (iii) the right to object on any ground at any time requests for further answers or documents.

2. Plaintiff has not completed her investigation relating to this matter. Plaintiff states that discovery is ongoing and will continue pursuant to the Court's Scheduling Order, ECF No. 96, or as otherwise permitted by the Court, statute, or stipulation. The responses below are based upon diligent investigation by Plaintiff and her counsel, and reflect the current state of Plaintiff's knowledge, understanding, and belief with respect to the matters about which inquiry is made. As this action proceeds, Plaintiff anticipates that she may discover additional information or documentation. Given fact discovery is ongoing, responses are thus provided without prejudice and Plaintiff reserves her right to introduce in this action's proceedings any evidence from any source and testimony from any witness that may at some later time become available to Plaintiff. Without obligating herself to do so, Plaintiff reserves her right to modify or

1

supplement these responses with pertinent information or documentations she may later discover. Further, these responses are given without prejudice to Plaintiff's right to reply on or use at trial subsequently discovered information or documentation omitted from these responses as a result of mistake, error, oversight, or inadvertence.

3.      Plaintiff states that she is responding in good faith to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as she interprets and understands the interrogatories. If Defendant subsequently asserts an interpretation of any interrogatory that differs from Plaintiff's understanding, Plaintiff reserves her right to supplement her response or objection herein.

4.      Plaintiff objects to Defendant's "Instructions and Definitions" to these interrogatories to the extent that any are oppressive and attempt to impose obligations on Plaintiff other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules for the Eastern and Southern Districts of New York, applicable law, or any order of this Court.

5.      Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the attorney-client privilege, the attorney- work product doctrine, and common interest doctrine. To the extent that any such protected information is inadvertently disclosed, the production of such information or materials shall not constitute a waiver of any right to assert the applicability of any privilege or immunity, and any such information or materials shall be returned to Plaintiff's counsel immediately upon discovery.

6.      Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the common interest privilege.

7.      Plaintiff objects to the extent that Defendant is seeking discovery regarding any nonprivileged matter that is not relevant to any party's claim or defense or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

8.      Plaintiff objects to these interrogatories to the extent they are vague and overly broad.

9.      Plaintiff objects to these interrogatories to the extent they are unduly burdensome.

10.     Plaintiff generally objects to these interrogatories to the extent that they call for communications protected by the National Labor Relations Act ("NLRA").

2

11.    Plaintiff objects to these interrogatories to the extent they call for documents or communications protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

12.    Plaintiff objects to these interrogatories to the extent that they seek information in the possession or control of Defendant.

13.    Plaintiff incorporates the foregoing objections (the "General Objections") into each and every one of the following responses. Any General Objection may be restated in individual answers for emphasis, but such restatement does not negate the incorporation of these General Objections into each of the following answers.

<strong>SPECIFIC OBJECTIONS AND RESPONSES</strong>

1.    Identify the names of witnesses with knowledge or information related to the subject matter of the action.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff identifies the following witnesses with knowledge or information related to the subject matter of the action:

a.    Plaintiff Hei Li,
b.    Plaintiff Zhu H.L. Lin,
c.    Plaintiff Xiu F. Chen,
d.    Plaintiff Mei F. Chen,
e.    Plaintiff Hui He,
f.    Plaintiff Hui Li,
g.    Plaintiff Zhan J. Li,
h.    Plaintiff Hui X. Ruan,
i.    Plaintiff Jian R. Xiao,
j.    Plaintiff Mei Z. Xiao,
k.    Plaintiff Mu Z. Zhang,
l.    Plaintiff Bi Y. Zheng,
m.    Plaintiff Xiu X. Zhu,
n.    Other aides also assigned to provide care services to Li Chen's care recipients,
o.    Coordinators of Plaintiffs,
p.    Former and current supervisors of Plaintiffs,
q.    Nurses and other assessors of Plaintiffs' care recipients,
r.    Plaintiffs' care recipients and their family members,
s.    Scott Workman,
t.    Bennett Washington,
u.    Any data analyst on the staff of Getman, Sweeney, & Dunn PLLC,
v.    Barbara Wang,
w.    Myrlhene Descollines,
x.    Anyela Victoriana, and

3

y.	Catherine Goris.

2.	Identify which Plaintiff(s) claims to be jointly employed with Defendant CenterLight. Please provide dates of employment at Defendant, job title and rates of pay for Plaintiff(s) that claims to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff responds that Plaintiff was jointly employed by CenterLight from approximately February 9, 2015 until approximately May 4, 2016 as a home care aide at rates of pay to be determined through discovery, which were at all times less than the applicable minimum wage and below the minimum compensation rate required by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c.

3.	Identify each and every specific date that Plaintiff(s) claims to be jointly employed by Defendant CenterLight, the number of hours worked each specific day and the specific job location for that particular day.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request as unduly burdensome in that it calls for every specific date Plaintiff was jointly employed by CenterLight and the specific number of hours worked on every specific day worked. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would allow Plaintiff to accurately identify these specific dates.

Based on the information Plaintiff currently has, Plaintiff further responds that Plaintiff was jointly employed by CenterLight to provide in-home care services to Cheung, Lai Chu, whose date of birth is April 9, 1955, for approximately 4 hours per day from approximately February 9, 2015 until approximately December 7, 2015, to Wang, Hae Sheng, whose date of birth is April 24, 1925, for approximately 24 hours per day from approximately March 18, 2016 until approximately April 11, 2016, and Wong Kwai Ngor, whose date of birth is November 22, 1927, for approximately 24 hours per day on May 2, 2016 through and ending on May 4, 2016.

4.	Identify each specific week Plaintiff(s) alleges that she was jointly employed by CenterLight and worked in excess of 40 hours, the number of excess hours worked and the amount of overtime alleged to be due and owing for each said week.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request as unduly burdensome in that it calls for every specific week that Plaintiff was jointly employed by CenterLight and worked in excess of 40 hours. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would allow Plaintiff to identify these specific weeks accurately.

Based on the information Plaintiff currently has, Plaintiff further responds that she worked in excess of 40 hours during the weeks from approximately March 18, 2016 until approximately May 4, 2016.

5.       Identify specific dates that Plaintiff(s) alleges she received inaccurate paystubs and/or other notice of her hours and the amount of her wages when she was allegedly jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request as unduly burdensome in that it calls for every specific date that Plaintiff received inaccurate paystubs and/or other notice of her hours and the amount of her wages. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would allow Plaintiff to identify these dates accurately.

Based on the information Plaintiff currently has, Plaintiff further responds that, while she was jointly employed by CenterLight and Defendant GreatCare, Inc., she received inaccurate paystubs from approximately February 9, 2015, until approximately May 4, 2016.

6.       Provide an exact computation of each category of damages alleged for any Plaintiff that has alleged to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to accurately compute each category of damages.

Based on the information Plaintiff currently has, Plaintiff responds that Plaintiff's damages spreadsheet is attached.

Dated:    December 10, 2025
          New York, New York

Respectfully submitted,
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE

/s/ *Carmela Huang*
Carmela Huang
Claudia Wilner
50 Broadway, 15th Floor
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org
wilner@nclej.org

5

GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
Caroline Friedman
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com
cfriedman@getmansweeney.com

*Counsel for Plaintiffs*

6

## VERIFICATION

I hereby state that the foregoing answers to these interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated: New York, NY

December 10/, 2025

## CERTIFICATION OF INTERPRETATION

I, _JINMING CAO_, certify that I am fluent in both _Mandarin_ and English and have correctly and accurately interpreted the foregoing interrogatories and responses from English to _Mandarin_.

Dated: New York, NY

December 10, 2025

Sworn to before me this
10 th day of December, 2025.

NOTARY PUBLIC

KAREN KITHAN YAU
Notary Public, State of New York
No. 02YA6004860
Qualified in Kings County
Commission Expires _10/23/26_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN,
MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI
X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z.
ZHANG, BI Y. ZHENG, XIU X. ZHU,

                                          Plaintiffs          Case No. 24-CV-7401 (LTS) (KHP)

-against-

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., and SENIOR WHOLE
HEALTH OF NEW YORK, INC.,

                                          Defendants.

**PLAINTIFF HUI X. RUAN'S RESPONSES AND OBJECTIONS TO DEFENDANT CENTERLIGHT HEALTHCARE, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Hui X. Ruan responds to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as follows.

**INTRODUCTION**

1.      The information contained in these answers is provided pursuant to the applicable rules regarding discovery. These answers are produced without waiving or intending to waive: (i) any objections as to competence, relevance, materiality, privilege, or admissibility as evidence, for any purposes, of the information provided in response to these interrogatories; (ii) the right to object on any ground to the use of the information provided in response to these interrogatories at any hearings or at trial; or (iii) the right to object on any ground at any time requests for further answers or documents.

2.      Plaintiff has not completed her investigation relating to this matter. Plaintiff states that discovery is ongoing and will continue pursuant to the Court's Scheduling Order, ECF No. 96, or as otherwise permitted by the Court, statute, or stipulation. The responses below are based upon diligent investigation by Plaintiff and her counsel, and reflect the current state of Plaintiff's knowledge, understanding, and belief with respect to the matters about which inquiry is made. As this action proceeds, Plaintiff anticipates that she may discover additional information or documentation. Given fact discovery is ongoing, responses are thus provided without prejudice and Plaintiff reserves her right to introduce in this action's proceedings any evidence from any source and testimony from any witness that may at some later time become available to Plaintiff. Without obligating herself to do so, Plaintiff reserves her right to modify or

1

supplement these responses with pertinent information or documentations she may later discover. Further, these responses are given without prejudice to Plaintiff's right to reply on or use at trial subsequently discovered information or documentation omitted from these responses as a result of mistake, error, oversight, or inadvertence.

3.      Plaintiff states that she is responding in good faith to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as she interprets and understands the interrogatories. If Defendant subsequently asserts an interpretation of any interrogatory that differs from Plaintiff's understanding, Plaintiff reserves her right to supplement her response or objection herein.

4.      Plaintiff objects to Defendant's "Instructions and Definitions" to these interrogatories to the extent that any are oppressive and attempt to impose obligations on Plaintiff other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules for the Eastern and Southern Districts of New York, applicable law, or any order of this Court.

5.      Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the attorney-client privilege, the attorney- work product doctrine, and common interest doctrine. To the extent that any such protected information is inadvertently disclosed, the production of such information or materials shall not constitute a waiver of any right to assert the applicability of any privilege or immunity, and any such information or materials shall be returned to Plaintiff's counsel immediately upon discovery.

6.      Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the common interest privilege.

7.      Plaintiff objects to the extent that Defendant is seeking discovery regarding any nonprivileged matter that is not relevant to any party's claim or defense or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

8.      Plaintiff objects to these interrogatories to the extent they are vague and overly broad.

9.      Plaintiff objects to these interrogatories to the extent they are unduly burdensome.

10.      Plaintiff generally objects to these interrogatories to the extent that they call for communications protected by the National Labor Relations Act ("NLRA").

2

11.     Plaintiff objects to these interrogatories to the extent they call for documents or communications protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

12.     Plaintiff objects to these interrogatories to the extent that they seek information in the possession or control of Defendant.

13.     Plaintiff incorporates the foregoing objections (the "General Objections") into each and every one of the following responses. Any General Objection may be restated in individual answers for emphasis, but such restatement does not negate the incorporation of these General Objections into each of the following answers.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     Identify the names of witnesses with knowledge or information related to the subject matter of the action.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff identifies the following witnesses with knowledge or information related to the subject matter of the action:

a.     Plaintiff Zhu H.L. Lin,
b.     Plaintiff Li Chen,
c.     Plaintiff Xiu F. Chen,
d.     Plaintiff Mei F. Chen,
e.     Plaintiff Hui He,
f.     Plaintiff Hei Li,
g.     Plaintiff Hui Li,
h.     Plaintiff Zhan J. Li,
i.     Plaintiff Jian R. Xiao,
j.     Plaintiff Mei Z. Xiao,
k.     Plaintiff Mu Z. Zhang,
l.     Plaintiff Bi Y. Zheng,
m.     Plaintiff Xiu X. Zhu,
n.     Other aides also assigned to provide care services to Hui X. Ruan's care recipients,
o.     Coordinators of Plaintiffs,
p.     Former and current supervisors of Plaintiffs,
q.     Nurses and other assessors of Plaintiffs' care recipients,
r.     Plaintiffs' care recipients and their family members,
s.     Scott Workman,
t.     Bennett Washington,
u.     Any data analyst on the staff of Getman, Sweeney, & Dunn PLLC,
v.     Barbara Wang,
w.     Myrlhene Descollines,
x.     Anyela Victoriana, and

3

y.       Catherine Goris.

2.       Identify which Plaintiff(s) claims to be jointly employed with Defendant CenterLight. Please provide dates of employment at Defendant, job title and rates of pay for Plaintiff(s) that claims to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff responds that Plaintiff was jointly employed by CenterLight from approximately April 8, 2018 until approximately May 6, 2018 as a home care aide at rates of pay to be determined through discovery, which were at all times less than the applicable minimum wage and below the minimum compensation rate required by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c.

3.       Identify each and every specific date that Plaintiff(s) claims to be jointly employed by Defendant CenterLight, the number of hours worked each specific day and the specific job location for that particular day.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff objects to this request as unduly burdensome in that it calls for every specific date Plaintiff was jointly employed by CenterLight and the specific number of hours worked on every specific day worked. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would allow Plaintiff to accurately identify these dates.

Based on the information Plaintiff currently has, Plaintiff further responds that Plaintiff was jointly employed by CenterLight to provide in-home care services to Moy, Chiu Har, whose date of birth is August 5, 1930, from approximately April 8, 2018, until approximately May 6, 2018.

4.       Identify each specific week Plaintiff(s) alleges that she was jointly employed by CenterLight and worked in excess of 40 hours, the number of excess hours worked and the amount of overtime alleged to be due and owing for each said week.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff objects to this request as unduly burdensome in that it calls for every specific week that Plaintiff was jointly employed by CenterLight and worked in excess of 40 hours. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would enable Plaintiff to identify these weeks accurately.

Based on the information Plaintiff currently has, Plaintiff further responds that she is unlikely to have worked in excess of 40 hours during her period of joint employment by CenterLight and GreatCare.

5.       Identify specific dates that Plaintiff(s) alleges she received inaccurate paystubs and/or other notice of her hours and the amount of her wages when she was allegedly jointly employed by CenterLight.

4

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request as unduly burdensome in that it calls for every specific date that Plaintiff received inaccurate paystubs and/or other notice of her hours and the amount of her wages. Moreover, Plaintiff objects to this request because it seeks information in Defendant's possession or control that would enable Plaintiff to identify these dates accurately.

Based on the information Plaintiff currently has, Plaintiff further responds that, while she was jointly employed by CenterLight and Defendant GreatCare, Inc., she received inaccurate paystubs from approximately April 8, 2018 until approximately May 6, 2018.

6.      Provide an exact computation of each category of damages alleged for any Plaintiff that has alleged to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff also objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to compute each category of damages accurately.

Based on the information Plaintiff currently has, Plaintiff responds that Plaintiff's damages spreadsheet is attached.

Dated:    December 10, 2025
          New York, New York

Respectfully submitted,
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE

/s/ *Carmela Huang*

Carmela Huang
Claudia Wilner
50 Broadway, 15th Floor
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org
wilner@nclej.org

5

GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
Caroline Friedman
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com
cfriedman@getmansweeney.com

*Counsel for Plaintiffs*

6

## VERIFICATION

I hereby state that the foregoing answers to these interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated: New York, NY

December _10_, 2025

_HUI XIU RUAN_

## CERTIFICATION OF INTERPRETATION

I, _Way P. Moy_ , certify that I am fluent in both _Toishan (Chinese)_ and English and have correctly and accurately interpreted the foregoing interrogatories and responses from English to _Toishan (Chinese)_

Dated: New York, NY

December _10th_, 2025

Sworn to before me this

_10_ th day of December, 2025.

NOTARY PUBLIC

KAREN KITHAN YAU
Notary Public, State of New York
No. 02YA6004630
Qualified in Kings County
Commission Expires _10/23/26_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN,
MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI,
HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO,
MU Z. ZHANG, BI Y. ZHENG, XIU X. ZHU,

                              **Plaintiffs**

-against-

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., and SENIOR WHOLE
HEALTH OF NEW YORK, INC.,

                              **Defendants.**

**Case No. 24-CV-7401 (LTS) (KHP)**

**PLAINTIFF ZHAN J. LI'S RESPONSES AND OBJECTIONS TO DEFENDANT CENTERLIGHT
HEALTHCARE, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Zhan J. Li responds to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as follows.

**INTRODUCTION**

1.      The information contained in these answers is provided pursuant to the applicable rules regarding discovery. These answers are produced without waiving or intending to waive: (i) any objections as to competence, relevance, materiality, privilege, or admissibility as evidence, for any purposes, of the information provided in response to these interrogatories; (ii) the right to object on any ground to the use of the information provided in response to these interrogatories at any hearings or at trial; or (iii) the right to object on any ground at any time requests for further answers or documents.

2.      Plaintiff has not completed her investigation relating to this matter. Plaintiff states that discovery is ongoing and will continue pursuant to the Court's Scheduling Order, ECF No. 96, or as otherwise permitted by the Court, statute, or stipulation. The responses below are based upon diligent investigation by Plaintiff and her counsel, and reflect the current state of Plaintiff's knowledge, understanding, and belief with respect to the matters about which inquiry is made. As this action proceeds, Plaintiff anticipates that she may discover additional information or documentation. Given fact discovery is ongoing, responses are thus provided without prejudice and Plaintiff reserves her right to introduce in this action's proceedings any evidence from any source and testimony from any witness that may at some later time become available to Plaintiff. Without obligating herself to do so, Plaintiff reserves her right to modify or

1

supplement these responses with pertinent information or documentations she may later discover. Further, these responses are given without prejudice to Plaintiff's right to reply on or use at trial subsequently discovered information or documentation omitted from these responses as a result of mistake, error, oversight, or inadvertence.

3.     Plaintiff states that she is responding in good faith to Defendant CenterLight Healthcare, Inc.'s First Set of Interrogatories as she interprets and understands the interrogatories. If Defendant subsequently asserts an interpretation of any interrogatory that differs from Plaintiff's understanding, Plaintiff reserves her right to supplement her response or objection herein.

4.     Plaintiff objects to Defendant's "Instructions and Definitions" to these interrogatories to the extent that any are oppressive and attempt to impose obligations on Plaintiff other than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules for the Eastern and Southern Districts of New York, applicable law, or any order of this Court.

5.     Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the attorney-client privilege, the attorney- work product doctrine, and common interest doctrine. To the extent that any such protected information is inadvertently disclosed, the production of such information or materials shall not constitute a waiver of any right to assert the applicability of any privilege or immunity, and any such information or materials shall be returned to Plaintiff's counsel immediately upon discovery.

6.     Plaintiff objects generally to these interrogatories to the extent they seek information or material that is protected by the common interest privilege.

7.     Plaintiff objects to the extent that Defendant is seeking discovery regarding any nonprivileged matter that is not relevant to any party's claim or defense or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

8.     Plaintiff objects to these interrogatories to the extent they are vague and overly broad.

9.     Plaintiff objects to these interrogatories to the extent they are unduly burdensome.

10.    Plaintiff generally objects to these interrogatories to the extent that they call for communications protected by the National Labor Relations Act ("NLRA").

2

11.     Plaintiff objects to these interrogatories to the extent they call for documents or communications protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

12.     Plaintiff objects to these interrogatories to the extent that they seek information in the possession or control of Defendant.

13.     Plaintiff incorporates the foregoing objections (the "General Objections") into each and every one of the following responses. Any General Objection may be restated in individual answers for emphasis, but such restatement does not negate the incorporation of these General Objections into each of the following answers.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     Identify the names of witnesses with knowledge or information related to the subject matter of the action.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff identifies the following witnesses with knowledge or information related to the subject matter of the action:

- a.     Plaintiff Zhu H.L. Lin,
- b.     Plaintiff Li Chen,
- c.     Plaintiff Xiu F. Chen,
- d.     Plaintiff Mei F. Chen,
- e.     Plaintiff Hui He,
- f.     Plaintiff Hei Li,
- g.     Plaintiff Hui Li,
- h.     Plaintiff Hui X. Ruan,
- i.     Plaintiff Jian R. Xiao,
- j.     Plaintiff Mei Z. Xiao,
- k.     Plaintiff Mu Z. Zhang,
- l.     Plaintiff Bi Y. Zheng,
- m.     Plaintiff Xiu X. Zhu,
- n.     Other aides also assigned to provide care services to Zhan J. Li's care recipients,
- o.     Coordinators of Plaintiffs,
- p.     Former and current supervisors of Plaintiffs,
- q.     Nurses and other assessors of Plaintiffs' care recipients,
- r.     Plaintiffs' care recipients and their family members,
- s.     Scott Workman,
- t.     Bennett Washington,
- u.     Any data analyst on the staff of Getman, Sweeney, & Dunn PLLC,
- v.     Barbara Wang,
- w.     Myrlhene Descollines,
- x.     Anyela Victoriana, and

3

y.    Catherine Goris.

2.    Identify which Plaintiff(s) claims to be jointly employed with Defendant CenterLight. Please provide dates of employment at Defendant, job title and rates of pay for Plaintiff(s) that claims to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff responds that Plaintiff was jointly employed by CenterLight from approximately September 24, 2016 until approximately October 24, 2016 and from approximately November 12, 2020 until approximately November 19, 2020 as a home care aide at rates of pay to be determined through discovery, which were at all times less than the applicable minimum wage and below the minimum compensation rate required by the New York Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c.

3.    Identify each and every specific date that Plaintiff(s) claims to be jointly employed by Defendant CenterLight, the number of hours worked each specific day and the specific job location for that particular day.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff objects to this request as unduly burdensome in that it calls for every specific date Plaintiff was jointly employed by CenterLight and the specific number of hours worked on every specific day worked. Moreover, Plaintiff objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to accurately identify these specific dates.

Based on the information Plaintiff currently has, Plaintiff further responds that Plaintiff was jointly employed by CenterLight to provide in-home care services to Wong, Kwai Ngor, whose date of birth is November 22, 1927, for approximately 24 hours per day from approximately September 24, 2016 until approximately October 24, 2016 and to Cai Guang Ming, whose date of birth is February 26, 1940 from approximately November 12, 2020 until approximately November 19, 2020.

4.    Identify each specific week Plaintiff(s) alleges that she was jointly employed by CenterLight and worked in excess of 40 hours, the number of excess hours worked and the amount of overtime alleged to be due and owing for each said week.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff objects to this request as unduly burdensome in that it calls for every specific week that Plaintiff was jointly employed by CenterLight and worked in excess of 40 hours. Moreover, Plaintiff objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to accurately identify these specific weeks.

4

Based on the information Plaintiff currently has, Plaintiff further responds that she worked in excess of 40 hours per week for many weeks, including, but not limited to, between approximately September 24, 2016 until approximately October 24, 2016.

5.    Identify specific dates that Plaintiff(s) alleges she received inaccurate paystubs and/or other notice of her hours and the amount of her wages when she was allegedly jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Plaintiff objects to this request as unduly burdensome in that it calls for every specific date that Plaintiff received inaccurate paystubs and/or other notice of her hours and the amount of her wages. Moreover, Plaintiff objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to accurately identify these specific dates.

Based on the information Plaintiff currently has, Plaintiff further responds that, while she was jointly employed by CenterLight and Defendant GreatCare, Inc., she received inaccurate paystubs for much of her employment, including, but not limited to, from approximately September 24, 2016 until approximately October 24, 2016.

6.    Provide an exact computation of each category of damages alleged for any Plaintiff that has alleged to be jointly employed by CenterLight.

Response: Subject to and without waiving the foregoing General Objections, Moreover, Plaintiff objects to this request since it seeks information in the possession or control of Defendant that would allow the Plaintiff to accurately identify these specific dates.

Based on the information Plaintiff currently has, Plaintiff responds that Plaintiff's damages spreadsheet is attached.

Respectfully submitted,

5

Dated:    October 27, 2025
          New York, New York

NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE

/s/ *Carmela Huang*

Carmela Huang
Claudia Wilner
50 Broadway, 15th Floor
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org
wilner@nclej.org


GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
Caroline Friedman
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com
cfriedman@getmansweeney.com

*Counsel for Plaintiffs*

6

## VERIFICATION

I hereby state that the foregoing answers to these interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated: New York, NY

November __17__, 2025

Zhen Jin LI

## CERTIFICATION OF INTERPRETATION

I, __JIN MING CAO__, certify that I am fluent in both __Cantonese__ and English and have correctly and accurately interpreted the foregoing interrogatories and responses from English to __Cantonese__.

Dated: New York, NY

November __17__, 2025

Sworn to before me this

__17__th day of November, 2025.

NOTARY PUBLIC

KAREN KITHAN YAU
Notary Public, State of New York
No 02YA6004860
Qualified in Kings County
Commission Expires __10/23/2026__

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F.
CHEN, MEI F. CHEN, HUI HE, HUI LI,
ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO,
MEI Z. XIAO, MU Z. ZHANG, BI Y.
ZHENG, XIU X. ZHU,

          Plaintiffs

-against-

GREATCARE, INC., CENTERLIGHT
HEALTHCARE, INC., and SENIOR WHOLE
HEALTH OF NEW YORK, INC.,

          Defendants.

Case No. 24-CV-7401 (LTS) (KHP)

## PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT CENTERLIGHT HEALTHCARE, INC.'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of Civil Procedure for the Southern District of New York, Plaintiffs ZHU H.L. LIN, ZHAN J. LI, HUI X. RUAN, LI CHEN, hereby submit the following responses and objections to Document Demands by DEFENDANT CENTERLIGHT HEALTHCARE, INC.'S ("CenterLight") as follows:

## GENERAL OBJECTIONS

13. These responses and objections are made without waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any documents produced in response to the CenterLight First Request for the Production of Documents ("Requests"); (b) the right to object on any ground to the use of the documents produced in response to the Requests at any hearing, trial, or other proceeding in

this action; and (c) the right to object on any ground at any time to a demand for further responses to the Requests.

14.    Plaintiffs have not completed their investigation relating to this matter. Plaintiffs state that discovery is ongoing and will continue pursuant to the Court's Scheduling Orders on October 1, 2025 (ECF No. 96) and December 1, 2026 (ECF No. 118), or as otherwise permitted by the Court, statute, or stipulation. The responses below are based upon diligent investigation by Plaintiffs and their counsel, and reflect the current state of Plaintiffs' knowledge, understanding, and belief with respect to the matters about which inquiry is made. As this action proceeds, Plaintiffs anticipate that they may discover additional documents or documentation. Given fact discovery is ongoing, responses are thus provided without prejudice and Plaintiffs reserve their right to introduce in this action's proceedings any evidence from any source and testimony from any witness that may at some later time become available to Plaintiffs. Without obligating themselves to do so, Plaintiffs reserve their right to revise, modify, correct, add to, supplement, or clarify these responses and objections with pertinent documents or documentations she may later discover. Further, these responses are given without prejudice to Plaintiffs' right to reply on or use at trial subsequently discovered documents or documentation omitted from these responses as a result of mistake, error, oversight, or inadvertence.

15.    Plaintiffs state that they are responding in good faith to Defendant's Requests as they interpret and understand them. If Defendant subsequently asserts an interpretation of any Request that differs from Plaintiffs' understanding, Plaintiffs reserve their right to supplement or modify their response or objection herein.

16.    Plaintiffs object to Defendant's "Instructions and Definitions" to these Requests to the extent that any are oppressive and attempt to impose obligations on Plaintiffs other than those

2

imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules for the Eastern and Southern Districts of New York, applicable law, or any order of this Court.

17.    Plaintiffs object generally to these Requests to the extent they seek documents or material that is protected by the attorney-client privilege, the attorney-work product doctrine, and common interest doctrine. To the extent that any such protected documents is inadvertently disclosed, the production of such document or materials shall not constitute a waiver of any right to assert the applicability of any privilege or immunity, and any such documents or materials shall be returned to Plaintiffs' counsel immediately upon discovery.

