**BALANCE LAW FIRM**
1 World Trade Ctr Ste 8500, New York, NY 10007

August 20, 2026

**VIA ECF**
The Honorable Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:** *Hei Li, et al. v. GreatCare, Inc., et al.*, No. 24-cv-7401 (LTS) (KHP)
GreatCare's Response Pursuant to the Court's August 6, 2026 Order (ECF 242)

Dear Judge Parker:

We represent Defendant GreatCare, Inc. and write pursuant to the Court's August 6, 2026 Order (ECF 242), which permits GreatCare to respond to Plaintiffs' August 13, 2026 submission (ECF 243) "to the extent it contends any of the information provided in the above submission is incorrect." GreatCare submits this letter solely for that purpose. Four categories of information in Plaintiffs' submission are inaccurate or incomplete.

**1. The "Missing Payroll Documents" Column Identifies a Change in Record Format, not Missing Documents.**

Column G of Plaintiffs' chart marks 440 weeks as having "missing payroll documents." Nearly all of those marks — 434 of the 440 (98.6%) — fall before October 1, 2018, six years before the Complaint was filed on October 1, 2024. By year, the marks fall as follows: 35 in 2015; 91 in 2016; 192 in 2017; 117 in 2018; two in 2019; none in 2020; two in 2021; none in 2022; and one in 2023. As explained in Barbara Wang's declaration (ECF 228-2), GreatCare has used the same payroll service provider since 2015; between year-end 2018 and early 2019, GreatCare migrated its payroll data to a newer system. Full-format printed paystubs exist for pay periods after the migration. For earlier pay periods, GreatCare produced the responsive payroll data in payroll-register and Excel-spreadsheet form in August 2025. (ECF 228-2 ¶ 20) Thus, Plaintiffs' Column G records a difference in the format of the produced documents, not missing documents.

Two points warrant mention here. Plaintiff Hei Li was hired on June 17, 2017. The first of her two flagged payroll weeks — the week beginning June 11, 2017 — therefore includes at most one day of employment. No payroll record could exist for the six days preceding her hire, and the chart itself records only a single 24-hour shift for that week. In 2017, GreatCare paid on a bi-weekly cycle, so each produced check corresponds to two of the chart's Sunday-start weeks. Plaintiffs' use of weekly rows for bi-weekly pay periods creates, at first blush, the appearance of gaps where none exist. GreatCare's payroll weeks also run Saturday-to-Friday, offset from the Sunday-start convention used in Plaintiffs' chart.

**2. The Chart Misstates the Declaration it Cites.**

Plaintiffs' Column E header states that "all paper-based documents were destroyed after 2022 based on Barbara Wang's declaration to the Court," citing ECF 228-2 ¶¶ 8–13, and that "[d]igital copies of these documents were not produced." Three statements in that header are incorrect. *First*, the cited paragraphs nowhere describe any destruction of documents "after 2022." They instead describe a rolling, ordinary-course disposition of patient-side paper records more than six years past the conclusion of services, consistent with 10 N.Y.C.R.R. § 766.6(b). That practice is "not conducted on a fixed annual schedule" and "not triggered by litigation, regulatory inquiry, or other external events." (ECF 228-2 ¶ 10(b)) *Second*, the assertion that digital copies "were not produced" omits a sentence in the same paragraph of Ms. Wang's declaration, which states that the shredded paper records had first been saved digitally and that those digital copies are available in GreatCare's HHAeXchange portal. (*Id.*) That is the same HHAeXchange source from which Plaintiffs state they obtained their data. *Third*, Plaintiffs' "all paper-based documents" statement misleadingly sweeps in aide-side records: timesheets, personnel files, and payroll records. The declaration states that GreatCare has retained those records continuously from 2015 forward and never destroyed them. (ECF 228-2 ¶ 10(a)) The declaration also records GreatCare's standing offer to search for and produce any specifically identified surviving patient-side record; Plaintiffs have not identified one. (*Id.* ¶ 10(b))

