USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:__________
DATE FILED: 9/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HEI LI, et al.,

Plaintiffs,

-against-

GREATCARE, INC., et al.,

Defendants.
-----------------------------------------------------------------X

**24-CV-7401 (LTS) (KHP)**

**OPINION AND ORDER ON MOTION FOR RULE 37 SANCTIONS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiffs Hei Li, Zhu H.L. Lin, Li Chen, Xiu F. Chen, Mei F. Chen, Hui He, Hui Li, Zhan J. Li, Hui X. Ruan, Jian R. Xiao, Mei Z. Xiao, Mu Z. Zhang, Bi Y. Zheng, and Xiu X. Zhu (collectively, "Plaintiffs") seek an order sanctioning Defendant GreatCare, Inc. ("GreatCare") pursuant to Federal Rule of Civil Procedure ("Rule") 37 and the Court's inherent power. For the reasons set forth below, Plaintiffs' motion for sanctions is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs, who are all home care aides providing in home personal care services, bring this action against GreatCare, a home health care service provider, and two managed long-term care companies ("MLTC"), CenterLight Healthcare Inc. ("CenterLight") and Senior Whole Health of New York ("SWHNY") (collectively "Defendants"). (ECF No. 77 ¶¶ 50-52) Plaintiffs allege that Defendants acted as joint employers and unlawfully denied them wages, overtime compensation, benefits, and spread-of-hours pay in violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Home Care Worker Wage Parity Act ("Wage Parity Act").

**A. The Asserted Failures to Comply with Discovery Orders**

1. The First Court Order

On February 19, 2025, following an initial case management conference, the Court ordered GreatCare to provide Plaintiffs, by April 21, 2025, with "the information needed to identify the managed long-term care entities implicated by the Plaintiffs" and to serve initial disclosures, document requests, and interrogatories by March 12, 2025. (ECF No. 40) In a joint status letter filed on March 19, 2025, Plaintiffs and CenterLight represented that GreatCare had failed to participate meaningfully in discovery. Among other things, GreatCare had not served initial disclosures or discovery requests, had declined to join the status letter, and had not identified the relevant MLTCs. (ECF No. 42) Plaintiffs therefore subpoenaed Homecare Software Solutions, LLC d/b/a HHAeXchange, a third party, to obtain the information they sought from GreatCare and subsequently requested additional time to amend their complaint. (*Id.*; ECF No. 49) GreatCare never responded to the March 19, 2025 status letter.

2. The Second Court Order

Following the joint status letter, the Court scheduled a case management conference for April 30, 2025. (ECF No. 44) GreatCare's counsel, however, failed to appear as ordered. (ECF No. 48) In a Post-Conference Order, the Court directed Plaintiffs and GreatCare to meet and confer concerning Plaintiffs' discovery requests and further directed Plaintiffs, absent a resolution, to move to compel or for sanctions by May 30, 2025. (*Id.*)

In a joint status letter dated May 30, 2025, the parties reported that they had met and conferred concerning GreatCare's discovery deficiencies. (ECF No. 54) During that conference, GreatCare's counsel acknowledged that he had not yet reviewed Plaintiffs' document requests

with his client. (*Id*. at 1) GreatCare produced additional documents on May 22 and 23, 2025, but the production reportedly related only to certain Plaintiffs. (*Id*. at 2-3) GreatCare also withheld documents predating October 2018 based on its determination that claims arising before that date were barred by the statute of limitations. (*Id*. at 3) Because the parties' discussions remained ongoing, Plaintiffs requested an extension of the deadline to move to compel or for sanctions, which the Court granted. (*Id*. at 5; ECF Nos. 58, 61)

On July 11, 2025, Plaintiffs filed a motion to compel and for sanctions under Federal Rule of Civil Procedure 37, alleging that, among other things, GreatCare had failed to comply with the Court's order at ECF No. 40. Plaintiffs filed a supporting memorandum of law and exhibits on July 14, 2025. (ECF Nos. 67-68) GreatCare responded by letter on July 17, 2025, asserting, in sum and substance, that it had substantially complied with Plaintiffs' discovery requests. (ECF No. 71) The Court denied the motion as premature, directed the parties to meet and confer further, and ordered GreatCare to produce payroll records from 2015 to the present for each Plaintiff. (ECF No. 73) Plaintiffs represent that GreatCare still has not produced those records. (ECF No. 211 at 5) However Plaintiffs, have been able to completely reconstruct the payroll records using the information it received from HHAeXchange (which stores electronic records of GreatCare). (ECF No. 244-1)

3. <u>The Third Court Order</u>

On August 14, 2025, the Court directed GreatCare to respond to Plaintiffs' August 13, 2025 letter, which identified additional discovery deficiencies and raised concerns regarding the possible spoliation of evidence. The Court ordered GreatCare to respond within seven days and

expressly warned that "[f]ailure to comply with discovery obligations may result in sanctions under Rule 37." (ECF No. 76) GreatCare did not respond as ordered.

