UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, XIU X. ZHU,

Plaintiffs,

-against-

GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., SENIOR WHOLE HEALTH OF NEW YORK, INC.,

Defendants.

**DEFENDANT CENTERLIGHT HEALTHCARE, INC. LOCAL RULE 56.1 STATEMENT IN OPPOSITION TO PLAINTIFFS' 56.1 STATEMENT**

Case No. 1:24-cv-07401 (LTS) (KHP)

Defendant, CenterLight Healthcare, Inc. ("CenterLight") submits the following response to Plaintiffs' Local Rule 56.1 Statement.

1. Plaintiff Hei Li was employed by GreatCare from approximately June 17, 2017 until approximately December 29, 2022. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li); Ex. 2 (Hei Li App., GC 000733, 000736); Ex. 3 (Hei Li Dep. 15:3-9).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Hei Li was employed by GreatCare spanning the time period. However, Plaintiff Hei Li was never employed by CenterLight. (Goris. Decl. ¶ 5-9)[1].

2. Plaintiff Zhu H.L. Lin was employed by GreatCare from approximately March 13, 2015 until approximately March 8, 2021. *See, e.g.,* Friedman Decl., Ex. 4 (HHAX EVV Rec. for Lin); Ex. 5 (Lin Decl. ¶ 7).

[1] Unless otherwise noted, all citations in the responses are attached to the Declaration of George F. Brenlla in Support of Defendant CenterLight's Motion for Summary Judgment, ECF Doc No: 248.

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Zhu H. L. Lin was employed by GreatCare spanning the time period. However, Plaintiff Zhu H.L. Lin was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

3. Plaintiff Li Chen was employed by GreatCare from approximately January 2, 2015 until approximately May 18, 2020. Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 32); Ex. 7 (HHAX EVV Rec. for L. Chen).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Li Chen was employed by GreatCare spanning the time period. However, Plaintiff Li Chen was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

4. Plaintiff Mei F. Chen was employed by GreatCare from approximately March 6, 2016 until approximately January 4, 2019. Friedman Decl., Ex. 8 (HHAX EVV Rec. for M. Chen); Ex. 9 (M. Chen App., GC 002911, 002914).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Mei F. Chen was employed by GreatCare spanning the time period. However, Plaintiff Meo F. Chen was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

5. Plaintiff Xiu F. Chen was employed by GreatCare from approximately February 19, 2016 until approximately October 31, 2024. Friedman Decl., Ex. 10 (HHAX EVV Rec. for X. Chen); Ex. 11 (X. Chen App., GC 000685, 000687).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Xiu F. Chen was employed by GreatCare spanning the time period. However, Plaintiff Xiu F. Chen was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

6. Plaintiff Hui He was employed by GreatCare from approximately July 2, 2016 until approximately July 11, 2020. Friedman Decl., Ex. 12 (HHAX EVV Rec. for He); Ex. 13 (He App., GC 003366, 003369).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Hui He was employed by GreatCare spanning the time period. However, Plaintiff Hui He was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

7. Plaintiff Hui Li was employed by GreatCare from approximately July 18, 2015 until approximately April 6, 2023. Friedman Decl., Ex. 14 (HHAX EVV Rec. for Hui Li); Ex. 15 (Hui Li Dep. 77:25-78:9).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Hui Li was employed by GreatCare spanning the time period. However, Plaintiff Hui Li was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

8. Plaintiff Zhan J. Li was employed by GreatCare from approximately September 24, 2016 until approximately March 7, 2021. Friedman Decl., Ex. 16 (HHAX EVV Rec. for Z. Li); Ex. 17 (Z. Li App., GC 004137, 004140); Ex. 18 (Z. Li Dep. 11:4-6).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Zhan J. Li was employed by GreatCare spanning the time period. However, Plaintiff Zhan J. Li was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

9. Plaintiff Hui X. Ruan was employed by GreatCare from approximately March 29, 2015 until approximately August 27, 2023. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan); Ex. 20 (Ruan App., GC 009815, 009819); Ex. 21 (Ruan Dep. (Dec. 17, 2025) 47:11-12, 50:16-21).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Hui X. Ruan was employed by GreatCare spanning the time period. However, Plaintiff Hui X. Ruan was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

10. Plaintiff Jian R. Xiao was employed by GreatCare from approximately November 10, 2020 until approximately August 20, 2023. Friedman Decl., Ex. 22 (EVV Recs. for J. Xiao); Ex. 23 (J. Xiao App., GC 000923, 000925).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Jian R. Xiao was employed by GreatCare spanning the time period. However, Plaintiff Jian R. Xiao was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

11. Plaintiff Mei Z. Xiao was employed by GreatCare from approximately May 2, 2018 until approximately November 3, 2020, from approximately September 1, 2021 until approximately May 6, 2022, and from approximately May 3, 2023 until approximately August

18, 2023. Friedman Decl., Ex. 24 (HHAX EVV Rec. for M. Xiao).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Mei Z. Xiao was employed by GreatCare spanning the time period. However, Plaintiff Mei Z. Xiao was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

12. Plaintiff Mu Z. Zhang has been employed by GreatCare from approximately January 4, 2015 to the present. Friedman Decl., Ex. 25 (Zhang App., GC 001011, 001016); Ex. 26 (HHAX EVV Rec. for Zhang); Ex. 27 (Zhang Decl. ¶ 6).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Mu Z. Zhang was employed by GreatCare spanning the time period. However, Plaintiff Mu Z. Zhang was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

13. Plaintiff Bi Y. Zheng was employed by GreatCare from approximately October 18, 2018 until approximately August 20, 2021. Friedman Decl., Ex. 28 (HHAX EVV Rec. for Zheng); Ex. 29 (Zheng App., GC 001079, 001081).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Bi Y. Zheng was employed by GreatCare spanning the time period. However, Plaintiff Bi Y. Zheng was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

14. Plaintiff Xiu X. Zhu was employed by GreatCare from approximately September 9, 2017 until approximately February 12, 2021. Friedman Decl., Ex. 30 (HHAX EVV Rec. for

Zhu); Ex. 31 (Zhu Decl. ¶ 7).

**RESPONSE:**

Admits that based on records produced by Plaintiffs and Defendant GreatCare, Inc. ("GreatCare"), Plaintiff Xiu X. Zhu was employed by GreatCare spanning the time period. However, Plaintiff Xiu X. Zhu was never employed by CenterLight. (Goris. Decl. ¶ 5-9).

15. Defendant GreatCare, Inc. ("GreatCare") is a licensed home care services agency ("LHCSA") that maintains its principal offices at 110 West 34th Street, Suite 1207, New York, New York. GC Answer, ECF No. 187 ¶ 50; Friedman Decl., Ex. 32 (SWHNY-GC Home Health Services Agree. ("HHSA"), SWHNY 000243).

**RESPONSE:**

Based on the records produced during discovery, admits the statement. However, CenterLight has no independent knowledge to determine the veracity of the statement.

16. Defendant CenterLight Healthcare, Inc. ("CenterLight") is a managed long-term care plan ("MLTC") whose office is located at 136-65 37th Avenue, Flushing, NY 11354. Friedman Decl., Ex. 33 (NYSDOH-CL 2022-2026 Cont., CenterLight 000154).

**RESPONSE:**

Admits the statement.

17. Defendant Senior Whole Health of New York, Inc. ("SWHNY") is a managed long-term care plan ("MLTC") whose office is located at Trinity Center, 111 Broadway, Suite 1505, New York, NY 10006. Friedman Decl., Ex. 34 (NYSDOH/SWHNY Con., SWHNY 000001).

**RESPONSE:**

Based on the records produced during discovery, admits the statement. However,

CenterLight has no independent knowledge to determine the veracity of the statement.

18. Under their contracts with the NYSDOH and per state Medicaid regulations, the MLTC Defendants were required to assess their members for the appropriate level of home care services at least every six months. *Id.*, Article V § J ¶¶ 6(b), 7, 9(c)(vii) & (x), SWHNY 000041-000043); 18 NYCRR §§ 505.14, 505.28; Friedman Decl., Ex. 35 (Plaintiffs' First Set of Requests for Admission to CL ("CL Adms.") Nos. 24, 25, 28 (deemed admitted)); Ex. 36 (NYSDOH/CL Cons., Art. III(B), CL 000389); Ex. 37 (Ding Decl. ¶¶ 4-5); *see, e.g.,* Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003181, 003225).

**RESPONSE:**

Denies the statement. The New York State Department of Health ("NYSDOH") regulations dictate the procedures CenterLight must follow when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient. Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5). Further, the contract cited by Plaintiffs indicates a reassessment annually, not every six months. (Friedman Dec. Exh. 36, CL 000389)

19. CenterLight and SWHNY relied on their periodic assessments to create plans of care and to authorize services. 42 C.F.R. §§ 460.104, 460.106; Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 1.13, CL 000042); Ex. 35 (CL Adms., Nos. 21, 22); Ex. 32 (SWHNY-GC HHSA §§ 2.4-2.5, SWHNY 000247, § 1.24, SWHNY 000246, §§ 3.3-3.4, SWHNY 000247); Ex.

40 (Glapa Dep. (Feb. 26, 2026) 43:20-44:9, 107:2-7).

**RESPONSE:**

Denies the statement. The NYSDOH regulations dictate the procedures CenterLight must follow when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient. Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5).

20. GreatCare received members' care plans from CenterLight by fax. Friedman Decl., Ex. 41 (Wang Dep. (Jan. 7, 2026) 146:2-11).

**RESPONSE:**

Admits the statement.

21. SWHNY gave GreatCare a copy of each care plan, held meetings with GreatCare by phone about the care plan, and sent a copy of the care plan to each member. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 43:8-16, 44:10-24).

**RESPONSE:**

CenterLight has no independent knowledge and is unable to determine the veracity of the statement.

22. SWHNY also entered each plan of care into the Homecare Software Solutions, LLC d/b/a HHAeXchange ("HHAX") portal and shared it with GreatCare. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 240:14-241:7); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 43:11-16); *see, e.g.*, Ex. 43 (HHAX Plan of Care ("POC") for X.Y.W., GC 002118).

**RESPONSE:**

CenterLight has no independent knowledge and is unable to determine the veracity of the

statement.

23. GreatCare's nurses directed its home health aides on how to implement the plans of care developed by SWHNY. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 48:5-16, 133:23-134:7).

**RESPONSE:**

Admits that GreatCare's representative testified that GreatCare directed its employees and the aides followed the care plan. However, CenterLight has no independent knowledge and is unable to determine the veracity of the statement.

24. For the assessments, the MLTC Defendants' nurses, or a nurse provided by a contracted agency retained by the MLTC Defendants, evaluated each care recipient's activities of daily living, including bathing, personal hygiene, dressing, eating, bed mobility, toilet transfers and use, locomotion, and managing stairs, and instrumental activities of daily living, including meal preparation, housework, shopping, managing medications, managing finances, telephone use, and transportation. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001886-001939); Ex. 35 (CL Adms., Nos. 27-28); Ex. 37 (Ding Decl. ¶¶ 3, 4).

**RESPONSE:**

Admits in part. It is admitted only that nurses employed or retained by CenterLight would, from time to time, assess its members for the appropriate and medically necessary level of home care services and evaluate various activities of the members' daily life pursuant to the NYSDOH regulations. See 18 N.Y.C.R.R. 505.14.

25. CenterLight's documents accurately reflected the nighttime activities of the subject member. Friedman Decl., Ex. 35 (CL Adms., No. 23).

**RESPONSE:**

Admits that the medical records are true and accurate records as recorded by a nurse for that particular day.

26. GreatCare kept patient files containing its own nurses' assessments and nursing notes that a GreatCare's nurse prepared during home visits to the care recipient member, as well as the member's medical orders from the treating physician. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 86:9-17; 73:12-19, 146:2-11; 208:13-17).

**RESPONSE:**

Admits the statement based upon Ms. Wang's testimony

27. Plaintiffs electronically verified their work shifts by using an electronic visit verification ("EVV") system that required Plaintiffs to call a dedicated telephone number using their care recipients' telephones and clock in and out their shifts by entering in their assigned ID number and GreatCare's ID number. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); Ex. 51 (Wang Dep. (May 1, 2026) 138:9-22); *see, e.g.,* Ex. 53 (Lin Dep. 57:3-9); Ex. 54 (X. Chen Dep. 38:12-39:15); Ex. 55 (M. Xiao Dep. 80:14-22).

**RESPONSE:**

Denies the statement. Plaintiffs both recorded their time on an electronic system and also recorded their time on time sheets filled by Plaintiffs. Further, the statement does not support the veracity by all Plaintiffs and thus it is denied as to those Plaintiffs.

28. At the end of every shift, Plaintiffs were also required to enter codes that were assigned to them that corresponded to specific work duties. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); *see, e.g.,* Ex. 53 (Lin Dep. 57:6-20); Ex. 56 (Zhang Dep. 67:4-16).

**RESPONSE:**

Admits that Plaintiffs both recorded their time on an electronic system and also recorded their time on time sheets filled by Plaintiffs. Further, the statement does not support the veracity by all Plaintiffs and thus it is denied as to those Plaintiffs.

29. There was no code provided to Plaintiffs to report lack of adequate sleep. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); *see, e.g.,* Ex. 55 (M. Xiao Dep. 82:17-24).

**RESPONSE:**

Denies the statement. There was a code in the electronic system to denote lack of sleep or if an employee did not receive a meal period. (Wang 5.1.26 dep. 146-148.) Further, Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li were specifically instructed that they were to contact their coordinator/supervisor immediately if they did not receive adequate sleep or did not take their meal period. (See Brenlla Opp Decl. Exhs 2-9)[2]. They never informed anyone at GreatCare that they did not receive their sleep or meal time. (Brenlla Opp. Dec. Wang 5.15.26 dep. 127; Ouyang dep. 18-21). Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li

30. When the telephone system did not function properly, or Plaintiffs made an error in entering information, Plaintiffs were sometimes required to submit paper timesheets. Friedman Decl., Ex. 57 (Y. Zhu Dep. 40:4-13, 76:9-14).

---

[2] The Declaration in Opposition to Plaintiffs' Motion for Summary Judgment by George F. Brenlla, Esq. is submitted herewith and is denoted "Brenlla Opp Decl."

**RESPONSE:**

Admits that Plaintiffs both recorded their time on an electronic system and also recorded their time on time sheets filled by Plaintiffs. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

31. Failures of the telephone system occurred seldomly. *See, e.g.,* Friedman Decl., Ex. 28 (HHAX EVV Recs. for Zheng).

**RESPONSE:**

Denies the statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li. Moreover, the citation does not support the statement.

32. Plaintiffs' EVV information was recorded on the HHAX platform, which is a New York State Department of Health ("NYSDOH") and New York Office of Medicaid Inspector General ("OMIG") approved provider of EVV services. *See* N.Y. State Dep't of Health, *Electronic Visit Verification: Request for Information (RFI) Summary of Responses and Path for Implementing EVV*, app. § 3.1.13 (2020).

