**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, XIU X. ZHU,

Plaintiffs,

v.

GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., and SENIOR WHOLE HEALTH OF NEW YORK, INC.,

Defendants.

SENIOR WHOLE HEALTH OF NEW YORK, INC.,

Defendant/Cross-Claimant,

v.

GREATCARE, INC.,

Defendant/Cross-Defendant.

Case No.: 1:24-CV-7401 (LTS)(KHP)

**SENIOR WHOLE HEALTH OF NEW YORK, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Kaitlyn Grajek, Esq.
**STRADLEY RONON STEVENS & YOUNG, LLP**
100 Park Avenue, Suite 200
New York, NY 10017
kgrajek@stradley.com
(862) 682-7255

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT....1

II. STATEMENT OF FACTS....3

III. LEGAL STANDARD....3

IV. ARGUMENT....3

- A. Plaintiffs are Precluded from Summary Judgment because SWHNY is Not, and Never Has Been, Plaintiffs' Joint Employer.... 3
  - 1. Legal Standard under the Economic Realities Test....5
  - 2. Plaintiffs Improperly Rely On Highly Disputed Facts and Cite to Inaccurate and Incomplete Facts In Their Motion....6
  - 3. Multiple Issues of Fact Exist Regarding Whether SWHNY Knew or Should Have Known that Plaintiffs would be Unable to Obtain their Necessary Meal and Sleep Breaks....8
  - 4. Plaintiffs' Theory is Without Legal Support and Highly Implausible....10
- B. Summary Judgment is Precluded as to Damages Because Questions of Fact Remain Regarding Plaintiffs' Entitlement to Unpaid Wages and Overtime under the FLSA, NYLL, and WPA.... 14
- C. Because Plaintiffs' Claims are Time-Barred, this Court Must Deny Summary Judgment in Favor of Plaintiffs.... 16
- D. Summary Judgment is Precluded because Factual Disputes Exist as to Plaintiffs' Entitlement to Wages and Because SWHNY Cannot be Liable to Plaintiffs for Alleged WPA Violations.... 20
- E. Plaintiffs' Demand for Summary Judgment Must be Denied Because Issues of Fact Remain Regarding Plaintiffs' Entitlement to the Requested Damages.... 21

V. CONCLUSION....24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alvarez v. Fine Craftsman Grp., LLC,
No. 20-cv-10452(GBD)(JW), 2023 WL 2908659 (S.D.N.Y. Jan. 23, 2023) ..........3

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505 (1986) ..........3

Barahona v. Hebrew Acad. of the Five Towns & Rockaway,
825 F. Supp. 3d 124 (E.D.N.Y. 2026) ..........22

Beliz v. W.H. McLeod & Sons Packing Co.,
765 F.2d 1317 (5th Cir. 1985) ..........11

Bolarinwa v. Williams,
593 F.3d 226 (2d Cir. 2010) ..........17

Boos v. Runyon,
201 F.3d 178 (2d Cir. 2000) ..........17

Brock v. Superior Care,
840 F.2d 1054 (2d Cir. 1988): (1) ..........6

Camara v. Kenner,
No. 16-CV-7078 (JGK), 2018 WL 1596195 (S.D.N.Y. Mar. 29, 2018) ..........17

Carter v. Dutchess Cmty. Coll.,
735 F.2d 8 (2d Cir. 1984) ..........5

Castillo v. Givens,
704 F.2d 181 (5th Cir. 1983), cert. denied, 464 U.S. 850 (1983) ..........10, 11

Diaz v. Consortium for Worker Educ., Inc.,
No. 10-cv-01848, 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) ..........5

Fernandez v. HR Parking Inc.,
407 F. Supp. 3d 445 (S.D.N.Y. 2019) ..........4, 5

Goldberg v. Whitaker House Coop.,
366 U.S. 28 (1961) ..........5

Hardgers-Powell v. Angels in Your Home LLC,
330 F.R.D. 89 (W.D.N.Y. 2019) ..........11

Herman v. RSR Sec. Servs. Ltd.,
172 F.3d 132 (2d Cir. 1999)....................................................................................3

Hertz v. Woodbury County,
566 F.3d 775 (8th Cir. 2009) ..................................................................................22

Hinterberger v. Cath. Health Sys.,
299 F.R.D. 22 (W.D.N.Y. 2014)..............................................................................22

Int'l Franchise Ass'n v. City of New York,
148 N.Y.S.3d 28 (2021)..........................................................................................18

Jean-Louis v. Metro. Cable Commc'ns,
838 F. Supp. 2d 111 (S.D.N.Y. 2011).....................................................................13

Johnson v. Killian,
680 F.3d 234 (2d Cir. 2012) (per curiam)...................................................................3

Kuebel v. Black & Decker Inc.,
643 F.3d 352 (2d Cir. 2011)....................................................................................22

Lawrence v. Florida,
549 U.S. 327 (2007)...............................................................................................17

Levin v. Sarah Lawrence Coll.,
2024 WL 4026966 (S.D.N.Y. Sept. 3, 2024)...............................................................17

Lomako v. N.Y. Inst. of Tech.,
440 F. App'x 1 (2d Cir. 2011) .................................................................................18

Overton v. N.Y. State Div. of Military & Naval Affairs,
373 F.3d 83 (2d Cir. 2004)........................................................................................3

Roe v. City of Waterbury,
542 F.3d 31 (2d Cir. 2008)........................................................................................3

Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,
391 F.3d 77 (2d Cir. 2004)........................................................................................3

Shin v. NBC Universal Media, LLC,
No. 23-CV-10996 (LJL), 2025 WL 438297 (S.D.N.Y. Feb. 7, 2025)..............................17, 18

Tecocoatzi-Ortiz v. Just Salad LLC,
No. 18-CV-7342 (JGK), 2022 WL 596831 (S.D.N.Y. Feb. 25, 2022)..................................17

Zheng v. Liberty Apparel Co., Inc.,
355 F.3d 61 (2d Cir. 2003)......................................................................................5, 6

**Statutes**

29 U.S.C. § 255(a) ....................16

Fair Labor Standards Act ....................1

FLSA .................... *passim*

FLSA 2016-1 ("FLSA 2016-1") ....................12

N.Y. Lab. Law § 198(3) ....................18

N.Y. Labor Law §§ 198(3), 663(3) ....................17, 18, 19

New York Home Care Worker Wage Parity Act ....................1

New York Labor Law ....................1

NYLL .................... *passim*

WPA ....................14, 17, 20, 21

**Other Authorities**

12 NYCRR § 142-2.1(b) ....................15

Fed. R. Civ. P. 56 (a) ....................3

Rule 56.1 ....................2, 3, 14

# I. PRELIMINARY STATEMENT

Defendant Senior Whole Health of New York, Inc. ("SWHNY") is a managed long term care plan ("MLTC") that contracts with various providers to meet the care needs of its Medicaid members. Like any other health plan, SWHNY reimburses those providers (one of whom is co-defendant, GreatCare, Inc.) for the services they provide via their employees. Plaintiffs are home health aides who were employed by GreatCare, a licensed home care services agency ("LHCSA") with which SWHNY contracted to provide home health services covered under SWHNY's plan. As part of their employment with GreatCare, Plaintiffs provided home health aide services to the Medicaid members of various MLTCs, including SWHNY and co-defendant CenterLight.

