**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HEI LI, ZHU H.L. LIN, LI CHEN, XIU F. CHEN, MEI F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, XIU X. ZHU,

Plaintiffs,

-against-

GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., SENIOR WHOLE HEALTH OF NEW YORK, INC.,

Defendants.

**DEFENDANT SENIOR WHOLE HEALTH OF NEW YORK, INC.'S. LOCAL RULE 56.1 STATEMENT IN OPPOSITION TO PLAINTIFFS' 56.1 STATEMENT**

Case No. 1:24-cv-07401 (LTS) (KHP)

Defendant, Senior Whole Health of New York, Inc. ("SWHNY") submits the following response to Plaintiffs' Local Rule 56.1 Statement.

## I. The Parties

1. Plaintiff Hei Li was employed by GreatCare from approximately June 17, 2017 until approximately December 29, 2022. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li); Ex. 2 (Hei Li App., GC 000733, 000736); Ex. 3 (Hei Li Dep. 15:3-9).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

2. Plaintiff Zhu H.L. Lin was employed by GreatCare from approximately March 13, 2015 until approximately March 8, 2021. *See, e.g.,* Friedman Decl., Ex. 4 (HHAX EVV Rec.

for Lin); Ex. 5 (Lin Decl. ¶ 7).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

3. Plaintiff Li Chen was employed by GreatCare from approximately January 2, 2015 until approximately May 18, 2020. Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 32); Ex. 7 (HHAX EVV Rec. for L. Chen).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

4. Plaintiff Mei F. Chen was employed by GreatCare from approximately March 6, 2016 until approximately January 4, 2019. Friedman Decl., Ex. 8 (HHAX EVV Rec. for M. Chen); Ex. 9 (M. Chen App., GC 002911, 002914).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

5. Plaintiff Xiu F. Chen was employed by GreatCare from approximately February

19, 2016 until approximately October 31, 2024. Friedman Decl., Ex. 10 (HHAX EVV Rec. for X. Chen); Ex. 11 (X. Chen App., GC 000685, 000687).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

6. Plaintiff Hui He was employed by GreatCare from approximately July 2, 2016 until approximately July 11, 2020. Friedman Decl., Ex. 12 (HHAX EVV Rec. for He); Ex. 13 (He App., GC 003366, 003369).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

7. Plaintiff Hui Li was employed by GreatCare from approximately July 18, 2015 until approximately April 6, 2023. Friedman Decl., Ex. 14 (HHAX EVV Rec. for Hui Li); Ex. 15 (Hui Li Dep. 77:25-78:9).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

8. Plaintiff Zhan J. Li was employed by GreatCare from approximately September 24, 2016 until approximately March 7, 2021. Friedman Decl., Ex. 16 (HHAX EVV Rec. for Z. Li); Ex. 17 (Z. Li App., GC 004137, 004140); Ex. 18 (Z. Li Dep. 11:4-6).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

9. Plaintiff Hui X. Ruan was employed by GreatCare from approximately March 29, 2015 until approximately August 27, 2023. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan); Ex. 20 (Ruan App., GC 009815, 009819); Ex. 21 (Ruan Dep. (Dec. 17, 2025) 47:11-12, 50:16-21).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

10. Plaintiff Jian R. Xiao was employed by GreatCare from approximately November 10, 2020 until approximately August 20, 2023. Friedman Decl., Ex. 22 (EVV Recs. for J. Xiao); Ex. 23 (J. Xiao App., GC 000923, 000925).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments**

**contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

11. Plaintiff Mei Z. Xiao was employed by GreatCare from approximately May 2, 2018 until approximately November 3, 2020, from approximately September 1, 2021 until approximately May 6, 2022, and from approximately May 3, 2023 until approximately August 18, 2023. Friedman Decl., Ex. 24 (HHAX EVV Rec. for M. Xiao).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

12. Plaintiff Mu Z. Zhang has been employed by GreatCare from approximately January 4, 2015 to the present. Friedman Decl., Ex. 25 (Zhang App., GC 001011, 001016); Ex. 26 (HHAX EVV Rec. for Zhang); Ex. 27 (Zhang Decl. ¶ 6).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

13. Plaintiff Bi Y. Zheng was employed by GreatCare from approximately October 18, 2018 until approximately August 20, 2021. Friedman Decl., Ex. 28 (HHAX EVV Rec. for Zheng); Ex. 29 (Zheng App., GC 001079, 001081).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the**

**extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

14. Plaintiff Xiu X. Zhu was employed by GreatCare from approximately September 9, 2017 until approximately February 12, 2021. Friedman Decl., Ex. 30 (HHAX EVV Rec. for Zhu); Ex. 31 (Zhu Decl. ¶ 7).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited herein accurately reflect them. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement, so they are denied upon information and belief.**

15. Defendant GreatCare, Inc. ("GreatCare") is a licensed home care services agency ("LHCSA") that maintains its principal offices at 110 West 34th Street, Suite 1207, New York, New York. GC Answer, ECF No. 187 ¶ 50; Friedman Decl., Ex. 32 (SWHNY-GC Home Health Services Agree. ("HHSA"), SWHNY 000243).

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. SWHNY therefore admits them upon information and belief.**

16. Defendant CenterLight Healthcare, Inc. ("CenterLight") is a managed long-term care plan ("MLTC") whose office is located at 136-65 37th Avenue, Flushing, NY 11354. Friedman Decl., Ex. 33 (NYSDOH-CL 2022-2026 Cont., CenterLight 000154).

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the**

**truth of the averments contained in this paragraph of Plaintiffs' Statement. SWHNY therefore admits them upon information and belief.**

17. Defendant Senior Whole Health of New York, Inc. ("SWHNY") is a managed long-term care plan ("MLTC") whose office is located at Trinity Center, 111 Broadway, Suite 1505, New York, NY 10006. Friedman Decl., Ex. 34 (NYSDOH/SWHNY Con., SWHNY 000001).

**RESPONSE:** **Admitted.**

## II. Assessments

18. Under their contracts with the NYSDOH and per state Medicaid regulations, the MLTC Defendants were required to assess their members for the appropriate level of home care services at least every six months. *Id.*, Article V § J ¶¶ 6(b), 7, 9(c)(vii) & (x), SWHNY 000041-000043); 18 NYCRR §§ 505.14, 505.28; Friedman Decl., Ex. 35 (Plaintiffs' First Set of Requests for Admission to CL ("CL Adms.") Nos. 24, 25, 28 (deemed admitted)); Ex. 36 (NYSDOH/CL Cons., Art. III(B), CL 000389); Ex. 37 (Ding Decl. ¶¶ 4-5); *see, e.g.,* Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003181, 003225).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that the state Medicaid regulations and the Managed Long Term Care Partial Capital Contract between SWHNY and the New York State Department of Health ("NYSDOH") (the "NYSDOH/SWHNY Contract") require that SWHNY's Care Management System provide, for each enrollee or member, a minimum of one in-person home visit every six (6) months, whether for care management, reassessment, or evaluation of the member's person centered service plan. See NYSDOH/SWHNY Contract (SWHNY 000041-43) at Article V § J ¶¶ 6(b), 7, 9(c)(x); see also 18 CRR-NY § 505.14. The remaining averments are denied to the extent they are**

**incomplete or inaccurate characterizations of the specific requirements of the NYSDOH/SWHNY Contract.**

19. CenterLight and SWHNY relied on their periodic assessments to create plans of care and to authorize services. 42 C.F.R. §§ 460.104, 460.106; Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 1.13, CL 000042); Ex. 35 (CL Adms., Nos. 21, 22); Ex. 32 (SWHNY-GC HHSA §§ 2.4-2.5, SWHNY 000247, § 1.24, SWHNY 000246, §§ 3.3-3.4, SWHNY 000247); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 43:20-44:9, 107:2-7).

**RESPONSE: Denied. SWHNY, as the plan administrator, creates plans of care for its members by relying on guidance from medical providers and social assessments regarding what level of care is medically necessary for that individual member. See Feb. 26, 2026 Deposition of Nikia Glapa ("Glapa Dep.")[1] at 13:6-11; 14 :7-12, 19-23 ("our plans of care and our authorizations are purely based on medical necessity")[2]; Id. at 27:5-23 ("When it is deemed medically necessary that having live-in support is needed for the patient, that's where the care plan is generated.") This determination is highly specific, and the care plans are focused on the individual needs of the member and designed to "optimiz[e] the health and well-being of each member." Id. at 38:3-39:14 (the "member centric" care plans are "all contingent upon the needs of the member, who they have living with them, what is their current scope, what their living arrangements looks like.") Accordingly, care plans can be adjusted when there is a change in a member's situation or needs. Id. at 44:3-9.**

20. GreatCare received members' care plans from CenterLight by fax. Friedman

---

[1] Nikia Glapa was deposed on Jan. 26, 2026 and on Feb. 26, 2026. To make clear which deposition transcript is cited, the citation will include the date of the deposition as follows: Glapa Dep. (Jan. 26, 2026) or Glapa Dep. (Feb. 26, 2026).

[2] Excerpts from the Glapa Dep. (Feb. 26, 2026) are attached as Ex. 36 to the Oct. 16, 2026 Declaration of Kaityln Grajek (the "Grajek Oct. Decl."), which is being filed with this Counterstatement and SWHNY's Memorandum of Law in Support of its Response to Plaintiffs' Motion for Summary Judgment.

Decl., Ex. 41 (Wang Dep. (Jan. 7, 2026) 146:2-11).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only Barbara Wang testified at her deposition that GreatCare had received plans of cares from CenterLight by fax. See Jan. 7, 2026 Deposition of Barbara Wang ("Wang Dep.")[3] at 146:2-11. SWHNY lacks independent knowledge or information to form a belief as to the truth of these averments, however, and it therefore denies them.**

21. SWHNY gave GreatCare a copy of each care plan, held meetings with GreatCare by phone about the care plan, and sent a copy of the care plan to each member. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 43:8-16, 44:10-24).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that SWHNY shared care management plans with members and with GreatCare during telephone meetings, via email, and/or through the HHAeXchange portal ("HHAX"). Glapa Dep. (Feb. 26, 2026) 43:8-16, 44:10-24. The remaining averments are denied because SWHNY lacks knowledge or information sufficient to form a belief as to the truth of this statement as to every SWHNY member ever serviced by GreatCare.**

22. SWHNY also entered each plan of care into the Homecare Software Solutions, LLC d/b/a HHAeXchange ("HHAX") portal and shared it with GreatCare. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 240:14-241:7); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 43:11-16); *see, e.g.*, Ex. 43 (HHAX Plan of Care ("POC") for X.Y.W., GC 002118).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that SWHNY regularly inputted care management plans into the HHAX portal and shared them with GreatCare.**

---

3 Barbara Wang was deposed on January 7, 2026, May 1, 2026, and May 15, 2026. To make clear which deposition transcript is cited, the citation will include the date of the deposition as follows: Wang Dep. (Jan. 7, 2026), Wang Dep. (May 1, 2026), or Wang Dep. (May 15, 2026).

**Id. at 43:11-16. The remaining averments are denied because SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments as to every care management plan completed for every member serviced by GreatCare.**

23. GreatCare's nurses directed its home health aides on how to implement the plans of care developed by SWHNY. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 48:5-16, 133:23-134:7).

**<u>RESPONSE:</u> It is admitted only that Barbara Wang of GreatCare testified that GreatCare's nurses would "direct the aides how to follow the care plan." Wang Dep. (May 15, 2026) 48:11-14. SWHNY lacks independent knowledge or information sufficient to form a belief as to the truth of these averments in Plaintiffs' Statement, so they are admitted upon information and belief.**

24. For the assessments, the MLTC Defendants' nurses, or a nurse provided by a contracted agency retained by the MLTC Defendants, evaluated each care recipient's activities of daily living, including bathing, personal hygiene, dressing, eating, bed mobility, toilet transfers and use, locomotion, and managing stairs, and instrumental activities of daily living, including meal preparation, housework, shopping, managing medications, managing finances, telephone use, and transportation. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001886-001939); Ex. 35 (CL Adms., Nos. 27-28); Ex. 37 (Ding Decl. ¶¶ 3, 4).

**<u>RESPONSE:</u> Admit in part deny in part. It is admitted only that nurses employed or retained by SWHNY would, from time to time, assess SWHNY's members for the appropriate and medically necessary level of home care services and evaluate various activities of the members' daily life by using the Community Assessment Comments Report**

**that supports the New York Uniform Assessment System. See, e.g., SWHNY 001886-001939; Glapa Dep. (Feb. 26. 2026) at 86:12-25. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments in Plaintiffs' Statement, including those relating to the actions taken by CenterLight.**

25. CenterLight's documents accurately reflected the nighttime activities of the subject member. Friedman Decl., Ex. 35 (CL Adms., No. 23).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the averments cited within this Paragraph accurately reflect request for admission no. 23 in Plaintiffs' Requests for Admission directed to CenterLight. See Ex. 35 to the Friedman Decl. The remaining averments are denied, as SWHNY lacks independent knowledge or information sufficient to form a belief as to the truth of these averments in Plaintiffs' Statement. Further responding, that this request for admission was later deemed as admitted as to CenterLight has no bearing whatever on SWHNY, especially because the specific request cited is explicitly limited to CenterLight's records. Id.**

26. GreatCare kept patient files containing its own nurses' assessments and nursing notes that a GreatCare's nurse prepared during home visits to the care recipient member, as well as the member's medical orders from the treating physician. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 86:9-17; 73:12-19, 146:2-11; 208:13-17).

**RESPONSE: Admitted upon information and belief.**

## III. GreatCare failed to maintain complete and accurate time and payroll records

### a. Time Records

27. Plaintiffs electronically verified their work shifts by using an electronic visit verification ("EVV") system that required Plaintiffs to call a dedicated telephone number using

their care recipients' telephones and clock in and out their shifts by entering in their assigned ID number and GreatCare's ID number. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); Ex. 51 (Wang Dep. (May 1, 2026) 138:9-22); *see, e.g.,* Ex. 53 (Lin Dep. 57:3-9); Ex. 54 (X. Chen Dep. 38:12-39:15); Ex. 55 (M. Xiao Dep. 80:14-22).

**RESPONSE: Admitted in part, denied in part. It is admitted only that Barbara Wang and three individual Plaintiffs testified that aides employed by GreatCare were required to use a telephone system to "clock in" and "clock out" of their shifts. Wang Dep. (May 1, 2026) 138:9-22. The remaining averments are denied, including that this verification process was used universally by all of the Plaintiffs at all times or that this was the only system used by Plaintiffs to verify their work shifts. See e.g. Z. Lin Dep (Jan. 16. 2026) 57:3-9.**

28. At the end of every shift, Plaintiffs were also required to enter codes that were assigned to them that corresponded to specific work duties. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); *see, e.g.,* Ex. 53 (Lin Dep. 57:6-20); Ex. 56 (Zhang Dep. 67:4-16).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the GreatCare Home Health Aide Duty Sheet contains a list of "duty codes" that relate to certain duties of GreatCare's employees. See GSD002640-002641. SWHNY also admits that Plaintiff Z. Lin testified that she was required to report certain codes to GreatCare to confirm she had "given a comprehensive service to the patient." Z. Lin Dep (Jan. 16. 2026) 57:3-9. The remaining averments are denied. Neither the GreatCare Home Health Aide Duty Sheet nor the cited testimony from M. Zhang support this general averment in any manner. See Zhang Dep. (Jan. 20, 2026) 67:4-16 (testifying only that there existed codes associated with member care but not that this was a universal requirement required of all Plaintiffs); see also GSD002640-**

**002641 (duty sheet).**

29. There was no code provided to Plaintiffs to report lack of adequate sleep. Friedman Decl., Ex. 52 (GC Duty Code List, GSD002640-002641); *see, e.g.,* Ex. 55 (M. Xiao Dep. 82:17-24).

**RESPONSE: Denied. There exist codes for the Plaintiff aides to indicate they had uninterrupted sleeping time and meal breaks during their shifts. Wang Dep. (May 1, 2026) 146:12-19.[4] GreatCare provided these codes to the aides it employed immediately after HHAX established them. Id. at 147:8-23. GreatCare also trained the aides on how to use these codes that confirmed sleeping time and meal breaks. Id. at 147:23-148:18. Further, as part of the Home Care Worker Agreement (the "HCWA") executed by Plaintiffs, they agreed that to the extent they did not receive 5 hours of sleep or 3 one hour meal breaks (both uninterrupted), they were to report this to their coordinator/supervisor at GreatCare "immediately after each 24 hour shift." See, e.g., GC 08.04.2025 007887.**

30. When the telephone system did not function properly, or Plaintiffs made an error in entering information, Plaintiffs were sometimes required to submit paper timesheets. Friedman Decl., Ex. 57 (Y. Zhu Dep. 40:4-13, 76:9-14).

**RESPONSE: Admitted in part, denied in part. It is admitted only that if GreatCare's telephone system was not functioning as intended (and/or when the member's phone had some issue that did not allow its use), GreatCare requested that its employees fill out and submit paper timesheets. Wang Dep. (May 1, 2026) 139:21-140:4. The remaining averments are denied because Y. Zhu never testified that this was a requirement imposed on all of the**

[4] Excerpts from the Wang Dep. (May 1, 2026) are attached as Ex. 38 to the Grajek Oct. Decl.

**Plaintiffs by GreatCare.**

31. Failures of the telephone system occurred seldomly. *See, e.g.,* Friedman Decl., Ex. 28 (HHAX EVV Recs. for Zheng).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. SWHNY therefore denies them. Further responding, the HHAX record cited within this Paragraph does not document any failures of the telephone system, let alone that they occurred "seldomly."**

32. Plaintiffs' EVV information was recorded on the HHAX platform, which is a New York State Department of Health ("NYSDOH") and New York Office of Medicaid Inspector General ("OMIG") approved provider of EVV services. *See* N.Y. State Dep't of Health, *Electronic Visit Verification: Request for Information (RFI) Summary of Responses and Path for Implementing EVV*, app. § 3.1.13 (2020).[5]

**RESPONSE: Admitted in part, denied in part. It is admitted only that certain records from the HHAX platform (that were made part of the evidentiary record in this matter) include electronic visit verification information regarding the Plaintiffs. The remaining averments are denied because they lack a citation to record evidence (and therefore violate the requirements of Rule 56.1). Further responding, the weblink provided in footnote 4 neither relates to these Plaintiffs nor does it support the facts stated in this Paragraph.**

33. Failures of GreatCare's telephone system were also recorded in HHAX as incomplete clock-in and clock-out entries that were adjusted and then billed. *See, e.g.,* Friedman

[5] https://www.health.ny.gov/health_care/medicaid/redesign/evv/repository/docs/sum_resp_path_implement.pdf.

Decl., Exs. 12, 28 (HHAX EVV Recs. for He, visit date Nov. 9, 2016; and Zheng, visit date July 22, 2020).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. SWHNY therefore denies them. SWHNY also denies that the HHAX records cited within this Paragraph record failures of the telephone system. Further responding, nowhere in the HHAX EVV Records for He (Ex. 12 to the Friedman Declaration) is a Nov. 9, 2016 visit recorded. While Ex. 28 to the Friedman Declaration does contain information regarding a visit on July 22, 2020, that exhibit does not indicate, either implicitly or explicitly, that GreatCare's telephone system failed on that date. These averments therefore violate the requirements of Rule 56.1 because they lack evidentiary support of any kind.**

34. Case notes entered by GreatCare into HHAX also show that when an aide worked beyond her regularly scheduled hours, GreatCare did not rely on its phone clock-in/clock-out system to capture the additional time; instead, GreatCare staff instructed the aide when to "clock out" based on her location at the patient's home, and any additional pay required the aide to separately call in and submit a paper "duty sheet" for after-the-fact authorization. Friedman Decl., Ex. 58 (GC HHAX Patient Notes, 43918332).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. SWHNY therefore denies them. It is denied that the HHAX records attached as Ex. 58 to the Friedman Declaration establish that the stated process had been adopted generally by GreatCare when an aide worked beyond her hours. In fact, this exhibit establishes nothing more than a single circumstance in which Great Care recommended to an aide that she "clock out when she is**

**at patient home and…request a note [from] [the doctor] for possible overtime." Ex. 58 to Friedman Decl. Because the notes regarding this single incident – the only record cited in this Paragraph – do not in any way support this factual statement, it fails to meet the fundamental requirements of Rule 56.1.**

35. GreatCare did not produce EVV records from GreatCare's telephone clocking-in and clocking-out system. Friedman Decl. ¶ 61.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, GreatCare admits them.**

36. GreatCare did not provide EVV data from HHAX or any other source. Instead, GreatCare produced only paper timesheets for some Plaintiffs for some time periods. *Id*.; Friedman Decl., Ex. 59 (Summ. of Missing Pay. and Time Recs.); *see also* Ex. 60 (Sample Live-In Timesheets, GC 000458-000459, 000476-000477).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. The evidentiary record includes time sheets and electronic time records produced by GreatCare and received pursuant to third party subpoenas.**

37. None of the paper timesheets produced by GreatCare were signed by Plaintiffs' care recipients. *Id*.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are therefore denied. Further responding, while the cited timesheets are not signed by Plaintiffs' care recipients, these timesheets do not require that the care recipients sign them and, in fact,**

**lack any designated place for the care recipients to sign them. <u>See</u> GC000458-000459, 000476-000477. Further responding, Plaintiffs' citation to only 4 pages of timesheets and to a summary of missing timesheets do not support that none of the paper timesheets produced in this matter were signed.**

38. The paper timesheets produced by GreatCare all indicate meal and sleep breaks that Plaintiffs did not actually receive. *Id.*; *see, e.g.,* Friedman Decl., Ex. 18 (Z. Li Dep. 60:10-61:6).

**<u>RESPONSE:</u> Denied. Contrary to Plaintiffs' statement that these timesheets "all indicated meal and sleep breaks that Plaintiffs did not actually receive," the four sets of timesheets cited within this Paragraph directly contradict this statement, as they contain affirmative statements by Plaintiffs that they did in fact receive three meal breaks, "5 CONSECUTIVE UNINTERRUPTED HOURS OF SLEEP" and "ADEQUATE SLEEPING FACILITIES." <u>See</u>, <u>e.g.</u>, GC 000458-000459, 000476-000477 (capital letters in original). Furthermore, Plaintiffs must sign these timesheets, certify that the hours logged – including sleep and meal hours – "are accurate and complete," and acknowledge the terms of the "Sleep and Meal Period Agreement for 24-hour Caregivers." <u>See</u>, <u>e.g.</u>, GC 03.01.2025 000398-000416and GC 03.01.2025 000168-000214 (sample timesheets).[6] Further, as part of the Home Care Worker Agreement (or HCWA) signed by each Plaintiff, they agreed that to the extent they did <u>not</u> receive 5 hours of sleep or 3 one hour meal breaks, they were to report this to their coordinator/supervisor at GreatCare "immediately after each 24 hour shift." <u>See</u> GC 08.04.2025 012197, GC 07.28.2025 003054 (sample HCWAs).[7] Plaintiffs' Rule 56.1 Statement**

[6] These timesheets are included within Ex. 23 (GC 03.01.2025 000398-000416) and Ex. 24 (GC 03.01.2025 000168-000214) to the Grajek Oct. Decl.

[7] These documents are included in Ex. 29 to the Grajek Oct., which is a collection of Home Care Worker Agreements signed by the Plaintiffs.

**does not cite to any such reports by the Plaintiffs, and none exist in the evidentiary record. In fact, Plaintiffs regularly declared in writing that "for all the past live-in cases [she] accepted from GreatCare, [she] received the following accommodations every day since [her] first working day: (a) 3 hours of mealtime in total for a day, (b) 5 consecutive and uninterrupted sleeping hours every night, and (c) adequate sleeping facilities that are provided by the patient(s)." See, e.g., GC 07.28.2025 003363, and GC 03.01.2025 000040.**[8]

**b. Payroll records**

39. GreatCare produced paystubs and payroll registers that for each pay period that was produced reflect the aide's pay rate, hours paid, number of live-in shifts, gross wages, deductions, taxes, and net pay. *See* Ex. 61 (Sample Paystub and Payroll Register, GC 003060, 003070, 003215–003216).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, SWHNY admits them.**

40. GreatCare also produced spreadsheets that show, for each pay period that was produced, the aide's pay rate, hours paid, and pay amount versus the "billed rate" to the MLTC ("billing vs. payroll reports"). *See* Friedman Decl. Ex. 62 (Sample Billing vs. Payroll Report).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Further responding, the single document cited to by Plaintiffs in this Paragraph is a HHAX spreadsheet that is neither bates labeled nor contains any indication that it was produced by**

[8] These Declaration Letters are included in Ex. 28 to the Grajek Oct. Decl.

