**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEI LI, ZHU H.L. LIN, LI CHEN, MEI F. CHEN, XIU F. CHEN, HUI HE, HUI LI, ZHAN J. LI, HUI X. RUAN, JIAN R. XIAO, MEI Z. XIAO, MU Z. ZHANG, BI Y. ZHENG, and XIU X. ZHU,<br><br>Plaintiffs,<br><br>-against-<br><br>GREATCARE, INC., CENTERLIGHT HEALTHCARE, INC., and SENIOR WHOLE HEALTH OF NEW YORK, INC.,<br><br>Defendants. | Case No. 1:24-cv-07401 (LTS) (KHP)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT GREATCARE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND STATEMENT OF POSITION REGARDING CO-DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

BALANCE LAW PLLC
B. Robert Liu
One World Trade Center, Suite 8500
New York, New York 10007
*Counsel for Defendant GreatCare, Inc.*

LAW OFFICE OF JOSE A. MUNIZ
Jose A. Muniz
39-15 Main Street, Suite 318
Flushing, New York 11354
*Co-Counsel for Defendant GreatCare, Inc.*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 4

A. The live-in structure ..... 4

B. What GreatCare admits ..... 4

C. The agreements, the reporting mechanisms and what Plaintiffs recorded ..... 4

D. The plans' authorizations and records ..... 5

E. Payroll and visit records; the 9/1/26 Order ..... 5

F. The three CDPAP Plaintiffs; employment dates and NYSDOL complaints ..... 5

SUMMARY JUDGMENT STANDARD ..... 6

ARGUMENT ..... 7

POINT I WHETHER EACH PLAINTIFF WORKED ALL TWENTY-FOUR HOURS OF EACH SHIFT PRESENTS DISPUTED MATERIAL FACTS ..... 7

A. The rule, the elements and the burden ..... 7

B. What the plans assessed and authorized ..... 10

C. The agreements, entries and admissions ..... 11

D. The record presents factual disputes in every period, and the oral accounts do not resolve those disputes ..... 14

E. Whether GreatCare knew is a disputed material fact ..... 16

F. Particular shifts on which Plaintiffs' proof fails on its own terms ..... 17

POINT II THE BURDEN-SHIFTING INFERENCE DOES NOT ENTITLE PLAINTIFFS TO SUMMARY JUDGMENT ..... 18

A. What the records lack are the disputed facts ..... 19

B. The 9/1/26 Order establishes no fact in Plaintiffs' favor ..... 20

C. Contrary evidence defeats judgment in any event ..... 20

POINT III PLAINTIFFS' EVIDENCE DOES NOT SATISFY PLAINTIFFS' SUMMARY JUDGMENT BURDEN ..... 21

A. The declarations are unduly conclusory and several are contradicted ..... 21

B. Translation and execution problems (Rule 56(c)(4); Fed. R. Evid. 604) ..... 22

C. The Workman Declaration ..... 22

D. The Rule 56.1 statement's defects ..... 23

E. Exhibits the Court cannot consider; other evidentiary objections ..... 24

POINT IV EMPLOYER STATUS AS TO THE CDPAP PLAINTIFFS IS DISPUTED ..... 25

A. The burden and the test ..... 25

B. The Answer ¶ 7 admission ..... 25

C. The program's statutory allocation ..... 26

D. What the CDPAP documents show ..... 26

E. GreatCare performed the functions addressed in Answer ¶ 7 on the consumer's behalf ..... 27

F. The contrary evidence does not resolve GreatCare's employer status ..... 27

G. Case law does not support entering judgment on employer status when that issue is in dispute ..... 28

POINT V PLAINTIFFS ARE NOT THIRD-PARTY BENEFICIARIES OF THE WAGE PARITY CONTRACTS (CAUSE 8) ..... 30

POINT VI NO DAMAGES DETERMINATION CAN BE MADE ON THIS MOTION ..... 32

A. Damages cannot be decided before liability, and Rule 56(g) does not change that ..... 32

B. Overtime and spread of hours ..... 33

C. The measure of damages and the table from the Workman Declaration ..... 35

D. Willfulness and good faith are disputed issues to be resolved at trial ..... 37

E. Limitations periods and the complaint dates ..... 37

POINT VII GREATCARE'S POSITION ON THE CENTERLIGHT AND SWHNY MOTIONS ..... 39

CONCLUSION ..... 40

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdelhamed v. XYZ Limousine, Inc.*, — A.D.3d —, 262 N.Y.S.3d 166 (2d Dep't 2026) ........ 40
*Aboah v. Fairfield HealthCare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2024 WL 3552413 (D. Conn. July 26, 2024), motion to certify appeal denied, 2024 WL 5159161 (D. Conn. Dec. 18, 2024) ........ 13
*Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ........ 28, 31
*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........ 9, 21, 23
*Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152 (2019) ........ 8, 9, 22
*Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061 (10th Cir. 1999) ........ 14
*Campos v. Lemay*, No. 05 Civ. 2089 (LTS)(FM), 2007 WL 1344344 (S.D.N.Y. May 7, 2007) ........ 36, 42
*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) ........ 28
*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) ........ 38
*Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704 (2018) ........ 33, 34, 35
*Dziura v. Hum. Dev. Ass'n, Inc.*, 231 A.D.3d 615 (1st Dep't 2024) ........ 16
*Flores Moreno v. Ramos*, No. 17 CV 9439-LTS-KNF, 2021 WL 637563 (S.D.N.Y. Feb. 17, 2021) ........ 27
*Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012) ........ 39
*Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89 (W.D.N.Y. 2019) ........ 32
*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996) ........ 23
*Heredia v. Americare, Inc.*, No. 17 Civ. 06219 (RWL), 2020 WL 3961618 (S.D.N.Y. July 13, 2020) ........ 24
*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ........ 26
*Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498 (8th Cir. 1990) ........ 14
*In re Long Island Power Auth. Hurricane Sandy Litig.*, 200 A.D.3d 1040 (2d Dep't 2021) ........ 11
*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ........ 33
*Kee v. City of New York*, 12 F.4th 150 (2d Cir. 2021) ........ 2
*Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015) ........ 31
*Kolonziaa v. Allied Cmty. Res., Inc.*, No. 3:24-CV-230 (SRU), 2025 WL 964811 (D. Conn. Mar. 31, 2025), aff'd, 2026 WL 707268 (2d Cir. Mar. 13, 2026) ........ 32
*Konstantynovska v. Friendly Home Care, Inc.*, 241 A.D.3d 1537 (2d Dep't 2025) ........ 8, 10
*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ........ passim
*Lanzetta v. Florio's Enters., Inc.*, No. 08 Civ. 6181 (DC), 2011 WL 3209521 (S.D.N.Y. July 27, 2011) ........ 39
*Li v. GreatCare, Inc.*, No. 24-CV-07401-LTS-KHP, 2025 WL 2419708 (S.D.N.Y. Aug. 21, 2025) ........ 42
*Li v. GreatCare, Inc.*, No. 24-CV-7401 (LTS)(KHP), 2026 WL 2593180 (S.D.N.Y. Sept. 1, 2026) (the ........ passim

*Lopez v. Thermo Tech Mech. Inc.*, No. 20-CV-9113-LTS-BCM, 2025 WL 415913 (S.D.N.Y. Feb. 6, 2025) ............ 6, 9, 22
*Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ............ 39
*Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783 (2006)............ 33
*Moreno v. Future Health Care Servs., Inc.*, 186 A.D.3d 594 (2d Dep't 2020)............ 16, 17
*Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62 (2d Cir. 2014) ............ 44
*Perez Perez v. Escobar Constr., Inc.*, No. 20-CV-08010-LTS-GWG, 2025 WL 2732861 (S.D.N.Y. Sept. 25, 2025) ............ 24
*Perry v. City of New York*, 78 F.4th 502 (2d Cir. 2023) ............ 18, 19
*Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181 (E.D.N.Y. 2016), on reconsideration in part, 2017 WL 354200 (E.D.N.Y. Jan. 24, 2017) ............ 38
*Rana v. Islam*, 887 F.3d 118 (2d Cir. 2018) ............ 39
*Reid v. A-Plus Care HHC Inc.*, No. 1:23-CV-01163 (JPC) (SDA), 2024 WL 5443182 (S.D.N.Y. Nov. 27, 2024), report and recommendation adopted, 2025 WL 1703066 (S.D.N.Y. June 18, 2025) ............ 9
*Rodriguez v. Avondale Care Grp., LLC*, No. 16-CV-03084 (SN), 2018 WL 1582433 (S.D.N.Y. Mar. 27, 2018)............ 38
*Severin v. Project OHR, Inc.*, No. 10 Civ. 9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012) ............ 10
*Sicom S.p.A. v. TRS Inc.*, 168 F. Supp. 3d 698 (S.D.N.Y. 2016)............ 24, 27
*Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-2093-LTS-JEW, 2022 WL 3928370 (S.D.N.Y. Aug. 31, 2022) ............ 21
*Stepanov v. Five Borough Home Care, Inc.*, 247 A.D.3d 812 (2d Dep't 2026)............ 10
*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990)............ 22
*Tokhtaman v. Hum. Care, LLC*, 149 A.D.3d 476 (1st Dep't 2017)............ 34
*United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960)............ 39
*Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29 (2d Cir. 2018) ............ 25
*Walton v. Comfort Sys. USA (Syracuse), Inc.*, No. 53, — N.Y.3d —, 2026 WL 1790858 (June 23, 2026)............ 35
*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021) ............ 41
*Williams v. Bier Int'l, LLC*, No. 14-CV-3894 (LTS) (JCF), 2015 WL 4461668 (S.D.N.Y. July 21, 2015)............ 36
*Wood v. Mike Bloomberg 2020, Inc.*, No. 20-CV-2489-LTS-GWG, 2025 WL 1002058 (S.D.N.Y. Mar. 31, 2025)............ 24
*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)............ 28, 33, 44

**Statutes**

29 U.S.C. § 203(d) ............ 29
29 U.S.C. § 206............ 35
29 U.S.C. § 207............ 35
29 U.S.C. § 218(a) ............ 35
29 U.S.C. § 255(a) ............ 38
N.Y. Const. art. I, § 17............ 31
N.Y. Lab. Law § 190(1)............ 36
N.Y. Lab. Law § 196-a ............ 20

N.Y. Lab. Law § 198 ........ 6, 37, 39
N.Y. Lab. Law § 220 ........ 31
N.Y. Lab. Law § 652 ........ 36
N.Y. Lab. Law § 663 ........ 6, 37, 39
N.Y. Pub. Health Law § 3614-c........ 2, 31, 32, 36
N.Y. Soc. Serv. Law § 365-f........ 5, 26, 27