18.    Plaintiff objects generally to these Requests to the extent they seek documents or material that is protected by the common interest privilege.

19.    Plaintiffs object to the extent that Defendant is seeking discovery regarding any nonprivileged matter that is not relevant to any party's claim or defense or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant documents, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

20.    Plaintiffs object to these Requests to the extent that they seek documents or documents, not in their possession, custody, or control.

21.    Plaintiffs object to each and these Requests to the extent they are vague and overly broad.

22.    Plaintiffs object to each and these Requests for to the extent they are unduly burdensome.

3

23.    Plaintiffs object to these Requests to the extent that they call for communications protected by the National Labor Relations Act ("NLRA").

24.    Plaintiffs object to each and these Requests to the extent they call for documents or communications protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

25.    Plaintiff objects to these Requests to the extent they prematurely seek documents and trial exhibits that have not yet been determined and are otherwise attorney-client or work product privileged. Plaintiff provides the responses to these Interrogatories with the understanding that they are subject to the protections in the Amended Confidentiality Order ordered by the Court on November 12, 2025.

26.    Plaintiffs incorporate the foregoing objections (the "General Objections") into each and every one of the following responses. Any General Objection may be restated in individual answers for emphasis, but such restatement does not negate the incorporation of these General Objections into each of the following answers.

<u>SPECIFIC OBJECTIONS AND RESPONSES</u>

1.    All documents which relate to or evidence Plaintiffs' allegations that Defendants violated the FAIR LABOR STANDARDS ACT ("FLSA") and/or NEW YORK LABOR LAW ("NYLL").

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, Plaintiffs produce:

- Zhu Huan Li Lin: GSD 000596-000669, GSD 000946-000953

- Zhan Jin Li: GSD 000698-000838, GSD 000938-000945

- Hui Xiu Ruan: GSD 000868-000875, GSD 000082-000149

4

- Chen Li: GSD 000884-000891

Plaintiffs are not withholding any documents based on these objections.

2.    All correspondence or any other form of written communication between the Defendants or their representatives and Plaintiffs relating to Plaintiffs' allegations in the Complaint.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, Plaintiffs produce:

- Zhu Huan Li Lin: GSD 000946-000953

- Zhan Jin Li: GSD 000938-000945

- Hui Xiu Ruan: GSD 000868-000875

- Chen Li: GSD 000884-000891

Plaintiffs are not withholding any documents based on these objections.

3.    All correspondence or any other form of written communication created by Plaintiffs concerning the Defendants or their representatives relating to Plaintiff's allegations that the Defendants violated the FLSA or NYLL.

**RESPONSE**: Plaintiffs object to this Request on the basis that it is vague and overbroad. Subject to said objections and the General Objections, and without waiving the same, Plaintiffs produce:

- Zhu Huan Li Lin: GSD 000596-000669

- Zhan Jin Li: GSD 000698-000838

- Hui Xiu Ruan: GSD 000082-000149

- Chen Li: GSD Plaintiff states that she does not possess any responsive documents.

Plaintiffs are not withholding any documents based on these objections.

4.    All documents concerning meetings between Plaintiff and the Defendants or their representatives relating to Plaintiff's allegations in the Complaint.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and seeks documents within the custody and control of Defendants. Plaintiffs are not withholding any documents based on these objections.

5.     All written statements or other documents provided to Plaintiffs concerning this matter by any person whom Plaintiffs may call as a witness in the trial of this case.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad and that it seeks documents within the Defendants' custody and control. It also seeks documents protected by attorney-client privilege and the work product doctrine. Plaintiffs also object that discovery in this action is not complete, and Plaintiffs do not know at this point the documents that will be used or the witnesses whom will be called at trial to support the allegations in question.

6.     All written statements or other documentation provided to Plaintiffs or their representatives by any person contracted or interviewed in connection with the subject matter of this action, but whom the Plaintiffs do not intend to call as a witness in the trial of this matter.

**RESPONSE**: Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. It seeks documents protected by attorney-client privilege and the work product doctrine. Plaintiffs object that discovery in this action is not complete, and Plaintiffs do not know at this point the documents that will be used or her trial witness list.

7.     All audio, video and/or other recordings that Defendants or their representatives made or possess in connection with this action or during Plaintiff's employment with Defendant.

**RESPONSE**: Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, Plaintiffs state that they do not possess any responsive documents.

8.     All documents in Plaintiffs' possession generated by the Defendants or their representatives relating to Plaintiffs' allegations in the Complaint.

6

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same,  please see Plaintiffs' Response to Request for Production No. 2. Plaintiffs are not withholding any documents based on these objections.

9.      All documents Plaintiffs intend to introduce as exhibits at the trial in this matter.

**RESPONSE**: Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. It also seeks documents protected by attorney-client privilege and the work product doctrine. Plaintiffs object that discovery in this action is not complete, and Plaintiffs do not know at this point the documents that will be used at trial to support the allegations in question.

10.      All written statements or other documentation that Plaintiffs have in their possession concerning any and all admissions or statements against interest made by Defendants or their representatives.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 2. Plaintiffs are not withholding any documents based on these objections.

11.      All documents which support Plaintiff's claim for liquidated damages.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. It seeks documents protected by attorney-client privilege and the work product doctrine. Further, Plaintiffs object that discovery in this action is not complete, and Plaintiffs do not know at this point the documents that will support the allegations and damages in question. Plaintiffs are not withholding any documents based on these objections.

7

12.    All documents which reflect the amount of unpaid overtime compensation Plaintiffs claim is owed based on the allegations of the Complaint.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 2. Plaintiffs are not withholding any documents based on these objections.

13.    All documents which reflect the amount of unpaid wage compensation of any kind Plaintiffs claim is owed based on the allegations of the Complaint.

**RESPONSE:** Please see Plaintiff's Specific Objections and Response to Request for Production No. 12.

14.    All documents which support Plaintiffs' claim for any other compensatory damages alleged in the Complaint.

**RESPONSE:** Please see Plaintiff' Specific Objections and Response to Request for Production No. 12.

15.    All documents that Plaintiffs or someone on their behalf submitted to the New York State Department of Labor or any other administrative agency regarding the claims in this lawsuit, claims for unpaid compensation and/or for Unemployment Benefits.

**RESPONSE:** Plaintiffs object to this Request on the basis that it seeks documents within the Defendants' custody and control. It seeks documents protected by attorney-client privilege and the work product doctrine. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Specific Objections and Response to Request for Production No. 3. Plaintiffs are not withholding any documents based on these objections.

16.    All diaries, notes, correspondence and or other documents prepared by Plaintiffs in connection with any of the allegations in the Complaint.

**RESPONSE**: Plaintiffs object to this Request on the basis that it is vague, overbroad, unduly burdensome, and that it seeks documents protected by attorney-client privilege and the work

8

product doctrine. Subject to said objections and the General Objections, and without waiving the same, Plaintiffs state that they are searching for responsive documents and, if response documents are found, Plaintiffs will supplement this response.

17.    All wage statements, pay stubs, checks or any pay related documents regarding Plaintiffs' employment with GreatCare.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, unduly burdensome, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 2. Plaintiffs are not withholding any documents based on these objections.

18.    All documents that reflect which specific days Plaintiffs worked for GreatCare.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, unduly burdensome, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 2. Plaintiffs are not withholding any documents based on these objections.

19.    All documents which relate to or which support Plaintiff(s) assertions that CenterLight was a joint employer.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 1. Plaintiffs are not withholding any documents based on these objections.

20.    All documents which relate or which support any Plaintiff(s)' allegations that CenterLight controlled their terms and conditions of employment.

9

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, overbroad, and that it seeks documents within the Defendants' custody and control. Subject to said objections and the General Objections, and without waiving the same, please see Plaintiffs' Response to Request for Production No. 1. Plaintiffs are not withholding any documents based on these objections.

21.     All documents Plaintiff possess regarding CenterLight.

**RESPONSE:** Plaintiffs object to this Request on the basis that it is vague, broad, and that it seeks documents within the Defendants' custody and control.

Dated: December 25, 2025
New York, NY

Respectfully submitted,

GETMAN, SWEENEY & DUNN, PLLC
/s/ Karen Kithan Yau
Karen Kithan Yau
Caroline Friedman
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com
cfriedman@getmansweeney.com

NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
Carmela Huang
Claudia Wilner
50 Broadway, 15th Floor
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org
wilner@nclej.org

*Counsel for Plaintiffs*

10

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| BAO YING LIN, BAO YING ZHENG, HEI LI, HUAN XIANG LUO, HUI HE, HUI ZHEN YANG, JOYCE ZHENG, KWAN TSAN NG, LAI HAO MO, LI HONG WANG, MEI XIAO ZHAO, MIAO ZHEN SITU, MIN YING PENG, NEI TIAN HUANG, QIAO YUN ZHENG, RUI XIN CHEN, SHU JUAN JIANG, WEN YONG LIN, WOEI KWUN YAU, XI YING HUANG, XIAO QIN LIANG, XIAO YUN HUANG, XIN XING CHEN, XIU CHEN ZHENG, XIU YING SONG, XIU ZHEN CHEN, YE YU LI, YI ZHU ZHONG, YING LIN, YONG E KUANG, YONG PENG, and YU YI LI | Index No.: |

Plaintiffs,

- against –

ASTRA HOME CARE, INC. d/b/a TRUE CARE HOME HEALTH CARE, and any other related entities.

Defendant.

**SUMMONS**

Plaintiff designates the County of New York as the place of trial.

Venue is based on Plaintiffs performing work in New York County.

**Jury Trial Demanded**

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned to serve upon Plaintiffs' attorneys an answer to the Complaint in this action within 30 days after service of this summons.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
December 18, 2023

Respectfully submitted,

VIRGINIA & AMBINDER, LLP

By: ___/s/_____
LaDonna M. Lusher, Esq.
Michele A. Moreno, Esq.
40 Broad Street, Seventh Floor
New York, New York 10004
Tel: (212) 943-9080
Fax: (212) 943-9082
llusher@vandallp.com
mmoreno@vandallp.com

*Attorneys for the Plaintiffs*

Case 1:24-cv-07401-LTS-KHP    Document 217    Filed 05/11/26    Page 49 of 169

TO:    ASTRA HOME CARE, INC. d/b/a TRUE CARE HOME HEALTH CARE
        117 Church Ave
        Brooklyn, NY 11218

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| BAO YING LIN, BAO YING ZHENG, HEI LI, HUAN XIANG LUO, HUI HE, HUI ZHEN YANG, JOYCE ZHENG, KWAN TSAN NG, LAI HAO MO, LI HONG WANG, MEI XIAO ZHAO, MIAO ZHEN SITU, MIN YING PENG, NEI TIAN HUANG, QIAO YUN ZHENG, RUI XIN CHEN, SHU JUAN JIANG, WEN YONG LIN, WOEI KWUN YAU, XI YING HUANG, XIAO QIN LIANG, XIAO YUN HUANG, XIN XING CHEN, XIU CHEN ZHENG, XIU YING SONG, XIU ZHEN CHEN, YE YU LI, YI ZHU ZHONG, YING LIN, YONG E KUANG, YONG PENG, and YU YI LI<br><br>Plaintiffs,<br><br>- against -<br><br>ASTRA HOME CARE, INC. d/b/a TRUE CARE HOME HEALTH CARE, and any other related entities.<br><br>Defendant. | Index No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs BAO YING LIN, BAO YING ZHENG, HEI LI, HUAN XIANG LUO, HUI HE, HUI ZHEN YANG, JOYCE ZHENG, KWAN TSAN NG, LAI HAO MO, LI HONG WANG, MEI XIAO ZHAO, MIAO ZHEN SITU, MIN YING PENG, NEI TIAN HUANG, QIAO YUN ZHENG, RUI XIN CHEN, SHU JUAN JIANG, WEN YONG LIN, WOEI KWUN YAU, XI YING HUANG, XIAO QIN LIANG, XIAO YUN HUANG, XIN XING CHEN, XIU CHEN ZHENG, XIU YING SONG, XIU ZHEN CHEN, YE YU LI, YI ZHU ZHONG, YING LIN, YONG E KUANG, YONG PENG, and YU YI LI (collectively referred to as "Plaintiffs"),[1] by their attorneys Virginia & Ambinder, LLP, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

---

[1] Each Plaintiff has opted out of *Owens, et al v. Astra Home Care, Inc. d/b/a True Home Care Health Care, et al.*, Index No. 524708/2018 (Sup. Ct. Kings. Co.)

1

## PRELIMINARY STATEMENT

1.      Plaintiffs are residents of the State of New York and are presently or were formerly employed by Astra Home Care, Inc. d/b/a True Care Home Health Care, and any other related entities, ("Defendant"), to provide personal care, assistance, health-related tasks and other home care services to Defendant's clients within the State of New York.

2.      Plaintiffs seek to recover wages and benefits which Plaintiffs were statutorily and contractually entitled to receive pursuant to New York Labor Law (hereinafter referred to as "NYLL") § 190 et seq., § 663, § 651 et seq., and § 650 et seq., 12 New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") §§ 142-2.1, 142-2.2, 142-2.4, 142-2.10, 142-2.14, New York Public Health Law § 3614-c, and Title 6, Section 6-109 of the New York City Administrative Code (hereinafter referred to as "NYC Admin. Code § 6-109").

3.      Upon information and belief, Defendant has violated provisions of NYLL, as well as applicable regulations and common law principles of contract by maintaining a policy and practice of requiring Plaintiffs to regularly work in excess of ten hours per day, without providing the proper hourly compensation for all hours worked, including failing to pay the lawful minimum wage rate, overtime compensation for all hours worked in excess of 40 hours in any given week, and "spread of hours" compensation.  Defendant has also failed to preserve records required for properly calculating the wages due to Plaintiffs.

4.      Plaintiffs have initiated this action seeking minimum wages, overtime compensation, and "spread of hours" compensation, as well as damages arising from Defendant's breach of contract, which they were deprived of, plus interest, attorneys' fees, and costs.  These claims arise from Defendant's systemic wage abuse against Plaintiffs.

## THE PARTIES

2

Case 1:24-cv-07401-LTS-KHP   Document 217   Filed 05/11/26   Page 52 of 169

5.  Plaintiffs are individuals who are currently residents of the State of New York.

6.  Defendant Astra Home Care, Inc. ("AHCI") is a domestic business corporation organized under the laws of the State of New York, with its principal location 117 Church Avenue, Brooklyn, New York 11218.  Defendant is primarily engaged in providing nursing and home health aide services at the residences of its clients.

7.  At all times relevant to this action, Plaintiffs were "employees" covered by the NYLL, and Defendant was an "employer" of Plaintiffs, as those terms are defined by NYLL §§ 651 (5) and (6) and applicable regulations, 12 N.Y.C.R.R. § 142-2.14.

8.  AHCI is a New York for-profit corporation doing business throughout the State of New York. AHCI provides nursing and home health aide services to the elderly and inform, among other ventures, and is a party to certain agreements with government agencies, including but not limited to, the New York City Human Resources Administration ("HRA") to provide home attendant services.

9.  Upon information and belief, Plaintiffs were employed by AHCI. For example, and without limitation, AHCI maintained employment records regarding the home care work performed, set the standards of the performance of that work, and set the policies regarding the rate and payment of compensation for that work.

10. Upon information and belief, Defendant has had substantial control of Plaintiffs' working conditions and over the unlawful policies and practices alleged herein.

## FACTS

11. At all relevant times, Plaintiffs were home health care attendants employed in New York by Defendant to provide personal home health care and assistance to Defendant's clients in their homes.

3

12.     While employed by Defendant, Plaintiffs provided services to homebound, ailing and elderly clients. Plaintiffs' duties included, but were not limited to, personal care services, such as assistance with dressing, bathing and personal grooming, cooking and feeding, changing diapers, household chores such as heavy and light cleaning, laundry, making appointments, escorting clients to the doctor, and making transportation arrangements.

13.     Throughout their employment, Plaintiffs worked 24-hour shifts based upon schedules set and dictated by Defendant.

14.     When Plaintiffs worked 24-hour shifts, they were required to stay overnight at the residences of Defendant's clients and needed to be ready and available to provide assistance to Defendant's clients at all times.

15.     Defendant required Plaintiffs to be on the premises of Defendant's clients for 24 hours during any given 24-hour shift, which was for the benefit of Defendant.

16.     When Plaintiffs worked 24-hour shifts for Defendant, they were generally not permitted to leave the client's residence during their shifts.

17.     Plaintiffs maintained their own residences and did not "live" in the homes of Defendant's clients or in the home of their employer, nor were they "exempt companions" of the Defendant's clients.

18.     When Plaintiffs were required to stay overnight at the residences of Defendant's clients, Defendant failed to ensure that Plaintiffs received appropriate sleeping facilities.

19.     Defendant employed Plaintiff BAO YING LIN as a home health attendant from approximately mid April 2020 through May 2020. BAO YING LIN worked approximately seven 24-hour shifts per week.

20.     Defendant employed Plaintiff BAO YING ZHENG as a home health attendant from

4

approximately November 2019 to April 2021. BAO YING ZHENG worked approximately one to two 24-hour shifts per week.

21. Plaintiff HEI LI worked for Defendant as a home health attendant from approximately November 2017 to January 2022. HEI LI worked approximately two to three 24-hour shifts per week.

22. Plaintiff HUAN XIANG LUO worked for Defendant as a home health attendant from approximately July 2018 to September 2018. HUAN XIANG LUO worked approximately two 24-hour shifts per week.

23. Plaintiff HUI HE worked for Defendant as a home health attendant from approximately January 2017 to April 2022. HUI HE worked approximately three 24-hour shifts per week.

24. Plaintiff HUI ZHEN YANG has worked for Defendant as a home health attendant since approximately March 2016. HUI ZHEN YANG works approximately three 24-hour shifts per week.

25. Plaintiff JOYCE ZHENG has worked for Defendant as a home health attendant since approximately March 2018. JOYCE ZHENG works approximately three to five 24-hour shifts per week.

26. Plaintiff KWAN TSAN NG worked for Defendant as a home health attendant from approximately July 2019 to September 2021. KWAN TSAN NG worked approximately three to five 24-hour shifts per week.

27. Plaintiff LAI HAO MO worked for Defendant as a home health attendant from approximately July 2018 to January 2021. LAI HAO MO worked approximately three 24-hour shifts per week.

5

Case 1:24-cv-07401-LTS-KHP    Document 217    Filed 05/11/26    Page 55 of 169

28.     Plaintiff LI HONG WANG has worked for Defendant as a home health attendant since approximately January 2021. LI HONG WANG works approximately three 24-hour shifts per week.

29.     Plaintiff MEI XIAO ZHAO worked for Defendant as a home health attendant from approximately September 2020 to November 2020. MEI XIAO ZHAO worked approximately four 24-hour shifts per week.

30.     Plaintiff MIAO ZHEN SITU worked for Defendant as a home health attendant from approximately October 2018 to November 2020. MIAO ZHEN SITU worked approximately two 24-hour shifts per week.

31.     Plaintiff MIN YING PENG has worked for Defendant as a home health attendant since approximately November 2019. MIN YING PENG works approximately three to four 24-hour shifts per week.

32.     Plaintiff NEI TIAN HUANG worked for Defendant as a home health attendant from approximately July 2017 to October 2019. NEI TIAN HUANG worked approximately four 24-hour shifts per week.

33.     Plaintiff QIAO YUN ZHENG worked for Defendant as a home health attendant from approximately June 2016 to January 2023. QIAO YUN ZHENG worked approximately one to three 24-hour shifts per week.

34.     Plaintiff RUI XIN CHEN worked for Defendant as a home health attendant from approximately December 2017 to February 2021. RUI XIN CHEN worked approximately two to three 24-hour shifts per week.

35.     Plaintiff SHU JUAN JIANG worked for Defendant as a home health attendant from approximately August 2016 to August 2022. SHU JUAN JIANG worked approximately two to

6

Case 1:24-cv-07401-LTS-KHP   Document 217   Filed 05/11/26   Page 56 of 169

four 24-hour shifts per week.

36.     Plaintiff WEN YONG LIN has worked for Defendant as a home health attendant since approximately August 2019. WEN YONG LIN worked approximately two to three 24-hour shifts per week.

37.     Plaintiff WOEI KWUN YAU worked for Defendant as a home health attendant from approximately December 2017 to January 2021. WOEI KWUN YAU worked approximately three to five 24-hour shifts per week.

38.     Plaintiff XI YING HUANG has worked for Defendant as a home health attendant since approximately May 2020. XI YING HUANG works approximately two 24-hour shifts per week.

39.     Plaintiff XIAO QIN LIANG worked for Defendant as a home health attendant from approximately June 2018 to August 2021. XIAO QIN LIANG worked approximately four to five 24-hour shifts per week.

40.     Plaintiff XIAO YUN HUANG worked for Defendant as a home health attendant from approximately June 2017 to June 2021. XIAO YUN HUANG worked approximately one to four 24-hour shifts per week.

41.     Plaintiff XIN XING CHEN worked for Defendant as a home health attendant from approximately October 2019 to February 2020. XIN XING CHEN worked approximately two to three 24-hour shifts per week.

42.     Plaintiff XIU CHEN ZHENG has worked for Defendant as a home health attendant since approximately August 2018. XIU CHEN ZHENG works approximately three to four 24-hour shifts per week.

43.     Plaintiff XIU YING SONG has worked for Defendant as a home health attendant

7

since approximately March 2021. XIU YING SONG works approximately one 24-hour shift per week.

44.     Plaintiff XIU ZHEN CHEN has worked for Defendant as a home health attendant since approximately January 2016. XIU ZHEN CHEN works approximately two to three 24-hour shifts per week. .

45.     Plaintiff YE YU LI has worked for Defendant as a home health attendant since approximately February 2020. YE YU LI works approximately one to four 24-hour shifts per week.

46.     Plaintiff YI ZHU ZHONG has worked for Defendant as a home health attendant since approximately June 2020. YI ZHU ZHONG works approximately two 24-hour shifts per week.

47.     Plaintiff YING LIN worked for Defendant as a home health attendant from approximately April 2019 to March 2021. YING LIN worked approximately one 24-hour shift per week.

48.     Plaintiff YONG E KUANG worked for Defendant as a home health attendant from approximately December 2017 to February 2020. YONG E KUANG worked approximately two 24-hour shifts per week.

49.     Plaintiff YONG PENG worked for Defendant as a home health attendant from approximately August 2015 to August 2022. YONG PENG worked approximately four 24-hour shifts per week.

50.     Plaintiff YU YI LI has worked for Defendant as a home health attendant since approximately April 2017. YU YI LI works approximately two to three 24-hour shifts per week.

51.     Plaintiffs generally worked more than 40 hours per week, but were not paid time

8

and one-half times the basic minimum hourly rate for all hours worked in excess of forty per week.

52. When Plaintiffs worked 24-hour shifts, Defendant systematically paid Plaintiffs for only 13 hours of each 24-hour shift without ensuring that they were paid for every hour that they worked. Plaintiffs were not paid any hourly rate for the other 11 hours worked.

53. Plaintiffs were paid approximately $11.92 per hour for 13 hours of each 24-hour shift prior to July 2017; $12.69 per hour for 13 hours of each 24-hour shift from August through December 2017; $12.00 per hour for 13 hours of each 24-hour shift in 2018; $15.00 per hour for 13 hours of each 24-hour shift from 2019 through October 2022; and $17.00 per hour for 13 hours of each 24-hour shift from November 2022 to 2023.

54. Defendant systematically excluded payment for the other 11 hours of Plaintiffs' 24-hour shifts without ensuring that they received regularly scheduled, work-free uninterrupted periods to sleep and eat, as required by law.

55. Defendant systematically excluded payment for the other 11 hours of Plaintiffs' 24-hour shifts even though Defendant failed to establish, maintain and preserve contemporaneous, true and accurate records that accurately reflect: (1) all hours worked by Plaintiffs on a daily and weekly basis; (2) Plaintiffs' time of arrival and departure from the homes of Defendant's clients; (3) the times of all regularly scheduled work-free uninterrupted periods that Plaintiffs were able to sleep and eat; and (4) records of appropriate sleeping facilities provided to Plaintiffs.

56. Because Defendant's clients were often elderly and suffering from various health ailments, they required constant care and Plaintiffs did not receive regularly scheduled work-free uninterrupted periods to sleep for five or more hours.

57. Plaintiffs did not receive regularly scheduled work-free uninterrupted meal breaks of one-hour each for three meals per day.

9

Case 1:24-cv-07401-LTS-KHP    Document 217    Filed 05/11/26    Page 59 of 169

58.     Plaintiffs were forced to eat their meals while feeding the clients or attempt to eat between their duties, because Defendant's clients needed feeding assistance during traditional mealtimes and constant supervision.

59.     Defendants did not track whether Plaintiffs received sleep and meal breaks during their 24-hour shifts.

60.     Defendants did not make any efforts to follow up with Plaintiffs regarding the actual number of hours they worked or to inquire whether Plaintiffs received the requisite breaks.

61.     Plaintiffs did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which they worked 10 or more hours.

62.     At all relevant times, pursuant to NYLL § 661 and 12 NYCRR § 142-2.6, Defendant was required to establish, maintain, and preserve for not less than six years, weekly payroll records that show for each Plaintiff, *inter alia*, the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift of spread of hours exceeding ten hours.

63.     Upon information and belief, Defendant failed to establish, maintain, and preserve contemporaneous, true, and accurate records for Plaintiffs that accurately reflect, *inter alia*: (1) all hours worked by Plaintiffs on a daily and weekly basis; (2) Plaintiffs' time of arrival and departure from the homes of Defendant's clients; (3) the times of all regularly scheduled work-free uninterrupted periods that Plaintiffs were able to sleep and eat; and (4) records of appropriate sleeping facilities provided to Plaintiffs.

64.     Defendant knew, should have known, or had reason to know that Plaintiffs were working throughout their entire shift, including during meal and sleep breaks.

65.     Defendant permitted or pressured Plaintiffs to work through their meal and sleep

10

Case 1:24-cv-07401-LTS-KHP    Document 217    Filed 05/11/26    Page 60 of 169

breaks without compensation.

66.    Despite Defendant's actual or constructive knowledge that Plaintiffs were working through their meal and sleep breaks, Defendant took no affirmative steps to prevent performance of such work and/or to track the hours Plaintiffs worked.

67.    At all relevant times, Defendant has maintained a practice and policy of assigning Plaintiffs to work more than 40 hours per week without paying them one and one-half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law.

68.    At all relevant times, Defendant has maintained a practice and policy of failing to pay Plaintiffs the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which they worked over 10 hours.

69.    Defendant paid Plaintiffs approximately $11.92 to $17.00 per hour, depending on the year, for only 13 hours of each 24-hour shift, which is far below the overtime rate of one and one-half times the minimum wage rate as required by law for all hours worked in excess of forty (40) hours per week.

70.    Plaintiffs are "Home Care Aides" within the meaning of NY Public Health Law § 3614-c.

71.    Defendant is a "certified home health agenc[y]," "long term home health care program[]," "managed care plan[]" and/or "licensed home care services agenc[y]" that furnishes "home care aide" within the meaning of NY Public Health Law § 3614-c.

72.    Upon information and belief, Defendant entered into contract(s) with government agencies, and/or entered into subcontracts with entities that contracted with government agencies, which called for Defendant to pay Plaintiffs prevailing rates of wages and benefits as required by

11

NY Public Health Law § 3614-c.

73. Upon information and belief, the schedule of prevailing rates of wage and benefits to be paid to all workers furnishing labor pursuant to the contracts was included in and formed a part of the contract(s).

74. Plaintiffs furnished labor to Defendant in furtherance of Defendant's performance of the contract(s). Nevertheless, Defendant willfully paid Plaintiffs less than the prevailing rates of wages and benefits to which Plaintiffs were entitled.

75. The agreement to pay Plaintiffs the prevailing rates of wages and benefits as required by NY Public Health Law § 3614-c was made for the benefit of Plaintiffs.