**3. Plaintiffs' Submission Does Not Answer the Court's Question Whether the Column G and H Documents Were Destroyed or Merely Not Produced.**

The Court's Order (ECF 242) directed Plaintiffs to state, "[f]or each category of documents that is missing," whether each missing document "was destroyed or merely not produced," and, for documents contended destroyed, whether destruction occurred "in 2022 or thereafter" and the basis for that contention. For the 2,021 weekly entries marked in Columns G and H, Plaintiffs' submission says only that "Plaintiffs contend these documents are missing." No destruction contention, date, or basis is stated for either category. The single sentence regarding destruction in the Column E header addresses only patient care records. On the face of their submission, Plaintiffs have advanced no contention that any payroll or time record was destroyed.

**4. The Chart's Date Range and Its Own Annotations Contradict the Missing-Records Allegation.**

Plaintiffs' chart runs from May 3, 2015 through August 20, 2023; the Complaint was filed October 1, 2024, and served October 18, 2024. Of the 2,117 charted weeks, 861 (carrying 25,355 of the 60,192 claimed hours) precede October 1, 2018; two Plaintiffs (Li Chen and Mei F. Chen) are charted entirely within 2015–2017. At the other end, the chart flags weeks as recently as August 2023. Under the six-year practice described in Ms. Wang's declaration (ECF 228-2 ¶¶ 9–10), those records would not reach any disposition point until 2029. Thus, for those weeks, "missing" cannot mean destroyed.

Nor can Plaintiffs' chart be reconciled with Plaintiffs' own cover letter. The Court ordered Plaintiffs to state whether other documents "can be used to fill in the gaps, or if there are none, please so state." Plaintiffs' cover letter answers that question: Plaintiffs "were able to obtain information showing the precise clock-in and clock-out time of each shift worked by Plaintiffs, the total amount they were paid per week, and the hourly rate at which they were paid" from HHAeXchange by third-party subpoena. They add that "any gaps were filled by HHAX data and/or the Plaintiffs' own recollection." (ECF 243-1 at 1) Plaintiffs' chart nonetheless marks 2,021 weekly entries as "missing" payroll or time records. The statements cannot both be correct: to the extent Columns G and H are read to convey that payroll and time information is unavailable to Plaintiffs for those weeks, that characterization is incorrect on the submission's own terms.

Column E's legend likewise states that the documents identified there "were otherwise covered by documents produced by the MLTCs and/or NYSDOH." Moreover, according to the legend on Plaintiffs' chart, 1,321 of the 2,117 weeks (62%) are flagged solely for a "missing care plan from MLTC only." The MLTC co-defendants generate and maintain those care plans, and they keep their own records of authorizations and plans of care. (ECF 228-2 ¶ 19) A missing MLTC care plan is not a GreatCare internal record whose absence the Column E header could attribute to GreatCare's disposition practice.

By Plaintiffs' own account, the only category without an alternative source is Column F, which contains 23 of the chart's 2,117 weekly entries (1.1%), representing 638 of the 60,192 claimed hours and concerning seven care recipients and five Plaintiffs. Thirteen of those 23 weeks predate October 1, 2018.

Finally, two features of Plaintiffs' chart are matters of simple arithmetic that the Court can verify on the face of the submission. First, in every one of the 2,117 rows, the "unpaid hours" figure equals exactly eleven times the number of 24-hour shifts — the theoretical maximum — without variation for any patient, week, or year across eight years. The 60,192-hour figure was therefore not derived from any record, produced or missing; it is a single assumption applied uniformly. Second, 536 of the 2,117 weeks (25%) carry no missing-document mark in any column, yet claim the same eleven hours per shift as the weeks that do. The claimed hours are identical, regardless of whether documents are said to be missing or not. In short, the chart's own numbers do not depend on any of the documents that the chart identifies as missing.

GreatCare remains prepared, as stated in the record, to search for and produce any specifically identified record.

Respectfully submitted,

B. Robert Liu

Robert Liu, Esq.
Balance Law Firm
*Counsel for Defendant GreatCare, Inc.*