4. The Fourth Court Order

At a case management conference held on February 2, 2026, the Court learned, among other things, that GreatCare's Rule 30(b)(6) representative – its Vice President and Head of Operations, Barbara Wang – searched only her personal Yahoo email account in response to Plaintiffs' discovery requests for communications. In its Post-Conference Order, the Court observed that it had become "plain that counsel for GreatCare has not supervised discovery," because counsel could not describe the documents that had been produced, identify any other email accounts that had been searched, or explain which repositories contained potentially responsive information. (ECF No. 162) The Court further found that counsel's failures had delayed the proceedings and necessitated otherwise avoidable motion practice, characterizing the conduct as "unacceptable." (*Id.*) For the second time, the Court warned GreatCare that "sanctions may be imposed for violations of the discovery rules" and directed it to submit a letter detailing the steps taken to complete the production discussed during the conference. (*Id.*)

Although GreatCare timely submitted a letter, Plaintiffs contend that it did not substantially comply with the Court's directive. (ECF No. 165) Specifically, Plaintiffs argue the letter contained several false or materially misleading representations and did not provide a complete response as directed by the Court. (ECF No. 211 at 6) First, Plaintiffs take issue with GreatCare's assertion that it was required to retain records for only three years, notwithstanding regulations requiring retention for at least six years and its contracts with

SWHNY and CenterLight requiring retention for ten years. Second, GreatCare represented that fax cover sheets had been destroyed, though Ms. Wang later testified in a deposition that fax communications with the MLTCs were maintained in a physical binder at GreatCare's office. (ECF No. 212-5 at 34:21-36:10, 205:21-25) Third, GreatCare represented that a search of all email repositories had revealed no communications with insurers, even though SWHNY's production contained emails exchanged between the MLTCs and several GreatCare employees.[1]

**B. Substitution of Counsel**

The Court also directed GreatCare to show cause at the March 2, 2026 case management conference as to why sanctions should not be imposed for the discovery deficiencies identified in the record. (ECF No. 169) Rather than respond substantively to the identified deficiencies, GreatCare moved to substitute new counsel for Jose A. Muniz and to adjourn the March 2, 2026 conference so that incoming counsel could review the record thoroughly. (ECF No. 173) The Court granted both the substitution and the requested adjournment. (ECF Nos. 173, 175) By March 27, 2026, however, GreatCare's new counsel had moved to withdraw, and Mr. Muniz resumed his representation of GreatCare. (ECF Nos. 183-185)

On March 30, 2026, Plaintiffs requested that the Court renew its Order requiring GreatCare to show cause why sanctions should not be imposed for its failure to comply with prior discovery orders. Plaintiffs also asked the Court to consider additional sanctions based on

[1] In their memorandum, Plaintiffs' refer to GreatCare's submission at ECF No. 190. At the April 8, 2026 Case management Conference, GreatCare was given the opportunity to withdraw this submission from the record, and counsel for GreatCare indicated on the record that he would do so. (ECF No. 224 at 38:20-39:8) Accordingly, the filing will not be considered in connection with the instant motion.

what they characterized as GreatCare's bad-faith efforts to delay the Rule 30(b)(6) depositions and its "circular substitution of counsel." (ECF No. 186) GreatCare opposed the request on April 2, 2026, denying any deficiencies in its discovery production or gamesmanship in connection with the substitution of counsel. (ECF No. 188) GreatCare further maintains that the delays in Ms. Wang's deposition resulted from her injury and resulting need for bed rest and that GreatCare was committed to scheduling deposition dates for Ms. Wang. The depositions ultimately occurred after the Court ordered they take place in the courthouse. (ECF Nos. 200, 202, 205)

**C. GreatCare's Records**

1. "Aide-Side" vs. "Patient-Side" Records

Plaintiffs' document requests sought, among other things, records concerning Plaintiffs' duties and work activities, including service authorizations, assessments, care plans, progress notes, and related patient records. (ECF No. 68-1 at 14) According to Plaintiffs, these categories substantially overlap with records that GreatCare was required to maintain under applicable state record-retention requirements as well as its contracts with SWHNY and CenterLight. *See* 10 N.Y.C.R.R. § 766.6(a)–(b); 18 N.Y.C.R.R. § 505.14(g)(4); (ECF No. 104-2 ¶ 7.4; ECF No. 212-4 at 17). The regulations require certain patient and case records to be retained for at least six years, while GreatCare's private agreements with the MLTCs requires GreatCare to retain records concerning their members for ten years.