**RESPONSE:**

Admits that Plaintiffs both recorded their time on an electronic system and also recorded their time on time sheets filled by Plaintiffs. Admits that Plaintiffs' time was transcribed on the platform. Denies the remaining statement as the citation does not support the statement.

33. Failures of GreatCare's telephone system were also recorded in HHAX as incomplete clock-in and clock-out entries that were adjusted and then billed. *See, e.g.,* Friedman

Decl., Exs. 12, 28 (HHAX EVV Recs. for He, visit date Nov. 9, 2016; and Zheng, visit date July 22, 2020).

**RESPONSE:** Denies the statement. The phone system was HHAX system. CenterLight lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

34. Case notes entered by GreatCare into HHAX also show that when an aide worked beyond her regularly scheduled hours, GreatCare did not rely on its phone clock-in/clock-out system to capture the additional time; instead, GreatCare staff instructed the aide when to "clock out" based on her location at the patient's home, and any additional pay required the aide to separately call in and submit a paper "duty sheet" for after-the-fact authorization. Friedman Decl., Ex. 58 (GC HHAX Patient Notes, 43918332).

**RESPONSE:**

Denies the statement. There was a code in the electronic system to denote lack of sleep or if an employee did not receive a meal period. (Brenlla Opp. Dec. Wang 5.1.26 dep. 146-148.) Plaintiffs were specifically instructed that they were to immediately contact their coordinator/supervisor if they did not receive adequate sleep, did not take their meal period or worked additional hours. (See Brenlla Opp Decl. Exhs 2-9). Plaintiffs did not contact their supervisor or coordinator and never reported that they could not sleep or did not have meal periods. (Brenlla Dec. Wang 5.15.26 dep. 127; Ouyang dep. 18-21). Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X and the citation does not support the alleged fact.

35. GreatCare did not produce EVV records from GreatCare's telephone clocking-in and clocking-out system. Friedman Decl. ¶ 61.

**RESPONSE:**

CenterLight lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement.

36. GreatCare did not provide EVV data from HHAX or any other source. Instead, GreatCare produced only paper timesheets for some Plaintiffs for some time periods. *Id.*; Friedman Decl., Ex. 59 (Summ. of Missing Pay. and Time Recs.); *see also* Ex. 60 (Sample Live-In Timesheets, GC 000458-000459, 000476-000477).

**RESPONSE:**

Denies the statement. Discovery included time sheets and electronic time records. Said information was also received pursuant to third party subpoenas.

37. None of the paper timesheets produced by GreatCare were signed by Plaintiffs' care recipients. *Id.*

**RESPONSE:**

Denies the statement. The citation provided by Plaintiffs does not support the statements.

38. The paper timesheets produced by GreatCare all indicate meal and sleep breaks that Plaintiffs did not actually receive. *Id.*; *see, e.g.,* Friedman Decl., Ex. 18 (Z. Li Dep. 60:10-61:6).

**RESPONSE:**

Denies the Statement. The cited timesheets all indicate that the particular plaintiff received five consecutive hours of uninterrupted sleep and the requisite meal periods. The citation provided by Plaintiffs do not indicate or support such fact. Further, the citation by

Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li. Last, the time sheets do not require a recipient signature.

39. GreatCare produced paystubs and payroll registers that for each pay period that was produced reflect the aide's pay rate, hours paid, number of live-in shifts, gross wages, deductions, taxes, and net pay. *See* Ex. 61 (Sample Paystub and Payroll Register, GC 003060, 003070, 003215–003216).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. Based on the records produced during discovery, admits that GreatCare payroll records contain an employee's hourly rate of pay, hours worked, gross wages, taxes and net pay.

40. GreatCare also produced spreadsheets that show, for each pay period that was produced, the aide's pay rate, hours paid, and pay amount versus the "billed rate" to the MLTC ("billing vs. payroll reports"). *See* Friedman Decl. Ex. 62 (Sample Billing vs. Payroll Report).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement.

41. For Plaintiffs Zhu H.L. Lin, Li Chen, Mei F. Chen, Xiu F. Chen, Hui Li, Hui X. Ruan, Mu Z. Zhang, and Xiu X. Zhu, GreatCare also produced check register spreadsheets that show, for time periods produced, total amounts paid, but not rate of pay, or number of live-in or hourly shifts performed, and do not distinguish between hourly work and live-in shifts; the check

register spreadsheets also omit large periods of time. *See, e.g.,* Friedman Decl. Ex. 63 (Sample Check Register).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement.

42. Information sufficient to reconstruct the precise hours worked by Plaintiffs and their weekly total pay was obtained by serving a subpoena on HHAX. Friedman Decl. ¶ 67.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement.

43. GreatCare produced no timesheets for Plaintiff Hei Li and produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately two work weeks that Ms. Li worked 24-hour, "live-in" shifts. Friedman Decl. Ex. 59 (Summ. of Missing Pay. and Time Recs.).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement. During discovery, CenterLight received payroll records and registry which included the hours worked for Hei Li.

44. For Plaintiff Zhu H.L. Lin, GreatCare produced paper timesheets only for November 16, 2019 through March 12, 2021, omitting approximately 169 work weeks that Ms.

Lin worked 24-hour, "live-in" shifts. Friedman Decl. Ex. 59 (Summ. of Missing Pay. and Time Recs.).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement. During discovery, CenterLight received payroll records and registry which included the hours worked for Zhu H.L. Lin .

45. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 115 work weeks that Ms. Lin worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement. During discovery, CenterLight received payroll records and registry which included the hours worked for Zhu H.L. Lin .

46. GreatCare produced no timesheets or payroll records for Li Chen. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement.

47. GreatCare produced no timesheets for Xiu F. Chen and produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately three work weeks that Ms. Chen worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

48. GreatCare produced no timesheets for Mei F. Chen and produced a payroll register that omitted approximately three work weeks that Ms. Chen worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

49. GreatCare produced no timesheets or payroll records for Hui He. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

50. GreatCare produced no timesheets for Hui Li and produced a payroll register that omitted approximately 36 work weeks that Ms. Li worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

Admits that GreatCare produced payroll records for this Plaintiff. Further, CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

51. For Plaintiff Zhan J. Li, GreatCare produced paper timesheets only for late 2019 through early 2021, omitting approximately 165 work weeks. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement. However, CenterLight denies the statement as the citation does not support the statement. During discovery, admits that GreatCare produced paper timesheets for this Plaintiff.

52. GreatCare also produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately two work weeks that Ms. Li worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement. During discovery, admits that GreatCare produced paper payroll, billing and registers for this Plaintiff.

53. For Plaintiff Hui X. Ruan, GreatCare produced paper timesheets only for November 8, 2019 through December 5, 2021, omitting approximately 156 work weeks. *Id*.

**RESPONSE:**

During discovery, admits that GreatCare produced paper timesheets for this Plaintiff. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

54. GreatCare also produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately 72 work weeks that Ms. Ruan worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:**

Denies the statement. GreatCare produced payroll registers, paystubs and billing and payroll records for this Plaintiff.

55. For Plaintiff Jian R. Xiao, GreatCare produced paper timesheets omitting

approximately six work weeks. *Id*.

**RESPONSE:**

Admits that GreatCare produced timesheets for this Plaintiffs. Further, CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

56. GreatCare also produced paystubs that omitted approximately one work week that Ms. Xiao worked 24-hour, “live-in” shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

57. For Plaintiff Mei Z. Xiao, GreatCare produced paper timesheets only for January 2020 through May 2023, omitting approximately 87 work weeks. *Id*.

**RESPONSE:**

Admits that GreatCare produced timesheets for this Plaintiffs. Further, CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

58. GreatCare also produced a payroll register and paystubs that omitted approximately 15 work weeks that Ms. Xiao worked 24-hour, “live-in” shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

59. For Plaintiff Mu Z. Zhang, GreatCare produced paper timesheets only for January 3, 2020 through March 19, 2021, omitting approximately 120 work weeks. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

60. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 56 work weeks that Ms. Zhang worked 24-hour, “live-in” shifts. *Id*.

**RESPONSE:**

GreatCare produced timesheets and payroll records for this Plaintiff. Further, CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

61. For Plaintiff Bi Y. Zheng, GreatCare produced full payroll records but no timesheets. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

62. For Plaintiff Xiu X. Zhu, GreatCare produced paper timesheets only for December 6, 2019 through February 12, 2021, omitting approximately 110 work weeks. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

63. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 48 work weeks that Ms. Zhu worked 24-hour, “live-in” shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

64. When Plaintiffs worked a 24-hour, "live-in" shift, they were paid for only 13 hours. Friedman Decl., Ex. 64 (Workman Decl. ¶ 20(a)); *see also* Exs. 134-147 (HHAX Payroll Recs. for Plaintiffs).

**<u>RESPONSE:</u>**

Denies the statement. Plaintiff was paid for all hours worked in accordance with New York State Department of Labor Regulations. (See Brenlla Opp. Decl. Exhs 2, 4, 6, 8). The citation relied upon by Plaintiffs does not support their statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

65. None of the Plaintiffs were compensated at or above the basic state minimum wage rate for all 24-hours of their "live-in" shifts. *Id.* at ¶ 20(b).

**<u>RESPONSE:</u>**

Denies the statement. (See Brenlla Opp. Dec. Exhs 2, 4, 6, 8 ). The citation relied upon by Plaintiffs does not support their statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

66. None of the Plaintiffs were compensated at the Wage Parity Act's minimum rate of home care aide total compensation for all 24-hours of their "live-in" shifts. *Id. at* ¶ 20(c).

**<u>RESPONSE:</u>**

Denies the statement. Plaintiff was paid for all hours worked in accordance with New York State Department of Labor Regulations. (See Brenlla Opp. Dec. Exh. 12 ). The citation relied upon by Plaintiffs does not support their statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu

H.L. Lin, Hui X. Ruan and Hei Li.

67. GreatCare produced no evidence that Plaintiffs received any benefits to meet the benefit portion of the minimum rate of home care aide total compensation required by the Wage Parity Act. Friedman Decl. ¶ 69.

**RESPONSE:**

Denies the statement. (See Brenlla Opp. Dec. Exh. 12 ). Plaintiffs were paid for all hours worked in accordance with New York State Department of Labor Regulations. The citation relied upon by Plaintiffs does not support their statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

68. As a general matter, Plaintiffs did not receive one additional hour's pay at the basic minimum hourly wage rate whenever they worked a 24-hour, "live-in" shift or any other shift where their spread of hours exceeded 10 hours. Friedman Decl., Ex. 64 (Workman Decl ¶ 20(d).

**RESPONSE:**

Denies the statement. Plaintiff was paid for all hours worked in accordance with New York State Department of Labor Regulations and the spread of hours does not apply to "live in" shifts. The citation relied upon by Plaintiffs does not support their statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

69. As a general matter, Plaintiffs never received any overtime pay when they worked more than 40 hours per week. *Id.* at ¶ 20(e).

**RESPONSE:**

Denies the statement. Plaintiffs were paid for all hours worked in accordance with New York State Department of Labor Regulations. The citation relied upon by Plaintiffs does not support their statement. Further, various Plaintiffs did not work any overtime. Plaintiff Hei Li stipulated that she is not claiming damages for unpaid overtime under either the FLSA or the New York Labor Law and not claiming any damages for or alleging any violations under the FLSA and/or New York Labor law for any days she worked for Astra Home Care, Inc. dba True Care Home Care. (See Brenlla Decl. Exh. B). Further, in Plaintiffs 56.1 Statement paragraph 73, Plaintiffs admit that Hei Li only worked one day per week for GreatCare, thus there could be no overtime. Second, Plaintiff Hui X Ruan was a home health aide on only three occasions for a participant that was covered by CenterLight: April 8, 2018, April 29, 2018 and May 6, 2018. (Friedman Dec. Exh. 19). Thus, Plaintiff Ruan could not have worked any overtime allegedly for CenterLight as her own records indicate that she did not work more than one day per week for a CenterLight participant. Plaintiff Li Chen worked at GreatCare one day per week, not as a "live in" from February 9, 2015 through December 7, 2015 for a participant that was covered by CenterLight. (Friedman Decl. Exh. 7). Thus, she could not have worked any overtime and there is no evidence that she worked any overtime during this period of time. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li.

70. Plaintiffs did not obtain five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks per shift. *See, e.g.,* Friedman Decl., Ex. 56 (Zhang Dep. 93:7–24); Ex. 27 (Zhang Decl. ¶ 25); Ex. 54 (Xiu F. Chen Dep. 59:22–60:7); Ex. 84 (Xiu F.

Chen Decl. ¶¶ 21–22); *see* infra ¶¶ 72–240.

**RESPONSE:**

Denies the statement. Further, the citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li. Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li specifically acknowledged and agreed that they would report to her GreatCare coordinator/supervisor immediately if she was (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exhs. 2, 4, 6 , 8 and 9 ). Notably, Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li never reported to her coordinator/supervisor or anyone at GreatCare that they did not receive her meal periods or uninterrupted sleep. (Wang 5.15.26 dep. 127). Further, Plaintiffs Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li certified that they received five hours of continues sleep and all appropriate meal periods. (See Brenlla Opp. Dec. Exhs. 2, 4, 6 and 8). (See also Brenlla Opp. Dec. Exhs 10 and 11).

71. Whenever Plaintiffs worked a 24-hour, “live-in” shift, Plaintiffs had care duties that prevented Plaintiffs from obtaining adequate sleep and meal breaks. *Id*.

**RESPONSE:**

Denies the statement. The citation by Plaintiffs does not support the statement as to Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li. Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li specifically acknowledged and agreed that they would report to her GreatCare coordinator/supervisor immediately if she was (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty

at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exhs. 1, 3, 5, 7 and 9 ). Notably, Plaintiffs Li Chen, Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li never reported to her coordinator/supervisor or anyone at GreatCare that she did not receive her meal periods or uninterrupted sleep. (Brenlla Opp. Dec. Wang 5.15.26 dep. 127; Ouyang dep. 18-21). Moreover, Plaintiffs Zhan Jin Li, Zhu H.L. Lin, Hui X. Ruan and Hei Li certified that they did receive five hours of continuous sleep and three hours of uninterrupted meal period. (See Brenlla Opp. Dec. Exhs. 2, 4, 6 and 8). (See also Brenlla Opp. Dec. Exhs 10 and 11).

72. P.C. was a "patient" of GreatCare and member of CenterLight, who authorized Mr. C. for 24-hour "live-in" services from no later than August 1, 2015 through February 28, 2021. Friedman Decl. Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 002450-002485); Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE:**

Admit that pursuant to the NYSDOH regulations, P.C. was authorized for "live in services.