In this action, Plaintiffs allege they were subjected to wage and hour violations by GreatCare and are seeking to hold SWHNY responsible for GreatCare's alleged conduct under a joint employer theory. This theory is obviously flawed, as SWHNY neither employed these aides nor exerted formal or functional control over them. Despite overwhelming evidence that demonstrates this is the case, Plaintiffs now seek summary judgment on their wage and hour claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") and the New York Home Care Worker Wage Parity Act ("WPA") based primarily on self-serving affidavits and glaring omissions from the discovery record. SWHNY respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' MSJ").

As discussed in SWHNY's pending Motion for Summary Judgment ("SWHNY's MSJ"), Plaintiffs seek herein to circumvent industry-wide home health aide compensation practices that are heavily regulated and set by the New York State Department of Health ("NYSDOH") and the New York State Department of Labor ("NYSDOL"). Importantly, the compensation practices that stand in opposition to Plaintiffs' theories are well-settled and have been ratified by the New York Court of Appeals.

As set forth herein, Plaintiffs' MSJ must be denied because it relies upon premises and facts that are (at best) disputed and (at worst) completely untrue. In fact, nearly all of the 318 purportedly "undisputed" paragraphs in Plaintiffs' Rule 56.1 Statement ("Plaintiffs 56.1") are refuted by regulatory requirements, timekeeping and personnel records, and testimony by Plaintiffs themselves. Basic logic and common sense also establish these facts are anything but undisputed. Further, the relief demanded by Plaintiffs – to be paid for 24 hours of each "live-in" shift – is unsupported by the law and runs contrary to industry-wide custom in which home health aides are paid for 13 hours of work to account for the non-working meal and rest breaks they receive.[1] Plaintiffs nonetheless seek to carve out an exception to this recognized "13 hour" rule by claiming here, for the first time, that they were unable to take these required breaks during the at-issue shifts.

Plaintiffs' MSJ must be denied because granting it would require this Honorable Court to ignore fundamental and material questions of fact that are at the heart of Plaintiffs' case. Indeed, as set forth in great detail in SWHNY's Counterstatement in Opposition to Plaintiffs' 56.1 Statement ("SWHNY 56.1 CS"), many of the most important facts in this case are highly disputed, including the number of hours that Plaintiffs worked during each shift, whether Plaintiffs received their required meal and sleep breaks, the appropriate rate of pay for Plaintiffs' compensable hours worked (and the number of hours that must be compensated), and the damages to which Plaintiffs claim to be entitled. These crucial disputed facts, by themselves, require denial of Plaintiffs' MSJ. Moreover, this Court should dismiss all claims asserted against SWHNY for the reasons described in SWHNY's Motion for Summary Judgment ("SWHNY's MSJ"), which is incorporated herein by reference.

[1] It is similarly well-established that Plaintiffs only need to complete 5 hours of sleep for this "13-hour rule" to apply.

## II. STATEMENT OF FACTS

SWHNY respectfully refers the Court to SWHNY's Rule 56.1 Counter-Statement of Undisputed Facts dated October 16, 2026 (SWHNY 56.1 CS) and the exhibits and deposition transcripts upon which it is based.

## III. LEGAL STANDARD

Summary judgment is appropriate only where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (a); see also Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). An issue of fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); accord Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008).
In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## IV. ARGUMENT

### A. Plaintiffs are Precluded from Summary Judgment because SWHNY is Not, and Never Has Been, Plaintiffs' Joint Employer.

Through their Motion, Plaintiffs seek summary judgment in their favor in connection with pending wage and hour claims under the FLSA and NYLL. It is well-settled that liability under these statutes is only attributable to an employer of the individual plaintiffs alleging these violations. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal quotations omitted); Alvarez v. Fine Craftsman Grp., LLC, No. 20-cv-10452(GBD)(JW), 2023 WL 2908659, at *3

(S.D.N.Y. Jan. 23, 2023); Fernandez v. HR Parking Inc., 407 F. Supp. 3d 445, 452 (S.D.N.Y. 2019) (collecting cases).

Plaintiffs' motion must be denied because they cannot establish this essential prerequisite to hold SWHNY jointly and severally liable under the FLSA and the NYLL. Indeed, Plaintiffs admitted in their pleadings, at their depositions, and throughout discovery that Defendant GreatCare was their actual employer. See Plaintiffs 56.1 at ¶¶1-14. That GreatCare – and not SWHNY – employed the Plaintiffs is further supported by Plaintiffs' deposition testimony wherein many of them could not identify SWHNY, could not describe their alleged association with SWHNY, and could not explain why they had brought claims against SWHNY. SWHNY 56.1 at ¶¶30-31. This testimony raises an obvious question: if these Plaintiffs could neither identify nor explain their connection to SWHNY at their depositions, how could SWHNY be their joint employer? The answer is simple – SWHNY is not and never was a joint employer of the Plaintiffs, and it has no liability to them for the wage and hour violations they allege.

In their motion, Plaintiffs ignore these admissions and plow blindly ahead on the flawed premise that SWHNY was their joint employer because SWHNY contracted with GreatCare to provide at-home care services to SWHNY's members. Plaintiffs' MSJ at 18. Plaintiffs further argue SWHNY was their joint employer because they maintained quality control oversight of the services GreatCare's employees provided to SWHNY's members and because SWHNY adhered to mandates that New York State issued to MLTCs like SWHNY. Id. at 20-21. As set forth at length in SWHNY's MSJ, none of these arguments succeed. The evidentiary record is devoid of any administrative overlap or other evidence of commonality between SWHNY and GreatCare, and SWHNY cannot be deemed Plaintiffs' employer under any of the factors typically considered by this Court. The

record instead demonstrates SWHNY did not employ the Plaintiffs and did not control them in any substantive manner.