**GreatCare. Therefore, upon information and belief, SWHNY denies these averments.**

41. For Plaintiffs Zhu H.L. Lin, Li Chen, Mei F. Chen, Xiu F. Chen, Hui Li, Hui X. Ruan, Mu Z. Zhang, and Xiu X. Zhu, GreatCare also produced check register spreadsheets that show, for time periods produced, total amounts paid, but not rate of pay, or number of live-in or hourly shifts performed, and do not distinguish between hourly work and live-in shifts; the check register spreadsheets also omit large periods of time. *See, e.g.,* Friedman Decl. Ex. 63 (Sample Check Register).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Further responding, the single document cited to by Plaintiffs in this Paragraph is a spreadsheet that is neither bates labeled nor contains any indication that it was produced by GreatCare. Therefore, upon information and belief, SWHNY denies these averments.**

42. Information sufficient to reconstruct the precise hours worked by Plaintiffs and their weekly total pay was obtained by serving a subpoena on HHAX. Friedman Decl. ¶ 67.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, GreatCare denies them. Further responding, this Paragraph represents a legal conclusion regarding the sufficiency of evidence that is improper in a Rule 56.1 Statement. This "fact" is further improper because Plaintiffs fail to cite any document or testimony that supports it, and a declaration from Plaintiffs' counsel is hardly evidence.**

**c. Missing or incomplete records about Plaintiffs**

43. GreatCare produced no timesheets for Plaintiff Hei Li and produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately two work weeks that

Ms. Li worked 24-hour, "live-in" shifts. Friedman Decl. Ex. 59 (Summ. of Missing Pay. and Time Recs.).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced certain payroll register, paystubs, and billing documents about the Plaintiffs. The remaining averments are denied. Further responding, this specific fact is not material to any portion of Plaintiffs' motion for summary judgment and therefore violates Local Rule 56.1. It is clear that Plaintiffs included this fact and the others in subsection III(c) ("Missing or incomplete records about Plaintiffs") to suggest that an adverse inference should be issued against GreatCare. However, that argument was already considered and rejected by the Court in its September 1, 2026, Opinion and Order on Plaintiffs' Motion for Rule 37 Sanctions [ECF 274]. This fact therefore is wholly immaterial to Plaintiff's motion for summary judgment and should be rejected. Further, this section of Plaintiffs' Rule 56.1 represents an obvious contradiction. In their motion, Plaintiffs seek summary judgment as to damages because they possess sufficient, undisputed information to reconstruct Plaintiffs' time records. However, this entire section of the Rule 56.1 Statement suggests that Plaintiffs are unable to do so because GreatCare failed to produce necessary timesheets, payroll registers, and paystubs.**

44. For Plaintiff Zhu H.L. Lin, GreatCare produced paper timesheets only for November 16, 2019 through March 12, 2021, omitting approximately 169 work weeks that Ms. Lin worked 24-hour, "live-in" shifts. Friedman Decl. Ex. 59 (Summ. of Missing Pay. and Time Recs.).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

45. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 115 work weeks that Ms. Lin worked 24-hour, "live-in" shifts. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paystubs and billing/payroll reports regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

46. GreatCare produced no timesheets or payroll records for Li Chen. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, they are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

47. GreatCare produced no timesheets for Xiu F. Chen and produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately three work weeks

that Ms. Chen worked 24-hour, “live-in” shifts. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers, paystubs and billing/payroll reports regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

48. GreatCare produced no timesheets for Mei F. Chen and produced a payroll register that omitted approximately three work weeks that Ms. Chen worked 24-hour, “live-in” shifts. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

49. GreatCare produced no timesheets or payroll records for Hui He. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, they are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

50. GreatCare produced no timesheets for Hui Li and produced a payroll register that omitted approximately 36 work weeks that Ms. Li worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

51. For Plaintiff Zhan J. Li, GreatCare produced paper timesheets only for late 2019 through early 2021, omitting approximately 165 work weeks. *Id*.

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

52. GreatCare also produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately two work weeks that Ms. Li worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers, paystubs, and billing/payroll reports regarding this Plaintiff. The**

**remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

53. For Plaintiff Hui X. Ruan, GreatCare produced paper timesheets only for November 8, 2019 through December 5, 2021, omitting approximately 156 work weeks. *Id.*

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

54. GreatCare also produced a payroll register, paystubs, and billing vs. payroll reports that omitted approximately 72 work weeks that Ms. Ruan worked 24-hour, "live-in" shifts. *Id.*

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers, paystubs, and billing/payroll reports regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

55. For Plaintiff Jian R. Xiao, GreatCare produced paper timesheets omitting approximately six work weeks. *Id.*

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

56. GreatCare also produced paystubs that omitted approximately one work week that Ms. Xiao worked 24-hour, "live-in" shifts. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paystubs regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

57. For Plaintiff Mei Z. Xiao, GreatCare produced paper timesheets only for January 2020 through May 2023, omitting approximately 87 work weeks. *Id*.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

58. GreatCare also produced a payroll register and paystubs that omitted

approximately 15 work weeks that Ms. Xiao worked 24-hour, "live-in" shifts. *Id.*

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll registers and paystubs regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

59. For Plaintiff Mu Z. Zhang, GreatCare produced paper timesheets only for January 3, 2020 through March 19, 2021, omitting approximately 120 work weeks. *Id.*

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

60. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 56 work weeks that Ms. Zhang worked 24-hour, "live-in" shifts. *Id.*

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paystubs and billing/payroll reports regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph**

**43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

61. For Plaintiff Bi Y. Zheng, GreatCare produced full payroll records but no timesheets. *Id*.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced payroll records regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

62. For Plaintiff Xiu X. Zhu, GreatCare produced paper timesheets only for December 6, 2019 through February 12, 2021, omitting approximately 110 work weeks. *Id*.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paper timesheets regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

**RESPONSE:**

63. GreatCare also produced paystubs and billing vs. payroll reports that omitted approximately 48 work weeks that Ms. Zhu worked 24-hour, "live-in" shifts. *Id*.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon**

**information and belief, admitted in part, denied in part. It is admitted only that GreatCare produced paystubs and billing/payroll reports regarding this Plaintiff. The remaining averments are denied. Further responding, SWHNY's statement in response to Paragraph 43, regarding the immateriality of the facts in subsection III(c), applies equally to this paragraph.**

## IV. Plaintiffs were paid less than the minimum wage and received no overtime and spread of hours pay during the relevant period of time covered by the amended complaint

64. When Plaintiffs worked a 24-hour, "live-in" shift, they were paid for only 13 hours. Friedman Decl., Ex. 64 (Workman Decl. ¶ 20(a)); *see also* Exs. 134-147 (HHAX Payroll Recs. for Plaintiffs).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted in part, denied in part. It is admitted, upon information and belief, that GreatCare paid Plaintiffs for 13 hours of work during each 24-hour live-in shift. The remaining averments are denied, in part because the portions of the record cited herein do not support the sweeping statement that all fourteen Plaintiffs were paid in this manner for every live-in shift they ever worked. SWHNY also denies that Plaintiffs worked all 24 hours of each live-in shift, as demonstrated by Plaintiffs' timesheets. See, e.g., GC 03.01.2025 000398-000416; GC 03.01.2025 000168-000214.[9] Plaintiffs, in fact, explicitly attested in writing that they had been paid properly and fully for the hours they had actually worked. See, e.g., GC 03.01.2025 000032, GC 07.28.2025 003363, and GC 03.01.2025**

---

[9] Exs. 23 and 24 to the Grajek Oct. Decl.

**000040.[10] In addition, to the extent Plaintiffs believes they were being underpaid or not paid for the hours they had worked, they were required (by the terms of the Home Care Worker Agreement they all signed) to "report to [their] Coordinator/Supervisor, in writing, immediately upon receipt of my paycheck for hours worked, if I believe I was paid improperly or not paid for all hours worked." See, e.g., GC 03.01.2025 000029, 000051, and 000047.[11] The evidentiary record is devoid of even one of these written reports. Further, each Plaintiff signed a series of written agreements in which they acknowledged they would not be paid for the hours during which they were sleeping or taking meal breaks. See, e.g., GC 08.04.2025 012199-012200, GC 07.28.2025 003057-003058, and GC 03.01.2025 000033-000034,[12] which are "'Live-In' or 24-Hour Caregivers Agreements (the "Caregivers Agreement") signed by various Plaintiffs ("Caregivers who accept 24-hour cases will be paid for all hours worked on each 24-hour/live-in shift. As stated above, however, during each 24-hour shift, it is expected that Caregivers will only be required to work for 13 hours."). Further, in the HCWA, Plaintiffs specifically acknowledged and agreed that for each 24 hour live-in shift they worked, they would be paid by GreatCare for the 13 hours they worked and would receive 8 hours of sleep time and 3 one hour duty-free meal times for which they would not be paid. See GC 07.28.2025 003362, GC 03.01.2025 000039, and GC 08.04.2025 008373.[13]**

**Furthermore, payment for 13 hours of work during a 24-hour live-in shift aligns with applicable statutory guidance in the Fair Labor Standards Act, the requirements of 12 NYCRR § 142-2.1(b), and the Miscellaneous Industries and Occupations Minimum Wage**

10 Id. at Ex. 29.
11 See Ex. 32 to the Oct. Grajek Decl.
12 Id. at Ex. 30, which is a compilation of 'Live-In' or 24-Hour Caregivers Agreements executed by the Plaintiffs.
13 Id. at Ex. 29.

**Order that interprets and clarifies it.[14] ("Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938…for a home care aide who works a shift of 24 hours or more"); id., see also March 26, 2019 Court of Appeals Decision[15] (wherein the New York State Department of Labor ("NYSDOL") reaffirmed home care agencies are only required to pay home healthcare aides on overnight, 24-hour shifts (like Plaintiffs) for 13 hours out of a 24-hour shift, as long as those aides receive uninterrupted meal and sleep periods.) The remaining averments are denied, including any suggestion that SWHNY employed Plaintiffs and/or were responsible for controlling or paying their wages.**

65. None of the Plaintiffs were compensated at or above the basic state minimum wage rate for all 24-hours of their "live-in" shifts. *Id.* at ¶ 20(b).

**SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are therefore denied. SWHNY denies that Plaintiffs were entitled to payment for all 24 hours of their live-in shifts because Plaintiffs worked only 13 hours during each shift. See, e.g., GC 03.01.2025 000398-000416, 000168-00021 and GC 07.28.2025 004583-004636.[16] Plaintiffs, in fact, acknowledged in writing on multiple occasions that they knew they would not be paid for all 24 hours of each shift. See GC 08.04.2025 012199-012200, GC 07.28.2025 003057-003058, GC 03.01.2025 000033-000034, 000039-000040, and GC 07.28.2025 003407-003408 (collection of Caregivers Agreements);[17] GC 08.04.2025 012197, 008373, 008454 and 009078, GC 07.28.2025 003054,**

---

14 See https://forms.labor.ny.gov/WP/CR142.pdf
15 A copy of the March 26, 2019 Court of Appeals Decision is available at this link.
16 See Exs. 23 and 25 to the Grajek Oct. Decl.
17 Id. at Ex. 30.

**GC 03.01.2025 000030, 000039 (collection of HCWAs signed by various Plaintiffs).**[18] **The remaining averments are denied, including that Plaintiffs were not compensated at or above the basic state minimum wage rate for the hours they actually worked during "live-in" shifts. Further responding, Plaintiffs attempt to support this sweeping and conclusory statement using only the declaration of an employee of the firm representing Plaintiffs. A declaration of an individual employed by Plaintiffs' counsel is not record evidence, and this Paragraph violates the requirements of Local Rule 56.1 as a result.**

66. None of the Plaintiffs were compensated at the Wage Parity Act's minimum rate of home care aide total compensation for all 24-hours of their "live-in" shifts. *Id. at* ¶ 20(c).

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are therefore denied. SWHNY denies that Plaintiffs were entitled to payment for all 24 hours of their live-in shifts. Plaintiffs worked only 13 hours of each shift and, in fact, acknowledged in writing on multiple occasions that they would not be paid for all 24 hours of each shift. See citations included in Response to Paragraph 65. The remaining averments are denied, including that Plaintiffs were not compensated at or above the Wage Parity Act's minimum wage rate for the hours they actually worked during "live-in" shifts. Further responding, Plaintiffs attempt to support this sweeping and conclusory statement using only the declaration of an employee of the firm representing Plaintiffs. A declaration of an individual employed by Plaintiffs' counsel is not record evidence, and this Paragraph violates the requirements of Local Rule 56.1 as a result.**

67. GreatCare produced no evidence that Plaintiffs received any benefits to meet the

---

18 Id. at Ex. 29.

benefit portion of the minimum rate of home care aide total compensation required by the Wage Parity Act. Friedman Decl. ¶ 69.

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. SWHNY denies that Plaintiffs were not compensated by GreatCare in a manner that met the benefit portion of the minimum rate of home care aide total compensation required by the Wage Parity Act. Further responding, this Paragraph represents a legal conclusion that is improper in a Rule 56.1 Statement. This "fact" is further improper because Plaintiffs fail to cite any document or testimony that supports it, and a declaration from Plaintiffs' counsel is hardly evidence.**

68. As a general matter, Plaintiffs did not receive one additional hour's pay at the basic minimum hourly wage rate whenever they worked a 24-hour, "live-in" shift or any other shift where their spread of hours exceeded 10 hours. Friedman Decl., Ex. 64 (Workman Decl ¶ 20(d).

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. SWHNY further denies this general fact because the only "evidence" cited in support of it is a declaration from Scott Workman, an employee of the firm representing Plaintiffs. Because Mr. Workman's declaration is not evidence, this Paragraph violates the requirements of Local Rule 56.1(d), which requires that each statement "must be followed by citation to evidence that would be admissible[.]" Furthermore, Plaintiffs cite to paragraph 20(d) of Mr. Workman's Declaration in support of this fact, but his declaration ends with paragraph 16 and contains no paragraph 20(d).**

69. As a general matter, Plaintiffs never received any overtime pay when they worked more than 40 hours per week. *Id.* at ¶ 20(e).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. It would be impossible for SWHNY to know whether Plaintiffs "as a general matter" never, not once, received overtime pay when they worked more than 40 hours per week. Thus, SWHNY denies them upon information and belief. Further responding, SWHNY did not employ the Defendants, so it rejects any obligation to pay Plaintiffs directly for overtime hours worked in service of SWHNY members. See SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 26-80; Glapa Dep (Jan. 26, 2026)[19] 199:25-200:16 ("we [SWHNY] don't employ the aides. We [SNHNY] manage the care for the member [and] set the care plan.") This Paragraph also violates Local Rule 56.1(d) because it cites only to the declaration of Scott Workman, an employee of the firm representing Plaintiffs, and Mr. Workman's statement is not evidence. Even if it was, Plaintiffs' citation to paragraph 20(e) cannot support this averment because Mr. Workman's Declaration has no paragraph 20(e).**

70. Plaintiffs did not obtain five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks per shift. *See, e.g.,* Friedman Decl., Ex. 56 (Zhang Dep. 93:7–24); Ex. 27 (Zhang Decl. ¶ 25); Ex. 54 (Xiu F. Chen Dep. 59:22–60:7); Ex. 84 (Xiu F. Chen Decl. ¶¶ 21–22); *see* infra ¶¶ 72–240.

**SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. In fact, Plaintiffs regularly and consistently certified to GreatCare that they had**

[19] Excerpts from the Glapa Dep. (Jan. 26, 2026) are attached as Ex. 35 to the Grajek Oct. Decl.

**obtained five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks during each shift. See, e.g., GC 03.01.2025 000398-000416, GC 03.01.2025 000168-000214, GC 07.28.2025 004583-004636 (timesheets in which various Plaintiffs affirmed they received three meal breaks and 5 uninterrupted hours of sleep and certified that the hours logged – including sleep and meal hours – were "accurate and complete");[20] GC 08.04.2025 012198, GC 07.28.2025 003056, GC 03.01.2025 000032, 0000440 (written declarations in which various Plaintiffs certified that they had received 3 hours of mealtime, 5 uninterrupted hours of sleep, and adequate sleeping facilities "every day since my first working day" with GreatCare).[21] Furthermore, in the Home Care Worker Agreements, Plaintiffs agreed in writing that to the extent they did not receive 5 uninterrupted hours of sleep and 3 one hour meal breaks, they were to report this to their Coordinator/Supervisor at GreatCare "immediately after each 24 hour shift." See, e.g., GC 08.04.2025 012197, 008373 and 008454, GC 07.28.2025 003054, GC 03.01.2025 000030 and 000039, GC 07.28.2025 00362.[22] Plaintiffs failed to cite to any such reports in this Paragraph, and none of the cited testimony involves Plaintiffs claiming that they did not receive their breaks. In fact, nowhere in Plaintiffs' Rule 56.1 Statement is there a citation to a record or to testimony in which a Plaintiff claims she ever made such a request.**

71. Whenever Plaintiffs worked a 24-hour, "live-in" shift, Plaintiffs had care duties that prevented Plaintiffs from obtaining adequate sleep and meal breaks. *Id*.

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments. Upon information and belief, they are denied. By way of further**

[20] See Glapa Oct. Decl. at Exs. 23, 24, and 25.
[21] Id. at Ex. 28.
[22] Id. at Ex. 29.

**denial, see SWHNY's Response to Paragraph 70, which catalogs all of the ways in which Plaintiffs regularly and consistently certified that they had obtained adequate sleep and meal breaks. Furthermore, Plaintiffs have failed to cite to any record evidence that would support the conclusion that none of the 14 Plaintiffs ever obtained sleep and meal breaks during the thousands of live-in shifts they worked. For that reason, this Paragraph violates the requirements of Rule 56.1(d) and must be stricken.**

72. P.C. was a "patient" of GreatCare and member of CenterLight, who authorized Mr. C. for 24-hour "live-in" services from no later than August 1, 2015 through February 28, 2021. Friedman Decl. Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 002450-002485); Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

73. During that period, Mr. C. received 24-hour, "live-in" care services from Plaintiff Hei Li three days per week. However, for nearly the entire time during the relevant period, only one day per week was through GreatCare. The other two days that Ms. Li provided services to Mr. C. were through another, non-defendant home care services agency. Friedman Decl., Ex. 66 (Hei Li Decl. ¶¶ 8-9); Ex. 35 (CL Adms. No. 44); *see, e.g.,* Ex. 65 (CL Auth. Recs., CenterLight Confid. 002450, 002475); Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003630, CenterLight001114).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the**

**extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

74. Through GreatCare, Ms. Li provided 24-hour, "live-in" care services to Mr. C. over 182 "live-in" shifts. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

75. CenterLight, through its nurse Qi Ding, assessed Mr. C. on a near-monthly basis, conducting both semi-annual assessments and interim visits. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight Confid. 003326, 003336, 003346, 003356).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

76. Nurse Ding repeatedly and consistently documented that Mr. C. had left-side weakness and ambulated with an unsteady gait and poor balance. *See, e.g., id.* at 003099, 003335; Friedman Decl., Ex. 35 (CL Adms. Nos. 35-36).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the**

**extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

77. As a result of his left-side hemiplegia, poor balance, and unsteady gait, Nurse Ding identified Mr. C. as at high risk for falls. Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight, Confid. 003194, 003238, 003272); Ex. 35 (CL Adms. No. 37).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

78. Across assessments and visits, Nurse Ding repeatedly documented that Mr. C. walked with a cane and required the assistance or supervision of another person to ambulate, and required supervision to transfer and to stand up from a seated position. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs., CenterLight Confid. 003335, 003345).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

79. Nurse Ding repeatedly and consistently documented that Mr. C. suffered intermittent dizziness, especially at night when changing positions. *See, e.g., id.* at 003115,

003132.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

80. Mr. C. did not sleep well at night and was often awake throughout the night. Friedman Decl., Ex. 3 (Hei Li Dep. 100:10-20); Ex. 66 (Hei Li Decl. ¶ 17, 19); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003205, 003249).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

81. Throughout the night, Mr. C. continuously drank soft drinks, ate multiple meals, and repeatedly asked Plaintiff Hei Li to cook for him. Friedman Decl., Ex. 66 (Hei Li Decl. ¶¶ 33, 35); Ex. 3 (Hei Li Dep. 102:12-18); Ex. 67 (W.Y. Letter); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003180, 003468, 003488, 003531, 003613, 003800); Ex. 35 (CL Adms. No. 40).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon**

**information and belief, they are denied.**

82. Mr. C. repeatedly got up to use the bathroom throughout the night, and could not control his urination or bowel movements. Friedman Decl., Ex. 35 (CL Adms. Nos. 32-33); Ex. 3 (Hei Li Dep. 65:2-6, 102:12-16); Ex. 66 (Hei Li Decl. ¶ 35); Ex. 67 (W.Y. Letter); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003185, 003205, 003215, 003224, 003376).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

83. Nurse Ding repeatedly documented that Mr. C. had benign prostatic hyperplasia and woke and got out of bed two to three times each night to urinate. Friedman Decl., Ex. 35 (CL Adms. Nos. 32-33); Ex. 38 (CL Ass. Recs., CenterLight Confid. 003160, 003180, 003205, 003224, 003249, 003376, 003386, 003396, 003498, 003521, 003580, 003603, 003613, 003642, 003652, 003677, 003697).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

84. Beginning in or around March 2021, CenterLight reduced P.C.'s authorized care from 24-hour, "live-in" care to under ten hours per day after assessing that Mr. C.'s wife could take over more of Mr. C.'s care. Friedman Decl., Ex. 68 (Coord. Note, CenterLight Conf.

003135); Ex. 69 (CenterLight Personal Care Aide Authorization Detail, CenterLight Confid. 2470, 2472); Ex. 3 (Hei Li Dep. 112:5-113:6).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

85. In or about October 2021, Mr. C. disenrolled from CenterLight, and effective November 1, 2021, he enrolled with non-defendant MLTC Centersplan. Friedman Decl., Ex. 70 (CenterLight A&G Appeal Record, CENTERLIGHT 002545); Ex. 1 (HHAX EVV Rec. for Hei Li).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members and non-defendant MLTC Centersplan. Upon information and belief, they are denied.**

86. Plaintiff Hei Li continued to work as Mr. C.'s home health aide under Centersplan, working six-hour shifts, until early January 2022. Friedman Decl., Ex. 1 (HHAX EVV Rec. for Hei Li)

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to non-defendant MLTC Centersplan.**

**Upon information and belief, they are denied.**

87. Plaintiff Hei Li did not receive five hours of continuous uninterrupted sleep or three-hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 3 (Hei Li Dep. 65:19-21); Ex. 66 (Hei Li Decl. ¶¶ 19, 22, 33); Ex. 67 (W.Y. Letter).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, they are denied. Further responding, Plaintiff Hei Li has not initiated any claim against SWHNY.**

88. K.N.W. was a "patient" of GreatCare and a member of CenterLight, who authorized Ms. W. for 24-hour, "live-in" care services. Friedman Decl., Ex. 71 (CL Ass. Recs. for K.N.W., NYSDOH 000969-000991).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

89. During the period covered by the Amended Complaint, Plaintiffs Li Chen and Zhan J. Li each provided 24-hour, "live-in" care services to K.N.W. over a total of 15 shifts. Additionally, Plaintiffs Xiu F. Chen and Plaintiff Lin also each provided one 24-hour, "live-in" care services to Ms. W.. Friedman Decl., Ex. 7 (HHAX EVV Recs. for L. Chen); Ex. 16 (HHAX EVV Recs. for Z. Li).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or**

**information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

90. CenterLight conducted an assessment of Ms. W. on June 10, 2016, when Ms. W. was age 88. Friedman Decl., Ex. 71 (CL Ass. Recs. for K.N.W., NYSDOH 000969-000991).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

91. CenterLight's assessment recorded a primary diagnosis of Alzheimer's disease along with cancer, diabetes mellitus, and chronic obstructive pulmonary disease; and that her cognitive skills for daily decision-making were severely impaired so that she was disoriented and confused, could not provide consent, and could not speak in sentences. Id. at 000970, 000973-000974.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

92. The assessment also recorded that Ms. W. had an unsteady gait exhibited daily and walked with a walker with extensive assistance; that she required maximal assistance for bathing, personal hygiene, upper-body dressing, and toilet transferring, total dependence for

lower-body dressing and toilet use, and extensive assistance for walking and locomotion; that she was incontinent of both bladder and bowel with no control present and used pull-up briefs; and that she could not be left alone safely. *Id.*

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

93. CenterLight conducted another assessment of Ms. W. on December 8, 2016 that further recorded that Ms. W.'s aide changed her diaper four to five times during the daytime and two times during the night. *Id.* at 001926.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

94. None of the Plaintiffs who provided care services to Ms. W. were able to receive five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. *See, e.g.,* Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 49); Ex. 81 (Zhan J. Li Decl. ¶ 42).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these**

**paragraphs of Plaintiffs' Statement, which relate to CenterLight members. Upon information and belief, they are denied.**

95. S.K.C.-1 was a "patient" of GreatCare and, at varying times, a member of CenterLight and a member of SWHNY, who both authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 72 (SWHNY Auths. for S.K.C.-1, SWHNY 002548-002549); Exs. 4, 16, 30 (HHAX EVV Recs. for Lin, Z. Li, Zhu).