**Rules**

Fed. R. Civ. P. 26(a)(2)........ 23
Fed. R. Civ. P. 36(b) ........ 24
Fed. R. Civ. P. 37(c)(1)........ 23
Fed. R. Civ. P. 56........ passim
Fed. R. Civ. P. 72(a) ........ 1
Fed. R. Evid. 1006 ........ 20, 23
Fed. R. Evid. 106 ........ 24
Fed. R. Evid. 602 ........ 24
Fed. R. Evid. 604 ........ 22
Fed. R. Evid. 701 ........ 23
Fed. R. Evid. 702 ........ 23
Fed. R. Evid. 802 ........ 24
Fed. R. Evid. 901 ........ 24
Local Civil Rule 56.1 ........ 6, 23, 39
N.Y. C.P.L.R. 901........ 10

**Regulations**

12 NYCRR § 142-2.1(b)........ 12
12 NYCRR § 142-2.16 ........ 35
12 NYCRR § 142-2.2 ........ 35, 36
12 NYCRR § 142-2.4 ........ 34
18 NYCRR § 505.14........ 4, 10
18 NYCRR § 505.28........ 26
29 C.F.R. § 778.108 ........ 35
29 C.F.R. § 778.200 ........ 35
29 C.F.R. § 785.19(a)........ 8
29 C.F.R. § 785.22 ........ 8, 11

**Other Authorities**

N.Y.S. Dep't of Health, Wage Parity FAQs (Feb. 17, 2012) ........ 36
N.Y.S. Dep't of Labor Op. Letter RO-07-0009 (Mar. 16, 2007)........ 34
U.S. Dep't of Labor, Field Operations Handbook § 31b12(c)(3) ........ 11, 16

## PRELIMINARY STATEMENT

Four days after Plaintiffs filed this motion (ECF 255), which seeks summary judgment on both liability and damages for some of the claims asserted against GreatCare, Inc. ("GreatCare"), Magistrate Judge Parker issued an order granting in part and denying in part a sanctions motion previously filed by Plaintiffs against GreatCare. *Li v.* GreatCare, *Inc.*, No. 24-CV-7401 (LTS)(KHP), 2026 WL 2593180 (S.D.N.Y. Sept. 1, 2026) (ECF 274) (the "9/1/26 Order"). That order: (a) denied what it called "Plaintiffs' scorched earth spoliation motion," finding spoliation sanctions "inappropriate," *id*. at *9; (b) found Plaintiffs' reliance on a May 22, 2026 declaration of Barbara Wang, GreatCare's Administrator (ECF 228-2), "both misplaced and mischaracterized," *id*. at *8; (c) found that Plaintiffs' fraud argument about the care-recipient declaration letters "rests largely on speculation and conjecture rather than hard evidence," *id*. at *10; and (d) rejected Plaintiffs' fraud-on-the-court argument regarding representations about Ms. Wang's medical condition as "frivolous," *id*. at *11, and "wholly without merit," *id*. The 9/1/26 Order also recorded Plaintiffs' own concession that they had "obtained the payroll and timekeeping information needed to pursue their claims" (*id.* at *2, *9), and it described as "factual disputes" whether particular time-sheet entries about sleep and meals were accurate (*id.* at *10).[1]

The motion now before this Court has the same character. It mischaracterizes the record, rests on speculation and conjecture about what happened on thousands of nights for which Plaintiffs offer no shift-specific evidence, and asks the Court to resolve in Plaintiffs' favor the very factual disputes the 9/1/26 Order identified. Rule 56(a) forbids that: Plaintiffs must establish that "there is no genuine dispute as to any material fact" and that they are "entitled to judgment

[1] No party objected to the 9/1/26 Order, and the time to do so under Rule 72(a) has passed.

as a matter of law," Fed. R. Civ. P. 56(a). Plaintiffs themselves quote *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021), for the rule that a court "must resolve all ambiguities and draw all reasonable inferences against the movant" (ECF 256 at 4), and then read the record in their own favor throughout.[2]

This motion is brought by fourteen home care aides who seek summary judgment — on liability and damages — on six causes of action that together involve *thousands* of live-in shifts (more than 4,600 of them in just four of the households Plaintiffs served, by Plaintiffs' own count, Pl. 56.1 ¶¶ 97, 122, 151, 224) worked over a period of more than eight years. Plaintiffs seek partial summary judgment not only as to GreatCare but also as to the two managed long-term care plans, CenterLight Healthcare, Inc. ("CenterLight") and Senior Whole Health of New York, Inc. ("SWHNY") (ECF 255; ECF 256 at 1–3). Plaintiffs move on the First through Fifth and Eighth Causes of Action of their Amended Complaint (ECF 77) ("Causes 1–5 and 8"): minimum wage and overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), spread of hours, and a third-party-beneficiary claim under the Home Care Worker Wage Parity Act, N.Y. Pub. Health Law § 3614-c (the "Wage Parity Act"). They do not move on Causes 6–7 (ECF 256 at 3 n.1), on which GreatCare takes no position here.

Plaintiffs seek summary judgment for every live-in shift during the relevant periods, on a record that simply assumes — but does not prove — the one fact on which every claim depends:

[2] "ECF 256" refers to Plaintiffs' memorandum of law. "Pl. 56.1 ¶ __" citations refer to Plaintiffs' Rule 56.1 statement (ECF 258). "Counterstatement ¶ __," "General Response __," and "AMF ¶ __" citations refer to GreatCare's accompanying response and its separately numbered statement of additional material facts, filed with the summary judgment declarations of Wang and Zhao (not their May 22, 2026 declarations, ECF 228-2, 228-1) and the declarations of Chen Tzu Wei and Liu (cited as "Wang SJ Decl.," "Zhao SJ Decl.," "Chen Tzu Wei Decl." and "Liu Decl."). "Friedman Decl. Ex. __" citations refer to Plaintiffs' exhibits (ECF 259, 263–265, 277). "MLTC" or "plan" means a managed long-term care plan. "NYSDOH" and "NYSDOL" refer respectively to the State Departments of Health and Labor. "HHAeXchange" refers to Homecare Software Solutions, LLC d/b/a HHAeXchange, the third-party vendor of the electronic visit verification system GreatCare used (Statement § E). The "Wage Order" refers to 12 NYCRR part 142. "Statement § __" refers to the lettered sections of the Statement of Facts.

that each Plaintiff worked all twenty-four hours of each shift because she did not receive the sleep and meal periods required by the thirteen-hour rule.

GreatCare admits that it paid Plaintiffs for every live-in shift on a thirteen-hour basis throughout the relevant period (Statement § B) and that Plaintiffs performed a live-in shift on each day the HHAeXchange records show. However, those admissions establish only which days Plaintiffs worked, not that they worked all twenty-four hours of any shift (Point VI.A; Statement § E).

The Argument addresses liability (Points I–V) and damages (Point VI). On liability for Causes 1–4, the Court need go no further than Point I: the evidence — the plans' authorizations, the agreements Plaintiffs signed, their own entries and time sheets, and their deposition admissions — would allow a reasonable factfinder to find that Plaintiffs received their sleep and meal periods on the shifts for which they now claim twenty-four hours. Plaintiffs cannot shift the burden of proof to GreatCare, because the condition that would trigger that shift — inaccurate or inadequate records — is itself disputed (Point II), and their declarations, several contradicted by their own records, do not satisfy their burden (Point III). Whether GreatCare employed the three Plaintiffs who worked under the Consumer Directed Personal Assistance Program ("CDPAP") is disputed (Point IV); Cause 8 rests on contracts that do not make Plaintiffs intended beneficiaries (Point V); and every damages amount depends on the disputed twenty-four-hour premise, while the overtime theory, the spread-of-hours claim (Cause 5), the regular rate and the limitations period are disputed on independent grounds (Point VI). GreatCare takes no position on the plans' motions (Point VII).

For the reasons below, the Court should deny the motion as to GreatCare, except that GreatCare does not oppose a Rule 56(g) order on the admitted facts discussed in Point VI.A.

# STATEMENT OF FACTS

## A. The live-in structure

GreatCare is a licensed home care agency that places aides with members of managed long-term care plans. The plan — not GreatCare — decides, on its nurse's assessment, whether a member gets live-in care (one aide, twenty-four hours) or split-shift care (more than one aide), and it buys a live-in day as one thirteen-hour unit. AMF ¶¶ 3, 10–16, 24, 187–188; 18 NYCRR § 505.14(a)(2), (a)(4). A live-in aide is to have eight hours for sleep, five uninterrupted, and three for meals. AMF ¶¶ 1–2, 5, 27.

## B. What GreatCare admits

GreatCare paid every live-in shift on a thirteen-hour basis and disputes only that Plaintiffs worked all twenty-four hours of any shift. Counterstatement ¶ 64. It employed the eleven Plaintiffs who worked as its aides, Answer ¶ 7 (ECF 187); Counterstatement ¶¶ 1–9, 12, 14, but has never admitted employing the three Plaintiffs who worked under CDPAP, Jian R. Xiao, Mei Z. Xiao and Bi Y. Zheng (the "CDPAP Plaintiffs") (Statement § F). Answer ¶¶ 3, 50, 269. Its other admissions, with their qualifications, are at Counterstatement ¶¶ 12, 26, 29, 194, 234, 253, 318.

## C. The agreements, the reporting mechanisms and what Plaintiffs recorded

Every Plaintiff signed GreatCare's HOME CARE WORKER AGREEMENT – "LIVE-IN" CASE (the "Home Care Worker Agreement"), which states the thirteen-hour terms and requires her to report, "in writing, immediately following each 24 hour shift," any shift on which she did not get five uninterrupted hours of sleep or her meals; nine also signed the "'Live-In' or 24-Hour Caregivers Agreement" (the "Caregivers Agreement"), which puts that report on the time sheet and forbids retaliation. AMF ¶¶ 27–48, 50, 295; Liu Decl. Exs. 1–2. An aide could

always call the office; since at least 2019 the Living-In Time Sheet has asked whether she got five uninterrupted hours of sleep; and from April 2023 HHAeXchange codes 801 and 802 recorded the periods received. AMF ¶¶ 63, 83; Wang SJ Decl. ¶¶ 21–24; Zhao SJ Decl. ¶¶ 12–15. Seven Plaintiffs identified their signatures on agreements or time sheets at deposition; codes 801 and 802 appear on three Plaintiffs' 2023 shifts. AMF ¶¶ 40, 52–55, 87–89, 110, 148–151; Liu Decl. Exs. 14–17, 19(a).

### D. The plans' authorizations and records

The plans assessed each member and re-authorized live-in care again and again — SWHNY six and nine consecutive times for two members. AMF ¶¶ 17–18, 22.

### E. Payroll and visit records; the 9/1/26 Order

HHAeXchange's subpoena production supplies 9,505 electronic visit verification ("EVV") rows — a clock-in and clock-out for 84.6% to 99.1% of eleven Plaintiffs' live-in shifts — which Plaintiffs call "sufficient to reconstruct the precise hours worked." AMF ¶ 178; Counterstatement ¶¶ 35, 42. GreatCare's production includes records for four of the six Plaintiffs said to have "no timesheets"; GreatCare has kept its aide records since 2015 and never told an aide to record a period she had not received. Liu Decl. Ex. 13; Wang SJ Decl. ¶¶ 23, 34; Counterstatement ¶¶ 43–50, 61. The 9/1/26 Order recorded Plaintiffs' concession that they "obtained the payroll and timekeeping information needed to pursue their claims," found "spoliation sanctions inappropriate," and called the accuracy of the sleep and meal entries "factual disputes" for trial. 2026 WL 2593180, at *2, *8–10.