76. Pursuant to NY Public Health Law § 3614-c, governmental agencies "must obtain a written certification from the licensed home care services agency or other third party, on forms prepared by the department in consultation with the department of labor, which attests to the licensed home care services agency's or other third party's compliance with the terms of this section. Such certifications shall also obligate the certified home health agency, long term home health care program . . . to obtain . . . on no less than a quarterly basis, all information from the licensed home care services agency or other third parties necessary to verify compliance with the terms of this section. Such certifications and the information exchanged pursuant to them shall be retained by all certified home health agencies, long term home health care programs, or managed care plans, and all licensed home care services agencies, or other third parties for a period of no less than ten years, and made available to the department upon request."

77. Upon information and belief, Defendant made the required certifications concerning compliance with the wage provisions of NY Public Health Law § 3614-c.

78. NYC Admin. Code § 6-109 provides that an employer whose employees perform

12

Case 1:24-cv-07401-LTS-KHP    Document 217    Filed 05/11/26    Page 62 of 169

work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

79.     NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

80.     The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth in Homecare Services Section of 6-109 of the NYC Admin. Code.

81.     Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

82.     Plaintiffs furnished labor to Defendant in furtherance of their performance of the City Service Contract(s).

83.     Upon information and belief, Defendant willfully paid Plaintiffs less than the rates of wages and benefits to which Plaintiffs were entitled.

84.     Defendant's actions as described herein were intentional and not made in good faith.

**FIRST CAUSE OF ACTION**
**NEW YORK LABOR LAW MINIMUM WAGE**

85.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

86.     Title 12 NYCRR § 142-2.1 states that, "(a) [t]he basic minimum hourly wage rate shall be…: (1) $7.15 per hour on and after January 1, 2007; (2) $7.25 per hour on and after July

13

Case 1:24-cv-07401-LTS-KHP   Document 217   Filed 05/11/26   Page 63 of 169

24, 2009; (3) $8.00 per hour on and after December 31, 2013; (4) $8.75 per hour on and after December 31, 2014; (5) $9.00 per hour on and after December 31, 2015;" (6) "$11.00 per hour on and after December 31, 2016;" (7) "$13.00 per hour on and after December 31, 2017;" and (8) "$15.00 per hour on and after December 31, 2018 . . . ."

87.     NYLL § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

88.     At all relevant times to this action, Plaintiffs were Defendant's employees within the meaning of NYLL §§ 190(2) and 651(5) and 12 NYCRR § 142-2.14.

89.     At all relevant times to this action, Defendant was the employer of the Plaintiffs within the meaning of NYLL §§ 190(3) and 651(6).

90.     At all relevant times to this action, Defendant failed to pay Plaintiffs the statutory minimum wage in violation of NYLL § 652 and 12 NYCRR § 142-2.1.

91.     Defendant willfully, regularly, repeatedly and knowingly violated the Plaintiffs' rights by failing to pay them compensation at the minimum wage rate for all hours worked, in violation of the NYLL and its regulations.

92.     By the foregoing reasons, Plaintiffs are entitled to recover from Defendant their unpaid minimum wages, in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW OVERTIME

93.     Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

94.     12 NYCRR §142-2.2 requires that "[a]n employer shall pay an employee for

14

Case 1:24-cv-07401-LTS-KHP Document 217 Filed 05/11/26 Page 64 of 169

overtime at a wage rate of one and one-half times the employee's regular rate."

95. NYLL § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

96. Upon information and belief, Plaintiffs worked more than forty hours a week while working for Defendant.

97. At all relevant times to this action, Defendant failed to pay Plaintiffs one and one-half times their hourly rate for all hours worked in excess of forty per work week, in violation of NYLL § 650 *et seq.* and 12 NYCRR § 142-2.2.

98. Defendant's failure to pay wages and overtime compensation to Plaintiffs for work performed after the first forty hours worked in a week was willful.

99. By the foregoing reasons, Defendant has violated NYLL § 663 and 12 NYCRR § 142-2.2 and are liable to Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW "SPREAD OF HOURS"

100. Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

101. 12 NYCRR § 142-2.4 requires that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours[.]"

102. Defendant required that Plaintiffs typically work more than 10 hours in a day.

103. At all times relevant to this action, Defendant failed to pay Plaintiffs the "spread of hours" premium required by 12 NYCRR § 142-2.4.

15

Case 1:24-cv-07401-LTS-KHP   Document 217   Filed 05/11/26   Page 65 of 169

104.   Defendant's failure to pay "spread of hours" compensation for work performed by Plaintiffs after 10 hours in a day was willful.

105.   By the foregoing reasons, Defendant has violated 12 NYCRR § 142-2.4 and is liable to Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW FAILURE TO PAY WAGES

106.   Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

107.   Pursuant to Article Six of the NYLL, workers, such as the Plaintiffs are protected from wage underpayments and improper employment practices.

108.   Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

109.   Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs, that is not otherwise authorized by law or by the employee.

110.   Defendant has failed to pay Plaintiffs all wages due, including minimum wages and overtime wages, as well as wages under the NY Home Care Worker Wage Parity Act, NYC Admin. Code § 6-109, for the hours they each worked for Defendant.

111.   By withholding wages and overtime payments for time worked after forty hours in one week from Plaintiffs, pursuant to NYLL § 193 and the cases interpreting same, Defendant made unlawful deductions in wages owed to Plaintiffs.

112.   Defendant's failure to comply with the NYLL caused Plaintiffs to suffer loss of wages and interest thereon.

16

Case 1:24-cv-07401-LTS-KHP   Document 217   Filed 05/11/26   Page 66 of 169

113. Defendant's failure to comply with the NYLL was willful.

114. Due to Defendant's violations of the NYLL, Plaintiffs are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

115. Plaintiffs reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

116. Upon information and belief, Defendant entered into contract(s) with government agencies that required Defendant to pay Plaintiffs wages as required by NY Public Health Law § 3614-c.

117. Upon information and belief, the schedule of prevailing rates of wages and benefits to be paid all workers furnishing labor pursuant to the contracts was included in and formed a part of the contract(s).

118. Plaintiffs furnished labor to Defendant in furtherance of Defendant's performance of the contract(s).

119. Defendant willfully paid Plaintiffs less than the prevailing rates of wages and benefits to which Plaintiffs were entitled and breached its obligation to pay Plaintiffs all wages they were due as required by NY Public Health Law § 3614-c.

120. Upon information and belief, at all times relevant to this complaint, Defendant was required to certify and did certify that it paid Plaintiffs wages as required by NY Public Health Law § 3614-c.

121. Plaintiffs, as third-party beneficiaries of Defendant's contract(s) with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, are entitled to

17

relief for the breach of this contractual obligation, plus interest.

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

122.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

123.    Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

124.    Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

125.    Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

126.    Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part of the City Service Contract(s).

127.    Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

128.    By reason of its breach of the City Service Contract(s), Defendant is liable to Plaintiffs for an amount to be determined at trial, plus interest.

## PRAYER FOR RELIEF

(1)    on the first cause of action, against Defendant in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs;

18

(2)     on the second cause of action, against Defendant in an amount to be determined at trial,

plus liquidated damages, interest, attorneys' fees and costs;

(3)     on the third cause of action, against Defendant in an amount to be determined at trial,

plus liquidated damages, interest, attorneys' fees and costs;

(4)     on the fourth cause of action, against Defendant in an amount to be determined at trial,

plus liquidated damages, interest, attorneys' fees and costs;

(5)     on the fifth cause of action, against Defendant in an amount to be determined at trial,

plus interest, attorneys' fees and costs;

(6)     on the sixth cause of action, against Defendant in an amount to be determined at trial,

plus interest, attorneys' fees and costs;

(7)     together with such other and further relief the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and claims with respect to which

they have a right to a jury trial.

Dated: New York, New York
      December 18, 2023                      Respectfully submitted,

                                          VIRGINIA & AMBINDER, LLP

                                By:      ___/s/_____
                                                LaDonna M. Lusher, Esq.
                                                Michele A. Moreno, Esq.
                                                40 Broad Street, Seventh Floor
                                                New York, New York 10004
                                                Tel:   (212) 943-9080
                                                Fax:   (212) 943-9082
                                                llusher@vandallp.com
                                              mmoreno@vandallp.com

                                               *Attorneys for the Plaintiffs*

19

# EXHIBIT E

NYSCEF DOC. NO. 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**QUEENS COUNTY**

| | |
|---|---|
| HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, and BI Y. ZHENG, <br><br> Plaintiffs, <br><br> v. <br><br> BARBARA WANG, 40 ROAD T7E LLC, and QUEENS 11N LLC <br> Defendants. | Index No. _____ <br><br> **SUMMONS** <br><br> The basis of venue is CPLR §§ 503(a) and 507. |

To the above-named Defendants:

**You are hereby summoned** to serve upon Plaintiffs' attorneys an answer to the complaint in this action within 20 days after the service of this summons, exclusive of the day of service, or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is that a substantial part of the events giving rise to this claim occurred within this County and the properties that are the subject of this claim are located in Queens County.

Dated: New York, NY
   April 3, 2026

           NATIONAL CENTER FOR LAW AND
           ECONOMIC JUSTICE
           /s/ Carmela Huang_____
           Carmela Huang
           50 Broadway, Suite 1500
           New York, NY 10004
           (646) 393-3048
           huang@nclej.org

           GETMAN, SWEENEY & DUNN, PLLC
           Karen Kithan Yau
           260 Fair Street
           Kingston, NY 12401
           (845) 255-9370
           kyau@getmansweeney.com

1

CREDITOR JUSTICE PROJECT
URBAN JUSTICE CENTER
David A. Colodny
40 Rector Street, 9th Floor
New York, NY 10006
(646) 677-8644
dcolodny@urbanjustice.org

*Attorneys for Plaintiffs*

2

Case 1:24-cv-07401-LTS-KHP   Document 247   Filed 05/11/26   Page 72 of 169

**SUPREME COURT OF THE STATE OF NEW YORK**
**QUEENS COUNTY**

|  |  |
|---|---|
| HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, and BI Y. ZHENG,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA WANG, 40 ROAD T7E LLC, and QUEENS 11N LLC<br>Defendants. | **COMPLAINT**<br><br>Index No. _____ |

Plaintiffs Hui X. Ruan, Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng (collectively, "Plaintiffs"), by their attorneys, allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs are all home care aides who provided 24-hour, "live-in" services to elderly, vulnerable, and disabled Medicaid recipients while employed by GreatCare, Inc. ("GreatCare"), a licensed home-care services agency owned and operated by Defendant Barbara Wang.

2. GreatCare and Defendant Wang required the Plaintiffs to work 24-hour shifts, but then only paid them for 13 hours, in violation of the New York Labor Law ("NYLL") as set forth by the Court of Appeals in *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 182 (2019).

3. On October 1, 2024, Plaintiffs, together with other home care aides who had also been employed by GreatCare, commenced an action, *Li, et al. v. GreatCare, Inc., et al.*, No. 24-cv-7401 (LTS) (KHP), in the United States District Court for the Southern District of New York (the "Federal Action"). The Plaintiffs' complaint in the Federal Action alleges violations of the

1

Fair Labor Standards Act ("FLSA"), NYLL, and Home Care Worker Wage Parity Act ("Wage Parity Act"), Pub. Health Law § 3614-c, arising from the Federal Action defendants' practice of paying for only 13 hours of every 24-hour shift worked. The complaint was subsequently amended on August 18, 2025.

4. The federal court complaint names three defendants, GreatCare, Inc., CenterLight Healthcare, Inc., and Senior Whole Health of New York, Inc., who are alleged to have jointly employed the aides at various time periods. The complaint did not name Barbara Wang as an individual defendant.

5. However, in January 2026, facts that had not been previously disclosed revealed that Barbara Wang had near-total control over all of GreatCare's operations, including those decisions affecting the terms and conditions of the aides' employment.

6. Although the aides in the federal court action did not become aware of Barbara Wang's role at GreatCare until January 2026, Barbara Wang was clearly aware of the risk that she might be found personally liable for the aides' claims.

7. Therefore, in an attempt to render herself judgment-proof, in the summer and fall of 2025, Defendant Wang transferred her ownership of three residential properties located in Flushing, NY to limited-liability companies for which she was the Managing Member at the time of the transfers and which were each registered to her home address in Dix Hills, NY.

8. Although the three properties have a collective value of at least $2.3 million, Defendant Wang transferred the three properties for $0.

9. Since then, one of the properties has been listed for sale with an asking price of $1.3 million.

10. Plaintiffs therefore commence this action to hold Defendant Wang individually liable as an employer under the NYLL for Plaintiffs' unpaid wages, overtime, spread of hours pay, and Wage Parity Act damages. Plaintiffs also assert claims under the N.Y. Debtor and Creditor Law against Defendant Wang and the two Limited Liability Companies that received the properties: Queens 11N LLC and 40 Road T7E LLC.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over the causes of action set forth in this Verified Complaint.

12. Plaintiffs bring causes of action based solely on and arising under New York law, including the NYLL, the Wage Parity Act, the N.Y. Debtor and Creditor Law, and common law principles of contract and unjust enrichment.

13. Defendant Barbara Wang is subject to personal jurisdiction because she is domiciled in the State of New York.

14. Defendant 40 Road T7E LLC is a Limited Liability Company formed and existing under the laws of New York, has conducted significant business in New York, and is subject to personal jurisdiction.

15. Defendant Queens 11N LLC is a Limited Liability Company formed and existing under the laws of New York, has conducted significant business in New York, and is subject to personal jurisdiction.

16. Venue is proper pursuant to CPLR §§ 503(a) and 507 because at least one of the parties resides in Queens County, the voidable transactions giving rise to the claims in this action took place in Queens County, and the properties that are the subject of the voidable transactions are located in Queens County, NY.

3

Case 1:24-cv-10915-RMB Document 24-7 Filed 04/16/26 Page 8 of 61 PageID 88

## PARTIES

17.    Plaintiff Hui X. Ruan is a 72-year-old woman who resides in Staten Island, New York. Ms. Ruan was employed by GreatCare and Defendant Barbara Wang from approximately March 29, 2015 until September 2, 2023 as a home care aide providing in-home personal care services.

18.    Plaintiff Jian R. Xiao is a 56-year-old woman who resides in Queens, New York. Ms. Xiao was employed by GreatCare and Defendant Barbara Wang from approximately November 10, 2020 until approximately August 20, 2023.

19.    Plaintiff Mei Z. Xiao is a 65-year-old woman who resides in New York, New York. Ms. Xiao was employed by GreatCare and Defendant Barbara Wang from approximately May 2, 2018 to approximately August 18, 2023 as a home care aide providing in-home personal care services.

20.    Plaintiff Bi Y. Zheng is a 54-year-old woman who resides in New York, New York. Ms. Zheng was employed by GreatCare and Defendant Barbara Wang from approximately October 18, 2018 to approximately August 20, 2021 as a home care aide providing in-home personal care services.

21.    Defendant Barbara Wang is the majority owner and operator of GreatCare, Inc., a New York corporation that specializes in providing in-home care personal care services to care recipients, also referred to as members, across the greater New York area. At all relevant times, Defendant Wang was Plaintiffs' employer.

22.    Defendant 40 Road T7E LLC is a Domestic Limited Liability Company formed and existing under the laws of New York, with a NY Department of State Service of Process address at 126 Elmwood Drive, Dix Hills, NY 11746.

4

Case 2:24-cv-07901-RMS-RHL Document 247 Filed 05/11/26 Page 9 Page 76 of 169.89

23. At all relevant times, Defendant Wang was the Managing Member of 40 Road T7E LLC.

24. Defendant Queens 11N LLC is a Domestic Limited Liability Company formed and existing under the laws of New York, with a NY Department of State Service of Process address at 126 Elmwood Drive, Dix Hills, NY 11746.

25. At all relevant times, Defendant Wang was the Managing Member of Queens 11N LLC.

## STATEMENT OF FACTS

### *Working Conditions of Hui X. Ruan*

26. Plaintiff Hui X. Ruan was employed by GreatCare and Defendant Barbara Wang from approximately March 2015 until approximately September 2023.

27. From approximately June 2019 until approximately January 2022, Ms. Ruan provided 24-hour care services to Ms. C.[1], an elderly woman who lived in Manhattan, New York during the time that Plaintiff Ruan provided care.

28. During this period, Ms. Ruan worked two consecutive 24-hour shifts per week.

29. Ms. C. suffered from dementia and experienced hallucinations and delusions. Her formal care plan required that she receive supervision at all times to protect her health and safety. Ms. C. was unable to move and ambulate independently. Ms. C. also required total assistance with all activities of daily living, including eating and toileting.

30. Ms. C. lived in a studio apartment, and Ms. Ruan was provided with only a sofa on which to sleep.

---

[1] The full names of the people that the Plaintiffs cared for are not used here due to the need to describe some of their health conditions.

5

31.   While providing 24-hour care services to Ms. C., Ms. Ruan did not receive 8 hours of sleep per 24-hour shift and Ms. Ruan did not receive five continuous, uninterrupted hours of sleep per 24-hour shift.

32.   While providing 24-hour care services to Ms. C., Ms. Ruan did not receive three full hours of completely duty-free meal breaks.

33.   Though all 24-hours of Ms. Ruan's shifts were compensable, while providing care services to Ms. C., Ms. Ruan was not paid for more than 13 hours when she worked a "live-in" shift; Ms. Ruan received no compensation for 11 hours of each 24-hour shift.

34.   Ms. Ruan did not receive wage notices or complete and accurate pay statements while she was employed by GreatCare and Defendant Wang. As a result, Ms. Ruan was not aware of how much she was being paid, what her hourly rate of pay was, whether she was receiving overtime wages, and what allowances or deductions GreatCare and Defendant Wang were claiming.

35.   As a result of GreatCare's and Defendant Wang's failures to provide Ms. Ruan with the notices and statements required by Section 195 of the NYLL, Ms. Ruan did not become aware that GreatCare and Defendant Wang were violating her rights to receive the minimum wage and overtime for all 24-hours of the shifts she worked until approximately 2022.

36.   Throughout the time she was employed by GreatCare and Defendant Wang, Ms. Ruan did not receive "spread of hours" pay though she worked a spread of more than ten hours per shift.

37.   Throughout the time she was employed by GreatCare and Defendant Wang to work 24-hour, "live-in" shifts, Ms. Ruan was paid less than the statutory minimum wage.

6

38. Throughout the time she was employed by GreatCare and Defendant Wang, Ms. Ruan was paid less than the total hourly compensation required by the Wage Parity Act.

***Working Conditions of Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng***

39. Plaintiffs Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng were employed by GreatCare and Defendant Wang to work as a care team, providing care services to Ms. Y., an elderly woman who lived in Manhattan, New York during the time that Plaintiffs provided care.

40. Ms. Jian R. Xiao first started providing care services to Ms. Y. three consecutive 24-hour shifts per week in November 2020.

41. Ms. Mei Z. Xiao first started providing care services to Ms. Y. three consecutive 24-hour shifts per week in May 2018. Ms. Mei Z. Xiao took an approximately one-year leave of absence from work between May 2022 to May 2023.

42. Ms. Zheng provided care services to Ms. Y. from October 2018 to August 2021 during which time she worked three consecutive 24-hour shifts per week.

43. Throughout the time that Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng provided services to Ms. Y., Ms. Y. required toileting assistance approximately 5 to 7 times per night. Ms. Y. also suffered pains and cramps during the night, requiring Plaintiffs to massage her or assist her with medication.

44. A second bed was placed next to Ms. Y.'s bed for Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng to use to rest. Plaintiffs' bed and Ms. Y.'s bed were separated by just Ms. Y.'s bedside commode.

45. While providing care services to Ms. Y., Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng did not obtain eight hours of sleep per 24-hour shift. Plaintiffs also did not obtain five hours of continuous, uninterrupted sleep per 24-hour shift.

7

46. While providing care services to Ms. Y., Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng did not receive three hours of completely duty-free meal breaks per 24-hour shift.

47. Twice, prior to February 2019, Ms. Mei Z. Xiao went to GreatCare's headquarters on 34th Street to report to a coordinator that she was unable to sleep at night because of Ms. Y.'s frequent toileting needs. Ms. Xiao stated her belief that the taxing nature of the work was affecting her health and requested that she be assigned to a different care recipient.

48. GreatCare's coordinator, at the direction of Defendant Wang, refused to reassign Ms. Y. Instead, the coordinator responded, "That's what doing this work is like. That's what caring for old people is like."

49. In February 2019, Ms. Mei Z. Xiao collapsed from cardiac arrest and received emergency bypass surgery. Ms. Mei Z. Xiao's doctor attributed her dangerously poor health to her inability to obtain sleep at night.

50. Ms. Mei Z. Xiao took approximately one to two months off to recuperate. During this time, she again requested that she be assigned to a different care recipient. Ms. Xiao was again refused. Ms. Mei Z. Xiao was told that she should get another job if she did not want to continue providing care services to Ms. Y.

51. Unable to endure any additional loss of income, after her period of recuperation, Ms. Mei Z. Xiao returned to work. However, in May 2022, Ms. Mei Z. Xiao suffered another cardiac incident that required a second emergency bypass surgery.

52. After Ms. Mei Z. Xiao recuperated for approximately one year, and in or about May 2023, she returned to work for GreatCare providing care services to Ms. Y.

53. Though all 24-hours of Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng's shifts are compensable, while providing care services to Ms. Y., they were not paid for more than 13

8

hours when they worked a "live-in" shift; Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng received no compensation for 11 hours of each 24-hour shift.

54.   At the end of each 24-hour shift, Plaintiffs were required to dial-in activity codes by phone. The codes Plaintiffs dialed-in were assigned to them by GreatCare, under Defendant Wang's direction, and did not include codes for reporting night work, inadequate sleep, or inadequate meal breaks.

55.   During the time that Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng were employed by GreatCare, GreatCare supervisors, under Defendant Wang's direction, often required Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng to sign or check documents that were in English and that they did not understand and for which no explanation was provided.

56.   GreatCare and Defendant Wang did not inform Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng that they had a right to be paid for all hours of a 24-hour shift if they did not receive adequate sleep or meal breaks.

57.   Ms. Jian R. Xiao did not receive wage notices or complete and accurate pay statements while she was employed by GreatCare and Defendant Wang. Ms. Xiao M. Zheng and Ms. Zheng did not receive wage notices or pay statements while they were employed by GreatCare and Defendant Wang. As a result, Plaintiffs were not aware of how much they were being paid, what their hourly rate of pay was, whether they were receiving overtime wages, and what allowances or deductions GreatCare and Defendant Wang were claiming.

58.   As a result of GreatCare's failures to provide Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng with the notices and statements required by Section 195 of the NYLL, Plaintiffs did not become aware that GreatCare and Defendant Wang were violating their rights to receive

9

Case 1:24-cv-08940-AMTS Document 20-4 Filed 05/21/26 Page 81 of 169

the minimum wage and overtime for all 24-hours of the shifts worked until approximately 2022 or 2023.

59.     Throughout the time they were employed by GreatCare and Defendant Wang, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng never received overtime pay when they worked more than forty hours per week.

60.     Throughout the time they were employed by GreatCare, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng never received "spread of hours" pay when they worked a spread of more than ten hours per shift.

61.     Throughout the time they were employed by GreatCare, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng were paid less than the statutory minimum wage and less than the total hourly compensation required by the Wage Parity Act.

62.     Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng each filed complaints with the New York State Department of Labor ("NYSDOL") regarding GreatCare's NYLL violations: Ms. Jian R. Xiao and Ms. Mei Z. Xiao filed their complaints on or about May 18, 2023; Ms. Zheng filed her complaint on or about November 21, 2022.

63.     In July 2023, a person believed to be Defendant Wang called Ms. Jian R. Xiao. Defendant Wang said to Ms. Jian R. Xiao, "Do we owe you money? You are sleeping and you want to get paid? You're fired! Don't come back to work tomorrow!"

64.     That same day, a person believed to be Defendant Wang called Ms. Y.'s daughter and told the daughter that she was giving Ms. Y. one month to switch to a different home care services provider.

10

65.     As a result, Ms. Jian R. Xiao and Ms. Mei Z. Xiao continued to work their usual weekly schedules for GreatCare until August 2023, when Ms. Y. moved to non-defendant Queens Homecare Agency.

### *Operational Control of Defendant Barbara Wang*

66.     Throughout the period of Plaintiffs' employment, Defendant Barbara Wang was the majority owner of GreatCare and oversaw every aspect of its operation.

67.     Throughout the period of Plaintiffs' employment, Defendant Wang had ultimate decision-making authority and control over all aspects of GreatCare's operations and business. During that period, no other GreatCare employee had more control over GreatCare's operations and business than Defendant Wang.

68.     In addition to home care aides, GreatCare also employs office staff, including coordinators and human resources staff. Throughout the period of Plaintiffs' employment, Defendant Wang directly supervised all office staff.

69.     Most of Plaintiffs' interactions with GreatCare were with GreatCare's coordinators, who assigned Plaintiffs to specific care recipients. However, Plaintiffs were also directed to call the office whenever issues arose with their care recipients during business hours. Plaintiffs would receive direction on how to resolve those issues from any member of the office staff under the direct supervision of Defendant Wang.

70.     Whenever issues arose with their care recipients outside of business hours, Plaintiffs were directed to call Defendant Wang's personal cell phone. Plaintiffs would receive direction on how to resolve those issues directly by Defendant Wang.

71.     Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs being paid for only 13 hours per every 24-hour shift worked at rates that fell below the statutory minimum wage.

11

72. Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs being deprived of their overtime wages, spread of hours pay, and Wage Parity Act benefits.

73. Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs receiving no, or inaccurate, notice of wage statements and paystubs.

74. Additionally, Defendant Wang was the sole person at GreatCare responsible for negotiating rates of reimbursement with the managed long-term care companies GreatCare contracted with, which had direct influence over Plaintiffs' rates of pay and wage benefits.

75. Defendant Wang had the power to hire employees of GreatCare and exercised that authority.

76. Defendant Wang had the power to determine compensation for Plaintiffs and exercised that authority.

77. Defendant Wang had the power to maintain Plaintiffs' employment records and exercised that authority.

78. Defendant Wang had the power to supervise Plaintiffs and exercised that authority.

79. Defendant Wang was the sole person at GreatCare who had the power to fire GreatCare's employees, including GreatCare's home care aides..

### Defendant Barbara Wang's Transfer of Assets

80. On October 1, 2024, Plaintiffs, along with 10 other home care aides formerly employed by GreatCare, initiated the Federal Action. In their complaint, the federal court plaintiffs alleged that they were jointly employed by GreatCare and managed long-term care companies ("MLTCs") under contract with the New York State Department of Health to provide long-term care services to the federal court plaintiffs' care recipients.

12

81. Due to the vertical nature of the joint employment relationship between GreatCare and the MLTCs, many of the federal court plaintiffs did not know the identity of their MLTC-joint-employer. Therefore, GreatCare was ordered by the federal magistrate judge overseeing the federal court action to provide the federal court plaintiffs information sufficient to identify their putative joint employer. However, GreatCare refused to comply with the federal magistrate judge's order, and the federal court plaintiffs were forced to employ third-party subpoenas to identify the specific MLTCs implicated by their federal court complaint.

82. On July 24, 2025, Magistrate Judge Katharine Parker ordered the federal court plaintiffs to amend their complaint to join the newly identified MLTC employers by August 25, 2025.

83. On August 18, 2025, the federal court plaintiffs amended their complaint, adding a previously unnamed MLTC defendant to the action.

84. The federal court plaintiffs did not also add Barbara Wang as a defendant because they did not have sufficient information at that time to allege that Barbara Wang was an "employer" within the meaning of the NYLL or Fair Labor Standards Act.

85. On August 29, 2025, the federal court plaintiffs noticed the deposition of Barbara Wang (who was designated as GreatCare's corporate representative) for October 22, 2025. However, GreatCare's counsel was completely unresponsive, despite multiple attempts by the federal court plaintiffs to reach counsel and also seek the intervention of Magistrate Judge Parker. It was not until November 19, 2025 that counsel for GreatCare proposed that Barbara Wang's depositions be scheduled for January 23 and January 28, 2026. Barbara Wang's first deposition eventually took place on January 7, 2026.