GreatCare, represents it maintained different categories of records for its employees and care recipients. Its "aide-side" records concerned the employment and work of home-health aides, while its "patient-side" files contained clinical and care-related records for

individual recipients. (ECF No. 228-2 ¶¶ 8-10) GreatCare maintains that the document requests Plaintiffs served primarily sought "aide-side files," and GreatCare did not interpret Plaintiffs' requests as seeking "patient-side" files as a category. (*Id.* ¶ 11)

GreatCare further asserts that, notwithstanding the six-year minimum retention period imposed by applicable regulations, its practice has been to preserve "aide-side" records for substantially longer periods. Specifically, GreatCare represents that its aide timesheets, personnel files – including caregiver application materials dating to 2015 – and payroll records have been maintained continuously from 2015 to the present. (ECF No 227-2 ¶ 10)

2. "Patient-Side" Production

GreatCare produced partial care records for five of the twenty-seven patients for whom Plaintiffs allegedly performed 24-hour live-in services during the time period relevant to this action. (ECF No. 212 ¶ 12) Plaintiffs maintain that GreatCare further failed to produce records for patients who received services within six years of the filing of the original or amended complaint. (*Id*. ¶¶ 13-14) Specifically, fifteen of the twenty-seven individuals received services from Plaintiffs after October 1, 2018 – six years before the original complaint was filed – and twelve received services after August 18, 2019 – six years before the amended complaint was filed.

GreatCare asserts that patient-side records maintained in paper form were disposed of in the ordinary course of business once six years had elapsed from the conclusion of the relevant services, typically through shredding as administrative staff had time to process them. (ECF No. 212-5 at 186:6-187:2) According to GreatCare, however, those paper records were

digitized before they were destroyed, and electronic copies of the patient-side records remain available through GreatCare's HHAeXchange portal. (ECF No 227-2 ¶ 10)

3. GreatCare's Awareness of Anticipated Litigation

At her May 1, 2026 deposition, Ms. Wang testified that she became aware in 2022 that certain Plaintiffs began filing complaints with the New York State Department of Labor alleging that GreatCare failed to compensate them for all the hours they worked during their shifts. (ECF No. 212-5 at 125:21-126:3)

**D. Authenticity of Certain Documents Produced by GreatCare**

Plaintiffs also contend that GreatCare produced records that were created, modified, or fabricated to undermine Plaintiffs' wage claims. Specifically, Plaintiffs identify nursing-visit notes they argue contain handwriting inconsistent with other portions of the records. (ECF No. 210 at 11) Specifically, they argue the notes were altered after the underlying visits. GreatCare denies that the records were modified. (ECF No. 212-5 at 84:20-87:20; 100:4-12) Plaintiffs also contend that aides were not in total control of their timesheets and that GreatCare either told Plaintiffs what times to fill in on handwritten time sheets or provided Plaintiffs with typed timesheets that were already filled before their shifts. (ECF No. 210 at 13-17)

Plaintiffs further argue GreatCare doctored letters purportedly signed by three care recipients and their family members stating that Plaintiffs providing 24-hour live-in services consistently received three one-hour meal periods, five consecutive hours of uninterrupted sleep, and adequate sleeping accommodations. Specifically, at least one letter, attributed to a care-recipient's wife, is alleged to be falsified because it contains a misspelling of her own name on the signature line. (ECF No. 212-31; ECF No. 212-32) Plaintiffs do not articulate whether the

alleged misspelling is in English or Chinese and the Court notes no such misspelling in Plaintiffs' submissions. Plaintiffs contend that other letters are similarly questionable. (ECF No. 212-9) For example, a patient, who exhibited significant memory impairment, allegedly signed letters recalling care provided years earlier, including two shifts worked by one Plaintiff in 2019, shortly before his death. In connection with Plaintiffs' motion, they have submitted certain patient records relating to that patient, however none appear to bear his signature. (ECF No. 212-9) Plaintiffs also discuss other records bearing what they claim to be similar inconsistencies. (ECF No. 210 at 12-13)

**D. GreatCare's Representations Concerning its Electronic Search for Responsive Documents**

Another flagged dispute concerns an affidavit submitted by Qingming Liu, whom GreatCare retained to search for responsive electronic records. (EFC No. 190 at 8-10) However, the filing containing Mr. Liu's affidavit has been deemed withdrawn.

**E. Delays to Ms. Wang's Depositions**

On December 1, 2025, the Court set January 30, 2026 as the deadline for completing fact discovery. (ECF No. 118) Plaintiffs scheduled Ms. Wang's deposition for January 7 and 23, 2026, but were unable to complete it after GreatCare's counsel, Mr. Muniz, advised the parties and the Court on January 20 that he had begun a trial in Kings County Supreme Court. (ECF Nos. 151, 153) In response, the Court extended discovery through March 2, 2026 for the limited purpose of completing depositions and other specified tasks and authorized Plaintiffs to conduct an additional half-day deposition of Ms. Wang concerning the scope and adequacy of GreatCare's search for responsive emails, faxes, and other documents. (ECF No. 162) The parties then scheduled Ms. Wang's depositions for February 18, 24, and 26, 2026.