73. During that period, Mr. C. received 24-hour, "live-in" care services from Plaintiff Hei Li three days per week. However, for nearly the entire time during the relevant period, only one day per week was through GreatCare. The other two days that Ms. Li provided services to Mr. C. were through another, non-defendant home care services agency. Friedman Decl., Ex. 66 (Hei Li Decl. ¶¶ 8-9); Ex. 35 (CL Adms. No. 44); *see, e.g.,* Ex. 65 (CL Auth. Recs., CenterLight Confid. 002450, 002475); Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003630, CenterLight001114).

**RESPONSE:** Admit that Plaintiff Hei only worked one day per week for GreatCare for Mr. C. Further, CenterLight has no independent knowledge to ascertain the veracity of this statement.

74. Through GreatCare, Ms. Li provided 24-hour, "live-in" care services to Mr. C. over 182 "live-in" shifts. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE:**

Admits the statement.

75. CenterLight, through its nurse Qi Ding, assessed Mr. C. on a near-monthly basis, conducting both semi-annual assessments and interim visits. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight Confid. 003326, 003336, 003346, 003356).

**RESPONSE:**

Denies the statement. The citation provided that does not indicate semi annual or interim assessments.

76. Nurse Ding repeatedly and consistently documented that Mr. C. had left-side weakness and ambulated with an unsteady gait and poor balance. *See, e.g., id.* at 003099, 003335; Friedman Decl., Ex. 35 (CL Adms. Nos. 35-36).

**RESPONSE:**

The citation does not support the statement. The records indicate on two occasions patient had difficulty walking.

77. As a result of his left-side hemiplegia, poor balance, and unsteady gait, Nurse Ding identified Mr. C. as at high risk for falls. Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight Confid. 003194, 003238, 003272); Ex. 35 (CL Adms. No. 37).

**RESPONSE:**

The citation does not support the statement. The records indicate on specific dates patient

had difficulty walking.

78. Across assessments and visits, Nurse Ding repeatedly documented that Mr. C. walked with a cane and required the assistance or supervision of another person to ambulate, and required supervision to transfer and to stand up from a seated position. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight Confid. 003335, 003345).

**RESPONSE:**

The citation does not support the statement. The records indicate on specific dates patient had difficulty walking.

79. Nurse Ding repeatedly and consistently documented that Mr. C. suffered intermittent dizziness, especially at night when changing positions. *See, e.g., id.* at 003115, 003132.

**RESPONSE:**

Denies the statement. The citation indicates that on two occasions medical records indicate certain patient at time felt dizziness.

80. Mr. C. did not sleep well at night and was often awake throughout the night. Friedman Decl., Ex. 3 (Hei Li Dep. 100:10-20); Ex. 66 (Hei Li Decl. ¶ 17, 19); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003205, 003249).

**RESPONSE:**

Denies the statement. (See Brenlla Opp. Decl. Exhs. 2 and 10). The citation does not support the fact.

81. Throughout the night, Mr. C. continuously drank soft drinks, ate multiple meals, and repeatedly asked Plaintiff Hei Li to cook for him. Friedman Decl., Ex. 66 (Hei Li Decl. ¶¶ 33, 35); Ex. 3 (Hei Li Dep. 102:12-18); Ex. 67 (W.Y. Letter); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003180, 003468, 003488, 003531, 003613, 003800); Ex. 35 (CL

Adms. No. 40).

**RESPONSE:**

Denies the statement. The citation indicates that on those specific dates the patient was reported to do those acts.

82. Mr. C. repeatedly got up to use the bathroom throughout the night, and could not control his urination or bowel movements. Friedman Decl., Ex. 35 (CL Adms. Nos. 32-33); Ex. 3 (Hei Li Dep. 65:2-6, 102:12-16); Ex. 66 (Hei Li Decl. ¶ 35); Ex. 67 (W.Y. Letter); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003185, 003205, 003215, 003224, 003376).

**RESPONSE:**

Denies the statement. (See Brenlla Opp. Dec. Exh. 10 ). The citation indicates that on those specific dates the patient was reported to do those acts.

83. Nurse Ding repeatedly documented that Mr. C. had benign prostatic hyperplasia and woke and got out of bed two to three times each night to urinate. Friedman Decl., Ex. 35 (CL Adms. Nos. 32-33); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003160, 003180, 003205, 003224, 003249, 003376, 003386, 003396, 003498, 003521, 003580, 003603, 003613, 003642, 003652, 003677, 003697).

**RESPONSE:**

Denies the statement. The citation indicates that on those specific dates the patient was reported to do those acts.

84. Beginning in or around March 2021, CenterLight reduced P.C.'s authorized care from 24-hour, "live-in" care to under ten hours per day after assessing that Mr. C.'s wife could take over more of Mr. C.'s care. Friedman Decl., Ex. 68 (Coord. Note, CenterLight Conf. 003135); Ex. 69 (CenterLight Personal Care Aide Authorization Detail, CenterLight Confid.

2470, 2472); Ex. 3 (Hei Li Dep. 112:5-113:6).

**RESPONSE:**

Admits that the patient requested only ten hours of care for one day.

85. In or about October 2021, Mr. C. disenrolled from CenterLight, and effective November 1, 2021, he enrolled with non-defendant MLTC Centersplan. Friedman Decl., Ex. 70 (CenterLight A&G Appeal Record, CENTERLIGHT 002545); Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE:**

Admits that Mr. C. was no longer enrolled in CenterLight's plan during that period of time.

86. Plaintiff Hei Li continued to work as Mr. C.'s home health aide under Centersplan, working six-hour shifts, until early January 2022. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li)

**RESPONSE:** CenterLight has no independent knowledge to ascertain the veracity of this statement.

87. Plaintiff Hei Li did not receive five hours of continuous uninterrupted sleep or three-hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 3 (Hei Li Dep. 65:19-21); Ex. 66 (Hei Li Decl. ¶¶ 19, 22, 33); Ex. 67 (W.Y. Letter).

**RESPONSE:** Denies the statement. Plaintiff Hei Li specifically acknowledged and agreed that she would report to her GreatCare coordinator/supervisor immediately if she was (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exh. 1 ). Notably,

Hei Li never reported to her coordinator/supervisor or anyone at GreatCare that she did not receive her meal periods or uninterrupted sleep. (Brenlla Opp. Dec. Wang 5.15.26 dep. 127). Furthermore, Plaintiff Hei Li acknowledged that she always had three hours of meal time, five hours of consecutive and uninterrupted sleep every night and had adequate sleeping facilities. (Brenlla Opp. Dec. Exh. 2).

88. K.N.W. was a "patient" of GreatCare and a member of CenterLight, who authorized Ms. W. for 24-hour, "live-in" care services. Friedman Decl., Ex. 71 (CL Ass. Recs. for K.N.W., NYSDOH 000969-000991).

**RESPONSE:**

Admits the patient was enrolled by CenterLight but denies the remaining statement. The NYSDOH provides the guidelines for authorizations.

89. During the period covered by the Amended Complaint, Plaintiffs Li Chen and Zhan J. Li each provided 24-hour, "live-in" care services to K.N.W. over a total of 15 shifts. Additionally, Plaintiffs Xiu F. Chen and Plaintiff Lin also each provided one 24-hour, "live-in" care services to Ms. W.. Friedman Decl., Ex. 7 (HHAX EVV Recs. for L. Chen); Ex. 16 (HHAX EVV Recs. for Z. Li).

**RESPONSE:**

Admits that HHAX denotes when aides worked with patients.

90. CenterLight conducted an assessment of Ms. W. on June 10, 2016, when Ms. W. was age 88. Friedman Decl., Ex. 71 (CL Ass. Recs. for K.N.W., NYSDOH 000969-000991).

**RESPONSE:**

Denies the statement. The citation and record cited indicates that CenterLight did not

perform or conduct the assessment.

91. CenterLight's assessment recorded a primary diagnosis of Alzheimer's disease along with cancer, diabetes mellitus, and chronic obstructive pulmonary disease; and that her cognitive skills for daily decision-making were severely impaired so that she was disoriented and confused, could not provide consent, and could not speak in sentences. Id. at 000970, 000973-000974.

**RESPONSE:**

Denies the statement. The citation and record cited indicates that CenterLight did not perform or conduct the assessment.

92. The assessment also recorded that Ms. W. had an unsteady gait exhibited daily and walked with a walker with extensive assistance; that she required maximal assistance for bathing, personal hygiene, upper-body dressing, and toilet transferring, total dependence for lower-body dressing and toilet use, and extensive assistance for walking and locomotion; that she was incontinent of both bladder and bowel with no control present and used pull-up briefs; and that she could not be left alone safely. *Id.*

**RESPONSE:**

Denies the statement. The citation and record cited indicates that CenterLight did not perform or conduct the assessment.

93. CenterLight conducted another assessment of Ms. W. on December 8, 2016 that further recorded that Ms. W.'s aide changed her diaper four to five times during the daytime and two times during the night. *Id.* at 001926.

**RESPONSE:**

Denies the statement. The citation and record cited indicates that CenterLight did not

perform or conduct the assessment.

94. None of the Plaintiffs who provided care services to Ms. W. were able to receive five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. *See, e.g.,* Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 49); Ex. 81 (Zhan J. Li Decl. ¶ 42).

**RESPONSE:**

Denies the statement. Plaintiffs Li and Li Chen specifically acknowledged and agreed that she would report to her GreatCare coordinator/supervisor immediately if they were (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exhs.3 and 9 ). Notably, Li nor Li Chen reported to their coordinator/supervisor or anyone at GreatCare that she did not receive her meal periods or uninterrupted sleep. (Wang 5.15.26 dep. 127). Furthermore, Plaintiff Li acknowledged that she always had three hours of meal time, five hours of consecutive and uninterrupted sleep every night and had adequate sleeping facilities. (Brenlla Opp. Dec Exh. 4).

95. S.K.C.-1 was a "patient" of GreatCare and, at varying times, a member of CenterLight and a member of SWHNY, who both authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 72 (SWHNY Auths. for S.K.C.-1, SWHNY 002548-002549); Exs. 4, 16, 30 (HHAX EVV Recs. for Lin, Z. Li, Zhu).

**RESPONSE:**

Admits that at one point in time, this patient was enrolled in CenterLight's plan.

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement as to SWHNY.

96. Ms. C. was a member of CenterLight from on or around March 7, 2016 to approximately June 2016 and a member of SWHNY from approximately July 2, 2016 through March 8, 2021. *Id*.

**RESPONSE:**

Admit that the patient was for short period of time enrolled in a plan covered by CenterLight. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement as to SWHNY.

97. During the period covered by the Amended Complaint, Ms. C. received 24-hour, "live-in" care services from Plaintiffs Zhu H.L. Lin, Xiu X. Zhu, Zhan J. Li for over a total of 1,206 shifts. *Id.*

**RESPONSE:**

Admit that the patient was for short period of time enrolled in a plan covered by CenterLight. The citation does not support the statement. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement as to SWHNY.

98. After Ms. C.'s enrollment with SWHNY, SWHNY sent nurses to conduct comprehensive in-home assessments of Ms. C. on December 13, 2016, May 31, 2017, November 9, 2017, May 17, 2018, November 19, 2018, May 9, 2019, and November 10, 2019. Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 001982, 002009, 002047, 002069, 002125, 002194, 002266, 002325).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

99. In each of SWHNY's comprehensive assessments from December 13, 2016 through November 10, 2019, SWHNY recorded that Ms. C.'s primary diagnosis was dementia; that Ms. C. ambulated with an unsteady gait and required extensive to maximal assistance with walking; that Ms. C. had a diagnosis of dizziness and giddiness for which she was receiving active treatment; that Ms. C. required extensive to maximal assistance to transfer on and off the toilet or commode; that Ms. C. was frequently incontinent of urine on a daily basis and wore pads or briefs. *See, e.g.,* Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 001986-001988, 002000, 002070, 002129-002131, 002269-002271).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

100. At its November 9, 2017 assessment, SWHNY assessed Ms. C. at medium risk for falls. *Id.* at 002030.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

101. SWHNY's November 10, 2019 comprehensive assessment recorded that Ms. C. had a diagnosis of fecal urgency. *Id.* at 002143.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

102. In its May 19, 2016, December 13, 2016, November 9, 2017, November 19, 2018, May 9, 2019, and November 10, 2019 assessments, SWHNY recorded that Ms. C. could not be left alone safely. *Id.* at 002003, 002009, 002070, 002146, NYSDOH 000926.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

103. Because Ms. C. was awake at night, Plaintiffs had to attend to her throughout the night, including repeated assistance to go to the toilet. *See, e.g.,* Friedman Decl., Ex. 53 (Lin Dep. 60:14-22); Ex. 73 (X. Zhu Dep. 34:11-20, 122:11-12, 123:21-24); Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, Section I, SWHNY002009); Ex. 5 (Lin Decl. ¶¶ 21-23); Ex. 31 (X. Zhu Decl. ¶¶ 15-17).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

104. None of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep on any of their shifts. Friedman Decl., Ex. 53 (Lin Dep. 123:5-6); Ex. 73 (X. Zhu Dep. 34:11-20, 123:21-24); Ex. 31 (X. Zhu Decl. ¶ 18); Ex. 5 (Lin Decl. ¶¶ 22-23).

**RESPONSE:**

Denies the statement. Plaintiffs Zhu H.L. Lin and Zhan J. Li specifically acknowledged and agreed that they would report to her GreatCare coordinator/supervisor immediately if they were (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or

(iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exhs. 3 and 5 ). Notably, Lin nor Li reported to their coordinator/supervisor or anyone at GreatCare that they did not receive her meal periods or uninterrupted sleep. (Wang 5.15.26 dep. 127). Furthermore, Plaintiffs Lin and Li acknowledged that they always had three hours of meal time, five hours of consecutive and uninterrupted sleep every night and had adequate sleeping facilities. (Brenlla Opp. Dec. Exhs. 4 and 6).

105. None of the Plaintiffs assigned to provide care services to Ms. C. received three hours of duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 5 (Lin Decl. ¶ 30); Ex. 31 (X. Zhu Decl. ¶ 19); Ex. 81 (Zhan J. Li Decl. ¶ 42); Ex. 73 (X. Zhu Dep. 121:17-20).

**RESPONSE:**

Denies the statement. Plaintiffs Zhu H.L. Lin and Zhan J. Li specifically acknowledged and agreed that they would report to her GreatCare coordinator/supervisor immediately if they were (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exhs. 3 and 5). Notably, Lin nor Li reported to their coordinator/supervisor or anyone at GreatCare that they did not receive her meal periods or uninterrupted sleep. (Wange 5.15.26 dep. 127). Furthermore, Plaintiffs Lin and Li acknowledged that they always had three hours of meal time, five hours of consecutive and uninterrupted sleep every night and had adequate sleeping facilities. (Brenlla Opp. Dec. Exhs. 4 and 6).