### 1. Legal Standard under the Economic Realities Test

Although the FLSA and NYLL define "employer" in broad terms, there is a limit to the extent the Court should stretch this definition. As set forth in SWHNY's MSJ, the Second Circuit engages in a detailed analysis to determine the "economic reality" presented by the facts of each case. Fernandez, 407 F. Supp. 3d at 452, citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33 (1961). The economic realities test was created to address this threshold question and is so-named because an entity "suffers or permits" an individual to work if, as a matter of economic reality, the entity functions as the individual's employer. Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 66 (2d Cir. 2003).

Relying heavily on a common sense understanding of the parties' actual roles and relationships, the Second Circuit has noted that the economic realities test "is manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the FLSA." Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 76 (2d Cir. 2003). The economic realities test is instead "designed to constrain the otherwise broadly applicable plain language of the [FLSA], which taken literally would support liability against any agent or employee with supervisory power over other employees." Diaz v. Consortium for Worker Educ., Inc., No. 10-cv-01848, 2010 WL 3910280, at *2 (S.D.N.Y. Sept. 28, 2010) (internal quotations, citations, and alterations omitted).

As thoroughly explained in SWHNY's MSJ, courts determine whether the purported employer can, and does, exercise direct or formal control over the plaintiff employee by weighing (among other factors) the power to hire and fire, supervise and control, and determine rate and method of payment. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). The Second

Circuit thereafter incorporated additional sets of factors – including the "functional control" or "Zheng" factors – which assist a court in determining whether a putative employer had "functional control" over alleged employees. See Zheng, 355 F.3d at 72-75.[2] These additional factors consider whether Plaintiffs used SWHNY's premises and equipment to complete their work, were part of a business organization that shifts "as a unit," performed functions integral to SWHNY's product or service, and/or worked exclusively or predominantly for SWHNY. Id.

**2. Plaintiffs Improperly Rely On Highly Disputed Facts and Cite to Inaccurate and Incomplete Facts In Their Motion.**

Plaintiffs argue that SWHNY is a joint employer as a matter of law because it "allowed work to be done on [its] behalf while also having the power to prevent and stop the wage and hour abuses Plaintiffs [allegedly] suffered." See Plaintiffs' MSJ at 18. This assertion is plainly incorrect and contrary to voluminous evidence of record. Yet, even if it was correct, it still would not render SWHNY a joint employer under the factors enumerated by the Second Circuit.

As argued in great detail in SWHNY's MSJ, SWHNY exercised neither formal nor functional control over the Plaintiffs during their employment with GreatCare. See SWHNY's MSJ at 6-17 (formal control factors) and 17-25 (functional control factors), which arguments are incorporated by reference here. Plaintiffs' MSJ takes the opposite stance, arguing that the economic realities of their relationship with SWHNY – and of the general relationship between MLTCs and

[2] Before Zheng, the Court identified the following additional factors for consideration in the matter of Brock v. Superior Care, 840 F.2d 1054 (2d Cir. 1988): (1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. The Court emphasized that none of these Brock factors was dispositive nor exclusive, and the Court cautioned that "mechanical application" of any set of factors should "be avoided". Id. at 1059.

LHCSAs – require that this Court find SWHNY to be a joint employer as a matter of law. This position is mind-boggling, as it is contrary to the evidence and well-established legal precedent.

Instead of simply acknowledging the true nature of the relationship between Plaintiffs and SWHNY, Plaintiffs buttress their flimsy legal theory by relying upon "facts" that are inaccurate or incomplete reflections of the record. For example, Plaintiffs allege they "provided care services to CenterLight's and SWHNY's members…under conditions that were *exclusively* set by the MLTC Defendants." Plaintiffs' MSJ at 18 (emphasis added). This is a patently untrue statement, as SWHNY did not set Plaintiffs' work conditions, determine the length of Plaintiffs' shifts, specify the number of aides to be assigned to each shift, or select the specific aide that would be assigned to each assignment. See SWHNY 56.1 CS ¶¶ 269-271; see also SWHNY 56.1 ¶¶34, 37-38. GreatCare was instead solely responsible for controlling these aspects of Plaintiffs' work. Id. This statement also ignores the undisputed testimony that SWHNY's involvement in the assignment process was limited to advising GreatCare what type of in-home support was needed for a member so that GreatCare could determine whether it could fulfill this request using its own employees. SWHNY 56.1 CS at ¶270.

Further contrary to the arguments in Plaintiffs' MSJ, SWHNY did not "closely monitor" or "supervise" the aides' work in the members' homes. Plaintiffs' MSJ at 19-21. SWHNY instead conducted assessments of its members' care to comply with government MLTC mandates and to ensure its member was receiving the authorized services contracted for by GreatCare. SWHNY 56.1 CS at ¶¶260, 268-270; SWHNY 56.1 at ¶¶47-48. Plaintiffs' suggestion that SWHNY directly supervised the Plaintiffs when its nurses "would instruct aides on various subjects…during visits and member check-ins" is equally misleading and inaccurate. Plaintiffs' MSJ at 20. SWHNY's nurses were not supervising the Plaintiffs when providing this guidance. They were instead meeting

with the member and the aide in the member's home and providing information to both. SWHNY 56.1 CS at ¶¶299-309. Plaintiffs also allege that SWHNY was a joint employer of the Plaintiffs because it "closely controlled the 'tools of the trade' that Plaintiffs caring for their members were able to use." Plaintiffs' MSJ at 20-21. This averment similarly crumbles under a modicum of scrutiny, as SWHNY could not, and would not, exert this type of control because supplies and equipment used by in-home aides are not a covered benefit under New York State Medicaid guidelines. SWHNY 56.1 CS at ¶283.

In addition, this Court should, respectfully, not be misled by Plaintiffs' claim that "live-in" shifts are somehow problematic or abusive. The industry-wide practice of paying an aide for the 13 hours she actually worked during a "live-in" shift is appropriate and standard, so long as the aide receives required meal and rest breaks. Id. at ¶¶64, 264. Here, the documented evidence of record (including GreatCare's timekeeping and "live-in" attestations) confirms that Plaintiffs did indeed receive the at-issue meal and rest breaks during their shifts. Id. at ¶¶38, 64, 70, 71, 104, 115, 119, 148. Moreover, Plaintiffs failed to report any issue with taking meal or rest breaks at the time they were providing services to the relevant members, even though their contract with GreatCare required them to do so "immediately after each 24 hour shift." Id. It defies all logic that Plaintiffs would have been denied meal and sleep breaks for every "live in" shift they ever worked without reporting that to GreatCare. Id.