**RESPONSE: Admitted in part, denied in part. It is admitted only that S.K.C.-1 was enrolled in a Medicaid Managed Long Term Care (MLTC) Plan provided by SWHNY and was authorized for 24-hour, live-in care as of July 1, 2016. See SWHNY 002548-002549. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those regarding CenterLight. Upon information and belief, they are denied.**

96. Ms. C. was a member of CenterLight from on or around March 7, 2016 to approximately June 2016 and a member of SWHNY from approximately July 2, 2016 through March 8, 2021. *Id.*

**RESPONSE: Admitted in part, denied in part. It is admitted only that S.K.C.-1 was enrolled in a MLTC Plan provided by SWHNY between July 1, 2016 and March 8, 2021. Id. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those regarding CenterLight. Upon information and belief, they are denied. In addition, neither SWHNY 002548-002549 nor the HHAX records attached as Exs. 4, 16, 30 to the Friedman Decl. establish the period of time that this member was enrolled with SWHNY. This paragraph therefore violates the requirements of Local Rule 56.1(d).**

**Further responding, any claims for violation of the Fair Labor Standards Act ("FLSA") relating to member S.K.C.-1 are barred by the applicable statutes of limitations because S.K.C.-1 ceased being a SWHNY member more than two years prior to Plaintiffs' commencement of this action against SWHNY on August 21, 2025. <u>See</u> 29 U.S.C. §255(a) (FLSA claims have a two year statute of limitations for unpaid minimum wages or unpaid overtime compensation claims, or three years if violations committed "willfully").[23] Similarly, any claims for violation of the New York Labor Law ("NYLL") and/or the New York Home Care Worker Wage Parity Act ("WPA") that accrued care prior to August 18, 2019 are time-barred. N.Y. Labor Law §§ 198(3), 663(3) (NYLL and WPA claims have six year statutes of limitations).**

97. During the period covered by the Amended Complaint, Ms. C. received 24-hour, "live-in" care services from Plaintiffs Zhu H.L. Lin, Xiu X. Zhu, Zhan J. Li for over a total of 1,206 shifts. *Id.*

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that S.K.C.-1 at times received 24-hour, live-in services while a member of SWHNY. <u>See</u>, <u>e.g.</u>, HHAX records attached as Ex. 4, 16, and 30 to the Friedman Decl. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those regarding CenterLight and those relating to whether these individual Plaintiffs actually provided the services alleged. They are denied accordingly. Further responding, the in-home shifts referred to in this paragraph occurred between July 2, 2016 and March 8, 2021. <u>Id.</u> Thus, any FLSA claim relating to services that**

---

23 Plaintiffs' Rule 56.1 Statement is devoid of any fact that would support a finding that SWHNY violated the FLSA willfully. This is unsurprising, as SWHNY did not employ the Plaintiffs and thus could not be liable for violation of the FLSA. Therefore, the two year statute of limitations is rightly applied.

**occurred prior to August 21, 2023 is time-barred, and any WPA or NYLL claim relating to services that occurred prior to August 18, 2019 are also barred. See also Response to Paragraph 96.**

98. After Ms. C.'s enrollment with SWHNY, SWHNY sent nurses to conduct comprehensive in-home assessments of Ms. C. on December 13, 2016, May 31, 2017, November 9, 2017, May 17, 2018, November 19, 2018, May 9, 2019, and November 10, 2019. Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 001982, 002009, 002047, 002069, 002125, 002194, 002266, 002325).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY sent nurses to conduct assessments of S.K.C.-1 on the dates listed in this paragraph. See SWHNY 001982, 002009, 002047, 002069, 002125, 002194, 002266, 002325. The remaining averments are denied as incomplete or incorrect characterizations of the assessment reports cited to within this paragraph.**

99. In each of SWHNY's comprehensive assessments from December 13, 2016 through November 10, 2019, SWHNY recorded that Ms. C.'s primary diagnosis was dementia; that Ms. C. ambulated with an unsteady gait and required extensive to maximal assistance with walking; that Ms. C. had a diagnosis of dizziness and giddiness for which she was receiving active treatment; that Ms. C. required extensive to maximal assistance to transfer on and off the toilet or commode; that Ms. C. was frequently incontinent of urine on a daily basis and wore pads or briefs. *See, e.g.,* Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 001986-001988, 002000, 002070, 002129-002131, 002269-002271).

**RESPONSE: Admitted in part, denied in part. It is admitted only that these specific diagnoses and observations were made within the assessments cited within this Paragraph.**

**<u>Id.</u> The remaining averments are denied as incomplete or incorrect characterizations of the assessment reports cited to within this paragraph.**

100. At its November 9, 2017 assessment, SWHNY assessed Ms. C. at medium risk for falls. *Id.* at 002030.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the November 10, 2019 assessment notes a diagnosis of a medium risk for falls. <u>See</u> SWHNY 002030. The remaining averments are denied as incomplete or incorrect characterizations of the assessment report cited to within this paragraph.**

101. SWHNY's November 10, 2019 comprehensive assessment recorded that Ms. C. had a diagnosis of fecal urgency. *Id.* at 002143.

**<u>RESPONSE:</u> Admitted.**

102. In its May 19, 2016, December 13, 2016, November 9, 2017, November 19, 2018, May 9, 2019, and November 10, 2019 assessments, SWHNY recorded that Ms. C. could not be left alone safely. *Id.* at 002003, 002009, 002070, 002146, NYSDOH 000926.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that these assessments indicate that this member could not be left alone safely. The remaining averments are denied as incomplete or incorrect characterizations of the assessment reports cited to within this paragraph.**

103. Because Ms. C. was awake at night, Plaintiffs had to attend to her throughout the night, including repeated assistance to go to the toilet. *See, e.g.,* Friedman Decl., Ex. 53 (Lin Dep. 60:14-22); Ex. 73 (X. Zhu Dep. 34:11-20, 122:11-12, 123:21-24); Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, Section I, SWHNY002009); Ex. 5 (Lin Decl. ¶¶ 21-23); Ex. 31 (X. Zhu Decl. ¶¶ 15-17).

**<u>RESPONSE</u>: Admitted in part, denied in part. It is admitted only that the December 13, 2016 assessment (SWHNY002009) notes that member S.K.C.-1 "is up at night." The remaining averments are denied, including that any "Plaintiffs" other than Lin and Zhu attended to this member. It is further denied that S.K.C.-1 required care that prevented Plaintiffs Lin and Zhu from obtaining their sleep and meal breaks, as these specific Plaintiffs regularly and consistently verified to their employer, GreatCare, that they received these breaks on every shift. <u>See</u> GC 03.01.2025 000398-000416 and GC 07.28.2025 004583-004636 (timesheets); GC 07.28.2025 003054 and GC 03.01.2025 000039 (HCWAs); GC 07.28.2025 003056 and GC 03.01.2025 000040 (Declaration Letters).[24] Further responding, the deposition testimony cited by Plaintiffs herein does not support these averments in any manner because neither Plaintiff identifies member S.K.C.-1 by name or through any other personal information in the cited pages of their depositions (or anywhere else in their depositions). <u>See</u> Lin Dep. (Jan. 16, 2026) 60:14-22 and X. Zhu Dep. (Jan. 19, 2026) 34:11-20, 122:11-12, 123:21-24. It is also denied that the Lin and X. Zhu Declarations refer specifically to member S.K.C.-1 by name or by this abbreviation in any manner. <u>See</u> Ex. 5 (Lin Decl. ¶¶ 21-23) and Ex. 31 (X. Zhu Decl. ¶¶ 15-17) to the Friedman Decl.[25] Further responding, claims by Plaintiffs Lin and X. Zhu are time-barred for the reasons identified in Paragraphs 96 and 97 above.**

104. None of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep on any of their shifts. Friedman Decl., Ex. 53 (Lin Dep. 123:5-6); Ex. 73 (X. Zhu Dep. 34:11-20, 123:21-24); Ex. 31 (X. Zhu Decl. ¶ 18); Ex. 5 (Lin

[24] <u>See</u> Exs. 23, 25, 28, and 29 to the Grajek Oct. Decl.

[25] These declarations refer to an individual, "Ms. C.S.K." but not to any individual referred to as "S.K.C.-1."

Decl. ¶¶ 22-23).

**SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. It is denied that any Plaintiff other than Z. Lin and X. Zhu provided home services to "Ms. C," and Plaintiffs fail to cite to any authority to the contrary. This averment is specifically denied as contrary to the record evidence because these two Plaintiffs consistently certified to GreatCare in their timesheets and through declaration letters that they obtained five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks during each of their shifts. See GC 07.28.2025 004583-004636 and GC 03.01.2025 000398-000416.[26] Furthermore, in the Home Care Worker Agreements, these Plaintiffs agreed in writing that to the extent they did not receive 5 uninterrupted hours of sleep and 3 one hour meal times, they were to report this to GreatCare "immediately after each 24 hour shift." GC 03.01.2025 000039 and GC 08.04.2025 012197.[27] Plaintiffs have not cited to any such reports within this Paragraph or elsewhere within their Rule 56.1 Statement. Further responding, wage and hour claims by Plaintiffs Lin and X. Zhu are time-barred for the reasons identified in Paragraphs 96 and 97 above. See Ex. 5 (Lin Decl. ¶¶ 17) and Ex. 31 (X. Zhu Decl. ¶¶ 11) to the Friedman Decl. where these Plaintiffs admit they cared for this member from March 2016 through March 2021 (Lin) and between September 2017 and February 2021 (Xhu).**

105. None of the Plaintiffs assigned to provide care services to Ms. C. received three hours of duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 5 (Lin Decl. ¶

26 See Exs. 23 and 25 to the Grajek Oct. Decl.
27 Id. at Ex. 29.

30); Ex. 31 (X. Zhu Decl. ¶ 19); Ex. 81 (Zhan J. Li Decl. ¶ 42); Ex. 73 (X. Zhu Dep. 121:17-20).

**RESPONSE: Denied. SWHNY incorporates by references the denials and references to the record provided in response to Paragraph 104.**

106. S.M.C.D. was a "patient" of GreatCare and, at varying times, a member of non-defendant MLTC Senior Health Partners ("SHP") and Defendant SWHNY, who both authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001837-001838, 001847-001848); *see, e.g.,* Ex. 75 (SWHNY Care Plan for S.M.C.D., SWHNY 001937-1940).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the individual referred to as S.M.C.D. in Plaintiffs' Rule 56.1 Statement was a member of SWHNY as of November 1, 2016 and was authorized to receive "24/7 live-in" care. See SWHNY 001937-1940. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to non-party Senior Health Partners, and SWHNY denies them.**

107. Ms. C.D. was enrolled with non-defendant MLTC SHP until November 1, 2016 when she became a member of Defendant SWHNY. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001837-001838, 001847-001848); *see, e.g.,* Ex. 75 (SWHNY Care Plan for S.M.C.D., SWHNY 001937); Exs. 16, 21 (HHAX EVV Recs. for Z. Li, Ruan).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the individual referred to as S.M.C.D. was a member of SWHNY as of November 1, 2016 and was authorized to receive "24/7 live-in" care. See SWHNY 001937-001940. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to**

**non-party Senior Health Partners, and SWHNY denies them.**

108. During the period covered by the Amended Complaint, Plaintiffs Zhan J. Li and Hui X. Ruan each provided 24-hour, "live-in" services to Ms. C.D. for a total of 49 shifts. *Id.*

**RESPONSE: Admitted in part, denied in part. It is admitted only that HHAX records reflect that Plaintiff Li provided live-in services to SWHNY member S.M.C.D. on 11 occasions in November 2016. See Ex. 16 to the Friedman Decl. at pg. 2. It is further admitted that Plaintiff Ruan provided live-in home services to SWHNY member S.M.C.D. on 28 occasions during 2018 and 2019. Ex. 19 to the Friedman Decl. at pgs. 7-9. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to non-party Senior Health Partners, and SWHNY denies them. SWHNY further notes that all of the live-in shifts identified in this Paragraph occurred more than six (6) years prior to the filing of this action, and any claims for violation of the FLSA, NYLL, and/or WPA are time-barred. See Response to Paragraphs 96 and 97.**

109. SHP assessed Ms. C.D. in April 2015, and SWHNY conducted an assessment of her on October 17, 2016, April 23, 2017, October 16, 2018, and April 2, 2019. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001998-2019); Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001898-001918, NYSDOH 000732-000753, 000799-000820, 001701-001723).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY performed assessments of S.M.C.D. on October 17, 2016, April 23, 2017, October 16, 2018, and April 2, 2019. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including**

**those relating to non-party Senior Health Partners, and SWHNY denies them.**

110. SHP recorded that Ms. C.D. was moderately impaired in cognition; that she was frequently incontinent of urine and occasionally incontinent of bowel, with her incontinence care provided by her aide; that she ambulated indoors only with an assistive device and used a wheelchair outdoors; and that she required dependent, extensive assistance with her activities of daily living. Friedman Decl., Ex. 74-A (SHP Recs. for S.M.C.D., GSD-SHPHF001834, 001999, 002002-002003).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the cited records of non-party Senior Health Partners accurately reflect these averments. However, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to records and actions of a non-party over whom SWHNY has no control. Upon information and belief, they are denied.**

111. SWHNY recorded that Ms. C.D.'s primary diagnosis was dementia. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001913, 001915, 001937).

**RESPONSE: Admitted in part, denied in part. It is admitted only that dementia was noted as a "primary DX" in an assessment dated Oct. 17, 2016. See SWHNY001937-1940. The remaining averments are denied, including those that suggest the other assessments cited within this Paragraph record dementia as a "primary diagnosis." See SWHNY 001903, 001915.**

112. SWHNY recorded that Ms. C.D. had an unsteady gait; used a wheelchair; and required maximal assistance with bathing, dressing, walking, transferring, toileting, and eating. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs for S.M.C.D., SWHNY 001901-001903,

001939).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessments indicate Ms. C.D. experienced these specific issues in her day to day life. The remaining averments are denied as incomplete or incorrect characterizations of the assessments cited within this paragraph.**

113. Ms. C.D. was frequently incontinent of urine and occasionally incontinent of bowel; she rarely controlled her bowels; and her aide changed her pull-ups approximately six times per day. *See, e.g.,* Friedman Decl., Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., SWHNY 001903, NYSDOH 000804, 001684).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that these assessments reflect that S.M.C.D. was either "occasionally incontinent" or "frequently incontinent" with her bladder (compare SWHNY 001903 and NYSDOH 00737) and either "infrequently incontinent" or "occasionally incontinent" with her bowel (compare NYSDOH 00737 and NYSDOH 00804). It is further admitted that one of S.M.C.D.'s aides reported changing her pull-up diaper approximately six times a day and reported S.M.C.D. "rarely controls her bowels." SWHNY 001903. The remaining averments are denied as incomplete or incorrect characterizations of the assessments cited within this paragraph.**

114. Ms. C.D.'s assessors recorded that Ms. C.D. could not be left alone safely. Ex. 45 (SWHNY Ass. Recs. for S.M.C.D., NYSDOH 000753, 000798, 000820, 001723, 001745).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that within the "Service Needs" section of the cited assessments, the assessor answered "no" to the question, "can person be left alone safely?" <u>See</u> NYSDOH 000753, 000798, 000820, 001723, 001745. The remaining averments are denied as incomplete or incorrect characterizations of the**

**assessments cited within this paragraph.**

115. The Plaintiffs assigned to provide care services to Ms. C.D. never received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Ex. 100 (Ruan Decl. ¶ 21); Ex. 81 (Zhan J. Li Decl. ¶¶ 41, 42).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied. It is denied that any Plaintiff other than H. Ruan and Z. Li provided home services to "Ms. C.D.," and Plaintiffs fail to cite to any record to the contrary. This averment is specifically denied as contrary to the record evidence because these two Plaintiffs consistently certified to GreatCare in their timesheets and through written declarations that they obtained five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks during each of their shifts. See GC 08.04.2025 009725-009756 and GC 08.04.2025 008755-008760 and GC 03.01.2025 000163-000166;[28] see also GC GC 03.01.2025 000036 and GC 03.01.2025 000044.[29] Furthermore, in the Home Care Worker Agreements, these Plaintiffs agreed in writing that to the extent they did not receive 5 uninterrupted hours of sleep and 3 one hour meal times, they were to report this to their Coordinator/Supervisor at GreatCare "immediately after each 24 hour shift." GC change to GC 03.01.2025 000035 and 000043.[30] The record is devoid of any such written reports, and the dearth of such notice directly contradicts this statement. Furthermore, to support these averments, Plaintiffs rely exclusively on declaration of H. Ruan and Z. Li, which were drafted and executed by these Plaintiffs after discovery had closed. See Exs. 81 and 100 to**

28 See Exs. 27 and 26 to the Grajek Oct. Decl.
29 Id. at Ex. 28.
30 Ex. 29 to the Grajek Oct. Decl.

**the Friedman Decl. Plaintiffs fail to cite to any document, record, or deposition testimony that otherwise supports this averment. It is unclear, in fact, whether Plaintiff Ruan's declaration addresses Ms. C.D. at all because her declaration does not identify this member by name or through any other identifying information. Ex. 100 to the Friedman Decl. at ¶¶ 19-21. In addition, Ms. C.D. died in March 2021, so any claim for violation of the FLSA is time-barred. Ex. 81 to the Friedman Decl. at ¶ 36; <u>see</u> <u>also</u> Responses to Paragraphs 96 and 97.**

116. X.J.L. was a "patient" of GreatCare and member of SWHNY, who authorized Ms. L. for 24-hour, "live-in" care services. Friedman Decl., Ex. 76 (SWHNY Care Plan for X.J.L., SWHNY 003643-003644).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the individual referred to as X.J.L. in Plaintiffs' Rule 56.1 Statement was a member of SWHNY as of April 1, 2021 and was authorized to receive 24 hours of service, 7 days a week. <u>See</u> SWHNY 0003644. It is also admitted that the March 15, 2022 assessment (SWHNY 0003644-3649) confirms that GreatCare was authorized to provide these services to the member. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to GreatCare, and SWHNY denies them.**

117. Between April 11, 2023 and May 9, 2023, Plaintiff Hui X. Ruan worked 5 "live-in" shifts providing 24-hour care services to X.J.L., a member of SWH. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan).

**<u>RESPONSE:</u> Admitted.**

118. SWHNY conducted an assessment of Ms. L. on March 11, 2023, which recorded

that Ms. L., then age [REDACTED], had cognitive skills for daily decision-making that were severely impaired; had short-term and procedural memory problems, could not recognize family members or her aides, and was not self-directing; carried a primary diagnosis of Alzheimer's disease, along with coronary heart disease and anxiety; required maximal assistance with bathing, extensive assistance with lower-body dressing and toilet use, limited assistance with personal hygiene and upper-body dressing, and supervision or cueing with walking, locomotion, transferring, bed mobility, and eating; was totally dependent on others for meal preparation, housework, finances, shopping, and transportation; used a cane indoors and a wheelchair outdoors; was incontinent of bladder and wore pull-ups (including at night) that the aide changed on a toileting schedule established every 2-3 hours; and that she wandered daily, including indoor wandering at night. Friedman Decl., Ex. 50 (SWHNY Ass. Recs. for X.J.L., SWHNY 001634-001656).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that X-Treme Care, LLC performed an assessment on behalf of SWHNY on or about March 11, 2023. See SWHNY001634. It is further admitted that this Paragraph accurately summarizes the findings in this assessment apart from the following statements, which are incorrect or incomplete. It is denied that X.J.L. was "incontinent" because these records reflect she was "infrequently incontinent." SWHNY001639. It is denied X.J.L. "wore pull-ups (including at night) that the aide changed on a toileting scheduled established every 2-3 hours." To the contrary, the assessment states that while the aide was asked "to establish a toileting schedule Q2-3 hours," a scheduled toileting program was "not ordered and did not occur," and the cited assessment does not indicate the aide changed the member's pull-ups on an established schedule. SWHNY001630, 001647. The remaining averments are denied as incomplete or**

**incorrect characterizations of the assessment cited within this Paragraph.**

119. When providing 24-hour care services to Ms. L., Ms. Ruan was not able to obtain five hours of continuous, uninterrupted sleep or three completely duty-free hours of meal breaks. Friedman Decl., Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, denied as these statements in a post-deposition declaration are plainly contrary to the evidence of record. In fact, Plaintiff Ruan consistently certified to GreatCare through her timesheets and in a written declaration that she obtained five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks during each of their shifts. See GC 08.04.2025 009725-009756 and GC 03.01.2025 000036.[31] Furthermore, in the Home Care Worker Agreement, Plaintiff Ruan agreed in writing that to the extent she did not receive 5 uninterrupted hours of sleep and 3 one hour meal times, she was to report this to her Coordinator/Supervisor at GreatCare "immediately after each 24 hour shift." GC 03.01.2025 000035.[32] Plaintiffs did not cite to any such reports in their Rule 56.1 Statement, and the evidentiary record is devoid of any such written reports from Ms. Ruan. In addition, this averment lacks evidentiary support because Plaintiffs cite only to Plaintiff Ruan's declaration to support this averment, and Ms. L in not mentioned or identified in any way therein. See Ex. 100 to the Friedman Decl.**

120. SWHNY did not independently monitor or verify whether the aide received the legally required sleep and meal breaks and instead relied exclusively on GreatCare to come

[31] See Exs. 27 and 28 to the Grajek Oct. Decl.

[32] Id. at Ex. 29.

forward and report a sleep problem. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 10:21-19:4).

**Admitted in part, denied in part. It is admitted only that GreatCare, as Plaintiffs' employer, collected the Plaintiffs' timesheets, monitored and verified that the Plaintiffs received their sleep and meal breaks, and attested in writing to the New York State Department of Labor that it had complied with relevant wage and hour laws. B. Wang Dep. (Jan. 7, 2026) 130:22-25, 132:6-17; B. Wang Dep. (May 1, 2026) 142:14-21; 143:5-18; B. Wang Dep. (May 15, 2026) 78:2-80:22, 139:21-25; N. Glapa Dep. (Jan. 26, 2026) 189:4-191:16; P. Ouyang Dep. (Feb. 9, 2026) 34:5-35:16;[33] see also Annual Compliance Statement of Wage Parity, Hours and Expenses (LS-300 Forms) attested and executed by GreatCare;[34] see also SWHNY 000535-000536 (in which SWHNY requires, and Great Care agrees, to "comply with all State and Federal Laws and regulations related to the care and management of [SWHNY] Members" as part of the annual Provider Manual").[35] It is further admitted that SWHNY did not independently monitor Plaintiffs' meal and sleep breaks because Plaintiffs were not employed by SWHNY. See SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 26-80. Plaintiffs did, however, communicate with their employer, GreatCare, on a daily basis to confirm they had received these breaks. See, e.g., GC 03.01.2025 000040 (Declaration Letter); GC 07.28.2025 004583-004636 (daily timesheets); GC 08.04.2025 012197, GC 07.28.2025 003054, and GC 08.04.2025 008454 (HCWAs, which require Plaintiffs to report any instances in which they did not receive their sleep and meal breaks to GreatCare "immediately after each**

---

[33] The Grajek Oct. Decl. includes excerpts from the following depositions as Ex. 37 (B. Wang Dep. on Jan. 7, 2026), Ex. 38 (B. Wang Dep. on May 1, 2026), Ex. 39 (B. Wang Dep. on May 15, 2026), Ex. 35 (Nikia Glapa Dep. on Jan. 26, 2026), and Ex. 42 (P. Ouyang Dep. on Feb. 9, 2026)

[34] Id. at Ex. 31.

[35] Id. at Ex. 33.

**24 hour shift").**[36]

121. K.W.P. and P.C.P. were "patients" of GreatCare and members of SWHNY and SWHNY's predecessor organization Alphacare, who authorized Ms. and Mr. P. for 24-hour, "live-in" care services. Friedman Decl., Ex. 14, 16, 19 (HHAX EVV Recs. for Plaintiffs Hui Li, Z. Li, Ruan).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the individuals referred to as K.W.P. and P.C.P. in Plaintiffs' Rule 56.1 Statement were at times members of SWHNY. It is further admitted that the HHAX records cited within this Paragraph suggest that these individuals were formerly members of Alphacare. See Friedman Decl., Ex. 14, 16, 19. It is denied that the records cited herein reflect or confirm that Alphacare approved 24-hour, "live-in" care services for these Plaintiffs. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to Alphacare. SWHNY denies them.**

122. During the period covered by the Amended Complaint, Plaintiffs Hui Li, Zhan J. Li, and Hui X. Ruan each provided 24-hour, "live-in" services to K.W.P. and/or her husband P.C.P. over a total of 967 shifts. *Id*.

**RESPONSE: Admitted in part, denied in part. It is admitted only that the HHAX records cited within this Paragraph reflect that Plaintiffs Hui Li, Zhan J. Li, and Hui X. Ruan provided 24-hour, "live-in" services to K.W.P. and/or her husband P.C.P. approximately 477 times. See Exs. 14, 16, and 19 to the Friedman Decl. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the**

[36] See Ex. 28 (Declaration Letter), Ex. 25 (timesheets), and Ex. 29 (HCWAs) to the Grajek Oct. Decl.