### F. The three CDPAP Plaintiffs; employment dates and NYSDOL complaints

Under CDPAP, N.Y. Soc. Serv. Law § 365-f, the consumer recruits, hires and supervises her personal assistants and a fiscal intermediary processes their pay. The CDPAP Plaintiffs

served consumer S.Y.Y., a member of Extended MLTC ("Extended"), under that program. AMF ¶¶ 206–216; Counterstatement ¶¶ 10, 11, 13; Point IV. Thirteen Plaintiffs' NYSDOL complaints name GreatCare; GreatCare disputes three of the filing dates alleged and the date Hui Li's employment ended. Counterstatement ¶¶ 7, 317; Point VI.E.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), a party seeking summary judgment has the burden of "demonstrat[ing] that there are no material disputes of fact and that, drawing all inferences in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law," and a movant who bears the burden of proof at trial must establish each element beyond genuine dispute. *Lopez v. Thermo Tech Mech. Inc.*, No. 20-CV-9113-LTS-BCM, 2025 WL 415913, at *4 (S.D.N.Y. Feb. 6, 2025).

A party opposing summary judgment may show that the materials the movant cites "do not establish the absence" of a genuine dispute and may object that they "cannot be presented in a form that would be admissible in evidence." Rule 56(c)(1)(B), (c)(2). The Court may disregard statements "not properly supported, controverted, or both." Local Civil Rule 56.1(d).

Plaintiffs' motion (ECF 255) is a cross-motion only as to the plan defendants, which have moved for summary judgment (ECF 247, 251). GreatCare has not moved, so, as to GreatCare, Plaintiffs are the only movants, and every reasonable inference runs against them. GreatCare asks only that the motion be denied; nothing in this memorandum requests a finding on any disputed fact.

Plaintiffs bear the burden of proof at trial on every element of their claims. GreatCare bears the burden on two issues: the existence of an agreement to exclude sleep time under the FLSA (Point I.A) and good faith under NYLL §§ 198(1-a), 663(1) (Point VI.D).

## ARGUMENT

### POINT I
### WHETHER EACH PLAINTIFF WORKED ALL TWENTY-FOUR HOURS OF EACH SHIFT PRESENTS DISPUTED MATERIAL FACTS

Under the thirteen-hour rule Plaintiffs invoke, GreatCare's liability depends on whether each Plaintiff received the prescribed sleep and meal periods on each shift. Whichever party bears the burden of proof on that fact at trial, GreatCare has come forward with specific evidence from which a reasonable factfinder could find that the sleep and meal periods were received: the plans' live-in authorizations and clinical records, the Home Care Worker and Caregivers Agreements, the reporting mechanisms in each time frame, Plaintiffs' HHAeXchange entries, the time sheets they vouched for, and their own deposition testimony. That dispute is genuine and material: it decides whether unpaid hours were worked and bears on whether GreatCare knew of them.

**A. The rule, the elements and the burden**

GreatCare accepts the substantive rule as stated by Plaintiffs (ECF 256 at 5–6): an employer "was only required to pay [the aides] … for 13 hours of work, unless they did not receive the prescribed breaks." *Konstantynovska v. Friendly Home Care, Inc.*, 241 A.D.3d 1537, 1538–39 (2d Dep't 2025); *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 178 n.5, 182 (2019). Plaintiffs apply that rule "in each shift": a shift on which the aide received the sleep and meal periods is a thirteen-hour shift, whereas a shift on which she did not receive those periods is a twenty-four-hour shift. That is the "hair trigger" the Court of Appeals described — liability "for paying every hour of the 24-hour shift, not just the actual hours worked" — and it is fired when an aide sleeps "four hours and 59 minutes" rather than five. *Andryeyeva,* 33 N.Y.3d at 182. Because the trigger fires shift by shift, the proof must be made shift by shift.

The elements of the claim are work for which the employee was not properly compensated and the employer's actual or constructive knowledge. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). GreatCare admits that it paid for every live-in shift on a thirteen-hour basis (Statement § B). Whether Plaintiffs received those periods on the shifts for which they seek twenty-four hours is a disputed fact about hours actually worked — the kind of dispute this Court has said "cannot be resolved by the Court at this summary judgment stage." *Lopez*, 2025 WL 415913, at *4.

The FLSA's exclusion of sleep and meal periods has two parts, and the burden of proof differs between them. First, under the FLSA, sleep and meal periods are excluded only by "expressed or implied agreement." 29 C.F.R. § 785.22(a). GreatCare bears the burden of showing the agreement; its evidence is in Statement § C and Point I.C. Second, an interruption of the sleep period counts as hours worked, and the whole period counts if the aide cannot get five hours' sleep; so does a meal period during which she is not "completely relieved from duty." 29 C.F.R. §§ 785.19(a), 785.22(b). That time is "work for which [the employee] was not properly compensated," and the employee must prove it. The *Mt. Clemens* inference eases the employee's burden of proving ***how much*** such work was performed, not ***whether*** it was performed, and applies only where the employer's records of hours worked are inadequate (Point II). *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946); *Kuebel*, 643 F.3d at 361–62. Under New York law, the question is whether the sleep and meal periods were afforded and received, *Andryeyeva*, 33 N.Y.3d at 182, and plaintiffs "must demonstrate that they were entitled to be paid for the entire 24-hour shift." *Reid v. A-Plus Care HHC Inc.*, No. 1:23-CV-01163 (JPC) (SDA), 2024 WL 5443182, at *12 (S.D.N.Y. Nov. 27, 2024) (class-certification report), *report and recommendation adopted*, No. 23 Civ. 1163 (JPC) (SDA), 2025 WL 1703066 (S.D.N.Y.

June 18, 2025). Whichever party bears the ultimate burden, the Rule 56 result is the same (Statement §§ C–D): as movants, Plaintiffs cannot obtain judgment by pointing to the absence of a shift-by-shift record when the records that do exist point both ways (Statement § E).

Resolving such claims "will require, at a minimum, establishing the truth or falsity of a plaintiff's sleep-deprivation contentions, the frequency with which the issue arose for a plaintiff, whether the plaintiff reported the problem to OHR, and OHR's response." *Severin v. Project OHR, Inc.*, No. 10 Civ. 9696 (DLC), 2012 WL 2357410, at *9–10 (S.D.N.Y. June 20, 2012) (class-certification ruling). The first is the element itself; the other three are the facts a factfinder uses to decide it, Plaintiff by Plaintiff and, under Plaintiffs' own "in each shift" rule, shift by shift. Statement §§ B–D set out the evidence on all four.

The damages calculations in the declaration of Scott Workman, who is employed by Plaintiffs' counsel (ECF 257 ¶ 3) (the "Workman Declaration"), assumed the fact in issue: counsel "instructed me that I should count 24 work hours for each 24-hour live-in shift," ECF 257 ¶ 12(c). A movant cannot carry its burden on an element by instructing a declarant to assume it (Point III.C), and Plaintiffs' Rule 56.1 paragraphs assert non-receipt of the sleep and meal periods only by formula, naming no shift (Point III.D).

New York's appellate courts decide class certification of this claim by whether there is evidence that the aides, as a group, did not receive the breaks, and have refused certification where there was none. *Konstantynovska*, 241 A.D.3d at 1538–39; *Stepanov v. Five Borough Home Care, Inc.*, 247 A.D.3d 812 (2d Dep't 2026) (reversing certification of the twenty-four-hour live-in claim because the issues "either require factual determinations that are 'hopelessly individual' … or were not supported by the requisite evidentiary basis" (quoting *In re Long Island Power Auth. Hurricane Sandy Litig.*, 200 A.D.3d 1040 (2d Dep't 2021))). These decisions

apply the class-certification standard of N.Y. C.P.L.R. 901, but each rests on the premise of this Point: liability depends on whether each aide received the breaks.

**B. What the plans assessed and authorized**

Plaintiffs' premise (ECF 256 at 6–7, 18) is that the plans authorized live-in care for each recipient. Under 18 NYCRR § 505.14(a)(4), live-in care applies to patients whose need for assistance is infrequent enough that the aide "would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep." The authorizations are therefore Plaintiffs' own evidence that each plan, after assessing the recipient (Pl. 56.1 ¶ 18), placed her in that category. A factfinder may weigh that evidence against Plaintiffs' claim that they "never" received the sleep and meal periods, although GreatCare does not offer it as proof that any Plaintiff received them on any particular shift.

Plaintiffs argue that the plans should have authorized continuous care and "deliberately authorized their members for 'live-in' care" (ECF 256 at 13, 18). That argument targets the plans (not GreatCare), assumes the fact in dispute (that Plaintiffs did not get their sleep), and says nothing about any particular shift.

According to Ms. Wang, the plan assesses the member and the home before authorizing live-in service (Wang SJ Decl. ¶ 9). By regulation, the social assessment "shall also evaluate whether the patient's home has sleeping accommodations for a personal care aide" (AMF ¶ 247). SWHNY's tasking tool, the worksheet that converts its UAS-NY assessment into weekly task hours (AMF ¶ 155), recorded that S.K.C.-1 "sleeps a lot during day and is up at night" (AMF ¶ 297), and its 2019 review recorded "sleeps most the time" (AMF ¶ 153). Empire BlueCross BlueShield's nurse twice answered "NIGHT TIME NEEDS: NO" for D.T.K., the second time three days after the member's son reported that she woke about twice a night (AMF ¶ 167;

Counterstatement ¶ 220). Each of SWHNY's four assessments of X.Y.W. answers "Yes" to "Can the needs be scheduled?" and three of them record one to two nighttime voids (AMF ¶¶ 161–163; Counterstatement ¶¶ 158, 160–161).

Plan-of-care directives (Pl. 56.1 ¶¶ 118, 133–134, 305, 311(d)), such as repositioning or toileting every two hours, are instructions for performing a task; they do not record what actually happened on any particular night.

The K.W.P. assessments reflect that she shared a live-in aide with another member (a "mutual" case) (AMF ¶¶ 19, 159). Assessment narratives (Pl. 56.1 ¶¶ 79–83, 92–93, 99–102, 110–114, 132–134, 153–161, 176–178, 184–185, 191–192, 200, 220–221, 230) describe the member's condition when assessed, and on that assessment the plan authorized live-in care (ECF 256 at 13; Counterstatement ¶ 156). Counterstatement ¶¶ 72–236 and Appendix A respond to each one. Where no plan record contradicts a narrative, GreatCare relies on Point I.A and on the general nature of Plaintiffs' declarations (Point III.A). Wrong-entity or wrong-caregiver records (Point III.D) establish nothing about these Plaintiffs' shifts.