13

86. During the summer and fall of 2025, while the Federal Action Defendants were stalling on their discovery responses, Defendant Wang used the opportunity to fraudulently convey three real properties located in Flushing, NY. First, Defendant Wang created two New York Limited Liability Companies, and then she subsequently transferred to those LLC's the three properties that she owned either as sole owner or joint owner. All of the transfers were for zero dollars.

*The Limited Liability Companies*

87. Upon information and belief, on or about July 30, 2025, Defendant Wang filed or caused to be filed documents with the New York Department of State to create the Limited Liability Company 40 Road T7E LLC. According to the New York Department of State, 40 Road T7E LLC's creation was effective on that date.

88. The address on record with the New York Department of State for service of process on the Secretary of State as agent for 40 Road T7E LLC is 126 Elmwood Drive, Dix Hills, NY 11746. Upon information and belief, Defendant Wang owns the real property located at 126 Elmwood Drive, Dix Hills, NY 11746.

89. Defendant Wang has at all relevant times been the Managing Member of 40 Road T7E LLC.

90. Upon information and belief, on or about July 30, 2025, Defendant Wang filed or caused to be filed documents with the New York Department of State to create Queens 11N LLC. According to the New York Department of State, Queens 11N LLC's creation was effective on that date.

91. The address on record with the New York Department of State for service of process on the Secretary of State as agent for Queens 11N LLC is 126 Elmwood Drive, Dix

14

Hills, NY 11746. Upon information and belief, Defendant Wang owns the real property located at 126 Elmwood Drive, Dix Hills, NY 11746.

92. Defendant Wang has at all relevant times been the Managing Member of Queens 11N LLC.

**First Voidable Transaction: 131-01 40th Road, Unit 11N, Flushing, NY 11354 (Block 5066, Lot 3061)**

93. By deed dated February 13, 2018, and duly recorded and filed with the City Register of the City of New York on or about February 27, 2018, Defendant Wang purchased a condominium located at 131-01 40th Road, Unit 11N, Flushing, NY 11354. The property is also recorded as Block 5066, Lot 3061 and referred to herein as "The 131-01 40th Road Property." According to the deed, Defendant Wang and Jian Ping purchased the 131-01 40th Road Property as Tenants by the Entirety.

94. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Wang and Jian Ping was $1,286,292.

95. By deed dated August 19, 2025, and duly recorded and filed with the City Register of the City of New York on or about November 5, 2025, identified as Doc. ID No. 2025110500309001, Defendant Wang and Jian Ping transferred full ownership of the 131-01 40th Road Property to Queens 11N LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Queens 11N LLC was "$0."

96. At the time that the 131-01 40th Road Property was transferred to Queens 11N LLC it had significant monetary value. In March, 2026, the property was listed for sale at a price of $1,333,000.

15

97.  On the document recorded with the City Register of the City of New York, Doc. ID No. 2025110500309001, both the address listed for the sellers (Defendant Wang and Jian Ping) and the buyer (Queens 11N LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

98.  On the deed recorded with the City Register of the City of New York, Defendant Barbara Wang signed as both a seller and as the Managing Member of Queens 11N LLC.

99.  Notably, the deed is dated August 19, 2025, which was six days before the federal court deadline for Plaintiffs to file their amended complaint.

***Second Voidable Transaction: 131-05 40th Road, Unit 10T, Flushing, NY 11354 (Block 5066, Lot 1749)***

100.  By deed dated December 21, 2016, and duly recorded and filed with the City Register of the City of New York on or about January 4, 2017, Defendant Wang purchased a condominium located at 131-05 40th Road, Unit 10T, Flushing, NY 11354. The property is also recorded as Block 5066, Lot 1749 and referred to herein as "The 131-05 40th Road Property."

101.  According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Wang was $497,608.

102.  By deed dated August 19, 2025, and duly recorded and filed with the City Register of the City of New York on or about November 5, 2025, identified as Doc. ID No. 2025110500294001, Defendant Wang transferred full ownership of the 131-05 40th Road Property to 40 Road T7E LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant 40 Road T7E LLC was "$0."

103.  At the time that the 131-05 40th Road Property was transferred to 40 Road T7E LLC it had significant monetary value. In March, 2026, the property was valued by Zillow at $591,600.

16

104. On the document recorded with the City Register of the City of New York, Doc. ID No. 2025110500294001, both the address listed for the seller (Defendant Wang) and the buyer (40 Road T7E LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

105. On the deed recorded with the City Register of the City of New York, Defendant Barbara Wang signed as both the seller and as the Managing Member of 40 Road T7E LLC.

106. Notably, the deed is dated August 19, 2025, which was six days before the federal court deadline for Plaintiffs to file their amended complaint.

### Third Voidable Transaction: 39-16 Prince Street, Unit 7E, Flushing, NY 11354 (Block 4973, Lot 1064)

107. By deed dated December 9, 2014, and duly recorded and filed with the City Register of the City of New York on or about December 16, 2014, Defendant Wang and Jian Ping purchased a condominium located at 39-16 Prince Street, Unit 7E, Flushing, NY 11354. The property is also recorded as Block 4973, Lot 1064 and referred to herein as "The 39-16 Prince Street Property." The deed states that the buyers were: "Jian Ping & Barbara Wang, Husband & Wife."

108. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Wang and Jian Ping was $511,161.

109. By deed dated November 25, 2025, and duly recorded and filed with the City Register of the City of New York on or about December 3, 2025, identified as Doc. ID No. 2025120300099001, Defendant Wang and Jian Ping transferred full ownership of the 39-16 Prince Street Property to 40 Road T7E LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant 40 Road T7E LLC was "$0."

17

110. At the time that the 39-16 Prince Street Property was transferred to 40 Road T7E LLC it had significant monetary value. In March, 2026, the property was valued by Zillow at $499,300.

111. On the document recorded with the City Register of the City of New York, Doc. ID No. 2025120300099001, both the address listed for the sellers (Defendant Wang and Jian Ping) and the buyer (40 Road T7E LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

112. On the Customer Registration Form for Sewer and Water Billing for the 39-16 Prince Street Property, Defendant Wang signed as "Member" of 40 Road T7E LLC.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### For Failure to Pay Minimum Wage Under the New York Labor Law

113. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

114. At all times relevant to this action, Plaintiffs were employees within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

115. NYLL requires that employers pay their employees specified minimum hourly wages. NYLL § 652.

116. Defendant Wang failed to pay Plaintiffs at the applicable legal minimum hourly wage, in violation of NYLL § 652 and supporting regulations and orders of the NYSDOL.

117. Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid minimum wages and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

18

Case 1:24-cv-07401-LTS-KHP Document 21-4 Filed 05/14/23 Page 90 of 169

## SECOND CAUSE OF ACTION
### For Failure to Pay Overtime Wages Under the New York Labor Law

118.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

119.   At all times relevant to this action, Plaintiffs were employed by Defendant Wang within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

120.   Since January 1, 2015, home care aides, including those providing personal care services, employed by third-party agencies or employers must be paid overtime compensation at an hourly rate of 150% the minimum wage or regular rate of pay, whichever is greater, for all hours worked in excess of 40 per week. NYLL § 652; 12 N.Y.C.R.R. §§ 142-2.2, 142-3.2; 29 C.F.R. § 551.109(a).

121.   Defendant Wang failed to pay Plaintiffs overtime wages at an hourly rate of 150% of at least the minimum wage for each hour worked in excess of 40 per week, in violation of NYLL § 652 and 12 N.Y.C.R.R. §§ 142-2.2 and 142-3.2.

122.   Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid overtime wages and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

## THIRD CAUSE OF ACTION
### For Failure to Pay Spread of Hours Under the New York Labor Law

123.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

124.   Plaintiffs were employed by Defendant Wang within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

125.   Employees are entitled to receive one hour's pay at the basic minimum wage rate for any day in which the spread of hours exceeds 10 hours. 12 N.Y.C.R.R. §§ 142-2.4, 142-3.4.

19

126. Defendant Wang failed to pay Plaintiffs spread of hours pay each day Plaintiffs worked a spread in excess of 10 hours.

127. Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid spread of hours pay and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

## FOURTH CAUSE OF ACTION
### For Failure to Comply with Notice Requirements (Plaintiff Jian R. Xiao)

128. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

129. Defendant Wang failed to comply with NYLL § 195, which sets out notice and recordkeeping requirements governing employers in the State of New York, and 12 N.Y.C.R.R. §§ 142-2.6 and 142-3.6 governing the records that Defendant Wang is required to maintain and preserve.

130. Defendant Wang failed to provide Plaintiff Jian R. Xiao with wages notices in English and/or their primary language setting forth Plaintiff's rate of pay, the basis for determining that rate, and any allowances claimed against Defendant Wang's minimum wage obligations, in violation of NYLL § 195(1)(a).

131. Due to these violations, Plaintiff Jian R. Xiao is entitled to recover from Defendant $50 for each workday that the violations occurred, up to a total of $5,000, together with costs and reasonable attorneys' fees, and any other relief that this Court deems necessary and appropriate. NYLL § 198(1-b).

## FIFTH CAUSE OF ACTION
### For Failure to Comply with Wage Statement Requirements

132. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

20

133. Defendant Wang failed to provide Plaintiffs with detailed and accurate wage statements with each payment of wages, in violation of NYLL § 195(3).

134. Due to these violations, Plaintiffs are entitled to recover from Defendant Wang $250 for each workday that the violations occurred, up to a total of $5,000 per Plaintiffs, together with costs and reasonable attorneys' fees, and any other relief that this Court deems necessary and appropriate. NYLL § 198(1-d).

### SIXTH CAUSE OF ACTION
**For Breach of Contract and Unjust Enrichment for Failure to Pay Wages as Required by the New York Home Care Worker Wage Parity Act**

135. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

136. Pursuant to the New York Home Care Worker Wage Parity Act ("Wage Parity Act"), N.Y. Pub. Health Law § 3614-c, and state contractual obligations, Defendants were required to certify and did certify that it paid Plaintiffs wages and/or wage supplements as specified by the Act.

137. The agreements to pay Plaintiffs as required by the Wage Parity Act were made for the benefit of Plaintiffs.

138. By failing to pay Plaintiffs for each hour worked, Defendant Wang breached her obligation to pay Plaintiffs all wages they were due as required by the Wage Parity Act and cause injury to Plaintiffs.

139. Plaintiffs, as third-party beneficiaries of Defendant's contracts to pay wages as required by the Wage Parity Act, are entitled to relief for this breach of contractual obligation plus interest.

21

## SEVENTH CAUSE OF ACTION
### N.Y. Debtor and Creditor Law § 273

140. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

141. Defendant Wang violated N.Y. Debtor and Creditor Law § 273 by transferring the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property without fair consideration and with intent to hinder, delay or defraud the Plaintiffs and other creditors of Defendant Wang.

142. The Plaintiffs were creditors of Defendant Wang at the time she transferred the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property.

## EIGHTH CAUSE OF ACTION
### N.Y. Debtor and Creditor Law § 274

143. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

144. Defendant Wang violated N.Y. Debtor and Creditor Law § 274 by transferring the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property without receiving a reasonably equivalent value in exchange for the transfers, and she was insolvent at the time of the transfers or became insolvent as a result of the transfers.

145. The Plaintiffs were creditors of Defendant Wang at the time she transferred the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that a judgment be granted as follows:

(a) Declaring Defendant Wang's conduct complained of herein to be in violation of Plaintiffs' rights under the NYLL, the Wage Parity Act, the NY Debtor and Creditor Law, and New York common law;

22

(b) Awarding Plaintiffs unpaid minimum wages and overtime wages due under the NYLL, and New York common law;

(c) Awarding Plaintiffs spread of hours pay under the NYLL;

(d) Awarding Plaintiffs damages due to notice of pay rate violations under the NYLL;

(e) Awarding Plaintiffs damages due to wage statement violations under the NYLL;

(f) Awarding Plaintiffs liquidated damages;

(g) Awarding Plaintiffs pre-judgment and post-judgment interest;

(h) Awarding Plaintiffs damages for violations of the N.Y. Debtor and Creditor Law, and in the alternative, voiding the property transfers complained of herein;

(i) Awarding Plaintiffs an attachment of the Defendants' properties, and enjoining the transfer of such properties;

(j) Awarding Plaintiffs the costs associated with this action, together with reasonable attorneys' fees, pursuant to and including but not limited to N.Y. Labor Law §§ 198 and 663, and N.Y. Debtor and Creditor Law § 276-a ; and

(k) Awarding such other relief as this Court deems just and proper.

Dated: April 3, 2026
New York, New York

NATIONAL CETNER FOR LAW AND
ECONOMIC JUSTICE

*/s/ Carmela Huang*
Carmela Huang
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org

GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
260 Fair Street
Kingston, NY 12401
(845) 255-9370

23

Case 1:24-cv-08740-AMLTS Document 21-4 Filed 05/11/26 Page 95 of 108

kyau@getmansweeney.com

URBAN JUSTICE CENTER
David A. Colodny
40 Rector Street, 9th Floor
New York, NY 10006
(646) 677-8644
dcolodny@urbanjustice.org

24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------X
HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, and BI
Y. ZHENG,

                           Plaintiffs,            Index No.   **709913/2026**

    v.                                 **NOTICE OF PENDENCY**

BARBARA WANG, 40 ROAD T7E LLC, AND    **Property: Block 5066, Lot 1749**
QUEENS 11N LLC,

                          Defendants,

-------------------------------------------------------------------X

    **NOTICE IS HEREBY GIVEN** that a proceeding has been commenced and is now pending in this court upon the Summons and Complaint of the above-named plaintiffs, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, and BI Y. ZHENG, against the above-named defendants, BARBARA WANG, 40 ROAD T7E LLC, AND QUEENS 11N LLC, for a judgment, *inter alia*, setting aside the conveyance made by Barbara Wang to 40 Road T7E LLC of certain real property located at 131-05 40th Road, Unit 10T, Flushing, NY 11354, Block 5066, Lot 1749 on the Land Map of the County of Queens (the "Property"), and for such other and further relief as is described in the said complaint or as may be just and proper.

    TAKE NOTICE that the premises affected by this action are situated entirely within the County of Queens and are contained in Block 5066, Lot 1749 on the Land Map of the County of Queens, hereby designated pursuant to CPLR 6511 as being the block which is affected by the Notice of Pendency of this action, and this property is bounded and described as set forth in Schedule A. The premises is also known as and located at 131-05 40th Road, Unit 10T, Flushing, NY 11354.

    The Clerk of the Court is hereby directed to index this Notice against the above-described property and the above-named defendants and each of them.

Dated: New York, New York
April 6, 2026

Respectfully submitted,

URBAN JUSTICE CENTER

_____*s/ David A. Colodny*_____
By: David A. Colodny
40 Rector Street, 9th Floor
New York, NY 10006
(646) 677-8644
dcolodny@urbanjustice.org

Carmela Huang
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org

Karen Kithan Yau
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com

*Attorneys for Plaintiff*

2

## SCHEDULE A - NOTICE OF PENDENCY - BLOCK 5066, LOT 1749

### <u>SCHEDULE A</u>

### DESCRIPTION OF THE LAND

Grand One- Description of the Land (5066. Grand One)

ALL that certain plot. piece or parcel of land. situate. lying and being in the Borough and County of Queens. City and State of New York. bounded and described as follows:

The following parcel begins at a plane elevation of 74.00 feet. more or less.
(Elevations refer to Queens Topographical Bureau Datum which is 2.725 feet above mean sea level at Sandy Hook. New Jersey NGVD 1929)

BEGINNING at a point distant 30.45 feet southerly and perpendicular to the southerly side of Roosevelt Avenue (120.00 feet wide). from a point on said southerly side of Roosevelt Avenue. which point is distant 721.67 feet westerly. as measured along said southerly side of Roosevelt Avenue from the point formed by the intersection of said southerly side of Roosevelt Avenue with the westerly side of College Point Boulevard (100.00 feet wide).

RUNNING THENCE southerly and perpendicular to said southerly side of Roosevelt Avenue. a distance of 183.31 feet to a point.

THENCE westerly at a right angle. a distance of 229.97 feet to a point.

THENCE northerly at a right angle. a distance of 68.88 feet to a point.

THENCE westerly at an exterior angle of 87 degrees 47 minutes 40 seconds. a distance of 38.53 feet to a point.

THENCE northerly at an interior angle of 87 degrees 47 minutes 40 seconds. a distance of 7.92 feet to a point.

THENCE westerly at a right angle. a distance of 12.79 feet to a point.

THENCE northerly at a right angle. a distance of 51.06 feet to a point.

THENCE northeasterly at an interior angle of 105 degrees 17 minutes 43 seconds. a distance of
68.21 feet to a point.

THENCE easterly at an interior angle of 164 degrees 42 minutes 17 seconds. a distance of 18.37 feet to a point.

THENCE northeasterly at an interior angle of 195 degrees 18 minutes 00 seconds. a distance of 26.64 feet to a point.

THENCE easterly at an interior angle of 163 degrees 38 minutes 16 seconds, a distance of
141.59 feet to a point.

THENCE northerly at an exterior angle of 88 degrees 56 minutes 53 seconds, a distance of 34.50 feet to a point.

THENCE easterly at an interior angle of 90 degrees 00 minutes 38 seconds, a distance of 12.37 feet to a point.

THENCE northerly at a right angle, a distance of 15.99 feet to a point.

THENCE easterly at a right angle, a distance of 13.33 feet to a point.

THENCE southerly at an interior angle of 89 degrees 59 minutes 58 seconds, a distance of 15.95

feet to a point.

THENCE easterly at a right angle, a distance of 4.14 feet to the point or place of beginning.

Said premises are known as 131-05 40th Road, Unit 10T, Flushing, NY and designated as

Block 5066 Lot 1749 as shown on the Block Map of Taxes and Assessments in the Borough of Queens.

New York City Department of Finance's Tax Map Office.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** QUEENS
-------------------------------------------------------------------x

HUI X. RUAN, ET AL.

Plaintiff/Petitioner,

- against -                                          Index No. 709913/2026

BARBARA WANG, 40 ROAD T7E LLC, AND

Defendant/Respondent.
-------------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

● **If you are represented by an attorney:**
Give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg. 2).

● **If you are not represented by an attorney:**
**You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

● serving and filing your documents electronically

● free access to view and print your e-filed documents

● limiting your number of trips to the courthouse

● paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

● visit: www.nycourts.gov/efile-unrepresented or
● contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Page 1 of 2                                              6/6/18  EFM-1

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: April 6, 2026

Karen Kithan Yau                                260 Fair Street
     Name                                          Address

Getman, Sweeney & Dunn PLLC
                                     Kingtson, NY12401

     Firm Name

                                        (845) 255-9370
                                           Phone

                                     kyau@getmansweeney.com
                                          E-Mail

To:   40 ROAD T7E LLC

      126 Elmwood Drive

      Dix Hills, NY 11746

# Exhibit B

**SUPREME COURT OF THE STATE OF NEW YORK**
**QUEENS COUNTY**

|  |  |
|---|---|
| HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, and BI Y. ZHENG, | |
| **Plaintiffs,** | **AMENDED COMPLAINT** |
| v. | **Index No. 70993/2026** |
| BARBARA WANG, 40 ROAD T7E LLC, QUEENS 11N LLC, BARBARA WANG, IN HER CAPACITY AS TRUSTEE FOR THE BARBARA WANG LIVING TRUST, and JIAN PENG, IN HIS CAPACITY AS TRUSTEE FOR THE BARBARA WANG LIVING TRUST, | |
| **Defendants.** | |

Plaintiffs Hui X. Ruan, Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng (collectively, "Plaintiffs"), by their attorneys, allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs are all home care aides who provided 24-hour, "live-in" services to elderly, vulnerable, and disabled Medicaid recipients while employed by GreatCare, Inc. ("GreatCare"), a licensed home-care services agency that was under the control and direction of Defendant Barbara Wang.

2. GreatCare and Defendant Wang required the Plaintiffs to work 24-hour shifts, but then only paid them for 13 hours, in violation of the New York Labor Law ("NYLL") as set forth by the Court of Appeals in *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 182 (2019).

3. On October 1, 2024, Plaintiffs, together with other home care aides who had also been employed by GreatCare, commenced an action, *Li, et al. v. GreatCare, Inc., et al.*, No. 24-cv-7401 (LTS) (KHP), in the United States District Court for the Southern District of New York (the "Federal Action"). The Plaintiffs' complaint in the Federal Action alleges violations of the Fair Labor Standards Act ("FLSA"), NYLL, and Home Care Worker Wage Parity Act ("Wage Parity Act"), Pub. Health Law § 3614-c, arising from the Federal Action defendants' practice of paying for only 13 hours of every 24-hour shift worked. The complaint was subsequently amended on August 18, 2025.

4. The federal court complaint names three defendants, GreatCare, Inc., CenterLight Healthcare, Inc., and Senior Whole Health of New York, Inc., who are alleged to have jointly employed the aides at various time periods. The complaint did not name Barbara Wang as an individual defendant.

5. However, in January 2026, facts that had not been previously disclosed revealed that Barbara Wang had near-total control over all of GreatCare's operations, including those decisions affecting the terms and conditions of the aides' employment.

6. Although the aides in the federal court action did not become aware of Barbara Wang's role at GreatCare until January 2026, Barbara Wang was clearly aware of the risk that she might be found personally liable for the aides' claims.

7. Therefore, in an attempt to render herself judgment-proof, exactly one month after the Federal Court complaint was served on GreatCare, Defendant Wang and Defendant Jian Peng transferred their ownership of a residential property in Dix Hills, NY to Barbara Wang Living Trust, a trust for which Barbara Wang and Jian Peng were the trustees. No consideration

2

was provided by the trust to Defendants Wang and Peng even though the property had a fair market value of approximately $2 million.

8. Then in the summer and fall of 2025, Defendant Wang transferred her ownership of three residential properties located in Flushing, NY to limited-liability companies for which she was the Managing Member at the time of the transfers and which were each registered to her home address in Dix Hills, NY.

9. Although the three properties have a collective value of at least $2.3 million, Defendant Wang transferred the three properties for $0.

10. Since then, one of the Queens properties has been listed for sale with an asking price of $1.3 million.

11. Plaintiffs therefore commence this action to hold Defendant Wang individually liable as an employer under the NYLL for Plaintiffs' unpaid wages, overtime, spread of hours pay, and Wage Parity Act damages. Plaintiffs also assert claims under the N.Y. Debtor and Creditor Law against Defendant Wang as the transferor, and against Defendants Wang and Peng as trustees for the Barbara Wang Living Trust, and against the two Limited Liability Companies that received the three Queens properties: Queens 11N LLC and 40 Road T7E LLC.

**JURISDICTION AND VENUE**

12. The Court has subject matter jurisdiction over the causes of action set forth in this Verified Complaint.

13. Plaintiffs bring causes of action based solely on and arising under New York law, including the NYLL, the Wage Parity Act, the N.Y. Debtor and Creditor Law, and common law principles of contract and unjust enrichment.

3

14. Defendant Barbara Wang is subject to personal jurisdiction because she is domiciled in the State of New York.

15. Defendant Jian Peng is subject to personal jurisdiction because he is domiciled in the State of New York.

16. Defendant 40 Road T7E LLC is a Limited Liability Company formed and existing under the laws of New York, has conducted significant business in New York, and is subject to personal jurisdiction.

17. Defendant Queens 11N LLC is a Limited Liability Company formed and existing under the laws of New York, has conducted significant business in New York, and is subject to personal jurisdiction.

18. Venue is proper pursuant to CPLR §§ 503(a) and 507 because at least one of the parties resides in Queens County, the voidable transactions giving rise to the claims in this action took place in Queens County, and the properties that are the subject of the voidable transactions are located in Queens County, NY.

## PARTIES

19. Plaintiff Hui X. Ruan is a 72-year-old woman who resides in Staten Island, New York. Ms. Ruan was employed by GreatCare and Defendant Barbara Wang from approximately March 29, 2015 until September 2, 2023 as a home care aide providing in-home personal care services.

20. Plaintiff Jian R. Xiao is a 56-year-old woman who resides in Queens, New York. Ms. Xiao was employed by GreatCare and Defendant Barbara Wang from approximately November 10, 2020 until approximately August 20, 2023.

4

21. Plaintiff Mei Z. Xiao is a 65-year-old woman who resides in New York, New York. Ms. Xiao was employed by GreatCare and Defendant Barbara Wang from approximately May 2, 2018 to approximately August 18, 2023 as a home care aide providing in-home personal care services.

22. Plaintiff Bi Y. Zheng is a 54-year-old woman who resides in New York, New York. Ms. Zheng was employed by GreatCare and Defendant Barbara Wang from approximately October 18, 2018 to approximately August 20, 2021 as a home care aide providing in-home personal care services.

23. Defendant Barbara Wang is the majority owner and operator of GreatCare, Inc., a New York corporation that specializes in providing in-home care personal care services to care recipients, also referred to as members, across the greater New York area. At all relevant times, Defendant Wang was Plaintiffs' employer.

24. Defendant Wang is also sued as a trustee and representative of the Barbara Wang Living Trust.

25. Defendant Jian Peng is a trustee and representative of the Barbara Wang Living Trust.

26. Defendant 40 Road T7E LLC is a Domestic Limited Liability Company formed and existing under the laws of New York, with a NY Department of State Service of Process address at 126 Elmwood Drive, Dix Hills, NY 11746.

27. At all relevant times, Defendant Wang was the Managing Member of 40 Road T7E LLC.

5

28. Defendant Queens 11N LLC is a Domestic Limited Liability Company formed and existing under the laws of New York, with a NY Department of State Service of Process address at 126 Elmwood Drive, Dix Hills, NY 11746.

29. At all relevant times, Defendant Wang was the Managing Member of Queens 11N LLC.

## STATEMENT OF FACTS

### *Working Conditions of Hui X. Ruan*

30. Plaintiff Hui X. Ruan was employed by GreatCare and Defendant Barbara Wang from approximately March 2015 until approximately September 2023.

31. From approximately June 2019 until approximately January 2022, Ms. Ruan provided 24-hour care services to Ms. C.[1], an elderly woman who lived in Manhattan, New York during the time that Plaintiff Ruan provided care.

32. During this period, Ms. Ruan worked two consecutive 24-hour shifts per week.

33. Ms. C. suffered from dementia and experienced hallucinations and delusions. Her formal care plan required that she receive supervision at all times to protect her health and safety. Ms. C. was unable to move and ambulate independently. Ms. C. also required total assistance with all activities of daily living, including eating and toileting.

34. Ms. C. lived in a studio apartment, and Ms. Ruan was provided with only a sofa on which to sleep.

---

[1] The full names of the people that the Plaintiffs cared for are not used here due to the need to describe some of their health conditions.

6

35. While providing 24-hour care services to Ms. C., Ms. Ruan did not receive 8 hours of sleep per 24-hour shift and Ms. Ruan did not receive five continuous, uninterrupted hours of sleep per 24-hour shift.

36. While providing 24-hour care services to Ms. C., Ms. Ruan did not receive three full hours of completely duty-free meal breaks.

37. Though all 24-hours of Ms. Ruan's shifts were compensable, while providing care services to Ms. C., Ms. Ruan was not paid for more than 13 hours when she worked a "live-in" shift; Ms. Ruan received no compensation for 11 hours of each 24-hour shift.

38. Ms. Ruan did not receive wage notices or complete and accurate pay statements while she was employed by GreatCare and Defendant Wang. As a result, Ms. Ruan was not aware of how much she was being paid, what her hourly rate of pay was, whether she was receiving overtime wages, and what allowances or deductions GreatCare and Defendant Wang were claiming.

39. As a result of GreatCare's and Defendant Wang's failures to provide Ms. Ruan with the notices and statements required by Section 195 of the NYLL, Ms. Ruan did not become aware that GreatCare and Defendant Wang were violating her rights to receive the minimum wage and overtime for all 24-hours of the shifts she worked until approximately 2022.

40. Throughout the time she was employed by GreatCare and Defendant Wang, Ms. Ruan did not receive "spread of hours" pay though she worked a spread of more than ten hours per shift.

41. Throughout the time she was employed by GreatCare and Defendant Wang to work 24-hour, "live-in" shifts, Ms. Ruan was paid less than the statutory minimum wage.