On February 13, 2026, however, Mr. Muniz informed Plaintiffs' counsel that Ms. Wang fractured a rib and would be unavailable for live or remote deposition until late March or early April. (ECF No. 168) In light of that representation, Plaintiffs sought a further extension of the discovery deadline. In a letter dated April 2, 2026, GreatCare represented that Ms. Wang's injury required her to remain on bed rest and continued to impair her availability for a deposition. (ECF No. 188 at 1) GreatCare appended medical records to its letter. (*Id.* at 10). At the April 8, 2026, case management conference, when the Court inquired about the injury, Mr. Muniz asserted that "[i]t's her rib, and she says she still has pain in her back. It may be connected[,]" (ECF No. 224 at 14:24-25), and while she was not able to appear for her scheduled depositions as a result of the injury, she was able to conduct business on behalf of GreatCare remotely. (*Id.* at 16:11-23) Mr. Muniz also represented Ms. Wang's willingness to sit for a remote deposition or one closer to her residence. (*Id.* at 15:1-10) At the conference, the Court ordered Ms. Wang to sit for depositions in the courthouse. (*Id.* at 23:8-16)

At her May 1, 2026 deposition, Plaintiffs argue Ms. Wang contradicted GreatCare's broader representations concerning the nature and duration of her injury. Specifically, she testified that she had not suffered a back fracture and had remained bedridden for only approximately two to three weeks. (ECF No. 212-5 at 220:9–18, 222:16–20) She further testified that, before returning to GreatCare's Manhattan office on approximately April 17, 2026, she was able to perform limited work from home. (*Id*. at 223:6–224:5)

**F. Motion for Sanctions**

In light of the foregoing, on April 6, 2026, the Court granted Plaintiffs leave to file a motion for sanctions against GreatCare, (ECF No. 189) and on May 8, 2026 Plaintiffs filed the

motion along with supporting documents. (ECF Nos. 210-216) In sum and substance, Plaintiffs argue that over the course of this litigation, GreatCare has repeatedly failed to comply with the Court's discovery orders, spoliated evidence, and engaged in conduct amounting to an attempted fraud on the Court. Plaintiffs request that the Court enter default judgment and impose such other sanctions as are appropriate pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority. On May 22, 2026 GreatCare filed its opposition to Plaintiffs' motion along with supporting documents. (ECF Nos. 226-228)

**LEGAL STANDARD**

"The imposition of sanctions under Rule 37 lies within the broad discretion of the district court." *Perros v. Cnty of Nassau*, No. 15 Civ. 5598 (GRB) (AKT), 2021 WL 4480666, at *7 (E.D.N.Y. Sep. 30, 2021) (noting that "Rule 37 is most relevant when a party fails to comply with a court order to produce discovery or fails to produce to an adversary relevant, requested information.") (internal quotation and citation omitted). "Rule 37 provides a district court with a wide range of sanctions which it may apply to a wide range of circumstances – potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other." A*bante Rooter & Plumbing, Inc. v. Shore Funding Sols., Inc*., No. 17 Civ. 6499 (ADS) (AKT), 2019 WL 2436239, at *5 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, No. 17 Civ. 6499 (ADS) (AKT), 2019 WL 1986606 (E.D.N.Y. May 6, 2019).

However, the Second Circuit has a "strong preference for resolution of disputes on their merits," *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986), and has explained dismissal "is a 'drastic remedy' generally to be used only when the district [court] has

considered lesser alternatives." *S.N.E. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *John B. Hull., Inc. v. Waterbury Petro. Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). When determining the appropriate remedy for a violation of Rule 37(b), a court "should impose the least harsh sanction" that will "serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal." *Slovin v. Target Corp.*, No. 12 Civ. 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013); *see also Grammar v. Sharinn & Lipshie, P.C.*, No. 14 Civ. 6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (noting courts "should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future"). The tripartite purpose of Rule 37 sanctions is "(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F.Supp.3d 345, 353 (S.D.N.Y. 2023) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 126 (S.D.N.Y. 2016).

## DISCUSSION

### A. Failure to Comply with the Court's Discovery Orders

"The discovery provisions of the Federal Rules of Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). "When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id*. However, before sanctions

may be imposed under Rule 37(b), two predicates must be satisfied. Specifically, there must be (1) a "court order directing compliance with discovery requests," and (2) "non-compliance with that order[.]" *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15 Civ. 3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017).

Once those threshold predicates are met, courts in this Circuit apply the four factors articulated by the Second Circuit in *Agiwal v. Mid Island Mortg. Corp.* to determine both whether to sanction and the appropriate severity of sanctions. 555 F.3d 298 (2d Cir. 2009). Those factors are: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025). "These factors 'are not exclusive,' and they need not each be resolved against the party challenging the district court's sanctions for [a court] to conclude that those sanctions were within the court's discretion." *Id.* (quoting *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 546 (2d Cir. 2023)).

When a party fails to comply with its court-ordered discovery obligations, the court supervising discovery is permitted to "issue further just orders," including directing designated facts be taken as established, prohibiting support of claims or defenses, striking pleadings, staying proceedings, dismissing the action, rendering default judgment, or treating disobedience as contempt of court. Fed. R. Civ. P. 37(b)(2)(A). A latter provision of Rule 37 further explains that in addition to, or in lieu of the above sanctions, courts may impose

monetary sanctions as they see fit to compel compliance. *See* Fed. R. Civ. P. 37(b)(2)(C); *see also Funk v. Belneftekhim,* 861 F.3d 354, 373 (2d Cir. 2017).