106. S.M.C.D. was a "patient" of GreatCare and, at varying times, a member of non-defendant MLTC Senior Health Partners ("SHP") and Defendant SWHNY, who both authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D.,

GSD-SHPHF001837-001838, 001847-001848); *see, e.g.,* Ex. 75 (SWHNY Care Plan for S.M.C.D., SWHNY 001937-1940).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

107. Ms. C.D. was enrolled with non-defendant MLTC SHP until November 1, 2016 when she became a member of Defendant SWHNY. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001837-001838, 001847-001848); *see, e.g.,* Ex. 75 (SWHNY Care Plan for S.M.C.D., SWHNY 001937); Exs. 16, 21 (HHAX EVV Recs. for Z. Li, Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

108. During the period covered by the Amended Complaint, Plaintiffs Zhan J. Li and Hui X. Ruan each provided 24-hour, "live-in" services to Ms. C.D. for a total of 49 shifts. *Id*.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

109. SHP assessed Ms. C.D. in April 2015, and SWHNY conducted an assessment of her on October 17, 2016, April 23, 2017, October 16, 2018, and April 2, 2019. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001998-2019); Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001898-001918, NYSDOH 000732-000753, 000799-000820, 001701-001723).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

110. SHP recorded that Ms. C.D. was moderately impaired in cognition; that she was frequently incontinent of urine and occasionally incontinent of bowel, with her incontinence care provided by her aide; that she ambulated indoors only with an assistive device and used a wheelchair outdoors; and that she required dependent, extensive assistance with her activities of daily living. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001834, 001999, 002002-002003).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

111. SWHNY recorded that Ms. C.D.'s primary diagnosis was dementia. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001913, 001915, 001937).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

112. SWHNY recorded that Ms. C.D. had an unsteady gait; used a wheelchair; and required maximal assistance with bathing, dressing, walking, transferring, toileting, and eating. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs for S.M.C.D., SWHNY 001901-001903, 001939).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

113. Ms. C.D. was frequently incontinent of urine and occasionally incontinent of bowel; she rarely controlled her bowels; and her aide changed her pull-ups approximately six times per day. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001903, NYSDOH 000804, 001684).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

114. Ms. C.D.'s assessors recorded that Ms. C.D. could not be left alone safely. Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., NYSDOH 000753, 000798, 000820, 001723, 001745).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

115. The Plaintiffs assigned to provide care services to Ms. C.D. never received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Ex. 100 (Ruan Decl. ¶ 21); Ex. 81 (Zhan J. Li Decl. ¶¶ 41, 42).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

116. X.J.L. was a "patient" of GreatCare and member of SWHNY, who authorized Ms. L. for 24-hour, "live-in" care services. Friedman Decl., Ex. 76 (SWHNY Care Plan for X.J.L., SWHNY 003643-003644).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

117. Between April 11, 2023 and May 9, 2023, Plaintiff Hui X. Ruan worked 5 "live-in" shifts providing 24-hour care services to X.J.L., a member of SWH. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

118. SWHNY conducted an assessment of Ms. L. on March 11, 2023, which recorded that Ms. L., then age [REDACTED], had cognitive skills for daily decision-making that were severely impaired; had short-term and procedural memory problems, could not recognize family members or her aides, and was not self-directing; carried a primary diagnosis of Alzheimer's disease, along with coronary heart disease and anxiety; required maximal assistance with bathing, extensive assistance with lower-body dressing and toilet use, limited assistance with personal hygiene and upper-body dressing, and supervision or cueing with walking, locomotion, transferring, bed mobility, and eating; was totally dependent on others for meal preparation, housework, finances, shopping, and transportation; used a cane indoors and a wheelchair outdoors; was incontinent of bladder and wore pull-ups (including at night) that the aide changed on a toileting schedule established every 2-3 hours; and that she wandered daily, including indoor wandering at night. Friedman Decl., Ex. 50 (SWHNY Ass. Recs. for X.J.L., SWHNY 001634-001656).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

119. When providing 24-hour care services to Ms. L., Ms. Ruan was not able to obtain five hours of continuous, uninterrupted sleep or three completely duty-free hours of meal breaks. Friedman Decl., Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

120. SWHNY did not independently monitor or verify whether the aide received the legally required sleep and meal breaks and instead relied exclusively on GreatCare to come forward and report a sleep problem. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 10:21-19:4).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

121. K.W.P. and P.C.P. were "patients" of GreatCare and members of SWHNY and SWHNY's predecessor organization Alphacare, who authorized Ms. and Mr. P. for 24-hour, "live-in" care services. Friedman Decl., Ex. 14, 16, 19 (HHAX EVV Recs. for Plaintiffs Hui Li, Z. Li, Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

122. During the period covered by the Amended Complaint, Plaintiffs Hui Li, Zhan J. Li, and Hui X. Ruan each provided 24-hour, "live-in" services to K.W.P. and/or her husband P.C.P. over a total of 967 shifts. *Id.*

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

123. K.W.P. was a member of non-defendant AlphaCare MLTC until approximately December 31, 2017 when AlphaCare merged into SWHNY and AlphaCare ceased to exist. *See* Magellan Health, Inc., *Magellan Health Closes on Acquisition of SWHNY* (Oct. 31, 2017); *see, e.g.,* Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P.); Ex. 78 (SWHNY Care Plan for K.W.P., SWHNY 004237); Ex. 14, 16, 18 (HHAX EVV Recs. for Hui Li, Z. Li, Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

124. AlphaCare sent a registered nurse to conduct assessments of K.W.P. and issued Person-Centered Service Plans effective July 2, 2014; January 26, 2015; April 26, 2016; September 20, 2016; February 22, 2017; March 27, 2017; and October 2, 2017. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003748, 003753, 003758, 003762, 003766, 003769, 003774).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

125. AlphaCare recorded that Ms. P. had generalized muscle weakness, difficulty walking, and depended on a wheelchair. *See, e.g,* Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003749, 003754, 003759, 003763, 003767, 003770).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

126. Beginning with the plan effective September 20, 2016, AlphaCare recorded that Ms. P. had Alzheimer's disease, both early-onset and unspecified, and unspecified dementia. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003749, 003754, 003759, 003763).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

127. AlphaCare's plans reflected the progression of Ms. P.'s dementia: it identified "dementia or delirium" as an open care-management issue beginning September 20, 2016, added impaired communication on February 22, 2017 and cognitive loss on March 27, 2017. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003765 (Sept. 20, 2016), 003761 (Feb. 22, 2017), 003756 (Mar. 27, 2017)).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

128. AlphaCare recorded that Ms. P. had urinary incontinence, and its later plans also identified bowel conditions as an open care-management issue. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., 003749, 003751, 003756, 003759, 003761, 003763, 003765, 003776).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

129. Across its plans, AlphaCare recorded that Ms. P. required assistance with activities of daily living, including bathing, personal hygiene, dressing, transferring, locomotion, turning and positioning, and incontinence care. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003750, 003776).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

130. SWHNY sent a registered nurse to conduct comprehensive in-home assessments of Ms. P. on March 28, 2018, September 11, 2018, March 4, 2019, and September 4, 2019. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003686, 003842, 003989, 004072).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

131. SWHNY's assessments of Ms. P. recorded a primary diagnosis of Alzheimer's disease, or dementia, and noted that Ms. P. was very forgetful, easily confused, and was unable to make decisions about her daily activities or to direct her own care. *See, e.g.,* Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003687, 003691, 003847, 003994).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

132. SWHNY recorded that K.W.P.'s mobility deteriorated over the assessment period:

at the March 28, 2018 assessment, she required extensive assistance with walking and transfers, and by the September 11, 2018 assessment and thereafter, she was bed-bound and totally dependent for locomotion. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003690 (Sept. 11, 2018), 003846 (Mar. 4, 2019), 003993 (Sept. 4, 2019), 004076 (Mar. 28, 2018)).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

133. SWHNY recorded that Ms. P. required total or maximal assistance, or total dependence, with activities of daily living, including bathing and toileting, and that she needed to be repositioned every two hours to avoid pressure ulcers. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., 003690-003691, 003846-003847, 003993-003994).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

134. SWHNY's March 28, 2018 assessment also noted that Ms. P.'s aides had established Ms. P. on scheduling toileting every two hours, although Ms. P. often refused to cooperate. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 004077).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

135. SWHNY recorded that Ms. P. was incontinent with no control over her bladder

present at every assessment, that her bowel incontinence progressed to no control present by September 4, 2019, and that she wore diapers and underpads. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003691, 003847, 003994, 004077).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

136. K.W.P. lived with her spouse, P.C.P., in a studio apartment. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003665, 003842).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

137. Mr. P. was authorized for six hours of home care services per day from his own, separate aide until May 1, 2017, when he began sharing an aide with his wife; effective August 18, 2017, Mr. P. was authorized for mutual, "live-in" care with his wife, which SWHNY continued. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004817, 004820); Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004803, 005004).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

138. As recipients of mutual, "live-in" care, Ms. and Mr. P. received care services from a single aide who was required to care for both spouses at the same time. Friedman Decl., Ex. 79 (SWHNY Provider Notice re Mutual Auth. Process, SWHNY 000690-000691).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

139. AlphaCare sent a registered nurse to conduct assessments of Mr. P. and issued Person-Centered Service Plans effective July 2, 2014; January 26, 2015; January 31, 2017; March 27, 2017; and October 2, 2017. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004814-004830).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

140. AlphaCare recorded that Mr. P. had abnormalities of gait and mobility, and generalized muscle weakness. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004815).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

141. AlphaCare recorded that Mr. P. had urinary incontinence and an overactive bladder, and its later plans also identified bowel conditions as an open care-management issue. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004815-004816, 004820).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

142. AlphaCare identified cognitive loss (beginning with its January 26, 2015 plan) and impaired communication (beginning with its January 31, 2017 plan) as open care-

management issues. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004819, 004822, 004826).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

143. Across its plans, AlphaCare consistently recorded that Mr. P. required assistance with activities of daily living. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004816-004817, 004822-004823).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

144. SWHNY sent a registered nurse to conduct comprehensive in-home assessments of Mr. P. on March 28, 2018, September 11, 2018, March 4, 2019, September 4, 2019, and September 10, 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004683, 004775, 004831, 004980, 005094).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

145. SWHNY recorded that Mr. P. ambulated with a cane and had an unsteady gait exhibited daily, and that his need for assistance with walking worsened from supervision in 2018 to extensive assistance by September 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004779, 005098-005099).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

146. SWHNY recorded that Mr. P. needed increasing assistance with activities of daily living, ranging from extensive assistance with bathing in 2018 to maximal assistance with bathing and extensive assistance with dressing, toileting, and ambulation by September 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004778, 005097-005098).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

147. SWHNY recorded that Mr. P. was occasionally incontinent both of urine and bowel, and that he wore pull-ups. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004779, 004797, 005099).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

148. Because the Ps both required extensive assistance, the Plaintiffs who provided services to the couple worked around the clock and did not receive five hours of uninterrupted sleep or three hours of duty-free meal breaks on their 24-hour shifts. *See, e.g.,* Friedman Decl., Ex. 18 (Z. Li Dep. 85:14-21, 61:3-6); Ex. 15 (Hui Li Dep. 5:13-15, 59:3-8); Ex. 81 (Zhan J. Li Decl. ¶¶ 30-32, 35); Ex. 82 (Hui Li Decl. ¶¶ 7-10).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

149. X.Y.W. was a "patient" of GreatCare and a member of SWHNY and SWHNY's predecessor Alphacare, who authorized Ms. W. for 24-hour, "live-in" care services. Friedman Decl., Ex. 83 (AlphaCare Service Plans for X.Y.W., SWHNY 005408-005432); *see, e.g.,* Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005350).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

150. From approximately January 1, 2018 until the time she passed away in or around [REDACTED], Ms. W. was a member of SWHNY. *See, e.g.,* Friedman Decl., Ex. 10 (HHAX EVV Recs. for X. Chen); Ex. 26 (HHAX EVV Recs. for Zhang).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

151. During the period covered by the Amended Complaint, Plaintiffs Li Chen, Xiu F. Chen, Hui He, and Mu Z. Zhang each provided 24-hour, "live-in" care services to X.Y.W. over a total of 1,047 shifts. Friedman Decl., Ex. 7, 10, 12, 26 (HHAX EVV Recs. for L. Chen, X. Chen, He, and Zhang).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

152. Prior to their employment with GreatCare, Plaintiffs Li Chen and Mu Z. Zhang had already been providing 24-hour, "live-in" services to Ms. W. when Ms. W. was receiving services through another agency called Amazing. Ex. 56 (Zhang Dep. 23:2-3, 46:19-24); Ex. 6

(L. Chen Decl. ¶¶ 10, 32); Ex. 27 (Zhang Decl. ¶¶ 5,6).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

153. AlphaCare issued Person Centered Service Plans for Ms. W. on December 2, 2014, August 9, 2016, January 25, 2017, and August 1, 2017. These service plans recorded incontinence, cognitive loss, impaired communication, difficulty walking, and abnormalities of gait and mobility, and the need for assistance with activities of daily living as care-management issues. To assist with Ms. W.'s care, AlphaCare authorized live-in personal care aide services and a monthly supply of incontinence supplies, including underpads, diapers, and liners. Friedman Decl., Ex. 83 (AlphaCare Service Plans for X.Y.W., SWHNY 005429-005432 (Dec. 2, 2014), 005425-005428 (Aug. 9, 2016), 005417-005420 (Jan. 25, 2017), 005408-005411 (Aug. 1, 2017)).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

154. SWHNY conducted comprehensive in-home assessments of Ms. W. on July 27, 2018, January 28, 2019, July 8, 2019, and January 10, 2020. Friedman Decl., Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005297, 005321, 005375, 005446).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

155. On July 27, 2018, SWHNY conducted a comprehensive assessment of Ms. W.

that recorded an unsteady gait, a history of falls, weakness, and chronic pain; that she required assistance with activities of daily living including walking, locomotion, toilet transferring, and bed mobility; and that she had a cardiorespiratory condition marked by shortness of breath. *Id.* at 005375-005401.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

156. The assessment concluded that Ms. W. could not be left alone safely and recommended continuing 24-hour live-in personal care services seven days a week. Friedman *Id.* at 005398.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

157. On January 28, 2019, SWHNY conducted a comprehensive assessment of X.Y.W. that recorded that she had a history of multiple falls; including a head injury from a fall in her home at night; that she reported dizziness when getting up from a seated or lying position; and that she had poor balance and an unsteady gait and walked only short distances with a quad cane and aide assistance. *Id.* at 005321-005373.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

158. The assessment also recorded that Ms. W. needed assistance getting up one to two times at night to urinate and that a bedside commode was in place. *Id.* at 005326, 005350.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