### 3. Multiple Issues of Fact Exist Regarding Whether SWHNY Knew or Should Have Known that Plaintiffs would be Unable to Obtain their Necessary Meal and Sleep Breaks.

In their Motion, Plaintiffs suggest that SWHNY "deliberately authorized their members for 'live-in' care" despite knowing that the Plaintiffs would not be able to obtain their meal and sleep breaks. Plaintiffs' MSJ at 18. This argument is a red herring that has no relevance to Plaintiffs' claims

and that is obviously contradicted by the record. Indeed, for Plaintiffs to allege that they "never obtained adequate sleep and meal breaks," they must ignore the thousands of pages of timesheets and declarations in which they certified to GreatCare that they had received these breaks during every shift. See, e.g., SWHNY 56.1 CS at ¶70. The existence of these records, all of which were contemporaneously certified as accurate by Plaintiffs, reveals this argument is without merit.

Even if this Court were to ignore these certifications, Plaintiffs lack standing to challenge the propriety of SWHNY's decision to authorize a "live-in" shift rather than a "split shift" for its members.[3] In making this argument, Plaintiffs willfully ignore that this decision is not administrative or intended to minimize costs; it is instead based upon a series of individualized assessments completed by medical providers and social assessors (pursuant to well-established guidelines) that consider what level of care is medically necessary for that specific member. SWHNY 56.1 CS at ¶¶19, 24 (individual care plans are "all contingent upon the needs of the member, who they have living with them, what is their current scope, what their living arrangements looks like.") Further, because the decision to authorize a "live-in" shift, rather than a "split shift," is dependent on the status of the member at the time of each assessment, an authorization can be adjusted when a member's situation or needs change or when a re-assessment is requested. Id.

Plaintiffs' allegation that SWHNY deliberately authorized live-in shifts despite knowing "that their members' needs required the aides to work continuously throughout the entire 24-hour shift" is undermined by the discovery record. For example, the assessments upon which Plaintiffs rely do not state that the members required around the clock care or warn that their medical conditions would require the aides to skip their breaks. See, e.g., Exs. 45-50 of the Friedman Decl. The record also demonstrates that many of the members with significant care requirements had

[3] A live-in shift is one where a single aide is present for a full 24 hour period with the member. A split shift is one where more than one aide provides uninterrupted care to that member. See Plaintiffs' MSJ at 7.

family members living in their homes who would provide back-up care during the aides' meal and rest breaks. See, e.g., SWHNY 56.1 CS at ¶¶199, 306-308. It is equally important to note that there is no medical record, authorization, assessment, or care plan in evidence that would establish SWHNY knew Plaintiffs were not obtaining their breaks.[4] See Plaintiffs' MSJ at 18-19. To the contrary, Plaintiffs certified to GreatCare on a daily basis that they were receiving their sleep and meal breaks, and the record is replete with timesheets and declarations that establish this to be the case.

Plaintiffs' argument also ignores that there are well-documented mechanisms in place for re-assessments to occur if the Medicaid member's condition changed in a way such that a "split shift" would be more appropriate than a "live in" shift. SWHNY 56.1 CS at ¶18. These "triggered" re-assessments are typically conducted with the aide present and allow for a dialogue among the member, the member's caregiver, and the aide. Plaintiffs 56.1 at ¶¶ 294, 296. Despite admitting this was the case, Plaintiffs failed to identify any instance in which a Plaintiff spoke up during a re-assessment to request a "split shift" because she was not receiving her sleep and meal breaks. Because it wholly lacks evidentiary support of any kind, this argument fails.

**4. Plaintiffs' Theory is Without Legal Support and Highly Implausible.**

In addition, Plaintiffs' MSJ is completely devoid of any legal authority that would support their joint employer theory against SWHNY. This is unsurprising, because under any measurable joint employer test, no such relationship could or would be found between SWHNY and the Plaintiffs in this matter.

---

[4] In fact, the relevant medical records and Plaintiffs' own contemporaneous conduct fail to demonstrate this claim that Plaintiffs first asserted against SWHNY in 2025, which for some of the claims was almost a decade after the at-issue shifts.

The decisions cited by Plaintiffs in their Motion do not support their theory of liability because they are inapposite, arise from different jurisdictions, and are entirely distinguishable from the circumstances here. In Castillo v. Givens, 704 F.2d 181, 192 (5th Cir. 1983), cert. denied, 464 U.S. 850 (1983) (partially overturned), field workers brought wage and hour claims against the owner of the farm on which they were working. Based on the facts of that case, the individual crew leader hired to procure and supervise the field workers was deemed an employee of the farm owner such that the farm owner was the employer of the workers on its farm. Id. at 192-93. As set forth at length herein and in SWHNY's MSJ, the circumstances involving these Plaintiffs are completely different. GreatCare is clearly a separate entity from SWHNY, and there is no evidence that any GreatCare employee was also employed by SWHNY.

Beliz v. W.H. McLeod & Sons Packing Co., 765 F.2d 1317, 1323 (5th Cir. 1985), similarly involved a finding that a farmer was a joint employer of the individuals physically working on his farm. Again, the relationships among GreatCare, SWHNY, and Plaintiffs are substantially different from those in Beliz. Plaintiffs had little to no interaction with SWHNY, and they provided services to SWHNY's members and not to SWHNY as an entity. See SWHNY 56.1 at ¶¶30-31. Additionally, unlike the workers in Beliz, Plaintiffs have failed to demonstrate that their actual employer, GreatCare, failed to pay them the minimum wage.

Hardgers-Powell v. Angels in Your Home LLC, 330 F.R.D. 89, 111 (W.D.N.Y. 2019) similarly involves a distinguishable set of circumstances. This decision from the Western District of New York concerned a fiscal intermediary relationship, which is markedly different from the relationship between the parties here. Id. at 109. Fiscal intermediaries manage financial and administrative tasks (e.g. payroll, tax withholdings, etc.) for individuals engaged in self-directed care programs. Id. Because there is no fiscal intermediary relationship at issue here, this holding has

little impact on the question of whether joint employment status should be found as to SWHNY. In fact, this Court should respectfully ignore the holdings in Hardgers-Powell, Beliz, and Castillo because they are not binding on this Court, provide no illustrative value, and can only confuse the clear and appropriate outcome under the circumstances here.