**remaining averments contained in this paragraph of Plaintiffs' Statement, including those relating to Alphacare and live-in care provided to its members.**

123. K.W.P. was a member of non-defendant AlphaCare MLTC until approximately December 31, 2017 when AlphaCare merged into SWHNY and AlphaCare ceased to exist. *See* Magellan Health, Inc., *Magellan Health Closes on Acquisition of SWHNY* (Oct. 31, 2017); *see, e.g.,* Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P.); Ex. 78 (SWHNY Care Plan for K.W.P., SWHNY 004237); Ex. 14, 16, 18 (HHAX EVV Recs. for Hui Li, Z. Li, Ruan).

**RESPONSE: Admitted in part, denied in part. It is admitted only that K.W.P. was a SWHNY member as of January 1, 2018. See SWHNY004237. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to their truth, including those relating to Alphacare and to live-in care K.W.P. received when she was a member of Alphacare. SWHNY further denies that the article cited within this Paragraph establishes the period during which K.W.P. was an Alphacare member and/or the date when Alphacare and SWHNY merged. Accordingly, these averments are without the threshold evidentiary support required under Rule 56.1(d).**

124. AlphaCare sent a registered nurse to conduct assessments of K.W.P. and issued Person-Centered Service Plans effective July 2, 2014; January 26, 2015; April 26, 2016; September 20, 2016; February 22, 2017; March 27, 2017; and October 2, 2017. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003748, 003753, 003758, 003762, 003766, 003769, 003774).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these**

**paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare with regard to its members. Upon information and belief, they are denied.**

125. AlphaCare recorded that Ms. P. had generalized muscle weakness, difficulty walking, and depended on a wheelchair. *See, e.g,* Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003749, 003754, 003759, 003763, 003767, 003770).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare with regard to its members. Upon information and belief, they are denied.**

126. Beginning with the plan effective September 20, 2016, AlphaCare recorded that Ms. P. had Alzheimer's disease, both early-onset and unspecified, and unspecified dementia. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003749, 003754, 003759, 003763).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare with regard to its members. Upon information and belief, they are denied.**

127. AlphaCare's plans reflected the progression of Ms. P.'s dementia: it identified "dementia or delirium" as an open care-management issue beginning September 20, 2016, added impaired communication on February 22, 2017 and cognitive loss on March 27, 2017. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003765 (Sept. 20, 2016),

003761 (Feb. 22, 2017), 003756 (Mar. 27, 2017)).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare with regard to its members. Upon information and belief, they are denied.**

128. AlphaCare recorded that Ms. P. had urinary incontinence, and its later plans also identified bowel conditions as an open care-management issue. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., 003749, 003751, 003756, 003759, 003761, 003763, 003765, 003776).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare with regard to its members. Upon information and belief, they are denied.**

129. Across its plans, AlphaCare recorded that Ms. P. required assistance with activities of daily living, including bathing, personal hygiene, dressing, transferring, locomotion, turning and positioning, and incontinence care. Friedman Decl., Ex. 77 (AlphaCare Service Plan Recs. for K.W.P., SWHNY 003750, 003776).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and testimony cited here reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to actions allegedly taken by Alphacare**

**with regard to its members. Upon information and belief, they are denied.**

130. SWHNY sent a registered nurse to conduct comprehensive in-home assessments of Ms. P. on March 28, 2018, September 11, 2018, March 4, 2019, and September 4, 2019. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003686, 003842, 003989, 004072).

**RESPONSE: Admitted in part, denied in part. It is admitted only that on or about March 28, 2018, September 11, 2018, March 4, 2019, and September 4, 2019, SWHNY conducted (or caused to be conducted) routine assessments of K.W.P. using the Community Assessment Comments Report that supports the New York Uniform Assessment System. See SWHNY003686, 003842, 003989, 004072. The remaining averments are denied as incomplete or incorrect characterizations of the cited assessments.**

131. SWHNY's assessments of Ms. P. recorded a primary diagnosis of Alzheimer's disease, or dementia, and noted that Ms. P. was very forgetful, easily confused, and was unable to make decisions about her daily activities or to direct her own care. *See, e.g.,* Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003687, 003691, 003847, 003994).

**RESPONSE: Admitted in part, denied in part. It is admitted only that these assessments cited reflect the specific diagnoses and conditions described in this Paragraph. The remaining averments are denied as incomplete or incorrect characterizations of the cited assessments, including that SWHNY performed each of the cited assessments. See SWHNY003686.**

132. SWHNY recorded that K.W.P.'s mobility deteriorated over the assessment period: at the March 28, 2018 assessment, she required extensive assistance with walking and transfers, and by the September 11, 2018 assessment and thereafter, she was bed-bound and

totally dependent for locomotion. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003690 (Sept. 11, 2018), 003846 (Mar. 4, 2019), 003993 (Sept. 4, 2019), 004076 (Mar. 28, 2018).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessments reflect the specific diagnoses and conditions described in these Paragraphs. The remaining averments are denied as incomplete or incorrect characterizations of the cited assessments, including that SWHNY performed each of the cited assessments. SWHNY003686.**

133. SWHNY recorded that Ms. P. required total or maximal assistance, or total dependence, with activities of daily living, including bathing and toileting, and that she needed to be repositioned every two hours to avoid pressure ulcers. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., 003690-003691, 003846-003847, 003993-003994).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessments reflect the specific diagnoses and conditions described in these Paragraphs. The remaining averments are denied as incomplete or incorrect characterizations of the cited assessments, including that SWHNY performed each of the cited assessments. SWHNY003686.**

134. SWHNY's March 28, 2018 assessment also noted that Ms. P.'s aides had established Ms. P. on scheduling toileting every two hours, although Ms. P. often refused to cooperate. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 004077).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessment reflects the specific diagnoses and conditions described in these Paragraphs. The remaining averments are denied as incomplete or incorrect characterizations of the cited assessment. Further responding, the services addressed occurred in March, 2018, which is more than six years prior to commencement of this action against SWHNY. Therefore, any claims that**

**SWHNY violated the FLSA, NYLL, or WPA in connection with them are barred as a matter of law. See Responses to Paragraphs 96 and 97.**

135. SWHNY recorded that Ms. P. was incontinent with no control over her bladder present at every assessment, that her bowel incontinence progressed to no control present by September 4, 2019, and that she wore diapers and underpads. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003691, 003847, 003994, 004077).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the cited assessments reflect the specific diagnoses and conditions described in these Paragraphs. The remaining averments are denied as inaccurate or incomplete characterizations of the assessments. See SWHNY003686.**

136. K.W.P. lived with her spouse, P.C.P., in a studio apartment. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003665, 003842).

**RESPONSE: Admitted in part, denied in part. It is admitted the assessments reflect that K.W.P. and P.C.P. lived in a studio apartment on March 14, 2019. The remaining averments are denied because the cited assessments do not reflect that these individuals lived together in a studio apartment on any day other than on that single date. See SWHNY 003665, 003842.**

137. Mr. P. was authorized for six hours of home care services per day from his own, separate aide until May 1, 2017, when he began sharing an aide with his wife; effective August 18, 2017, Mr. P. was authorized for mutual, "live-in" care with his wife, which SWHNY continued. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004817, 004820); Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004803, 005004).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the Alphacare service plans cited within this Paragraph reflect that K.W.P. and P.C.P. had been approved for "42**

**hours per week" of home health care (as of May 1, 2017) and "1 Day per day" care (as of August 18, 2017). See SWHNY004817, 004820. It is further admitted that a March 28, 2018 assessment noted: "Continue mutual care w wife…7D6HRS PCA/WK from Great Care, total 7D24HRS LIVE IN," and a September 11, 2018 assessment noted "member has mutual care w wife, 7Dx24 H PCA service from Great Care." See SWHNY004803, 005004. The remaining averments are denied to the extent they reflect incomplete or incorrect characterizations of the cited assessments.**

138. As recipients of mutual, "live-in" care, Ms. and Mr. P. received care services from a single aide who was required to care for both spouses at the same time. Friedman Decl., Ex. 79 (SWHNY Provider Notice re Mutual Auth. Process, SWHNY 000690-000691).

**RESPONSE: Denied. The "Mutual Authorization Process" cited by Plaintiffs in this Paragraph was effective as of June 1, 2023. SWHNY000690-000691. However, the services provided to K.W.P. and P.C.P. (and the assessments of these members) all pre-date June 1, 2023 by several years. See, e.g., SWHNY003665-003666, 003686-003687, 003689-003691, 003694, 003842-003849, 003854, 003989-3994, 004072-004079, all of which are included as Ex. 32 to the Grajek Oct. Decl. Therefore, this Mutual Authorization Process did not, and could not, apply to their care.**

139. AlphaCare sent a registered nurse to conduct assessments of Mr. P. and issued Person-Centered Service Plans effective July 2, 2014; January 26, 2015; January 31, 2017; March 27, 2017; and October 2, 2017. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004814-004830).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records cited herein reflect them. The remaining averments are denied, as**

**SWHNY lacks knowledge or information sufficient to form a belief as to whether Alphacare took these specific actions with regard to its own members in 2014, 2015 and 2017. Upon information and belief, they are denied.**

140. AlphaCare recorded that Mr. P. had abnormalities of gait and mobility, and generalized muscle weakness. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004815).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records cited herein reflect them. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to whether Alphacare took these specific actions with regard to its own members in 2014, 2015 and 2017. Upon information and belief, they are denied.**

141. AlphaCare recorded that Mr. P. had urinary incontinence and an overactive bladder, and its later plans also identified bowel conditions as an open care-management issue. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004815-004816, 004820).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records cited herein reflect them. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to whether Alphacare took these specific actions with regard to its own members in 2014, 2015 and 2017. Upon information and belief, they are denied.**

142. AlphaCare identified cognitive loss (beginning with its January 26, 2015 plan) and impaired communication (beginning with its January 31, 2017 plan) as open care-management issues. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY

004819, 004822, 004826).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records cited herein reflect them. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to whether Alphacare took these specific actions with regard to its own members in 2014, 2015 and 2017. Upon information and belief, they are denied.**

143. Across its plans, AlphaCare consistently recorded that Mr. P. required assistance with activities of daily living. Friedman Decl., Ex. 80 (AlphaCare Service Plans for P.C.P., SWHNY 004816-004817, 004822-004823).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records cited herein reflect them. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to whether Alphacare took these specific actions with regard to its own members in 2014, 2015 and 2017. Upon information and belief, they are denied.**

144. SWHNY sent a registered nurse to conduct comprehensive in-home assessments of Mr. P. on March 28, 2018, September 11, 2018, March 4, 2019, September 4, 2019, and September 10, 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004683, 004775, 004831, 004980, 005094).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only SWHNY either conducted these assessments or caused these assessments to be performed by Premier Home Health Care Service Inc. on its behalf. <u>See</u> SWHNY004775, 004980. The remaining averments are denied as incomplete or inaccurate characterizations of these assessments.**

145. SWHNY recorded that Mr. P. ambulated with a cane and had an unsteady

gait exhibited daily, and that his need for assistance with walking worsened from supervision in 2018 to extensive assistance by September 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004779, 005098-005099).

**RESPONSE: Admitted in part, denied in part. It is admitted only that one or more of the assessments cited in these Paragraphs reflect these medical and living conditions. The remaining averments are denied as incomplete or inaccurate characterizations of these assessments.**

146. SWHNY recorded that Mr. P. needed increasing assistance with activities of daily living, ranging from extensive assistance with bathing in 2018 to maximal assistance with bathing and extensive assistance with dressing, toileting, and ambulation by September 2021. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004778, 005097-005098).

**RESPONSE: Admitted in part, denied in part. It is admitted only that one or more of the assessments cited in these Paragraphs reflect these medical and living conditions. The remaining averments are denied as incomplete or inaccurate characterizations of these assessments.**

147. SWHNY recorded that Mr. P. was occasionally incontinent both of urine and bowel, and that he wore pull-ups. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004779, 004797, 005099).

**RESPONSE: Admitted in part, denied in part. It is admitted only that one or more of the assessments cited in these Paragraphs reflect these medical and living conditions. The remaining averments are denied as incomplete or inaccurate characterizations of these assessments.**

148. Because the Ps both required extensive assistance, the Plaintiffs who provided

services to the couple worked around the clock and did not receive five hours of uninterrupted sleep or three hours of duty-free meal breaks on their 24-hour shifts. *See, e.g.,* Friedman Decl., Ex. 18 (Z. Li Dep. 85:14-21, 61:3-6); Ex. 15 (Hui Li Dep. 5:13-15, 59:3-8); Ex. 81 (Zhan J. Li Decl. ¶¶ 30-32, 35); Ex. 82 (Hui Li Decl. ¶¶ 7-10,).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are, therefore, denied upon information and belief. It is denied that any Plaintiff other than Z. Li and H. Li provided home services to "the Ps," and Plaintiffs fail to cite to any authority to the contrary. Further, the claim that these two Plaintiffs "worked around the clock and did not receive five hours of uninterrupted sleep or three hours of duty-free meal breaks on their 24-hour shifts" is directly contradicted by record evidence in this matter. See GC 03.01.2025 000163-000166 and GC 08.04.2025 008755-008760 (Z. Li) (daily timesheets that include certifications to GreatCare that all required sleep and meal breaks had been received); GC 08.04.2025 0008718 (in which Zhan Li declared that she had received 3 hours of meal time, 5 uninterrupted hours of sleep, and adequate sleeping facilities "every day since [her] first working day" with GreatCare); GC 08.04.2025 008717 and 008373 (in which these Plaintiffs agreed in writing that to the extent they did not receive 5 uninterrupted hours of sleep and 3 one hour meal times, they were to report this to their Coordinator/Supervisor at GreatCare "immediately after each 24 hour shift.")[37] In their Rule 56.1 Statement, Plaintiffs fail to cite to any record or testimony in which these two Plaintiffs reported such an issue to GreatCare or SWHNY. Further responding, the majority of services provided by Zhan J. Li occurred prior to March 2020 (See Zhan J. Li Decl. at ¶ 27) so almost all of her claims are time-barred.**

---

[37] See Ex. 26 (timesheets), Ex. 27 (HWCAs) and Ex. 28 (Declaration Letters) to the Grajek Oct. Decl.

**<u>See</u> Response to Paragraphs 96 and 97. This Paragraph also violates Rule 56.1(d) as to Plaintiff Hui Li because neither her deposition nor her declaration identify "the Ps" by name or any other identifying information. <u>See</u> Hui Li Dep. (Jan. 29, 2026) 5:13-15, 59:3-8; Ex. 82 to the Friedman Decl.**

149. X.Y.W. was a "patient" of GreatCare and a member of SWHNY and SWHNY's predecessor Alphacare, who authorized Ms. W. for 24-hour, "live-in" care services. Friedman Decl., Ex. 83 (AlphaCare Service Plans for X.Y.W., SWHNY 005408-005432); *see, e.g.,* Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005350).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the individual referred to as X.Y.W. in Plaintiffs' Rule 56.1 Statement was at times a member of SWHNY. It is further admitted that the HHAX records cited within this Paragraph suggest that this individual was formerly a member of Alphacare. <u>See</u> SWHNY 005408-005432. SWHNY denies that these records reflect or confirm that Alphacare approved 24-hour, "live-in" care services for this member. SWHNY further denies the remaining averments because SWHNY lacks knowledge or information sufficient to form a belief as to their truth, including those relating to Alphacare.**

150. From approximately January 1, 2018 until the time she passed away in or around [REDACTED], Ms. W. was a member of SWHNY. *See, e.g.,* Friedman Decl., Ex. 10 (HHAX EVV Recs. for X. Chen); Ex. 26 (HHAX EVV Recs. for Zhang).

**<u>RESPONSE:</u> Admit in part and deny in part. It is admitted only that the cited HHAX records demonstrate that X.Y.Z. was a member of SWHNY between approximately January 1, 2018 and March 31, 2021. <u>See</u> Exs. 10, 26 to the Friedman Decl. SWHNY denies any averment relating to this member's death, as these exhibits provide no indication as to when**

**she passed away. Id. This specific averment is therefore wholly unsubstantiated and violates the requirements of Local Rule 56.1(d). Further responding, the in-home shifts referred to in this paragraph began in January 2018. Id. Thus, any FLSA claim relating to services that occurred prior to August 18, 2023 is time-barred, and any WPA or NYLL claim relating to services that occurred prior to August 18, 2019 is also barred. See also Responses to Paragraphs 96 and 97.**

151. During the period covered by the Amended Complaint, Plaintiffs Li Chen, Xiu F. Chen, Hui He, and Mu Z. Zhang each provided 24-hour, "live-in" care services to X.Y.W. over a total of 1,047 shifts. Friedman Decl., Ex. 7, 10, 12, 26 (HHAX EVV Recs. for L. Chen, X. Chen, He, and Zhang).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the HHAX records cited within this Paragraph reflect that Plaintiffs Hui Li, Zhan J. Li, and Hui X. Ruan provided 24-hour, "live-in" services to X.Y.Z. approximately 1,000 times. The remaining averments are denied, as SWHNY lacks knowledge or information sufficient to form a belief as to their truth, including those relating to Alphacare and live-in care provided to its members.**

152. Prior to their employment with GreatCare, Plaintiffs Li Chen and Mu Z. Zhang had already been providing 24-hour, "live-in" services to Ms. W. when Ms. W. was receiving services through another agency called Amazing. Ex. 56 (Zhang Dep. 23:2-3, 46:19-24); Ex. 6 (L. Chen Decl. ¶¶ 10, 32); Ex. 27 (Zhang Decl. ¶¶ 5,6).

**RESPONSE: Admitted in part, denied in part. SWHNY admits these averments only to the extent the records and testimony cited herein may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these**

**paragraphs of Plaintiffs' Statement, which relate to Amazing and Alphacare. Upon information and belief, they are denied.**

153. AlphaCare issued Person Centered Service Plans for Ms. W. on December 2, 2014, August 9, 2016, January 25, 2017, and August 1, 2017. These service plans recorded incontinence, cognitive loss, impaired communication, difficulty walking, and abnormalities of gait and mobility, and the need for assistance with activities of daily living as care-management issues. To assist with Ms. W.'s care, AlphaCare authorized live-in personal care aide services and a monthly supply of incontinence supplies, including underpads, diapers, and liners. Friedman Decl., Ex. 83 (AlphaCare Service Plans for X.Y.W., SWHNY 005429-005432 (Dec. 2, 2014), 005425-005428 (Aug. 9, 2016), 005417-005420 (Jan. 25, 2017), 005408-005411 (Aug. 1, 2017)).

**RESPONSE: Admitted in part, denied in part. SWHNY admits these averments only to the extent the records and testimony cited herein may reflect them. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement, which relate to Amazing and Alphacare. Upon information and belief, they are denied.**

154. SWHNY conducted comprehensive in-home assessments of Ms. W. on July 27, 2018, January 28, 2019, July 8, 2019, and January 10, 2020. Friedman Decl., Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005297, 005321, 005375, 005446).

**RESPONSE: Admitted in part, denied in part. It is admitted only that on or about July 27, 2018, January 28, 2019, July 8, 2019, and January 10, 2020, SWHNY conducted (or caused to be conducted) routine assessments of member X.Y.Z. using the Community Assessment Comments Report that supports the New York Uniform Assessment System. See**

**SWHNY005297, 005321, 005375, 005446. The remaining averments are denied.**

155. On July 27, 2018, SWHNY conducted a comprehensive assessment of Ms. W. that recorded an unsteady gait, a history of falls, weakness, and chronic pain; that she required assistance with activities of daily living including walking, locomotion, toilet transferring, and bed mobility; and that she had a cardiorespiratory condition marked by shortness of breath. *Id.* at 005375-005401.

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that the cited assessment reflects that this member had been previously diagnosed with "unsteady gait, history of fall, weakness, pain" and required care of activities of daily living such as "walking, locomotion, toilet transferring, bed mobility. SWHNY005375. While this assessment notes in one section that Ms. W. experienced shortness of breath (SWHNY005401), it also indicates in several other sections that she did not experience shortness of breath (SWHNY005327, 0053296, 005452, 005454). The member, in fact, communicated on the day of the assessment that she had not experienced shortness of breath in the three days prior to the assessment. SWHNY005439. The remaining averments are denied as incorrect or incomplete characterizations of the cited assessment.**

156. The assessment concluded that Ms. W. could not be left alone safely and recommended continuing 24-hour live-in personal care services seven days a week. Friedman *Id.* at 005398.

**RESPONSE:** **Admitted.**

157. On January 28, 2019, SWHNY conducted a comprehensive assessment of X.Y.W. that recorded that she had a history of multiple falls; including a head injury from a fall in her home at night; that she reported dizziness when getting up from a seated or lying position;

and that she had poor balance and an unsteady gait and walked only short distances with a quad cane and aide assistance. *Id.* at 005321-005373.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessment reflects that this member had a history of these medical issues. The remaining averments are denied as incorrect or incomplete characterizations of the cited assessment.**

158. The assessment also recorded that Ms. W. needed assistance getting up one to two times at night to urinate and that a bedside commode was in place. *Id.* at 005326, 005350.

**<u>RESPONSE:</u> Admitted.**

159. On July 8, 2019, SWHNY conducted a comprehensive assessment of Ms. W. that recorded that Ms. W. had an unsteady gait; ambulated with a quad cane indoors and a rollator outdoors; needed human assistance on uneven surfaces; had general weakness; was forgetful with mild cognitive impairment; and that she reported dizziness. *Id.* at 005439-005467.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the cited assessment reflects that this member had a history of or experienced the stated medical issues, except that the report notes this member only needed human assistance "on occasion" when navigating uneven floors. SWHNY005439. The remaining averments are denied as incorrect or incomplete characterizations of the cited assessment.**

160. The assessment also recorded that she urinated twice at night and required the aide's assistance for toilet transfers. *Id.* at 005439, 005451.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted that this member reported that she urinated twice at night. SWHNY005439. It is denied that this assessment notes that the member "required the aide's assistance for toilet transfers," as the report only reflects that the member "requested PCA assistant for toilet transfer." <u>Id.</u> In addition, the member**

**denied any urine or bowel incontinence. <u>Id.</u> The remaining averments are denied as incorrect or incomplete characterizations of the cited assessment.**

161. On January 10, 2020, SWHNY conducted a comprehensive assessment of X.Y.W. that recorded Ms. W. urinated twice at night and required the aide's assistance for toilet transfers. *Id.* at 005302, 005444.

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted that this member reported that she urinated twice at night. SWHNY005302. It is denied that this assessment notes that the member "required the aide's assistance for toilet transfers," as the report only reflects that the member "requested PCA assistant for toilet transfer." <u>Id.</u> In addition, the member denied any urine or bowel incontinence. <u>Id.</u> The remaining averments are denied as incorrect or incomplete characterizations of the cited assessment.**

162. The Plaintiffs who provided long-term care services to Ms. W. all reported that Ms. W. called on them several times each night to ask for their assistance with toileting and other needs. Friedman Decl., Ex. 6 (Li Chen Decl. ¶¶ 25-26); Ex. 56 (Zhang Dep. 93:7-24, 88:2-13); Ex. 27 (Zhang Decl. ¶¶ 11, 24); Ex. 54 (Xiu F. Chen. Dep. 59:11-16); Ex. 84 (X. Chen. Decl. ¶¶ 18-19).