**C. The agreements, entries and admissions**

The thirteen-hour live-in arrangement was in writing from the date each agreement was signed. The record contains fourteen signed Home Care Worker Agreements; nine Plaintiffs also signed ten Caregivers Agreements. Statement § C. The agreement requirement (Point I.A) "can be fulfilled by a written or oral agreement, or implied by the parties' conduct," U.S. Dep't of Labor, Field Operations Handbook § 31b12(c)(3), and the exclusion is available only "provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep," 29 C.F.R. § 785.22(a). In that provision, "usually" describes the arrangement (Wang SJ Decl. ¶ 9; Point I.B), not whether sleep was actually interrupted on a

given shift (Point I.A). Beginning June 24, 2020, the Wage Order's non-construction clause, 12 NYCRR § 142-2.1(b), leaves the New York question unchanged (Point I.A), and every Plaintiff who worked a live-in shift on or after that date had already signed an agreement. AMF ¶¶ 36–48, 50; Counterstatement ¶¶ 1–14. Eleven Plaintiffs began live-in work before they signed a Home Care Worker Agreement, all of them signing in 2018; for each, the written agreement governs from the date she signed it. AMF ¶¶ 36–45, 47, 293; Counterstatement ¶¶ 1–14. For the years before they signed, the evidence of agreement is the parties' conduct: Plaintiffs accepted thirteen hours' pay for a twenty-four-hour assignment week after week, and three Plaintiffs testified that they understood the arrangement from the time they were hired. No Plaintiff was required to take live-in work. AMF ¶¶ 52, 55–56; Wang SJ Decl. ¶¶ 10–11; Liu Decl. Ex. 4. Whether "passive acceptance" through onboarding and continued employment is an implied agreement is "a question for the jury." *Aboah v. Fairfield HealthCare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2024 WL 3552413, at *16 (D. Conn. July 26, 2024) (denying the employer's motion), *motion to certify appeal denied*, No. 3:20-CV-00763 (SVN), 2024 WL 5159161 (D. Conn. Dec. 18, 2024); *see Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061, 1063–64 & n.4 (10th Cir. 1999) (affirming summary judgment for the employer on an implied agreement where employees "understood and acquiesced to the policy when they were hired," later complaints notwithstanding; distinguishing *Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498, 503, 506 (8th Cir. 1990)). For the years before each Plaintiff signed (none later than 2018), whether there was an implied agreement is a disputed question of fact, which alone defeats Plaintiffs' motion for those years. In any event, the FLSA claim for those years is limited by the statute of limitations (Point VI.E), and under the Wage Order the question is whether Plaintiffs received the sleep and meal periods, not whether they agreed to exclude them (Point I.A). The Field

Operations Handbook adds that no agreement exists "where an employee has objected to the exclusion of sleep time"; whether any Plaintiff objected depends on disputed testimony, which Point I.D addresses Plaintiff by Plaintiff.

The entries recorded on Plaintiffs' own shifts also contradict their declarations (Point III.A). Only three Plaintiffs worked any live-in shift on or after April 1, 2023. AMF ¶ 276. Of their 114 such shifts, 106 contain the entry "Yes I received 8hours of sleep with 5 hours being uninterrupted," the entry "Yes I received 3 uninterrupted meals that were 1 hour each," or both. Jian R. Xiao accounts for 55, Mei Z. Xiao for 46 and Ms. Ruan for 5. Twenty-two of the Xiaos' shifts predate their May 18, 2023, NYSDOL complaints. AMF ¶¶ 74, 87–89; Liu Decl. ¶ 17, Ex. 19(a). Three Plaintiffs identified Living-In Time Sheets as their own (Liu Decl. ¶ 21, Exs. 15–17). Ms. Ruan testified that the entries on her sheets were her own: "[t]hat if I did this and I am sure I did this, I put that information." Ruan Dep. (Jan. 12, 2026) 78:17–79:14 (ECF 214-19); AMF ¶ 108. Zhan J. Li and Xiu X. Zhu identified the attached pages, Z. Li Dep. 60:5–9, 65:5–19 (ECF 252-11); X. Zhu Dep. 103:9–15, 140:4–6, but Ms. Li testified that a colleague filled in the numbers on similar sheets, which did not reflect her actual meal and sleep time, Z. Li Dep. 60:10–61:6, and Ms. Zhu that other sheets were not hers, X. Zhu Dep. 129:8–140:6. Disputes of this kind go to weight at trial. Statement § E; 9/1/26 Order, 2026 WL 2593180, at *10. GreatCare relies on what the sheets say only where a Plaintiff confirmed the entries as her own, and it does not offer any other sheet for the truth of its entries (Counterstatement, General Response 9).

Three Plaintiffs — Hei Li, Ms. He and Ms. Zhang — gave deposition testimony that points the same way. Hei Li testified: "[E]ach day the situation is different every day." Hei Li Dep. (Oct. 9, 2025) 75:25–76:2 (Liu Decl. Ex. 27); AMF ¶ 136. Ms. He never raised the subject with anyone at GreatCare: "Q. Did you speak to anyone about it? A. No." He Dep. (Jan. 15,

2026) 152:13–19; *see also id.* 78:2–14 (ECF 252-12); Counterstatement ¶ 194. Ms. Zhang testified, "I could have reported it to my coordinator," even though she called the agreement's written-reporting term (Statement § C) "incorrect." Zhang Dep. (Jan. 20, 2026) 99:8–13, 97:14–22 (ECF 252-15); AMF ¶ 54.

Plaintiffs identify no written report of a missed sleep or meal period; their evidence that they missed those periods consists of declarations, testimony and the plans' records (Points I.B, I.D, III.D). The absence of any written report does not prove that Plaintiffs received the sleep and meal periods, but a factfinder may weigh that absence, together with the plans' authorizations (Point I.B) and Plaintiffs' own entries, in GreatCare's favor — and that is enough to defeat the motion.

**D. The record presents factual disputes in every period, and the oral accounts do not resolve those disputes**

For 2015–2018, GreatCare's evidence that Plaintiffs received their sleep and meal periods consists of the plans' authorizations and assessments (Point I.B); the Home Care Worker Agreements, from the date each was signed (AMF ¶¶ 36–48), the parties' conduct before signing, and Plaintiffs' admissions (Point I.C); Plaintiffs' ability to report to their coordinators (AMF ¶¶ 67–70); and the EVV and payroll records (Statement § E; Point VI.B). For 2019 through March 2023, GreatCare's evidence also includes the Caregivers Agreements, the time sheets that Plaintiffs confirmed as their own (Point I.C), and the Living-In Time Sheet form, which was in use from at least 2019 (Statement § C; AMF ¶ 83). For April through August 2023, the evidence further includes codes 801 and 802 and three Plaintiffs' entries (Point I.C).

Before each Plaintiff's agreement date (for most Plaintiffs, January–February 2018), the record contains no written policy and no sleep or meal record made by an aide (the 801/802 codes began April 9, 2023, AMF ¶ 276); GreatCare's evidence for those years is the conduct and

testimony listed above. Plaintiffs rely on general declarations (Point III.A), which compel no finding on any shift in those years; any such finding is for trial. *Moreno v. Future Health Care Servs., Inc.*, 186 A.D.3d 594, 596 (2d Dep't 2020) (affirming denial of certification where the employer "submitted a written policy form allegedly distributed to employees … instructing employees to notify them if the employees did not receive the required breaks"); *Dziura v. Hum. Dev. Ass'n, Inc.*, 231 A.D.3d 615 (1st Dep't 2024) (affirming certification where the agency "did not submit a required 'written policy form …'" but "proffered only an affidavit"). From the date each Plaintiff signed her agreement, GreatCare can point to the agreement's written reporting duty, and from at least 2019 to the printed form that Plaintiffs themselves filed (Friedman Decl. Ex. 60). Those facts track *Moreno*.

Three Plaintiffs testified about what GreatCare staff told them. Zhu H.L. Lin testified that GreatCare's dispatcher said to write five hours' sleep even if she got none (AMF ¶ 280) and that, when she complained of getting no sleep, coordinator Ms. Ouyang said "of course you cannot sleep" (AMF ¶ 281). Xiu X. Zhu testified that when she complained, Ms. Ouyang said a twenty-four-hour job has no sleeping time (AMF ¶ 282; X. Zhu Dep. 122:13–125:12 (ECF 252-14)). Hui Li testified that GreatCare's nurse said "you still have to get up" (AMF ¶ 283), though she also testified that she told no one at GreatCare of missed sleep or meals (AMF ¶ 133). GreatCare counters those accounts with the coordinators' testimony (AMF ¶¶ 67–70, 85–86), Ms. Wang's denial that GreatCare ever instructed an aide to record sleep or meal periods she had not received (Wang SJ Decl. ¶ 23), the written reporting duty (Statement § C) and the reporting process as GreatCare set it up (Wang SJ Decl. ¶ 22; Counterstatement ¶ 29). The accounts concern what staff allegedly said, not what happened on any identified shift, and the Court treated such testimony as presenting a factual dispute. 9/1/26 Order, 2026 WL 2593180, at *10. Plaintiffs

identify no other "objection" to the sleep exclusion (Point I.C; Field Operations Handbook § 31b12(c)(3)), and the accounts, even if credited, apply only to the Plaintiffs who gave them and to the occasions they describe. Point II.A responds to Plaintiffs' argument that they were instructed to make inaccurate entries.

**E. Whether GreatCare knew is a disputed material fact**

An employer suffers or permits work it requires, knows of, or should discover with reasonable diligence. *Perry v. City of New York*, 78 F.4th 502, 509 (2d Cir. 2023).

A live-in assignment requires the aide to be present in the home; it does not require her to give up sleep. The thirteen-hour arrangement assumes the aide is present and excludes the sleep and meal periods from paid time. The plan chose live-in rather than split-shift care (Point I.B); GreatCare staffed the care the plan authorized. Wang SJ Decl. ¶ 8; AMF ¶¶ 3, 24; Counterstatement ¶ 270.

Plaintiffs have not shown that GreatCare had actual knowledge. GreatCare received the plans' authorizations and plans of care, not the plans' assessments (Wang SJ Decl. ¶ 25; Counterstatement ¶¶ 20–24). Those documents showed live-in days or thirteen-hour days (AMF ¶¶ 17–19, 22–23) and the tasks the aide was to perform (Point I.B); they said nothing about whether an aide slept on any night. To the extent the regulations Plaintiffs cite required any information to be collected, the plans held it, including the assessments, and the plans still renewed live-in care (Counterstatement ¶¶ 19, 24; AMF ¶¶ 17–18). Plaintiffs' argument that the records "would have shown" the members' needs (ECF 256 at 13) asks the Court to draw an inference in Plaintiffs' favor, which it cannot do on this motion. The disputed oral accounts (Point I.D) include Hui Li's account of what she told GreatCare's nurse, which conflicts with her

own testimony that she told no one at GreatCare (AMF ¶¶ 133, 283). Which account to credit is a question for trial.