7

Case 1:24-cv-08740-AMTS-KHP Document 21-704/Fi/2605/P1/2643 Page P10 of 169123

42.   Throughout the time she was employed by GreatCare and Defendant Wang, Ms. Ruan was paid less than the total hourly compensation required by the Wage Parity Act.

### *Working Conditions of Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng*

43.   Plaintiffs Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng were employed by GreatCare and Defendant Wang to work as a care team, providing care services to Ms. Y., an elderly woman who lived in Manhattan, New York during the time that Plaintiffs provided care.

44.   Ms. Jian R. Xiao first started providing care services to Ms. Y. three consecutive 24-hour shifts per week in November 2020.

45.   Ms. Mei Z. Xiao first started providing care services to Ms. Y. three consecutive 24-hour shifts per week in May 2018. Ms. Mei Z. Xiao took an approximately one-year leave of absence from work between May 2022 to May 2023.

46.   Ms. Zheng provided care services to Ms. Y. from October 2018 to August 2021 during which time she worked three consecutive 24-hour shifts per week.

47.   Throughout the time that Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng provided services to Ms. Y., Ms. Y. required toileting assistance approximately 5 to 7 times per night. Ms. Y. also suffered pains and cramps during the night, requiring Plaintiffs to massage her or assist her with medication.

48.   A second bed was placed next to Ms. Y.'s bed for Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng to use to rest. Plaintiffs' bed and Ms. Y.'s bed were separated by just Ms. Y.'s bedside commode.

49.   While providing care services to Ms. Y., Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng did not obtain eight hours of sleep per 24-hour shift. Plaintiffs also did not obtain five hours of continuous, uninterrupted sleep per 24-hour shift.

8

50.     While providing care services to Ms. Y., Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng did not receive three hours of completely duty-free meal breaks per 24-hour shift.

51.     Twice, prior to February 2019, Ms. Mei Z. Xiao went to GreatCare's headquarters on 34th Street to report to a coordinator that she was unable to sleep at night because of Ms. Y.'s frequent toileting needs. Ms. Xiao stated her belief that the taxing nature of the work was affecting her health and requested that she be assigned to a different care recipient.

52.     GreatCare's coordinator, at the direction of Defendant Wang, refused to reassign Ms. Y. Instead, the coordinator responded, "That's what doing this work is like. That's what caring for old people is like."

53.     In February 2019, Ms. Mei Z. Xiao collapsed from cardiac arrest and received emergency bypass surgery. Ms. Mei Z. Xiao's doctor attributed her dangerously poor health to her inability to obtain sleep at night.

54.     Ms. Mei Z. Xiao took approximately one to two months off to recuperate. During this time, she again requested that she be assigned to a different care recipient. Ms. Xiao was again refused. Ms. Mei Z. Xiao was told that she should get another job if she did not want to continue providing care services to Ms. Y.

55.     Unable to endure any additional loss of income, after her period of recuperation, Ms. Mei Z. Xiao returned to work. However, in May 2022, Ms. Mei Z. Xiao suffered another cardiac incident that required a second emergency bypass surgery.

56.     After Ms. Mei Z. Xiao recuperated for approximately one year, and in or about May 2023, she returned to work for GreatCare providing care services to Ms. Y.

57.     Though all 24-hours of Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng's shifts are compensable, while providing care services to Ms. Y., they were not paid for more than 13

9

hours when they worked a "live-in" shift; Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng received no compensation for 11 hours of each 24-hour shift.

58. At the end of each 24-hour shift, Plaintiffs were required to dial-in activity codes by phone. The codes Plaintiffs dialed-in were assigned to them by GreatCare, under Defendant Wang's direction, and did not include codes for reporting night work, inadequate sleep, or inadequate meal breaks.

59. During the time that Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng were employed by GreatCare, GreatCare supervisors, under Defendant Wang's direction, often required Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng to sign or check documents that were in English and that they did not understand and for which no explanation was provided.

60. GreatCare and Defendant Wang did not inform Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng that they had a right to be paid for all hours of a 24-hour shift if they did not receive adequate sleep or meal breaks.

61. Ms. Jian R. Xiao did not receive wage notices or complete and accurate pay statements while she was employed by GreatCare and Defendant Wang. Ms. Xiao M. Zheng and Ms. Zheng did not receive wage notices or pay statements while they were employed by GreatCare and Defendant Wang. As a result, Plaintiffs were not aware of how much they were being paid, what their hourly rate of pay was, whether they were receiving overtime wages, and what allowances or deductions GreatCare and Defendant Wang were claiming.

62. As a result of GreatCare's failures to provide Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng with the notices and statements required by Section 195 of the NYLL, Plaintiffs did not become aware that GreatCare and Defendant Wang were violating their rights to receive

10

the minimum wage and overtime for all 24-hours of the shifts worked until approximately 2022 or 2023.

63. Throughout the time they were employed by GreatCare and Defendant Wang, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng never received overtime pay when they worked more than forty hours per week.

64. Throughout the time they were employed by GreatCare, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng never received "spread of hours" pay when they worked a spread of more than ten hours per shift.

65. Throughout the time they were employed by GreatCare, Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng were paid less than the statutory minimum wage and less than the total hourly compensation required by the Wage Parity Act.

66. Ms. Jian R. Xiao, Ms. Mei Z. Xiao, and Ms. Zheng each filed complaints with the New York State Department of Labor ("NYSDOL") regarding GreatCare's NYLL violations: Ms. Jian R. Xiao and Ms. Mei Z. Xiao filed their complaints on or about May 18, 2023; Ms. Zheng filed her complaint on or about November 21, 2022.

67. In July 2023, a person believed to be Defendant Wang called Ms. Jian R. Xiao. Defendant Wang said to Ms. Jian R. Xiao, "Do we owe you money? You are sleeping and you want to get paid? You're fired! Don't come back to work tomorrow!"

68. That same day, a person believed to be Defendant Wang called Ms. Y.'s daughter and told the daughter that she was giving Ms. Y. one month to switch to a different home care services provider.

11

69.    As a result, Ms. Jian R. Xiao and Ms. Mei Z. Xiao continued to work their usual weekly schedules for GreatCare until August 2023, when Ms. Y. moved to non-defendant Queens Homecare Agency.

**_Operational Control of Defendant Barbara Wang_**

70.    Throughout the period of Plaintiffs' employment, Defendant Barbara Wang was the Vice-President of GreatCare and controlled and oversaw every aspect of its operation.

71.    Throughout the period of Plaintiffs' employment, Defendant Wang had ultimate decision-making authority and control over all aspects of GreatCare's operations and business. During that period, no other GreatCare employee had more control over GreatCare's operations and business than Defendant Wang.

72.    In addition to home care aides, GreatCare also employs office staff, including coordinators and human resources staff. Throughout the period of Plaintiffs' employment, Defendant Wang directly supervised all office staff.

73.    Most of Plaintiffs' interactions with GreatCare were with GreatCare's coordinators, who assigned Plaintiffs to specific care recipients. However, Plaintiffs were also directed to call the office whenever issues arose with their care recipients during business hours. Plaintiffs would receive direction on how to resolve those issues from any member of the office staff under the direct supervision of Defendant Wang.

74.    Whenever issues arose with their care recipients outside of business hours, Plaintiffs were directed to call Defendant Wang's personal cell phone. Plaintiffs would receive direction on how to resolve those issues directly by Defendant Wang.

12

75. Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs being paid for only 13 hours per every 24-hour shift worked at rates that fell below the statutory minimum wage.

76. Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs being deprived of their overtime wages, spread of hours pay, and Wage Parity Act benefits.

77. Defendant Wang was responsible for the decisions at GreatCare that resulted in Plaintiffs receiving no, or inaccurate, notice of wage statements and paystubs.

78. Additionally, Defendant Wang was the sole person at GreatCare responsible for negotiating rates of reimbursement with the managed long-term care companies GreatCare contracted with, which had direct influence over Plaintiffs' rates of pay and wage benefits.

79. Defendant Wang had the power to hire employees of GreatCare and exercised that authority.

80. Defendant Wang had the power to determine compensation for Plaintiffs and exercised that authority.

81. Defendant Wang had the power to maintain Plaintiffs' employment records and exercised that authority.

82. Defendant Wang had the power to supervise Plaintiffs and exercised that authority.

83. Defendant Wang was the sole person at GreatCare who had the power to fire GreatCare's employees, including GreatCare's home care aides.

***Defendant Barbara Wang's Transfer of Assets***

84. On October 1, 2024, Plaintiffs, along with 10 other home care aides formerly employed by GreatCare, initiated the Federal Action. In their complaint, the federal court

13

plaintiffs alleged that they were jointly employed by GreatCare and managed long-term care companies ("MLTCs") under contract with the New York State Department of Health to provide long-term care services to the federal court plaintiffs' care recipients.

85.     The Federal Action Complaint was served on GreatCare on or about October 21, 2024. Upon information and belief, Barbara Wang became aware of the Federal Action at that time or shortly thereafter.

86.     The federal court plaintiffs did not name Barbara Wang as a defendant in the Complaint because they did not have sufficient information at that time to allege that Barbara Wang was an "employer" within the meaning of the NYLL or Fair Labor Standards Act.

***First Voidable Transaction: Transfer of Property Located at 126 Elmwood Drive, Dix Hills, NY 11746 (Suffolk County District 0400; Section 243.00, Block 05.00, Lot 067.000)***

87.     On November 21, 2024, Defendants Wang and Peng executed an indenture between themselves as transferors, and the Barbara Wang Living Trust, as transferee (the "126 Elmwood Drive Indenture"). The 126 Elmwood Drive Indenture stated that Defendants Wang and Peng transferred their ownership of the property located at 126 Elmwood Drive, Dix Hills, NY 11746 (Suffolk County District 0400; Section 243.00, Block 05.00, Lot 067.000) (the "126 Elmwood Drive Property") to the Barbara Wang Living Trust.

88.     The 126 Elmwood Drive Indenture further states that Defendants Wang and Peng were trustees of the Barbara Wang Living Trust, and that the Barbara Wang Living Trust had an address of 126 Elmwood Drive, Dix Hills, NY 11746.

89.     The 126 Elmwood Drive Indenture was recorded with the Clerk of Suffolk County on or about December 12, 2024. The documents recorded with the Clerk of Suffolk County state that the consideration provided by the transferee for the 126 Elmwood Drive Property was $0.

14

Case 1-24-cv-09401-ALTS-KHP Document 21-4 Filed 05/01/26 Page 117 of 169

*The Limited Liability Companies*

90.    In the Summer and Fall of 2025, Defendant Wang, through her control of GreatCare, took a series of actions to delay disclosing information in the Federal Action that may have led to her being named as a Defendant. She used those delays to transfer three additional properties.

91.    Due to the vertical nature of the joint employment relationship between GreatCare and the MLTCs, many of the federal court plaintiffs did not know the identity of their MLTC-joint-employer. Therefore, GreatCare was ordered by the federal magistrate judge overseeing the federal court action to provide the federal court plaintiffs information sufficient to identify their putative joint employer. However, GreatCare refused to comply with the federal magistrate judge's order, and the federal court plaintiffs were forced to employ third-party subpoenas to identify the specific MLTCs implicated by their federal court complaint.

92.    On July 24, 2025, Magistrate Judge Katharine Parker ordered the federal court plaintiffs to amend their complaint to join the newly identified MLTC employers by August 25, 2025.

93.    On August 18, 2025, the federal court plaintiffs amended their complaint, adding a previously unnamed MLTC defendant to the action.

94.    On August 29, 2025, the federal court plaintiffs noticed the deposition of Barbara Wang (who was designated as GreatCare's corporate representative) for October 22, 2025. However, GreatCare's counsel was completely unresponsive, despite multiple attempts by the federal court plaintiffs to reach counsel and also seek the intervention of Magistrate Judge Parker. It was not until November 19, 2025 that counsel for GreatCare proposed that Barbara Wang's depositions be scheduled for January 23 and January 28, 2026. Barbara Wang's first deposition eventually took place on January 7, 2026.

15

95.     Defendant Wang used these discovery delays as the opportunity to fraudulently convey three real properties located in Flushing, NY. First, Defendant Wang created two New York Limited Liability Companies, and then she subsequently transferred to those LLC's the three properties that she owned either as sole owner or joint owner. All of the transfers were for zero dollars.

96.     Upon information and belief, on or about July 30, 2025, Defendant Wang filed or caused to be filed documents with the New York Department of State to create the Limited Liability Company 40 Road T7E LLC. According to the New York Department of State, 40 Road T7E LLC's creation was effective on that date.

97.     The address on record with the New York Department of State for service of process on the Secretary of State as agent for 40 Road T7E LLC is 126 Elmwood Drive, Dix Hills, NY 11746. Upon information and belief, Defendant Wang owns the real property located at 126 Elmwood Drive, Dix Hills, NY 11746.

98.     Defendant Wang has at all relevant times been the Managing Member of 40 Road T7E LLC.

99.     Upon information and belief, on or about July 30, 2025, Defendant Wang filed or caused to be filed documents with the New York Department of State to create Queens 11N LLC. According to the New York Department of State, Queens 11N LLC's creation was effective on that date.

100.    The address on record with the New York Department of State for service of process on the Secretary of State as agent for Queens 11N LLC is 126 Elmwood Drive, Dix Hills, NY 11746. Upon information and belief, Defendant Wang owns the real property located at 126 Elmwood Drive, Dix Hills, NY 11746.

16

101. Defendant Wang has at all relevant times been the Managing Member of Queens 11N LLC.

**Second Voidable Transaction: 131-01 40th Road, Unit 11N, Flushing, NY 11354 (Block 5066, Lot 3061)**

102. By deed dated February 13, 2018, and duly recorded and filed with the City Register of the City of New York on or about February 27, 2018, Defendant Wang purchased a condominium located at 131-01 40th Road, Unit 11N, Flushing, NY 11354. The property is also recorded as Block 5066, Lot 3061 and referred to herein as "The 131-01 40th Road Property." According to the deed, Defendants Wang and Jian Peng purchased the 131-01 40th Road Property as Tenants by the Entirety.

103. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendants Wang and Jian Peng was $1,286,292.

104. By deed dated August 19, 2025, and duly recorded and filed with the City Register of the City of New York on or about November 5, 2025, identified as Doc. ID No. 2025110500309001, Defendants Wang and Peng transferred full ownership of the 131-01 40th Road Property to Queens 11N LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Queens 11N LLC was "$0."

105. At the time that the 131-01 40th Road Property was transferred to Queens 11N LLC it had significant monetary value. In March, 2026, the property was listed for sale at a price of $1,333,000.

106. On the document recorded with the City Register of the City of New York, Doc. ID No. 2025110500309001, both the address listed for the sellers (Defendants Wang and Peng) and the buyer (Queens 11N LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

17

107. On the deed recorded with the City Register of the City of New York, Defendant Barbara Wang signed as both a seller and as the Managing Member of Queens 11N LLC.

108. Notably, the deed is dated August 19, 2025, which was six days before the federal court deadline for Plaintiffs to file their amended complaint.

**Third Voidable Transaction: 131-05 40th Road, Unit 10T, Flushing, NY 11354 (Block 5066, Lot 1749)**

*Third Voidable Transaction: 131-05 40th Road, Unit 10T, Flushing, NY 11354 (Block 5066, Lot 1749)*

109. By deed dated December 21, 2016, and duly recorded and filed with the City Register of the City of New York on or about January 4, 2017, Defendant Wang purchased a condominium located at 131-05 40th Road, Unit 10T, Flushing, NY 11354. The property is also recorded as Block 5066, Lot 1749 and referred to herein as "The 131-05 40th Road Property."

110. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant Wang was $497,608.

111. By deed dated August 19, 2025, and duly recorded and filed with the City Register of the City of New York on or about November 5, 2025, identified as Doc. ID No. 2025110500294001, Defendant Wang transferred full ownership of the 131-05 40th Road Property to 40 Road T7E LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant 40 Road T7E LLC was "$0."

112. At the time that the 131-05 40th Road Property was transferred to 40 Road T7E LLC it had significant monetary value. In March, 2026, the property was valued by Zillow at $591,600.

113. On the document recorded with the City Register of the City of New York, Doc. ID No. 2025110500294001, both the address listed for the seller (Defendant Wang) and the buyer (40 Road T7E LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

18

114. On the deed recorded with the City Register of the City of New York, Defendant Barbara Wang signed as both the seller and as the Managing Member of 40 Road T7E LLC.

115. Notably, the deed is dated August 19, 2025, which was six days before the federal court deadline for Plaintiffs to file their amended complaint.

***Fourth Voidable Transaction: 39-16 Prince Street, Unit 7E, Flushing, NY 11354 (Block 4973, Lot 1064)***

116. By deed dated December 9, 2014, and duly recorded and filed with the City Register of the City of New York on or about December 16, 2014, Defendants Wang and Jian Peng purchased a condominium located at 39-16 Prince Street, Unit 7E, Flushing, NY 11354. The property is also recorded as Block 4973, Lot 1064 and referred to herein as "The 39-16 Prince Street Property." The deed states that the buyers were: "Jian Peng & Barbara Wang, Husband & Wife."

117. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendants Wang and Peng was $511,161.

118. By deed dated November 25, 2025, and duly recorded and filed with the City Register of the City of New York on or about December 3, 2025, identified as Doc. ID No. 2025120300099001, Defendants Wang and Peng transferred full ownership of the 39-16 Prince Street Property to 40 Road T7E LLC. According to the Real Property Transfer Report recorded with the City of New York, the full sale price paid by Defendant 40 Road T7E LLC was "$0."

119. At the time that the 39-16 Prince Street Property was transferred to 40 Road T7E LLC it had significant monetary value. In March, 2026, the property was valued by Zillow at $499,300.

19

120. On the document recorded with the City Register of the City of New York, Doc. ID No. 2025120300099001, both the address listed for the sellers (Defendants Wang and Peng) and the buyer (40 Road T7E LLC) are listed as 126 Elmwood Drive, Dix Hills, NY 11746.

121. On the Customer Registration Form for Sewer and Water Billing for the 39-16 Prince Street Property, Defendant Wang signed as "Member" of 40 Road T7E LLC.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### For Failure to Pay Minimum Wage Under the New York Labor Law

122. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

123. At all times relevant to this action, Plaintiffs were employees within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

124. NYLL requires that employers pay their employees specified minimum hourly wages. NYLL § 652.

125. Defendant Wang failed to pay Plaintiffs at the applicable legal minimum hourly wage, in violation of NYLL § 652 and supporting regulations and orders of the NYSDOL.

126. Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid minimum wages and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

### SECOND CAUSE OF ACTION
### For Failure to Pay Overtime Wages Under the New York Labor Law

127. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

20

128. At all times relevant to this action, Plaintiffs were employed by Defendant Wang within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

129. Since January 1, 2015, home care aides, including those providing personal care services, employed by third-party agencies or employers must be paid overtime compensation at an hourly rate of 150% the minimum wage or regular rate of pay, whichever is greater, for all hours worked in excess of 40 per week. NYLL § 652; 12 N.Y.C.R.R. §§ 142-2.2, 142-3.2; 29 C.F.R. § 551.109(a).

130. Defendant Wang failed to pay Plaintiffs overtime wages at an hourly rate of 150% of at least the minimum wage for each hour worked in excess of 40 per week, in violation of NYLL § 652 and 12 N.Y.C.R.R. §§ 142-2.2 and 142-3.2.

131. Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid overtime wages and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

## THIRD CAUSE OF ACTION
### For Failure to Pay Spread of Hours Under the New York Labor Law

132. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

133. Plaintiffs were employed by Defendant Wang within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

134. Employees are entitled to receive one hour's pay at the basic minimum wage rate for any day in which the spread of hours exceeds 10 hours. 12 N.Y.C.R.R. §§ 142-2.4, 142-3.4.

135. Defendant Wang failed to pay Plaintiffs spread of hours pay each day Plaintiffs worked a spread in excess of 10 hours.

21

136. Due to Defendant Wang's NYLL violations, Plaintiffs are entitled to recover from Defendant Plaintiffs' unpaid spread of hours pay and liquidated damages, as well as reasonable attorneys' fees, costs associated with this action, and interest.

## FOURTH CAUSE OF ACTION
### For Failure to Comply with Notice Requirements (Plaintiff Jian R. Xiao)

137. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

138. Defendant Wang failed to comply with NYLL § 195, which sets out notice and recordkeeping requirements governing employers in the State of New York, and 12 N.Y.C.R.R. §§ 142-2.6 and 142-3.6 governing the records that Defendant Wang is required to maintain and preserve.

139. Defendant Wang failed to provide Plaintiff Jian R. Xiao with wages notices in English and/or their primary language setting forth Plaintiff's rate of pay, the basis for determining that rate, and any allowances claimed against Defendant Wang's minimum wage obligations, in violation of NYLL § 195(1)(a).

140. Due to these violations, Plaintiff Jian R. Xiao is entitled to recover from Defendant Wang $50 for each workday that the violations occurred, up to a total of $5,000, together with costs and reasonable attorneys' fees, and any other relief that this Court deems necessary and appropriate. NYLL § 198(1-b).

## FIFTH CAUSE OF ACTION
### For Failure to Comply with Wage Statement Requirements

141. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

22

142. Defendant Wang failed to provide Plaintiffs with detailed and accurate wage statements with each payment of wages, in violation of NYLL § 195(3).

143. Due to these violations, Plaintiffs are entitled to recover from Defendant Wang $250 for each workday that the violations occurred, up to a total of $5,000 per Plaintiffs, together with costs and reasonable attorneys' fees, and any other relief that this Court deems necessary and appropriate. NYLL § 198(1-d).

**SIXTH CAUSE OF ACTION**
**For Breach of Contract and Unjust Enrichment for Failure to Pay Wages as Required by**
**the New York Home Care Worker**
**Wage Parity Act**

144. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

145. Pursuant to the New York Home Care Worker Wage Parity Act ("Wage Parity Act"), N.Y. Pub. Health Law § 3614-c, and state contractual obligations, Defendant Wang was required to certify and did certify that GreatCare, at her direction, paid Plaintiffs wages and/or wage supplements as specified by the Act.

146. The agreements to pay Plaintiffs as required by the Wage Parity Act were made for the benefit of Plaintiffs.

147. By failing to pay Plaintiffs for each hour worked, Defendant Wang breached her obligation to pay Plaintiffs all wages they were due as required by the Wage Parity Act and cause injury to Plaintiffs.

148. Plaintiffs, as third-party beneficiaries of GreatCare and Defendant Wang's contracts to pay wages as required by the Wage Parity Act, are entitled to relief for this breach of contractual obligation plus interest.

23

## SEVENTH CAUSE OF ACTION
### N.Y. Debtor and Creditor Law § 273

149.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

150.   Defendant Wang violated N.Y. Debtor and Creditor Law § 273 by transferring the 126 Elmwood Drive Property, 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property without fair consideration and with intent to hinder, delay or defraud the Plaintiffs and other creditors of Defendant Wang.

151.   The Plaintiffs were creditors of Defendant Wang at the time she transferred the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property.

152.   Defendants Wang and Peng, in their capacity as trustees of the Barbara Wang Living Trust, and Defendants Queens 11N LLC and 40 Road T7E LLC, are liable to Plaintiffs as transferees in the voidable transactions. Defendant Wang is also liable to Plaintiffs as the transferor.

## EIGHTH CAUSE OF ACTION
### N.Y. Debtor and Creditor Law § 274

153.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

154.    Defendant Wang violated N.Y. Debtor and Creditor Law § 274 by transferring the 126 Elmwood Drive Property, 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property without receiving a reasonably equivalent value in exchange for the transfers, and she was insolvent at the time of the transfers or became insolvent as a result of the transfers.

24

155. The Plaintiffs were creditors of Defendant Wang at the time she transferred the 131-05 40th Road Property, 131-01 40th Road Property and 39-16 Prince Street Property.

156. Defendants Wang and Peng, in their capacity as trustees of the Barbara Wang Living Trust, and Defendants Queens 11N LLC and 40 Road T7E LLC, are liable to Plaintiffs as transferees in the voidable transactions. Defendant Wang is also liable to Plaintiffs as the transferor.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that a judgment be granted as follows:

(a) Declaring Defendant Wang's conduct complained of herein to be in violation of Plaintiffs' rights under the NYLL, the Wage Parity Act, the NY Debtor and Creditor Law, and New York common law;

(b) Awarding Plaintiffs unpaid minimum wages and overtime wages due under the NYLL, and New York common law;

(c) Awarding Plaintiffs spread of hours pay under the NYLL;

(d) Awarding Plaintiffs damages due to notice of pay rate violations under the NYLL;

(e) Awarding Plaintiffs damages due to wage statement violations under the NYLL;

(f) Awarding Plaintiffs liquidated damages;

(g) Awarding Plaintiffs pre-judgment and post-judgment interest;

(h) Awarding Plaintiffs damages for violations of the N.Y. Debtor and Creditor Law, and in the alternative, voiding the property transfers complained of herein;

(i) Awarding Plaintiffs an attachment of the Defendants' properties, and enjoining the transfer of such properties;

25

(j) Awarding Plaintiffs the costs associated with this action, together with reasonable attorneys' fees, pursuant to and including but not limited to N.Y. Labor Law §§ 198 and 663, and N.Y. Debtor and Creditor Law § 276-a; and

(k) Awarding such other relief as this Court deems just and proper.

Dated: April 8, 2026
New York, New York

NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE

/s/ Carmela Huang
Carmela Huang
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 393-3048
huang@nclej.org

GETMAN, SWEENEY & DUNN, PLLC
Karen Kithan Yau
260 Fair Street
Kingston, NY 12401
(845) 255-9370
kyau@getmansweeney.com

URBAN JUSTICE CENTER
David A. Colodny
40 Rector Street, 9th Floor
New York, NY 10006
(646) 677-8644
dcolodny@urbanjustice.org

26

# EXHIBIT F

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

HEI LI, H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU ZHENG, XIU X. ZHU,

PLAINTIFFS,

-against-          Case No.:
                  24-CV-7401
                  (LTS)(KHP)

GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., and SENIOR WHOLE HEALTH OF NEW YORK, INC.,

DEFENDANTS.

-------------------------------------------X

DATE:  April 30, 2026
TIME:  10:12 a.m.

Page 2

DEPOSITION of the Plaintiff, LI CHEN, taken by a Defendant, pursuant to a Court Order and to the Federal Rules of Civil Procedure, held at the offices of Veritext Reporting, Inc., 7 Times Square Tower, 16th Floor, New York, New York 10036, before PAUL LEE, a Notary Public of the State of New York.

Page 4

F E D E R A L   S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the counsel for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath, with the same effect as if signed before a Judge of the Court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness, 30 days after service of the original & 1 copy of same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to form, are reserved to the time of trial.

*    *    *    *

Page 3

A P P E A R A N C E S:

NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
Attorneys for Plaintiffs
50 Broadway, 15th Floor
New York, New York 10004-3821
BY:  CARMELA HUANG, ESQ.

LAW OFFICE OF JOSE A. MUNIZ
Attorney for Defendant
GREATCARE, INC.
40-18 80th Street
Elmhurst, New York 11373
(NOT PRESENT)

BRENLLA, LLC
Attorney for Defendant
CENTERLIGHT HEALTHCARE, INC.
250 Park Avenue, 7th Floor
New York, New York 19177
BY:  GEORGE F. BRENLLA, ESQ.