Here, sanctions are warranted under Rule 37(b) because GreatCare's misconduct has gone beyond merely providing deficient discovery responses. It has repeatedly failed to comply with discovery Orders expressly imposed by Court order. Its noncompliance has persisted for over a year and has involved at least four instances of noncompliance. GreatCare first failed to comply with the Court's February 20, 2025 Order. It thereafter violated the Court's July 24, 2025 Order and its August 14, 2025 Order, the latter of which expressly warned that continued noncompliance could result in sanctions. Most recently, GreatCare failed to comply fully with the Court's February 2, 2026 Post-Conference Order, which included an extensive discussion of GreatCare's repeated failure to discharge its discovery obligations. *See Quhshi v. Hartford Underwriters Ins. Co.*, No. 23 Civ. 7935 (DEH), 2025 WL 2773987, at *5 (S.D.N.Y. Sept. 29, 2025) (slip copy) (finding that only a "half-hearted attempt" to comply with a court's discovery orders not only evinces a satisfaction of the threshold requirements of Rule 37(b), but also demonstrates willful non-compliance).

The record further demonstrates that GreatCare's noncompliance was willful, rather than inadvertent or attributable to isolated oversight. *See Barbera v. Grailed, LLC*, No. 24 Civ. 3535 (LJL), 2025 WL 2098635, at *13 (S.D.N.Y. July 25, 2025) ("A party's conduct will be deemed willful where the contravened orders were clear, the party being sanctioned understood the orders, and the non-compliance was within the party's control."); *Manta Indus. Ltd. v. Anand*, No. 16 Civ. 8308 (LAP), 2024 WL 4872260, at *4 (S.D.N.Y. Nov. 22, 2024) ("A party's persistent refusal to comply with discovery orders is evidence of willfulness."). GreatCare has wholly

disregarded several of the Court's directives and has failed to substantially comply with others. Despite numerous conferences setting forth the Court's discovery expectations on the record and later memorializing those orders in written Post-Conference Orders, GreatCare has failed to either comply at all or substantially comply. It never identified the MLTC entities implicated by Plaintiffs' claims, never produced payroll records covering the full relevant period, and never responded to Plaintiffs' initial sanctions letter as ordered. Even where GreatCare purported to comply, its efforts were woefully deficient at worst and half-hearted at best. *See Ramgoolie v. Ramgoolie,* 333 F.R.D. 30, 36 (S.D.N.Y. 2019) (considering "half-hearted" efforts to comply with discovery orders as evidence of willfulness). Indeed, GreatCare never provided a complete response, as required by the Court, to the Court's February 2, 2026 Order. This pattern of inadequate compliance reflects a sustained disregard – not an inability – to adhere to the Court's clear directives. Moreover, at no point has GreatCare offered an explanation as to why it failed to comply with each discovery. Instead, it has remained stalwart in its position that it is in fact complying with its discovery duties. *See S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (concluding that the absence of any prior explanation for the party's noncompliance supported a finding that the violation was willful). Ultimately, the record allows for no other reasonable inference other than that GreatCare's noncompliance was willful.

GreatCare's attempts to recast its noncompliance as fully compliant or substantially compliant, are unpersuasive. (ECF No. 228 at 14) The excuses and finger-pointing do not account for its repeated failure to satisfy its discovery obligations. If the requests by Plaintiffs were extensive or overbroad as it now claims (*Id*. at 14-15), it should and could have requested leave to file a motion to quash, sought discovery conferences to discuss the breadth of the

requests, or made its objections to Plaintiffs' requests plain, open, and notorious. GreatCare failed to do any of these things. Accordingly, this factor counsels in favor of sanctions.

Turning to the second *Agiwal* factor, the Court must consider whether lesser sanctions are available as effective alternatives. *See Agiwal*, 555 F.3d at 302. Though Plaintiffs seek case-terminating sanctions, upon duly considering the potential efficacy of lesser sanctions, the Court finds that given the Second Circuit's preference for resolving cases on the merits, a default judgment as to GreatCare is far too drastic and a lesser sanction is reasonably calculated to satisfy the tripartite purpose of Rule 37. The Second Circuit has made clear through *Friedman v. Bloomberg, L.P.*, among other cases, that the imposition of lesser sanctions — specifically attorneys' fees — is a commonly accepted prerequisite before dismissal becomes appropriate under Rule 37. No. 22-2967-CV, 2024 WL 1298601, at *4 (2d Cir. Mar. 27, 2024). There, the Second Circuit affirmed case-terminating sanctions only after the District Court had previously imposed attorneys' fees, issued compliance orders, and found those lesser measures ineffective at securing compliance. *Id.* Here the lesser sanction of attorneys' fees has not yet been imposed; and, Plaintiffs fall well short of making a persuasive argument that dismissal is warranted. Moreover, summary judgment briefing is already underway and, in this posture, a Rule 37 motion should not be used as an alternative avenue for Plaintiffs to secure victory. Accordingly, this factor militates against sanctions of the type Plaintiffs seek.