159. On July 8, 2019, SWHNY conducted a comprehensive assessment of Ms. W. that recorded that Ms. W. had an unsteady gait; ambulated with a quad cane indoors and a rollator outdoors; needed human assistance on uneven surfaces; had general weakness; was forgetful with mild cognitive impairment; and that she reported dizziness. *Id.* at 005439-005467.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

160. The assessment also recorded that she urinated twice at night and required the aide's assistance for toilet transfers. *Id.* at 005439, 005451.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

161. On January 10, 2020, SWHNY conducted a comprehensive assessment of X.Y.W. that recorded Ms. W. urinated twice at night and required the aide's assistance for toilet transfers. *Id.* at 005302, 005444.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

162. The Plaintiffs who provided long-term care services to Ms. W. all reported that Ms. W. called on them several times each night to ask for their assistance with toileting and other

needs. Friedman Decl., Ex. 6 (Li Chen Decl. ¶¶ 25-26); Ex. 56 (Zhang Dep. 93:7-24, 88:2-13); Ex. 27 (Zhang Decl. ¶¶ 11, 24); Ex. 54 (Xiu F. Chen. Dep. 59:11-16); Ex. 84 (X. Chen. Decl. ¶¶ 18-19).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

163. None of the Plaintiffs who provided care services to Ms. W. were able to obtain five hours of continuous, uninterrupted sleep per shift; instead Plaintiffs never slept more than three hours per shift. Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 27; see also ¶¶ 25-26); Ex. 56 (Zhang Dep. 88:2-13, 93:7-24); Ex. 27 (Zhang Decl. ¶¶ 11, 23-25); Ex. 54 (X. Chen Dep. 59:22-60:7); Ex. 84 (X. Chen Decl. ¶¶ 17-19).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

164. Additionally, none of the Plaintiffs received three hours of completely duty-free meal breaks during their shifts with Ms. W.; instead, the Plaintiffs rushed their meals, usually taking between 10 and 15 minutes to eat and typically eating at Ms. W.'s side so that they could continue to monitor Ms. W.'s safety while they ate. Friedman Decl., Ex. 6 (Li Chen Decl. ¶¶ 30-31); Friedman Decl., Ex. 56 (Zhang Dep. 91:13-92:5, 96:12-14); Ex. 27 (Zhang Decl. ¶ 25); Friedman Decl., Ex. 84 (Xiu F. Chen Decl. ¶¶ 22-23).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

165. D.C. was a "patient" of GreatCare and a member of non-defendant MLTC Aetna authorized for 24-hour, "live-in" care. Friedman Decl., Ex. 12 (HHAX EVV Rec. For He).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

166. During the period covered by the Amended Complaint, Plaintiff Hui He worked 18 "live-in" shifts providing care services to D.C.. *Id.*

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

167. Aetna conducted assessments of Mr. C. on March 3, 2016 and September 7, 2016. Friedman Decl., Ex. 85 (Aetna Ass. Recs. for D.C., AET D.C. 0000010-0000029, 0000030-0000049).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

168. The assessments recorded that Mr. C. exhibited an unsteady gait daily, that he ambulated indoors with a cane, and that he required assistance with activities of daily living, including toilet transferring. *Id*. at 0000013-0000015, 0000033-0000035.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

169. Plaintiff Hui He did not receive five hours of continuous, uninterrupted sleep or

three hours of completely duty-free meal breaks on any of her 24-hour shifts when providing care to Mr. C.. Friedman Decl., Ex. 86 (He Decl. ¶¶ 15-16).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

170. S.K.C.-2 was a "patient" of GreatCare and a member of non-defendant MLTC Elderplan, who authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 87 (ElderPlan Auth. Services Notice for S.K.C.-2, ELDERPLAN000204).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

171. During the period covered by the Amended Complaint, Plaintiffs Hui He and Hui X. Ruan each provided 24-hour, "live-in" services to S.K.C.-2 for a total of 198 shifts. Friedman Decl., Ex. 12, 19 (HHAX EVV Rec. For He and Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

172. ElderPlan assessed Ms. C. on August 18, 2016, February 25, 2017, August 9, 2017, and February 19, 2018. Friedman Decl., Ex. 88 (ElderPlan Ass. Recs. for S.K.C.-2, ELDERPLAN000099, 000128, 000206; NYSDOH 000380).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

173. ElderPlan recorded that Ms. C.'s diagnoses included Parkinson's disease, functional urinary incontinence, abnormalities of gait and mobility, osteoarthritis, osteoporosis, congestive heart failure, and short-term memory problems; ElderPlan's care-management records further reflected dementia and mild cognitive impairment. *Id.* at 000099, 000118, 000146, 000224, 000247.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

174. Ms. C. ambulated only with a rollator and the assistance of her aide. *Id.* at 000103; NYSDOH 000390, 000391.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

175. Ms. C. required extensive-to-maximal assistance with the activities of daily living, including walking, transferring, toileting, dressing, and eating. *Id*. at 000103, NYSDOH 000385, 000390, 000391.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

176. ElderPlan also recorded that Ms. C. was frequently incontinent of urine, used a commode, and wore pull-ups, liners, and underpads. *Id*. at 000099, 000118, 000146, 000224, 000228, NYSDOH 000385.

RESPONSE:

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

177. ElderPlan's records reflect a complaint that a prior aide was unwilling to get up at night to assist her with toileting. Friedman Decl., Ex. 89 (ElderPlan Member Notes for S.K.C.-2, ELDERPLAN000039-000040).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

178. In its August 18, 2016, February 25, 2017, and August 9, 2017 assessments, ElderPlan recorded that Ms. C. could not be left alone safely. Friedman Decl., Ex. 88 (ElderPlan Ass. Recs. for S.K.C.-2, ELDERPLAN000119, 000147, 000225; NYSDOH 000444, 001363, 001453).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

179. Neither of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 86 (He Decl. ¶¶ 14-15); Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

180. S.C. was a "patient" of GreatCare and member of non-defendant MLTC Aetna, who authorized Ms. C. for 24-hour, "live-in" services. Friedman Decl., Ex. 90 (Aetna Ass. Recs.

for S.C., AET S.C. 0000825, 000847).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

181. During the period covered by the Amended Complaint, Plaintiffs Zhan J. Li, and Hui X. Ruan each provided 24-hour, "live-in" services to S.C. for a total of 319 shifts. Friedman Decl., Exs. 16, 19 (HHAX EVV Recs. for Z. Li and Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

182. Aetna Better Health sent a registered nurse to conduct comprehensive assessments of Ms. C. on January 30, 2017, July 26, 2017, January 10, 2018, July 13, 2018, January 12, 2019, July 14, 2019, and January 19, 2020. Friedman Decl., Ex. 90 (Aetna Ass. Recs. for S.C., AET S.C. 0000803, 0000824, 0000846, 0000868, 0000889, 0000910, 0000932).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

183. Across its assessments, Aetna recorded that Ms. C.'s primary diagnosis was dementia, and that her cognitive skills for daily decision-making were moderately to severely impaired. *Id*. at 0000825, 0000829; 0000847, 0000851, 0000869, 0000873.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

184. Aetna recorded that Ms. C. was non-ambulatory, that her primary mode of locomotion indoors was a wheelchair, and that she could not stand or walk on her own; required extensive-to-maximal assistance with the activities of daily living, including two-person assistance for bathing and maximal assistance for toileting, and total dependence for meal preparation, housework, medications, and other instrumental activities; was incontinent of urine and wore pull-ups, diapers, and underpads. *Id*. at 0000871-872, 0000937.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

185. Aetna recorded that Ms. C. had a diagnosis of insomnia, experienced visual hallucinations and delusions, was prescribed a bedtime sleep medication and a bedtime antipsychotic, and that she could not be left alone safely. *Id*. at 0000820, 0000823, 0000825, 0000842, 0000845, 0000847, 0000882, 0000906, 0000909, 0000947.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

186. Neither of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 81 (Zhan J. Li Decl. ¶¶ 41-42); Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

187. Y.L. was a "patient" of GreatCare and member of non-defendant MLTC Fidelis, who authorized Mr. L. for 24-hour, "live-in" services. *See* Friedman Decl., Ex. 91 (Fidelis Ass. Recs. for Y.L., NYSDOH 000821, 000841); Ex. 12 (HHAX EVV Recs. for He).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

188. During the period covered by the Amended Complaint, Plaintiff Hui He provided 24-hour, care services to Mr. L. over a total of 130 "live-in" shifts. Friedman Decl., Ex. 12 (HHAX EVV Rec. For He).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

189. On April 28, 2017, Fidelis conducted an assessment of Mr. L., then age 86, that recorded he was bedbound, that his cognitive skills for daily decision-making were severely impaired, and that he had short-term, procedural, and situational memory problems. Friedman Decl., Ex. 91 (Fidelis Ass. Rec of Y.L., NYSDOH 000822, 000825, 000830, 000839).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

190. The April 28, 2017 assessment recorded that Mr. L. required total dependence (full performance by others) for bathing, upper- and lower-body dressing, locomotion, and toilet transferring and toilet use; that walking did not occur during the entire assessment period; and that he required maximal assistance with personal hygiene, bed mobility, and eating, with his

primary mode of locomotion indoors recorded as bed-bound. *Id*. at 000824-000825.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

191. The April 28, 2017 assessment also recorded that Mr. L. was incontinent of both bladder and bowel with no control present and wore diapers/briefs, with diagnoses including full incontinence of feces and other specified urinary incontinence. *Id*. 000825, 000831, 000838.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

192. The April 28, 2017 assessment also flagged that Mr. L.'s conditions made his cognitive, ADL, mood, or behavior patterns unstable; that his wife (the informal helper who lived with him) was unable to continue in caring activities; that family reported feeling overwhelmed by his illness; and that the aide was instructed to keep the bed side rails up, change diapers frequently to prevent skin breakdown, and reposition him every two hours. *Id*. at 000827, 000833-000834.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

193. Plaintiff Hui He's responsibilities for Mr. L. included: feeding him milk every around the clock, changing his diaper approximately every two hours, using the toilet whenever he needed, and turning and repositioning his body in bed approximately every two hours to prevent bedsores and skin breakdown. Friedman Decl., Ex. 92 (He Dep. 49:15-17, 51:19-22,

64:18-65:13, 77:10-14); Ex. 86 (He Decl. ¶¶ 11, 12).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

194. Because Mr. L. was confined to his bed and had to be turned and have his diapers changed every two hours throughout the night, Ms. He could not sleep for five uninterrupted hours; as she explained, had she slept for five hours the patient "would be all wet with . . . urine," which "would not be acceptable." Friedman Decl., Ex. 92 (He Dep. 77:10-14, 148:23-149:3, 150:8-14); Ex. 86 (He Decl. ¶¶ 11, 12).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

195. Plaintiff Hui He did not have enough time to rest and did not receive three hours of completely duty-free meal breaks during her shifts; she was able to stop to eat only after feeding the care recipient, and for no more than approximately a half hour to an hour before resuming work. Friedman Decl., Ex. 92 (He Dep. 64:18-65:24, 77:4-5); Ex. 86 (He Decl. ¶ 16).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

196. M.Q.L. was a "patient" of GreatCare and a member of non-defendant MLTC Aetna, who authorized Ms. L. for 24-hour, "live-in" services. Friedman Decl., Ex. 93 (Aetna Serv. Auths. for M.Q.L., AET M.Q.L. 0001004, 0001006, 0001008).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

197. During the period covered by the Amended Complaint, Plaintiff Hui He worked 17 "live-in" shifts providing care services to M.Q.L.. Friedman Decl., Ex. 12 (HHAX EVV Rec. for He).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

198. Aetna conducted assessments of Ms. L. on March 3, 2016 and September 7, 2016. Friedman Decl., Ex. 94 (Aetna Ass. Recs. for M.Q.L., NYSDOH 000488, 001521).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

199. The assessments recorded that Ms. L. lived with her spouse only; that she was cognitively impaired, with daily decision-making moderately impaired and short-term, procedural, and situational memory problems and periods of confusion; had a diagnosis of dementia; and that she used a wheelchair, with an unsteady gait. *Id*. at 000488-000489, 000492-000493, 000496.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

200. The assessments also recorded that Ms. L. required extensive assistance for bathing, personal hygiene, upper- and lower-body dressing, locomotion, and toilet transferring

and toilet use, and maximal assistance for walking; that she was occasionally incontinent of bladder and wore pads or briefs; that she was restrained by bed rails "for fall precaution"; and that she could not be left alone safely. *Id.* at 000490-000494, 000496-000500, 000503, 000505-000506, 000508, 001521-001527, 001529-001533, 001535, 001537-001538, 001540.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

201. Whenever Ms. He worked a "live-in" shift providing care to Ms. L., Ms. He was not able to obtain five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks. Friedman Decl., Ex. 86 (He Decl. ¶ 16).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

202. K.L. was a "patient" of GreatCare and a member of non-defendant MLTC Integra, who authorized Ms. L. for 24-hour, "live-in" care services. Friedman Decl., Ex. 95 (Integra Ass. Recs. for K.L., NYSDOH 000225-000226, 000331, 001364; Ex. 8 (HHAX EVV Rec. for M. Chen).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

203. During the period covered by the Amended Complaint, Plaintiff Mei F. Chen provided 24-hour, "live-in" care to Ms. L. over 100 "live-in" shifts. *Id.*

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

204. Integra conducted assessments on Ms. L. on February 1, 2016, February 19, 2016, August 12, 2016, and February 15, 2017. Friedman Decl., Ex. 95 (Integra Ass. Recs. for K.L., NYSDOH 000224, 000330, 000356, 001364).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

205. In each of the assessments, Ms. L.'s primary diagnosis was recorded as dementia. *Id*. at 000229, 000336, 000361, 001370.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

206. Each assessment additionally recorded that Ms. L. had impaired cognitive skills for daily decision-making, recorded as moderately impaired in the February 1, 2016, August 12, 2016, and February 15, 2017 assessments, and as severely impaired in the February 19, 2016 assessment, and that she had a short-term memory problem. *Id*. at 000225, 000331, 000357, 001365.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

207. Ms. L. required maximal assistance with bathing, personal hygiene, dressing, and walking as Ms. L. exhibited an unsteady gait and was unable to walk on her own. *Id*. at 000228-

000229, 000334, 000360, 000362, 000366, 001368, 001370.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

208. Ms. L. was frequently incontinent of both bladder and bowel on a daily basis and wore incontinence briefs. *Id*. at 000229, 000336, 000361, 001369.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

209. At the February 15, 2017 assessment, the assessor instructed that a toileting routine be instituted every two hours to reduce the occurrence of Ms. L.'s incontinence. *Id*. at 000336.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