In an attempt to sidestep this fundamental lack of authority, Plaintiffs cite to U.S. Department of Labor ("USDOL") Administrator Interpretation Letter FLSA 2016-1 ("FLSA 2016-1"), which relates to migrant and seasonal agricultural workers. See Plaintiffs' MSJ at 16. This Letter does nothing to advance Plaintiffs' argument because, simply it was withdrawn by the USDOL and then removed completely from its webpage. See SWHNY's Reply Submission in Further support of its Motion to Dismiss [ECF 124] at 6-7. Accordingly, this Court should disregard it.

Plaintiffs' inability to support this novel legal theory against SWHNY is not unexpected because it is wholly implausible under the circumstances here. In their Motion, Plaintiffs argue that SWHNY's conduct in ensuring its members are receiving quality care from GreatCare's employees and confirming that GreatCare is fulfilling the requirements of its contract demonstrates that SWHNY was controlling the Plaintiffs as a joint employer. See Plaintiffs' MSJ at 18-22. That is simply not true. SWHNY's actions do not demonstrate that it exercised control over the Plaintiffs; these actions instead reflect a typical contractor/subcontractor relationship where a contractor oversees the actions of its subcontractor to ensure it is providing the promised services in a manner that complies with the contract and applicable law. See SWHNY's MSJ at 23-24.

The practical implications of what Plaintiffs are seeking here are profound and must be avoided. Should this Court deem SWHNY a joint employer because it retained quality control rights under the SWHNY/GreatCare Contract, that decision would break open the definition of "employer" in this Circuit to unimaginable breadth. Id. Indeed, if any contractor with the power to confirm the

quality of the services being provided (or with the right to cease doing business with an employer who allegedly mistreats its workers) is considered a joint employer of those workers, then almost all contractors would be unwittingly dragged into the joint employer definition proposed by Plaintiffs. This was clearly not the intention of the Second Circuit. See, e.g., Jean-Louis v. Metro. Cable Commc'ns, 838 F. Supp. 2d 111 (S.D.N.Y. 2011) (in which this Court rejected similar arguments that a contractor, Time Warner, was a joint employer to technicians employed by their subcontractor, Metro, because Time Warner took steps to ensure the technicians were providing the contracted services in a timely and appropriate manner).

Plaintiffs' claims regarding SWHNY's purported connection to their work and compensation are, in fact, no different than any other contractual relationship. Employers often set their employees' schedules to fulfill the needs of their customers and to perform contractual obligations. That is precisely what GreatCare did here. SWHNY 56.1 CS at ¶¶ 270-272. Further, employers who provide contracted services for their customers often pay employee salaries out of customer revenues. Again, GreatCare did so when it paid its own employees using funds it received from customers like SWHNY. Id. at ¶¶286-290. These standard practices do not suddenly transform customers (like SWHNY) into joint employers. In fact, GreatCare's corporate representative agreed that regardless of whether the MLTCs paid in full or on time, it was GreatCare's responsibility to timely pay its employees' duly earned wages. Id. at ¶¶289-291.

The record is devoid of any deeper connection between SWHNY and GreatCare or its employees that could demonstrate a joint employer relationship. To be sure, the primary "evidence" cited by Plaintiffs to suggest that SWHNY controlled Plaintiffs' work conditions is the quality control measures mandated by New York law, all of which are focused on ensuring that its members receive quality services as part of its managed long term care plan. See SWHNY 56.1 at ¶¶20-21,

48-49. These actions hardly justify this Court in finding that SWHNY was a joint employer of the Plaintiffs. In addition, it is important to recognize that Plaintiffs' claims focus on what SWHNY was permitted to do under its Contract with GreatCare without providing specific examples of times when SWHNY actually exercised said quality control rights. Plaintiffs' MSJ at 18-22. By failing to do so, Plaintiffs tacitly admit that SWHNY never did so and their motion must be denied.

Plaintiffs again play fast and loose with the facts when they assert that their "more durable and substantive relationship was with the MLTC Defendants." Id. at 21. This is a remarkably inaccurate statement because, by any measure (including by and through their own admissions), Plaintiffs had little to no relationship with SWHNY. SWHNY 56.1 at ¶¶30-31 (Plaintiffs admit they had never heard of SWHNY, never interacted with anyone at SWHNY, and had no idea why they were suing SWHNY). Perhaps it can be said that Plaintiffs had significant relationships with the members to whom they provided services, but that does not make SWHNY their joint employer. This distinction is brought into sharper relief when considering that SWHNY's sole focus is its members and not the aides assisting those members. SWHNY 56.1 CS at ¶19. To this point, if a member passed away or was no longer eligible for home health services, the Plaintiff caring for that member would not seek another assignment from SWHNY. She would instead request that GreatCare provide her with an alternative assignment to another Medicaid member. SWHNY 56.1 at ¶¶63-65.

Accordingly, based on the arguments set forth herein and in SWHNY's MSJ for Summary Judgment, SWHNY maintains that the joint employer analysis weighs entirely in favor of SWHNY and requires denial of Plaintiffs' MSJ.

### B. Summary Judgment is Precluded as to Damages Because Questions of Fact Remain Regarding Plaintiffs' Entitlement to Unpaid Wages and Overtime under the FLSA, NYLL, and WPA.

Separate from the joint employer issue addressed herein, Plaintiffs seek to resolve all their claims via one dispositive Motion. In support thereof, Plaintiffs submitted a Rule 56.1 Statement that is 318 paragraphs in length. See Plaintiffs 56.1 [ECF 258]. It defies logic that no material disputes exist in any of the facts, including those regarding whether Plaintiffs were paid for the hours they worked, received their meal and rest breaks, and/or are entitled to the damages alleged. As set forth at length in SWHNY's Counterstatement to Plaintiffs' 56.1 Statement, almost all of Plaintiffs' purported facts seeking summary relief in this case are disputed.

These issues of fact abound, but SWHNY selects two here to establish that essential components of Plaintiffs' damages are obviously in dispute. Plaintiffs allege first that "[n]one of the Plaintiffs were compensated at or above the basic state minimum wage rate for all 24-hours of their "live-in" shifts." Plaintiffs 56.1 at ¶65. This fact is clearly disputed because Plaintiffs admit they only worked 13 hours during each 24 hour "live-in" shift and because payment for 13 hours of work during a 24-hour "live-in" shift aligns with applicable statutory guidance in the FLSA, the requirements of 12 NYCRR § 142-2.1(b), and the Miscellaneous Industries and Occupations Minimum Wage Order that interprets and clarifies it. See SWHNY 56.1 CS at ¶¶64-65.