**<u>RESPONSE</u>: Denied. The cited declarations and deposition testimony do not in any way reflect that these Plaintiffs reported that Ms. W. called on them at night to assist with toileting. Nowhere in the three declarations cited herein do these Plaintiffs ever state they reported this behavior to their employer, Greatcare, to SWHNY, or to any other individual or entity. <u>See</u> Friedman Decl. at Ex. 6 (Li Chen Decl. ¶¶ 25-26), Ex. 27 (Zhang Decl. ¶¶ 11, 24), and Ex. 84 (X. Chen. Decl. ¶¶ 18-19). Further, the cited deposition testimony of Plaintiffs X. Chen and M. Zhang does not support the claim that these Plaintiffs reported this**

**behavior; in fact, neither Plaintiff identified Ms. W (by name or any identifier) within this testimony. See Zhang Dep. (Jan. 20, 2026) 93:7-24, 88:2-13; X. Chen. Dep. (Jan. 28, 2026) 59:11-16. Because none of the cited references support these averments, this Paragraph violates Rule 56.1(d) and should be stricken.**

163. None of the Plaintiffs who provided care services to Ms. W. were able to obtain five hours of continuous, uninterrupted sleep per shift; instead Plaintiffs never slept more than three hours per shift. Friedman Decl., Ex. 6 (L. Chen Decl. ¶ 27; see also ¶¶ 25-26); Ex. 56 (Zhang Dep. 88:2-13, 93:7-24); Ex. 27 (Zhang Decl. ¶¶ 11, 23-25); Ex. 54 (X. Chen Dep. 59:22-60:7); Ex. 84 (X. Chen Decl. ¶¶ 17-19).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement. They are, therefore, denied upon information and belief. SWHNY denies that the cited deposition testimony of Plaintiffs X. Chen and M. Zhang in any way supports the claim that these Plaintiffs were unable to obtain five hours of continuous, uninterrupted sleep per shift with Ms. W. and never slept more than three hours per shift. See Zhang Dep. (Jan. 20, 2026) 88:2-13, 93:7-24; X. Chen. Dep. (Jan. 28, 2026) 59:22-60:7. Because Plaintiffs' testimony does not reflect these facts in any manner, these citations should be disregarded.**

**Further, the claims that Plaintiffs L. Chen, M. Zhang and X. Chen were never "able to obtain five hours of continuous, uninterrupted sleep per shift" and "never slept more than three hours per shift," are denied as contrary to evidence of record. See GC 03.01.2025 000168-000214 (daily timesheets in which the aide certifies to GreatCare that she had obtained five hours of sleep and three hours of meal breaks per shift); GC 03.01.2025 000032 and GC 07.28.2025 003056 (declarations in which these Plaintiffs certified they had received**

**all required meal and sleep breaks "every day since [their] first working day" with GreatCare); GC 08.04.2025 007273, GC 03.01.2025 000030, and GC 07.28.2025 003054 (wherein these Plaintiffs agreed in writing that to the extent they did not receive their sleep and meal breaks, they were to report this to GreatCare "immediately after each 24 hour shift.")[38] Plaintiffs did not cite to any specific exhibits or testimony as part of their Rule 56.1 Statement in which these specific Plaintiffs reported such an issue to GreatCare or SWHNY.**

164. Additionally, none of the Plaintiffs received three hours of completely duty-free meal breaks during their shifts with Ms. W.; instead, the Plaintiffs rushed their meals, usually taking between 10 and 15 minutes to eat and typically eating at Ms. W.'s side so that they could continue to monitor Ms. W.'s safety while they ate. Friedman Decl., Ex. 6 (Li Chen Decl. ¶¶ 30-31); Friedman Decl., Ex. 56 (Zhang Dep. 91:13-92:5, 96:12-14); Ex. 27 (Zhang Decl. ¶ 25); Friedman Decl., Ex. 84 (Xiu F. Chen Decl. ¶¶ 22-23).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in these paragraphs of Plaintiffs' Statement. They are, therefore, denied upon information and belief. Further, the claim that Plaintiffs L. Chen, M. Zhang and X. Chen never "received three hours of completely duty-free meal breaks during their shifts with Ms. W" is denied as contrary to evidence of record. See Response to Paragraph 163 and the timesheets, HCWAs, and declaration letters cited therein regarding these same three Plaintiffs, all of which confirm that these specific Plaintiffs did indeed receive their meal breaks during each shift.**

### C. Assessments show that the following members of non-defendant MLTCs had around-the-clock needs

[38] See Ex. 24 (timesheets), Ex. 27 (HWCAs) and Ex. 28 (Declaration Letters) to the Grajek Oct. Decl.

165. D.C. was a "patient" of GreatCare and a member of non-defendant MLTC Aetna authorized for 24-hour, "live-in" care. Friedman Decl., Ex. 12 (HHAX EVV Rec. For He).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

166. During the period covered by the Amended Complaint, Plaintiff Hui He worked 18 "live-in" shifts providing care services to D.C.. *Id.*

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be**

**stricken because they violate Local Rule 56.1.**

167. Aetna conducted assessments of Mr. C. on March 3, 2016 and September 7, 2016. Friedman Decl., Ex. 85 (Aetna Ass. Recs. for D.C., AET D.C. 0000010-0000029, 0000030-0000049).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

168. The assessments recorded that Mr. C. exhibited an unsteady gait daily, that he ambulated indoors with a cane, and that he required assistance with activities of daily living, including toilet transferring. *Id*. at 0000013-0000015, 0000033-0000035.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and**

**Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

169. Plaintiff Hui He did not receive five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks on any of her 24-hour shifts when providing care to Mr. C.. Friedman Decl., Ex. 86 (He Decl. ¶¶ 15-16).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

170. S.K.C.-2 was a "patient" of GreatCare and a member of non-defendant MLTC Elderplan, who authorized Ms. C. for 24-hour, "live-in" care services. Friedman Decl., Ex. 87 (ElderPlan Auth. Services Notice for S.K.C.-2, ELDERPLAN000204).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

171. During the period covered by the Amended Complaint, Plaintiffs Hui He and Hui X. Ruan each provided 24-hour, "live-in" services to S.K.C.-2 for a total of 198 shifts. Friedman Decl., Ex. 12, 19 (HHAX EVV Rec. For He and Ruan).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

172. ElderPlan assessed Ms. C. on August 18, 2016, February 25, 2017, August 9, 2017, and February 19, 2018. Friedman Decl., Ex. 88 (ElderPlan Ass. Recs. for S.K.C.-2, ELDERPLAN000099, 000128, 000206; NYSDOH 000380).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent**

**extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

173. ElderPlan recorded that Ms. C.'s diagnoses included Parkinson's disease, functional urinary incontinence, abnormalities of gait and mobility, osteoarthritis, osteoporosis, congestive heart failure, and short-term memory problems; ElderPlan's care-management records further reflected dementia and mild cognitive impairment. *Id.* at 000099, 000118, 000146, 000224, 000247.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC ElderPlan. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

174. Ms. C. ambulated only with a rollator and the assistance of her aide. *Id.* at 000103; NYSDOH 000390, 000391.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

175. Ms. C. required extensive-to-maximal assistance with the activities of daily living, including walking, transferring, toileting, dressing, and eating. *Id.* at 000103, NYSDOH 000385, 000390, 000391.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for**

**summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

176. ElderPlan also recorded that Ms. C. was frequently incontinent of urine, used a commode, and wore pull-ups, liners, and underpads. *Id*. at 000099, 000118, 000146, 000224, 000228, NYSDOH 000385.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in this Paragraph accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC ElderPlan. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

177. ElderPlan's records reflect a complaint that a prior aide was unwilling to get up at night to assist her with toileting. Friedman Decl., Ex. 89 (ElderPlan Member Notes for S.K.C.-2, ELDERPLAN000039-000040).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC**

**ElderPlan. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

178. In its August 18, 2016, February 25, 2017, and August 9, 2017 assessments, ElderPlan recorded that Ms. C. could not be left alone safely. Friedman Decl., Ex. 88 (ElderPlan Ass. Recs. for S.K.C.-2, ELDERPLAN000119, 000147, 000225; NYSDOH 000444, 001363, 001453).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC ElderPlan. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

179. Neither of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 86 (He Decl. ¶¶ 14-15); Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

180. S.C. was a "patient" of GreatCare and member of non-defendant MLTC Aetna, who authorized Ms. C. for 24-hour, "live-in" services. Friedman Decl., Ex. 90 (Aetna Ass. Recs. for S.C., AET S.C. 0000825, 000847).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

181. During the period covered by the Amended Complaint, Plaintiffs Zhan J. Li, and Hui X. Ruan each provided 24-hour, "live-in" services to S.C. for a total of 319 shifts. Friedman Decl., Exs. 16, 19 (HHAX EVV Recs. for Z. Li and Ruan).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect**

**the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

182. Aetna Better Health sent a registered nurse to conduct comprehensive assessments of Ms. C. on January 30, 2017, July 26, 2017, January 10, 2018, July 13, 2018, January 12, 2019, July 14, 2019, and January 19, 2020. Friedman Decl., Ex. 90 (Aetna Ass. Recs. for S.C., AET S.C. 0000803, 0000824, 0000846, 0000868, 0000889, 0000910, 0000932).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

183. Across its assessments, Aetna recorded that Ms. C.'s primary diagnosis was

dementia, and that her cognitive skills for daily decision-making were moderately to severely impaired. *Id*. at 0000825, 0000829; 0000847, 0000851, 0000869, 0000873.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

184. Aetna recorded that Ms. C. was non-ambulatory, that her primary mode of locomotion indoors was a wheelchair, and that she could not stand or walk on her own; required extensive-to-maximal assistance with the activities of daily living, including two-person assistance for bathing and maximal assistance for toileting, and total dependence for meal preparation, housework, medications, and other instrumental activities; was incontinent of urine and wore pull-ups, diapers, and underpads. *Id*. at 0000871-872, 0000937.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC**

**Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

185. Aetna recorded that Ms. C. had a diagnosis of insomnia, experienced visual hallucinations and delusions, was prescribed a bedtime sleep medication and a bedtime antipsychotic, and that she could not be left alone safely. *Id*. at 0000820, 0000823, 0000825, 0000842, 0000845, 0000847, 0000882, 0000906, 0000909, 0000947.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

186. Neither of the Plaintiffs assigned to provide care services to Ms. C. received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 81 (Zhan J. Li Decl. ¶¶ 41-42); Ex. 100 (Ruan Decl. ¶ 21).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief**

**as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

187. Y.L. was a "patient" of GreatCare and member of non-defendant MLTC Fidelis, who authorized Mr. L. for 24-hour, "live-in" services. *See* Friedman Decl., Ex. 91 (Fidelis Ass. Recs. for Y.L., NYSDOH 000821, 000841); Ex. 12 (HHAX EVV Recs. for He).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Fidelis. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

188. During the period covered by the Amended Complaint, Plaintiff Hui He provided 24-hour, care services to Mr. L. over a total of 130 "live-in" shifts. Friedman Decl., Ex. 12 (HHAX EVV Rec. For He).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the**

**extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

189. On April 28, 2017, Fidelis conducted an assessment of Mr. L., then age 86, that recorded he was bedbound, that his cognitive skills for daily decision-making were severely impaired, and that he had short-term, procedural, and situational memory problems. Friedman Decl., Ex. 91 (Fidelis Ass. Rec of Y.L., NYSDOH 000822, 000825, 000830, 000839).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Fidelis. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

190. The April 28, 2017 assessment recorded that Mr. L. required total dependence

(full performance by others) for bathing, upper- and lower-body dressing, locomotion, and toilet transferring and toilet use; that walking did not occur during the entire assessment period; and that he required maximal assistance with personal hygiene, bed mobility, and eating, with his primary mode of locomotion indoors recorded as bed-bound. *Id*. at 000824-000825.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

191. The April 28, 2017 assessment also recorded that Mr. L. was incontinent of both bladder and bowel with no control present and wore diapers/briefs, with diagnoses including full incontinence of feces and other specified urinary incontinence. *Id*. 000825, 000831, 000838.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs**

**such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

192. The April 28, 2017 assessment also flagged that Mr. L.'s conditions made his cognitive, ADL, mood, or behavior patterns unstable; that his wife (the informal helper who lived with him) was unable to continue in caring activities; that family reported feeling overwhelmed by his illness; and that the aide was instructed to keep the bed side rails up, change diapers frequently to prevent skin breakdown, and reposition him every two hours. *Id.* at 000827, 000833-000834.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

193. Plaintiff Hui He's responsibilities for Mr. L. included: feeding him milk every around the clock, changing his diaper approximately every two hours, using the toilet whenever he needed, and turning and repositioning his body in bed approximately every two hours to

prevent bedsores and skin breakdown. Friedman Decl., Ex. 92 (He Dep. 49:15-17, 51:19-22, 64:18-65:13, 77:10-14); Ex. 86 (He Decl. ¶¶ 11, 12).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

194. Because Mr. L. was confined to his bed and had to be turned and have his diapers changed every two hours throughout the night, Ms. He could not sleep for five uninterrupted hours; as she explained, had she slept for five hours the patient "would be all wet with . . . urine," which "would not be acceptable." Friedman Decl., Ex. 92 (He Dep. 77:10-14, 148:23-149:3, 150:8-14); Ex. 86 (He Decl. ¶¶ 11, 12).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs**

**such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

195. Plaintiff Hui He did not have enough time to rest and did not receive three hours of completely duty-free meal breaks during her shifts; she was able to stop to eat only after feeding the care recipient, and for no more than approximately a half hour to an hour before resuming work. Friedman Decl., Ex. 92 (He Dep. 64:18-65:24, 77:4-5); Ex. 86 (He Decl. ¶ 16).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

196. M.Q.L. was a "patient" of GreatCare and a member of non-defendant MLTC Aetna, who authorized Ms. L. for 24-hour, "live-in" services. Friedman Decl., Ex. 93 (Aetna Serv. Auths. for M.Q.L., AET M.Q.L. 0001004, 0001006, 0001008).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect**

**the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

197. During the period covered by the Amended Complaint, Plaintiff Hui He worked 17 "live-in" shifts providing care services to M.Q.L.. Friedman Decl., Ex. 12 (HHAX EVV Rec. for He).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

198. Aetna conducted assessments of Ms. L. on March 3, 2016 and September 7, 2016. Friedman Decl., Ex. 94 (Aetna Ass. Recs. for M.Q.L., NYSDOH 000488, 001521).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the**

**extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Aetna. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

199. The assessments recorded that Ms. L. lived with her spouse only; that she was cognitively impaired, with daily decision-making moderately impaired and short-term, procedural, and situational memory problems and periods of confusion; had a diagnosis of dementia; and that she used a wheelchair, with an unsteady gait. *Id*. at 000488-000489, 000492-000493, 000496.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

200. The assessments also recorded that Ms. L. required extensive assistance for bathing, personal hygiene, upper- and lower-body dressing, locomotion, and toilet transferring and toilet use, and maximal assistance for walking; that she was occasionally incontinent of bladder and wore pads or briefs; that she was restrained by bed rails "for fall precaution"; and that she could not be left alone safely. *Id*. at 000490-000494, 000496-000500, 000503, 000505-000506, 000508, 001521-001527, 001529-001533, 001535, 001537-001538, 001540.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

201. Whenever Ms. He worked a "live-in" shift providing care to Ms. L., Ms. He was not able to obtain five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks. Friedman Decl., Ex. 86 (He Decl. ¶ 16).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

202. K.L. was a "patient" of GreatCare and a member of non-defendant MLTC Integra, who authorized Ms. L. for 24-hour, "live-in" care services. Friedman Decl., Ex. 95 (Integra Ass. Recs. for K.L., NYSDOH 000225-000226, 000331, 001364; Ex. 8 (HHAX EVV Rec. for M. Chen).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Integra. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

203. During the period covered by the Amended Complaint, Plaintiff Mei F. Chen provided 24-hour, "live-in" care to Ms. L. over 100 "live-in" shifts. *Id.*

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect**

**the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

204. Integra conducted assessments on Ms. L. on February 1, 2016, February 19, 2016, August 12, 2016, and February 15, 2017. Friedman Decl., Ex. 95 (Integra Ass. Recs. for K.L., NYSDOH 000224, 000330, 000356, 001364).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Integra. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

205. In each of the assessments, Ms. L.'s primary diagnosis was recorded as dementia. *Id*. at 000229, 000336, 000361, 001370.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the**

**extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

206. Each assessment additionally recorded that Ms. L. had impaired cognitive skills for daily decision-making, recorded as moderately impaired in the February 1, 2016, August 12, 2016, and February 15, 2017 assessments, and as severely impaired in the February 19, 2016 assessment, and that she had a short-term memory problem. *Id*. at 000225, 000331, 000357, 001365.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be**

**stricken because they violate Local Rule 56.1.**

207. Ms. L. required maximal assistance with bathing, personal hygiene, dressing, and walking as Ms. L. exhibited an unsteady gait and was unable to walk on her own. *Id*. at 000228-000229, 000334, 000360, 000362, 000366, 001368, 001370.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

208. Ms. L. was frequently incontinent of both bladder and bowel on a daily basis and wore incontinence briefs. *Id*. at 000229, 000336, 000361, 001369.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and**

**Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

209. At the February 15, 2017 assessment, the assessor instructed that a toileting routine be instituted every two hours to reduce the occurrence of Ms. L.'s incontinence. *Id*. at 000336.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

210. The February 1, 2016 and February 19, 2016 assessments recorded that, as reported by Ms. L.'s personal care aide and son, Ms. L. could not clean herself after a bowel movement. *Id*. at 000229, 000361.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

211. Each of the assessments recorded that Ms. L. required maximal assistance to use the toilet and to clean herself after incontinent episodes. *Id*. at 000228, 000335, 000360, 001368.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

212. The February 1, 2016 and August 12, 2016 assessments recorded that Ms. L. could not be left alone safely. *Id*. at 000244, 001388.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief**

**as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

213. Ms. L. needed toileting multiple times during the night, and Plaintiff Mei F. Chen had to help her each time and make sure that she did not fall. Friedman Decl., Ex. 96 (Mei F. Chen Decl. ¶ 14).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

214. When providing care to Ms. L., Plaintiff Mei F. Chen never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. *Id.* at ¶¶ 15-16.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

215. D.T.K. was a "patient" of GreatCare and a member of non-defendant MLTC Empire BlueCross BlueShield ("Empire"), who authorized Ms. T. for 24-hour, "live-in" care services. *See* Friedman Decl., Ex. 97 (Empire Plans for D.T.K., DTK000082).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

216. During the period covered by the Amended Complaint, Plaintiff Hui X. Ruan

provided 24-hour, “live-in” services to Ms. T. over 34 shifts. Friedman Decl., Ex. 19 (HHAX EVV Rec. for Ruan).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY’s members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs’ motion for summary judgment, have no bearing on Plaintiffs’ claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

217. Empire’s nurse assessed Ms. T. on August 21, 2018 and February 24, 2019. Friedman Decl., Ex. 98 (Empire/Anthem Ass. Recs. for D.T.K., DTK000072-000077, 000113-000119).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY’s members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs’ motion for summary judgment, have no bearing on Plaintiffs’ claims against**

**SWHNY, and should be stricken because they violate Local Rule 56.1.**

218. Empire's assessments recorded that Ms. T. did not have a normal gait, required an assistive device and hands-on assistance to ambulate, and was at risk of falls. *Id*. at 000075, 000117.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

219. Empire's assessments further recorded that Ms. T. needed assistance with bathing, dressing, grooming, toileting, transferring, walking, and meal preparation. *Id*. at 000074.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against**

**SWHNY, and should be stricken because they violate Local Rule 56.1.**

220. Empire's records also recorded that Ms. T. was incontinent and wore diapers, and that she woke approximately twice per night for toileting and changing. Friedman Decl., Ex. 99 (Empire/Anthem Prog. Notes for D.T.K., DTK000028-000029, 000048).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

221. Empire assessed that Ms. T. was not safe to be left alone. Friedman Decl., Ex. 98 (Empire/Anthem Ass. Recs. for D.T.K., DTK000075).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Empire BlueCross BlueShield. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against**

**SWHNY, and should be stricken because they violate Local Rule 56.1.**

222. While assigned to provide care services to Ms. T., Ms. Ruan never received five hours of continuous uninterrupted sleep or three hours of completely duty-free meal breaks when working 24-hour shifts. Friedman Decl., Ex. 100 (Ruan Decl., ¶ 21).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

223. S.Y.Y. was a "patient" of GreatCare and a member of non-defendant MLTCs Extended and Hamaspik, who authorized Ms. Y. for 24-hour, "live-in" care services. *See* Friedman Decl., Ex. 101 (Extended Auth. Recs. for S.Y.Y., GC 005635); Ex. 102 (HHAX Note for S.Y.Y., GC 010739).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's**

**members in any manner; they instead involve the actions and inactions of non-party MLTCs Extended and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

224. During the period covered by the Amended Complaint, Plaintiffs Jian R. Xiao, Mei Z. Xiao, and Bi Y. Zheng each provided 24-hour, "live-in" care services to S.Y.Y. over a total of 1,384 shifts. Friedman Decl., Ex. 22, 24, 28 (HHAX Recs. for J. Xiao, M. Xiao, Zheng).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

225. Extended assessed and monitored Ms. Y. throughout her enrollment. *See* Friedman Decl., Ex. 103 (Extended Ass. Recs. for S.Y.Y., GSD-Extended 001132-001170).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

226. Extended's nurses repeatedly documented that Ms. Y. suffered from dementia, and that she was forgetful and cognitively impaired. *See, e.g., Id*. at 001366, 001399.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

227. Extended assessed Ms. Y. as at high risk for falls. *Id*. at 001479, 001603.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC**

**Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

228. Extended recorded that Ms. Y. used an assistive device, a cane and a walker, when ambulating. *Id*. at 001479, 001603, 001708.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

229. Extended recorded that Ms. Y. had an unsteady gait and required hands-on human assistance for safe ambulation. *Id*. at 001481, 001604, 001708.

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for**

**summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

230. Extended repeatedly recorded that Ms. Y. had nocturia and got up during the night to use the bathroom; some assessments noted that she required assistance to get to the toilet, with several assessments specifying that the assistance was provided by her live-in personal assistant. *See, e.g., Id*. at 001366, 001407.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

231. Extended repeatedly recorded that Ms. Y. suffered from bladder and bowel incontinence, would become incontinent if she did not reach the bathroom in time, and used liners. *See, e.g., Id*. at 001358, 001362.

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's**

**members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

232. On March 1, 2020, Extended sent an observer to conduct an in-home overnight observation of Ms. Y. and documented on an Observation Activity Report with a "Night Shift" log running from 8:00 p.m. to 8:00 a.m. Friedman Decl., Ex. 104 (Extended Observation Activity Report for S.Y.Y., GSD-ExtendedMLTC 00001258-00001263).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

233. According to the Observation Activity Report and EVV, Plaintiff Mei Z. Xiao was providing care for Ms. Y. on that date. *Id*. at 00001260; Friedman Decl., Ex. 24 (EVV Recs. for M. Xiao).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief**

**as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

234. According to the Observation Activity Report, Ms. Y. fell asleep at 9:00 p.m., at 10:00 p.m. woke up "talking to Xiao Meizhen", at 10:30 p.m. was lying awake in her bed, at 11:00 p.m. was awake and "asked Xiao Meizhen (aid) to help her to the commode", at 11:30 "Xiao Meizhen (aid) helped Client back to her bed", at 12:00 a.m. "Client is laying in her bed talking to Xiao Meizhen (aide)", at 12:30 a.m. was awake, slept from 1:00 a.m. until 3:00 a.m., was awake between 3:00 a.m. and 4:00 a.m., woke up again at 5:30 a.m., at 6:00 a.m. was "talking to xiao meizhen (aid)", back asleep at 7:00 a.m., awake again at 7:30 a.m., and back asleep at 8:00 a.m. Friedman Decl., Ex. 104 (Extended Observation Activity Report for S.Y.Y., GSD-ExtendedMLTC 00001260-00001263).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTC Extended. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be**

**stricken because they violate Local Rule 56.1.**

235. None of the Plaintiffs who provided care to Ms. Y. received five hours of continuous uninterrupted sleep on any of their 24-hour shifts. Friedman Decl., Ex. 105 (J. Xiao Dep. 59:10-13, 71:9-15); Ex. 106 (J. Xiao Decl. ¶¶ 12, 29); Ex. 55 (M. Xiao Dep. 57:6-11, 73:4-74:11); Ex. 107 (M. Xiao Decl. ¶¶ 11, 18, 21-24, 28); Ex. 108 (Zheng Dep. 27:4-28:10); Ex. 109 (Zheng Decl. ¶¶ 24-28, 30).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

236. None of the Plaintiffs who provided care to Ms. Y. received three hours of duty-free meal breaks on any of their 24-hour shifts. Friedman Decl., Ex. 107 (M. Xiao Decl. ¶ 28); Ex. 55 (M. Xiao Dep. 83:14-25); Ex. 106 (J. Xiao Decl. ¶ 29); Ex. 109 (Zheng Decl. ¶¶ 21-22).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the records and assessments cited by Plaintiffs in these Paragraphs accurately reflect the facts detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and**

**belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they instead involve the actions and inactions of non-party MLTCs such as ElderPlan, Fidelis, Aetna, Integra, Empire BlueCross BlueShield, Extended, and Hamaspik. These averments are therefore wholly immaterial to Plaintiffs' motion for summary judgment, have no bearing on Plaintiffs' claims against SWHNY, and should be stricken because they violate Local Rule 56.1.**

**D. <u>Plaintiffs did not receive assessments for the following care recipients.</u>**

237. Plaintiffs did not receive assessments for the following care recipients who were all "patients" of GreatCare and were all authorized for 24-hour, "live-in" services:

a. H.C., who was a member of SWHNY, and received 24-hour, "live-in" care services from Xiu F. Chen over three shifts;

b. X.D., who was a member of non-defendant MLTC Agewell, and received 24-hour, "live-in" care services from Hui X. Ruan over four shifts;

c. L.H.L., who was a member of SWHNY, and received 24-hour, "live-in" care services from Hui X. Ruan over one shift;

d. J.S.L., who was a member of non-defendant MLTC Agewell, and received 24-hour, "live-in" care services from Hui X. Ruan over four shifts;

e. P.L., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiff Hui He over two shifts;

f. X.Q.L., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiff Hui He over two shifts;

g. C.H.M., who was a member of CenterLight, and received 24-hour, "live-in" care services from Plaintiff Hui X. Ruan over five shifts; and

h. Y.X., who was a member of non-defendant MLTC Aetna, and received 24-hour, "live-in" care services from Plaintiffs Hui X. Ruan and Mu Z. Zhang over seven shifts. Friedman Decl. ¶ 114.