Nor have Plaintiffs shown constructive knowledge as to GreatCare, which turns on reasonable diligence. Point I.D describes the reporting mechanisms available in each time frame (AMF ¶¶ 67–71, 73; Zhao SJ Decl. ¶¶ 12–15). An employer with a reasonable reporting process "will not ordinarily be chargeable with constructive knowledge of unreported work," *Perry*, 78 F.4th at 513, and Ms. He reported to no one (AMF ¶ 115; Point I.C). *Perry*'s caveat for employers that discourage reporting (78 F.4th at 513) applies only if the oral accounts that Point I.D addresses are credited, and those accounts are disputed. Plaintiffs' point that written policies alone do not defeat an inference of knowledge (ECF 256 at 9) comes from *Kuebel*, where the employer was the movant: written policies, set against testimony that employees were told to under-record their hours, "raise[] factual and credibility questions for trial." *Kuebel*, 643 F.3d at 365. Here Plaintiffs are the movants, so the same mix precludes judgment for them — and GreatCare's evidence goes beyond written policies (Point I.C).

**F. Particular shifts on which Plaintiffs' proof fails on its own terms**

For twenty-eight shifts with eight recipients who have no care records, Plaintiffs offer only that they "in general recollect" not receiving their sleep and meal periods (Points I.A, III.A). The only citation in Pl. 56.1 ¶ 237 is a paragraph of counsel's declaration that does no more than attach Ms. Zheng's declaration, which concerns none of those shifts. ECF 256 at 11; Pl. 56.1 ¶¶ 237–238; Friedman Decl. ¶ 114; Counterstatement ¶¶ 237–238.

Plaintiffs' claim that Li Chen missed her sleep and meal periods on twelve dated shifts with H.S.W. rests on a declaration that names neither the recipient nor any particular night. Pl. 56.1 ¶¶ 239–240; Counterstatement ¶¶ 239–240.

Several of Plaintiffs' Rule 56.1 paragraphs assert facts that their cited exhibits do not support (Point III.D): ¶¶ 108 and 122 cite exhibits that name no member; ¶ 100 cites a page that is not in the exhibit; and ¶¶ 150, 151 and 281 rely on Friedman Decl. Ex. 10, which has no row for Xiu F. Chen. Counterstatement ¶¶ 100, 108, 122, 150–151, 281.

Hei Li testified that she worked one day a week for GreatCare and three days a week for non-party True Care, for the same member; she stipulated that she claims nothing for True Care days and no overtime; and none of her evidence about particular nights shows that any of those nights fell on a day she worked for GreatCare (Points I.A, I.C). AMF ¶¶ 139, 222–223; Pl. 56.1 ¶¶ 81, 87. Paragraph 81 of Plaintiffs' Rule 56.1 statement overstates its sources. Paragraph 84 says CenterLight reduced the authorization to "under ten hours per day"; each of the three sources it cites shows ten hours a day. Paragraph 87 cites only her declaration, three lines of deposition testimony and a letter to which GreatCare objects (Point III.E). Counterstatement ¶¶ 81, 84, 87; AMF ¶ 137.

Because whether Plaintiffs worked unpaid hours is genuinely disputed for every shift on which they claim twenty-four hours, the motion must be denied on Causes 1–4 on that basis alone, and the Court need not reach Points II and III. Point VI.B addresses Cause 5 (spread of hours) and Plaintiffs' overtime theory. To the extent the Wage Parity claim depends on hours worked, it turns on the same disputed facts; Point V addresses its benefits component.

## POINT II
## THE BURDEN-SHIFTING INFERENCE DOES NOT ENTITLE PLAINTIFFS TO SUMMARY JUDGMENT

The burden-shifting inference Plaintiffs invoke, ECF 256 at 9–10, applies only when the employer's records are inaccurate or inadequate, and Plaintiffs have told the Court that the records allow them to reconstruct precise hours (Statement § E). What the records do not show

for most shifts is whether Plaintiffs slept. First, that is the disputed fact on which the thirteen-hour rule turns, and the burden shift does not establish it. Second, the 9/1/26 Order made no finding that establishes it. Third, GreatCare's contrary evidence defeats summary judgment.

**A. What the records lack are the disputed facts**

The inference Plaintiffs seek arises "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes"; it helps the employee prove how much uncompensated work she performed, once she has proved that she performed such work. *Mt. Clemens*, 328 U.S. at 687–88; *Kuebel*, 643 F.3d at 362.

Plaintiffs are not entitled to that inference. Although GreatCare's production has gaps (Statement § E), Plaintiffs reconstructed the hours from data they call "sufficient to reconstruct the precise hours worked." Pl. 56.1 ¶ 42; Counterstatement ¶ 42; 9/1/26 Order, 2026 WL 2593180, at *2, *9. That record shows clock-in and clock-out punches for most shifts and payment for thirteen hours (Statement §§ B, E). On sleep and meals, the only entries are Plaintiffs' own (Points I.C, I.D). Whether Plaintiffs slept on the remaining shifts is the very fact in dispute (Point I), and the record's silence on that question does not render the hours record inaccurate or inadequate. *Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-2093-LTS-JEW, 2022 WL 3928370, at *3 (S.D.N.Y. Aug. 31, 2022) (applying the inference to a worker's recollection of unrecorded hours — not to whether a scheduled sleep period was interrupted).

Plaintiffs identify exactly one inaccuracy: sheets that "record sleep and meal breaks that Plaintiffs did not actually receive" (ECF 256 at 10), which, Plaintiffs say, they filled out as instructed (AMF ¶ 280). That argument restates the disputed fact, and it rests on oral accounts that GreatCare disputes (Point I.D; Statement § E; 9/1/26 Order, 2026 WL 2593180, at *10).

*Lopez*, 2025 WL 415913, at *4. When the condition that would shift the burden is itself disputed, the movant cannot rely on the burden shift to obtain summary judgment.

NYLL § 196-a (ECF 256 at 9) provides that when an employer fails to keep adequate records or provide wage statements, the employer bears the burden of proving the wages it paid. Plaintiffs have already reconstructed those wages (Statement § E; Point VI.C). *Andryeyeva*, 33 N.Y.3d at 183 (declining to reach the record-keeping burden shift).

**B. The 9/1/26 Order establishes no fact in Plaintiffs' favor**

As discussed above, the sanctions motion that Plaintiffs described as pending (ECF 256 at 13 n.3) has since been granted in part and denied in part: Judge Parker awarded Rule 37(b) fees on a finding that GreatCare's noncompliance with discovery orders was willful, and denied default, spoliation and fraud sanctions. 9/1/26 Order, 2026 WL 2593180, at *6–12. An order awarding Rule 37 fees is non-dispositive. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525–26 (2d Cir. 1990). The 9/1/26 Order establishes no fact in Plaintiffs' favor on this motion. The concession recited in the order is Plaintiffs' own statement, not a finding by the Court (Point II.A), and the order makes no spoliation finding that could support an adverse inference (2026 WL 2593180, at *8–9).

**C. Contrary evidence defeats judgment in any event**

Even if the Court were to hold that the burden shifts to GreatCare, Plaintiffs would not be entitled to summary judgment. The burden "then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference." *Mt. Clemens*, 328 U.S. at 687–88. GreatCare has such evidence (Points I.B–I.D), including Ms. Wang's denial that GreatCare instructed aides to record sleep or meal periods they had not received (Statement § E; Wang SJ Decl. ¶ 23). GreatCare's Rule 1006

tabulation (Liu Decl. Ex. 13) shows what was recorded and paid, not whether any aide slept on any shift (Point III.C). The dispute is "one of fact for trial," *Kuebel*, 643 F.3d at 362–64; the burden shift does not entitle Plaintiffs to summary judgment.

## POINT III
## PLAINTIFFS' EVIDENCE DOES NOT SATISFY PLAINTIFFS' SUMMARY JUDGMENT BURDEN

If the Court reaches this Point, Plaintiffs' evidence does not carry their Rule 56(a) burden: fourteen general declarations, several contradicted by the declarants' own records and two with translation problems (A–B); a damages declaration built on counsel's assumptions (C); and a Rule 56.1 statement whose key paragraphs do not match the exhibits cited (D–E).

### A. The declarations are unduly conclusory and several are contradicted

A party "may not create an issue of fact by submitting an affidavit … that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). A movant fares no better: a declaration contradicted by the declarant's own records does not establish the absence of a genuine dispute. The declarations of Hui X. Ruan, Jian R. Xiao and Mei Z. Xiao say the periods were never received (Friedman Decl. Exs. 100 ¶ 21, 106 ¶ 29, 107 ¶ 28); their own 2023 HHAeXchange entries and Ms. Ruan's sheets say otherwise. Zhan J. Li's contradicts itself and is contradicted by the sheets she identified; and Xiu X. Zhu's sheets contradict Pl. 56.1 ¶¶ 103–105. Points I.C, I.F; Counterstatement ¶¶ 103–105.

The declarations are also generic: Ruan Decl. ¶ 21 speaks of "any of my 24-hour live-in care recipients," Li Chen Decl. ¶ 49 covers all her shifts at once (Counterstatement ¶¶ 222, 240), and seventeen Rule 56.1 paragraphs assert non-receipt by formula (Point III.D). "Never," over hundreds of shifts, with no fact about any shift, is unduly conclusory. A non-movant must offer

"specific evidence," *Wood v. Mike Bloomberg 2020, Inc.*, No. 20-CV-2489-LTS-GWG, 2025 WL 1002058, at *7 (S.D.N.Y. Mar. 31, 2025); a movant must offer at least as much; and conclusory assertions are not "entitled to weight." *Perez Perez v. Escobar Constr., Inc.*, No. 20-CV-08010-LTS-GWG, 2025 WL 2732861, at *5 (S.D.N.Y. Sept. 25, 2025). Live-in aides paid thirteen hours under signed agreements were denied partial summary judgment because they "offer[ed] only generalities, not facts." *Heredia v. Americare, Inc.*, No. 17 Civ. 06219 (RWL), 2020 WL 3961618, at *10–11 (S.D.N.Y. July 13, 2020).

**B. Translation and execution problems (Rule 56(c)(4); Fed. R. Evid. 604)**

For a declarant who does not "speak and read English," the proponent must show "that he understood what he was signing." *Sicom S.p.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709–10 (S.D.N.Y. 2016). Friedman Decl. Exs. 31 (Xiu X. Zhu) and 100 (Hui X. Ruan) were filed without an interpreter's certification although both declarants testified through interpreters; the certifications filed later (ECF 268) came from Way P. Moy, whom Ms. Ruan called her lawyer. Counterstatement, General Response 5. Neither declaration can prove Pl. 56.1 ¶¶ 103–105, 115, 119, 179, 186, 222 or 238.

**C. The Workman Declaration**

Plaintiffs' damages proof is the Workman Declaration (ECF 257) and its Exhibit A (ECF 257-1), on which the damages table (ECF 256 at 26–27) rests; GreatCare objects under Rule 56(c)(2). Counterstatement, General Response 4.