STRADLEY, RONON, STEVENS & YOUNG, LLP
Attorneys for Defendant
SENIOR WHOLE HEALTH OF NEW YORK, INC.
1037 Raymond Boulevard, Suite 920
Newark, New Jersey 07102
(NOT PRESENT)

ALSO PRESENT:
Arthur Kwok
Mandarin Interpreter
Elite Language Services

*    *    *

Page 5

L. CHEN

A R T H U R   K W O K, a Mandarin interpreter, solemnly swore to translate the following questions from English to Mandarin and answers from Mandarin to English:

L I   C H E N, called as a witness, having been first duly sworn, through the Interpreter, by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY
MR. BRENLLA:

Q.    Please state your name for the record.

A.    Li Chen.

Q.    What is your address?

A.    404 East 105th Street, Apartment 2A, New York, New York 10029.

Q.    Good morning, Ms. Chen. My name is George Brenlla, and I'm the attorney for Centerlight Healthcare.

2 (Pages 2 - 5)

Page 6

L. CHEN

A. Yes. How are you, attorney from (in English) Centerlight?

Q. Okay. Have you ever been in a deposition before?

A. Well, when I became naturalized, I had to swear at that time.

Q. Okay. But have you ever filed a lawsuit against any other entity?

A. Yes.

Q. Okay. Whom did you file a lawsuit against?

A. I did make a lawsuit against the home health aide company.

Q. Is that the current lawsuit that we are here for?

A. Yes.

Q. Are there any other lawsuits other than this current one?

A. Nothing else other than also lawsuits against home health aide companies.

Q. Okay. How many lawsuits

Page 7

L. CHEN

have you filed against home health aide companies?

A. That would be (in English) Centerlight, Greatcare, (in Mandarin) and (in English) Amazing.

(In Mandarin) For (in English) Amazing (in Mandarin) it was a collective lawsuit, and they didn't notify me individually.

MS. HUANG: Let's just take a break.

(Wherein, an off-the-record discussion was held.)

Q. Ms. Chen, did you file a Complaint or a lawsuit against an entity called Family Home Care?

A. Yes.

Q. When was that?

A. About possibly the end of '21, and maybe the beginning of '22. I don't remember exactly.

Q. And did you work for Family Home Care?

A. Yes. For five-plus years.

Page 8

L. CHEN

Q. Okay. In what years did you work for Family Home Care?

A. 2012 to 2017.

Q. From 2012 to 2017.

A. It was until March.

Q. And that was until 2017; is that correct?

A. Yes.

Q. So you worked there for approximately five years; is that correct?

A. Yes, yes.

Q. Okay. And where is Family Home Care located?

A. Well, our training was at 337 (in English) Broadway.

(In Mandarin) The headquarters is located possibly at 14th Street.

Q. Do you know the address there?

A. Not right now. I have to go back and check.

Q. Okay. Did you receive any money as a result of your Complaint against Family Home Care?

Page 9

L. CHEN

A. Not yet.

Q. Okay. And what did you do for Family Home Care?

A. All 24-hours work.

Q. Okay. Is it fair to say that you were a home health aide employed by Family Home Care?

A. Yes.

Q. And how many days per week did you work for Family Home Care?

A. Three days as well as four days, but mostly four days.

Q. And that would have been four days per week; is that correct?

A. Mostly four days, occasionally three days.

Q. And would that have been during your entire employment with Family Home Care?

A. Yes. Until I got sick in 2017.

Why are you asking me about (in English) Family Home Care? (In Mandarin) You're not the one that is eventually paid out for

3 (Pages 6 - 9)

Page 10

L. CHEN

(in English) Family Home Care.

Q. Ms. Chen, I'm going to go over some preliminary instructions about the deposition.

A. Okay.

Q. Very simply: I ask questions, and you answer questions.

A. Okay, okay.

Q. And you've done this before, but you cannot confer with your attorney if there is a question pending.

A. Okay. (In English) Sorry.

Q. If you don't understand a question, let me know, and I will try to rephrase it. Or if you don't understand Mr. Kwok's interpretation of a question, let me know, and he will rephrase it.

A. Okay. I remember now.

Q. Okay. Are you under the influence of any medications?

A. No.

Q. Okay. Is there anything that would impede your ability to

Page 11

L. CHEN

testify truthfully?

A. Can you repeat that?

MR. BRENLLA: Please read it back.

(Whereupon, the referred to question was read by the Reporter.)

A. No.

Q. Okay. And do you realize that your testimony today is under oath, and you have to tell the truth?

A. Correct.

Q. Okay. When you worked for Family Home Care, who was your supervisor?

A. Well, there were several counselors, counselors who gave me jobs. I don't remember the names.

Q. Okay. And how would they give you jobs?

A. (In English) Telephone calls.

Q. And what would they say?

A. So during the home health aide training, taking the test for

Page 12

L. CHEN

the certificate they said: Take the test, and then wait for work; and eventually they assigned me work in (in English) Flushing.

Q. Was that where you worked approximately four days a week, in Flushing?

A. Initially, it was three days in (in English) Flushing.

Q. When did it change to four days?

A. So the patients had illnesses that can't sleep at night, so that had to stop.

And then they switched my job to Chinatown, and I started working four days. And they also assigned another three-hour assignment. That I did for eight hours.

Q. Okay. Do you recall what year that was?

A. 2013.

Q. So in 2013 you went from three days a week to four days; is that correct?

Page 13

L. CHEN

A. Yes.

Q. Okay. And then you worked four days until 2017, until you left; is that correct?

A. No, no. There were changes of patients as well in between.

Q. Okay. I guess I'm trying to figure out: When did you go from three days a week to four days a week?

A. It was the end of 2012 or the middle of 2012, and then 2013 I switched to the Chinatown patient.

Q. And the Chinatown patient was for four days a week; is that correct?

A. Yes. And I worked there for several months, and then switched to (in English) Amherst (in Mandarin) location. And that was four days a week work as well.

MS. HUANG: I made a mistake with this witness. It's not Family Home Care. It's Prestige.

4 (Pages 10 - 13)

Page 14

L. CHEN

MR. BRENLLA: Okay.

Q. Ms. Chen, your attorney clarified an issue that I was asking you about Family Home Care, and I was informed that it's perhaps a company called Prestige. So when I asked you about Family Home Care, were you referring to Family Home Care, or was it a company called Prestige?

A. What do you mean?

Q. Your attorney informed me and Mr. Kwok just now that there was a translation issue that the word used was not for Family Home Care, but for Prestige.

A. I don't know the difference because I only called. I don't know the English difference. I only know the name in Chinese. I really don't know.

Q. Okay. Fair enough.

MR. BRENLLA: Just for the record, I had requested that

Page 15

L. CHEN

the Plaintiff produce all Complaints within the file of the Department of Labor and all family agencies, and these Complaints were not produced. And I will follow up in writing.

Q. You said there was another lawsuit or Complaint against a company called Amazing; is that correct?

A. Actually, in terms of (in English) Amazing (in Mandarin) I did not file a lawsuit, but they actually sent me notification about compensation.

Q. Okay. And when did you work for Amazing?

A. From 2014 to 2015, a little bit over one year.

Q. So is it fair to say that you were working for either Prestige or Family Home Care, whatever the actually name is, and Amazing at the same time?

A. Yes. Approximately, yes.

(In English) Amazing

Page 16

L. CHEN

(in Mandarin) was three days and (in English) Prestige (in Mandarin) was four days.

Q. So it's your testimony that you worked for Amazing for about a year; is that correct?

A. Yes.

Q. And then it was four days for Prestige and/or Family Home Care; is that correct?

A. Yes, yes.

Q. Okay. Where is Amazing located?

A. Well, (in English) Greatcare (in Mandarin) it was Oyoung, and --

Q. No. I'm referring to Amazing.

THE INTERPRETER: Sorry. What was the original question?

Q. You worked for a company called Amazing. Who was your supervisor there?

A. Zhu, Ms. Zhu and Oyoung, Ms. Oyoung.

Q. Is Amazing also Greatcare?

Page 17

L. CHEN

A. No, no, it's not.

Q. Okay. Where is Amazing located?

A. Well, (in English) Amazing (in Mandarin) works in cooperation with (in English) Greatcare. (In Mandarin) They both send workers out.

Q. Okay. Where is Amazing located?

A. I don't know.

Q. Okay. And do you know who owns Amazing?

A. Ms. Wang, the same boss as (in English) Greatcare.

Q. Ms. Chen, is it your testimony that Ms. Wang owns a company called Amazing and also a company called Greatcare?

A. Yes, yes. As far as I know, yes.

Q. Okay. And you filed a Complaint against Amazing; is that correct?

A. Initially I did not, but I

5 (Pages 14 - 17)

Page 18

L. CHEN

got a letter I couldn't understand.

I asked someone to read it, and I find out there was compensation money.

Q. Okay. Do you have a copy of that letter?

A. Not now.

Q. Why is that?

A. Because supposedly there was a time limit, and already passed the time limit. And there was no more as far as I understand.

Q. From whom did you receive the letter?

A. From (in English) Amazing (in Mandarin) through some attorney sent it over to me.

Q. Do you recall who the attorney was?

A. I don't know.

Q. Did you receive any money as a result of that claim?

A. I did.

Q. How much was it?

Page 19

L. CHEN

A. Forty-six hundred plus, a little bit over forty-six hundred.

Q. And that was for the work you did while you were employed by Amazing; is that correct?

A. Yes, yes. So I got compensated for five and a half hours, yes.

Q. And how much money did you make per hour while working for Amazing?

A. I don't remember exactly. Either nine-something or ten-something.

Q. And you received money from your employment with Amazing as a result of the letter in the amount of $4,600; is that correct?

A. Actually, there was a lawsuit later on, and I got compensated as a result of that.

Q. Okay. So when was that lawsuit filed?

A. In 2022.

Q. Okay. So you received the letter, and then you filed the

Page 20

L. CHEN

lawsuit; is that correct?

A. So I received a phone message, and I couldn't understand. It took a long time for me to find out.

I got some help to read it, and I was told that a time limit had passed. And later on I would have to sue for it.

Q. And you did sue for it; is that correct?

A. Yes.

Q. Who was your attorney?

A. Also Attorney Huang. I'm not sure. I don't know. I don't remember.

Q. Was it the attorney that's sitting to your right?

A. Maybe, no. I don't remember. I don't remember.

Q. So the lawsuit was filed in 2022; is that correct?

A. Yes.

Q. And you don't remember who was the lawyer who represented you; is that correct?

Page 21

L. CHEN

A. I don't. I don't remember because I relied on another person to help me with that lawsuit.

Q. Okay. When did you receive the money from the lawsuit?

A. So it's 2026 now. I believe I received it around 2024. The lawsuit took about two years I believe.

Q. Okay. And did you ever go to court or attend a deposition as part of that lawsuit?

A. No. I didn't do anything.

Q. Okay. So we have a current lawsuit here today; is that correct?

A. Yes.

Q. And you had a lawsuit against quote, unquote, Amazing; is that correct?

A. Yes.

Q. And you had a claim against either Prestige and/or Family Home Care; is that correct?

A. Yes, yes.

Q. So that was three so far; is that correct?

6 (Pages 18 - 21)

Page 22

L. CHEN

A. Yes, yes, three different companies.

Q. Okay. Were there any others?

A. No.

Q. You worked for Greatcare at some point; is that correct?

A. Yes.

Q. In what years did you work for Greatcare?

A. Starting in 2015. Until when I really don't remember.

Q. Okay. So it appears that during the time that you worked for Greatcare, you were also working for Family Home Care, as well as Prestige, as well as a company called Amazing; is that correct?

A. (Without the Interpreter's translation in Mandarin) Yes -- (through the Interpreter's translation in Mandarin) no.

What happened was the patient that I was looking after was transferred

Page 23

L. CHEN

from (in English) Amazing (in Mandarin) to (in English) Greatcare.

Q. Okay. And what's that patient's name?

THE INTERPRETER: I'm sorry?

Q. What's that patient's name?

A. Wu Xiying.

THE INTERPRETER: X-I-Y-I-N-G phonetically.

Q. Was the patient a man or a woman?

A. Female, older lady.

Q. Okay. So you don't recall how long you worked for Greatcare; is that correct?

A. Possibly approximately transfer from (in English) Amazing, (in Mandarin) and that was sometime between 2015 and 2016.

Q. Okay. Is it fair to say that you stopped working for Greatcare in the first part of 2016?

THE INTERPRETER: I'm asking her to repeat. I really didn't

Page 24

L. CHEN

catch what she said.

A. I was doing substitute work at both (in English) Greatcare (in Mandarin) and (in English) Prestige (in Mandarin) at that time because I was also having some health issues also.

Q. Okay. My question is: Is it fair to say that you stopped working for Greatcare in the first part of 2016?

A. I did. But there was a change of patients, and they were all substitute work.

Q. Okay. My question was: Did you stop working for Greatcare in the first part of 2016?

A. Yes. With the patient, yes, I did.

I continued to work. I did not stop, but service as substitute work. Different patients, and I don't remember their names.

Q. My simple question is: When did you stop working for Greatcare?

MS. HUANG: Objection.

Page 25

L. CHEN

A. The problem is I never stopped.

Q. So you work for Greatcare to this very day; is that correct?

A. So I did not stop. You asked me when did I stop. I never stopped.

What happened was I became a substitute worker there, substitute working there.

Q. Okay.

MR. BRENLLA: I'll mark this as Defendant's Exhibit A.

(Whereupon, the aforementioned Plaintiff's Responses were marked as Defendant's Exhibit A for identification as of this date by the Reporter.)

Q. Ms. Chen, I'm showing you what's been marked as Defendant's Exhibit A, and I'm going to submit to you that this is a document that was produced by your attorney.

A. (Perusing document) Okay. Go ahead.

Q. I want you to turn to the

7 (Pages 22 - 25)

Page 26

L. CHEN

very last page.

A. (Complying.)

Q. It appears to have your signature on the top of the page.

A. Yes.

Q. My question is: Is that, in fact, your signature?

A. This is my signature, this name (indicating), yes.

Q. Okay. The document also indicates that somebody translated this document for you in Mandarin; is that correct?

A. No, no, they did not translate this for me. Every time it was such a rush they just asked me to sign, and I signed.

Q. Okay. So is it fair to say that you signed the document, but nobody ever translated it to you?

A. Did not, did not.

Q. Okay. Do you know who Jin Ming Cao is?

THE INTERPRETER: I believe

Page 27

L. CHEN

it's J-I-N   M-I-N-G, last name C-A-O.

Q. Do you know who that person is?

A. No, I don't.

Q. Have you ever met that person?

A. No.

Q. Okay. Who hired you when you were working for Greatcare?

A. Ms. Zhu and Oyoung. It was always the two of them who assigned jobs over the cell phone, both of them.

THE INTERPRETER: Oyoung is O-Y-O-U-N-G phonetically.

Q. While you were employed by Greatcare, did you ever speak to anyone at Centerlight?

A. What's (in English) Centerlight?

Q. Do you know what Centerlight is?

A. No.

MS. HUANG: Objection. Hold on. You can't just substitute Chinese words that represent

Page 28

L. CHEN

names.

MR. BRENLLA: Hold on. This is a certificated interpreter.

Off the record.

(Whereupon, an off-the-record discussion was held.)

A. No. I have not had any dealings with this company.

Q. Okay. So you never spoke with anyone who was employed by Centerlight; is that correct?

A. No.

Q. Do you recall ever receiving any documents from Centerlight?

A. No.

Q. Okay.

MR. BRENLLA: Now, I'm going to mark this as Defendant's Exhibit B.

(Whereupon, the aforementioned Letter of Representation from the Department of Labor dated May 1, 2021 was marked as Defendant's Exhibit B for identification as of this date by the

Page 29

L. CHEN

Reporter.)

Q. Ms. Chen, I'm showing you a document that's been identified as Defendant's Exhibit B, and I'm going to represent to you that this document also has been produced by your attorneys.

A. (Perusing document) This name does not look like my signature (indicating).

Q. Just to make sure for the record, you're indicating that the name on the bottom of the first page of the document does not appear to be your signature, correct?

A. Correct, correct.

Q. Do you know who Yueheng Zhang is? and I'll spelling the name: Y-U-E-H-E-N-G   Z-H-A-N-G.

A. No.

Q. Have you ever heard of the organization the Chinese Staff and Workers Association?

A. Yes.

8 (Pages 26 - 29)

Page 30

L. CHEN

Q. Who are they?

A. A non-profit organization. That's all I know.

Q. Okay. Do you know if they ever forged your signature on any documents?

A. No, no. I don't think so, no.

Q. Now I'm going to turn your attention to the second-to-last page of Defendant's Exhibit B.

A. (Perusing document.)

MR. BRENLLA: And for the record, it's Bates stamped as GSC000890.

A. What does this mean?

Q. My question is: There appears to be a signature on the bottom of the page; do you see that?

A. Where, here?

MR. BRENLLA: With permission, Carmela?

MS. HUANG: What's your question?

MR. BRENLLA: She wants to know

Page 31

L. CHEN

where the purported signature is, and I want to show it to her.

MS. HUANG: Go ahead.

Q. Ms. Chen, it's right there.

A. So this is from the Chinese Staff and Workers Association.

Q. My question is: Is that your signature there?

A. It does look like my signature. My signatures usually they are very neat (indicating).

Q. Okay. It's because the signature on Page 890, which is the second-to-last page, is very similar to the signature on the first page.

A. Well, usually I write very neatly or sign very neatly.

Look, this one it's written below and above (indicating).

Q. Ms. Chen, does the truth matter to you?

MS. HUANG: Objection.

A. Yes, of course. It's very important.

Page 32

L. CHEN

Q. Okay. My question is: On the second-to-last page of Defendant's Exhibit B, which has been labeled as GSC000890, is that your signature?

A. Well, the writing looks similar, but my own writing is usually very neat. This one is not very neat.

Q. Okay.

A. Unless I signed it holding in my hand, usually I sign it on the table and sign very neatly.

MS. HUANG: Let's go off the record.

(Whereupon, an off-the-record discussion was held.)

A. And this signature over here I'm certain is my signature (indicating).

Q. Okay. And you are referring to what's been marked as Defendant's Exhibit A; is that correct?

A. Yes. This one is my signature (indicating).

MR. BRENLLA: We'll mark this as Defendant's Exhibit C.

Page 33

L. CHEN

(Whereupon, the aforementioned Home Care Worker Agreement dated October 3, 2018 was marked as Defendant's Exhibit C for identification as of this date by the Reporter.)

Q. Ms. Chen, with respect to what's been labeled at Defendant's Exhibit C, this document, did anyone translate that document for you?

A. No, no one translated for me.

MS. HUANG: Objection. Let's go off the record.

(Wherein, an off-the-record discussion was held.)

Q. Have you ever seen this document, Ms. Chen?

A. I don't remember. I don't even remember.

Q. Do you know what that document even is?

A. No.

Q. Okay. So I'm going to show you what's been marked as Defendant's

9 (Pages 30 - 33)

Page 34

L. CHEN

Exhibit C.

A. (Perusing document.)

MR. BRENLLA: Do you have it?

MS. HUANG: I have it.

Q. This document, Ms. Chen, appears to contain your signature. My question is: Is that your handwriting and your signature?

A. Possibly, yes. This one possibly, yes (indicating).

Q. And why do you say that?

A. Because the handwriting looks like my handwriting.

Q. Okay. I'll take that back, Ms. Chen.

THE INTERPRETER: The whole thing?

MR. BRENLLA: Yes.

Q. If you need a break, let me know.

A. No, no, nothing now.

Q. I mean for the bathroom or to get water.

A. Okay.

Page 35

L. CHEN

THE INTERPRETER: She wants a bathroom break.

(Whereupon, a short recess was taken.)

MR. BRENLLA: I'm going to mark this as Defendant's Exhibit D.

(Whereupon, the aforementioned Greatcare, Inc. document Bates stamped GSD002840 was marked as Defendant's Exhibit D for identification as of this date by the Reporter.)

Q. Ms. Chen, I'm going to show you what's been labeled as Defendant's Exhibit D.

A. (Perusing document) I've seen this before.

Q. It's a two-page document. When did you see it?

A. So I believe when I went in, they require us to fill out this form or this (indicating).

Q. And who are they?

A. The coordinators.

Page 36

L. CHEN

Q. And that would have been the coordinators from Greatcare; is that correct?

A. Yes.

Q. And does this document tell you what to do with the patients?

A. This relates to time, work, what was done, what needs to be done.

Q. Okay. With respect to the second page --

A. I'm not seeing this one yet (indicating).

Q. Okay. Let me know when you are finished.

A. Finished looking at the first page or the second page?

Q. Let me know when you are finished looking at both pages.

A. (Perusing documents) Basically, I can tell you. Go ahead with your question.

Q. Okay. Is it fair to say that you looked at both pages?

A. Yes.

Page 37

L. CHEN

Q. When you went to a patient's home while working for Greatcare, was there a telephone number that you were supposed to call to indicate when you got there?

A. Yes.

Q. And when you left a patient's home, was there a phone number that you were supposed to call to let them know that you left?

A. Yes.

Q. With respect to this particular document, is this sheet for a particular patient?

A. No. Each patient would use the same form, but they do have a different number, a serial number.

Q. Okay. Understood. Turn to the second page of the document.

A. (Complying) Okay.

Q. Those were the phone numbers that you would have called and the code that you would have provided; is that correct?

10 (Pages 34 - 37)

Page 38

L. CHEN

A.   Yes.

Q.   And this document was a document you could read because it appears to be in Chinese; is that fair?

A.   Actually, I can only understand some Chinese.  Some Chinese I do not understand actually.

Q.   Okay.  But you understood the phone numbers; is that fair to say?

A.   Yes, I do understand that (indicating).

Q.   Just out of curiosity, when you called the phone numbers, were they in Chinese?

A.   Mandarin, Chinese, yes.

Q.   What is the first page of the document?

A.   So at that time we did not have clock-in system, so we had to write down work we did at that time.

Q.   Okay.  And on this document where it says, "Employee Name," is that your name?

Page 39

L. CHEN

MR. BRENLLA:  With your permission, can I point to it, Carmela?

MS. HUANG:  Yes.

Q.   Right here it says, "Employee Name."

THE INTERPRETER:  I just told her that she answered you before I even translated, so slow down and let me translate.

MR. BRENLLA:  Okay.  We are going to take it slowly.

Q.   Where it says, "Employee Name," is that your name?

A.   No, that's not my name here (indicating).

Q.   What name is that?

A.   What it says here is that at the time for the (in English) home health aide (in Mandarin) to fill out this form.  It says, fill out the home health aide's names here.  That's what it says.

And below it says the patient's name, and that's what it says here

Page 40

L. CHEN

(indicating).

Q.   Okay.  Do you recall the name Lai, L-A-I, Cheung, C-H-E-U-N-G?

A.   I don't really remember.

Q.   Okay.  Is it fair to say that you don't recall that person one way or the other?

A.   Yes.  I don't remember those substitute works.  I don't remember those substitute works.

Q.   Okay.  Do you remember a person named Hae, H-A-E, Sheng, S-H-E-N-G, Wang, W-A-N-G?

A.   No, I do not remember.

Q.   Do you remember the name Wong, W-O-N-G, Kwai, K-W-A-I, Ngor, N-G-O-R?

THE INTERPRETER:  N-G-O-R?

MR. BRENLLA:  Yes.

A.   No, I don't.  As I said, I don't remember any of the substitute work that I did, which I actually did quite a lot.

Q.   Okay.  Did Greatcare provide training to you?

Page 41

L. CHEN

A.   Yes.

Q.   And do you recall who specifically at Greatcare provided you with the training?

A.   The nurse, the nurse.

Q.   And who is that?

A.   I don't remember because this just once every half a year.

Q.   Okay.

MR. BRENLLA:  I'm going mark these as Defendant's Exhibit E.

(Whereupon, the aforementioned Greatcare, Inc. Clinical Supervision sheets dated April 26, 2015, August 14, 2015, and May 16, 2016 were marked as Defendant's Exhibit E for identification as of this date by the Reporter.)

MR. BRENLLA:  For the record, I'm showing the witness Defendant's Exhibit E, which consists of three sheets that were Bates stamped 002722 through 002724.

A.   (Perusing documents.)

11 (Pages 38 - 41)

Page 42

L. CHEN

Q. Ms. Chen, I know these documents are in English, but my question is: There appears at the top of each page your name on the top right, and I will point to each page; do you see that?

A. I'm not familiar, not familiar. This seems like mine (indicating), but not familiar.

Q. Okay. My question is: Is that your handwriting?

A. It does not look like my name. I don't know where it came from.

Q. Okay. My question is: On the bottom there appears to be a signature that does not purport to be your signature, but do you know whose signature that is?

A. You mean here (indicating)?

Q. Yes.

A. No. Not my signature.

Q. No, no. My question is: Do you know whose it is?

A. I don't know.

Q. Okay. On the second page of the document, on the bottom there appears

Page 43

L. CHEN

to be a signature as well.

A. (Perusing document.)

Q. It does not purport to be yours, but my question is: Do you know who that is?

A. I don't know.

Q. Okay. Look at the third page.

A. (Perusing document.)

Q. The third page on the bottom has a signature that does not purport to be yours, but do you know who that person is?

A. I don't. I don't recognize. I don't recognize.

Q. Okay. I'll take it back.

A. (Without the Interpreter's translation in English) Okay.

MR. BRENLLA: Mark this as Defendant's Exhibit F.

(Whereupon, the aforementioned Greatcare, Inc. documents in Chinese Bates stamped GC07.28.2025, 002798, and 002800 were marked as Defendant's Exhibit F for identification as of

Page 44

L. CHEN

this date by the Reporter.)

Q. Ms. Chen, I'm showing you what's been labeled as Defendant's Exhibit F. It's a three-page document.

A. (Perusing documents) Thank you.

Q. Is it fair to say that this document is in Chinese?

A. Yes.

Q. Now, when you were hired by Greatcare, did they provide you with different tests to determine your skills?

A. What do you mean by different tests?

Q. For example, have you ever seen what's been labeled as Defendant's Exhibit F before?

A. This document, yes.

Q. And you received that document when you were employed by Greatcare; is that correct?

A. Yes.

Page 45

L. CHEN

Q. Okay. Do you know what the purpose of this document was?

A. Yes.

Q. And what was that?

A. It relates to what should be done, what should not be done as a home health aide.

Q. Okay. And did you receive additional instructions from Greatcare as to what should be done as a home health aide?

A. No. Just -- no. Other than this (indicating) and the previous two pages, no other. Meaning, those two pages (indicating) and nothing else.

Q. And you're referring to Defendant's Exhibit D; is that correct?

A. (Perusing document) Yes, yes.

Q. Okay.

A. And so I'm talking about these two pages (indicating), and everything they gave me I remember them very well.

Q. Okay. When you were working

12 (Pages 42 - 45)

Page 46

L. CHEN

for Greatcare, how many days per week did you work for Greatcare?

A. So at (in English) Greatcare (in Mandarin) basically I did 24-hours' work for three days.

Q. Okay.

A. And also for some period of time I worked five to six hours.

Q. Okay.

MR. BRENLLA: I'll mark this as Defendant's Exhibit G.

(Whereupon, the aforementioned Home Care Worker Agreement Live-In Care document dated October 3, 2018 was marked as Defendant's Exhibit G for identification as of this date by the Reporter.)

Q. Ms. Chen, I'm showing you a document that's been identified as Defendant's Exhibit G.

A. (Perusing document) Okay.

Q. On the bottom of the document, there appears to be your signature. Is that your signature on the bottom?

Page 47

L. CHEN

A. It looks like possibly my signature.

Q. Okay. When you worked for Greatcare, were there employees at Greatcare who would translate documents for you?

A. No.

Q. Would Oyoung translate documents for you?

A. So in terms of Oyoung, when we don't understand something, we ask her about that.

Q. And then did she provide you with the answer?

A. Sometimes. Because we don't understand or I don't understand, so in terms of work I have to understand what I'm doing.

Q. Was there anyone that you would go to other than Ms. Oyoung such as Ms. Zhu, Z-H-U?

A. Yes. I did not make the approach, but I was afraid because -- but they cursed me out, so I was

Page 48

L. CHEN

afraid to ask anymore.

Q. My question is: Who are they?

A. I meant Ms. Zhu and Ms. Wang.

Q. How much interaction did you have with Barbara Wang?

A. Rarely, very little. Because also I or we rarely go to the company as well.

Q. I'm sorry. I didn't understand that.

THE INTERPRETER: Can you read it back?

(Whereupon, the referred to answer was read back by the Reporter.)

Q. Okay. Did you ever complain to anyone at Greatcare that you were not paid properly?

A. So, yes. They had miscalculated my pay. They had done that in the past, yes.

Q. Okay. And to whom did you complain?

A. Usually, it's Oyoung that

Page 49

L. CHEN

helped out.