The duration of GreatCare's noncompliance also militates in favor of sanctions. Here the period of noncompliance has lasted for over a year, and courts in this Circuit have found that noncompliance for a far shorter period can still constitute sanctionable conduct. *See, e.g.*, *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (three-

month period of noncompliance); *Agiwal,* 555 F.3d at 303 (six-month period of noncompliance).

The final *Agiwal* factor likewise weighs in favor of sanctions because GreatCare has received several verbal and written warnings that its continued noncompliance could result in sanctions. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (finding sufficient notice for an entry of default under Rule 37 sanctions where numerous verbal and written warnings were given to a party "both while represented by counsel and not ....").[2]

Because the above factors favor sanctions, the Court finds that they are warranted under Rule 37. Nonetheless, unlike in cases where a party's noncompliance brings the litigation to a complete standstill and thereby warrants the drastic sanction of default, *see, e.g., Manta Indus. Ltd.*, 2024 WL 4872260, at *6, GreatCare's misconduct has not wholly prevented this action from advancing. The case remains on track to proceed to summary judgment. Therefore, for its failure to comply with this Court's Orders, GreatCare is ordered to pay attorneys' fees equal to the cost to Plaintiffs for filing the instant motion and further ordered to comply in full with all the Court's future orders.

**B. Spoliation**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *see also ELG*

---

[2] GreatCare's argument that the Court should decline to enter default judgment because it has not been warned that default could be imposed for its noncompliance is inapposite. (ECF No. 228 at 15) It is patently clear that "[w]arnings need not mention the phrase 'default judgment'; regular warnings that noncompliance may result in discovery sanctions are adequate." *Ramgoolie,* 333 F.R.D. at 38 (citing *Guggenheim*, 722 F.3d at 452).

*Utica Alloys, Inc. v. Niagara Mohawk Power Corp*., 144 F.4th 360, 374 (2d Cir. 2025) (affirming sanction for spoliation of documents that were shredded).

A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. *Byrnie v. Town of Cromwell, Bd. of Educ*., 243 F.3d 93, 109 (2d Cir. 2001). The moving party must establish by a preponderance of evidence: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018); *see also ELG Utica Alloys, Inc*. v. *Niagara Mohawk Power Corp*., 144 F.4th 360, 374 (2d Cir. 2025) (same); *Byrnie*, 243 F.3d at 107-12 (same).

Importantly, for spoliation "sanctions to be appropriate, it is a *necessary*, but insufficient, condition that the sought-after evidence actually existed and was destroyed." *Farella v. City of New York*, Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) (emphasis added); *see La Belle v. Barclays Cap. Inc*., 340 F.R.D. 74, 82 (S.D.N.Y. 2022) (noting that "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed" and was destroyed).

Here, Plaintiffs have failed to establish that relevant documents were actually destroyed such that sanctions are warranted. The Court's Order at ECF No. 242 directed Plaintiffs to explain "[f]or each category of documents that is missing," whether each missing document "was destroyed or merely not produced," and, for documents contended destroyed, whether destruction occurred "in 2022 or thereafter" and the basis for that contention. However,

Plaintiffs' submission states only that they "contend these documents are missing." (ECF No. 244-2) Plaintiffs do not identify any specific category of documents that was destroyed with the requisite scienter, credibly state when any such destruction occurred, or otherwise provide a factual basis for concluding that responsive materials were lost. Accordingly, the issue Plaintiffs raise is more properly characterized as a dispute concerning the adequacy of GreatCare's production (addressed above), rather than spoliation.

Next, Plaintiffs' reliance on Ms. Wang's declaration for the proposition that all paper records were destroyed after 2022 is both misplaced and mischaracterized. Plaintiffs isolate portions of the declaration while overlooking material qualifications elsewhere in it. Ms. Wang does not state that she destroyed documents after 2022, nor does she represent that paper records were discarded without preservation of their contents. To the contrary, she explains that any "patient-side" records shredded in the ordinary course pursuant to GreatCare's document-retention practices, which she understood to comply with 10 N.Y.C.R.R. § 766.6(b), were first preserved electronically and remained available through GreatCare's HHAeXchange portal. (ECF No. 228-2 ¶ 10) Plaintiffs do not dispute that they had access to the online portal or the documents therein. Moreover, the declaration states that "aide-side" payroll records and personnel files exist on "a continuous basis from 2015 forward — more than ten years as of the date of this Declaration." (*Id.*) At no point can Plaintiffs point to any persuasive evidence that GreatCare has destroyed relevant materials post-dating 2016, the earliest concievable date at which the duty to preserve could have arisen.

But, even if documents were destroyed as Plaintiffs contend, any sanction imposed should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an

erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999).