210. The February 1, 2016 and February 19, 2016 assessments recorded that, as reported by Ms. L.'s personal care aide and son, Ms. L. could not clean herself after a bowel movement. *Id*. at 000229, 000361.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

211. Each of the assessments recorded that Ms. L. required maximal assistance to use the toilet and to clean herself after incontinent episodes. *Id*. at 000228, 000335, 000360, 001368.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

212. The February 1, 2016 and August 12, 2016 assessments recorded that Ms. L. could not be left alone safely. *Id*. at 000244, 001388.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

213. Ms. L. needed toileting multiple times during the night, and Plaintiff Mei F. Chen had to help her each time and make sure that she did not fall. Friedman Decl., Ex. 96 (Mei F. Chen Decl. ¶ 14).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

214. When providing care to Ms. L., Plaintiff Mei F. Chen never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. *Id*. at ¶¶ 15-16.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

215. D.T.K. was a "patient" of GreatCare and a member of non-defendant MLTC Empire BlueCross BlueShield ("Empire"), who authorized Ms. T. for 24-hour, "live-in" care services. *See* Friedman Decl., Ex. 97 (Empire Plans for D.T.K., DTK000082).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

216. During the period covered by the Amended Complaint, Plaintiff Hui X. Ruan provided 24-hour, "live-in" services to Ms. T. over 34 shifts. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

217. Empire's nurse assessed Ms. T. on August 21, 2018 and February 24, 2019. Friedman Decl., Ex. 98 (Empire/Anthem Ass. Recs. for D.T.K., DTK000072-000077, 000113-000119).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

218. Empire's assessments recorded that Ms. T. did not have a normal gait, required an assistive device and hands-on assistance to ambulate, and was at risk of falls. *Id*. at 000075, 000117.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

219. Empire's assessments further recorded that Ms. T. needed assistance with bathing, dressing, grooming, toileting, transferring, walking, and meal preparation. *Id*. at 000074.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

220. Empire's records also recorded that Ms. T. was incontinent and wore diapers, and that she woke approximately twice per night for toileting and changing. Friedman Decl., Ex. 99 (Empire/Anthem Prog. Notes for D.T.K., DTK000028-000029, 000048).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

221. Empire assessed that Ms. T. was not safe to be left alone. Friedman Decl., Ex. 98 (Empire/Anthem Ass. Recs. for D.T.K., DTK000075).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

222. While assigned to provide care services to Ms. T., Ms. Ruan never received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 100 (Ruan Decl., ¶ 21).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

223. S.Y.Y. was a "patient" of GreatCare and a member of non-defendant MLTCs Extended and Hamaspik, who authorized Ms. Y. for 24-hour, "live-in" care services. *See* Friedman Decl., Ex. 101 (Extended Auth. Recs. for S.Y.Y., GC 005635); Ex. 102 (HHAX Note

for S.Y.Y., GC 010739).

**<u>RESPONSE:</u>**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

224. During the period covered by the Amended Complaint, Plaintiffs Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng each provided 24-hour, "live-in" care services to S.Y.Y. over a total of 1,384 shifts. Friedman Decl., Ex. 22, 24, 28 (HHAX Recs. for J. Xiao, M. Xiao, Zheng).

**<u>RESPONSE:</u>**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

225. Extended assessed and monitored Ms. Y. throughout her enrollment. *See* Friedman Decl., Ex. 103 (Extended Ass. Recs. for S.Y.Y., GSD-Extended 001132-001170).

**<u>RESPONSE:</u>**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

226. Extended's nurses repeatedly documented that Ms. Y. suffered from dementia, and that she was forgetful and cognitively impaired. *See, e.g., Id*. at 001366, 001399.

**<u>RESPONSE:</u>**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

227. Extended assessed Ms. Y. as at high risk for falls. *Id*. at 001479, 001603.

**<u>RESPONSE:</u>**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

228. Extended recorded that Ms. Y. used an assistive device, a cane and a walker, when ambulating. *Id*. at 001479, 001603, 001708.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

229. Extended recorded that Ms. Y. had an unsteady gait and required hands-on human assistance for safe ambulation. *Id*. at 001481, 001604, 001708.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

230. Extended repeatedly recorded that Ms. Y. had nocturia and got up during the night to use the bathroom; some assessments noted that she required assistance to get to the toilet, with several assessments specifying that the assistance was provided by her live-in personal assistant. *See, e.g., Id*. at 001366, 001407.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

231. Extended repeatedly recorded that Ms. Y. suffered from bladder and bowel incontinence, would become incontinent if she did not reach the bathroom in time, and used liners. *See, e.g., Id*. at 001358, 001362.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

232. On March 1, 2020, Extended sent an observer to conduct an in-home overnight observation of Ms. Y. and documented on an Observation Activity Report with a ”Night Shift” log running from 8:00 p.m. to 8:00 a.m. Friedman Decl., Ex. 104 (Extended Observation Activity Report for S.Y.Y., GSD-ExtendedMLTC 00001258-00001263).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

233. According to the Observation Activity Report and EVV, Plaintiff Mei Z. Xiao was providing care for Ms. Y. on that date. *Id*. at 00001260; Friedman Decl., Ex. 24 (EVV Recs. for M. Xiao).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

234. According to the Observation Activity Report, Ms. Y. fell asleep at 9:00 p.m., at 10:00 p.m. woke up “talking to Xiao Meizhen”, at 10:30 p.m. was lying awake in her bed, at 11:00 p.m. was awake and “asked Xiao Meizhen (aid) to help her to the commode”, at 11:30 “Xiao Meizhen (aid) helped Client back to her bed”, at 12:00 a.m. “Client is laying in her bed talking to Xiao Meizhen (aide)”, at 12:30 a.m. was awake, slept from 1:00 a.m. until 3:00 a.m., was awake between 3:00 a.m. and 4:00 a.m., woke up again at 5:30 a.m., at 6:00 a.m. was “talking to xiao meizhen (aid)”, back asleep at 7:00 a.m., awake again at 7:30 a.m., and back asleep at 8:00 a.m. Friedman Decl., Ex. 104 (Extended Observation Activity Report for S.Y.Y., GSD-ExtendedMLTC 00001260-00001263).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

235. None of the Plaintiffs who provided care to Ms. Y. received five hours of continuous uninterrupted sleep on any of their 24-hour shifts. Friedman Decl., Ex. 105 (J. Xiao Dep. 59:10-13, 71:9-15); Ex. 106 (J. Xiao Decl. ¶¶ 12, 29); Ex. 55 (M. Xiao Dep. 57:6-11, 73:4-74:11); Ex. 107 (M. Xiao Decl. ¶¶ 11, 18, 21-24, 28); Ex. 108 (Zheng Dep. 27:4-28:10); Ex. 109 (Zheng Decl. ¶¶ 24-28, 30).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

236. None of the Plaintiffs who provided care to Ms. Y. received three hours of duty-free meal breaks on any of their 24-hour shifts. Friedman Decl., Ex. 107 (M. Xiao Decl. ¶ 28); Ex. 55 (M. Xiao Dep. 83:14-25); Ex. 106 (J. Xiao Decl. ¶ 29); Ex. 109 (Zheng Decl. ¶¶ 21-22).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

237. Plaintiffs did not receive assessments for the following care recipients who were all "patients" of GreatCare and were all authorized for 24-hour, "live-in" services:

a. H.C., who was a member of SWHNY, and received 24-hour, "live-in" care services from Xiu F. Chen over three shifts;

b. X.D., who was a member of non-defendant MLTC Agewell, and received

24-hour, "live-in" care services from Hui X. Ruan over four shifts;

c. L.H.L., who was a member of SWHNY, and received 24-hour, "live-in" care services from Hui X. Ruan over one shift;

d. J.S.L., who was a member of non-defendant MLTC Agewell, and received 24-hour, "live-in" care services from Hui X. Ruan over four shifts;

e. P.L., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiff Hui He over two shifts;

f. X.Q.L., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiff Hui He over two shifts;

g. C.H.M., who was a member of CenterLight, and received 24-hour, "live-in" care services from Plaintiff Hui X. Ruan over five shifts; and

h. Y.X., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiffs Hui X. Ruan and Mu Z. Zhang over seven shifts. Friedman Decl. ¶ 114.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

238. While providing services to these care recipients, none of the Plaintiffs were able to obtain five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per 24-hour shift. *See, e.g.,* Friedman Decl., Ex. 86 (He Decl. ¶ 16); Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE:**

Denies the statement. The citations do not support the statement. Further, Plaintiff Ruan specifically acknowledged and agreed that she would report to her GreatCare

coordinator/supervisor immediately if she was (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at any time during here three one hour meal times. (Brenlla Opp. Decl. Exh. 7 ). Notably, Ruan never reported to her coordinator/supervisor or anyone at GreatCare that she did not receive her meal periods or uninterrupted sleep. (Brenlla Opp. Dec. Wang dep. 5.15.26 dep. 127). Plaintiff Ruan acknowledged that she always had three hours of meal time, five hours of consecutive and uninterrupted sleep every night and had adequate sleeping facilities. (Brenlla Opp. Dec. Exh. 8 ).

239. Plaintiffs also did not receive any assessments for H.S.W., who was a member of CenterLight living in [REDACTED], and received 24-hour, "live-in" care services from Plaintiff Li Chen over three weeks for a total of 12 shifts. Friedman Decl. ¶ 115; Ex. 7 (HHAX EVV Recs. for L. Chen).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

240. Ms. W. was a particularly difficult assignment for Ms. Chen, and Ms. Chen was unable to sleep five continuous hours during her shifts or obtain three completely duty-free meal breaks when providing 24-hour care to Ms. W. Friedman Decl., Ex. 6 (L. Chen Decl. ¶¶ 47, 49).

**RESPONSE:**

Denies the Statement. Plaintiff Chen specifically acknowledged and agreed that she would report to her GreatCare coordinator/supervisor immediately if she was (i) unable to receive five hours uninterrupted sleep, (ii) interrupted by a call to duty at any time during her sleep time; (iii) unable to receive three one hour meal times or (iv) interrupted by a call to duty at

any time during here three one hour meal times. (Brenlla Opp. Decl. Exh. 9 ). Notably, Chen never reported to her coordinator/supervisor or anyone at GreatCare that she did not receive her meal periods or uninterrupted sleep. (Wang 5.15.26 dep. 127, 132).

241. Both CenterLight and SWHNY had contracts with the New York State Department of Health ("NYSDOH") to provide home health aide services and personal care services in the home. *See, e.g.,* Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., SWHNY 000001-000186); Ex. 36 (NYSDOH-CL 2017-2021 Cont., CenterLight 000381-568).

**RESPONSE:**

Admits that CenterLight had a contract with the NYSDOH. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

242. NYSDOH permitted CenterLight and SWHNY to deliver the services through contracted providers, allowing them to delegate activities or functions to those providers in a manner consistent with their contracts with the State. *See, e.g., Id.* at Art. V.B, (CenterLight 000402); Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. V.A, SWHNY 000021; Art. VII.A, SWHNY 000070).

**RESPONSE:**

Admits the contract between CenterLight and NYSDOH allowed CenterLight to provide home health aide services through contracted providers pursuant to NYSDOH regulations. Admits that CenterLight had a contract with the NYSDOH. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

243. When the MLTC Defendants delivered the services by subcontracting with

providers, they retained full responsibility over the services and were required to maintain full responsibility for adhering to and otherwise fully complying with all applicable laws, regulations, including compliance with the FLSA, NYLL, and Wage Parity Act. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.B, CenterLight 000402); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(B), SWHNY 000071, K-M, SWHNY 000081).

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

244. CenterLight and SWHNY were required to develop protocols to establish a verification system to demonstrate their subcontractors' FLSA compliance, including record-keeping methodologies, tracking of aide travel time, hours worked on live-in cases, and appropriate rate reimbursement. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.M, CenterLight 000410); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(L), SWHNY 000081).

**RESPONSE:**

Denies the statement. The citation does not support the statement as the citation does not address any subcontractor.

245. SWHNY was further required to develop protocols to establish a verification system to demonstrate compliance with the NYLL, including record-keeping methodologies, and identifying appropriate reimbursement rates. Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(M), SWHNY 000081).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

246. SWHNY was also required to develop protocols to establish a system to verify that home care aide wages provided by each subcontractor met or exceeded the local wage requirements. Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

247. The MLTC Defendants were required to certify to NYSDOH annually that all home care services provided by them or their subcontractors were in compliance with the Wage Parity Act. *Id.*; Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.L, CenterLight 000409).

**RESPONSE:**

Admits that pursuant to the contract, certifications were required by contractors that the contractor were compliance with New York PHL 3614-c. (See Brenlla Opp. Dec. Exh. 12). CenterLight denies the statement as it mischaracterizes the CenterLight contract. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement as to any “MLTC defendant”.

248. The MLTC Defendants were required to collect from their LHCSA subcontractors, including GreatCare, sufficient information to verify that their subcontractors were in compliance with the Wage Parity Act. *Id.* at Art. V.L, 000409; Friedman Decl. Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE:**

Admits that CenterLight collected information from subcontractors to verify that the subcontractors were complying with the Wage Parity Act but denies the remaining portion of the statement. (See Brenlla Opp. Dec.Exh.12 ; Wang dep. 5.15.26 135-136 ). CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

249. Neither CenterLight nor SWHNY were permitted to verify the compliance of their LHCSAs by collecting a certification or attestation alone: their contracts with the NYSDOH contract expressly stated that solely collecting the certification or an attestation of compliance was not sufficient. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V(L), CenterLight 000409); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE:**

Admits that CenterLight collected verifications regarding Wage parity and performed audits but denies the remaining statement. (See Brenlla Opp. Dec. Exh.12; Wang dep. 5.15.26 135-136 ). CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

250. Under their contracts with the NYSDOH, the MLTC Defendants' failure to fully comply with the home care worker wage parity requirements could "result in non-payment of services rendered." Friedman Decl. Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.L, CenterLight 000410); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE:**

Admits that CenterLight's contract states "result in non-payment of services rendered." The statement is denied as it is an incomplete or inaccurate characterization of the contract. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

251. Throughout the relevant period, CenterLight and SWHNY contracted with GreatCare to provide home care and personal services to their members. *See, e.g.,* Friedman Decl., Ex. 32 (SWHNY-GC HHSA, SWHNY 000243-000281); Ex. 39 (2018 CL/GC Agree., CenterLight 000041-000063).

**RESPONSE:**

Admits that CenterLight contracted with GreatCare and various other companies at various periods of time to provide services to its members. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

252. The contracts between the MLTC Defendants and GreatCare were drafted by the MLTC Defendants and set out the rates that CenterLight and SWHNY would pay GreatCare for its aides' services. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 6:2-7:1, 12:19-13:9); Ex. 32 (SWHNY-GC HHSA, 000268-000269); Ex. 39 (2018 CL/GC Agree., CenterLight 000058-000063).