Second, Plaintiffs suggest it is undisputed that they "did not obtain five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks per shift." Plaintiffs 56.1 at ¶70. Plaintiffs are simply wrong, as this is one of the most disputed facts in this matter. In fact, Plaintiffs regularly and consistently certified to GreatCare that they had obtained these breaks during each shift as part of their daily timesheets and through their execution of the "24-Hour or 'Live-In' Cases Declaration Letter" in which they declared that they had received these breaks "every day since [their] first working day" with GreatCare. SWHNY 56.1 CS at ¶38, 64, 70. The written certifications Plaintiffs provided as part of the Home Care Worker Agreements they executed for

GreatCare further establish that this is a disputed fact. Id. (where each Plaintiff certified that to the extent they did not receive the required breaks, they would report it to GreatCare "immediately after each 24 hour shift.") That the record does not include thousands of such reports – let alone a single one – makes clear that this fact is anything but undisputed.

### C. Because Plaintiffs' Claims are Time-Barred, this Court Must Deny Summary Judgment in Favor of Plaintiffs.

Plaintiffs are similarly precluded from summary judgment because many of their claims, and thus the damages resulting from them, are barred by the applicable statutes of limitations. Under the FLSA, Plaintiffs are required to file claims for allegedly unpaid minimum wages or overtime within two years of the wrongful conduct (or three years if the violations were "willful"). 29 U.S.C. § 255(a). Because the undisputed record is devoid of any specified wrongful conduct by SWHNY against Plaintiffs, let alone "willful" conduct, the two-year statute of limitations should be applied. Any and all FLSA claims premised upon conduct that occurred before August 18, 2023 are untimely and must be dismissed. See Aug. 18, 2025 Amended Complaint, 2025 [ECF 77].

Plaintiffs' Motion must be denied because it seeks summary judgment on a remarkable number of barred FLSA claims. Indeed, the HHAX Records Plaintiffs cite to support their damages demonstrate they involve hundreds, if not thousands, of shifts that fall outside the limitations period. For example, Zhu Lin seeks damages for shifts that started in 2016 and ended on March 8, 2021, more than two years outside the statute of limitations for her FLSA claims. See Ex. 4 to Friedman Dec. They are all barred. The same goes for the FLSA claims filed by Xiu F. Chen[5] (relating to shifts

[5] Ms. Chen's records also include non "live in" shifts that she allegedly worked after 2021, but they are not the subject of the claims in this case.

in 2018-2021), Hui Li[6] (shifts in 2018), Zhan J. Li (shifts in 2016-2021), Hui X. Ruan[7] (shifts in 2018 and 2019), Mu Z. Zhang[8] (shifts in 2018-2021), and Xiu X. Zhu[9] (shifts in 2017-2021.) They are all subject to dismissal under 29 U.S.C. § 255(a) and, more importantly, require dismissal of their motion for summary judgment. See Friedman Decl. at Exs. 10, 14, 16, 19, 26, and 30.

As for Plaintiffs' NYLL and WPA claims, they are subject to a six-year statute of limitations under N.Y. Labor Law §§ 198(3), 663(3). Therefore, any claims based upon allegations of conduct that occurred prior to August 18, 2019 are time-barred and must be dismissed. See Camara v. Kenner, No. 16-CV-7078 (JGK), 2018 WL 1596195, at *5 (S.D.N.Y. Mar. 29, 2018) and Tecocoatzi-Ortiz v. Just Salad LLC, No. 18-CV-7342 (JGK), 2022 WL 596831, at *14 (S.D.N.Y. Feb. 25, 2022) (dismissing FLSA and NYLL claims brought outside of the six year statute). Indeed, as explained above, a majority of the services underlying the claims brought by these individual Plaintiffs pre-date August 18, 2019 and also must be dismissed.

Moreover, there exists no basis to toll these statutes of limitations. Tolling is an equitable remedy that should only be utilized in exceptional circumstances, and litigants who seek tolling of the statute of limitations must generally establish that they have diligently been pursuing their rights and that an extraordinary circumstance prevented timely filing. Lawrence v. Florida, 549 U.S. 327, 336 (2007). The burden of demonstrating that tolling is appropriate lies with Plaintiffs. Thus, a "conclusory and vague claim, without a particularized description" of the circumstances warranting the tolling sought is insufficient to justify setting the statute of limitations aside. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000); accord Bolarinwa v. Williams, 593 F.3d 226, 232 (2d

---

6 Hui Li also worked non "live in" shifts in February 2023, which are not the subject of the claims in this case.

7 Ms. Ruan's records also include non "live in" shifts in 2022 and 2022 but they are not "live in" shifts and do not give rise to her claims here.

8 Ms. Zhang's records include non "live in" shifts in 2021 and 2022, but they do not give rise to any of her claims. Her last, at issue "live in" shift was on March 18, 2021.

9 Xiu X. Zhu's records include non "live in" shifts in 2017, which are not the subject of the claims in this case.

Cir. 2010); see also Shin v. NBC Universal Media, LLC, No. 23-CV-10996 (LJL), 2025 WL 438297, at *10 (S.D.N.Y. Feb. 7, 2025). "[W]here a plaintiff provides no factual allegations that reflect that the plaintiff pursued their rights diligently and was frustrated by extraordinary circumstances, the court may reject a claim of equitable tolling made in a memorandum of law in opposition to a motion to dismiss." Levin v. Sarah Lawrence Coll., 2024 WL 4026966, at *18 (S.D.N.Y. Sept. 3, 2024); see also Lomako v. N.Y. Inst. of Tech., 440 F. App'x 1, 3 (2d Cir. 2011) (summary order); Shin v. NBC Universal Media, LLC, 2025 WL 438297, at *8 (S.D.N.Y. Feb. 7, 2025). Through these decisions, this Court has repeatedly held that a plaintiff's claim to tolling is inadequately invoked when the circumstances warranting the tolling are not stated with particularity. Id. at *8 (citations omitted).

Here, Plaintiffs have not provided (or even attempted to provide) a particularized description of any diligence undertaken in pursuing claims against SWHNY. At best, Plaintiffs' argument in favor of tolling is a vague, conclusory assertion that "[t]here is no exception to liability…for the unauthorized failure to pay wages, benefits or supplements." Plaintiffs' MSJ at 26. This argument should, respectfully, not be countenanced by this Court as this provision of N.Y. Lab. Law § 198(3) in no way relieves Plaintiffs from filing timely claims. Plaintiffs' failure to cite to any opinion or statute that supports tolling under these circumstances is further evidence that tolling is inappropriate here. Illustratively, the primary case upon which Plaintiffs rely in this section – Int'l Franchise Ass'n v. City of New York, 148 N.Y.S.3d 28 (2021) – does not even involve a prospective bar on claims based on the failure to file by the applicable statute of limitations, let alone a tolling argument. Id.