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, and they are denied upon information and belief. Further responding, this Paragraph is incomprehensible as worded, as it is unclear whether it relates to claims that Plaintiffs did not receive these assessments at the time the services were being provided or did not receive these assessments during the discovery process. If the latter, these facts are not material to any portion of Plaintiffs' motion for summary judgment and violate Local Rule 56.1 as a result. In addition, if Plaintiffs included these facts in their Rule 56.1 Statement to suggest that an adverse inference should be issued against GreatCare for failing to produce documents, that argument was already considered and rejected by the Court in its September 1, 2026, Opinion and Order on Plaintiffs' Motion for Rule 37 Sanctions [ECF 274]. These facts are therefore wholly immaterial and should be dismissed. These facts also violate Rule 56.1(d) because they lack any citation to the record that would be admissible.**

238. While providing services to these care recipients, none of the Plaintiffs were able to obtain five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per 24-hour shift. *See, e.g.,* Friedman Decl., Ex. 86 (He Decl. ¶ 16); Ex. 100 (Ruan Decl. ¶ 21).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are, therefore, denied upon information and belief. SWHNY specifically denies that all fourteen named Plaintiffs provided services to the care recipients listed in Paragraph 237 and denies**

**that none of the Plaintiffs obtained five hours of continuous, uninterrupted sleep and/or three hours of completely duty-free meal breaks during any of the shifts at issue in this litigation for the reasons stated below and elsewhere in this Statement.**

**Further, the claim that Plaintiffs X. Chen, H. Ruan, H. He, and M. Zhang were unable "to obtain five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per 24-hour shift" is directly contradicted by voluminous evidence in this matter. GC 03.01.2025 000168-000214 and GC 08.04.2025 009725-009756 (daily timesheets in which these H. Ruan and M. Zhang regularly and consistently certified to GreatCare that they had obtained five hours of continuous uninterrupted sleep and three hours of completely duty-free meal breaks per shift); GC 07.28.2025 003056, GC 08.04.2025 009708, GC 07.28.2025 003362, GC 03.01.2025 000032 (in which these four Plaintiffs declared that they had received 3 hours of meal time, 5 uninterrupted hours of sleep, and adequate sleeping facilities "every day since my first working day" with GreatCare); GC 07.28.2025 003054, GC 08.04.2025 009708 and 007887, and GC 03.01.2025 000030 (in which these four Plaintiffs agreed in writing that to the extent they did not receive these breaks, they would report it to GreatCare "immediately after each 24 hour shift.")[39] Plaintiffs did not cite to any documents or deposition testimony in their Rule 56.1 Statement that reflect these Plaintiffs made any such reports.**

**Additionally, claims related to the services at issue are time-barred because those services took place prior to August 18, 2023 (barring FLSA claims) and prior to August 18, 2019 (barring WPA and NYLL claims). See Response to Paragraphs 96 and 97. Finally, the averments relating to Plaintiffs X. Chen and M. Zhang are denied and must be stricken**

---

[39] See Exs. 24 and 27 (timesheets), Ex. 27 (HWCAs) and Ex. 28 (Declaration Letters) to the Grajek Oct. Decl.

**because Plaintiffs failed to cite to any admissible evidence relating to these Plaintiffs. See Rule 56.1(d).**

239. Plaintiffs also did not receive any assessments for H.S.W., who was a member of CenterLight living in [REDACTED], and received 24-hour, "live-in" care services from Plaintiff Li Chen over three weeks for a total of 12 shifts. Friedman Decl. ¶ 115; Ex. 7 (HHAX EVV Recs. for L. Chen).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. They are therefore denied upon information and belief. Further responding, this Paragraph is incomprehensible as worded, as it is unclear whether this Paragraph relates to a claim that Plaintiffs did not receive these assessments at the time the services were being provided or did not receive these assessments during the discovery process in this matter. If the latter, these facts are not material to any portion of Plaintiffs' motion for summary judgment and violate Local Rule 56.1 as a result. In addition, if Plaintiffs included these facts in their Rule 56.1 Statement to suggest that an adverse inference should be issued against GreatCare for failing to produce documents, that argument was already considered and rejected by the Court in its September 1, 2026, Opinion and Order on Plaintiffs' Motion for Rule 37 Sanctions [ECF 274]. These facts are therefore wholly immaterial and should be dismissed. These facts also violate Rule 56.1(d) because they each lack a citation to record evidence that would be admissible.**

240. Ms. W. was a particularly difficult assignment for Ms. Chen, and Ms. Chen was unable to sleep five continuous hours during her shifts or obtain three completely duty-free meal breaks when providing 24-hour care to Ms. W. Friedman Decl., Ex. 6 (L. Chen Decl. ¶¶ 47, 49).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the declaration cited within this Paragraph reflects these averments. However, SWHNY lacks knowledge or information sufficient to form a belief as to their truth and it denies them upon information and belief. Further, the claim that Plaintiff L. Chen was "unable to sleep five continuous hours during her shifts or obtain three completely duty-free meal breaks when providing 24-hour care to Ms. W." is directly contradicted by record evidence. In fact, as part of her employment with GreatCare, Ms. Chen signed the Home Care Worker Agreement in which she agreed to make a report to GreatCare "immediately after each 24 hour shift" in which she did receive these breaks. See GC 08.04.2025 007273.[40] Plaintiffs' Rule 56.1 Statement identifies no such reports made by Ms. Chen to GreatCare, and there exists no such reports in the evidentiary record. Further responding, because the services provided by Ms. Chen to Ms. W took place in 2016, her wage and hour claims against SWHNY are time-barred. See Responses to Paragraphs 96 and 97.**

## V. MLTC Defendants' contracts with the New York State Department of Health During the Relevant Period Covered by the Amended Complaint

241. Both CenterLight and SWHNY had contracts with the New York State Department of Health ("NYSDOH") to provide home health aide services and personal care services in the home. *See, e.g.,* Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., SWHNY 000001-000186); Ex. 36 (NYSDOH-CL 2017-2021 Cont., CenterLight 000381-568).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY entered into a Managed Long Term Care Partial Capitation Contract with the NYSDOH (the NYSDOH/SWHNY Contract). See SWHNY 000001-000186. SWHNY lacks knowledge or**

[40] See Ex. 29 to the Grajek Oct. Decl.

**information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

242. NYSDOH permitted CenterLight and SWHNY to deliver the services through contracted providers, allowing them to delegate activities or functions to those providers in a manner consistent with their contracts with the State. *See, e.g., Id.* at Art. V.B, (CenterLight 000402); Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. V.A, SWHNY 000021; Art. VII.A, SWHNY 000070).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that NYSDOH allowed SWHNY to provide home health aide services and personal care services to their members through contracted providers that meet certain requirements. <u>See</u> SWHNY 000021, 000070; <u>see also</u> SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 21-22. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

243. When the MLTC Defendants delivered the services by subcontracting with providers, they retained full responsibility over the services and were required to maintain full responsibility for adhering to and otherwise fully complying with all applicable laws, regulations, including compliance with the FLSA, NYLL, and Wage Parity Act. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.B, CenterLight 000402); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(B), SWHNY 000071, K-M, SWHNY 000081).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the NYSDOH Contract requires SWHNY to "comply with the home care worker wage parity law at Section 3614-c of the Public Health Law," "with all applicable provisions of the Fair Labor Standards Act (FLSA)" and with all applicable provisions of State Labor Law § 652.1(a) and**

**(b), minimum wage law." See SWHNY 000081. It is further admitted that SWHNY did adhere to and otherwise fully comply with the FLSA, NYLL, and Wage Parity Act with at all relevant times. See Ex. 31 to the Grajek Oct. Decl., which compiles LS 300 completed by GreatCare in which they certify they complied with various wage and hour laws. The remaining averments are denied. To the contrary, while SWHNY's contract with the NYSDOH requires that SWHNY "shall maintain full responsibility for adhering to and otherwise fully complying with all applicable laws and regulations, this Agreement, all standards and procedures approved by the Department for the MLTCP and the written instructions of the Department," it may "delegate activities or functions to a provider in a manner consistent with requirements set forth in the Contract]." SWHNY 000071. Further responding, Rule 56.1 Statements are strictly meant to present materials facts supported by admissible evidence, and this Paragraph includes conclusions of law. It is therefore improper and should be stricken. SWHNY also lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

244. CenterLight and SWHNY were required to develop protocols to establish a verification system to demonstrate their subcontractors' FLSA compliance, including record-keeping methodologies, tracking of aide travel time, hours worked on live-in cases, and appropriate rate reimbursement. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.M, CenterLight 000410); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(L), SWHNY 000081).

**RESPONSE: Denied. The NYSDOH Contract does not explicitly require SWHNY to "develop protocols to establish a verification system to demonstrate their subcontractors'**

**FLSA compliance." <u>See</u> SWHNY 000081. This Contract instead requires that SWHNY itself "comply with all applicable provisions of the [FLSA]" and "develop protocols to establish a verification system to demonstrate compliance with requirements." <u>Id.</u> In fact, Article VII(L) of the NYSDOH Contract does not in any manner address SWHNY's responsibilities as to its contractors' compliance. <u>Id.</u> Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

245. SWHNY was further required to develop protocols to establish a verification system to demonstrate compliance with the NYLL, including record-keeping methodologies, and identifying appropriate reimbursement rates. Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(M), SWHNY 000081).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that Article VII(M) of the NYSDOH Contract requires as follows: "[SWHNY] shall comply with all applicable provisions of State Labor Law § 652.1(a) and (b), minimum wage law…[and] shall develop protocols for compliance, and such protocols shall include adequate record keeping methodologies and identify rate of reimbursement as appropriate." <u>See</u> SWHNY 000081. SWHNY further admits that it complied with this requirement at all relevant times and, among other things, performed audits of GreatCare. B. Wang Dep. (May 1, 2026) 73:3-74:8; B. Wang Dep. (May 15, 2025) 53:10-54:14, 55:7-14, 116:25-117:11, 139:21-140:10.[41] The remaining averments are denied as incomplete or inaccurate characterizations of the NYSDOH Contract.**

246. SWHNY was also required to develop protocols to establish a system to verify

[41] <u>See</u> Exs. 38 and 39 to the Grajek Oct. Decl.

that home care aide wages provided by each subcontractor met or exceeded the local wage requirements. Friedman Decl., Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE: Admitted in part, denied in part. It is admitted only that Article VII(K) of the NYDOH Contract required SWHNY to "develop protocols to establish a verification system sufficient to verify that home care aide wages provided by each subcontractor meet or exceed the local wage requirements pursuant to subdivision 3 and applicable notices and regulations." See SWHNY 000081. SWHNY further admits that it complied with this requirement at all relevant times. See Ex. 31 to the Grajek Oct. Decl.; see also citations to B. Wang Dep. in response to Paragraph 245. The remaining averments are denied as incomplete or inaccurate characterizations of the NYSDOH Contract.**

247. The MLTC Defendants were required to certify to NYSDOH annually that all home care services provided by them or their subcontractors were in compliance with the Wage Parity Act. *Id.*; Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.L, CenterLight 000409).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY was required pursuant to the NYSDOH Contract to certify on an annual basis "that all home care aide services, whether provided by the Contractor or through a subcontractor, are in compliance with PHL § 3614-c." Id. SWHNY further admits that it complied with this requirement at all relevant times. See Ex. 31 to the Grajek Oct. Decl.; see also citations to B. Wang Dep. in response to Paragraph 245. The remaining averments are denied as incomplete or inaccurate characterizations of the NYSDOH Contract. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments**

**relating to co-Defendant CenterLight so they are denied upon information and belief.**

248. The MLTC Defendants were required to collect from their LHCSA subcontractors, including GreatCare, sufficient information to verify that their subcontractors were in compliance with the Wage Parity Act. *Id*. at Art. V.L, 000409; Friedman Decl. Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the NYSDOH Contract requires that SWHNY collect from subcontractors "sufficient information to verify that subcontractors employing home care aides are in compliance with PHL § 3614-c." SWHNY000081. SWHNY further admits that it complied with this requirement at all relevant times. See LS 300 Forms attached as Ex. 31 to the Grajek Oct. Decl. remaining averments are denied as incomplete or inaccurate characterizations of the NYSDOH Contract. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

249. Neither CenterLight nor SWHNY were permitted to verify the compliance of their LHCSAs by collecting a certification or attestation alone: their contracts with the NYSDOH contract expressly stated that solely collecting the certification or an attestation of compliance was not sufficient. Friedman Decl., Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V(L), CenterLight 000409); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the NYSDOH Contract states that "[s]olely collecting the certification or an attestation of compliance is not sufficient to meet" the requirement that SWHNY develop a system to verify that "home care**

**aide wages provided by each subcontractor meet or exceed the local wage requirements pursuant to subdivision 3 and applicable notices and regulations." SWHNY000081. The remaining averments are denied because it is wholly unclear what sort of "compliance" is at issue herein. It is further denied that SWHNY relied solely on attestations or certifications from GreatCare to ensure that GreatCare was not violating wage and hour laws. To the contrary, SWHNY performed onsite audits of LHCSAs like GreatCare and reviewed relevant records (including member files, aide files, and timesheets) to ensure compliance. B. Wang Dep. (May 1, 2026) 73:3-74:8; B. Wang Dep. (May 15, 2025) 53:10-54:14, 55:7-14, 116:25-117:11, 139:21-140:10.[42] Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

250. Under their contracts with the NYSDOH, the MLTC Defendants' failure to fully comply with the home care worker wage parity requirements could "result in non-payment of services rendered." Friedman Decl. Ex. 36 (NYSDOH-CL 2017-2021 Cont., Art. V.L, CenterLight 000410); Ex. 34 (NYSDOH-SWHNY 2017-2021 Cont., Art. VII(K), SWHNY 000081).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that Article VII(K) of the NYSDOH Contract states that "[f]ailure to fully comply with the home care worker wage parity requirements may result in non-payment of services rendered, as required by PHL § 3614-c (2). The remaining averments are denied as incomplete or inaccurate characterizations of the NYSDOH Contract. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-**

42 <u>See</u> Exs. 38 and 39 to the Grajek Oct. Decl.

**Defendant CenterLight so they are denied upon information and belief.**

251. Throughout the relevant period, CenterLight and SWHNY contracted with GreatCare to provide home care and personal services to their members. *See, e.g.,* Friedman Decl., Ex. 32 (SWHNY-GC HHSA, SWHNY 000243-000281); Ex. 39 (2018 CL/GC Agree., CenterLight 000041-000063).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY contracted with GreatCare to provide home care and personal services to SWHNY members. SWHNY000243-000281; see also SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 23-25. SWHNY denies these averments only to the extent that Plaintiffs failed to define "relevant period" in its Rule 56.1 Statement, which makes it impossible to admit or deny these averments. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

252. The contracts between the MLTC Defendants and GreatCare were drafted by the MLTC Defendants and set out the rates that CenterLight and SWHNY would pay GreatCare for its aides' services. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 6:2-7:1, 12:19-13:9); Ex. 32 (SWHNY-GC HHSA, 000268-000269); Ex. 39 (2018 CL/GC Agree., CenterLight 000058-000063).

**RESPONSE: Admitted in part, denied in part. It is admitted only that Barbara Wang testified that she believed SWHNY drafted SWHNY/GreatCare contract. Wang Dep. (May 1, 2026) 6:2-7:1, 12:19-13:9.[43] SWHNY also admits this Contract contains an attachment that details the rates and terms of reimbursement for services provided by GreatCare.**

[43] Ex. 38 to the Grajek Oct. Decl.

**SWHNY000268-000269. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

253. The rates were periodically adjusted by CenterLight and SWHNY to account for increases in the New York state minimum wage and Wage Parity total compensation rates. *Id.*

**RESPONSE: Admitted in part, denied in part. SWHNY admits that the reimbursement rates paid to GreatCare were adjusted from time to time, including to account for increases in the New York state minimum wage and Wage Parity total compensation rates. SWHNY denies that rates were adjusted solely for those reasons. Glapa Dep. (Jan. 26, 2026) 162:9-164:7. Further responding, this Paragraph violates Rule 56.1(d) because neither the cited deposition testimony nor the SWHNY/GreatCare Contract address why reimbursement rates were increased from time to time. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

254. The contracts gave the MLTC Defendants the unilateral power to amend their agreements with GreatCare. Friedman Decl., Ex. 39 (2018 CL/GC Agree., § 11, CenterLight 000053); Ex. 111 (2022 LHCSA Ancillary Agreement § 1.2, CenterLight 000108); Ex. 32 (SWHNY-GC HHSA § 11, SWHNY 000259-000260).

**RESPONSE: Denied. SWHNY did not have unilateral power to amend its contract with GreatCare under any circumstance. See SWHNY000259. To the contrary, this Contract provided that SWHNY could unilaterally amend the Agreement only upon written notice to GreatCare and "as necessary to comply with changes in applicable laws and regulations." Id. For all other circumstances, the Agreement could only be "changed, modified, amended**

**or suspended…by written agreement executed by all parties affected thereby." Id. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to co-Defendant CenterLight so they are denied upon information and belief.**

255. SWHNY's contract obligated GreatCare to require its aides to cooperate with, be bound by, and abide by SWHNY's protocols. *Id*. at § 3.3, 000247.

**RESPONSE: Admitted in part, denied in part. It is admitted only that the SWHNY/GreatCare Contract requires GreatCare to ensure its employees cooperate with, be bound by, and abide by certain specific protocols established by SWHNY. See SWHNY000247. SWHNY denies that § 3.3 of this contract requires that GreatCare's employees comply with SWHNY protocols not identified within this section. Id.**

256. In SWHNY's Agreement with GreatCare, SWHNY reserved the right to approve the participation of any new GreatCare aide. *Id*. at § 3.14.5, 000251.

**RESPONSE: Admitted in part, denied in part. It is admitted only that pursuant to Section 3.14.5 of the SWHNY/GreatCare Contract, SWHNY reserved the right to approve the participation under the Contract of "of any new Health Care Practitioner who is required to be credentialed by [SWHNY] or [SWHNY's] designee." SWHNY000251. The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract.**

257. SWHNY required GreatCare to identify all of its aides by name who would operate under their agreement and to notify SWHNY before adding any new aides. *Id.* at § 3.14.1, 000250.

**RESPONSE: Admitted in part, denied in part. It is admitted only that pursuant to Section 3.14.1 of the SWHNY/GreatCare Contract, "Providers" like GreatCare were required to**

**provide SWHNY with "the names and locations of Health Care Practitioners prior to execution of the [Contract]" and "provide notice to [SWHNY] prior to the addition of any new Health Care Practitioners[.]" SWHNY000250. The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract. SWHNY denies that it had the right to control which aides were hired or fired by GreatCare. <u>See</u> SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 26-31.**

258. GreatCare routinely notified SWHNY when it sent a substitute aide to cover a shift that the member care recipient's regularly assigned aide was unable to work (for example, because the regular aide called out, was sick, or was on vacation). *See, e.g.,* Friedman Decl., Ex. 58 (GC HHAX Patient Notes, 5431612, 60861195, 16864714, 24176305).

**<u>RESPONSE:</u> Denied. These specific averments violate Rule 56.1(c) because they lack a citation to admissible evidence of record that supports them. In fact, the HHAX records cited within this Paragraph do not support or even address Plaintiffs' averment that GreatCare routinely notified SWHNY when it sent a substitute aide to cover a shift that the member care recipient's regularly assigned aide was unable to work. This record does nothing more that show that over a period of almost seven years, there is a single patient note in HHAX that an "aide was sick." <u>See</u> HHAX 60861195. The remaining three patient notes – which list only a day of the week and assorted times of day – do not relate to the assignment of a substitute aide or demonstrate that GreatCare notified SWHNY of that change. <u>See</u> HHAX 60861195, 16864714, and 24176305. These averments are denied.**

259. SWHNY obligated GreatCare to require its aides, including Plaintiffs, to cooperate with, be bound by, and abide by SWHNY's credentialing process, and SWHNY credentialed each GreatCare aide individually before she could provide home care to its

members. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 3.3, SWHNY 000247, § 3.14.4, SWHNY 000250).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the SWHNY/GreatCare Contract requires GreatCare to ensure its employees to cooperate with, be bound by, and abide by certain specific protocols established by SWHNY, including but not limited to its "credentialing process." SWHNY000247. It is denied, however, that "SWHNY credentialed each GreatCare aide individually before she could provide home care to its members," because such credentialing could be completed by SWHNY or by SWHNY's designee. Id. at § 3.14.4. The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract.**

260. SWHNY could also terminate or suspend any GreatCare aide providing services to its members when, among other reasons, it determined that an aide from GreatCare had failed to meet or maintain its credentialing/recredentialing standards or when it determined that an aide's termination was necessary for the health and safety of its member. *Id*. at § 6.2.1, SWHNY 000256).

**RESPONSE: Admitted in part, denied in part. It is admitted only that Section 6.2.1 of the SWHNY/GreatCare Contract provides that SWHNY could "terminate the participation of any Health Care Practitioner under this [Contract], upon written notice to [GreatCare] in the event of…failure to meet or maintain [SWHNY] credentialing/re-credentialiing standards" or in the event that SWHNY reasonably determines that the termination of "any Health Care Practitioner is "necessary for the health and safety of [a] Member." Id. at § 6.2.1, SWHNY000256. The remaining averments are denied as incorrect or incomplete characterizations of the explicit language of the Contract. Further responding, Section 6.2.1**

**only allows SWHNY to remove an aide from servicing one of its members under highly specific circumstances. Id. However, SWHNY had no power to terminate the employment of any Plaintiff because SWHNY did not employ the Plaintiffs and because GreatCare had sole decision-making authority regarding whether its own employees were terminated. See N. Glapa Dep. (Feb. 26. 2026) 74:14-75:2, 81:24-82:25;[44] see also SWHNY's Rule 56.1 Statement [ECF 253] at ¶¶ 26-31.**

261. SWHNY had a department that would investigate complaint filed against aides by its members and employees and could exclude aides from working with its members on the basis of those investigations. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 57:10-65:4).

**RESPONSE: Admitted in part, denied in part. It is admitted only that if a family member of a SWHNY member communicated to SWHNY care management that they believed their relative was being mistreated or abused by an aide, the SAI team at SWHNY would call the member, collect additional information from the contracting and claims departments, and share their findings and recommendations. Glapa Dep. (Feb. 26, 2026) 58:10-25.[45] The averment that SWHNY "could exclude aides from working with its members on the basis of those investigations" is not supported by the cited testimony of Nikia Glapa. To the contrary, Ms. Glapa testified that if SWHNY received a request from the member that the in-home was no longer supporting that member as required, SWHNY "would communicate that directly with GreatCare" to handle the staffing issues because "those are GreatCare's employees, not [SWHNY's]." Id. at 64:12-18.**

262. When a member complained about the care a GreatCare aide provided,

---

44 Ex. 36 to the Grajek Oct. Decl.

45 Ex. 36 to the Grajek Oct. Decl.

SWHNY's grievance process required GreatCare and the aide to participate in SWHNY's investigation of the complaint. Friedman Decl., Ex. 112 (2025 SWHNY Provider Manual, SWHNY 000535-000536); Ex. 32 (SWHNY-GC HHSA § 3.3, SWHNY 000247).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that providers such as GreatCare "are required to participate in Senior Whole Health's Grievance Program and cooperate with Senior Whole Health in identifying, processing, and promptly resolving all member complaints, grievances, or inquiries." See SWHNY000535-000536 (Provider Manual);[46] SWHNY000247 (SWHNY/GreatCare Contract). The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Provider Manual and the SWHNY/GreatCare Contract.**

**b. CenterLight's approval and termination of GreatCare's aides**

263. CenterLight required GreatCare to ensure that all of its aides who performed work under its agreement with CenterLight were properly licensed or certified and qualified to provide the covered services. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.9, CenterLight 000045).

**RESPONSE:** **Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

264. CenterLight also required that aides who worked with CenterLight members be

[46] Id. at Ex. 33.

subject to CenterLight's specialized PACE orientation, member-specific plan of care, and ongoing supervision and competencies conducted by CenterLight. Friedman Decl., Ex. 113 (CL-GC E-mail, GSD GC 002710- 002711).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

265. When requesting an aide from GreatCare for a member care recipient, CenterLight could specify certain personal characteristics, including the aide's spoken language and gender. Friedman Decl., Ex. 114 (CL Change in Aide Auth. for P.C., CenterLight Confid. 003317).

**RESPONSE: Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

266. CenterLight could request that an aide no longer render services to its members. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.9.4, CenterLight 000046).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

267. GreatCare was required to honor such requests, and neither GreatCare nor the aide had the right to deny or appeal CenterLight's requests. *Id*.