If the declaration is expert analysis, it must be disregarded: Plaintiffs never disclosed Mr. Workman, their counsel's employee (ECF 257 ¶ 3), as an expert — expert discovery closed on March 30, 2026, and his first declaration came on May 8, 2026, the day the Court refused to reopen expert discovery at GreatCare's request — and GreatCare never got to depose him. An

undisclosed Rule 702 witness cannot "supply evidence on a motion" absent substantial justification or harmlessness, Rules 26(a)(2)(A), (C), 37(c)(1); *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 31 (2d Cir. 2018) (summary order), and Plaintiffs make no such showing.

If it is lay testimony, it violates Fed. R. Evid. 701(a), (c) and 1006. It rests not on perception but on counsel's instructions to use "specific methods, based on specific assumptions" (ECF 257 ¶ 7(a)): to count all twenty-four hours of every shift, which assumes the disputed element (¶ 12(c); Point I.A), and to treat the Wage Parity rate as the minimum wage, which assumes the disputed measure of damages (¶ 13(a); Point VI.C). A Rule 1006 summary proves what records contain, not conclusions drawn from counsel's assumptions, and it is only as reliable as its data: Hei Li claims no unpaid overtime, AMF ¶ 139, yet the table awards her $2,535.12 in overtime premium. ECF 257 ¶¶ 20(e), 21; ECF 257-1 at 1.[3]

**D. The Rule 56.1 statement's defects**

A movant's Rule 56.1 statement is judged by the evidence it actually cited; unsupported assertions "should be disregarded and the record reviewed independently." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001); Local Civil Rule 56.1(d). Pl. 56.1 ¶¶ 43–63 rest on Friedman Decl. Ex. 59, the court-ordered spreadsheet (ECF 242) retitled — counsel's summary for this motion, not a business record. Its gaps do not help Plaintiffs: the Court treated them as a production dispute, not lost records (9/1/26 Order at *8; Point II.B); Plaintiffs reconstructed the hours anyway (Point II.A); and their own Exs. 134–147 contain records the chart marks "Missing Payroll" (Counterstatement, General Response 3).

[3] GreatCare's own tabulation (Liu Decl. Ex. 13; Point II.C) differs in kind, not authorship: it "contains no estimate, extrapolation, averaging, adjustment or exclusion," Liu Decl. ¶ 14, and assumes nothing about the disputed facts.

The Counterstatement's Schedule of Objections identifies the statement's other defects paragraph by paragraph, and the same-numbered Counterstatement paragraphs answer each: shift counts the cited exhibits do not tie to the named recipient or Plaintiff; the wrong caregiver's records (Ex. 10, filed for Xiu F. Chen, names only "Chen Mei Fang"); records of another entity or of an aide who is not a Plaintiff; documents that do not contain the asserted fact (including "Ex. 64 ¶ 20," which does not exist); assertions for every Plaintiff on evidence for some; overstated sources (Point I.F); legal conclusions pleaded as facts (¶¶ 65–66, 70–71, 243), *Flores Moreno v. Ramos*, No. 17 CV 9439-LTS-KNF, 2021 WL 637563 (S.D.N.Y. Feb. 17, 2021); and seventeen paragraphs that assert non-receipt only by formula, naming no shift (listed in the Schedule).

**E. Exhibits the Court cannot consider; other evidentiary objections**

Ex. 67 is an unsworn, unauthenticated hearsay letter from a non-party in an uncertified translation. Rule 56(c)(2), (c)(4); Fed. R. Evid. 602, 802, 901; *Sicom*, 168 F. Supp. 3d at 704; Counterstatement ¶¶ 81–82. Ex. 130 describes training given in December 2024, after every Plaintiff's live-in work had ended (Counterstatement ¶ 312); the City Council testimony (ECF 256 at 7 n.2) and the press release in Pl. 56.1 ¶ 123 are unsworn hearsay (Counterstatement ¶ 123). Ex. 86 ¶¶ 14–16 is cited for recipients it never mentions and Ex. 100 ¶ 21 speaks only generally (Rule 56(c)(4); Counterstatement ¶¶ 169, 179, 201); an assessment narrative offered without the authorization that followed it is incomplete (Fed. R. Evid. 106; Point I.B); and CenterLight's deemed Rule 36 admissions (Ex. 35) bind CenterLight only (Schedule of Objections, item 7). The Schedule of Objections states each objection once and lists the paragraphs it reaches.

**POINT IV**
**EMPLOYER STATUS AS TO THE CDPAP PLAINTIFFS IS DISPUTED**

GreatCare stands by Answer ¶ 7. For the three CDPAP Plaintiffs, who worked every shift under CDPAP, a factfinder could find that GreatCare performed the admitted functions as the consumer's fiscal intermediary, on her behalf, and that whatever control those functions reflect was exercised by the consumer, as the program contemplates (Point IV.E).

**A. The burden and the test**

Employer status, an element of Plaintiffs' claims under both statutes (Summary Judgment Standard), turns on economic reality and is fact-intensive. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12, 14–15 (2d Cir. 1984) (reversing summary judgment where it was disputed who determined the rate of pay); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 76 & n.13 (2d Cir. 2003). Judge Karas denied cross-motions for summary judgment on whether a fiscal intermediary was an employer. *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022). Plaintiffs devote one sentence to the point, resting on Pl. 56.1 ¶¶ 1–14 (ECF 256 at 18) — not enough to carry a movant's burden on a fact-intensive element.

**B. The Answer ¶ 7 admission**

GreatCare admitted that it "hired aides, including Plaintiffs, assigned them to specific care recipients, set their weekly work schedules, was responsible for overall supervision and training, and paid them – all within the parameters set by the MLTCs." Answer ¶ 7. For the CDPAP Plaintiffs, the parameters were CDPAP authorizations, AMF ¶¶ 21, 211; what the admission leaves open is on whose behalf, and under whose direction, GreatCare performed each function. Read with Answer ¶¶ 3, 50, which deny that GreatCare was Plaintiffs' employer, ¶ 7 is

a factual admission that GreatCare performed the functions, but it does not admit the legal conclusion that GreatCare was the employer.

**C. The program's statutory allocation**

Consumers "assume the responsibility for services," including "recruiting, hiring and supervising their personal assistants." § 365-f(3). Fiscal intermediary services "shall include the following services, performed on behalf of the consumer to facilitate his or her role as the employer: (A) wage and benefit processing …; (B) processing … withholdings; (C) complying with workers' compensation, disability and unemployment requirements; (D) maintaining personnel records …"; they exclude "fulfillment of the responsibilities of the consumer," and an intermediary "shall not engage in: managing the plan of care including recruiting and hiring …; training, supervising and scheduling …; terminating …." § 365-f(4-a)(a)(ii)–(iii) (as in force 2018–2023).

Under the NYSDOH regulation governing CDPAP, the assistant works "under the consumer's instruction, supervision and direction" (or that of the consumer's designated representative), and the intermediary processes wages and benefits, "including establishing the amount of each assistant's wages" (Point IV.G). 18 NYCRR § 505.28(b)(4), (h)(1), (j)(1)(i) (eff. Nov. 8, 2021), formerly 18 NYCRR § 505.28(g)(1), (i)(1)(i) (same text).

**D. What the CDPAP documents show**

Every recorded shift worked by the CDPAP Plaintiffs is coded "PA-LivingIn" under a CDPAP payer. Friedman Decl. Exs. 22, 24, 28; Counterstatement ¶¶ 10, 11, 13. Extended's authorizations for the consumer read "CDPAP 24 HRS LIVE-IN" and "LIVE-IN CDPAP WITH (GREAT CARE)." Friedman Decl. Ex. 101 at GC 07.28.2025 005638–005641; AMF ¶ 211. Extended's monitoring forms record "Yes" to "Member is willing and able to interview, train,

and supervise CDPAS personal assistants," and list GreatCare under "Name of fiscal intermediary/LHCSA." Friedman Decl. Exs. 103-1, 103-2; AMF ¶ 213. The Xiaos' attestations state that each is "hired, trained, supervised and receive[s] [her] schedule by the Consumer and/or their Designated Representative." Liu Decl. Ex. 25(a)–(b); AMF ¶ 206; *see* Point IV.F. Extended's agreement recites that GreatCare is "designated to provide wage and benefit processing … on behalf of an employing consumer." Liu Decl. Ex. 26; AMF ¶ 209; Wang SJ Decl. ¶¶ 30–31.

**E. GreatCare performed the functions addressed in Answer ¶ 7 on the consumer's behalf**

Measured against what the statute bars intermediaries from doing (Point IV.C), each admitted function was part of the task the statute assigns to the intermediary, performed on the consumer's behalf. GreatCare "hired" the assistants by putting the ones the consumer chose on its payroll, Wang SJ Decl. ¶¶ 32–33; assigned them to her authorized case and entered the days her representative chose for each, AMF ¶ 211; Wang SJ Decl. ¶ 33; and paid them and kept their records, § 365-f(4-a)(a)(ii)(A), (D), including the 2023 sleep and meal entries, AMF ¶ 75. Keeping those records is not the same as directing the work. GreatCare gave them its standard in-service training on EVV and sexual harassment, AMF ¶ 214; Extended's forms record that the member trained and supervised them (Point IV.D); no GreatCare nurse visited the consumer's home, and GreatCare's contact with the CDPAP Plaintiffs otherwise consisted of following up on EVV entries. Wang SJ Decl. ¶ 33.

**F. The contrary evidence does not resolve GreatCare's employer status**

Four items in the record cut against GreatCare's position; none establishes employer status beyond genuine dispute. First, GreatCare's Rule 30(b)(6) designee answered "Yes" when asked whether the three "obviously worked for Greatcare," and then confirmed, "Yeah, correct."

AMF ¶ 290; Wang SJ Decl. ¶ 33. GreatCare does not withdraw those answers; Ms. Wang's accompanying declaration explains them, and a designee's testimony does not "bind a corporate party irrevocably." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34–35 (2d Cir. 2015). Second, the CDPAP Plaintiffs also signed GreatCare's standard live-in agreements, the forms its agency aides sign, AMF ¶¶ 46, 48, 50; GreatCare does not adopt the "independent contractor" label on Mei Z. Xiao's form. AMF ¶ 207. Third, Ms. Zheng's attestation is dated November 6, 2020, two years after her first shift for the consumer (Liu Decl. Ex. 25(c); Chen Tzu Wei Decl. ¶¶ 31, 33); for the earlier period GreatCare relies on Extended's authorizations, shift coding and monitoring forms (Point IV.D) and Wang SJ Decl. ¶ 33. Fourth, an August 17, 2023, note states that "[o]ur homecare agency" no longer took live-in cases and that the consumer changed "homecare vendor" (AMF ¶ 216). Whether GreatCare's withdrawal amounted to "terminating" the assistants' employment (Point IV.C) or simply ended its role as intermediary is a disputed question for trial.

**G. Case law does not support entering judgment on employer status when that issue is in dispute**

In *Alves*, 2022 WL 1002817, at *12, "competing claims … supported by admissible testimony and other evidence" precluded summary judgment for either side on whether the workers were employees or independent contractors. The record here likewise contains competing evidence (Points IV.D, IV.F).

*Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 108–12 (W.D.N.Y. 2019), held that an intermediary was the NYLL employer on four grounds. First, it said that intermediaries "establish the amount of each CDPAP's wages." Here, the plan set the price of a live-in day as a thirteen-hour unit, AMF ¶ 13, and the statute treats setting wages as a service the intermediary performs for the consumer (Point IV.C). The second and third grounds, maintaining

personnel records and being listed as "employer on record" (AMF ¶ 291), are payroll functions the statute assigns to intermediaries (Point IV.C). Fourth, the court acknowledged that, because an intermediary's responsibilities are "interwoven with the others," the inquiry is "normally fact-intensive"; it decided the question on the statutes and on uncontested facts. Here the facts are contested.

*Kolonziaa v. Allied Cmty. Res., Inc.*, No. 3:24-CV-230 (SRU), 2025 WL 964811 (D. Conn. Mar. 31, 2025), *aff'd,* No. 25-1034-CV, 2026 WL 707268 (2d Cir. Mar. 13, 2026) (summary order), held that processing payroll, keeping records and handling time sheets were not enough to show control where the state set the pay rate. *Kolonziaa* is distinguishable: it involved a Connecticut program; Allied neither hired nor trained the workers; there was no admission like Answer ¶ 7; and the court entered judgment that Allied was not an employer, whereas GreatCare seeks only denial of Plaintiffs' motion.

A factfinder could find that the admitted functions were intermediary services for the consumer, and every inference on that question must be drawn in GreatCare's favor (Summary Judgment Standard). That GreatCare is a home care agency that hires and pays aides does not, by itself, make it the CDPAP Plaintiffs' employer: 29 U.S.C. § 203(d) is read through "economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted). More than one entity can employ the same worker, *Zheng*, 355 F.3d at 66, so the consumer's role as employer does not resolve whether GreatCare was also an employer, which is disputed (Point IV.B).

**POINT V**
**PLAINTIFFS ARE NOT THIRD-PARTY BENEFICIARIES OF THE WAGE PARITY CONTRACTS (CAUSE 8)**

Cause 8 rests on the plans' contracts with NYSDOH and GreatCare (ECF 256 at 24); neither set of contracts makes Plaintiffs intended third-party beneficiaries. GreatCare is a party to none of the NYSDOH contracts. Counterstatement ¶ 241; Friedman Decl. Ex. 33 at CenterLight 000154. The 2017–2026 contracts place their Wage Parity duties on "the Contractor" (the plan) and bar enforcement by anyone "other than the Parties," except that Enrollees may enforce one section. Friedman Decl. Ex. 34, Arts. VII.K, X.J; Ex. 36, Arts. V.L, IX.G; Ex. 33, Arts. V.L, IX.G. A contract that "explicitly negates any intent to permit its enforcement by third parties" leaves them without standing. *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786–87 (2006).

Plaintiffs must show an intended benefit, immediate rather than incidental, *Mendel*, 6 N.Y.3d at 786, and New York's Court of Appeals has allowed third-party enforcement in two situations: where the third party is the only one who could recover for the breach, or where the contract's language otherwise makes clear an intent to permit enforcement by the third party, *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018). The provider agreements meet neither condition. The plan itself can enforce their wage clauses, which protect it against NYSDOH's "non-payment of services rendered." Friedman Decl. Ex. 34, Art. VII.K. The agreements direct the plan's payments toward "Provider's obligations" under the statutes, with increases "contingent upon Plan's receipt of applicable funds from DOH." Friedman Decl. Ex. 111 at CenterLight 000096; Ex. 32 (Apr. 1, 2017 amend.) at SWHNY 000217–000218; Counterstatement ¶ 253. Ex. 39 expressly names the plan as its beneficiary. Friedman Decl. Ex. 39 § 8.1(d), at CenterLight 000051; Counterstatement ¶ 251. The CDPAP Plaintiffs served a member of Extended, a non-party, so no contract at issue covers their shifts, Wang SJ Decl. ¶ 32,

and Extended's fiscal-intermediary agreement disclaims third-party rights for "any consumer or CDPA." Liu Decl. Ex. 26 at GC 06.05.2025 002222. Ex. 111 contains no clause conferring third-party rights. Whatever benefit the wage clauses confer on aides is therefore only incidental. *Tokhtaman v. Hum. Care, LLC*, 149 A.D.3d 476, 477–78 (1st Dep't 2017), sustained a complaint against an employer based on its own unidentified government contracts by applying the reasoning of the prevailing-wage cases under NYLL § 220. It was decided before *Dormitory Auth.*, and before *Walton* (discussed below) limited that reasoning to § 220 claims. Here, by contrast, the contracts are before the Court, and GreatCare is not a party to any contract with the State.

The statute's certification requirement does not change the analysis: § 3614-c(6) requires the plans' provider contracts to include "a written certification, verified by oath," that runs to the plan and is enforced through the statute's own sanctions; the certification is not a promise to the aide. § 3614-c(2), (5), (6), (6-a), (7-a). In *Walton v. Comfort Sys. USA (Syracuse), Inc.*, No. 53, — N.Y.3d —, 2026 WL 1790858 (June 23, 2026), *answering a certified question from* 155 F.4th 144, 163 (2d Cir. 2025), the Court of Appeals held that the promise to pay the prevailing wage is "implicit in every public works contract," so that workers are third-party beneficiaries of those contracts, because NYLL § 220(3)(a), implementing N.Y. Const. art. I, § 17, requires a provision that each laborer "shall be paid" that wage. Section 3614-c requires no such provision and has no basis in the State Constitution. *Walton* expressly limited its rule to "the unique context" of § 220 claims and reaffirmed that the *Dormitory Auth.* intent test governs third-party-beneficiary claims generally (*Walton*, 2026 WL 1790858, at *2–4).

Plaintiffs' argument that GreatCare underpaid the benefit portion of the Wage Parity rate rests on the assertion that GreatCare "produced no evidence" of benefits, an assertion supported

only by counsel's declaration; the payroll register Plaintiffs themselves filed includes line items for Wage Parity earnings and benefits. Pl. 56.1 ¶ 67 (citing Friedman Decl. ¶ 69); Counterstatement ¶ 67; Friedman Decl. Ex. 61 at GC 003215–003216. To the extent the Wage Parity claim depends on hours worked, those hours are disputed (Point I). Because the benefit portion may be paid as "compensated time off," § 3614-c(1)(h), the Wage Parity rate cannot be treated as a minimum cash wage without evidence of what benefits each Plaintiff actually received (Point VI.C).

## POINT VI
## NO DAMAGES DETERMINATION CAN BE MADE ON THIS MOTION

Every damages determination Plaintiffs seek depends on liability, which turns on disputed facts about individual shifts, and this Court has twice declined to decide liquidated damages or willfulness before liability is established (A). Two items that do not depend on whether Plaintiffs slept are addressed in B; the measure of damages (C), willfulness (D) and the limitations period (E) are each disputed.

### A. Damages cannot be decided before liability, and Rule 56(g) does not change that

Plaintiffs' requests for liquidated damages and for adoption of the damages table (ECF 256 at 25–27) each depend on liability, which Plaintiffs have not established (Points I–V). Nor can Rule 56(g), which permits an order treating as established any material fact "that is not genuinely in dispute," be used to treat any damages fact as established here. In the same posture, this Court explained: "Because liability has not yet been established against Defendants, such a decision by the Court on damages would be merely advisory." *Williams v. Bier Int'l, LLC*, No. 14-CV-3894 (LTS) (JCF), 2015 WL 4461668, at *3 (S.D.N.Y. July 21, 2015). A live-in caregiver's application for the three-year willfulness period was "denied as premature, in that

Plaintiff has not yet proven her allegations." *Campos v. Lemay*, No. 05 Civ. 2089 (LTS)(FM), 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007). With fourteen Plaintiffs and liability turning on each shift, every number in Plaintiffs' damages table (ECF 256 at 26–27) would change if the factfinder found that Plaintiffs received their sleep and meal periods on even a single shift.

GreatCare does not oppose a Rule 56(g) order on the facts it admits: that it paid for every live-in shift on a thirteen-hour basis (Statement § B; Counterstatement ¶ 64); that Plaintiffs worked a live-in shift on each day the HHAeXchange records show, though not that they worked all twenty-four hours of any shift (Counterstatement ¶ 42); that GreatCare employed the eleven Plaintiffs who worked as its home care aides (Statement § B); and the dates of the complaint forms admitted in Counterstatement ¶ 317. GreatCare opposes any finding on whether Plaintiffs received their sleep and meal periods (Point I), GreatCare's knowledge (Point I.E), liquidated damages, willfulness or good faith (Point VI.D), the employer element for the CDPAP Plaintiffs (Point IV), Cause 8 (Point V), or any damages amount (Points III.C, VI.C).

**B. Overtime and spread of hours**

Plaintiffs' overtime claim counts every live-in shift as twenty-four hours (ECF 256 at 10; ECF 257 ¶ 12(c)) and fails under Point I. Plaintiffs have not moved for summary judgment on overtime on the theory that a live-in day counts as thirteen hours, and judgment on a ground the motion does not raise requires notice and an opportunity to respond. Rule 56(f)(2). Nor would the record permit it. On the HHAeXchange payroll record Plaintiffs filed, every workweek in which a Plaintiff's live-in days (counted at thirteen hours each) and her hourly visits exceeded forty hours falls between January 2015 and December 2017; counting paid in-service training as well, three weeks since October 2021 exceed forty hours, by two to eight hours. Which weeks fall within each Plaintiff's limitations periods, what she was paid, and the rate at which any

premium was owed are questions for trial. Friedman Decl. Exs. 134–147; AMF ¶¶ 186, 312; Counterstatement ¶ 69; Point II.

The spread of a twenty-four-hour live-in shift exceeds ten hours whether or not the aide slept, so Cause 5 does not depend on the disputed question of how many hours Plaintiffs worked. Apart from the pay week of January 5 through 11, 2019, in which GreatCare paid spread-of-hours compensation to eight Plaintiffs, GreatCare's paystubs record no spread-of-hours payment, and the "Spread of Hours" line shows 0.00. Counterstatement ¶ 68; AMF ¶ 258. The regulation provides the additional hour "in addition to the minimum wage required in this Part." 12 NYCRR § 142-2.4. NYSDOL and most district courts in this Circuit read it to apply only to employees paid at the minimum wage. *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 202–04 (E.D.N.Y. 2016) (deferring to N.Y.S. Dep't of Labor Op. Letter RO-07-0009 (Mar. 16, 2007)), *on reconsideration in part*, No. 14-CV-3422 (PKC), 2017 WL 354200 (E.D.N.Y. Jan. 24, 2017); *Rodriguez v. Avondale Care Grp., LLC*, No. 16-CV-03084 (SN), 2018 WL 1582433, at *9 (S.D.N.Y. Mar. 27, 2018) (home care; summary judgment for the agency "[t]o the extent Rodriguez was paid above minimum wage"); *but see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2005) (spread-of-hours pay owed regardless of wage level). Whether a Plaintiff was paid at the minimum wage depends on her hours worked — the dispute addressed in Point I. If each shift counts as thirteen hours, the question is one of arithmetic for each pay period; if the factfinder counts twenty-four hours, the answer turns on disputed facts about each shift. Plaintiffs' motion, which computes damages on twenty-four hours (Points I.A, III.C), resolves neither question.