In terms of Zhu and Wang, they always not cooperative and always cursing out.

Q. When you complained to Ms. Oyoung, did she rectify the mistake?

A. Yes, yes.

MR. BRENLLA: I'm going to mark this as Defendant's Exhibit H.

(Whereupon, the aforementioned Greatcare, Inc. Employer Information dated April 29, 2014 was marked as Defendant's Exhibit H for identification as of this date by the Reporter.)

Q. Take a look at Defendant's Exhibit H.

A. (Perusing document) I have a question.

Q. Remember the ground rules: I ask questions; you answer questions.

A. Yes, yes. I do remember, but I wanted to point out something after I

13 (Pages 46 - 49)

Page 50

L. CHEN

looked at the date.

Q.   Okay.  Point it out.

A.   I'm thinking.  Looking at this (indicating) I'm thinking to myself, was working there 2017, 2018.

Q.   And you're looking at Defendant's Exhibit G; is that correct?

A.   Yes.

Q.   Okay.

MR. BRENLLA:  Can I have it back?

THE INTERPRETER:  Yes.

Q.   Ms. Chen, I'm looking at another document.  You can share it with your counsel.  It's Defendant's Exhibit H.

A.   (Perusing document.)

Q.   Is it fair to say that part of that document is in Chinese?

A.   Yes.  Partially Chinese and partially English.

Q.   And there appears to be your

Page 51

L. CHEN

signature on this document; do you see that on the right-hand side?

A.   Yes.

Q.   Is that your signature?

A.   It is.

Q.   Okay.  Do you recall receiving this document while you were employed by Greatcare?

A.   Possibly.  I don't remember exactly; but partially in Chinese, partially in English.  And Oyoung would help out a little bit.

Q.   Okay.  Do you know what that document is?

A.   I don't know.

Q.   Okay.

A.   I don't have my glasses on.  Maybe I cannot read it very clearly.

Q.   Do you have your glasses with you?

A.   No.

Q.   Do you need reading glasses?

A.   Yes.

Q.   Do you know what prescription

Page 52

L. CHEN

you need?  I can run down and get some for you.

A.   No.  That's too much trouble.

Q.   Do you want to borrow mine?

A.   Can I?

Q.   Sure.

A.   Thank you.  Not the right one, not the right degree.

Q.   Okay.

A.   Too small, the words are too small.

Q.   Okay.  Fair enough.

A.   I can't really read it.  I can't really tell what it's saying.

Q.   Okay.  When you worked for Greatcare, did they pay you by check or what's called direct deposit?

A.   So initially paid by check, and eventually they paid by bank deposit.

Q.   When you were paid by check, did they mail it to you, or did you have to pick it up somewhere?

A.   Once a month I go pick it up.

Page 53

L. CHEN

Q.   Okay.  When you were paid by direct deposit, how did you know that you were being paid?

A.   I would look at the check.  Even when they direct deposit, they still --

THE INTERPRETER:  Let me confirm something with her.

A.   So even when I got paid with direct deposit, they also provided a check stub, so I could tell how much was paid.

Q.   Okay.  Was that check stub a paper check, or was it an email done electronically?

A.   The electronic version.

Q.   Okay.  And would they email it to you?

A.   No.  They would print it out, and I would pick it up in an envelope that they put it in.

Q.   Okay.

A.   And -- so when I go, I would pick it up and bring it back.

14 (Pages 50 - 53)

Page 54

L. CHEN

Q.  At what location did you pick it up?

A.  34th Street, possibly the 12th Floor over there.

Q.  Okay.  Was that where Greatcare was located?

A.  It's actually 12 34th Street.

Q.  Okay.  But my question is: Was that where Greatcare was located?

A.  Yes.

Q.  Okay.

A.  Wasn't the address already somewhere here earlier (indicating)?

Q.  Was that the address where Oyoung was located?

A.  Oyoung, Ms. Zhu, and the boss lady Wang are all located there.

Q.  Okay.  Are there any other employees that you can recall when you were employed by Greatcare?

A.  So co-workers let me think. I rarely ever communicate with other co-workers, but I do remember an

Page 55

L. CHEN

elder Sister Lin.

MR. BRENLLA:  I'm sorry.  Did she say, an older sister?

THE INTERPRETER:  Older sister named Lin.

MR. BRENLLA:  Okay.

Q.  When you say a sister, are you referring to a friend?

A.  Yes, right.  Not relative. Also, another friend who also work at the company whose name is Yang Ye Lin.

Q.  Do you know what that person does for Greatcare?

A.  This person did not work the 24-hour shift.  Only worked for few hours.

Q.  Is it fair to say that that person was a home health aide?

A.  Yes.

Q.  Is there anyone else that you recall that worked for Greatcare in addition to what you told me so far?

Page 56

L. CHEN

A.  Li Ray Lin (phonetic).  This person still works there.

Q.  Do you mean as an home health aide?

A.  Yes.  And this person also only just worked a few hours.

Q.  Is there anyone else?

A.  Several others whose names I don't remember, but I would recognize if I see them.

Q.  By face you mean, right?

A.  Yes.

MR. BRENLLA:  Let's take a few minutes.  I think I'm almost done.

A.  (Through the Interpreter's translation in English) Thank you.

(Whereupon, a short recess was taken.)

Q.  Ms. Chen, do you still work for Greatcare?

A.  No more.

Q.  Why did you leave Greatcare's employment?

A.  Pandemic.  Pandemic hit and

Page 57

L. CHEN

stopped, and I stopped working there.

Q.  Did you work anywhere else after the pandemic?

A.  So I did work during the pandemic. So shortly after the pandemic started, another older home health aide quit or didn't want to work anymore, and I took over that job. And she allowed me to live there, so I took over the previous home health aide's work.

Q.  Okay.  And where was that?

A.  At the beginning of the pandemic, because of the pandemic I didn't go out to work at that time.

Q.  Okay.  And when did you start working after the pandemic started?

A.  Ten days after (in English) Greatcare (in Mandarin) stopped, my landlord wanted me to take care of her at that time.

Q.  Okay.  And then who paid you to took care of that person?

15 (Pages 54 - 57)

Page 58

L. CHEN

A. (In English) ABI, (in Mandarin) the boss of (in English) ABI, (in Mandarin) so I switched companies.

Q. Okay. And where is ABI located?

A. At 59 (in English) East Broadway, (in Mandarin) 5th Floor.

Q. And do you still work there?

A. No. I worked until May 9, 2024. My leg hurts a lot, so I stopped. But now I did not go back also because there is no work.

Q. So from May of 2024 until the present, you have not been working; is that fair to say?

A. Right, right.

Q. From 2000 to 2024, for whom did you work?

A. I worked for my landlord, who is an older lady.

Q. What's her name?

A. So her name in Mandarin is Zhang Nan Ju; but they say that the Ju in Chinese is spelled with a K, starts

Page 59

L. CHEN

the spelling of that.

THE INTERPRETER: Z-H-A-N-G N-A-N.

Q. Is that your current landlord where you live now?

A. No more, no. Because I got picked or assigned government housing already.

Q. So what was the address where you took care of the landlord person?

A. At 47 (in English) Market Street, (in Mandarin) Apartment 2A, 10002.

Q. Is that in Manhattan?

A. (In English) Manhattan, (in Mandarin) yes.

Q. So you said there was another company AB.

THE INTERPRETER: ABI.

A. (In English) ABI, (in Mandarin) yes.

Q. And how long did you work for them?

A. So I took care of the elderly

Page 60

L. CHEN

lady through (in English) ABI.

Q. Okay. I got you. And do you recall how long that was?

A. From the start of the pandemic, until May of 2024.

Q. Got you. Did you sue ABI?

A. No. Because it's just a few hours of work, so how am I supposed to sue? It's only five and a half hours a day.

Q. Did you file a Complaint with the Department of Laborer against ABI?

A. No.

Q. And my last question, which I think I may have asked you before: Where was the company Amazing located?

A. I don't really know where their address is; but, as I said before, the jobs were given out, distributed at the same location as Oyoung is located, meaning 34th Street.

Q. Okay.

A. The office is there. Their office is over there.

Page 61

L. CHEN

MR. BRENLLA: Okay. I have nothing further.

EXAMINATION BY MS. HUANG:

Q. Ms. Chen, earlier today Centerlight's lawyer gave you this document to look at, Defendant's Exhibit A.

A. (Perusing document.)

Q. Do you remember that?

A. Yes.

Q. Do you remember seeing this document before today's deposition?

A. Yes.

Q. When did you see this document?

A. Today.

Q. Okay. Before today do you remember seeing this document?

A. No.

Q. Can you read English?

A. No.

Q. Are you able to tell the difference between different documents that are written in English?

16 (Pages 58 - 61)

Page 62

L. CHEN

A.   No, not able to distinguish.

Q.   So is it possible that you have seen this document before?

MR. BRENLLA:  Just objection to the form.

A.   I don't really know. I don't think I've seen it before. I'm not sure.  I don't really know.

Q.   Centerlight's lawyer told you that this is a document that your lawyer provided to Centerlight's lawyer; did you hear that?

A.   Yes.  I remember, but I don't think I've seen this document before (indicating).  I only saw it today.

Q.   Do you know somebody named Mr. Tau?

A.   Yes.

Q.   Has he ever helped your lawyers to interpret documents?

MR. BRENLLA:  Objection to the form.

A.   No.  I don't really remember.

Page 63

L. CHEN

I don't think I've seen this, but I don't remember.  But, no, I'm not.

Q.   My question was:  Has Mr. Tau ever helped your lawyers to interpret documents for you?

A.   Yes, yes.  (In English) Sorry.  (In Mandarin) I forgot previously, but, yes, yes.

I have seen it, but I don't remember.

Q.   I'm not asking you about this document now.

A.   (Without the Interpreter's translation in English) Okay. (In Mandarin) Go ahead.

Q.   What kinds of documents do you remember Mr. Tau translating for you?

A.   Relates to signatures, sign-ins and clocking in and out and nothing else.

Q.   Okay.  You said that after you took care of a woman named Ms. Wu, you started to do substitute work for

Page 64

L. CHEN

Greatcare; is that right?

A.   Yes.

Q.   Do you remember the names of the patients that you did substitute work for?

A.   No.

Q.   Do you remember the work that you did caring for those patients though?

A.   I did substitute and work 24 hours.

MS. HUANG:  Okay.  I don't have any other questions.

MR. BRENLLA:  Nothing further.

MS. HUANG:  I will be ordering a copy of the transcript.

(Whereupon, at 12:28 p.m. the examination of this witness was concluded.)

    °      °      °      °

Page 65

L. CHEN

D E C L A R A T I O N

I hereby certify that having been first duly sworn to testify to the truth, I gave the above testimony.

I FURTHER CERTIFY that the foregoing transcript is a true and correct transcript of the testimony given by me at the time and place specified hereinbefore.

_____
            LI CHEN

Subscribed and sworn to before me this \_\_\_\_\_ day of _____ 20\_\_\_.

_____
     NOTARY PUBLIC

17 (Pages 62 - 65)

Page 66

L. CHEN

E X H I B I T S

DEFENDANTS EXHIBITS

EXHIBIT          EXHIBIT              PAGE
NUMBER         DESCRIPTION

Exhibit A      Plaintiff's Responses      25
Exhibit B      Letter of Representation    28
    from the Department of
    Labor dated May 1, 2021
Exhibit C      Home Care Worker Agreement  33
    dated October 3, 2018
Exhibit D      Greatcare, Inc. document    35
    Bates stamped GSD002840
Exhibit E      Greatcare, Inc. Clinical    41
    Supervision sheets dated
    April 26, 2015, August 14,
    2015, and May 16, 2016
Exhibit F      Greatcare, Inc. documents  43
    in Chinese Bates stamped
    GC07.28.2025, 002798,
    and 002800
Exhibit G      Home Care Worker Agreement 46

Page 67

L. CHEN

E X H I B I T S

DEFENDANTS EXHIBITS CONTINUED:

EXHIBIT   EXHIBIT                PAGE
NUMBER   DESCRIPTION

    Live-In Care document
    dated October 3, 2018
Exhibit H      Greatcare, Inc. Employer    49
    Information dated April
    29, 2014
    (Exhibits retained by Counsel.)


        I N D E X

EXAMINATION BY              PAGE

MR. BRENLLA                5
MS. HUANG                 61

Page 68

L. CHEN

INFORMATION AND/OR DOCUMENTS REQUESTED
INFORMATION AND/OR DOCUMENTS      PAGE

Production of all of the Complaints  14
pertaining to the Plaintiff'S
claims in the lawsuit

Page 69

L. CHEN

C E R T I F I C A T E

STATE OF NEW YORK    )
            : SS.:
COUNTY OF NEW YORK    )


    I, PAUL LEE, a Notary Public for and
within the State of New York, do hereby
certify:
    That the witness whose examination is
hereinbefore set forth was duly sworn and
that such examination is a true record of
the testimony given by that witness.
    I further certify that I am not
related to any of the parties to this
action by blood or by marriage and that I
am in no way interested in the outcome of
this matter.
    IN WITNESS WHEREOF, I have hereunto
set my hand this 8th day of May, 2026.


_____
    PAUL LEE

18 (Pages 66 - 69)

Page 70

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: Chen, Li v. Greatcare
DATE OF DEPOSITION: 4/30/2026
WITNESS' NAME: Li Chen

PAGE  LINE (S)    CHANGE        REASON

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

___|_____|_____|_____

_____
Li Chen
SUBSCRIBED AND SWORN TO BEFORE ME
THIS ____ DAY OF _____, 20__.

_____        _____
(NOTARY PUBLIC)          MY COMMISSION EXPIRES:

19 (Page 70)

**[& - addition]**

| & |
| --- |
| **&**  3:16 4:17 |

| 0 |
| --- |
| **002722**  41:24 |
| **002724**  41:24 |
| **002798**  43:23 66:23 |
| **002800**  43:24 66:24 |
| **07102**  3:18 |

| 1 |
| --- |
| **1**  4:17 28:22 66:12 |
| **10002**  59:14 |
| **10004-3821**  3:6 |
| **10029**  5:21 |
| **10036**  2:8 |
| **1037**  3:18 |
| **105th**  5:19 |
| **10:12**  1:15 |
| **11373**  3:10 |
| **12**  54:8 |
| **12:28**  64:17 |
| **12th**  54:4 |
| **14**  41:16 66:19 68:5 |
| **14th**  8:19 |
| **15th**  3:5 |
| **16**  41:16 66:20 |
| **16th**  2:7 |
| **19177**  3:14 |

| 2 |
| --- |
| **20**  65:19 70:22 |
| **2000**  58:18 |
| **2012**  8:4,5 13:12,13 |
| **2013**  12:23,24 13:13 |
| **2014**  15:18 49:14 67:13 |
| **2015**  15:18 22:11 23:19 41:15,16 66:19 66:20 |
| **2016**  23:20,23 24:10,16 41:16 66:20 |
| **2017**  8:4,5,7 9:21 13:4 50:6 |
| **2018**  33:4 46:15 50:7 66:14 67:10 |
| **2021**  28:23 66:12 |
| **2022**  19:23 20:21 |
| **2024**  21:8 58:11,14,18 60:6 |
| **2026**  1:14 21:7 69:21 |
| **21**  7:21 |
| **22**  7:21 |

| 24  1:8 9:5 46:5 55:17 64:10 |
| --- |
| **24412**  69:24 |
| **25**  66:9 |
| **250**  3:14 |
| **26**  41:15 66:19 |
| **28**  66:10 |
| **29**  49:14 67:13 |
| **2a**  5:20 59:13 |

| 3 |
| --- |
| **3**  33:4 46:15 66:14 67:10 |
| **30**  1:14 4:16 |
| **33**  66:13 |
| **337**  8:16 |
| **34th**  54:4,8 60:22 |
| **35**  66:15 |

| 4 |
| --- |
| **4,600**  19:17 |
| **4/30/2026**  70:3 |
| **40-18**  3:10 |
| **404**  5:19 |
| **41**  66:17 |
| **43**  66:21 |
| **46**  66:25 |
| **47**  59:12 |
| **49**  67:11 |

| 5 |
| --- |
| **5**  67:21 |
| **50**  3:5 |

| 59  58:7 |
| --- |
| **5th**  58:8 |

| 6 |
| --- |
| **61**  67:22 |

| 7 |
| --- |
| **7**  2:6 |
| **7401**  1:8 |
| **7th**  3:14 |

| 8 |
| --- |
| **80th**  3:10 |
| **890**  31:14 |
| **8th**  69:21 |

| 9 |
| --- |
| **9**  58:10 |
| **920**  3:18 |

| a |
| --- |
| **a.m.**  1:15 |
| **ab**  59:19 |
| **abi**  58:2,3,5 59:20,21 60:2 60:7,13 |
| **ability**  10:25 |
| **able**  61:23 62:2 |
| **above**  31:20 65:6 |
| **action**  69:17 |
| **actually**  15:11 15:14,22 19:18 38:7,9 40:22 54:8 |
| **addition**  55:24 |

**[additional - brenlla]** Page 2

| | | | |
|---|---|---|---|
| **additional** 45:10 | 17:23 18:16 19:5,10,15 21:18 22:18 23:2,18 60:17 | **asking** 9:22 14:4 23:24 63:12 | **bank** 52:20 |
| **address** 5:18 8:20 54:13,15 59:10 60:19 | **amherst** 13:20 | **assigned** 12:4 12:18 27:11 59:8 | **barbara** 48:6 |
| **administer** 4:11 | **amount** 19:16 | **assignment** 12:19 | **basically** 36:21 46:5 |
| **aforemention...** 25:13 28:20 33:2 35:8 41:13 43:21 46:13 49:12 | **answer** 10:8 47:15 48:15 49:23 | **association** 29:24 31:7 | **bates** 30:14 35:9 41:23 43:23 66:16,22 |
| | **answered** 39:9 | **attend** 21:11 | **bathroom** 34:23 35:3 |
| **afraid** 47:24 48:2 | **answers** 5:5 | **attention** 30:10 | **beginning** 7:21 57:15 |
| **agencies** 15:4 | **anymore** 48:2 57:9 | **attorney** 3:9,13 5:24 6:2 10:11 14:3,13 18:17 18:19 20:13,14 20:16 25:22 | **believe** 21:7,9 26:25 35:21 |
| **agreed** 4:5,20 | **apartment** 5:20 59:13 | | **bit** 15:19 19:3 51:13 |
| **agreement** 33:3 46:14 66:13,25 | **appear** 29:15 | **attorneys** 3:5 3:17 29:8 | **blood** 69:17 |
| | **appears** 22:13 26:4 30:17 34:7 38:5 42:4 42:15,25 46:24 50:25 | **august** 41:15 66:19 | **borrow** 52:5 |
| **ahead** 25:24 31:4 36:21 63:16 | | **authorized** 4:11 | **boss** 17:14 54:18 58:3 |
| **aide** 6:16,24 7:3 9:7 11:25 39:21 45:8,12 55:20 56:5 57:8 | **approach** 47:24 | **avenue** 3:14 | **bottom** 29:14 30:18 42:15,25 43:10 46:23,25 |
| | **approximately** 8:11 12:7 15:24 23:17 | **b** | **boulevard** 3:18 |
| | | **b** 28:19,24 29:5 30:11 32:4 66:2,10 67:2 | **break** 7:12 34:20 35:3 |
| **aide's** 39:22 57:13 | **april** 1:14 41:15 49:14 66:19 67:12 | | **brenlla** 3:12,15 5:14,23 11:4 14:2,24 25:11 28:3,18 30:13 30:21,25 32:24 34:4,19 35:6 39:2,12 40:19 41:11,20 43:19 46:11 49:10 |
| **allowed** 57:11 | | **back** 8:22 11:5 34:15 43:16 48:13,15 50:14 53:25 58:12 | |
| **amazing** 7:6,8 15:10,12,17,23 15:25 16:6,13 16:17,21,25 17:3,5,9,13,18 | **arthur** 3:21 | | |
| | **asked** 14:7 18:3 25:5 26:17 60:16 | | |

**[brenlla - complained]**

50:13 55:3,7
56:14 61:2
62:5,23 64:14
67:21
**bring** 53:25
**broadway** 3:5
8:17 58:8

**c**

**c** 3:2 5:8 27:3
32:25 33:5,10
34:2 40:4 65:2
66:13 69:2,2
**call** 37:5,10
**called** 5:8 7:17
14:7,11,19
15:10 16:21
17:17,18 22:18
37:23 38:15
52:18
**calls** 11:22
**cao** 26:24
**care** 7:17,24
8:3,15,25 9:4,8
9:11,20,23
10:2 11:15
13:25 14:5,8
14:10,16 15:22
16:11 21:22
22:16 33:3
46:14,15 57:22
57:25 59:11,25
63:24 66:13,25
67:9

**caring** 64:9
**carmela** 3:6
30:22 39:4
**case** 1:7 70:2
**catch** 24:2
**cell** 27:12
**center** 3:4
**centerlight**
1:10 3:13 5:24
6:3 7:5 27:17
27:19,20 28:11
28:15
**centerlight's**
61:7 62:11,13
**certain** 32:18
**certificate** 12:2
**certificated**
28:4
**certification**
4:8
**certify** 65:4,8
69:10,15
**change** 12:11
24:11 70:5
**changes** 13:6
**check** 8:22
52:17,19,22
53:5,12,14,15
**chen** 1:3,3,4 2:3
5:1,17,22 6:1
7:1,15 8:1 9:1
10:1,3 11:1
12:1 13:1 14:1
14:3 15:1 16:1

17:1,16 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1,18 26:1
27:1 28:1 29:1
29:3 30:1 31:1
31:5,21 32:1
33:1,8,18 34:1
34:6,16 35:1
35:14 36:1
37:1 38:1 39:1
40:1 41:1 42:1
42:2 43:1 44:1
44:3 45:1 46:1
46:19 47:1
48:1 49:1 50:1
50:16 51:1
52:1 53:1 54:1
55:1 56:1,20
57:1 58:1 59:1
60:1 61:1,6
62:1 63:1 64:1
65:1,15 66:1
67:1 68:1 69:1
70:2,3,21
**cheung** 40:4
**chinatown**
12:17 13:14,15
**chinese** 14:21
27:25 29:23
31:6 38:5,8,8
38:16,17 43:22
44:10 50:22,23
51:11 58:25

66:22
**civil** 2:5
**claim** 18:23
21:20
**claims** 68:7
**clarified** 14:4
**clearly** 51:19
**clinical** 41:14
66:17
**clock** 38:21
**clocking** 63:21
**code** 37:23
**collective** 7:8
**commission**
70:25
**communicate**
54:24
**companies** 6:24
7:3 22:3 58:4
**company** 6:16
14:6,10 15:9
16:20 17:17,18
22:17 28:9
48:8 55:12
59:19 60:17
**compensated**
19:7,19
**compensation**
15:15 18:4
**complain** 48:17
48:24
**complained**
49:6

**[complaint - document]**                                                Page 4

**complaint** 7:16
8:24 15:9
17:23 60:12
**complaints**
15:2,5 68:5
**complying** 26:3
37:21
**concluded**
64:19
**confer** 10:11
**confirm** 53:9
**consists** 41:22
**contain** 34:7
**continued**
24:19 67:4
**cooperation**
17:6
**cooperative**
49:4
**coordinators**
35:25 36:3
**copy** 4:14,17
18:6 64:16
**correct** 8:8,12
9:15 11:13
12:25 13:5,17
15:10 16:7,11
17:24 19:6,17
20:2,11,21,25
21:15,18,22,25
22:7,19 23:16
25:4 26:14
28:12 29:16,17
29:17 32:21

36:4 37:25
44:24 45:19
50:10 65:9
**counsel** 4:6,17
50:18 67:14
**counselors**
11:18,18
**county** 69:5
**course** 31:24
**court** 1:2 2:4
4:13 21:11
**curiosity** 38:14
**current** 6:17,21
21:14 59:5
**cursed** 47:25
**cursing** 49:5
**cv** 1:8

**d**

**d** 4:2 35:7,11
35:16 45:18
65:2 66:15
67:17
**date** 1:14 25:17
28:25 33:7
35:13 41:19
44:2 46:17
49:17 50:2
70:3
**dated** 28:22
33:3 41:15
46:15 49:14
66:12,14,18
67:10,12

**day** 25:4 60:11
65:19 69:21
70:22
**days** 4:16 9:10
9:12,13,13,15
9:16,17 12:7,9
12:12,18,25,25
13:4,10,10,16
13:21 16:2,4,9
46:2,6 57:20
**dealings** 28:9
**defendant** 2:3
3:9,13,17
**defendant's**
25:12,15,19
28:19,23 29:5
30:11 32:3,20
32:25 33:5,9
33:25 35:7,11
35:15 41:12,17
41:21 43:20,24
44:4,19 45:18
46:12,16,21
49:11,15,18
50:9,18 61:8
**defendants**
1:12 66:4 67:4
**degree** 52:9
**department**
15:3 28:22
60:13 66:11
**deposit** 52:18
52:21 53:3,6
53:11

**deposition** 2:2
4:8,9,14 6:5
10:5 21:11
61:14 70:3
**description**
66:7 67:7
**determine**
44:14
**difference**
14:18,20 61:24
**different** 22:2
24:21 37:17
44:14,16 61:24
**direct** 52:18
53:3,6,11
**discussion** 7:14
28:7 32:16
33:16
**distinguish**
62:2
**distributed**
60:20
**district** 1:2,2
**document**
25:21,23 26:11
26:13,20 29:4
29:7,9,15
30:12 33:10,11
33:18,21 34:3
34:6 35:9,17
35:19 36:6
37:14,20 38:3
38:4,19,23
42:25 43:3,9

**[document - family]** Page 5

44:6,10,21,22
45:3,20 46:15
46:20,22,23
49:20 50:17,20
50:22 51:2,8
51:15 61:8,10
61:14,16,19
62:4,12,16
63:13 66:15
67:9
**documents**
28:15 30:7
36:20 41:25
42:3 43:22
44:7 47:7,10
61:24 62:22
63:6,17 66:21
68:2,3
**doing** 24:3
47:19
**duly** 5:9 65:5
69:12

**e**

**e** 3:2,2 4:2,2 5:8
29:20,20 40:4
40:13,13 41:12
41:17,22 65:2
66:2,17 67:2
67:17 69:2,2
**earlier** 54:14
61:6
**east** 5:19 58:7

**economic** 3:4
**effect** 4:12,15
**eight** 12:20
**either** 15:21
19:12 21:21
**elder** 55:2
**elderly** 59:25
**electronic**
53:17
**electronically**
53:16
**elite** 3:22
**elmhurst** 3:10
**email** 53:15,18
**employed** 9:7
19:5 27:15
28:11 44:23
51:8 54:22
**employee** 38:24
39:6,14
**employees** 47:5
54:21
**employer** 49:13
67:11
**employment**
9:19 19:15
56:24
**english** 5:4,6
6:3 7:4,6,7
8:17 9:23 10:2
10:13 11:22
12:4,10 13:20
14:20 15:12,25
16:3,15 17:5,7

17:15 18:16
23:2,3,18 24:4
24:5 27:18
39:20 42:3
43:18 46:4
50:24 51:12
56:17 57:20
58:2,3,7 59:12
59:16,21 60:2
61:21,25 63:7
63:15
**entire** 9:19
**entity** 6:11 7:17
**envelope** 53:21
**errata** 70:1
**esq** 3:6,15
**eventually** 9:25
12:3 52:20
**exactly** 7:22
19:11 51:11
**examination**
5:13 61:4
64:18 67:19
69:11,13
**examined** 5:11
**example** 44:18
**except** 4:21
**exhibit** 25:12
25:15,20 28:19
28:24 29:5
30:11 32:4,20
32:25 33:5,10
34:2 35:7,11
35:16 41:12,17

41:22 43:20,25
44:5,20 45:18
46:12,16,21
49:11,15,19
50:9,19 61:9
66:6,6,9,10,13
66:15,17,21,25
67:6,6,11
**exhibits** 66:4
67:4,14
**expires** 70:25