Here, Plaintiffs acknowledge that, after serving a third-party subpoena on HHAeXchange, they were able to obtain records reflecting "the precise clock-in and clock-out time of each shift worked by Plaintiffs, the total amount they were paid per week, and the hourly rate at which they were paid." (ECF No. 224-1) Plaintiffs further represent that, to the extent other records were unavailable from GreatCare, the relevant information was "otherwise covered by documents produced by the MLTCs and/or NYSDOH." (*Id.*) Thus, the very information Plaintiffs contend was lost – records bearing on the hours Plaintiffs worked, their compensation, and the nature of the relationship between GreatCare and the MLTCs – was ultimately obtained from other sources.

The above substantially undercuts any claim of prejudice resulting from the alleged loss of documents. Plaintiffs' scorched earth spoliation motion is premised principally on the asserted inability to obtain records necessary to establish (1) the work performed by Plaintiffs, including their clock-in and clock-out times, and (2) the alleged joint-employer relationship between GreatCare and the MLTCs. (ECF No. 211 at 24) Yet, Plaintiffs now concede they obtained the payroll and timekeeping information needed to pursue their claims via HHAeXchange and that other relevant information was available through productions from the MLTCs and NYSDOH. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.,* 282 F.R.D. 346 (S.D.N.Y. 2012) (explaining spoliation sanctions are not warranted if the information was

preserved in other locations) *(citing Orbit One Commc'ns, Inc. v. Numerex Corp*., 271 F.R.D. 429, 442 (S.D.N.Y.2010)). Accordingly, even assuming Plaintiffs could otherwise establish that spoliation occurred, they have not shown that the alleged loss deprived them of evidence necessary to prove their claims or otherwise caused prejudice warranting sanctions. Put differently, even assuming relevant materials were discarded pursuant to GreatCare's ordinary retention practices, Plaintiffs have not demonstrated that the underlying information was lost or that the destruction paper records has impaired their ability to pursue their claims. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010) ("Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the other parties were able to obtain the same evidence from another source[.]"). Under these circumstances, the Court finds spoliation sanctions inappropriate.

**C. Fraud**

Plaintiffs next contend that GreatCare has attempted to perpetrate fraud on the Court by producing falsified declaration letters and timesheets to Plaintiffs and submitting statements that are knowingly false to the Court.

Beginning first with the purportedly falsified declarations, the Court is not persuaded that the alleged misspelling identified by Plaintiffs, standing alone, supports an inference of fraud. Plaintiffs contend that at least one letter attributed to a care recipient's wife was falsified because her name is misspelled on the signature line. (ECF Nos. 212-31, 212-32) But Plaintiffs do not identify the purported misspelling, explain whether it appears in the English or Chinese rendering of the name, or otherwise demonstrate how the discrepancy establishes that

the letter was fabricated or signed by someone other than the individual to whom it is attributed. Indeed, the Court has not, itself, identified any apparent misspelling from the cited submissions. Without more – such as hard evidence concerning the circumstances of its preparation or execution, an explanation of the discrepancy,[3] or some other indication that the signature was not genuine – a purported spelling discrepancy, to the extent there is one at all, is, at most, an irregularity and does not establish fraud or support a reasonable inference that the document was intentionally falsified.

As to the remaining declaration letters Plaintiffs characterize as fraudulent, their argument rests largely on speculation and conjecture rather than hard evidence of fabrication. Plaintiffs contend, for example, that one letter is inherently suspect because the individual to whom it is attributed was elderly, had demonstrated difficulty recalling three words after a short delay, and died approximately two months after purportedly signing the letter. (ECF No. 211 at 12-13) Plaintiffs therefore infer that the individual could not have remembered care provided years earlier, including a limited number of shifts worked by one Plaintiff. But those circumstances do not establish that the letter was fabricated, that the individual did not sign it, or that any Defendant knowingly created or submitted a false document. A memory assessment by a non-expert does not, without more, demonstrate an inability to recall past caregivers or events, much less render a contrary recollection fraudulent. Plaintiffs identify no testimony, handwriting evidence, admission, or other competent proof showing that the letter

[3] In the first instance "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

was doctored or knowingly falsified. Plaintiffs' speculation as to what the individual was capable of remembering is therefore insufficient to support a finding of fraud.

Likewise, Plaintiffs have not established that the timesheets produced by GreatCare were fraudulent. At most, the deposition testimony highlighted in Plaintiffs' briefing reflects factual disputes concerning how certain timesheets were prepared, whether particular entries accurately reflected meal and sleep periods, and whether some aides were instructed to complete or sign forms in a particular manner. Those inconsistencies do not demonstrate that GreatCare fabricated the documents or knowingly submitted false records. Indeed, several Plaintiffs acknowledged that they completed or signed the timesheets themselves, while others testified only that information had been pre-filled, that they followed a template, or that they did not recall signing particular forms. Nor does the absence of paper timesheets for certain Plaintiffs establish fraud, particularly where, as discussed above, Plaintiffs were able to gather all the information they needed from other sources. Thus, while the competing testimony may bear on the evidentiary weight of particular timesheets to the extent they are ultimately produced at trial, it falls short of establishing that the records themselves were fraudulently created or produced. *See State v. United States Dep't of Com.,* 461 F. Supp. 3d 80, 95 (S.D.N.Y. 2020) (declining to impose sanctions on the ground that even if the defendants' witnesses had made false statements during litigation, the court was not actually misled and that the "the proper remedy is exactly what happened at trial": the parties "tested the credibility of Defendants' explanations.").