**RESPONSE:**

Admits that CenterLight drafted the agreement with GreatCare and the parties agreed to as the rates. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement regarding SWHNY.

253. The rates were periodically adjusted by CenterLight and SWHNY to account for increases in the New York state minimum wage and Wage Parity total compensation rates. *Id.*

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight admits that throughout the years, rates were increased.

254. The contracts gave the MLTC Defendants the unilateral power to amend their agreements with GreatCare. Friedman Decl., Ex. 39 (2018 CL/GC Agree., § 11, CenterLight 000053); Ex. 111 (2022 LHCSA Ancillary Agreement § 1.2, CenterLight 000108); Ex. 32 (SWHNY-GC HHSA § 11, SWHNY 000259-000260).

**RESPONSE:**

Denies the statement. The citation does not support the statement. The contract does not allow CenterLight to right to change or modify the contract. The only exception is that CenterLight may amend the contract, upon written notice, as necessary to comply with changes in applicable laws and regulations. (Friedman Decl., Ex. 39 (2018 CL/GC Agree., § 11, CenterLight 000053);

255. SWHNY's contract obligated GreatCare to require its aides to cooperate with, be bound by, and abide by SWHNY's protocols. *Id*. at § 3.3, 000247.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

256. In SWHNY's Agreement with GreatCare, SWHNY reserved the right to approve the participation of any new GreatCare aide. *Id*. at § 3.14.5, 000251.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

257. SWHNY required GreatCare to identify all of its aides by name who would operate under their agreement and to notify SWHNY before adding any new aides. *Id.* at § 3.14.1, 000250.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

258. GreatCare routinely notified SWHNY when it sent a substitute aide to cover a shift that the member care recipient's regularly assigned aide was unable to work (for example, because the regular aide called out, was sick, or was on vacation). *See, e.g.,* Friedman Decl., Ex. 58 (GC HHAX Patient Notes, 5431612, 60861195, 16864714, 24176305).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

259. SWHNY obligated GreatCare to require its aides, including Plaintiffs, to cooperate with, be bound by, and abide by SWHNY's credentialing process, and SWHNY credentialed each GreatCare aide individually before she could provide home care to its members. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 3.3, SWHNY 000247, § 3.14.4, SWHNY 000250).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

260. SWHNY could also terminate or suspend any GreatCare aide providing services to its members when, among other reasons, it determined that an aide from GreatCare had failed to meet or maintain its credentialing/recredentialing standards or when it determined that an aide's termination was necessary for the health and safety of its member. *Id*. at § 6.2.1, SWHNY 000256).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

261. SWHNY had a department that would investigate complaint filed against aides by its members and employees and could exclude aides from working with its members on the basis of those investigations. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 57:10-65:4).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

262. When a member complained about the care a GreatCare aide provided, SWHNY's grievance process required GreatCare and the aide to participate in SWHNY's investigation of the complaint. Friedman Decl., Ex. 112 (2025 SWHNY Provider Manual, SWHNY 000535-000536); Ex. 32 (SWHNY-GC HHSA § 3.3, SWHNY 000247).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

263. CenterLight required GreatCare to ensure that all of its aides who performed work under its agreement with CenterLight were properly licensed or certified and qualified to provide

the covered services. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.9, CenterLight 000045).

**RESPONSE:**

Admits that pursuant to the contract between CenterLight and GreatCare, all aides were required to be licensed pursuant to the New York State Department of Health regulations. (Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.9, CenterLight 000045). The citation provided does not support the remaining parts of the statement.

264. CenterLight also required that aides who worked with CenterLight members be subject to CenterLight's specialized PACE orientation, member-specific plan of care, and ongoing supervision and competencies conducted by CenterLight. Friedman Decl., Ex. 113 (CL-GC E-mail, GSD GC 002710- 002711).

**RESPONSE:**

Denies the statement. The citation does not pertain to any instance in this case but the document refers to Consumer Directed Personal Assisted Services (CDPAS). The document refers to a different system of healthcare delivery. The citation does not support the statement. The New York Department of Health regulations also dictate CDPAS.

265. When requesting an aide from GreatCare for a member care recipient, CenterLight could specify certain personal characteristics, including the aide's spoken language and gender. Friedman Decl., Ex. 114 (CL Change in Aide Auth. for P.C., CenterLight Confid. 003317).

**RESPONSE:**

Denies the statement. The regulations dictate the procedures CenterLight must follow

when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient. Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5). *See* 18 N.Y.C.R.R. 505.14(b)(2)-(3). The regulations list specific personal care services that a plan may authorize and for some of those tasks, the maximum number of hours a home attendant may work for a particular patient. (Descollines Decl. ¶ 5). See 18 N.Y.C.R.R. 505.14, *et* seq.

266. CenterLight could request that an aide no longer render services to its members. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.9.4, CenterLight 000046).

**RESPONSE:**

Admits that CenterLight's model contract dictated by the Department of Health regulations state that CenterLight in their reasonable discretion, and upon prior written notice may make a request. No such request was ever made.

267. GreatCare was required to honor such requests, and neither GreatCare nor the aide had the right to deny or appeal CenterLight's requests. *Id*.

**RESPONSE:**

Admits that CenterLight's model contract dictated by the Department of Health regulations state that CenterLight in their reasonable discretion, and upon prior written notice may make a request. No such request was ever made.

268. For each of their members receiving home care services, CenterLight and SWHNY were responsible for authorizing their care. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.1, CenterLight 000043); Ex. 32 (SWHNY-GC HHSA § 1.1, SWHNY 000244); *See, e.g.,* Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 002450-002476); Ex. 115 (SWHNY Auth. Recs. for X.Y.W., GC 002880-002907).

**RESPONSE:**

Denies the statement. The NYSDOH regulations dictate the procedures CenterLight must follow when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient. Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5). CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement as to SWHNY.

269. The MLTC Defendants determined the amount and type of home care services for each of their member care recipients. *See* Answer of Defendant CenterLight Healthcare, Inc., ECF No. 97 ¶¶ 60, 69; Friedman Decl., Ex. 35 (CL Adms., Nos. 21, 22); Ex. 32 (SWHNY-GC HHSA §§ 1.24, 3.3, SWHNY 000246-000247); Ex. 41 (Wang Dep. (Jan. 7, 2026) 149:13-151:2).

**RESPONSE:**

Denies the statement. The NYSDOH regulations dictate the procedures CenterLight must follow when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient.

Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5). The regulations list specific personal care services that a plan may authorize and for some of those tasks, the maximum number of hours a home attendant may work for a particular patient. (Descollines Decl. ¶ 5). See 18 N.Y.C.R.R. 505.14, *et* seq.

270. GreatCare was required to schedule its aides, including Plaintiffs, within the parameters set by the MLTC Defendants' authorizations. Friedman Decl., Ex. 39 (2018 CL/GC Agree., §§ 3.1, 3.4.1, CenterLight 000043-000044); Ex. 32 (SWHNY-GC HHSA §§ 1.1, 3.3, SWHNY 000244, 000247); Ex. 41 (Wang Dep. (Jan. 7, 2026) 151:3-9); Ex. 116 (GC Resps. to SWHNY's Interrogatories, Resp. to Interrogatory No. 4) (GreatCare "has not deviated from any MLTC authorization at any time.").

**RESPONSE:**

Denies the statement. When GreatCare receives a service authorization for a new patient, GreatCare will determine if they can provide the home health aide based on their availability and specific needs of a patient, such as gender preference, language spoken or time authorized for the patient. (Wang 5.1.26 dep. 48-50; Descollines Decl. ¶ 7). *See also* 18 N.Y.C.R.R. 505.14(f)(2)(c). CenterLight does not assign aides or determine any GreatCare employee's shift length. (Goris. Decl. ¶ 7-9; Wang 5.1.26 dep. 11-12; Wang 5.15.26 dep. 51-52, 123). CenterLight has no knowledge regarding SWHNY.

271. The MLTC Defendants' authorizations specified the length of each aide's shift. *See, e.g.,* Friedman Decl., Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 2450-2474); Ex. 115 (SWHNY Auths. for X.Y.W., GC 002880-002907).

**RESPONSE:**

Denies the statement. The NYSDOH regulations dictate the procedures CenterLight must follow when a prospective Medicaid patient requests services. First, the patient's physician must request the services. Second, the plan must complete a social assessment of the prospective patient. Third, the plan's nurse must assess the patient's needs. Utilizing input from doctors, nurses and social assessments, CenterLight makes the initial determination to authorize the services needed and the amount of services required in terms of days and hours per day. (Descollines Decl. ¶ 5). CenterLight does not assign aides or determine any GreatCare employee's shift length. (Goris. Decl. ¶ 7-9; Wang 5.1.26 dep. 11-12; Wang 5.15.26 dep. 51-52, 123). CenterLight has no knowledge regarding SWHNY.

272. When the MLTC Defendants authorized 24-hour, "live-in" services, GreatCare was permitted to schedule only one aide to work the entire 24-hour shift alone. Friedman Decl., Ex. 35 (CL Adms., No. 46).

**RESPONSE:**

Denies the statement. CenterLight does not assign aides or determine any GreatCare employee's shift length. (Goris. Decl. ¶ 7-9; Wang 5.1.26 dep. 11-12; Wang 5.15.26 dep. 51-52, 123). CenterLight has no knowledge regarding SWHNY.

273. SWHNY also obligated GreatCare to require its aides, including Plaintiffs, to cooperate with, be bound by, and abide by SWHNY's authorization requirements. Friedman Decl., Ex. 32 (HHSA § 3.3, SWHNY 000247).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

274. CenterLight paid GreatCare only for "Covered Services" services that the member care recipient was entitled to under his or her Plan of Care, and CenterLight retained final authority to determine whether such services were reimbursable. Friedman Decl., Ex. 39 (2018 CL/GC Agree. §§ 1.4, 4.1, 4.3, CenterLight 000042, 000047).

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight paid its contractor's including GreatCare, in accordance with the contracts.

275. Hours worked by GreatCare's aides, including Plaintiffs, that differed from SWHNY's authorizations were generally payable only upon the MLTC Defendants' issuance of a new or additional authorization and the MLTC Defendants had no obligation to pay GreatCare for hours worked by aides outside of their authorizations. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 106:12-107:21); Ex. 32 (SWHNY-GC HHSA § 4.3, SWHNY 000251- 000252); *see, e.g.,* Ex. 58 (GC HHAX Patient Notes, 92085237, 100002466, 132722006).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief regarding SWHNY. The citation does not support any statement regarding CenterLight.

276. SWHNY would approve hours worked outside the authorization for medical escorts, which occurred when an aide accompanied a member to a medical appointment that ran longer than scheduled, and emergency services. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 183:18-184:23); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 129:7-133:21); Ex. 32 (SWHNY-GC

HHSA § 4.3, SWHNY 000252); Ex. 58 (GC HHAX Patient Notes, 100002466, 146345025, 92085237).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

277. To obtain payment for a medical escort, GreatCare would submit a service request to SWHNY's utilization management team, which reviewed the request and determined whether the additional hours were approved. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 183:23-184:8); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 129:7-23); Ex. 58 (GC HHAX Patient Notes, 77851200, 88367927).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

278. Per its agreement with GreatCare, SWHNY would also reimburse GreatCare for "emergency services" its aides provided with no requirement that it issue a new authorization. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 4.3, SWHNY 000251-000252).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

279. Authorization from SWHNY was not a guarantee of payment. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 1.1, SWHNY 000244); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 107:2-7).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

280. On [REDACTED], GreatCare requested that SWHNY pay an aide who had accompanied SWHNY's member K.W.P. to the hospital for a full "live-in" shift because the aide had accompanied Ms. P. to the hospital. Friedman Decl., Ex. 117 (GreatCare Fax to SWHNY Case Manager, SWHNY 004516).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

281. On [REDACTED], Plaintiff Xiu F. Chen worked only two hours that day because her care recipient, X.Y.W., was admitted into the hospital. Friedman Decl., Ex. 10 (HHAX EVV Rec. for X. Chen); Ex. 58 (GC HHAX Patient Note for X.Y.W., 48662389); Ex. 118 (SWHNY Revised Auth. for Member X.Y.W., SWHNY 005616-005617).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

282. GreatCare reported the reduced hours to SWHNY, who responded by revising the authorization for that single date, converting Ms. W.'s 24-hour live-in per diem into two hourly units so that payment would match the hours worked. *Id.*; Ex. 40 (Glapa Dep. (Feb. 26, 2026) 105:2-106:5).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

283. SWHNY also approved and denied requests to authorize its members to receive the medical supplies used by aides, including incontinence products, nonsterile gloves, enteral/nutritional supplements, and durable medical equipment such as commodes and walkers. *See, e.g.,* Friedman Decl., Ex. 119 (SWHNY Approval Notices for S.K.C.-1, SWHNY 002586-002623); Ex. 120 (SWHNY Adverse Determs. for Member S.K.C.-1, SWHNY 002541-002547, 002596-2605).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

284. GreatCare billed CenterLight, SWHNY, and the other non-defendant MLTCs for work performed by Plaintiffs. *See, e.g.,* Friedman Decl., Ex. 62 (Sample Billing vs. Payroll Report for Xiu F. Chen); Ex. 123 (HHAX Invoices, GC 008307-008318).

**RESPONSE:**

Denies the statement. The citation does not support the statement. All billing was done pursuant to the contract. CenterLight has no knowledge regarding other MLTCs.

285. GreatCare's billing was done through, or recorded in, HHAX. *Id.*

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

286. Pursuant to their contracts with GreatCare, CenterLight and SWHNY reimbursed GreatCare for 24-hour, "live-in" shifts at a per diem rate that covered only 13 hours per shift. *See, e.g.,* Friedman Decl., Ex. 32 (SWHNY/CG HHSA, Amend. 12, SWHNY 000232-000233);

Ex. 39 (2018 CL/GC Agree., Exhibit B, CenterLight 000058); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 85:6-15); Ex. 51 (Wang Dep. (May 1, 2026) 13:18-23, 15:13-19).

**RESPONSE:**

Denies the statement. The citation does not support the statement. If additional services or hours were worked, CenterLight would remit payment pursuant to the contract. CenterLight has no knowledge regarding other MLTCs.

287. CenterLight and SWHNY reimbursed GreatCare for hourly and split-shift care services in 15-minute increments. Friedman Decl., *See, e.g.,* Ex. 32 (SWH/GC HHSA, Amend. 1, SWHNY 000187); Ex. 39 (2018 CL/GC Agree., 000058).

**RESPONSE:**

Denies the statement. The citation does not support the statement. Admits the contract had a 15 minute unit of measurement for payment.

288. According to SWHNY's corporate representative, GreatCare's responsibility was to be a "passthrough" for the funds flowing from SWHNY to the aides, including the Plaintiffs. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 192:4-15).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

289. GreatCare's corporate representative, Barbara Wang, testified that GreatCare's ability to pay its aides was dependent on SWHNY. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 160:8-161:9).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

290. Ms. Wang testified that GreatCare's ability to pay its aides the legal minimum wage depended on how much SWHNY paid GreatCare. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 20:4-21:21).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

291. In an August 9, 2024 email to SWHNY, Ms. Wang wrote that the rate SWHNY offered was "not enough to pay the caregivers[‘] salaries" and that "[w]ith this rate we won't be able to sustain our operations," and she asked SWHNY to "re-evaluate the contract amount ... that we can continue our business." Friedman Decl., Ex. 124 (Email from Wang to M. Ritchie, SWHNY 001084).

**RESPONSE**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

292. As per its contract with GreatCare, during CenterLight's assessment visits, CenterLight's nurses provided supervision of home health aides and personal care workers. *See, e.g.,* Friedman Decl., Ex. 37 (Ding Decl. ¶¶ 5, 12-14); Ex. 39 (CL/GC Agree., § 3.8.2, CenterLight 000045); Ex. 113 (CL-GC E-mail, GSD GC-002711); Ex. 35 (CL Adms. Nos. 30, 31)[1]; Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003466, 003486, 003539); Ex. 66 (Hei Li Decl. ¶¶ 27-29).

**RESPONSE:**

Denies the statement. During her employment with GreatCare, Plaintiff Li Chen never heard of CenterLight, never spoke to anyone at CenterLight, never received any documents and was not paid by CenterLight. (Chen dep. 27-28). Plaintiff Li testified that she never met anyone from CenterLight and does not know anything about CenterLight. (Li dep. 111-112). While she worked GreatCare, Plaintiff Lin testified that never heard of CenterLight, never had any communications with CenterLight and never met anyone employed by CenterLight. (Lin dep. 142-143). Plaintiff Ruan does not recall speaking to anyone at CenterLight during the time she worked at GreatCare. (Ruan dep. 34-35). GreatCare would schedule Hei Li's work and assignments. (Hei Li dep. 33, 95). GreatCare provided her with training and paid her wages. (Hei Li dep. 42-43; 94). GreatCare provided Hei Li with instructions on what to do at the participant's home, which Hei Li would fill out and return to GreatCare. (Hei Li. Dep. 51-52). GreatCare provided Hei Li with competency assessments with their own nurse. (Hei Li dep. 85-86). No CenterLight nurse supervised any GreatCare employee. (Ding Decl. ¶¶ 3-12).

293. One nurse employed by CenterLight was Qi Ding. Friedman Decl., Ex. 37 (Ding Decl. ¶¶ 3, 4); Ex. 35 (CL Adms. Nos. 26-27); *see, e.g.,* Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003466-003468, 003611-003613).

**RESPONSE:**

Admits that CenterLight employed Qi Ding.

294. At each assessment, Ms. Ding evaluated CenterLight member P.C.'s activities of daily living and would give the aide present instructions on how to provide care to Mr. C.. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003115-003116, 003118, 003120); Ex. 37 (Ding Decl. ¶ 12).

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight is not aware of other nurses. Ding never supervised or directed the work of aides. (Ding Decl. 3-16).

295. Ms. Ding would also review the assessment with the aide and explain it carefully. Friedman Decl., Ex. 37 (Ding Decl. ¶ 14).

**RESPONSE:**

Admits that Ms. Ding would discuss patients with aides.

296. Ms. Ding and other nurses sent to assess Mr. C. often instructed Mr. C.'s aides on Mr. C.'s care tasks, including personal care, meal preparation, monitoring and reporting signs of cardiac dysfunction, monitoring hypertension, and diet. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003466-003468, 003476, 003496).

**RESPONSE:**

The citation does not support the statement. CenterLight is not aware of other nurses. Further, CenterLight is not aware of which aides the statement is referring to. Ms. Ding never instructed or directed any aide. (Ding Decl. 3-16).

297. Ms. Ding and other nurses also instructed the aides to follow CenterLight's plan of care for Mr. C., reinforcing healthier habits, precautions and infection control. *Id*. at 003650-003651, 003670-003677; Friedman Decl., Ex. 35 (CL Adms. Nos. 30, 31); Ex. 37 (Ding Decl. ¶¶ 12, 14); Ex. 66 (Hei Li Aff. ¶¶ 27-29, 34).

**RESPONSE:**

Denies the statement. The citation does not support the statement. CenterLight is not aware of other nurses. Ding never supervised or directed the work of aides. (Ding Decl. 3-16). Further, CenterLight is not aware of which aides the statement is referring to.

298. CenterLight required that records relating to the services be retained for at least ten years from the termination of the agreement. Friedman Decl., Ex. 39 (2018 CL/GC Agree., paragraph 7, CenterLight 000082).

**RESPONSE:**

Denies the statement. Any records retention was required by a specified governmental agency in the agreement. The citation does not support the statement.

299. In the member care recipients' homes, SWHNY's nurse assessors "instructed" and "educated" GreatCare's aides, including the Plaintiffs, on how to care for the member. *See, e.g.,* Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003847, 003849, 003854); Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005382, 005399); Ex. 56 (Zhang Dep. 63:20-64:25).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

300. On July 27, 2018, SWHNY's nurse "educated" Plaintiff Xiu F. Chen at member care recipient X.Y.W.'s home on caring for skin hygiene and using a "4-legs cane" for Ms. W.'s walking and transferring. On January 28, 2019, SWHNY's nurse "educated" Plaintiff Xiu F. Chen on maintaining Ms. W.'s skin hygiene and using a walking aid. Friedman Decl., Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY005321 (identifying aide), 005322, 005326, 005328, 005375 (identifying aide), 005380, 005382, 005399, 005400); Ex. 56 (Zhang Dep. 64:2-8).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

301. On December 13, 2016, SWHNY's nurse "educated" a GreatCare aide in member care recipient S.K.C.-1's home on proper perineal and skin care, and on May 31, 2017, a SWHNY's nurse "educated" a GreatCare aide on maintaining her proper perineal and skin care. Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 002266 (identifying aide), 002270, 002325 (identifying aide), 002329).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

302. On May 9, 2019, SWHNY's nurse "educated" Plaintiff Xiu X. Zhu in Ms. C.'s home on proper and frequent cleaning to prevent skin breakdown. *Id.* at SWHNY 001982 (identifying aide), 001987.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

303. On November 10, 2019, SWHNY's nurse "educated" Plaintiff Zhu H.L. Lin in member care recipient S.K.C.-1's home on how to maintain proper skin hygiene and the prevention of urinary tract infections. *Id.* at SWHNY 002125 (identifying aide), 002130.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

304. On March 21, 2019, SWHNY's nurse "educated" a GreatCare aide in member care recipient X.J.L. 's home on fall precautions and skin breakdown prevention, on September 21, 2019, on Ms. L.'s medication and diuretic schedule, energy conservation, hand hygiene

during flu season, and preventive screenings, and on March 12, 2020 about fall precautions. Friedman Decl., Ex. 50 (SWHNY Ass. Recs. for X.J.L., SWHNY 002794 (identifying aide), 002799, 003034-003035 (identifying aide), 003039, 003041, 003043, 003130 (identifying aide), 003135).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

305. On March 11, 2023, the nurse also taught Ms. L.'s aide to make sure that the window and door were always locked to prevent Ms. L. from wandering outside of her apartment; to establish a toileting schedule for Ms. L.; on strategies that could significantly help to decrease the risk of falls; and to have Ms. L. follow a low salt and low cholesterol diet. *Id.* at SWHNY 0001630.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

306. On March 28, 2018, SWHNY's nurse "instructed" an unnamed GreatCare aide in member care recipient K.W.P.'s home on incontinence care, the use of hot compression to relieve pain, and the importance of preventative care, and on September 11, 2018, SWHNY's nurse "educated" and "instructed" a GreatCare aide on how to reposition Ms. P. to avoid pressure on the same area, incontinence care, how to clean and apply lotion to the anal area after toileting, and the use of hot compression to relieve pain. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003686 (identifying aide), 003691; 004072 (identifying aide), 004077, 004079, 004095.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

307. On September 10, 2018, SWHNY's care manager spoke by phone with Ms. P.'s GreatCare aide and "educated" her on the importance of seeking medical attention for any observed change in the member care recipient's condition, such as eating less or increased lethargy. Friedman Decl., Ex. 125 (SWHNY Case Management ("CM") Notes for K.W.P., SWHNY 001704).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

308. On March 4, 2019, SWHNY's nurse "educated" Plaintiff Zhan J. Li in member care recipient Ms. P.'s home on how to reposition Ms. P., pain relief, and how to clean and apply fungal cream to anal irritation. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003842 (identifying aide), 003847, 003849, 003854).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

309. On September 11, 2018, SWHNY's nurse "educated" member care recipient P.C.P.'s GreatCare home aide on proper skin care and frequent undergarment changes to prevent skin breakdown, and on March 4, 2019, SWHNY's nurse "educated" a GreatCare aide on Mr. P.'s proper skin care and frequent undergarment changes to prevent skin breakdown. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004831 (identifying aide), 004836, 004838, 004980 (identifying aide), 004985, 005004).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

310. SWHNY's care managers made periodic telephone calls to the member care recipients, during which they confirmed the member's authorized services and reviewed the member's plan of care; on these calls, the care manager sometimes spoke with and educated the member care recipient's aide, including Plaintiffs and other GreatCare aides. *See, e.g.*, Friedman Decl., Ex. 126 (SWHNY CM Notes for X.Y.W., SWHNY 001853, 001854);[3] Ex. 125 (SWHNY CM Notes for K.W.P., SWHNY 001704).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

311. A SWHNY care manager "educated" Plaintiff Mu Z. Zhang on a telephone calls on:

a. January 9, 2018, about applying warm compression to member care recipient X.Y.W.'s right knee to promote pain relief, provide scheduled toileting to prevent incontinence, and follow up with the audiologist regarding the member's hearing (Friedman Decl., Ex. 126 (SWHNY CM Notes for X.Y.W., SWHNY 001876, 001877).

b. February 7, 2018, about placing Ms. W.'s walker in front of the bedside commode to assist with safe transfers, and on scheduled toileting. Friedman Decl., *Id.* at SWHNY 001873, 001874, 001875.

---

[3] *See also id.* at 001855, 001857, 001858, 001869, 001870, 001874, 001877, 001878; Ex. 127 (SWHNY CM Notes for X.J.L., SWHNY 001407).

c. March 6, 2018, about emergency preparedness and scheduled toileting to prevent incontinence. *Id.* at SWHNY 001870, 001872.

d. March 8, 2018, on communicating all of the member's symptoms to her physician, and scheduled toileting to prevent incontinence. *Id.* at SWHNY 001869).

e. July 3, 2018, regarding the member's health care proxy. *Id.* at SWHNY 001863.

f. August 1, 2018, on contacting SWHNY's care management team about any change in the member's health condition. *Id.* at SWHNY 001858.

g. September 4, 2018, on applying warm compression to promote pain relief and on the importance of rest periods before and after activities of daily living, such as meals and bathing *Id.* at SWHNY 001857.

h. November 5, 2018 and December 3, 2018, on pain relief. *Id.* at SWHNY 001853-001855.

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

312. In addition to supervision, SWHNY also provided GreatCare with mandatory trainings for GreatCare to give its aides. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 224:16-226:23); Ex. 44 (Wang Dep. (May 15, 2026) 208:9-21); Ex. 128 (SWHNY Training Ltr., SWHNY 001236); Ex. 129 (SWHNY Training Materials, SWHNY 001221-001230); Ex. 130 (SWHNY Training Attestation, SWHNY 001235).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as

to the veracity of this statement.

313. SWHNY periodically audited GreatCare to ensure compliance with all of its contractual obligations. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 73:3-74:3); Ex. 44 (Wang Dep. (May 15, 2026) 53:10-54:14); Ex. 131 (GC RFA Resp. to SWHNY, Nos. 12, 44).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

314. When it audited GreatCare, SWHNY went to GreatCare's office and had GreatCare provide the names of the aides assigned to specific members. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 52:14-53:5); Ex. 51 (Wang Dep. (May 1, 2026) 74:11-13).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

315. In its audits, SWHNY reviewed the files of the aides assigned to its members, which included each aide's physical examination, employment application, employment agreement, New York Department of Labor forms, and performance evaluations. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 73:7-11); Ex. 44 (Wang Dep. (May 15, 2026) 43:6-15, 52:21-53:9); Ex. 131 (GC RFA Resp. to SWHNY, No. 44).

**RESPONSE:**

316. SWHNY required GreatCare to maintain all records relating to the aides' services for a minimum of ten years. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 7.4, SWHNY 000257).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

317. Plaintiffs filed wage theft complaints against GreatCare with the New York State Department of Labor ("DOL") on or about the following dates:

a. Plaintiff Hei Li on or about July 20, 2022;

b. Plaintiff Zhu H.L. Lin May 25, 2022;

c. Plaintiff Li Chen on or about May 1, 2021;

d. Plaintiff Mei F. Chen on or about May 1, 2022;

e. Plaintiff Xiu F. Chen on or about August 8, 2022;

f. Plaintiff Hui He on or about September 1, 2022;

g. Plaintiff Hui Li on or about October 30, 2022;

h. Plaintiff Zhan J. Li on or about September 8, 2022;

i. Plaintiff Hui X. Ruan on or about May 12, 2022;

j. Plaintiffs Jian R. Xiao and Mei Z. Xiao on or about May 18, 2023;

k. Plaintiff Mu Z. Zhang on or about September 12, 2023;

l. Plaintiff Bi Y. Zheng on or about November 11, 2021; and

m. Plaintiff Xiu X. Zhu on or about January 3, 2021. Friedman Decl., Ex. 132 (Plaintiffs' DOL Complaint Forms, GSD-000839-000953).

**RESPONSE:**

Admits that Plaintiff produced the complaints with the New York State of Department of Labor but none of the complaints named CenterLight in any manner and CenterLight was never served with these complaints. (Goris Decl. ¶ 10).

318. In November 2017, GreatCare and its principal and corporate representative, Barbara Wang, were sued in a New York State Supreme Court class action regarding their failure

to pay aides who worked 24-hour shifts for all hours worked; the Parties entered into a settlement agreement resolving those claims in 2023. Friedman Decl., Ex. 133 (Settlement Agreement, GSD 05.01.2026-000001-08).

**RESPONSE:**

CenterLight has no independent knowledge or information sufficient to form a belief as to the veracity of this statement.

Dated: New York, New York
October 16, 2026

Respectfully submitted,

BRENLLA, LLC

*Attorneys for Defendant CenterLight*

By: ____S/ George F. Brenlla___

George F. Brenlla, Esq.
100 Park Avenue, 16th floor
New York, New York 10017
(212) 364-5713