Plaintiffs' suggestion that their filing of complaints with the NYSDOL against GreatCare (and GreatCare only) should toll the statute of limitations as to SWHNY is equally unavailing as wholly unsupported by the facts or applicable law. While SWHNY acknowledges that NYLL §§ 198(3) and 663(3) permit tolling for claims filed with the NYSDOL Commissioner, these sections

are inapposite as SWHNY is not a party to these complaints. SWHNY 56.1 at ¶83; see also Plaintiffs' MSJ at 26 (in which Plaintiffs concede they failed to even identify SWHNY and CenterLight in their NYSDOL complaints).

Moreover, §§ 198(3) and 663(3) allow for tolling based on an ***employee's*** complaint to the NYSDOL Commissioner about their ***employer's*** alleged violations to be investigated. Id. Plaintiffs' failure to identify SWHNY in their NYSDOL complaints is further acknowledgement by Plaintiffs that SWHNY was not their joint employer. Indeed, if SWHNY had exerted control over Plaintiffs' employment to the degree now alleged, they undoubtedly would have named SWHNY in their complaints. SWHNY is not identified therein because Plaintiffs, by their own admission, had no idea who SWHNY was prior to filing this lawsuit against SWHNY. SWHNY 56.1 at ¶¶30-31. It would be profoundly unfair – and would open the floodgates of unforeseen legal action – if the statute of limitations could be tolled for claims against an entity that did not employ the complainant and against whom no formal NYSDOL complaint was ever filed. Yet that is what Plaintiffs are arguing here, and it must be rejected.[10]

As tolling is an equitable remedy, the Court should respectfully consider fairness to the parties in determining whether to toll any statute of limitations. Notably, SWHNY has been substantially prejudiced by Plaintiffs' lack of diligence, and Plaintiffs should not be permitted to benefit from their own failure to timely assert their claims, many of which arose well before the relevant statute of limitations period; see above analysis demonstrating that Plaintiffs' claims and damages are based on alleged shifts worked for GreatCare outside the statute of limitations period. Plaintiffs themselves acknowledged the negative effect of this delay at their depositions when they admitted that their own memories had faded because the underlying conduct and services occurred

---

[10] Importantly, Plaintiffs fail to cite to a single case that would support tolling for claims that were never asserted against a purported employer to the DOL Commissioner, because no such precedent exists.

long ago.[11] see, e.g., Jan. 12, 2026 Deposition of H. Ruan Dep. at 41:16-17 (Ex. 34 to the Oct. 16, 2026 Declaration of Kaitlyn Grajek). All of these points add up to an inevitable conclusion – this Court must deny Plaintiffs' MSJ as to damages because Plaintiffs' claims are time-barred and because there exists no basis to toll the limitations periods.

### D. Summary Judgment is Precluded because Factual Disputes Exist as to Plaintiffs' Entitlement to Wages and Because SWHNY Cannot be Liable to Plaintiffs for Alleged WPA Violations.

Plaintiffs seek summary judgment on the basis that they are owed compensation in excess of the basic minimum wage under the WPA. To prevail on a claim under the WPA, Plaintiffs must establish that no dispute of material fact exists as to: (1) SWHNY's purported failure to adhere to MLTC compliance obligations, and (2) their alleged underpayment by GreatCare. Because multiple issues of fact exist regarding both of these elements, Plaintiffs' MSJ must be denied.

By way of background, MLTCs like SWHNY are required under New York law to engage in certain conduct (such as collecting certifications from LHCSAs, reviewing LHCSA-generated personnel and timekeeping records, and reporting their findings to the State) to ensure quality performance by LHCSAs and their employees. See SWHNY's MSJ [ECF 254] at 25-26. Despite acknowledging that the State mandates these actions, Plaintiffs inexplicably rely on SWHNY's compliance to argue that SWHNY should be subject to joint employer liability for violations of the WPA. See Amended Complaint [ECF 77], generally. This argument makes little sense, as the New

[11] This significant prejudice to SWHNY was on display in connection with Plaintiffs' MSJ, as they filed most of the components after the Court-ordered deadline. As noted in prior correspondence to the Court, SWHNY would appreciate the opportunity to detail its position in opposition to the Court's acceptance of Plaintiffs' late filing of the Motion. But for now, SWHNY will merely state that Plaintiffs' untimely Motion should be denied and Plaintiffs' arguments in favor of summary judgment should be stricken or ignored by the Court.

York State Legislature certainly did not intend to transform every MLTC into a joint employer simply for complying with statutory requirements.

The two arguments advanced by Plaintiffs with regard to the WPA are plainly at odds with each other and reveal material issues of fact that require denial of Plaintiffs' MSJ.[12] Plaintiffs argue, first, that SWHNY is their joint employer because it complied with New York law and collected from GreatCare certain information and records about the Plaintiffs to ensure that GreatCare was complying with the WPA. Then in the same breath, Plaintiffs argue SWHNY did not comply with the WPA because it failed to sufficiently review those same records to ensure GreatCare was complying with the WPA. Plaintiffs cannot have it both ways, and their failure to take a stance – one way or the other – reflects the weakness of these arguments and requires denial of their Motion.

### E. Plaintiffs' Demand for Summary Judgment Must be Denied Because Issues of Fact Remain Regarding Plaintiffs' Entitlement to the Requested Damages.

Plaintiffs' demand for summary judgment on their damages claim necessarily fails because material disputes of fact exist as to the amount of those damages and, more fundamentally, whether Plaintiffs are entitled to them in the first place.

In their Motion, Plaintiffs assert – in conclusory fashion and without any citation to the record – that "Defendants paid Plaintiffs for 13 hours only even though they knew that Plaintiffs were working without adequate sleep and meal breaks." Plaintiffs' MSJ at 25. This statement alone contains two disputed contentions that require denial of Plaintiffs' MSJ: first, Plaintiffs contend that "Defendants paid Plaintiffs" even though the record demonstrates that only GreatCare ever paid

[12] Plaintiffs' suggestion that there are no issues of fact standing in the way of a finding of liability against SWHNY under the WPA is similarly misguided. To the contrary, the evidentiary record demonstrates that SWHNY fully complied with all of its obligations relating to the WPA and is not liable as a matter of law. See SWHNY 56.1 CS at ¶¶64-66 (demonstrating that Plaintiffs were paid by GreatCare in a manner that complied with the WPA); see also SWHNY's MSJ at 25-26 (wherein SWHNY seeks summary judgment against Plaintiffs because it did not violate the WPA as a matter of law).

Plaintiffs. SWHNY 56.1 at ¶53 ("SWHNY never paid any amount directly to Plaintiffs for their work."). Plaintiffs next allege that Defendants knew that Plaintiffs were working without adequate sleep and meal breaks, even though the record contains no evidence that SWHNY was aware of this situation. SWHNY 56.1 CS at ¶70. Plaintiffs' "accurate and complete" timesheets, which certify that they took all of their required meal and rest breaks, further draw the veracity of this statement into question. Id. Indeed, if Plaintiffs were voluntarily certifying that they had taken their sleep and meal breaks every day, it is wholly unclear how SWHNY could ever know the opposite is true.

Applicable case law also requires that this Court deny Plaintiffs' MSJ as to damages. "To establish liability for unpaid overtime under the FLSA or the NYLL, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Barahona v. Hebrew Acad. of the Five Towns & Rockaway, 825 F. Supp. 3d 124, 134 (E.D.N.Y. 2026) (citing Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011)). "[E]ven where records to which an employer has access indicate that particular employees are working during lunch periods, it is not necessarily sufficient to establish constructive knowledge that the employees were not reporting their time." Hinterberger v. Cath. Health Sys., 299 F.R.D. 22, 39 (W.D.N.Y. 2014) (citing Hertz v. Woodbury County, 566 F.3d 775, 781–82 (8th Cir. 2009)). The Hinterberger Court noted that the determination of whether an employer should have known that an employee was working through a meal period sufficient to establish constructive knowledge was based on a reasonableness standard. Id.

Here, multiple issues of fact exist that preclude summary judgment as to damages. As to whether Plaintiffs were not properly compensated, there is ample evidence that GreatCare paid Plaintiffs in accordance with applicable law. For example, despite Plaintiffs' claims to the contrary, their own timekeeping records (and deposition testimony about those records) suggest that

GreatCare paid Plaintiffs for all hours they actually worked. See SWHNY 56.1 CS at ¶¶ 38, 64, 70 Plaintiffs' daily timesheets also certify that they received their meal and sleep breaks (11 hours in total) and thus only worked 13 hours during each "live-in" shift. Id. Further, GreatCare produced attestations from Plaintiffs confirming that their timesheets were correct and that they had not missed any of their meal or rest breaks during their shifts. Id.

Plaintiffs seek summary judgment despite the existence of this evidence by arguing that these timekeeping records and verifications, which they contemporaneously provided to GreatCare after each shift and verified as are "accurate and complete," were wholly inaccurate. Plaintiffs 56.1 at ¶38. Whether this dubious claim is true or false makes little difference at this time. By taking the position that their own timesheets are neither accurate nor complete (despite verifying that the opposite was true on every form), Plaintiffs admit to the existence of material issues of fact concerning the true number of hours they worked and the compensation they are owed. These issues are therefore undoubtedly disputed, and Plaintiffs' MSJ should be denied.

Even if Plaintiffs had not created these issues of fact, their Motion fails to identify the evidence necessary to support summary judgment as to their damages. Plaintiffs concede in their Motion that where an employer's records are claimed to be incomplete or inaccurate, that employee must proffer "sufficient evidence to show the amount and extent of that work" that employee actually performed. Plaintiffs' MSJ at 8. In no way have Plaintiffs satisfied this threshold burden, which is necessary for this Court to award summary judgment as to its damages. Indeed, Plaintiffs' Motion is not based on their respective recollections of specified shifts or instances when they did not receive meal breaks. Id. It is instead based upon a highly self-serving affidavit created by their attorney's administrator (Scott Workman). See Ex. A to Plaintiffs' MSJ. Aside from the fact that an employee of Plaintiffs' counsel created this "evidence," Mr. Workman's affidavit incorrectly

assumes that Plaintiffs worked a full 24 hours during every shift and are thus entitled to damages relating to that unsubstantiated and implausible assertion. Id. Under no set of circumstances is it undisputed that Plaintiffs worked a full 24 hours on every shift, as their own records demonstrate otherwise. SWHNY 56.1 CS at ¶¶38, 64, 70. In fact, Plaintiffs had the opportunity to account for a lack of meal and rest breaks and they repeatedly failed to do so, such that their own timekeeping practices have contributed to the disputes of material fact on this crucial element of their claims. Plaintiffs now ask this Court to rely upon these same timekeeping records but allege they are inaccurate as it suits them. Because Plaintiffs have failed to meet their burden relating to their claimed damages, their Motion also must be respectfully denied.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' MSJ must respectfully be denied as a matter of law. Moreover, based on the undisputed facts in this case, all causes of action asserted against SWHNY should respectfully be dismissed with prejudice because SWHNY was not Plaintiffs' joint employer. It is thus respectfully requested that an Order be issued by this Court denying Plaintiffs' MSJ and dismissing all claims as against SWHNY in their entirety, and for such other, additional relief as this Court deems just and proper.

Dated: October 16, 2026
New York, New York

Respectfully submitted,

***/s/ Kaitlyn Grajek***

Kaitlyn Grajek, Esq.
kgrajek@stradley.com
**STRADLEY RONON
STEVENS & YOUNG, LLP**
100 Park Avenue, Suite 200
New York, NY 10017
(862) 682-7255

*Attorneys for Defendant/Cross-Claimant,
Senior Whole Health of New York, Inc.*

## WORD COUNT CERTIFICATION

The undersigned hereby certifies that the Memorandum of Law provided herewith complies with the word count limitation set forth in A(2)(h) of the Honorable Laura Taylor Swain's Individual Practices and Rules. Based on the word-count feature of the word processing system used to prepare the Memorandum of Law, it contains 8115 words.

Dated: October 16, 2026
New York, New York

Respectfully submitted,

***/s/ Kaitlyn Grajek***

Kaitlyn Grajek, Esq.
kgrajek@stradley.com
**STRADLEY RONON**
**STEVENS & YOUNG, LLP**
100 Park Avenue, Suite 200
New York, NY 10017
(862) 682-7255

*Attorneys for Defendant/Cross-Claimant,*
*Senior Whole Health of New York, Inc.*