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

**c. <u>Authorizations</u>**

268. For each of their members receiving home care services, CenterLight and SWHNY were responsible for authorizing their care. Friedman Decl., Ex. 39 (2018 CL/GC Agree. § 3.1, CenterLight 000043); Ex. 32 (SWHNY-GC HHSA § 1.1, SWHNY 000244); *See, e.g.,* Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 002450-002476); Ex. 115 (SWHNY Auth. Recs. for X.Y.W., GC 002880-002907).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that SWHNY would,**

**from time to time, assess their members for the appropriate level of home care services and evaluate various activities of the members' daily life by using the Community Assessment Comments Report that supports the New York Uniform Assessment System. See, e.g., Ex. 32 to the Grajek Oct. Decl.; Glapa Dep. (Feb. 26. 2026) at 86:12-25.[47] Based on that assessment, SWHNY would approve a level of care that was medically necessary for that member. See, e.g., GC 002882-002907. The remaining averments of this paragraph are denied as stated. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

269. The MLTC Defendants determined the amount and type of home care services for each of their member care recipients. *See* Answer of Defendant CenterLight Healthcare, Inc., ECF No. 97 ¶¶ 60, 69; Friedman Decl., Ex. 35 (CL Adms., Nos. 21, 22); Ex. 32 (SWHNY-GC HHSA §§ 1.24, 3.3, SWHNY 000246-000247); Ex. 41 (Wang Dep. (Jan. 7, 2026) 149:13-151:2).

**RESPONSE: Denied. SWHNY, as the plan administrator, creates plans of care for its members by relying on guidance from medical providers and from social assessments regarding what level and type of care is medically necessary for that individual member. See Glapa Dep. (Feb. 26, 2026) 13:6-11, 14:7-12, 14:19-23 ("our plans of care and our authorizations are purely based on medical necessity"), and 27:5-23 ("When it is deemed medically necessary that having live-in support is needed for the patient, that's where the care plan is generated").[48] This determination is highly specific, and the care plans are focused on the individual needs of the member and designed to "optimiz[e] the health and**

47 Ex. 36 to the Grajek Oct. Decl.

48 Id.

**well-being of each member." Id. at 38:3-39:14 (the "member centric" care plans are "all contingent upon the needs of the member, who they have living with them, what is their current scope, what their living arrangements looks like.") Accordingly, care plans can be adjusted when there is a change in a member's situation or needs. Id. at 44:3-9.**

270. GreatCare was required to schedule its aides, including Plaintiffs, within the parameters set by the MLTC Defendants' authorizations. Friedman Decl., Ex. 39 (2018 CL/GC Agree., §§ 3.1, 3.4.1, CenterLight 000043-000044); Ex. 32 (SWHNY-GC HHSA §§ 1.1, 3.3, SWHNY 000244, 000247); Ex. 41 (Wang Dep. (Jan. 7, 2026) 151:3-9); Ex. 116 (GC Resps. to SWHNY's Interrogatories, Resp. to Interrogatory No. 4) (GreatCare "has not deviated from any MLTC authorization at any time.").

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY would regularly contact GreatCare to inquire whether it could assign one of the home health aide it employed to assist one of its members. SWHNY's Rule 56.1 Statement [ECF 253] at ¶ 32. When making this inquiry, SWHNY would provide GreatCare with certain information: the type of care the member required, the location where services would be provided, the dates and times required by that member, and the member's gender and preferred language. Id. at ¶¶ 33-34. If GreatCare confirmed that one of the aides it employed was available, SWHNY would confirm this arrangement by sending a service authorization to GreatCare, as required by law. Id. at ¶ 35. However, GreatCare was solely responsible for selecting and assigning the care workers it employed to assist SWHNY's members. Id. at ¶¶ 35-36. The remaining averments of this paragraph are denied because neither § 1.1 nor § 3.3 of the SWHNY/GreatCare Contract in any manner requires GreatCare to "schedule its aides, including Plaintiffs, within the parameters set by [SWHNY's] authorizations;" those provisions**

**simply do not include this requirement. See SWHNY000244, 000247. Because the cited testimony from Barbara Wang similarly does not support or even address this factual averment, Paragraph 270 violates the requirements of Rule 56.1(d). See Wang Dep. (Jan. 7, 2026) 151:3-9[49]. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

271. The MLTC Defendants' authorizations specified the length of each aide's shift. *See, e.g.,* Friedman Decl., Ex. 65 (CL Auth. Recs. for P.C., CenterLight Confid. 2450-2474); Ex. 115 (SWHNY Auths. for X.Y.W., GC 002880-002907).

**RESPONSE: Denied. The Approval Notices issued by SWHNY do not "specify the length of each aide's shift." See, e.g., GC 002880-002907. These Notices instead state the quantity of hours that SWHNY approved for a specific member (for example, "7 Days, weekly), but they in no way specify or even reference the length of the shift for each aide that would support that member. Id. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

272. When the MLTC Defendants authorized 24-hour, "live-in" services, GreatCare was permitted to schedule only one aide to work the entire 24-hour shift alone. Friedman Decl., Ex. 35 (CL Adms., No. 46).

**RESPONSE: Denied, as the authorizations issued by SWHNY contain no explicit requirement of any kind. See, e.g., SWHNY 002533-002660 (which are attached to the Friedman Decl. at Ex. 72). In addition, these specific averments violate Rule 56.1(c) because**

---

49 Ex. 37 to the Grajek Oct. Decl.

**they lack any citation to record evidence that supports them and that would be admissible at time of trial. In fact, Plaintiffs cite here to the Requests for Admission it served on CenterLight, which were later deemed to be admitted as to CenterLight only. <u>See</u> Ex. 35 to the Friedman Decl. Those admissions have no bearing whatever on SWHNY, especially because the specific request for admission cited herein does not involve SWHNY in any manner. <u>Id.</u> ("Admit that throughout the Relevant Period GreatCare was only permitted to schedule only one aide to work an entire 24-hour shift alone *when CenterLight authorized "live-in" services*.") (emphasis added). Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

273. SWHNY also obligated GreatCare to require its aides, including Plaintiffs, to cooperate with, be bound by, and abide by SWHNY's authorization requirements. Friedman Decl., Ex. 32 (HHSA § 3.3, SWHNY 000247).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that the SWHNY/GreatCare Contract requires GreatCare to ensure its employees cooperate with, be bound by, and abide by certain specific protocols established by SWHNY, including but not limited to its "Authorization requirements." SWHNY000247. The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract.**

274. CenterLight paid GreatCare only for "Covered Services" services that the member care recipient was entitled to under his or her Plan of Care, and CenterLight retained final authority to determine whether such services were reimbursable. Friedman Decl., Ex. 39 (2018 CL/GC Agree. §§ 1.4, 4.1, 4.3, CenterLight 000042, 000047).

**<u>RESPONSE:</u> Admitted in part, denied in part. These averments are admitted only to the extent the contract between CenterLight and GreatCare accurately reflects the contractual rights and responsibilities detailed therein. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of these averments, however, so SWHNY denies them upon information and belief. Further responding, none of these averments relate to SWHNY or to SWHNY's members in any manner; they are therefore wholly immaterial to Plaintiffs' motion for summary judgment against SWHNY.**

275. Hours worked by GreatCare's aides, including Plaintiffs, that differed from SWHNY's authorizations were generally payable only upon the MLTC Defendants' issuance of a new or additional authorization and the MLTC Defendants had no obligation to pay GreatCare for hours worked by aides outside of their authorizations. Friedman Decl., Ex. 40 (Glapa Dep. (Feb. 26, 2026) 106:12-107:21); Ex. 32 (SWHNY-GC HHSA § 4.3, SWHNY 000251- 000252); *see, e.g.,* Ex. 58 (GC HHAX Patient Notes, 92085237, 100002466, 132722006).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that where GreatCare reports that one of its employees worked fewer hours than her full 24 hour live-in shift, a new authorization with the correct codes is necessary before SWHNY will pay GreatCare for those hours. Glapa Dep. (Feb. 26. 2026) at 107:9-21.[50] It is further admitted that the SWHNY/GreatCare Contract provides that SWHNY has no liability to reimburse GreatCare for services provided to its members if those services are not authorized. SWHNY 000251- 000252. The remaining averments are denied. Further responding, these averments – which relate to the payment process when an aide works only a portion of her 24 hour, live-in shift – are not material to any portion of Plaintiffs' motion for summary judgment and**

[50] <u>See</u> Ex. 36 to the Grajek Oct. Decl.

**violate Local Rule 56.1 as a result. The theory underlying Plaintiffs' wage and hour claims is that the Defendants paid them for only 13 hours of the "24-hour, live-in shifts" they worked. Am. Compl. at ¶¶ 8, 10, 60. Plaintiffs do not allege that Defendants failed issue new authorizations if they worked only a portion of their live-in shift.**

276. SWHNY would approve hours worked outside the authorization for medical escorts, which occurred when an aide accompanied a member to a medical appointment that ran longer than scheduled, and emergency services. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 183:18-184:23); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 129:7-133:21); Ex. 32 (SWHNY-GC HHSA § 4.3, SWHNY 000252); Ex. 58 (GC HHAX Patient Notes, 100002466, 146345025, 92085237).

**RESPONSE: Admitted in part, denied in part. It is admitted only SWHNY would, from time to time, approve payment for hours for medical escorts wherein an aide brings a member to a medical appointment and worked beyond her authorized hours. Glapa Dep. (Feb. 26. 2026) at 129:9-21; Glapa Dep. (Jan. 26. 2026) at 183:23-184:23.[51] It is denied that any of the named Plaintiffs would require such approvals; they were all working 24 hour, live-in shifts for SWHNY members and any medical appointments would, of course, fall inside the 24 hours approved by SWHNY. Am. Compl. [ECF 893] at ¶¶ 8, 10, 60, 83. Therefore, these averments are not material to any portion of Plaintiffs' motion for summary judgment and thus violate Local Rule 56.1. Indeed, the violations alleged by Plaintiffs in this matter arise from claims that the Defendants paid them for 13 hours of the "24-hour, live-in shifts" they worked and not because they worked past their allotted shifts. See Am. Compl. [ECF 893], which is devoid of any such allegations.**

[51] Exs. 36 and 37 to the Grajek Oct. Decl.

277. To obtain payment for a medical escort, GreatCare would submit a service request to SWHNY's utilization management team, which reviewed the request and determined whether the additional hours were approved. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 183:23-184:8); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 129:7-23); Ex. 58 (GC HHAX Patient Notes, 77851200, 88367927).

**RESPONSE: Admitted in part, denied in part. It is admitted only that this statement accurately reflects this process. Further responding, these averments – which relate to the payment process regarding a medical escorts wherein an aide brings a member to a medical appointment and works beyond her authorized hours – are not material to any portion of Plaintiffs' motion for summary judgment and violate Local Rule 56.1 as a result. See Response to Paragraph 276.**

278. Per its agreement with GreatCare, SWHNY would also reimburse GreatCare for "emergency services" its aides provided with no requirement that it issue a new authorization. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 4.3, SWHNY 000251-000252).

**RESPONSE: Admitted in part, denied in part. It is admitted only that GreatCare has no liability to reimburse GreatCare for services provided by its employees to SWHNY members that were not authorized, unless those services relate to "Emergency Services" (as defined by the SWHNY/GreatCare Contract). SWHNY000251-000252. The remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract.**

279. Authorization from SWHNY was not a guarantee of payment. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 1.1, SWHNY 000244); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 107:2-7).

**RESPONSE: Admitted in part, denied in part. It is admitted only that SWHNY's authorization of specific services for a member did not guarantee that SWHNY would make a payment to a Licensed Home Care Services Agency (like GreatCare) relating to those services. Glapa Dep. (Feb. 26, 2026) 107:2-7.[52] The remaining averments are denied as incomplete or inaccurate characterizations of the SWHNY/GreatCare Contract.**

280. On [REDACTED], GreatCare requested that SWHNY pay an aide who had accompanied SWHNY's member K.W.P. to the hospital for a full "live-in" shift because the aide had accompanied Ms. P. to the hospital. Friedman Decl., Ex. 117 (GreatCare Fax to SWHNY Case Manager, SWHNY 004516).

**RESPONSE: Admitted in part, denied in part. It is admitted only that on or about March 10, 2020, Wei Yang from GreatCare sent a fax to "Case Manager/Authorization" in which one of GreatCare's employees requested to be "full paid" for her 24 hour live-in shift even though the member at issue went to the hospital midway through that shift. SWHNY004516. It is denied that this fax reflects or substantiates the claim that the aide had accompanied the member to the hospital. Id. The remaining averments are denied as incorrect or incomplete characterizations of the fax record cited within this Paragraph. Further responding, the request at issue in this fax was neither made by any of the fourteen Plaintiffs with claims in this action nor relates to any of the specific violations Plaintiffs allege herein. These averments therefore violate Local Rule 56.1 because they are completely immaterial to Plaintiffs' motion for summary judgment.**

281. On [REDACTED], Plaintiff Xiu F. Chen worked only two hours that day because her care recipient, X.Y.W., was admitted into the hospital. Friedman Decl., Ex. 10 (HHAX EVV

---

52 Ex. 36 to the Grajek Oct. Decl.

Rec. for X. Chen); Ex. 58 (GC HHAX Patient Note for X.Y.W., 48662389); Ex. 118 (SWHNY Revised Auth. for Member X.Y.W., SWHNY 005616-005617).

**<u>RESPONSE:</u> Denied. None of the records cited by Plaintiffs in this Paragraph support these averments or stand for what Plaintiffs claim them do. Neither the HHAX records included in Ex. 10 to the Friedman Decl. not the Approval Notice cited herein indicate that Plaintiff X. Chen worked only 2 hours on March 22, 2021 or that her care recipient, X.Y.W., was admitted into the hospital. SWNHY005616-005617. In fact, the Approval Notice cited in this Paragraph does not mention Ms. Chen or a hospital admission in any manner. <u>Id.</u> Furthermore, patient note ID 48662389 (Ex. 58 to the Friedman Decl.) does not reflect the number of hours this Plaintiff worked on March 22, 2021 nor when this member was admitted to the hospital. As a result, these averments are wholly unsubstantiated by record evidence and do not comply with Rule 56.1(d).**

282. GreatCare reported the reduced hours to SWHNY, who responded by revising the authorization for that single date, converting Ms. W.'s 24-hour live-in per diem into two hourly units so that payment would match the hours worked. *Id.*; Ex. 40 (Glapa Dep. (Feb. 26, 2026) 105:2-106:5).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that during her deposition, Nikia Glapa reviewed an Approval Notice dated April 6, 2021 (SWNHY005616-005617) and interpreted it to mean that SWHNY revised an authorization and approved 2 hours of home-based personal care for the member at issue. Glapa Dep. (Feb. 26, 2026) 105:2-106:5.[53] It is denied that the documents cited in this Paragraph (the HHAX records, Approval Notice, and patient note ID 48662389) in any way substantiate that GreatCare "reported the**

---

[53] Ex. 36 to the Grajek Oct. Decl.

**reduced hours to SWHNY" or that SWHNY converted the member's "24-hour live-in per diem into two hourly units so that payment would match the hours worked." See SWNHY005616-005617 and Exs. 10 and 58 to the Friedman Decl. These documents do not at all reflect those facts. Further responding, Plaintiff X. Chen does not allege that she was not paid for the two hours that she worked on March 22, 2021. These averments are therefore immaterial, without evidentiary support, and violate Local Rule 56.1.**

283. SWHNY also approved and denied requests to authorize its members to receive the medical supplies used by aides, including incontinence products, nonsterile gloves, enteral/nutritional supplements, and durable medical equipment such as commodes and walkers. *See, e.g.,* Friedman Decl., Ex. 119 (SWHNY Approval Notices for S.K.C.-1, SWHNY 002586-002623); Ex. 120 (SWHNY Adverse Determs. for Member S.K.C.-1, SWHNY 002541-002547, 002596-2605).

**RESPONSE: Denied. To the contrary, SWHNY would approve and deny requests to authorize medical supplies (such as pull-up underwear, disposable underpads, and rubber gloves) and durable medical equipment (such as a walker or a commode) for the use and benefit of the members making that request. See SWHNY 002586-002588, 002591-002595; 002541-002547, 002596-2605, 004267-004269. SWHNY denies that SWHNY would authorize its members to receive medical supplies used by their aides. See, e.g., SWHNY002598-002599 ("According to New York State Medicaid guidelines you will qualify for gloves if you have medical needs for gloves. Gloves for employees or care givers' use as protective equipment are not covered under this benefit.")**

**d. GreatCare's financial dependence on the MLTC Defendants**

284. GreatCare billed CenterLight, SWHNY, and the other non-defendant MLTCs for

work performed by Plaintiffs. *See, e.g.,* Friedman Decl., Ex. 62 (Sample Billing vs. Payroll Report for Xiu F. Chen); Ex. 123 (HHAX Invoices, GC 008307-008318).

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that GreatCare would bill SWHNY for services provided by GreatCare's employees to SWHNY's members. SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight and "the other non-defendant MLTCs," so SWHNY denies them upon information and belief. Further responding, these averments violate Rule 56.1(c) because they lack a citation to record evidence that supports them and that would be admissible at time of trial. In fact, neither the duty sheets nor "sample billing vs. payroll" records cited here support Plaintiffs' summary of the billing process. See Exs. 62 and 123 to the Friedman Decl.**

285. GreatCare's billing was done through, or recorded in, HHAX. *Id.*

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments regarding GreatCare, so SWHNY denies them upon information and belief. Further responding, these averments violate Rule 56.1(c) because they lack a citation to record evidence that supports them and that would be admissible at time of trial. Neither the duty sheets nor the "sample billing vs. payroll" records cited here support that GreatCare's billing was "done through, or recorded in, HHAX." Id. Further responding, this Paragraph is incomprehensible as worded because it is unclear what "done through" means with regard to GreatCare and its billing processes.**

286. Pursuant to their contracts with GreatCare, CenterLight and SWHNY reimbursed GreatCare for 24-hour, "live-in" shifts at a per diem rate that covered only 13 hours per shift. *See, e.g.,* Friedman Decl., Ex. 32 (SWHNY/CG HHSA, Amend. 12, SWHNY 000232-000233);

Ex. 39 (2018 CL/GC Agree., Exhibit B, CenterLight 000058); Ex. 40 (Glapa Dep. (Feb. 26, 2026) 85:6-15); Ex. 51 (Wang Dep. (May 1, 2026) 13:18-23, 15:13-19).

**RESPONSE: Denied. SWHNY reimbursed GreatCare at a per-diem rate for 24-hour, "live-in" shifts with per-diem standardized to 13 hours of service because the New York State Department of Labor excludes designated rest and meal times from compensable work hours. See 12 NYCRR § 142-2.1(b) and the Miscellaneous Industries and Occupations Minimum Wage Order that interprets and clarifies it.[54] ("Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938…for a home care aide who works a shift of 24 hours or more"); id., SWHNY 000232-000233. These averments are further denied because the cited testimony from Nikia Glapa in no way supports the averments in this Paragraph.[55] Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

287. CenterLight and SWHNY reimbursed GreatCare for hourly and split-shift care services in 15-minute increments. Friedman Decl., *See, e.g.,* Ex. 32 (SWH/GC HHSA, Amend. 1, SWHNY 000187); Ex. 39 (2018 CL/GC Agree., 000058).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the First Amendment to the SWHNY/GreatCare Contract provides that SWHNY was to reimburse GreatCare for personal care services (hourly and split shift) "per 15 minutes." SWHNY 000187. The**

---

[54] See https://forms.labor.ny.gov/WP/CR142.pdf

[55] It is unclear how the cited testimony, included here in full, supports this fact in any manner: "I think you're kind of doing, again, it is a per diem rate, 13 hours up to 24 hours. The per diem rate is not an hourly breakdown by any means. It is in their contract, they are expected, it is a live-in case to provide that 24-hour care which is the definition of a live-in code. If they are not doing it, they are in violation of their contract." Glapa Dep. (Feb. 26, 2026) 85:6-15

**remaining averments are denied as stated as incorrect or incomplete characterizations of the explicit language of the Contract. Further responding, SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments relating to CenterLight, so SWHNY denies them upon information and belief.**

288. According to SWHNY's corporate representative, GreatCare's responsibility was to be a "passthrough" for the funds flowing from SWHNY to the aides, including the Plaintiffs. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 192:4-15).

**<u>RESPONSE:</u> Denied. GreatCare's responsibility was not to be a "passthrough" for the funds flowing from SWHNY to GreatCare's employees, and Ms. Glapa never testified that this was the case. To the contrary, Ms. Glapa's testimony simply explained the process by which SWHNY paid GreatCare for the services that its employees provided to SWHNY members. Glapa Dep. (Jan. 26, 2026) 192:4-15.[56] Ms. Glapa further explained that GreatCare, as a recipient of these funds from SWHNY, was "accountable for" complying with all applicable wage and hour laws when paying its own employees. <u>Id.</u>; <u>see</u> <u>also</u> 190:17-191:5. The remaining averments are denied as incomplete or incorrect characterizations of Ms. Glapa's testimony.**

289. GreatCare's corporate representative, Barbara Wang, testified that GreatCare's ability to pay its aides was dependent on SWHNY. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 160:8-161:9).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that Barbara Wang testified that she remembered "saying that GreatCare's ability to pay the aides is dependent**

---

[56] Ex. 35 to the Grajek Oct. Decl.

**on Senior Whole Health." Wang Dep. (May 15, 2026) 160:18-21.[57] However, when asked what she meant by that statement, Ms. Wang clarified simply that SWHNY "paid [GreatCare], according that we billed hours, according to the authorization that SWHNY issued." <u>Id.</u> at 161:2-9; 162:25-163:9 (confirming that "SWHNY paid GreatCare for the services that GreatCare is providing to [SWHNY]…and then GreatCare pays the aides[.]") Ms. Wang also admitted that the party with the ultimate responsibility to pay the aides was GreatCare: "if [SWHNY] pay us low rate, no matter they pay us low rate or high rate, [GreatCare] have to pay the aides minimum wage according to the state requirement, so if we don't think the rate is okay for us, we can end up the contract or we can not take the patient." Wang Dep. (May 1, 2026) 23:17-22.[58] SWHNY, in fact, has no insight into how GreatCare compensated the Plaintiffs because "[t]hat's between [GreatCare] and their employees." N. Glapa Dep. (Jan. 26, 2026) 165:7-20[59] ("we [SWHNY] reimburse GreatCare in accordance with the [NYS]DOH contract that we have, and however GreatCare pays their aides, we don't have line of sight into that. We do, based on our contract, have language in there where we put that onus back on them to ensure that they are paying their aides appropriately with wage parity, minimum wage requirements, et cetera.")**

290. Ms. Wang testified that GreatCare's ability to pay its aides the legal minimum wage depended on how much SWHNY paid GreatCare. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 20:4-21:21).

**<u>RESPONSE:</u> Denied. When asked whether "it be fair to say that GreatCare's ability to pay its aides the legal minimum wage depends on how much [SWHNY] pays GreatCare," she**

---

57 <u>Id.</u> at Ex. 39.
58 Grajek Oct. Decl. at Ex. 38.
59 <u>Id.</u> at Ex. 35.

**responded by saying "should be" and then clarified her response: "my understanding is, we follow the state rule, and then if [SWHNY] give us the rate, which is not, I feel like, can cover our cost, we still have to pay minimum wage to the aides…and the only thing, that we can either not take their patient or end up the contract." Wang Dep. (May 1, 2026) 20:24-21:24. In other words, Ms. Wang testified that GreatCare was solely responsible for paying its employees the minimum wage, no matter what SWHNY paid to GreatCare. <u>Id.</u>; <u>see</u> <u>also</u> 23:17-22 ("if [SWHNY] pay us low rate, no matter they pay us low rate or high rate, [GreatCare] have to pay the aides minimum wage according to the state requirement); N. Glapa Dep. (Jan. 26, 2026) 165:7-20 (explaining that SWHNY reimburses GreatCare pursuant to state mandates and contractual requirements, but GreatCare is solely responsible for ensuring it pays its aides in a manner that complies with wage and hour laws).**

291. In an August 9, 2024 email to SWHNY, Ms. Wang wrote that the rate SWHNY offered was "not enough to pay the caregivers[‘] salaries" and that "[w]ith this rate we won't be able to sustain our operations," and she asked SWHNY to "re-evaluate the contract amount ... that we can continue our business." Friedman Decl., Ex. 124 (Email from Wang to M. Ritchie, SWHNY 001084).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that this Paragraph accurately reflects what Barbara Wang wrote in this August 9, 2024 email. SWHNY 001084. SWHNY denies that it was responsible to ensure that the amounts it paid GreatCare would allow GreatCare to sustain its business. SWHNY paid GreatCare according to contracted rates and the authorizations that SWHNY issued. Wang Dep. (May 15, 2026) 161:2-9; 162:25-163:9 (in which Barbara Wang confirm that's SWHNY paid GreatCare for the**

**services that GreatCare is providing to [SWHNY]…and then GreatCare pays the aides[.]")[60] Ms. Wang admitted GreatCare was required to pay its employees the state-mandated minimum wage for the hours that its employees worked, no matter what rate is paid by SWHNY. Wang Dep. (May 1, 2026) 23:17-22. Ms. Wang also admitted that if the rate offered by SWHNY for a specific assignment met the state requirement but was insufficient to cover GreatCare's expenses, GreatCare could simply reject the assignment. Id. The remaining averments are denied as incomplete or inaccurate characterizations of this communication.**

## VI. The MLTC Defendants' Nursing Supervision

### a. CenterLight Nursing Supervision

292. As per its contract with GreatCare, during CenterLight's assessment visits, CenterLight's nurses provided supervision of home health aides and personal care workers. *See, e.g.,* Friedman Decl., Ex. 37 (Ding Decl. ¶¶ 5, 12-14); Ex. 39 (CL/GC Agree., § 3.8.2, CenterLight 000045); Ex. 113 (CL-GC E-mail, GSD GC-002711); Ex. 35 (CL Adms. Nos. 30, 31)[1]; Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003466, 003486, 003539); Ex. 66 (Hei Li Decl. ¶¶ 27-29).

**RESPONSE: SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

293. One nurse employed by CenterLight was Qi Ding. Friedman Decl., Ex. 37 (Ding Decl. ¶¶ 3, 4); Ex. 35 (CL Adms. Nos. 26-27); *see, e.g.,* Ex. 38 (CL Ass. Recs. for P.C.,

---

[60] The Barbara Wang depositions cited in this paragraph are Ex. 39 (May 15, 2026) and Ex. 38 (May 1, 2026) to the Grajek Oct. Decl.

CenterLight Confid. 003466-003468, 003611-003613).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

294. At each assessment, Ms. Ding evaluated CenterLight member P.C.'s activities of daily living and would give the aide present instructions on how to provide care to Mr. C.. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003115-003116, 003118, 003120); Ex. 37 (Ding Decl. ¶ 12).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

295. Ms. Ding would also review the assessment with the aide and explain it carefully. Friedman Decl., Ex. 37 (Ding Decl. ¶ 14).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

296. Ms. Ding and other nurses sent to assess Mr. C. often instructed Mr. C.'s aides on Mr. C.'s care tasks, including personal care, meal preparation, monitoring and reporting signs of cardiac dysfunction, monitoring hypertension, and diet. *See, e.g.,* Friedman Decl., Ex. 38 (CL Ass. Recs. for P.C., CenterLight Confid. 003466-003468, 003476, 003496).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

297. Ms. Ding and other nurses also instructed the aides to follow CenterLight's plan of care for Mr. C., reinforcing healthier habits, precautions and infection control. *Id*. at 003650-003651, 003670-003677; Friedman Decl., Ex. 35 (CL Adms. Nos. 30, 31); Ex. 37 (Ding Decl. ¶¶ 12, 14); Ex. 66 (Hei Li Aff. ¶¶ 27-29, 34).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

298. CenterLight required that records relating to the services be retained for at least ten years from the termination of the agreement. Friedman Decl., Ex. 39 (2018 CL/GC Agree., paragraph 7, CenterLight 000082).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, including those regarding CenterLight, its nurses, and its members. Upon information and belief, they are denied. It is further denied that any action or inaction by CenterLight has any bearing on SWHNY.**

299. In the member care recipients' homes, SWHNY's nurse assessors "instructed" and "educated" GreatCare's aides, including the Plaintiffs, on how to care for the member. *See, e.g.,* Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003847, 003849, 003854); Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY 005382, 005399); Ex. 56 (Zhang

Dep. 63:20-64:25).

**RESPONSE: Admitted in part, denied in part. It is admitted only that as part of routine assessments of SWHNY members, nurse assessors would provide guidance and education to home health aides, the members at issue, and their family caregivers regarding that member's safety and care. See, e.g., SWHNY002270 & 2329 ("Educated *daughter and PCA* on importance of proper perineal care"); SWHNY 001987 ("ARN educated *aide and daughter* on the importance of proper cleaning and frequent cleaning in the case of skin breakdown") (emphasis added to both). The remaining averments are denied, including any suggestion that SWHNY's nurse assessors "instructed" and "educated" GreatCare's aides for any reason other than to ensure the member was receiving appropriate care. See previous citations within this paragraph.**

300. On July 27, 2018, SWHNY's nurse "educated" Plaintiff Xiu F. Chen at member care recipient X.Y.W.'s home on caring for skin hygiene and using a "4-legs cane" for Ms. W.'s walking and transferring. On January 28, 2019, SWHNY's nurse "educated" Plaintiff Xiu F. Chen on maintaining Ms. W.'s skin hygiene and using a walking aid. Friedman Decl., Ex. 49 (SWHNY Ass. Recs. for X.Y.W., SWHNY005321 (identifying aide), 005322, 005326, 005328, 005375 (identifying aide), 005380, 005382, 005399, 005400); Ex. 56 (Zhang Dep. 64:2-8).

**RESPONSE: Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. SWHNY's nurse assessor did not provide instruction and guidance regarding the care of two members (X.Y.Z. and Ms. W) solely to the aide (the "PCA"); the assessor provided it to the aide and to the member. See SWHNY005326, 005380, & 005399 ("*Member/PCA* educated on inspecting skin daily and keeping skin clean"); SWHNY 005328, 005382 ("RN educated**

***member/PCA* to use the walking aid when walking and/or transferring"); SWHNY 005400 ("RN educated *member/PCA* to use the 4 legs cane when walking and/or transferring") (emphasis added to all).**

301. On December 13, 2016, SWHNY's nurse "educated" a GreatCare aide in member care recipient S.K.C.-1's home on proper perineal and skin care, and on May 31, 2017, a SWHNY's nurse "educated" a GreatCare aide on maintaining her proper perineal and skin care. Friedman Decl., Ex. 46 (SWHNY Ass. Recs. for S.K.C.-1, SWHNY 002266 (identifying aide), 002270, 002325 (identifying aide), 002329).

**<u>RESPONSE:</u> Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. SWHNY's nurse assessors did not provide instruction and guidance regarding the care of this member solely to the aide; the assessors provided it to both the aide <u>and</u> to the member's daughter. <u>See</u> SWHNY002270, 002329 ("Educated *daughter and PCA* on importance of proper perineal care") (emphasis added). SWHNY further denies that any of the cited assessments establish (or even suggest) that SWHNY was controlling or supervising the Plaintiff aides through "education."**

302. On May 9, 2019, SWHNY's nurse "educated" Plaintiff Xiu X. Zhu in Ms. C.'s home on proper and frequent cleaning to prevent skin breakdown. *Id.* at SWHNY 001982 (identifying aide), 001987.

**<u>RESPONSE:</u> Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. SWHNY's nurse assessor did not provide instruction and guidance regarding the care of this member solely to the aide; the assessor provided it to both the aide <u>and</u> to the member's daughter.**

**<u>See</u> SWHNY001987 ("ARN educated *aide and daughter* on the importance of proper cleaning and frequent cleaning in the case of skin breakdown") (emphasis added).**

303. On November 10, 2019, SWHNY's nurse "educated" Plaintiff Zhu H.L. Lin in member care recipient S.K.C.-1's home on how to maintain proper skin hygiene and the prevention of urinary tract infections. *Id.* at SWHNY 002125 (identifying aide), 002130.

**<u>RESPONSE:</u> Denied. These averments are inaccurate characterizations of these records, which reflect that a nurse assessor provided instruction and guidance regarding a member to that member's "caregivers" or family members and <u>not</u> to the aide from GreatCare. <u>See</u> SWHNY002130 ("RN educated *caregivers* of proper skin hygiene and prevention of UTI.") (emphasis added); <u>see</u> <u>also</u> Glapa Dep. (Feb. 26, 2026) 91:10-17 (recognizing the distinction between home health aides and family caregivers). This distinction is further obvious because throughout this same assessment – indeed, in the same paragraph cited by Plaintiffs – the nurse assessor refers to the GreatCare employee servicing the member as the "aide" and not as a "caregiver." <u>Id.</u> ("Per *aide*, [member] use pull ups 24/7 for occasional urinary and bowel incontinence."); <u>see</u> <u>also</u> 002125 ("*PCA* from Great care home care – 7d/24 hours") and SWHNY002132 "[Member] is able to self administer her meds with reminders and *aide* assistance of glass of water") (emphasis added to all).**

304. On March 21, 2019, SWHNY's nurse "educated" a GreatCare aide in member care recipient X.J.L. 's home on fall precautions and skin breakdown prevention, on September 21, 2019, on Ms. L.'s medication and diuretic schedule, energy conservation, hand hygiene during flu season, and preventive screenings, and on March 12, 2020 about fall precautions. Friedman Decl., Ex. 50 (SWHNY Ass. Recs. for X.J.L., SWHNY 002794 (identifying aide), 002799, 003034-003035 (identifying aide), 003039, 003041, 003043, 003130 (identifying aide),

003135).

**<u>RESPONSE:</u> Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. SWHNY's nurse assessor did not provide instruction and guidance regarding the care of this member solely to the aide; the nurse assessor instead provided this guidance to both that member's "caregivers" and to the member's aide/PCA. <u>See</u> SWHNY002799 ("*family and aide* were educated about the measures of prevention of skin breakdown"); SWHNY003041 ("*PCA/[member] caregiver* are educated about safety precautions, [member's] medications compliance"); SWHNY003135 ("Fall prevention advised to *family and aide*") (emphasis added to all). SWHNY further denies these averments because several of the cited assessments reflect that guidance was provided *solely* to the member's caregiver/family member and not to the GreatCare aide. <u>See</u> SWHNY003039 ("Member *caregiver* was educated on CDPAS program and verbalized understanding but declines at this time" and "Member *caregiver* instructed on the proper [member's] use or diuretics and medication schedule");[61] SWHNY 003041-003043 ("[member] *caregiver* was educated on the importance of keeping [member] up to date with recommended routine preventatives and screenings for optimal health and wellness…Also educated [member] *caregiver* in other preventive measures during flu season") (emphasis added to all).**

305. On March 11, 2023, the nurse also taught Ms. L.'s aide to make sure that the window and door were always locked to prevent Ms. L. from wandering outside of her

[61] The distinction between aide/PCA and family member caregiver is again made clear on this same page, in which the nurse assessor references them in wholly different ways: the member "requires assistance from the *aid* for laundry, housekeeping, shopping her personable. She is able to feed herself but requires meal set up, supervision. *Member caregiver* was educated on CDPAS program and verbalized understanding but declines at this time." SWHNY00303

apartment; to establish a toileting schedule for Ms. L.; on strategies that could significantly help to decrease the risk of falls; and to have Ms. L. follow a low salt and low cholesterol diet. *Id.* at SWHNY 0001630.

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that this assessment reflects that the nurse assessor recorded that she "[t]aught PCA to make sure the window and the door were always locked" after the PCA communicated the member exhibited "wandering behavior." SWHNY001630. SWHNY also admits that this assessment report indicates that the nurse assessor educated the aide "on the importance of proper skin care and hand hygiene" and taught her "to establish toileting schedule Q 2-3 hours." Id. The remaining averments are denied as incomplete or inaccurate characterizations of the cited assessments.**

306. On March 28, 2018, SWHNY's nurse "instructed" an unnamed GreatCare aide in member care recipient K.W.P.'s home on incontinence care, the use of hot compression to relieve pain, and the importance of preventative care, and on September 11, 2018, SWHNY's nurse "educated" and "instructed" a GreatCare aide on how to reposition Ms. P. to avoid pressure on the same area, incontinence care, how to clean and apply lotion to the anal area after toileting, and the use of hot compression to relieve pain. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P., SWHNY 003686 (identifying aide), 003691; 004072 (identifying aide), 004077, 004079, 004095.

**RESPONSE:** **Admitted in part, denied in part. It is admitted only that as part of assessments on March 28, 2018 and Sept. 11, 2018, a SWHNY nurse assessor instructed a GreatCare PCA in the presence of the member and her spouse "regarding incontinence care" because the member was occasionally incontinent and used diapers. SWHNY003691, 004077, 004095.**

**During the same assessment on September 11, 2018, the nurse assessor "educated [the member's] spouse and PCA to change position frequently, and use soft pillow pad in different parts to avoid pressure on same area" and on the "importance of preventative care." Id.; see also SWHNY004095, 004097. It is further admitted that during the March 28, 2018 assessment, the member was "unable to participate in [the] pain assessment due to fatigue and impaired conditions," so her aide stepped in to communicate the member's complaints and receive instruction on pain reduction. SWHNY004079. The remaining averments are denied as incomplete or inaccurate characterizations of the cited assessments.**

307. On September 10, 2018, SWHNY's care manager spoke by phone with Ms. P.'s GreatCare aide and "educated" her on the importance of seeking medical attention for any observed change in the member care recipient's condition, such as eating less or increased lethargy. Friedman Decl., Ex. 125 (SWHNY Case Management ("CM") Notes for K.W.P., SWHNY 001704).

**RESPONSE: Admitted in part, denied in part. It is admitted only that the cited document reflects a phone call involving a SWHNY care manager on September 10, 2018. Further responding, this record demonstrates that SWHNY's case manager followed up with the "member's spouse" regarding "hospital discharge and member's oral intake" and educated "spouse and the substitute aide…on the importance of seeking medical attention…[if] member is not eating/eating less and increased in lethargy." SWHNY 001704. The remaining averments are denied as incomplete or inaccurate characterizations of the cited notes.**

308. On March 4, 2019, SWHNY's nurse "educated" Plaintiff Zhan J. Li in member care recipient Ms. P.'s home on how to reposition Ms. P., pain relief, and how to clean and apply fungal cream to anal irritation. Friedman Decl., Ex. 48 (SWHNY Ass. Recs. for K.W.P.,

SWHNY 003842 (identifying aide), 003847, 003849, 003854).

**<u>RESPONSE:</u> Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. On March 4, 2019, SWHNY's nurse assessor did not educate the aide on the member's care apart from the member and her spouse; in fact, these records demonstrate that during this single visit with the member, her spouse, and the aide, the nurse "educated [the member's] spouse and PCA" on best practices to avoid pressure ulcers and "instructed [the] PCA on incontinence care," on techniques to reduce low back pain, and on how to apply anal cream during that same conversation with the member's spouse and the PCA. SWHNY003847, 003849, 003854. The remaining averments are denied, including any suggestion that this conversation with the PCA and the member's spouse regarding the member's health and care indicates SWHNY was controlling or supervising the Plaintiff.**

309. On September 11, 2018, SWHNY's nurse "educated" member care recipient P.C.P.'s GreatCare home aide on proper skin care and frequent undergarment changes to prevent skin breakdown, and on March 4, 2019, SWHNY's nurse "educated" a GreatCare aide on Mr. P.'s proper skin care and frequent undergarment changes to prevent skin breakdown. Friedman Decl., Ex. 47 (SWHNY Ass. Recs. for P.C.P., SWHNY 004831 (identifying aide), 004836, 004838, 004980 (identifying aide), 004985, 005004).

**<u>RESPONSE:</u> Denied. These averments are incomplete and inaccurate characterizations of these records because they omit crucial information regarding this interaction. These records are clear that SWHNY's nurse assessor provided instruction and guidance regarding the care of this SWHNY member to <u>both</u> the aide and the member herself. <u>See</u> SWHNY004836, 004985, 005004 ("*Member and PCA* were educated on importance of proper**

**skin care and frequent undergarment changes to prevent skin breakdown.") (emphasis added). During these same visits, the nurse assessor also educated and instructed the member regarding her own care. See, e.g., SWHNY004838 ("[i]nstructed *member* to f/u with MD if pain not relieved or gets worse"); SWHNY005004 ("Recommended member to use heat compression on pain area, gentle massage pain area, gets adequate rest daily and discuss any uncontrolled/increased pain w MD if occurs…Educated member on risk of continuing to smoke and advantages of quitting"). The remaining averments are denied as incomplete or inaccurate characterizations of the cited assessments.**

310. SWHNY's care managers made periodic telephone calls to the member care recipients, during which they confirmed the member's authorized services and reviewed the member's plan of care; on these calls, the care manager sometimes spoke with and educated the member care recipient's aide, including Plaintiffs and other GreatCare aides. *See, e.g.*, Friedman Decl., Ex. 126 (SWHNY CM Notes for X.Y.W., SWHNY 001853, 001854); Ex. 125 (SWHNY CM Notes for K.W.P., SWHNY 001704).

**RESPONSE: Admitted in part, denied in part. It is admitted only SWHNY care managers would, from time to time, speak with member care recipients, the member's caregivers, and/or the aides supporting that member to discuss certain issues regarding the member's condition and plan of care. The remaining averments are denied, as this generalized and sweeping averment regarding Plaintiffs and other GreatCare aides is not supported by either of the two case manager notes cited therein. Indeed, neither of them involve a SWHNY care manager calling a member. See SWHNY 001853-001854 (wherein a member with a hearing disability, described herein as "HOH" or "hard of hearing," called SWHNY with her aide to report a damaged wheelchair and to obtain information about where a new wheelchair could**

**be purchased); SWHNY 001704 (where SWHNY called a member's spouse to discuss the member's hospital discharge and oral intake). Accordingly, this Paragraph violates Rule 56.1(d) because it lacks any evidentiary support.**

311. A SWHNY care manager "educated" Plaintiff Mu Z. Zhang on a telephone calls on:

i. January 9, 2018, about applying warm compression to member care recipient X.Y.W.'s right knee to promote pain relief, provide scheduled toileting to prevent incontinence, and follow up with the audiologist regarding the member's hearing (Friedman Decl., Ex. 126 (SWHNY CM Notes for X.Y.W., SWHNY 001876, 001877).

j. February 7, 2018, about placing Ms. W.'s walker in front of the bedside commode to assist with safe transfers, and on scheduled toileting. Friedman Decl., *Id.* at SWHNY 001873, 001874, 001875.

k. March 6, 2018, about emergency preparedness and scheduled toileting to prevent incontinence. *Id.* at SWHNY 001870, 001872.

l. March 8, 2018, on communicating all of the member's symptoms to her physician, and scheduled toileting to prevent incontinence. *Id.* at SWHNY 001869).

m. July 3, 2018, regarding the member's health care proxy. *Id.* at SWHNY 001863.

n. August 1, 2018, on contacting SWHNY's care management team about any change in the member's health condition. *Id.* at SWHNY 001858.

o. September 4, 2018, on applying warm compression to promote pain relief

and on the importance of rest periods before and after activities of daily living, such as meals and bathing *Id.* at SWHNY 001857.

p. November 5, 2018 and December 3, 2018, on pain relief. *Id.* at SWHNY 001853-001855.

**RESPONSE: Admitted in part, denied in part. It is admitted only certain dates in 2018, a member contacted SWHNY and asked that a care manager speak directly with her aide (Mu Z. Zhang). See, e.g., SWHNY001847. Each of these entries begin the same way, with a note that the member needed the care manager to speak directly to her aide because she had a hearing disability (noted as "HOH" in the cited record). See SWHNY001847, 001853-001859, 001863, 001869-001870, 001872-001878 ("Member reached and advised to speak to PCA Zhang, Muzhen due to HOH.") It is further admitted that during these calls, Ms. Zhang spoke for the member and communicated information regarding the member's medical issues and conditions of living in the presence of that member. Id. Because the member had a hearing disability, all instructions regarding her care were provided to the aide who was not hard of hearing. Id. The remaining averments are denied to the extent they do not accurately or completely reflect the records cited by Plaintiff in this Paragraph.**

312. In addition to supervision, SWHNY also provided GreatCare with mandatory trainings for GreatCare to give its aides. Friedman Decl., Ex. 42 (Glapa Dep. (Jan. 26, 2026) 224:16-226:23); Ex. 44 (Wang Dep. (May 15, 2026) 208:9-21); Ex. 128 (SWHNY Training Ltr., SWHNY 001236); Ex. 129 (SWHNY Training Materials, SWHNY 001221-001230); Ex. 130 (SWHNY Training Attestation, SWHNY 001235).

**RESPONSE: Admitted in part, denied in part. It is admitted only that from time to time, SWHNY would pass down certain training requirements to LHCSAs like GreatCare when**

**the NYSDOH required that SWHNY do so. Glapa Dep. (Jan. 26, 2026) 224:16-225:6.[62] The remaining averments are denied, including that SWHNY ever provided direct training to the Plaintiffs or to any other home healthcare workers. SWHNY's Rule 56.1 Statement [ECF 253] at ¶ 43.**

313. SWHNY periodically audited GreatCare to ensure compliance with all of its contractual obligations. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 73:3-74:3); Ex. 44 (Wang Dep. (May 15, 2026) 53:10-54:14); Ex. 131 (GC RFA Resp. to SWHNY, Nos. 12, 44).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that SWHNY performed onsite audits of GreatCare and reviewed relevant records (including member files, aide files, and timesheets) to ensure compliance. B. Wang Dep. (May 1, 2026) 73:3-74:8; B. Wang Dep. (May 15, 2025) 17:7-11, 53:10-54:14, 55:7-14, 116:25-117:11, 139:21-140:10.[63] The remaining averments are denied as incomplete or inaccurate characterizations of the cited testimony. SWHNY further denies that GreatCare's response to Request for Admission 12 in any way support this statement, neither SWHNY's request nor GreatCare's response relate to audits in any manner.**

314. When it audited GreatCare, SWHNY went to GreatCare's office and had GreatCare provide the names of the aides assigned to specific members. Friedman Decl., Ex. 44 (Wang Dep. (May 15, 2026) 52:14-53:5); Ex. 51 (Wang Dep. (May 1, 2026) 74:11-13).

**<u>RESPONSE:</u> Admitted in part, denied in part. It is admitted only that SWHNY's audits of GreatCare involved onsite visits and requests for GreatCare to identify the aides servicing SWHNY members. The remaining averments are denied as they do not reflect the full scope**

---

[62] Grajek Oct. Decl. at Ex. 35.

[63] <u>See</u> Ex. 39 (May 15, 2026 Deposition) and Ex. 38 (May 1, 2026 Deposition) to the Grajek Oct. Decl.

**of what the SWHNY audits involved. See Wang Dep. (May 15, 2026) 52:14-53:5.[64]**

315. In its audits, SWHNY reviewed the files of the aides assigned to its members, which included each aide's physical examination, employment application, employment agreement, New York Department of Labor forms, and performance evaluations. Friedman Decl., Ex. 51 (Wang Dep. (May 1, 2026) 73:7-11); Ex. 44 (Wang Dep. (May 15, 2026) 43:6-15, 52:21-53:9); Ex. 131 (GC RFA Resp. to SWHNY, No. 44).

**RESPONSE: Admitted in part, denied in part. It is admitted only that during audits, SWHNY would review the aides' files and that the files included many of the documents listed herein. Wang Dep. (May 15, 2026) 52:21-53:9.[65] It is denied, however, that any of the cited testimony or documents confirm or even suggest that SWHNY would review all of these documents for each aide during the audit.**

316. SWHNY required GreatCare to maintain all records relating to the aides' services for a minimum of ten years. Friedman Decl., Ex. 32 (SWHNY-GC HHSA § 7.4, SWHNY 000257).

**RESPONSE: Admitted in part, denied in part. It is admitted only that § 7.4 of the SWHNY/GreatCare Contract requires that "[a]ll records required under the terms of this Agreement shall be maintained for a minimum of ten (10) years, or in certain instances described in applicable Medicare Advantage regulations, for periods in excess of ten (10) years." See SWHNY000257. It is denied that this provision specifically requires GreatCare "to maintain all records relating to the aides' services" for ten years. Id.**

317. Plaintiffs filed wage theft complaints against GreatCare with the New York State

---

[64] Id. at Ex. 39.
[65] See Ex. 39 to the Grajek Oct. Decl.

Department of Labor ("DOL") on or about the following dates:

q. Plaintiff Hei Li on or about July 20, 2022;

r. Plaintiff Zhu H.L. Lin May 25, 2022;

s. Plaintiff Li Chen on or about May 1, 2021;

t. Plaintiff Mei F. Chen on or about May 1, 2022;

u. Plaintiff Xiu F. Chen on or about August 8, 2022;

v. Plaintiff Hui He on or about September 1, 2022;

w. Plaintiff Hui Li on or about October 30, 2022;

x. Plaintiff Zhan J. Li on or about September 8, 2022;

y. Plaintiff Hui X. Ruan on or about May 12, 2022;

z. Plaintiffs Jian R. Xiao and Mei Z. Xiao on or about May 18, 2023;

aa. Plaintiff Mu Z. Zhang on or about September 12, 2023;

bb. Plaintiff Bi Y. Zheng on or about November 11, 2021; and

cc. Plaintiff Xiu X. Zhu on or about January 3, 2021. Friedman Decl., Ex. 132 (Plaintiffs' DOL Complaint Forms, GSD-000839-000953).

**<u>RESPONSE:</u> SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted. SWHNY denies that any of the listed complaints were filed against SWHNY and/or implicate SWHNY in any manner.**

318. In November 2017, GreatCare and its principal and corporate representative, Barbara Wang, were sued in a New York State Supreme Court class action regarding their failure to pay aides who worked 24-hour shifts for all hours worked; the Parties entered into a settlement agreement resolving those claims in 2023. Friedman Decl., Ex. 133 (Settlement Agreement,

GSD 05.01.2026-000001-08).

**RESPONSE:** **SWHNY lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph of Plaintiffs' Statement. Upon information and belief, admitted.**

Dated: New York, New York
October 16, 2026

By:

*/s/Kaitlyn Grajek*
Kaitlyn Grajek, Esq.
**STRADLEY RONON STEVENS & YOUNG, LLP**
100 Park Avenue, Suite 2000
New York, NY 10017
862.682.7255
kgrajek@stradley.com

*Attorneys for Defendant/Cross-Claimant Senior Whole Health of New York, Inc.*