**C. The measure of damages and the table from the Workman Declaration**

Point III.C states GreatCare's objections to the Workman Declaration; this section addresses the measure of damages it assumes. The FLSA weekly minimum is "equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115–16 (2d Cir. 2013). Section 218(a) preserves higher state minimum wages but "does not also adopt such higher wages as the measure of damages for FLSA violations." *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) (quoting *Lanzetta v. Florio's Enters., Inc.*, No. 08 Civ. 6181 (DC), 2011 WL 3209521, at *4 (S.D.N.Y. July 27, 2011)), *abrogated in part on other grounds by Rana v. Islam*, 887 F.3d 118 (2d Cir. 2018). Plaintiffs' contrary authorities (ECF 256 at 24–25) are three default judgments and a bench-trial decision.

Within the FLSA period (Point VI.E), GreatCare paid each live-in day as thirteen hours at $17.00 an hour, and later $19.00 an hour ($221.00 and $247.00 a day), not counting the benefit portion. AMF ¶¶ 185, 189–191, 196. On Plaintiffs' own twenty-four-hour theory, that is $9.21 and $10.29 an hour, above the federal minimum wage of $7.25 an hour in every workweek within the FLSA period. Even on Plaintiffs' theory, then, GreatCare met 29 U.S.C. § 206, and any FLSA claim can be only for overtime at the regular rate.

The regular rate is the rate actually paid: "all remuneration for employment paid to, or on behalf of, the employee," less statutory exclusions. 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.108, 778.200. New York's regular rate is the same. 12 NYCRR §§ 142-2.2, 142-2.16. The cash rate GreatCare paid is the regular rate, not the total-compensation rate Plaintiffs derive from the Wage Parity Act (ECF 256 at 25). NYSDOH agrees: the Act "does not change the overtime

requirements," which run on "the regular (cash) rate of pay." N.Y.S. Dep't of Health, Wage Parity FAQs, A16 (Feb. 17, 2012).

The phrase "such other wage as may be established in accordance with the provisions of this article" in NYLL § 652(1) refers to wages set under article 19 of the Labor Law, not under Public Health Law § 3614-c. *Contra* ECF 256 at 24. Nor does the definition of "wages" in article 6, § 190(1), on which Plaintiffs rely (ECF 256 at 24), define the article 19 minimum wage: "Labor Law articles 6 and 19 contain separate definitions of 'employee' as used in each article." *Abdelhamed v. XYZ Limousine, Inc.*, — A.D.3d —, 262 N.Y.S.3d 166 (2d Dep't 2026). Section 3614-c(3)(a)(iv) set the cash portion at ten dollars or the § 652(1)(a) minimum wage, "whichever is higher," which treats the Wage Parity cash rate and the § 652 minimum wage as two different amounts. GreatCare has found no decision treating the § 3614-c minimum as the § 652 minimum wage or the 12 NYCRR § 142-2.2 regular rate. On Plaintiffs' twenty-four-hour theory, the hourly rates calculated above would fall below the New York minimum wage under § 652. The NYLL minimum-wage claim thus depends on hours worked (Point I) and on this legal question; neither can be resolved on this motion.

The Court cannot rely on Mr. Workman's damages table (ECF 257-1) to grant summary judgment for Plaintiffs. On Plaintiffs' counsel's instructions, Mr. Workman counted all twenty-four hours of every shift (Point I.A) and used the Wage Parity rate as the minimum wage (above); treated GreatCare as the employer for the CDPAP shifts (Point IV); and measured the limitations period back from the complaint dates alleged in the pleadings (Point VI.E). At a minimum, the table would have to be recomputed for: (a) the thirteen-hour measure; (b) the cash rate GreatCare actually paid, measured against the § 652 minimum wage; (c) the exclusion of the CDPAP shifts; and (d) a limitations period measured from the corrected complaint dates.

**D. Willfulness and good faith are disputed issues to be resolved at trial**

"Whether a defendant has willfully violated the FLSA is a mixed question of law and fact on which the plaintiff carries the burden of proof." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–21 (2d Cir. 2021). ECF 256 does not argue FLSA willfulness.

Good faith under NYLL §§ 198(1-a) and 663(1) is GreatCare's burden at trial; GreatCare summarizes its evidence below. Plaintiffs' assertion that GreatCare "knew that Plaintiffs were working without adequate sleep and meal breaks" (ECF 256 at 25) is disputed (Point I.E).

GreatCare staffed the live-in category the plan authorized (Wang SJ Decl. ¶ 8; Liu Decl. Ex. 21) — a category the regulation defines by the likelihood that the aide will regularly obtain five hours of uninterrupted sleep (Point I.B) — and paid each shift as thirteen hours under the rule NYSDOL promulgated and the Court of Appeals sustained (Point I.A). Plaintiffs signed Home Care Worker and Caregivers Agreements that set out the sleep and meal periods and the aide's duty to report any period she missed; some of the agreements had Chinese-language counterparts (Wang SJ Decl. ¶ 10; Chen Tzu Wei Decl. ¶¶ 14–23; Liu Decl. Exs. 1–4); GreatCare issued the Living-In Time Sheet (Statement § C), took aides' calls about problems arising during their work (Zhao SJ Decl. ¶¶ 12, 15) and, beginning in April 2023, used HHAeXchange duty codes to record sleep and meal periods (Wang SJ Decl. ¶ 21).

**E. Limitations periods and the complaint dates**

NYLL §§ 198(3) and 663(3) suspend the running of the six-year limitations period from the filing of an NYSDOL complaint or the start of an investigation, "whichever is earlier," until a final order or notice of conclusion issues. This Court observed that Hei Li's claims "were tolled by her July 20, 2022 complaint." *Li v. GreatCare, Inc.*, No. 24-CV-07401-LTS-KHP, 2025 WL 2419708, at *5 n.7 (S.D.N.Y. Aug. 21, 2025). GreatCare admits the thirteen complaint filings

that name it. Tolling runs from each proven filing (for Hei Li, July 20, 2022) to October 1, 2024 (when this lawsuit was filed). NYSDOL's October 22, 2024, letter in Case No. LS11 2022004439, which names all fourteen Plaintiffs, came after this lawsuit was filed. GreatCare does not contend that the letter reflects any determination on the merits. Counterstatement ¶ 317; Friedman Decl. Ex. 132 (ECF 265-33) at GSD 000916.

Several of the filing dates alleged in the pleadings are wrong. Bi Y. Zheng signed her form on November 21, 2022, not November 11, 2021, as alleged. Xiu X. Zhu's form is dated January 3, 2022, not 2021, and names another agency, Premier, rather than GreatCare (AMF ¶ 122). The date alleged for Hui He is the date she signed a Letter of Representation (NYSDOL form LS 11) designating a representative, not the date of a complaint form; the form in the exhibit for her has no signed certification page. Counterstatement ¶ 317(f). The "Office Use Only" blocks on the forms are blank (AMF ¶ 99), and nothing in the record shows when NYSDOL began its investigation in Case No. LS11 2022004439. Tolling therefore runs from the date each complaint was filed.

Hui Li testified that her GreatCare work ran "from 2015 until 2018," and Plaintiffs' EVV exhibit has no entry between November 27, 2018, and February 3, 2023; her live-in claims therefore end in 2018, not on April 6, 2023, as Plaintiffs assert (Pl. 56.1 ¶ 7), regardless of when tolling began. Counterstatement ¶¶ 7, 50. Hui He's complaint form claims unpaid wages only for July 2, 2016, through July 14, 2018, although GreatCare admits that she worked for it through July 2020 (AMF ¶ 101; Counterstatement ¶ 6).

The FLSA period, two years or three if willful (29 U.S.C. § 255(a); Point VI.D), runs back from the filing of this action on October 1, 2024, and, unlike the NYLL period, is not tolled by an NYSDOL complaint: the claim could have been filed "prior to or during the DOL's

review." *Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (holding as to a federal complaint; the rule applies a fortiori to a state complaint). The FLSA period therefore begins no earlier than October 2021.

## POINT VII
## GREATCARE'S POSITION ON THE CENTERLIGHT AND SWHNY MOTIONS

GreatCare takes no position on the CenterLight and SWHNY motions (ECF 247, 251) or on either plan's joint-employer status. A worker "may be employed by more than one entity at the same time," *Zheng*, 355 F.3d at 66, so each defendant's status is a separate question. Whether a plan was also an employer therefore does not affect GreatCare's own alleged liability to Plaintiffs, which Points I–V address.

Because it takes no position on those motions, GreatCare files no responsive statement to ECF 249 or 253. Local Civil Rule 56.1 deems a statement admitted only against the "opposing party," and only for purposes of that motion, so the lack of response by GreatCare — not an opposing party on those motions — admits nothing. Nor does GreatCare adopt the plans' characterizations of it.[4] GreatCare's Counterstatement responds to Plaintiffs' motion, not to the plans' motions, and GreatCare stands by the admissions it makes there.

SWHNY's cross-claims (ECF 158), which GreatCare has answered (ECF 182), are not before the Court on these motions, and nothing in this opposition or in GreatCare's lack of response to the plans' motions is a position on them. Whether NYLL §§ 198(3) and 663(3) tolling also applies to the plans (ECF 256 at 25–26) is a question for their motions, on which GreatCare takes no position; Point VI.E addresses the period that applies to GreatCare.

[4] E.g., ECF 249 ¶¶ 16–18, 26–27; ECF 253 ¶¶ 45–46, 50, 52, 54; ECF 254 at 1–2, 25–27.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion as to GreatCare on Causes 1–5 and 8, including as to the CDPAP Plaintiffs on the employer element (Point IV). GreatCare does not oppose an order under Rule 56(g) treating as established the admitted facts listed in Point VI.A. The Court should make no finding on the disputed matters listed in Point VI.A.

Dated: New York, New York
October 16, 2026

BALANCE LAW PLLC

By: B. Robert Liu
B. Robert Liu
One World Trade Center, Suite 8500
New York, New York 10007
Counsel for Defendant GreatCare, Inc.

LAW OFFICE OF JOSE A. MUNIZ

By: _/s/ *Jose A. Muniz*_____________________
Jose A. Muniz
39-15 Main Street, Suite 318
Flushing, New York 11354
Co-Counsel for Defendant GreatCare, Inc.

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law complies with the word-count limitation set by the Court's September 11, 2026 Order (ECF 283) under Local Civil Rule 7.1(c). It contains 12,484 words, including headings and footnotes and excluding the caption, table of contents, table of authorities, signature block and this certificate, as counted by the word-processing program used to prepare it, and it complies with the formatting requirements of Local Civil Rule 7.1(b).

/s/ B. Robert Liu
B. Robert Liu