**f**

**f** 1:3,4 3:15 4:2
43:20,25 44:5
44:20 66:21
69:2
**face** 56:12
**fact** 26:8
**fair** 9:6 14:23
15:20 23:21
24:9 26:19
36:23 38:6,11
40:6 44:9
50:21 52:13
55:19 58:16
**familiar** 42:7,7
42:9
**family** 7:17,23
8:3,14,25 9:4,8
9:11,20,23
10:2 11:15
13:24 14:5,8,9
14:16 15:4,21

**[family - health]** Page 6

16:10 21:21 22:16
**far** 17:20 18:12 21:24 55:25
**federal** 2:4
**female** 23:13
**figure** 13:9
**file** 6:13 7:15 15:3,13 60:12
**filed** 6:10 7:2 17:22 19:22,25 20:20
**filing** 4:7
**fill** 35:22 39:21 39:22
**find** 18:4 20:5
**finished** 36:15 36:16,19
**first** 5:9 23:23 24:10,16 29:14 31:16 36:16 38:18 65:5
**five** 7:25 8:11 19:8 46:9 60:10
**floor** 2:7 3:5,14 54:5 58:8
**flushing** 12:5,8 12:10
**follow** 15:6
**following** 5:4
**follows** 5:12
**force** 4:15

**foregoing** 65:8
**forged** 30:6
**forgot** 63:8
**form** 4:21 35:22 37:17 39:21 62:6,24
**forth** 69:12
**forty** 19:2,3
**four** 9:12,13,14 9:16 12:7,11 12:17,25 13:4 13:10,16,21 16:4,9
**friend** 55:9,11
**further** 4:20 61:3 64:14 65:8 69:15

**g**

**g** 23:9 27:2,14 29:20,20 40:4 40:13,14,17,17 40:18 46:12,16 46:21 50:9 59:3 66:25
**gc07.28.2025** 43:23 66:23
**george** 3:15 5:23
**give** 11:20
**given** 60:20 65:10 69:14
**glasses** 51:18 51:20,23

**go** 8:21 10:3 13:9 21:10 25:24 31:4 32:13 33:14 36:21 47:21 48:8 52:25 53:24 57:17 58:12 63:16
**going** 10:3 25:20 28:18 29:6 30:9 33:24 35:6,14 39:13 41:11 49:10
**good** 5:22
**government** 59:8
**greatcare** 1:10 3:9 7:5 16:15 16:25 17:7,15 17:19 22:6,10 22:15 23:3,15 23:22 24:4,10 24:15,24 25:3 27:9,16 35:9 36:3 37:3 40:24 41:4,14 43:22 44:13,23 45:10 46:2,3,4 47:5,6 48:18 49:13 51:9 52:17 54:6,10 54:22 55:15,23 56:21 57:21

64:2 66:15,17 66:21 67:11 70:2
**greatcare's** 56:23
**ground** 49:22
**gsc000890** 30:15 32:5
**gsd002840** 35:10 66:16
**guess** 13:8

**h**

**h** 5:2,8 29:20 29:20 40:4,13 40:13 47:22 49:11,15,19 50:19 59:3 66:2 67:2,11
**h.l.** 1:3
**hae** 40:13
**half** 19:8 41:9 60:10
**hand** 32:11 51:3 69:21
**handwriting** 34:9,13,14 42:11
**happened** 22:24 25:7
**headquarters** 8:18
**health** 1:10 3:17 6:16,23

**[health - kinds]**

7:2 9:7 11:24 24:7 39:20,22 45:8,12 55:20 56:4 57:8,13

**healthcare** 1:10 3:13 5:25

**hear** 62:14

**heard** 29:22

**hei** 1:3

**held** 2:5 7:14 28:7 32:16 33:16

**help** 20:6 21:4 51:13

**helped** 49:2 62:21 63:5

**hereinbefore** 65:11 69:12

**hereunto** 69:20

**hired** 27:8 44:12

**hit** 56:25

**hold** 27:23 28:3

**holding** 32:10

**home** 6:16,23 7:2,17,24 8:3 8:15,25 9:4,7,8 9:11,20,23 10:2 11:15,24 13:25 14:5,8,9 14:16 15:22 16:10 21:21 22:16 33:3 37:3,9 39:20

39:22 45:7,11 46:14 55:20 56:4 57:8,13 66:13,25

**hour** 12:19 19:10 55:17

**hours** 9:5 12:20 19:8 46:5,9 55:18 56:7 60:9,10 64:11

**housing** 59:8

**huang** 3:6 7:11 13:23 20:14 24:25 27:23 30:23 31:4,23 32:13 33:13 34:5 39:5 61:5 64:12,15 67:22

**hui** 1:4,4,4

**hundred** 19:2,3

**hurts** 58:11

**i**

**identification** 25:16 28:24 33:6 35:12 41:18 43:25 46:17 49:16

**identified** 29:4 46:20

**illnesses** 12:13

**impede** 10:25

**important** 31:25

**indicate** 37:5

**indicates** 26:12

**indicating** 26:10 29:11,13 31:12,20 32:18 32:23 34:11 35:23 36:13 38:13 39:17 40:2 42:8,18 45:14,16,23 50:5 54:14 62:17

**individually** 7:10

**influence** 10:22

**information** 49:13 67:12 68:2,3

**informed** 14:6 14:13

**initially** 12:9 17:25 52:19

**ins** 63:21

**instructions** 10:4 45:10

**interaction** 48:5

**interested** 69:18

**interpret** 62:22 63:6

**interpretation** 10:17

**interpreter** 3:21 5:3,10 16:18 23:6,9 23:24 26:25 27:13 28:4 34:17 35:2 39:8 40:18 48:12 50:15 53:8 55:5 59:3 59:20

**interpreter's** 22:20,22 43:17 56:16 63:14

**issue** 14:4,15

**issues** 24:7

**j**

**j** 1:4 27:2

**jersey** 3:18

**jian** 1:4

**jin** 26:23

**job** 12:16 57:10

**jobs** 11:19,21 27:11 60:19

**jose** 3:8

**ju** 58:24,24

**judge** 4:13

**justice** 3:4

**k**

**k** 5:2,2 40:17 58:25

**khp** 1:8

**kinds** 63:17

**[know - mandarin]**

**know** 8:20 10:15,18 14:18 14:19,20,22 17:11,12,20 18:21 20:15 26:23 27:4,20 29:18 30:4,5 30:25 33:21 34:21 36:14,18 37:10 42:2,13 42:17,22,23 43:6,7,12 45:2 51:14,16,25 53:3 55:14 60:18 62:7,10 62:18

**kwai** 40:17

**kwok** 3:21 14:14

**kwok's** 10:17

**l**

**l** 4:2,2 5:1,8 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1,4 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 65:2 66:1 67:1 68:1 69:1

**labeled** 32:4 33:9 35:15 44:4,19

**labor** 15:4 28:22 66:12

**laborer** 60:13

**lady** 23:13 54:18 58:21 60:2

**lai** 40:4

**landlord** 57:22 58:20 59:5,11

**language** 3:22

**law** 3:4,8

**lawsuit** 6:10,14 6:15,17 7:9,16 15:9,13 19:18 19:21 20:2,20 21:4,6,8,12,15 21:17 68:7

**lawsuits** 6:20 6:23,25

**lawyer** 20:24 61:7 62:11,13 62:14

**lawyers** 62:21 63:5

**leave** 56:23

**lee** 2:8 69:8,25

**left** 13:4 37:8 37:11

**leg** 58:11

**letter** 18:2,7,15 19:16,25 28:21 66:10

**li** 1:3,3,4,4 2:3 5:17 56:2 65:15 70:2,3 70:21

**limit** 18:11,12 20:7

**lin** 1:3 55:2,6 55:13 56:2

**line** 70:5

**little** 15:18 19:3 48:7 51:13

**live** 46:14 57:11 59:6 67:9

**llc** 3:12 70:1

**llp** 3:16

**located** 8:15,19 16:14 17:4,10 54:7,10,16,18 58:6 60:17,21

**location** 13:21 54:2 60:21

**long** 20:5 23:15 59:23 60:4

**look** 29:10 31:10,19 42:12 43:8 49:18 53:5 61:8

**looked** 36:24 50:2

**looking** 22:25 36:16,19 50:4 50:8,16

**looks** 32:6 34:13 47:2

**lot** 40:23 58:11

**lts** 1:8

**m**

**m** 27:2

**made** 13:23

**mail** 52:23

**make** 6:15 19:9 29:12 47:23

**man** 23:11

**mandarin** 3:21 5:2,5,5 7:5,7,8 8:18 9:24 13:20 15:12 16:2,3,16 17:6 17:7 18:17 22:21,23 23:2 23:18 24:4,5 26:13 38:17

39:21 46:5 57:21 58:2,3,8 58:23 59:13,17 59:21 63:8,16

**manhattan** 59:15,16

**march** 8:6

**mark** 25:11 28:19 32:24 35:6 41:11 43:19 46:11 49:10

**marked** 25:14 25:19 28:23 32:20 33:4,25 35:10 41:17 43:24 46:16 49:14

**market** 59:12

**marriage** 69:17

**matter** 31:22 69:19

**mean** 14:12 30:16 34:23 42:18 44:16 56:4,12

**meaning** 45:15 60:21

**meant** 48:4

**medications** 10:22

**mei** 1:3,4

**message** 20:3

**met** 27:6

**middle** 13:13

**mine** 42:8 52:5

**ming** 26:24

**minutes** 56:15

**miscalculated** 48:21

**mistake** 13:23 49:8

**money** 8:24 18:5,22 19:9 19:14 21:6

**month** 52:25

**months** 13:19

**morning** 5:22

**mu** 1:4

**muniz** 3:8

**n**

**n** 3:2 4:2 5:8 23:9 27:2,2,14 29:20,20 40:4 40:13,14,17,17 40:18 59:3,4,4 65:2 67:17

**name** 5:15,23 14:21 15:22 23:5,7 26:10 27:2 29:9,13 29:19 38:24,25 39:7,14,15,16 39:18,25 40:3 40:16 42:5,12 55:12 58:22,23

70:2,3

**named** 40:13 55:6 62:18 63:24

**names** 11:19 24:22 28:2 39:23 56:9 64:4

**nan** 58:24

**national** 3:4

**naturalized** 6:7

**neat** 31:11 32:8 32:8

**neatly** 31:18,18 32:12

**need** 34:20 51:23 52:2

**needs** 36:9

**never** 25:2,6 28:10

**new** 1:2,10 2:7 2:8,10 3:6,6,10 3:14,14,17,18 5:11,20,20 69:4,5,9 70:1

**newark** 3:18

**ngor** 40:17

**night** 12:14

**nine** 19:12

**non** 30:3

**notary** 2:9 5:10 65:22 69:8 70:25

**notification** 15:14

**notify** 7:9

**number** 37:4,9 37:18,18 66:7 67:7

**numbers** 37:22 38:11,15

**nurse** 41:6,6

**o**

**o** 4:2 5:2 27:3 27:14,14 40:17 40:17,18 65:2

**oath** 4:12 11:11

**objection** 24:25 27:23 31:23 33:13 62:5,23

**objections** 4:21

**occasionally** 9:16

**october** 33:4 46:15 66:14 67:10

**office** 3:8 60:24 60:25

**offices** 2:5

**okay** 6:4,9,13 6:25 8:2,14,23 9:3,6 10:6,9,9 10:13,20,21,24 11:10,14,20 12:21 13:3,8 14:2,23 15:16

**[okay - plaintiff's]**                                   Page 10

16:13 17:3,9
17:12,22 18:6
19:21,24 21:5
21:10,14 22:4
22:13 23:4,14
23:21 24:8,14
25:10,23 26:11
26:19,23 27:8
28:10,17 30:5
31:13 32:2,9
32:19 33:24
34:15,25 36:10
36:14,23 37:19
37:21 38:10,23
39:12 40:3,6
40:12,24 41:10
42:10,14,24
43:8,16,18
45:2,9,21,25
46:7,10,22
47:4 48:17,23
50:3,12 51:7
51:14,17 52:10
52:13,16 53:2
53:14,18,23
54:6,9,12,20
55:7 57:14,18
57:24 58:5
60:3,23 61:2
61:18 63:15,23
64:12
**older** 23:13
55:4,5 57:8
58:21

**once** 41:9 52:25
**order** 2:4
**ordering** 64:15
**organization**
29:23 30:3
**original** 4:9,17
16:19
**outcome** 69:18
**own** 32:7
**owns** 17:13,17
**oyoung** 16:16
16:23,24 27:10
27:13 47:9,11
47:21 48:25
49:7 51:12
54:16,17 60:21

**p**

**p** 3:2,2 4:2
**p.m.** 64:17
**page** 26:2,5
29:14 30:10,19
31:14,15,16
32:3 35:19
36:11,17,17
37:20 38:18
42:4,6,24 43:8
43:10 44:5
66:6 67:6,19
68:3 70:5
**pages** 36:19,24
45:15,16,23
**paid** 9:25 48:19
52:19,20,22

53:2,4,10,13
57:24
**pandemic**
56:25,25 57:4
57:6,7,16,16,19
60:5
**paper** 53:15
**park** 3:14
**part** 21:12
23:23 24:10,16
50:21
**partially** 50:23
50:24 51:11,12
**particular**
37:13,14
**parties** 4:7
69:16
**passed** 18:11
20:8
**past** 48:22
**patient** 13:14
13:15 22:24
23:11 24:17
37:15,16
**patient's** 23:5,7
37:2,8 39:24
**patients** 12:13
13:7 24:12,21
36:7 64:5,9
**paul** 2:8 69:8
69:25
**pay** 48:21
52:17

**pending** 10:12
**period** 46:8
**permission**
30:21 39:3
**person** 21:3
27:4,6 40:7,12
43:13 55:14,16
55:20 56:3,6
57:25 59:11
**pertaining** 68:6
**perusing** 25:23
29:9 30:12
34:3 35:17
36:20 41:25
43:3,9 44:7
45:20 46:22
49:20 50:20
61:10
**phone** 20:3
27:12 37:9,22
38:11,15
**phonetic** 56:2
**phonetically**
23:10 27:14
**pick** 52:24,25
53:21,25 54:2
**picked** 59:8
**place** 65:11
**plaintiff** 2:2
15:2
**plaintiff's**
25:14 66:9
68:6

**plaintiffs** 1:6 3:5

**please** 5:15 11:4

**plus** 7:25 19:2

**point** 22:7 39:3 42:6 49:25 50:3

**possible** 62:3

**possibly** 7:20 8:19 23:17 34:10,11 47:2 51:10 54:4

**preliminary** 10:4

**prescription** 51:25

**present** 3:11,19 3:20 58:15

**prestige** 13:25 14:7,11,17 15:21 16:3,10 21:21 22:17 24:5

**previous** 45:14 57:12

**previously** 63:9

**print** 53:20

**problem** 25:2

**procedure** 2:5

**produce** 15:2

**produced** 15:6 25:22 29:7

**production** 68:5

**profit** 30:3

**properly** 48:19

**provide** 40:24 44:13 47:14

**provided** 37:24 41:4 53:11 62:13

**public** 2:9 5:10 65:22 69:8 70:25

**purport** 42:16 43:4,11

**purported** 31:2

**purpose** 45:3

**pursuant** 2:3

**put** 53:22

**q**

**question** 10:12 10:15,18 11:7 16:19 24:8,14 24:23 26:7 30:17,24 31:8 32:2 34:8 36:22 42:3,10 42:14,21 43:5 48:3 49:21 54:9 60:15 63:4

**questions** 5:4 10:7,8 49:23 49:23 64:13

**quit** 57:9

**quite** 40:23

**quote** 21:18

**r**

**r** 1:4 3:2 4:2 5:2 5:2 40:17,18 65:2 69:2

**rarely** 48:7,8 54:24

**ray** 56:2

**raymond** 3:18

**read** 11:4,7 18:3 20:6 38:4 48:12,15 51:19 52:14 61:21

**reading** 51:23

**realize** 11:10

**really** 14:21 22:12 23:25 40:5 52:14,15 60:18 62:7,9 62:25

**reason** 70:5

**recall** 12:21 18:19 23:14 28:14 40:3,7 41:3 51:7 54:21 55:23 60:4

**receive** 8:23 18:14,22 21:5 45:9

**received** 19:14 19:24 20:3 21:8 44:22

**receiving** 28:14 51:7

**recess** 35:4 56:18

**recognize** 43:14,15 56:10

**record** 5:16 7:13 14:25 28:5,6 29:13 30:14 32:14,15 33:14,15 41:20 69:13

**rectify** 49:7

**referred** 11:6 48:14

**referring** 14:9 16:17 32:19 45:17 55:9

**related** 69:16

**relates** 36:8 45:6 63:20

**relative** 55:10

**relied** 21:3

**remember** 7:22 10:20 11:19 19:11 20:15,18 20:19,23 21:2 22:12 24:21 33:19,20 40:5 40:9,10,12,15 40:16,21 41:8

45:24 49:22,24
51:10 54:25
56:10 61:11,13
61:19 62:15,25
63:3,11,18
64:4,8
**repeat** 11:3
23:25
**rephrase** 10:16
10:19
**reporter** 11:8
25:17 29:2
33:7 35:13
41:19 44:2
46:18 48:16
49:17
**reporting** 2:6
70:1
**represent**
27:25 29:6
**representation**
28:21 66:10
**represented**
20:24
**requested**
14:25 68:2
**require** 35:22
**reserved** 4:22
**respect** 33:8
36:10 37:13
**respective** 4:6
**responses**
25:14 66:9

**result** 8:24
18:23 19:16,20
**retained** 67:14
**right** 8:21
20:17 31:5
39:6 42:5 51:3
52:8,9 55:10
56:12 58:17,17
64:2
**ronon** 3:16
**ruan** 1:4
**rules** 2:4 49:22
**run** 52:2
**rush** 26:17

**s**

**s** 3:2 4:2,2
40:13 66:2
67:2 70:5
**saw** 62:17
**saying** 52:15
**says** 38:24 39:6
39:14,19,22,23
39:24,25
**sealing** 4:7
**second** 30:10
31:15 32:3
36:11,17 37:20
42:24
**see** 30:19 35:20
42:6 51:2
56:11 61:16
**seeing** 36:12
61:13,19

**seems** 42:8
**seen** 33:17
35:17 44:19
62:4,8,16 63:2
63:10
**send** 17:8
**senior** 1:10
3:17
**sent** 15:14
18:18
**serial** 37:18
**service** 4:16
24:20
**services** 3:22
**set** 69:12,21
**several** 11:17
13:19 56:9
**share** 50:17
**sheet** 37:14
70:1
**sheets** 41:15,23
66:18
**sheng** 40:13
**shift** 55:17
**short** 35:4
56:18
**shortly** 57:7
**show** 31:3
33:24 35:14
**showing** 25:18
29:3 41:21
44:3 46:19
**sick** 9:21

**side** 51:3
**sign** 26:17
31:18 32:11,12
63:21
**signature** 26:5
26:8,9 29:10
29:16 30:6,18
31:2,9,10,14,16
32:5,17,18,22
34:7,9 42:15
42:16,17,20
43:2,11 46:24
46:25 47:3
51:2,5 69:24
**signatures**
31:11 63:20
**signed** 4:10,12
4:15 26:18,20
32:10
**similar** 31:15
32:7
**simple** 24:23
**simply** 10:7
**sister** 55:2,4,5,8
**sitting** 20:17
**six** 19:2,3 46:9
**skills** 44:15
**sleep** 12:14
**slow** 39:10
**slowly** 39:13
**small** 52:11,12
**solemnly** 5:3
**somebody**
26:12 62:18

**[sorry - told]** Page 13

sorry 10:13 16:18 23:6 48:10 55:3 63:8
southern 1:2
speak 27:16
specifically 41:4
specified 65:11
spelled 58:25
spelling 29:19 59:2
spoke 28:10
square 2:7
ss 69:4
staff 29:23 31:7
stamped 30:14 35:10 41:23 43:23 66:16,22
start 57:18 60:5
started 12:17 57:8,19 63:25
starting 22:11
starts 58:25
state 2:9 5:11 5:15 69:4,9
states 1:2
stevens 3:16
stipulated 4:5 4:20
stop 12:15 24:15,20,24 25:5,6

stopped 23:22 24:9 25:2,6 57:2,2,21 58:11
stradley 3:16
street 3:10 5:19 8:19 54:4,8 59:13 60:22
stub 53:12,14
submit 25:20
subscribed 65:18 70:22
substitute 24:3 24:12,20 25:8 25:8 27:24 40:10,11,21 63:25 64:5,10
sue 20:9,10 60:7,10
suite 3:18
supervision 41:14 66:18
supervisor 11:16 16:22
supposed 37:5 37:10 60:9
supposedly 18:10
sure 20:15 29:12 52:7 62:9
swear 6:7
switched 12:16 13:14,19 58:4

swore 5:3
sworn 4:10 5:9 65:5,18 69:12 70:22
system 38:21

**t**

t 4:2,2 5:2 65:2 66:2 67:2 69:2 69:2
table 32:11
take 7:11 12:2 34:15 39:13 43:16 49:18 56:14 57:22
taken 2:3 35:5 56:19
talking 45:22
tau 62:19 63:5 63:18
telephone 11:22 37:4
tell 11:12 36:6 36:21 52:15 53:12 61:23
ten 19:12 57:20
terms 15:11 47:11,18 49:3
test 11:25 12:2
testified 5:12
testify 11:2 65:5
testimony 11:11 16:5

17:16 65:6,10 69:14
tests 44:14,17
thank 44:7 52:8 56:17
thing 34:18
think 30:8 54:23 56:15 60:16 62:8,16 63:2
thinking 50:4,5
third 43:8,10
three 9:12,17 12:9,19,24 13:10 16:2 21:24 22:2 41:22 44:5 46:6
time 1:15 4:22 6:8 15:23 18:11,11 20:5 20:7 22:14 24:6 26:16 36:8 38:20,22 39:20 46:9 57:17,23 65:10
times 2:6
today 11:11 21:15 61:6,17 61:18 62:17
today's 61:14
told 20:7 39:8 55:24 62:11

**[took - working]**                                                      Page 14

**took**  20:4 21:9 57:10,12,25 59:11,25 63:24

**top**  26:5 42:4,5

**tower**  2:7

**training**  8:16 11:25 40:25 41:5

**transcript** 64:16 65:9,9

**transfer**  23:17

**transferred** 22:25

**translate**  5:3 26:15 33:11 39:11 47:6,9

**translated** 26:12,21 33:12 39:10

**translating** 63:18

**translation** 14:15 22:21,22 43:18 56:17 63:15

**trial**  4:22

**trouble**  52:4

**true**  65:9 69:13

**truth**  11:12 31:21 65:5

**truthfully**  11:2

**try**  10:16

**trying**  13:8

**turn**  25:25 30:9 37:19

**two**  21:9 27:11 35:19 45:14,15 45:23

**u**

**u**  4:2 5:2 27:14 29:20 40:4 47:22

**under**  10:21 11:11

**understand** 10:14,17 18:2 18:13 20:4 38:7,9,12 47:12,17,17,18 48:10

**understood** 37:19 38:10

**united**  1:2

**unquote**  21:18

**unsigned**  4:14

**use**  37:16

**used**  4:14 14:15

**usually**  31:11 31:17 32:7,11 48:25

**v**

**v**  70:2

**veritext**  2:6 70:1

**version**  53:17

**w**

**w**  5:2 40:14,17 40:17

**wait**  12:3

**waived**  4:9

**wang**  17:14,17 40:13 48:4,6 49:3 54:18

**want**  25:25 31:3 52:5 57:9

**wanted**  49:25 57:22

**wants**  30:25 35:2

**water**  34:24

**way**  40:7 69:18

**week**  9:10,15 12:7,25 13:10 13:11,16,22 46:2

**went**  12:24 35:21 37:2

**whereof**  69:20

**witness**  4:10,16 4:18 5:8 13:24 41:21 64:18 69:11,14,20

**witness'**  70:3

**woman**  23:12 63:24

**wong**  40:16

**word**  14:15

**words**  27:25 52:11

**work**  7:23 8:3 9:5,11 12:3,4 13:22 15:16 19:4 22:9 24:3 24:13,19,20 25:3 36:8 38:22 40:22 46:3,6 47:18 55:12,16 56:20 57:3,5,9,13,17 58:9,13,19 59:23 60:9 63:25 64:6,8 64:10

**worked**  8:10 11:14 12:6 13:3,18 16:6 16:20 22:6,14 23:15 46:9 47:4 52:16 55:17,23 56:7 58:10,20

**worker**  25:8 33:3 46:14 66:13,25

**workers**  17:8 29:24 31:7 54:23,25

**working**  12:17 15:21 19:10 22:15 23:22 24:9,15,24

**[working - zhu]**

25:9 27:9 37:3
45:25 50:6
57:2,19 58:15
**works**   17:6
40:10,11 56:3
**write**   31:17
38:21
**writing**   15:7
32:6,7
**written**   31:19
61:25
**wu**   23:8 63:24

**x**

**x**   1:3,4,5,12
23:9 66:2 67:2
67:17
**xiao**   1:4,4
**xiu**   1:3,5
**xiying**   23:8

**y**

**y**   23:9 27:14
29:20
**yang**   55:12
**ye**   55:13
**year**   12:21
15:19 16:7
41:9
**years**   7:25 8:2
8:11 21:9 22:9
**york**   1:2,11 2:7
2:8,10 3:6,6,10
3:14,14,17
5:11,20,20

69:4,5,9 70:1
**young**   3:16
**yueheng**   29:18

**z**

**z**   1:4 29:20
47:22 59:3
**zhan**   1:4
**zhang**   29:18
58:24
**zheng**   1:4
**zhu**   1:5 16:23
16:23 27:10
47:22 48:4
49:3 54:17

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT G



**BRENLLA**
LAW FIRM

<u>**VIA E-MAIL**</u>
April 30, 2026

Karen Kithan Yau, Esq.
Getman Sweeney & Dunn, Esq.
260 Fair Street
Kingston, NY 12401

*Li, et al v. Greatcare, Inc., CenterLight Health System., et al*
<u>Civil Action No: 24 Civ. 7401 (LTS)(KHP)</u>

Dear Ms. Yau:

I write this letter to address Plaintiffs' consistent pattern of refusing to comply with discovery.

During Li Chen's deposition Today, Ms. Chen testified that she has filed various complaints with the Department of Labor as well as a lawsuit claiming unpaid wages against various employers. Ms. Chen testified that she received $4,600 from one of the administrative claims. Notably, Plaintiffs have refused to disclose these claims. In fact, an identical issue came up when Defendants discovered Plaintiff Hei Li has a current lawsuit claiming unpaid wages. I request that Plaintiffs immediately comply with their discovery obligations and provide the parties with all claims filed by Ms. Chen and every other Plaintiff. CenterLight reserves its right to recall Ms. Chen for additional questioning once Plaintiffs comply with their discovery obligations and provide the discovery. Additionally, I discovered that Plaintiff Hui X. Ruan has filed a lawsuit in state court alleging the same allegations as in the instant case. Once again, this was not disclosed to CenterLight and it does not appear that Plaintiffs disclosed this lawsuit to Senior Whole Health of New York. Once again, CenterLight requests that Plaintiffs immediately produce the documents and comply with discovery immediately.

Last, when Ms. Chen was questioned regarding her sworn responses to CenterLight's Interrogatories, she testified that no one translated the document for her and that her attorneys told her to sign the documents without translation or explanation. Thus, CenterLight does not know if it can rely upon those responses. Please provide written assurances from Plaintiffs' counsel and Plaintiff Chen that the responses to the Interrogatories are in fact accurate and can be relied upon by the parties.

If you should have any questions, please do not hesitate to contact me.

**BRENLLA, LLC**
250 Park Avenue, 7th Floor
New York, New York 10177

Office: (212) 364-5173
Fax: (646) 219-0983
gfbrenlla@brenllalaw.com
www.brenllalaw.com

Karen Kithan Yau, Esq.
April 30, 2026
2

Very truly yours,

BRENLLA, LLC

By:

George F. Brenlla

Cc:  All counsel of Record (via e-mail)