But, even if Plaintiffs were able to persuasively prove that the above documents were doctored, it is well established that fraud on the court, "embrace[s] only that species of fraud

which does or attempts to, defile the court itself . . . so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman v. Consolidated Research & Manufacturing Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (quoting 7 Moore, Federal Practice ¶ 60.33 at 511 (1971 ed.)). To impose sanctions a court must find by clear and convincing evidence "that [a] party or attorney knowingly [made or] submitted [ ] materially false or misleading [statements and evidence], or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly." *Almeciga v. Center for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016).

The documents Plaintiffs put at issue in the instant motion were produced by GreatCare to Plaintiffs during discovery, but GreatCare did not submit the documents to this Court and has not relied on them to make any arguments to the Court regarding the merits of any claims or defenses asserted in this case. *Diedhiou v. Republic of Senegal*, No. 20 Civ. 5685 (DEH) (KHP), 2024 WL 3540406, at *1, *7 (S.D.N.Y. July 10, 2024) (Parker, M.J.) (recommending denial of sanctions motion "without prejudice to renewing the motion following summary judgment or after trial" and stating that "it is premature to determine whether Plaintiff has actually committed a fraud on the Court."). Because these materials were submitted to the Court solely in connection with Plaintiffs' request for sanctions, and not to obtain a substantive ruling on the merits of the underlying claims, the Court finds no basis to impose sanctions for fraud on the Court based on the documents at issue.

Moving to the next component of Plaintiffs' motion. Plaintiffs argue that GreatCare has falsely characterized its search for responsive documents to the Court and has submitted false statements regarding the health status of Ms. Wang.

The Court likewise finds that the purported discrepancies concerning Mr. Liu's affidavit (ECF No. 190), Ms. Wang's deposition testimony, and the manner in which responsive emails were searched do not establish fraud. For one, Mr. Liu's affidavit is deemed withdrawn so Plaintiffs' point is now moot. (ECF No. 224 at 39:4-8) Regardless, though Mr. Liu's affidavit inaccurately suggested that he took physical possession of multiple employees' devices, the record reflects that he did, in fact, search the relevant email accounts using Plaintiffs' proposed search terms and located responsive materials. Whether those searches were conducted directly on each physical device or by accessing the accounts through login credentials is immaterial to the substance of the representation made to the Court. Plaintiffs have not shown that the inaccuracy was intentional, that it concealed responsive information, or that it prejudiced their ability to obtain discovery. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021) (declining to impose sanctions for false discovery declarations under Rule 56(h), finding that, although the statements were "undoubtably untrue," they resulted from negligence rather than subjective bad faith and that malice should not be inferred where the conduct can reasonably be attributed to incompetence).

Finally, the Court is unpersuaded that GreatCare's representations concerning Ms. Wang's medical condition provide any basis for a finding of fraud on the Court. To the contrary, Plaintiffs' request for sanctions on this ground rings as frivolous. The record reflects a consistent account of Ms. Wang's injury: GreatCare represented that she had fractured a rib,

remained in significant pain, and was sufficiently limited by her condition that traveling to and participating in an in-person deposition would be difficult. GreatCare also submitted medical documentation corroborating those representations. (ECF No. 188) Ms. Wang's subsequent testimony that she suffered a rib fracture, was largely confined to bed for approximately two to three weeks, and thereafter performed limited work from home does not materially undermine, much less contradict, GreatCare's prior representations.

Nor does counsel's statement at the April 8, 2026 conference suggest otherwise. Although Mr. Muniz initially misspoke in stating that Ms. Wang had "fractured her back at a pool," he immediately corrected the record, explaining that the fracture involved her rib and that her reported back pain "may be connected" to that injury. (ECF No. 224 at 14:17-25) He further represented that, although Ms. Wang was unable to appear for the scheduled depositions, she remained capable of performing some work remotely. (*Id.* at 16:6-23) There is no inherent inconsistency between being able to conduct limited work from home and being unable to travel to and participate in an in-person deposition while recovering from a rib fracture. Particularly given that Ms. Wang was ultimately deposed and because Plaintiffs have not concretely characterized how the delay in her deposition resulted in prejudice, Plaintiffs' effort to characterize these circumstances as sanctionable misconduct is wholly without merit.

Accordingly, the circumstances do not warrant the imposition of sanctions on a fraud-based theory under Rule 37, the Court's inherent power, or any other basis.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for sanctions is GRANTED in part and DENIED in part. Accordingly, Plaintiffs are directed to file a fee application by **October 1, 2026** setting forth contemporaneous billing records associated with the filing of the instant motion.

**The Clerk of Court is respectfully directed to terminate the motion at ECF No. 210.**

**SO ORDERED.**

DATED: September 1, 2026
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge